

ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY        :
            Plaintiff              :
                                   :
                                   :
        v.                         :    No. 1:01-CV-763
                                   :
LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., VERNICE  :
L. STATTS, ROBERT E. KRAPF and     :
UTE L. HETLAND CLARK, as           :
Administrators of the Estate of    :
Karin Clifford and ROBERT E. KRAPF :
and PATRICIA R. CLIFFORD, as       :
Administrators of the Estate of    :
Robert R. Clifford, SHERRILL J.    :
MULLIGAN, DENIS A MULLIGAN         :
            Defendants             :    (JUDGE KANE)

**FILED**
**HARRISBURG**

AUG 2 2001

MARY E. D'ANDREA, CLERK
Per
DEPUTY CLERK

**DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S ANSWER WITH
AFFIRMATIVE DEFENSES TO THE COMPLAINT, AND CROSS-CLAIM AGAINST
J.H.M ENTERPRISES, INC. AND VERNICE L. STATTS
AND COUNTERCLAIM AGAINST NORTHLAND INSURANCE COMPANY**

AND NOW COMES, Defendant Lincoln General Insurance Company,

("Lincoln General"), by and through its attorneys, McNees,

Wallace & Nurick, and makes the following Answer with Affirmative

Defenses to the Complaint, and cross-claim against J.H.M.

Enterprises, Inc. ("JHM") and Vernice L. Statts ("Statts"), and

Counterclaim against Northland Insurance Company ("Northland").

## THE PARTIES AND JURISDICTION

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   Admitted.

6.   Admitted.

7.   Admitted.

8.   Admitted.

9.   Admitted that the United States District Court for the Middle District of Pennsylvania is the appropriate forum for this action.

## GENERAL ALLEGATIONS

10.  Denied.  It is denied that Statts was an employee of JHM.  Prior to November 17, 1995, Statts and JHM had entered into an agreement whereby JHM agreed to sell the 1979 Freightliner to Statts.  As of November 17, 1995, JHM was treating Statts as an Owner-Operator of the 1979 Freightliner, and treating Statts as a leased driver.  Plaintiff's averment that Statts was an agent of JHM is a conclusion of law which requires no response.

11.  Denied.  The 1979 Freightliner was permanently leased to Woolever Brothers Transportation, Inc. ("Woolever") on November 17, 1995, and any load to be hauled would have been for Woolever since it maintained exclusive possession, control and use of the 1979 Freightliner on November 17, 1995.  Lincoln General cannot admit or deny at this time who provided Statts with instructions as to what he was to do on November 16 and 17,

2

1995.  However, to the extent JHM provided Statts with instructions, JHM was acting on behalf of Woolever.

12.  Admitted.

13.  Admitted.

14.  Admitted in part; Denied in part.  It is admitted that the trailer was owned by JHM.  As set forth in response to paragraph 10 above, Statts and JHM had entered into an agreement whereby JHM agreed to sell the 1979 Freightliner to Statts. Accordingly, there are factual and legal issues regarding the actual ownership of the Tractor on November 17, 1995, and Lincoln General cannot admit or deny at this time that JHM was the owner of the Tractor.

15.  Denied.  To the contrary, at the time of the Accident, Statts was operating the Tractor in accordance with a permanent lease agreement between Woolever and JHM, and the Tractor was under Woolever's exclusive possession, control, and use at the time of the Accident.

16.  Admitted.

17.  Admitted.

18.  Admitted that at one point the plaintiffs in the Clifford Action demanded $2,000,000.  However, the Clifford Action has now been settled for a total payment of $1,225,000.

19.  Admitted.

20.  Admitted that at one point the plaintiffs in the Mulligan Action demanded $175,000.  However, the Mulligan Action has now been settled for a total payment of $125,000.

21.  Admitted.

22.  Admitted.

## COUNT ONE

23.  Lincoln General incorporates herein by reference its response to paragraphs 1 - 22 above.

24.  Admitted.

25.  Denied.  This paragraph states a conclusion of law which requires no response.  To the extent a response is required, Lincoln General avers that a fraud was committed by JHM and Woolever which permits Lincoln General to void coverage for the claim.

26.  Admitted.

27.  Denied.  This paragraph states a conclusion of law which requires no response.  To the extent a response is required, Lincoln General avers that a fraud was committed by JHM and Woolever which permits Lincoln General to void coverage for the claim.

28.  Admitted.

29.  Admitted that Statts would be considered an insured for purposes of the Accident at issue.

30.  Admitted that Woolever would be considered an insured for purposes of the Accident at issue to the extent Woolever is liable for Statts' conduct.

31.  Denied.  This paragraph states a conclusion of law which requires no response.  To the extent a response is required, Lincoln General avers that a fraud was committed by JHM and Woolever which permits Lincoln General to void coverage for the claim as to JHM, Woolever, and Statts.

4

WHEREFORE, Lincoln General demands judgment in its favor and against Northland Insurance Company on the claims asserted in Count One of the Complaint.

## COUNT TWO

32.  Lincoln General incorporates herein by reference its response to paragraphs 1 - 31 above.

33.  Admitted.

34.  Denied.  To the contrary, at the time of the Accident, the Tractor was being operated pursuant to a permanent lease agreement between JHM and Woolever which provided Woolever with exclusive possession, control and use of the Tractor.

35.  Denied.  To the contrary, at the time of the Accident, the Tractor was being operated pursuant to a permanent lease agreement between JHM and Woolever which provided Woolever with exclusive possession, control and use of the Tractor.

36.  Denied.  The Lincoln General Policy provides no coverage because of the fraud committed by Woolever and JHM.  In the alternative, the Lincoln General Policy provides excess coverage to Northland's coverage.

37.  Denied.  Northland's coverage is primary.  In the event Lincoln General must provide any coverage, it is excess to Northland.  In the alternative, Lincoln General's coverage is co-primary or co-excess with Northland and the two companies must pay their respective shares of the settlement based on the proportion the limits of coverage set forth in respective policies bears to the combined limits of coverage of the two policies.

WHEREFORE, Lincoln General demands judgment in its favor and against Northland Insurance Company on the claims asserted in Count Two of the Complaint.

### COUNT III

35.   (This is the second paragraph designated 35.  For the purposes of consistency, Lincoln General will use the same number as Northland).  Denied.  Lincoln General is without sufficient information and knowledge to form a belief as to the truth of this averment, and as such, it is denied.

1.   Denied.  The Lincoln General Policy provides no coverage because of the fraud committed by Woolever and JHM.  In the alternative, the Lincoln General Policy provides excess coverage to Northland's coverage.

2.   Denied.  The Lincoln General Policy provides no coverage because of the fraud committed by Woolever and JHM.  In the alternative, the Lincoln General Policy provides excess coverage to Northland's coverage.  In the further alternative, Lincoln General's and Northland's coverage is co-primary or co-excess and the two companies must pay their respective shares of the settlement based on the proportion the limits of coverage set forth in respective policies bears to the combined limits of coverage of the two policies.

3.   Denied.  This paragraph states a conclusion of law which requires no response.

### FIRST AFFIRMATIVE DEFENSE

JHM and Woolever committed fraud by misrepresenting to Lincoln General that the Tractor was trip-leased by JHM to

6

Woolever, and that the alleged trip-lease expired a few hours
before the accident.   JHM and Woolever committed this fraud in an
attempt to impose upon Lincoln General primary coverage for the
claims arising out of the Accident.   Lincoln General learned for
the first time almost two years after the Accident that the
purported trip lease was prepared after the Accident, and at the
time of the Accident, there was a permanent lease for the Tractor
from JHM to Woolever.   In accordance with the terms of Lincoln
General's Policy, it is entitled to void coverage for all claims
arising out of the Accident as a result of this fraud,
misrepresentation, and/or concealment.   Accordingly, Lincoln
General has no obligation to Northland, since it provides no
coverage for this claim.

## SECOND AFFIRMATIVE DEFENSE

At the time of the Accident, the Tractor was under the
exclusive possession, control and use of Woolever in accordance
with a permanent lease agreement between JHM and Woolever.
Regardless of what Statts was doing at the time of the Accident,
since he had just completed delivering a load for Woolever and
the Tractor was still under lease to Woolever, Northland provides
primary coverage for the claims arising out of the Accident.
Since the amount of the settlements paid by Northland is less
than the limits of coverage in its policy, it is not entitled to
receive anything from Lincoln General, even if it is determined
that Lincoln General provides coverage to JHM, Woolever, and/or
Statts.

### THIRD AFFIRMATIVE DEFENSE

JHM, Statts and Woolever are insureds under Northland's Policy.  In accordance with the terms of Northland's Policy, it provides primary coverage for the claims arising out of the Accident since the Tractor was leased by JHM to Woolever at the time of the Accident.

### FOURTH AFFIRMATIVE DEFENSE

If it is determined that Lincoln General provides primary coverage to JHM, Woolever, and/or Statts, then Lincoln General's coverage is co-primary with Northland, or if it is determined that Northland provides excess coverage, then Lincoln General's coverage is also excess, and the two companies must pay their respective shares of the settlement based on the proportion the limits of coverage set forth in respective policies bears to the combined limits of coverage of the two policies.  Since Northland only paid fifty percent of the settlements, and its proportionate share would be 72.73 percent, Lincoln General would not owe Northland anything, and to the contrary, Northland would owe Lincoln General $306,855 for the amount paid to settle the claims, not including defense and other costs.

### FIFTH AFFIRMATIVE DEFENSE

Northland provides coverage for Woolever.  Even if it is determined that Northland does not provide any coverage for JHM and Statts, it is still responsible to pay the full amount of the settlements since Lincoln General does not provide coverage to Woolever, JHM or Statts since the policy is void as a result of the fraud committed by Woolever and JHM.  In the alternative, in

the event it is determined that Lincoln General must provide coverage to JHM, Woolever, and/or Statts, Northland should still pay the full amount of the settlements and/or pay its proportionate share of 72.73 percent, depending on whether Northland's coverage is determined to be excess or co-primary.

## SIXTH AFFIRMATIVE DEFENSE

Lincoln General has already paid $675,000, in indemnity payments against its limits of coverage of $750,000. Accordingly, the most Lincoln General can be held liable to pay Northland is $75,000.

## SEVENTH AFFIRMATIVE DEFENSE

Northland is barred from recovering against Lincoln General as a result of its unclean hands. Northland was a willing participant in the fraud perpetrated upon Lincoln General by JHM and Woolever. Woolever sent Northland a copy of the Permanent Lease on November 17, 1995, after the Accident and before the Trip Lease was prepared. Although Lincoln General does not know if Northland was involved in the decision to prepare the Trip Lease and fraudulently represent that it was in effect at the time of the Accident, Northland was well aware that the Trip Lease was not prepared until after the Accident, and the Permanent Lease was the only agreement in effect at the time of the Accident. Northland concealed this fraud from Lincoln General, and cooperated in the perpetration of this fraud until it was discovered two years after the Accident at the deposition of Hazel Sinclair. As a result of its improper conduct, Northland should not recover anything from Lincoln General.

## CROSS-CLAIM AGAINST JHM AND STATTS

### PARTIES

1.    Defendant/Cross-Claim Plaintiff Lincoln General Insurance Company (hereinafter "Lincoln General") is an insurance company licensed to do business in Pennsylvania with a principal place of business at 3350 Whiteford Road, P.O. Box 3709, York, York County, Pennsylvania 17402-0136.

2.    Defendant J.H.M. Enterprises, Inc. (hereinafter "JHM") is a Pennsylvania corporation with its offices located at 1200 Valmont Drive, N.W. Williamsport, Lycoming County, Pennsylvania.

3.    Defendant Vernice Lee Statts (hereinafter "Statts") is an adult individual residing at 489 East Academy Street, Hughesville, Lycoming County, Pennsylvania.

### JURISDICTION AND VENUE

4.    This Court has supplemental jurisdiction over Lincoln General's cross-claim in accordance with 28 U.S.C. §1367(a) in that the cross-claim is related to the Plaintiff's claim.

5.    Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the cross-claim occurred in this District.

### FACTUAL BACKGROUND

6.    Lincoln General incorporates herein by reference its Answer with Affirmative Defenses to the Complaint.

7.    Lincoln General issued a Primary Auto Package insurance policy to JHM, Policy Number PAP 185770 0495 covering the period April 18, 1995 through April 18, 1996 (hereinafter "Lincoln

General Policy").  A true and correct copy of the Lincoln General Policy is attached hereto as Exhibit A.

8.    One of the vehicles scheduled under the Policy is a 1979 Freightliner, Serial Number CA213HM160222 (hereinafter "Tractor").

9.    The Lincoln General Policy provides $750,000 in liability coverage for each accident or loss.

10.   On March 1, 1990, JHM and Woolever entered into an "Agreement Of Lease Of Motor Vehicle Equipment" (hereinafter "Permanent Lease") whereby JHM leased the Tractor to Woolever.  A copy of the Permanent Lease is attached hereto as Exhibit B.

11.   The Permanent Lease provides that: "The term of this lease shall begin at 10 A.M. o'clock on 3/1/90, and terminate at the end of thirty (30) days, or at 10 A.M. o'clock 4/1/90, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation."

12.   The Permanent Lease provides that: "During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof."

13.   The Permanent Lease provides that: "During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment issued hereunder only when such is operated in the services of Lessee."

14. Prior to June 7, 1995, JHM and Statts entered into an agreement whereby JHM agreed to sell the Tractor to Statts.

15. It is believed that Statts made payments or provided other consideration to JHM for the purchase of the Tractor.

16. Statts became the equitable owner of the Tractor after he agreed to purchase it from JHM and began making payments or providing other consideration to JHM, even though JHM continued to hold title to the Tractor

17. On or about November 16 - 17, 1995, Statts was the owner-operator of the Tractor.

18. On or about November 16, 1995, Statts drove the Tractor, which was pulling a van trailer, to Watkins Glen, New York to pick up a load of salt for Woolever. After the trailer was loaded, Statts returned to his home in Pennsylvania for the night.

19. In the morning of November 17, 1995, Statts drove the tractor and loaded trailer to Ephrata, Pennsylvania in order to deliver the load of salt for Woolever.

20. After delivering the load of salt for Woolever, Statts allegedly began driving toward Berwick, Pennsylvania, where he intended to drop off the van trailer used to haul the load of salt for Woolever, and then pick up another load.

21. As Statts traveled toward Berwick to drop off the van trailer used to haul the load of salt for Woolever, he was involved in an accident on State Route 309 in Rush Township, Schuylkill County, Pennsylvania (hereinafter "Accident").

22. Statts drove into the rear of a vehicle being driven by Robert R. Clifford, and in which Karin Clifford was a passenger.

As a result of the collision, both Robert and Karin Clifford were killed.

23.   The Clifford vehicle struck a vehicle driven by Sherrill Mulligan.  As a result of the collision between the Clifford vehicle and the Mulligan vehicle, Sherrill Mulligan allegedly suffered personal injuries.

24.   There were placards affixed to the Tractor at the time of the Accident which identified Woolever and set forth Woolever's federal and state operating authority number.

25.   As a result of the Accident, the Estates of Robert and Karin Clifford filed a suit against Statts, JHM, and Woolever in the Court of Common Pleas of Schuylkill County at Docket No. S-650-1996 (hereinafter "Clifford Action").

26.   As a result of the Accident, the Mulligans filed a suit against Statts, JHM, and Woolever in the Court of Common Pleas of Schuylkill County at Docket No. S-1689-1997 (hereinafter "Mulligan Action").

27.   Lincoln General defended Statts and JHM in the Clifford Action and Mulligan Action.

28.   Northland issued a Truckers insurance policy to Woolever covering the period from September 1, 1995 through September 1, 1996 (hereinafter "Northland Policy").  A copy of the portion of the Northland Policy provided by Northland to Lincoln General is attached hereto as Exhibit C.

29.   The Northland Policy provides $2,000,000 in liability coverage for each accident.

30.   Northland defended Woolever in the Clifford Action and Mulligan Action under the Northland Policy.

31. After the Accident, Lincoln General demanded that Northland provide coverage to all of the Defendants.

32. Northland refused to provide a defense to Statts and JHM.

33. Lincoln General and Northland eventually agreed to each advance $675,000 (a total of $1,350,000) to settle the Clifford and Mulligan Actions, while reserving all rights to seek reimbursement from the other pending a determination of the coverage issues involved in this case.

34. The Lincoln General Policy expressly states that:

> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:
>
> a.  This Coverage Form;
>
> b.  The covered "auto";
>
> c.  Your interest in the covered "auto"; or
>
> d.  A claim under this Coverage Form.

35. JHM, Statts and Woolever all qualify as insureds under the Lincoln General policy. JHM is the named insured. Statts is an "insured" under the Lincoln General Policy since he was using the Tractor with JHM's permission. Woolever is an insured since the Lincoln General Policy defines an "insured" to include anyone who is liable for the conduct of an "insured" described in the Lincoln General Policy; and, since Woolever admitted in the underlying actions that it was liable for Statts' conduct, it qualifies as an insured under the Lincoln General Policy.

36. After the Accident, JHM and Woolever represented to Lincoln General that the load of salt hauled for Woolever from

14

Watkins Glen, New York to Ephrata, Pennsylvania was the subject of a trip lease between JHM and Woolever.

37.   JHM and Woolever provided Lincoln General with an "Agreement of Lease Of Motor Vehicle Equipment" dated November 16, 1995, for the Tractor (hereinafter "Trip Lease").  A copy of the Trip Lease is attached as Exhibit "D".

38.   The Trip Lease provides that: "The term of this lease shall begin at 4:00 P.M. o'clock on 11/16/95 and terminate at the end of thirty (30) days, or at 8:00 A.M. o'clock 11/17/95, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation."

39.   The Trip Lease is signed by Jay McCormick, President of JHM, and Hazel Sinclair, Secretary/Treasurer of Woolever.

40.   JHM and Woolever represented on the face of the Trip Lease that it was signed on November 16, 1995.

41.   The Trip Lease further provides a certification by Harold Sinclair, a part-owner of Woolever, that on 11/16/95, he "carefully inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and the Lessee's identification placard was displayed on each side of the power unit."

42.   In accordance with the Trip Lease, it appeared as if Woolever's lease of the Tractor and van trailer ended prior to the Accident.

43.   JHM and Woolever represented to Lincoln General that the Trip Lease was in effect at the time the Accident occurred.

44.   JHM and Woolever failed to disclose the existence of the Permanent Lease for the Tractor to Lincoln General until almost two years after the Accident.

45.   Jay McCormick, the owner of JHM, and Hazel Sinclair, a part owner of Woolever, were deposed for purposes of the Clifford and Mulligan Actions on November 4, 1997.  Jay McCormick testified first.  Jay McCormick testified that the load of salt which was hauled by Statts immediately before the Accident was covered by a trip lease.  He further testified that the only arrangement he had with Woolever prior to the Accident was through trip leases.  Jay McCormick never mentioned the Permanent Lease on the Tractor, or that JHM had entered into permanent leases with Woolever for other vehicles.

46.   Hazel Sinclair was deposed immediately after Jay McCormick.  She disclosed for the first time that the Trip Lease was not in existence on November 16 - 17, 1995, and that there was a Permanent Lease for the Tractor that had been executed in 1990.  The Permanent Lease was produced for the first time at Hazel Sinclair's deposition.

47.   At her deposition, Hazel Sinclair testified that she made up the Trip Lease on November 18, 1995, after the Accident had occurred.

48.   JHM and Woolever were well aware of the Permanent Lease at the time of the Accident.  On November 17, 1995, the day of the Accident and before the Trip Lease was even prepared, Hazel Sinclair of Woolever faxed to Northland a copy of the Permanent Lease.  (See fax notation on Exhibit C).

49.   Although Northland knew that the Permanent Lease was in effect at the time of the Accident, it concealed this information from Lincoln General and cooperated in JHM and Woolever's misrepresentations to Lincoln General that the Trip Lease was in effect at the time of the Accident.

50.   The statements made by JHM and Woolever in the Trip Lease that it was executed on 11/16/95 are false.

51.   The statement made by Woolever in the Trip Lease that Harold Sinclair carefully inspected the equipment on 11/16/95 is false.

52.   JHM and Woolever knew that the statements made in the Trip Lease as to the date it was executed and the alleged careful inspection of the equipment by Harold Sinclair on 11/16/95 were false.

53.   JHM and Woolever attempted to deceive Lincoln General into believing that there was a Trip Lease which had expired a few hours before the Accident, when it knew that there was a Permanent Lease in effect at the time of the Accident which required Woolever to provide liability coverage for the Tractor.

54.   JHM's and Woolever's calculated plan to deceive Lincoln General about the nature of the lease of the Tractor was an attempt to impose on Lincoln General primary liability coverage for the Accident when it appropriately belonged with Northland.

55.   JHM and Woolever committed a fraud upon Lincoln General, and intentionally concealed and/or misrepresented material facts concerning their interest in the Tractor and the claim for the Accident.

56.   The identity of the Permanent Lease was a material fact involving Woolever's, JHM's and Statts' claim for coverage under the Lincoln General Policy, and whether Lincoln General or Northland was required to provide primary coverage.

57.   JHM and Woolever intentionally concealed the existence of the Permanent Lease in an attempt to impose on Lincoln General primary liability coverage for the Accident when it appropriately belonged with Northland.

58.   Woolever was contractually obligated in accordance with the terms of the Permanent Lease to furnish and pay the costs of all public liability, property damage and cargo insurance upon the Tractor.

59.   Lincoln General believes that JHM and Woolever were concerned that Woolever's insurance rates would go up if its insurance carrier was required to provide primary coverage, and developed a calculated plan to shift responsibility for the Accident to JHM's insurance carrier.

60.   Lincoln General believes that JHM did not care if its insurance rates went up as a result of its insurance carrier providing primary coverage for the Accident, since JHM did not intend to continue its own trucking insurance after the Policy expired on April 18, 1996, but rather planned to begin hauling exclusively for Woolever as an owner-operator, using Woolever's insurance to cover JHM's operations.

61.   JHM's and Woolever's deception and fraud involving their failure to disclose the existence of the Permanent Lease and misrepresentations as to the Trip Lease executed after the Accident were all part of its plan to manipulate insurance

coverage and impose on JHM's liability insurance carrier responsibility for incidents that should have been covered by Woolever's liability insurance carrier.

62.  The liability coverage afforded under the Lincoln General Policy is void as to JHM, Woolever and/or Statts for the claims arising out of the Accident as a result of the fraud, intentional concealment, and misrepresentations of material facts committed by JHM and Woolever.

WHEREFORE, Lincoln General Insurance Company respectfully requests that the Court declare that the liability coverage provided under the Lincoln General Policy is void as to JHM and Statts as a result of the fraud, intentional concealment, and misrepresentations of material fact committed by JHM and Woolever, and declare that Lincoln General had no obligation to provide a defense or indemnity to JHM and Statts, for the claims arising out of the Accident.

## COUNTERCLAIM AGAINST NORTHLAND

### PARTIES

63.  Lincoln General Insurance Company is an insurance company licensed to do business in Pennsylvania with a principal place of business at 3350 Whiteford Road, P.O. Box 3709, York, York County, Pennsylvania 17402-0136.

64.  Northland Insurance Company is an insurance company licensed to do business in Pennsylvania with its principal place of business at 1295 Northland Drive, St Paul, Minnesota.

## JURISDICTION AND VENUE

65.  This Court has jurisdiction over Lincoln General's counterclaim in accordance with 28 U.S.C. §1332 in that there is complete diversity of citizenship between Lincoln General and Northland, and in accordance with 28 U.S.C. §1367(a) in that the counterclaim is related to the Plaintiff's claim.

66.  Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the counterclaim occurred in this District.

## COUNT I

67.  Lincoln General incorporates herein by reference its Answer with Affirmative Defenses to the Complaint, and paragraphs 1 through 62 above of its cross-claim against JHM and Statts as if set forth herein at length.

68.  Lincoln General and Northland reserved all rights to seek reimbursement from the other for all indemnity payments made arising out of the Accident pending a determination of the coverage issues involved in this case.

69.  To the extent the Court determines that Lincoln General has no obligation to provide coverage to JHM, Woolever and Statts as a result of JHM and Woolever's fraud, intentional concealment, and misrepresentations of material facts, then Woolever is required to reimburse Lincoln General for all indemnity payments made in the amount of $675,000, since Woolever is solely liable for all indemnity payments if Lincoln General has no obligation.

WHEREFORE, Lincoln General demands judgment in its favor and against Northland for $675,000, together with interest and costs.

## COUNT II

70.  Plaintiff incorporates herein by reference its Answer with Affirmative Defenses to the Complaint, and paragraphs 1 through 62 of its cross-claim as if set forth herein at length.

71.  In the event the Court does not void the Lincoln General Policy as to JHM, Woolever, and Statts, then Lincoln General claims in the alternative as follows.

72.  Woolever is the named "insured" under the Northland Policy.

73.  The Northland Policy defines an "insured" to include anyone while using with Woolever's permission a covered "auto" hired by Woolever.

74.  The Tractor constitutes a covered "auto" since under Federal Law and the Permanent Lease, Woolever was required to provide liability coverage on the Tractor.

75.  Statts qualifies as an "insured" under the Northland Policy since he was using the Tractor with Woolever's permission.

76.  The Northland Policy defines an "insured" to include anyone who is liable for the conduct of an "insured" described in the Northland Policy.

77.  JHM qualifies as an "insured" under the Northland Policy since the plaintiffs in the Clifford and Mulligan Actions claimed that JHM is liable for Statts' conduct, and Statts is an insured under the Northland Policy.

78.  The Northland Policy expressly states:

> This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority.

79.  The Lincoln General Policy expressly states:

> This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker".

80.  In accordance with the other insurance clauses in both the Northland Policy and the Lincoln General Policy, Northland's coverage for Woolever, Statts, and JHM is primary since the Tractor was hired by Woolever and used exclusively in its business as a "trucker" and pursuant to operating rights granted to Woolever by both the federal and state public authorities.

81.  Northland had the primary obligation to defend and indemnify Woolever, Statts and JHM from all claims arising out of the Accident.

82.  Northland breached its Policy by refusing to provide primary liability coverage to Statts and JHM.

83.  As a result of Northland's refusal to provide primary liability coverage to Statts and JHM, Lincoln General incurred $91,511.35 in expenses to defend Statts and JHM which should have been incurred by Northland.

84.  As a result of Northland's refusal to provide primary liability coverage to Statts and JHM, Lincoln General paid $675,000 in claims associated with the Accident.

85.  Northland is obligated to reimburse Lincoln General for all expenses it has incurred to defend Statts and JHM, and all payments it has made to claimants arising from the Accident.

WHEREFORE, Lincoln General demands judgment in its favor and against Northland for $766,511.35, together with interest and costs.

## COUNT III

86.   Plaintiff incorporates herein by reference its Answer with Affirmative Defenses to the Complaint, paragraphs 1 through 62 of its cross-claim, and paragraphs 63 - 85 of its counterclaim as if set forth herein at length.

87.   In the event it is determined that Northland does not provide coverage for JHM and Statts, Lincoln General avers in the further alternative.

88.   Woolever is liable for Statts' conduct at the time of the Accident.

89.   Woolever maintained exclusive possession, control and use of the Tractor at the time of the Accident.

90.   As between Woolever and JHM, Woolever should bear primary responsibility for Statts' conduct since Statts was operating the Tractor under Woolever's operating authority and under its exclusive control at the time of the Accident.

91.   Since the amount of the payments made by Lincoln General and Northland arising out of the Accident fall within the Northland's limits of coverage of $2,000,000, Northland should reimburse Lincoln General for the payments it made to settle the Clifford and Mulligan Actions of $675,000.

WHEREFORE, Lincoln General demands judgment in its favor and against Northland for $675,000, together with interest and costs.

## COUNT IV

92.   Plaintiff incorporates herein by reference its Answer with Affirmative Defenses to the Complaint, paragraphs 1 through

62 of its cross-claim, and paragraphs 63 - 92 of its counterclaim as if set forth herein at length.

93.  In the event it is determined that Lincoln General and Northland both provide coverage to JHM, Statts, and Woolever, the respective policies both provide primary or excess coverage, and Woolever and JHM bear equal responsibility for Statts' conduct, then Lincoln General avers in the further alternative.

94.  The Lincoln General and Northland Policies contain identical provisions on the apportionment of payments if their respective policies cover a claim on an equal basis, either primary or excess.  In accordance with this provision, Lincoln General and Northland agreed to apportion payments based on the proportion that the limits of insurance in each policy bears to the combined limits of insurance of the two policies.

95.  The limits of insurance in the Lincoln General Policy is $750,000, and the limits of insurance in the Northland Policy is $2,000,000, for a combined limits of insurance of $2,750,000. Lincoln General's proportion of the combined limit is 27.27 percent, and Northland's proportion of the combined limit is 72.73 percent.

96.  Lincoln General and Northland each paid $675,000 to settle the Clifford and Mulligan Actions.  To the extent each is responsible for its proportionate share, Lincoln General's share is $368,145, and Northland's share is $981,855.

97.  Lincoln General paid $306,855 in excess of its proportionate share to settle the Clifford and Mulligan Actions.

98.  Northland claims it spent $51,769.94 in defending Woolever in the Clifford and Mulligan Actions.

99.  Lincoln General spent $91,511.35 to defend JHM and Statts in the Clifford and Mulligan Actions.

100. The total amount spent by Northland and Lincoln General to defend Woolever, JHM and Statts in the Clifford and Mulligan Actions is $143,281.29.

101. Lincoln General's proportionate share of the total defense costs is $39,072.80, and Northland's proportionate share is $104,208.49.

102.  Lincoln General paid $52,438.55 in excess of its proportionate share of defense costs in the Clifford and Mulligan Actions.

103. To the extent it is determined that Lincoln General and Northland must provide coverage on the same basis, either primary or excess, than Lincoln General is entitled to recover from Northland $359,293.55 in payments it made in excess of its proportionate share.

WHEREFORE, Lincoln General demands judgment in its favor and against Northland for $359,293.55, together with interest and costs.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By _____
Jonathan H. Rudd, Esq.
Attorney I.D. No. 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5405

Attorneys for Lincoln General Insurance Company

Dated: 8/2/01

No. PAP 185770 0495

Renewal of Number   1857700494

*Exh A*

## LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD, YORK, PENNSYLVANIA 17402

### PRIMARY AUTO PACKAGE DECLARATIONS

**ITEM ONE:**
ISSUED TO:

JHM ENTERPRISES, INC.
1200 VALLAMONT DRIVE, N.W.
WILLIAMSPORT     PA 17701

CORPORATION

POLICY PERIOD:

FROM: 04/18/95    TO: 04/18/96

AGENT OR BROKER:
5520

SUSQUEHANNA INS. ASSOC., INC.
6 E. 18TH STREET
SELINSGROVE     PA 17870

*MCS-90*

KIND OF BUSINESS:    TRUCKMAN
LOCATION OF BUSINESS: SAME AS ABOVE

*8095*

### THIS POLICY DOES NOT PROVIDE COLLISION DAMAGE TO RENTAL VEHICLES

**ITEM TWO**
SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos".  "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the   Truckers Coverage Form   next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more symbols from the COVERED AUTOS Section of Truckers Coverage Form show which autos are covered autos.) | - - - - L I M I T - - - - THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY INSURANCE | 46,47 | $    750,000 | 21,681 |
| PERSONAL INJURY PROTECTION (or equivalent) | 46 | Separately stated in each PIP e n d o r s e m e n t - minus $          deductible | 285 |
| ADDED PERSONAL INJURY PROTECTION (or equivalent) | 46 | Separately  stated  in  each a d d e d  P I P  endorsement | 45 |
| AUTO MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 46 | $    35,000 | 35 |
| UNDERINSURED MOTORISTS (when not incl. in UM Cov) | 46 | $    35,000 | 10 |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 46 | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto but no ded applies  to loss caused by fire  or lightning.   See ITEM FOUR For hired or borrowed autos. | 2,758 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto.  See ITEM FOUR for hired or borrowed autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 46 | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto.  See ITEM FOUR for hired or borrowed autos. | 5,368 |
| PHYSICAL DAMAGE TOWING & LABOR (N/A in CA) | | $          for each disablement of a private passenger auto. | |

| | |
|---|---|
| GENERAL LIABILITY COVERAGE PREMIUM FOR ENDORSEMENTS | 1 |
| MISCELLANEOUS CHARGES * | |
| ESTIMATED PREMIUM | 30,183 |

FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY
AT ITS INCEPTION:     SEE ENDORSEMENT SCHEDULE

* None at time of issue.

Page 1 of 2

PAP 0002 08 93

ISSUE DATE: 04/27/95
UNDERWRITER: ERIC HIMES
TECHNICIAN: DMUMMERT

HOME OFFICE COPY

DECLARATIONS -- PRIMARY AUTO PACKAGE POLICY

**ITEM THREE**
SCHEDULE OF COVERED AUTOS YOU OWN - SEE SEPARATE SCHEDULE OF COVERED "AUTOS"

**ITEM FOUR**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR | PREMIUM |
|---|---|---|---|---|
| PA | 8,400 | 13.558 | | 1,139 |

PHYSICAL DAMAGE - SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUM

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY - DEDUCTIBLE | | RATE | MAX. NO. OF AUTOMOBILES IN POSSESSION | COVERAGE DAYS | ESTIMATED PREMIUM |
|---|---|---|---|---|---|---|
| COMPREHENSIVE | Actual Cash Value, Cost of Repair or | $      whichever is less minus $      ded. for each covered automobile but no deductible applies to loss caused by fire or lightning. | | | | |
| SPECIFIED CAUSES OF LOSS | | $      whichever is less minus $      ded. for each covered automobile. | | | | |
| COLLISION | | $      whichever is less minus $      ded. for each covered automobile. | | | | |
| | | | | TOTAL PREMIUM | | |

**ITEM FIVE**

SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | $ |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | | $ |

**ITEM SIX**

GENERAL LIABILITY

| COVERAGES | LIMIT | TOTAL GENERAL LIABILITY PROVISIONAL ANNUAL POLICY PREMIUM |
|---|---|---|
| GENERAL AGGREGATE LIMIT (other than products & completed operations) | $ | |
| PRODUCT & COMPLETED OPERATIONS AGGREGATE LIMIT | $ | |
| PERSONAL & ADVERTISING INJURY LIABILITY LIMIT | $ | |
| EACH OCCURENCE LIMIT | $ | |
| FIRE DAMAGE LIMIT (any one fire) | $ | |
| MEDICAL EXPENSE LIMIT (any one person) | $ | |
| | | $ |

The estimated policy premium is based on the exposures y o u  t o l d  u s  you would have when this policy began. We will compute your final premium due when we determine your actual exposures. The estimated policy premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due we may examine your records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year the premium shall be computed annually based on our rates o r premiums in effect at the beginning of each year of the policy. Your Policy Period begins 12:01 A.M. standard time at the address shown above.

Countersigned _____    By: _____

(Date)                                (Authorized Representative)

PAP 0002 08 93

HOME OFFICE COPY

Insureds Name: JHM ENTERPRISES, IN 

**SCHEDULE OF COVERED AUTOS**                                          Page:    1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

--------------------------------------------------------------------------------

| UIT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCH | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1985 | WHITE | TRACTOR | 1HUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 2 | 1969 | FRUEHAUF | TRAILER | -S UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 3 | 1969 | FRUEHAUF | TRAILER | -S UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 4 | 1974 | TRLMOBILE | TRAILER | -S K41315 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 5 | 1967 | FRUEHAUF | TRAILER | -S UNFE290102 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 6 | 1969 | FRUEHAUF | TRAILER | -S UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 7 | 1969 | FRUEHAUF | TRAILER | -S UNJ325402 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER | -S K41316 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER | -S K41317 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER | -S K41318 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 11 | 1993 | J & L | TANK TRLR | -S 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | 81 | | 10 | WILLIAMSPORT |
| 12 | 1988 | WHITE | TRACTOR | 4V3YZBZZXJN601032 | C | 50000 | IN | 50521 | 220 | PA | 81 | | 10 | WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYD90P287269 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 15 | 1981 | BUTLER | TRAILER | -S 1TB114028BM452714 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | C | 80000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |

*Handwritten annotations:*
Chg #1
D #3
c#
3 c #
Chg # 2
#4
18⁰ Fruehauf Trailer # 004309
1⁹ 1980 Great Dane Trailer # B17876 } A #4

olicy # PAP 185770 0495  Insureds Nam ● ENTERPRISES, INC. ●                    Page:    2

---- COVERAGE and PREMIUM BREAKDOWN ---

|  | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ompany Unit Number | 1 | | 2 | | 3 | | 4 | | 5 | |
| nsureds Unit Number | 1 | | 4 | | 5 | | 6 | | 7 | |
| IABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | 750,000 | 3840 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 |
| Personl Injury Protection | 5,000 | 57 | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | 5,000 | 9 | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | 35,000 | 7 | | | | | | | | |
| UNDERinsured Motorist | 35,000 | 2 | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Z⌐ Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| L⌐ .ITY TOTAL -----> | | 3,915 | | 122 | | 122 | | 122 | | 122 |

| HYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 30,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 16,000 | | 4,000 | | 4,000 | | 5,000 | | 4,000 | |
| Depreciated Value | 10,678 | | 6,371 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
|  | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (⌐em. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Com⌐rehensive | 1,000 | 416 | 1,000 | 74 | 1,000 | 74 | 1,000 | 93 | 1,000 | 74 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 932 | 1,000 | 133 | 1,000 | 133 | 1,000 | 165 | 1,000 | 133 |
| PHYSICAL DAMAGE TOTAL -> | | 1348 | | 207 | | 207 | | 258 | | 207 |

| Premium to Value % | 8.43 | | 5.18 | | 5.18 | | 5.16 | | 5.18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 5263 | | 329 | | 329 | | 380 | | 329 |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT     -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Name  ENTERPRISES, INC.                          Page:    3

---- COVERAGE and PREMIUM BREAKDOWN ---

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 6 | | 7 | | 8 | | 9 | | 10 | |
| Insureds Unit Number | 8 | | 9 | | 10 | | 11 | | 12 | |
| **LIABILITY** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** |
| Liability | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zon  Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| L1     ITY TOTAL -----> | | 122 | | 122 | | 122 | | 122 | | 122 |

| **PHYSICAL DAMAGE** | **Rating** | | **Rating** | | **Rating** | | **Rating** | | **Rating** | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 20,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 4,000 | | 4,000 | | 5,000 | | 5,000 | | 5,000 | |
| Depreciated Value | 5,096 | | 5,096 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | **Amount** | | **Amount** | | **Amount** | | **Amount** | | **Amount** | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (  m. included in comp) | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** |
| Comprehensive | 1,000 | 73 | 1,000 | 73 | 1,000 | 93 | 1,000 | 93 | 1,000 | 93 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 149 | 1,000 | 149 | 1,000 | 165 | 1,000 | 165 | 1,000 | 165 |
| PHYSICAL DAMAGE TOTAL -> | | 222 | | 222 | | 258 | | 258 | | 258 |

| Premium to Value % | 5.55 | | 5.55 | | 5.16 | | 5.16 | | 5.16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 344 | | 344 | | 380 | | 380 | | 380 |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT        -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Nam ● ENTERPRISES, INC.          Page:    4

#### ---- COVERAGE and PREMIUM BREAKDOWN ---

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 11 | | 12 | | 14 | | 15 | | 16 | |
| Insureds Unit Number | | | | | | | | | | |
| **LIABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 122 | 750,000 | 3840 | 750,000 | 3840 | UNHOOKED | 122 | 750,000 | 3840 |
| Personl Injury Protection | COVERAGE | | 5,000 | 57 | 5,000 | 57 | COVERAGE | | 5,000 | 57 |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | 5,000 | 9 | 5,000 | 9 | | | 5,000 | 9 |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | 35,000 | 7 | 35,000 | 7 | | | 35,000 | 7 |
| UNDERinsured Motorist | | | 35,000 | 2 | 35,000 | 2 | | | 35,000 | 2 |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 63 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| LIABILITY TOTAL -----> | | 122 | | 3,915 | | 3,915 | | 122 | | 3,915 |

| | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
| Cost New | 36,312 | | | | 55,000 | | 32,000 | | 20,000 | |
| Estimated Value | 36,312 | | | | 19,000 | | 10,000 | | 7,500 | |
| Depreciated Value | 28,119 | | | | 21,275 | | 8,155 | | 5,096 | |
| Dumping Code | N | | | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | 63 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y    00-00 | | | | Y    00-00 | | Y    00-00 | | Y    00-00 | |
| Owned/Hired | OWNED | | | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 379 | | | 1,000 | 401 | 1,000 | 210 | 1,000 | 220 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 564 | | | 1,000 | 770 | 1,000 | 314 | 1,000 | 677 |
| PHYSICAL DAMAGE TOTAL -> | | 943 | | | | 1171 | | 524 | | 897 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 2.60 | | | | 6.16 | | 5.24 | | 11.96 | |
| PREMIUM TOTAL per UNIT -> | | 1065 | | 3915 | | 5086 | | 646 | | 4812 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT      -> | | | | | | | | | | |

HOME OFFICE COPY

Policy # PAP 185770 0495  Insureds Nar ⬤ 1 ENTERPRISES, INC.                                    ⬤                          Page:    5

---- COVERAGE and PREMIUM BREAKDOWN --

| | | | UNITS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 17 | | | | | | | | | | |
| Insureds Unit Number | | | | | | | | | | | |
| **LIABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | |
| Liability | 750,000 | 3840 | | | | | | | | | |
| Personl Injury Protection | 5,000 | 57 | | | | | | | | | |
| Additional Benefits | | | | | | | | | | | |
| Medical Expense | | | | | | | | | | | |
| Work Loss | 5,000 | 9 | | | | | | | | | |
| Accidental Death | | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | | |
| Combined First Party | | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | | |
| Medical Payments | | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | | |
| UNinsured Motorist | 35,000 | 7 | | | | | | | | | |
| UNDERinsured Motorist | 35,000 | 2 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | | |
| Rating Code/Line Code | 63 | | | | | | | | | | |
| Rating Factor % | | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | | | | | | | | | |
| L? ITY TOTAL -----> | | 3,915 | | | | | | | | | |

| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 60,000 | | | | | | | | | | |
| Estimated Value | 24,000 | | | | | | | | | | |
| Depreciated Value | 27,422 | | | | | | | | | | |
| Dumping Code | N | | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | | |
| Rating Code/Line Code | 63 | | | | | | | | | | |
| Rating Factor % | | | | | | | | | | | |
| Stated Amount/Zones | Y    00-00 | | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | | |
| Loss of Use | 3,000 | | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | | |
| (prem. included in comp) | | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | |
| Co. ehensive | 1,000 | 392 | | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | | |
| Collision | 1,000 | 754 | | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 1146 | | | | | | | | | |

| Premium to Value % | 4.78 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 5061 | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Co.    Surchg/Tax - Code | | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | | |
| TOTAL per UNIT        -> | | | | | | | | | | | |

L 1063 03 93                                                                                                              HOME OFFICE COPY

Attached to and forming part ● licy Number    PAP 1857700495    E ● VE    4/18/95 TO  4/18/96
ENDORSED  9/19/95
ISSUED TO:  JHM ENTERPRISES, INC.
            1200 VALLAMONT DRIVE, N.W.
            WILLIAMSPORT      PA 17701

## DRIVER SCHEDULE

The following individuals are  operators under this policy.
Any changes during the policy period should be endorsed.

| # | Driver Name | Date of Birth | Operator Number | St Lic | SS No |
|---|---|---|---|---|---|
| 1 | BARTLOW, DALE A | 7/13/58 | 18263871 | PA | |
| 2 | BROWN, BARRY L | 3/01/59 | 18424697 | PA | |
| 3 | BROWN, WILLIAM T | 12/29/60 | 19052931 | PA | 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 |
| 4 | CONNER, LEBERT | 1/18/35 | 08890771 | PA | |
| 5 | DANLEY, WILLIAM L. | 12/03/42 | 11833013 | PA | |
| 6 | DILTZ, DALE | 11/03/54 | 16615826 | PA | |
| 7 | EASTON, GEORGE C | 2/06/53 | 15903700 | PA | |
| 8 | EVANS, CRAIG EUGENE | 4/03/60 | 18989568 | PA | |
| 10 | FROME, EMERY | 1/20/51 | 14900911 | PA | |
| 12 | FUOSS, CLYDE | 6/22/57 | 17750412 | PA | |
| 13 | FUOSS, MILTON S | 6/19/32 | 07276695 | PA | |
| 14 | GARLICK, KENNETH RAYMOND | 7/19/54 | 15176214 | PA | |
| 16 | HILLIS, RICHARD F | 8/01/37 | 09529139 | PA | |
| | LAMEY, DEAN EDWIN | 4/17/48 | 11188837 | PA | |
| | RAAB, JEFFREY | 5/16/57 | 17744809 | PA | |
| 19 | REYNOLDS, MARTIN J. JR. | 12/19/42 | 13238010 | PA | |
| 20 | SINCLAIR, HAROLD | 7/12/55 | 16554533 | PA | |
| 21 | SMITH, JAMES S | 3/26/55 | 23564027 | PA | |
| 22 | SONES, MICHAEL | 12/24/67 | 21441365 | PA | |
| 23 | STATTS, VERNICE L | 10/18/34 | 08975318 | PA | |
| 24 | THOMAS, ARTHRU B. JR. | 7/24/34 | 08132269 | PA | |
| 25 | WALIZER, GREGORY | 3/26/56 | 15244865 | PA | |
| 26 | WISE, WILLIAM M. | 9/21/29 | 07942850 | PA | |
| 27 | WOOLEVER, ARTHUR R. | 1/25/53 | 15716955 | PA | |
| 28 | WOOLEVER, DONALD | 5/15/24 | 05109262 | PA | |
| 29 | WOOLEVER, E. COLEMAN | 3/31/26 | 05684093 | PA | |
| 30 | WOOLEVER, MARK ARTHUR | 8/17/51 | 15345696 | PA | |
| 31 | WOOLEVER, SCOTT C. | 12/16/54 | 16653787 | PA | |
| 33 | COCHRAN, CHARLES | 7/01/67 | 21284745 | PA | |
| 35 | FREEZER, MICHAEL | 1/15/55 | 16547100 | PA | |
| 36 | HEATH, THOMAS | 6/09/51 | 15282772 | PA | |
| 37 | HERB, DAVID L SR | 4/19/53 | 16842177 | PA | |
| 38 | JONES, RALPH | 5/24/64 | 20452332 | PA | |
| 39 | KIRESKI, JOHN S | 1/15/49 | 15535045 | PA | |
| 40 | NICHOLS, RICHARD | 1/16/54 | 16394860 | PA | |
| ` | REED, DAVID | 10/08/60 | 19107192 | PA | |
| | SUMMER, KEITH | 11/22/55 | 16983979 | PA | |
| 43 | FREDERICKS, RICHARD A | 3/22/31 | 06835773 | PA | |

 

COMMERCIAL AUTO

Attached to and forming part of Policy Number                EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**STATED AMOUNT INSURANCE**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
    GARAGE COVERAGE FORM
    TRUCKERS COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date
is indicated above.

SCHEDULE
Designation or Description of Covered "Autos"

| UNIT # | YEAR, MAKE AND MODEL | SERIAL NUMBER | COVERAGE | LIMIT OF INSURANCE | POLICY PREMIUM |
|--------|----------------------|---------------|----------|--------------------|----------------|
|        |                      |               |          |                    |                |
|        | SEE POLICY SCHEDULE OF COVERED AUTOS | | | | |
|        |                      |               |          |                    |                |

**A.** This endorsement provides o n l y those
coverages where a premium is shown in the
Schedule.   Each of these coverages applies
o n l y  to the vehicles shown as covered
"autos".

**B.** For a covered "auto" described in the
Schedule, the PHYSICAL DAMAGE COVERAGE Limit
of Insurance is replaced by the following:

**C. LIMIT OF INSURANCE**

The most we will pay for "loss" in any one
"accident" is the least of:

**1.** The actual cash value of the damaged or
stolen property as of the time of the
"loss";

**2.** The cost of repairing or replacing the
damaged or stolen property; or

**3.** The amount shown in the Schedule.

Countersigned by: _____

Copyright, Insurance Services Office, Inc., 1991

CA 99 28 06 92

XXXXXXXXXXXX



COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the Policy Declarations for the information.)

## TRUCKERS COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully  to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases  that appear in quotation marks have special meaning.   Refer to **SECTION VI – DEFINITIONS.**

## SECTION I – COVERED AUTOS

**ITEM TWO** of the Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

SYMBOL              DESCRIPTION

41 = ANY "AUTO".

42 = OWNED "AUTOS" ONLY.  Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins.

43 = OWNED COMMERCIAL "AUTOS" ONLY.  Only those trucks, tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins.

44 = OWNED "AUTOS" SUBJECT TO NO-FAULT.  Only those "autos" you own  that are required to have  No-Fault benefits  in the state where  they are licensed  or principally garaged.  This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the  No-Fault law  in the state where they  are  licensed  or  principally garaged.

45 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW.  Only those "autos" you own that, because of the law in the state  where they are licensed or principally  garaged,  are required to have  and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are

subject to the same state uninsured motorists requirement.

46 = SPECIFICALLY DESCRIBED "AUTOS".  Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown  (and for Liability Coverage any "trailers" you don't own while  attached  to  any  power unit described in ITEM THREE).

47 = HIRED "AUTOS" ONLY.  Only those "autos" you lease, hire, rent or borrow.  This does not include any "private passenger type auto" you lease, hire, rent or borrow from any member of your household, any of your employees, partners or agents or members of their households.

48 = "TRAILERS" IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT.  Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession.

49 = YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN TRAILER INTERCHANGE  AGREEMENT.  Only those "trailers" you own or hire while in the possession of anyone else  under a written "trailer" interchange agreement. When Symbol "49" is entered next to a Physical Damage Coverage in ITEM TWO of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage.

50 = NONOWNED "AUTOS" ONLY.  Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

CA 00 12 12 93 A

xxxxxxxxxxxxxxxx

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1. If symbols 41, 42, 43, 44 or 45 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 46 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage.

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered auto.

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II - LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **WHO IS AN INSURED**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

   (2) Your employee or agent if the covered "auto" is a "private passenger type auto" and is owned by that employee or agent or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

   (5) A partner of yours for a covered "private passenger type auto" owned by him or her or a member of his or her household.

   c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

   (1) Is being used exclusively in your business as a "trucker"; and

   (2) Is being used pursuant to operating rights granted to you by a public authority.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

    (1) Is being used exclusively in your business as a "trucker"; and

    (2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

a. Any "trucker" or his or her agents or employees, other than you and your employees:

    (1) If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    (2) If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and employees while the "autos" are being used exclusively in the "truckers" business and pursuant to operating rights granted to the "trucker" by a public authority.

b. Any rail, water or air carrier or its employees or agents, other than you and your employees, for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

    (1) Is being transported by the carrier; or

    (2) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. **COVERAGE EXTENSIONS**

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

    (1) All expenses we incur.

    (2) Up to $250 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

    (3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

    (4) All reasonable expenses incurred by an "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

    (5) All costs taxed against the "insured" in any "suit" we defend.

    (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out-of-State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

    (1) Increase the Limit of Insurance for Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

    (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **EXCLUSIONS**

This insurance does not apply to any of the following:

1. **EXPECTED OR INTENDED INJURY**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **CONTRACTUAL**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

**3. WORKERS' COMPENSATION**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**5. FELLOW EMPLOYEE**

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

**6. CARE, CUSTODY OR CONTROL**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control.  But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. HANDLING OF PROPERTY**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. OPERATIONS**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

**10. COMPLETED OPERATIONS**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. POLLUTION**

"Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxxx

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The "discharge", dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## 13. RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III — TRAILER INTERCHANGE COVERAGE

### A. COVERAGE

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   a. Comprehensive Coverage. From any cause except:

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

   b. Specified Causes of Loss Coverage. Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   c. Collision Coverage Caused by:

    **(1)** The "trailer's" collision with another object; or

    **(2)** The "trailer's" overturn.

**2.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. COVERAGE EXTENSIONS**

Supplementary Payments. In addition to the Limit of Insurance, we will pay for you:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**c.** All reasonable expenses incurred at our request, including actual loss of earnings up to $100 a day because of time off from work.

**d.** All costs taxed against the "insured" in any "suit" we defend.

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**B. EXCLUSIONS**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a.** Nuclear Hazard.

    **(1)** The explosion of any weapon employing atomic fission or fusion; or

    **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action.**

    **(1)** War, including undeclared or civil war;

    **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for loss of use.

**3. Other Exclusions.**

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**C. LIMIT OF INSURANCE AND DEDUCTIBLE**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Declarations:

**1.** The actual cash value of the damaged or stolen property at the time of the "loss".

**2.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**3.** The Limit of Insurance shown in the Declarations.

**SECTION IV – PHYSICAL DAMAGE COVERAGE**

**A. COVERAGE**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a.** Comprehensive Coverage. From any cause except:

    **(1)** The covered "auto's" collision with another object; or

    **(2)** The covered "auto's" overturn.

**b.** Specified Causes of Loss Coverage. Caused by:

    **(1)** Fire, lightning or explosion;

    **(2)** Theft;

    **(3)** Windstorm, hail or earthquake;

    **(4)** Flood;

    **(5)** Mischief or vandalism; or

    **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c.** Collision Coverage. Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

**2. Towing – Private Passenger Autos.**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting a Bird or Animal – Falling Objects or Missiles.**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4.** Coverage Extension. We will also pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**B.  EXCLUSIONS**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

    **a. Nuclear Hazard.**

        (1) The explosion of any weapon employing atomic fission or fusion; or

        (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

    **b. War or Military Action.**

        (1) War, including undeclared or civil war;

        (2) Warlike action by a military

force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

        (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any of the following:

a. Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee, however if we pay the loss payee; you must reimburse us for our payment.

b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for any such contest or activity.

c. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Equipment designed or used for the detection or location of radar.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

f. Any accessories used with the electronic equipment described in paragraph e. above.

Exclusions 2.e. and 2.f. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

    (1) Necessary for the normal operation of the covered "auto"

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**3. Other Exclusions**

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

**C. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**D. DEDUCTIBLE**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V – TRUCKERS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. LOSS CONDITIONS**

**1. APPRAISAL FOR PHYSICAL DAMAGE LOSS**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the the actual cash value and amount of "loss". If they fail to agree they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS**

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examination under oath at our request and give us a statement of your answers.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

**3. LEGAL ACTION AGAINST U** 

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trail. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. LOSS PAYMENT – PHYSICAL DAMAGE COVERAGES**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. GENERAL CONDITIONS**

**1. BANKRUPTCY**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. LIBERALIZATION**

If we revise this Coverage Form to provide more coverage without additional

premium **_____ge**, your policy will automatical**___** provide the additional coverage as of the day the revision is effective in your state.

**4. NO BENEFIT TO BAILEE – PHYSICAL DAMAGE COVERAGES**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS**

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

d. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

e. Regardless of the provisions of paragraphs a., b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **PREMIUM AUDIT** 

   a. The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **POLICY PERIOD, COVERAGE TERRITORY**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

The coverage territory is:

   a. The United States of America;

   b. The territories and possessions of the United States of America;

   c. Puerto Rico; and

   d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION VI - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

   1. Any request, demand or order; or

   2. Any claim or "suit" by or on behalf of a governmental authority demanding.

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured";

      (3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

   b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

      (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

      (2) The "bodily injury", "property damage" or "covered pollution

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxx

cost or expense does not arise out of the operation of any equipment listed in paragra 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E.  "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

F.  "Insured Contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

G.  "Loss" means direct and accidental loss or damage.

H.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

a. Equipment designed arily for:

   (1) Snow removal;

   (2) Road maintenance, but not construction or resurfacing; or

   (3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J.  "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

K.  "Property damage" means damage to or loss of use of tangible property.

L.  "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense", to which this insurance applies, are alleged.

"Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

M.  "Trailer" includes semitrailer or a dollie used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

N.  "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

CA 00 12 12 93 A

xxxxxxxxxxxxxxxxxx

COMMERCIAL AUTO

Attached to and forming part of Policy Number      EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**LOSS OF USE COVERAGE**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

**A.  COVERAGE/CONDITIONS**

1.  This endorsement applies to covered "autos" for which collision coverage is provided.

2.  This coverage begins 14 days after you notify us.

3.  We will pay you for your loss of use in the event a covered "auto" is disabled and removed from service, for a period greater than 14 days, as a result of a collision "loss".

4.  This coverage will terminate when the covered "auto" is returned to service. We shall determine when the covered "auto" is returned to service.

5.  Payment will be made if, and only if, the "loss" exceeds the collision deductible.

6.  Our payment to you, per covered "auto", will be calculated on a daily basis at a rate equal to 1/90 of the MAXIMUM LIMIT OF COVERAGE. The most we will pay you, per covered "auto", is the limit of coverage for the period of coverage indicated below:

MAXIMUM LIMIT OF COVERAGE
$3,000

MAXIMUM PERIOD OF COVERAGE
90 days

**B.  EXCLUSIONS**

1.  This insurance does not apply to any of the following:

a.  Any covered "auto" with a gross vehicle weight (GVW) under 20,001 pounds.

b.  Any NONOWNED "AUTOS" (See coverage form)

c.  ANY HIRED "AUTOS" (See coverage form)

d.  Any "TRAILERS" IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT.

e.  Any of YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN T R A I L E R INTERCHANGE AGREEMENT.

2.  This insurance does not apply if you fail to exercise due diligence and dispatch to repair or replace the covered "auto".

3.  This insurance does not apply if you receive any loss of income payment f r o m  u s  a s  a  r e s u l t  o f "bodily injury".

---

**DESCRIPTION OF COVERED AUTOS**

Refer to your SCHEDULE OF COVERED AUTOS.

---

L 1091 05 93                                                          xxxxxxxxxxxx

COMMERCIAL AUTO

 

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR
AUTOMOBILE BODILY INJURY AND PROPERTY DAMAGE LIABILITY UNDER
SECTION 10927, TITLE 49 OF THE UNITED STATES CODE**

The policy to which this endorsement is attached is an automobile bodily injury and property damage liability policy and is amended to assure compliance by the insured as a motor carrier of passengers or property, with Section 10927, Title 49 of the United States Code and the pertinent rules and regulations of the Interstate Commerce Commission.

In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay, within the limits of liability prescribed herein, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and property transported by the insured, designated as cargo), resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate or permit issued to the insured by the Interstate Commerce Commission, or otherwise in interstate or foreign commerce subject to Subchapter II, Chapter 105, Subtitle IV of Title 49 of the United States Code, regardless of whether or not such motor vehicles are specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized by the Interstate Commerce Commission to be served by the insured or elsewhere.

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is understood and agreed that, upon failure of the Company to pay any final judgment recovered against the insured as prescribed herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the Company to compel such payment.

The Company's liability for the amounts provided in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the Company for the payment of final judgments resulting from any other accident.

The liability of the Company on each motor vehicle shall be the limits prescribed in 49 CFR 1043.2(b)(1), governing minimum amounts of insurance.

This endorsement may not be canceled without notification to the Commission. Such cancellation may be effected by the Company or the insured giving thirty (30) days' notice in writing to the Interstate Commerce Commission at its office in Washington, D.C., said thirty (30) days' notice commencing from the date notice is received by the Commission.

Issued to _____ of _____

Dated at _____ this _____ day of _____ , 19 ____

Amending Policy No. _____ Effective Date _____

Name of Insurance Company _____

Countersigned by _____
                              Authorized Company Representative

OMB 3120 0086 (Form B.M.C. 90 Rev. 1982)                                    xxxxxxxxxxxxxx

COMMERCIAL AUTO

FORM F

**UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT**

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commission(s) indicated below.

3. This endorsement may not be cancelled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

### X -- INDICATES STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ALABAMA | | ILLINOIS | | MONTANA | | RHODE ISLAND | |
| ALASKA | | INDIANA | | NEBRASKA | | SOUTH CAROLINA | |
| ARIZONA | | IOWA | | NEVADA | | SOUTH DAKOTA | |
| ARKANSAS | | KANSAS | | NEW HAMPSHIRE | | TENNESSEE | |
| CALIFORNIA | | KENTUCKY | | NEW JERSEY | | TEXAS | |
| COLORADO | | LOUISIANA | | NEW MEXICO | | UTAH | |
| CONNECTICUT | | MAINE | | NEW YORK | | VERMONT | |
| DELAWARE | | MARYLAND | | NORTH CAROLINA | | VIRGINIA | |
| DISTRICT OF COLUMBIA | | MASSACHUSETTS | | NORTH DAKOTA | | WASHINGTON | |
| FLORIDA | | MICHIGAN | | OHIO | | WEST VIRGINIA | |
| GEORGIA | | MINNESOTA | | OKLAHOMA | | WISCONSIN | |
| HAWAII | | MISSISSIPPI | | OREGON | | WYOMING | |
| IDAHO | | MISSOURI | | PENNSYLVANIA | X | | |

Attached to and forming part of policy No. __PAP  1857700495_____

issued by __LINCOLN GENERAL INSURANCE COMPANY_____, herein called

Company, of_____YORK, PA    17402_____._____

to __JHM ENTERPRISES, INC._____.____ of __WILLIAMSPORT, PA_____._____

Dated at_____YORK, PA    17402_____. this __27__ day of_____APRIL_____, __1995__

Countersigned by_____

Authorized Representative

(System Date 04 92)

IRB 3538A

HOME OFFICE COPY

COMMERCIAL AUTO

**ENDORSEMENT FOR**
**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to   JHM ENTERPRISES, INC.                     of   WILLIAMSPORT, PA              .

Dated at        YORK, PA    17402        . this  27  day of       APRIL            , 1995

Amending Policy No.   PAP 1857700495              Effective Date   04/18/95

Name of Insurance Company  LINCOLN GENERAL INSURANCE COMPANY

Telephone Number (____)                        .  Countersigned by
                                                    Authorized Company Representative

The policy to which this endorsement is attached provides primary  or excess insurance,  as indicated
by "X" for the limits shown:

(X) This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000
    for each accident.

(_) This insurance is excess and the company  shall not be liable for amounts in excess of $ 0
    for each accident in excess of the underlying limit of $ 0 for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission
(ICC), the company agrees  to furnish the FHWA or the ICC a duplicate of said policy and all its
endorsements. The company also agrees,  upon telephone request by an  authorized representative of
the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected  by the company or  the insured by giving (1)
thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the
date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the
insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said
30 days notice  to commence  from the date  the notice  is received  by the  ICC  at its office  in
Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

ACCIDENT  includes  continuous  or  repeated
exposure to conditions which  results in bodily
injury, property damage, or environmental damage
which the insured neither expected nor intended.

MOTOR VEHICLE  means a land vehicle, machine,
truck, tractor, trailer, or semitrailer propelled
or drawn by mechanical power and used on a
highway for transporting property,  or  any
combination thereof.

BODILY INJURY means injury to the body, sickness
or disease  to any person, including death
resulting from any of these.

ENVIRONMENTAL RESTORATION means restitution for
the loss, damage, or destruction of natural

resources  arising out of the  accidental
discharge, dispersal, release or escape into
or upon the land, atmosphere, watercourse,  or
body of water, of any commodity transported
by a motor carrier.  This shall include  the
cost of removal and the cost of necessary
measures taken  to minimize  or mitigate damage
to human health, the natural environment, fish,
shellfish and wildlife.

PROPERTY DAMAGE means damage to or loss of use
of tangible property.

PROPERTY LIABILITY  means liability  for bodily
injury,  property damage,  and environmental
restoration.

The insurance policy  to which  this endorsement
is  attached  provides automobile  liability
insurance and is amended  to assure compliance
by the insured, within the limits stated
herein as a motor carrier of property, with

Sections 29 and 30 of the Motor Carrier
Act of 1980 and the rules and regulations
of  the  Federal  Highway  Administration
(FHWA) and the  Interstate Commerce Commission
(ICC).

Page 1 of 2

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

===============================================================================

The Motor Carrier Act of 1980 required limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier.  It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility.  The SCHEDULE OF LIMITS SHOWN BELOW DOES NOT PROVIDE COVERAGE.  The limits shown in the schedule are for information purposes only.

**SCHEDULE OF LIMITS**
Public Liability

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce). | Property (nonhazardous). | $ 750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce). | Hazardous substances as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hoppertype vehicles with capacities in excess of 3,500 water gallons; or in bulk Class A or B explosives, poison gas (Poison A), liquefied compressed gas or compressed gas; or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce; in any quantity) or (in intrastate commerce in bulk only) | Oil listed in 49 CFR 172.101;hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (in interstate or foreign commerce). | Any quantity of Class A or B explosives, any quantity of poison gas (Poison A), or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |

NOTE:  The type of carriage listed under (1), (2) and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more.  The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

Page 2 of 2

OMB 2125 0074 (MCS-90)

xxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming a part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### PENNSYLVANIA BASIC FIRST PARTY BENEFIT

For a covered "auto" licensed or principally garaged in , or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

### SCHEDULE

| Benefits | Limit of Liability (per insured) |
|----------|----------------------------------|
| Medical Expense Benefits | Up to $ 5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. COVERAGE**

We will pay the Basic First Party Benefit in accordance with the "Act" to or for an "insured" w h o sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto."

**BENEFITS**

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of Medical Expense Benefits. These benefits c o n s i s t of reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury." If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable w i t h reasonable medical probability that further expenses may be incurred as a result of the bodily injury, medical expenses will b e paid without limitation as to the time such further expenses are incurred.

**B. WHO IS AN INSURED**

1. You.

2. If you are an individual, any "family member."

3. Any person while "occupying" a covered "auto."

4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto."

If a covered "auto" i s parked a n d unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

**C. EXCLUSIONS**

We will not pay First Party Benefits for "bodily injury:"

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

a. You; or

b. any "family member."

Copyright, Insurance Services Office, Inc. 1992          Page 1 of 3

CA 22 37 12 92

xxxxxxxxxx

5. Sustained by any person while at the time of the "accident."

a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act;" or

b. is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside o f Pennsylvania.    This exclusion does not apply to:

a. You; or

b. Any "family member."

8. Sustained by any person while "occupying:"

a. A recreational vehicle designed for use off public roads; or

b. A motorcycle, moped or similar type vehicle.

9. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);

c. Civil war;

d. Insurrection; or

e. Rebellion or revolution.

10. From or as a consequence of the following whether controlled o r uncontrolled o r however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

D. **LIMIT OF INSURANCE**

1. Regardless of t h e number o f covered "autos,"premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown i n t h e Schedule o r in t h e Declarations.

2. Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

E. **CHANGES IN CONDITIONS**

The CONDITIONS are changed for FIRST PARTY BENEFITS as follows:

1. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US does not apply.

2. The following CONDITIONS are added:

**NON-DUPLICATION OF BENEFITS**

No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

**PRIORITIES OF POLICIES**

We will pay First Party Benefits i n accordance with the order of priority set forth by the "Act."  We will not pay if there is another insurer at a higher level of priority.  The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority.  The priority order is:

First – The insurer providing benefits to the "insured" as a named insured.

Second – The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act."

Third – The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident."

Fourth – The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is:

a. Not "occupying" an "auto;" and

b. not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible:

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" w i l l n o t exceed the applicable limit shown in the Schedule or Declarations;

3. The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

Copyright, Insurance Services Office, Inc. 1992

CA 22 37 12 92

xxxxxxxxxxx

4. The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

**F. ADDITIONAL DEFINITIONS**

1. The definition of "auto" in the DEFINITIONS Section is replaced by the following:

   a. By muscular power; or

   b. On rails or tracks.

2. The following are added to the DEFINITIONS Section:

   a. The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

   b. "Family member" means a resident of your household who is:

   (1) Related to you by blood, marriage or adoption; or

   (2) A minor in your custody or in the custody of any other "family member."

   c. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Insurance Services Office, Inc. 1992

Page 3 of 3

CA 22 37 12 92

xxxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming a part of Policy Number  PAP 185770 0495      EFFECTIVE 04/18/95      TO 04/18/96

ISSUED TO: JHM ENTERPRISES, INC.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

**PENNSYLVANIA ADDED AND COMBINATION**
**FIRST PARTY BENEFITS ENDORSEMENT**

For a covered "auto" licensed or principally garaged in Pennsylvania, this endorsement modifies insurance provided under the following:

PENNSYLVANIA BASIC FIRST PARTY BENEFITS.

BASIC FIRST PARTY BENEFIT is changed as follows:

SCHEDULE

As indicated below, Added First Party Benefits or Combination First Party Benefits apply instead of the Basic First Party Benefit.  The limits of liability shown for the benefits selected below replace the limits of liability shown in the Schedule for the Basic First Party Benefit.

| Benefits | Limit of Liability (per insured) |
|---|---|
| (X) Added First Party Benefits | |
| Medical Expense Benefits | Up to $_____ |
| Work Loss Benefits | Up to $ __5,000__ subject to a maximum of $ __1,000__ per month |
| Funeral Expense Benefits | Up to $ _____ |
| Accidental Death Benefits | $ _____ |
| (_) Combination First Party Benefits | |
| Maximum Total Limit for All Benefits | Up to $ _____ |
| Subject to the following individual limits: | |
| Medical Expense Benefits | No specific dollar amount |
| Work Loss Benefits | No specific dollar amount |
| Funeral Expense Benefits | Up to $ 2,500 |
| Accidental Death Benefits | $ _____ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Copyright, Insurance Services Office, Inc. 1990                    Page 1 of 2

CA 22 38 07 90

HOME OFFICE COPY

A. **COVERAGE** 

We will pay Added First Party Benefits or Combination First Party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto". We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the "accident."

In addition to the Medical Expense Benefits described in the Basic First Party Benefits endorsement, Added First Party Benefits and Combination First Party Benefits also consist of:

1. Work Loss Benefits consisting of:

a. loss of income. Up to 80% of the gross income actually lost by an "insured."

b. reasonable expenses actually incurred to reduce loss of income by hiring:

(1) special help, thereby enabling the "insured" to work; or

(2) a substitute to perform the work of a self-employed "insured" would have performed.

However, Work Loss Benefits do not include:

a. loss of expected income for any period following the death of an "insured;" or

b. expenses incurred for services performed following the death of an "insured;" or

c. any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work after the "accident" because of the "bodily injury."

2. Funeral Expense Benefits. Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident."

3. Accidental Death Benefits. A death benefit paid if "bodily injury" resulting from an "accident" causes the death of you or any "family member" within 24 months from the date of the "accident."

B. **EXCLUSIONS** 

In addition to the exclusions in the Basic First Party Benefit endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

C. **LIMIT OF INSURANCE**

1. Regardless of the number of covered "autos," "premiums paid, claims made," "autos" involved in the accident or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First Party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for Basic First Party Benefits. This provision will not change our total limit of liability.

D. **CHANGES IN CONDITIONS**

In addition to the CONDITIONS applicable to the Basic First Party Benefit endorsement the following CONDITION also applies:

PAYMENT OF ACCIDENTAL DEATH BENEFITS

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insureds" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse or

2. If there is no surviving spouse, the deceased "insured's" surviving children, or

3. If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Copyright, Insurance Services Office, Inc. 1990

CA 22 38 07 90

xxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming a part of Policy Number     EFFECTIVE     TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PENNSYLVANIA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in Pennsylvania, this endorsement modifies insurance provided under the following:

BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

**A. COVERAGE**

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured" motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle."

2. No judgment for damages arising out of a "suit" brought against t h e owner o r operator of an "uninsured motor vehicle" is binding on us unless we:

a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

b. Had a reasonable opportunity to protect our interests in the "suit."

**B. WHO IS AN INSURED**

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because o f its breakdown, r e p a i r, servicing, "loss" or destruction.

4. Anyone for damages he or she is entitled to recover b e c a u s e of "bodily injury" sustained by another "insured."

**C. EXCLUSIONS**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct o r indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. LIMIT OF INSURANCE**

1. Regardless o f the number o f covered "autos," "insureds," premiums paid, claims m a d e or vehicles involved in t h e "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE s h o w n i n t h e Declarations.

However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

2. Any amount payable for damages under this coverage shall be reduced by all sums paid by or f o r anyone w h o i s legally responsible, including all sums paid for t h e same damages under this Coverage Form's LIABILITY COVERAGE.

3. Any amount paid under this coverage will reduce any amount an "insured" may be paid for the same damages under this Coverage Form's LIABILITY COVERAGE.

**E. CHANGES IN CONDITIONS**

The CONDITIONS are c h a n g e d f o r PENNSYLVANIA UNINSURED MOTORISTS COVERAGE-NONSTACKED as follows:

1. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved, and

b. Promptly send us copies of the legal papers is a "suit" is brought.

2. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the following:

If we make a n y payment due to a n "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid to the extent such payment duplicates any amount we have paid under this coverage.

Copyright, Insurance Services Office, Inc. 1990

CA 21 92 07 90

XXXXXXXXXXXXXXX

3. OTHER INSURANCE is required by the following:

a. If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First - The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

Second - The Coverage Form or policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

c. Where there is applicable insurance available under the first priority:

(1) The LIMIT OF INSURANCE applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority, shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one Coverage Form or policy in the second priority exceeds the limit applicable under the Coverage Form or policy in the first priority.

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim; and

(3) If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Uninsured Motorists Coverage shown in the Declarations, after all contributing insurers agree as to:

(a) whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle;" and

(b) the amount of damages.

5. The following Condition is added:

ARBITRATION

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS Section:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

a. For which no liability bond or policy applies at the time of an "accident."

b. For which an insuring or bonding company:

(1) denies coverage;

(2) is or becomes insolvent; or

(3) is or becomes involved in insolvency proceedings.

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) hit an "insured," a covered "auto" or a vehicle an "insured" is "occupying;" or

(2) cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured," a covered "auto" or a vehicle an "insured" is "occupying."

If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, an "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under

any applicable motor vehicle law, except a self-insurer who is o■ who becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by a g■■mental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

Copyright, Insurance Services Office, Inc. 1990

CA 21 92 07 90

Page 3 of 3

xxxxxxxxxxxxxxx

COMMERCIAL AUTO

Attached to and forming a part of Policy Number     EFFECTIVE    TO

ISSUED TO:
(If  no  entry  appears  above,  refer  to  the  P o l i c y  Declarations  f o r  the  information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE – NONSTACKED

For  a  covered  "auto"  licensed  or  principally  garaged  in  Pennsylvania,  this  endorsement  modifies insurance provided under the following:

> BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> TRUCKERS COVERAGE FORM

**A.    COVERAGE**

1.    We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by t h e "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle."

2.    We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle" only after all liability bonds or policies have been exhausted by judgments or payments

3.    No judgment for damages arising out of a "suit" brought against t h e owner o r operator of an "underinsured motor vehicle" is binding on us unless we:

a.    Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

b.    Had a reasonable opportunity to protect our interests in the "suit."

**B.    WHO IS AN INSURED**

1.    You.

2.    If you are a n individual, any "family member."

3.    Anyone else "occupying" a covered "auto" or a temporary substitute f o r a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

4.    Anyone for damages he or she is entitled to recover because o f "bodily injury" sustained by another "insured."

**C.    EXCLUSIONS**

This insurance does not apply to any of the following:

1.    Any claim settled without our consent.

2.    The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability or similar law.

3.    Anyone  u s i n g  a vehicle without a reasonable belief that t h e person is entitled to do so.

**D.    LIMIT OF INSURANCE**

1.    Regardless o f the number o f covered "autos," "insureds," premiums paid, claims made or vehicles i n v o l v e d in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNDERINSURED MOTORISTS COVERAGE s h o w n i n t h e Declarations.

However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

2.    Any amount payable for damages under this coverage shall be reduced by all sums paid by or f o r anyone w h o i s legally responsible, including all sums paid for t h e same damages under this Coverage Form's LIABILITY COVERAGE.

3.    Any amount paid under this coverage will reduce any amount an "insured" may be paid for the same damages under this Coverage Form's LIABILITY COVERAGE.

**E.    CHANGES IN CONDITIONS**

The CONDITIONS are c h a n g e d f o r PENNSYLVANIA    UNDERINSURED    MOTORISTS COVERAGE - NONSTACKED as follows:

1.    DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

Promptly send us copies of the legal papers if a "suit" is brought.

2.    TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the following:

If we make a n y payment due t o an "accident"involving an "underinsured motor vehicle" and the "insured" recovers from another party,the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid to the extent such payment duplicates any amount we have paid under this coverage.

3.    OTHER INSURANCE is replace by following:

a.  If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First - The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

Second- The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

b.  Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

c.  Where there is applicable insurance available under the first priority:

(1) The LIMIT OF INSURANCE applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority, shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one Coverage Form or policy in the second priority exceeds the limit applicable under Coverage Form or policy in the first priority.

d.  If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority.

(2) The insurer thereafter is entitled to recover pro rata contribution from any othe insurer for the benefits paid and the costs of processing the claim; and

(3) If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Underinsured Motorists Coverage shown in the Declaration after all contributing insurers agree as to:

(a) whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle;" and

(b) the amount of damages

5.  The following Condition is added:

**ARBITRATION**

If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F.  **ADDITIONAL DEFINITIONS**

The following are added to the DEFINITIONS Section:

1.  "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2.  "Occupying" means in, upon, getting in, on, out or off.

3.  "Underinsured motor vehicle" means vehicle for which the sum of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle does not include any vehicle

a.  Owned or operated by a self-insurer under any applicable motor vehicle law;

b.  Owned by a governmental unit or agency; or

c.  Designed for use mainly off public roads while not on public roads.

Copyright, Insurance Services Office, Inc. 1990

CA 21 93 07 90

xxxxxxxxxxxxxxx

COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**PUNITIVE, EXEMPLARY
AND
EXTRACONTRACTUAL DAMAGE
EXCLUSION**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO NON-TRUCKING LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

The following exclusion is added:

PUNITIVE,   EXEMPLARY  AND  EXTRACONTRACTUAL
DAMAGE

This policy does not insure against or
provide indemnity for fines, penalties,
exemplary or punitive damages or any other
type or kind of judgment or award which does
not compensate the party benefiting from the
award or judgment for any actual loss or
damage sustained.

This exclusion applies to all coverages
provided under this policy.

L 1003 06 92

XXXXXXXXXXXXXXXXXXX

COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

WRONG DELIVERY OF LIQUID PRODUCTS

This endorsement modifies insurance provided under the following:

   BUSINESS AUTO COVERAGE FORM
   TRUCKERS COVERAGE FORM

LIABILITY COVERAGE is changed by adding the following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the "bodily injury" or "property damage" occurs after delivery has been completed.

Delivery is considered completed even if further service or maintenance work, or correction, repair or replacement is required because of wrong delivery.

Copyright, Insurance Services Office, Inc., 1985

CA 23 05 01 87

XXXXXXXXXXXX

COMMERCIAL AUTO



Attached to and forming part of Policy Number          EFFECTIVE          TO
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations  f o r  the information.)

THIS ENDORSEMT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1.    The insurance does not apply:

A.    Under any Liability Coverage, to "bodily injury" or "property damage:"

(1)   With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability I n s u r a n c e, Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1945, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreeemnt entered into by the United States of America, or any agency t h e r e o f, with any person or organization.

B.    Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from t h e "hazardous properties o f "nuclear material" a n d arising out of the operation of a "nuclear facility" by any person or organization.

C.    Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" o f "nuclear material," it:

(1)   The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of an "insured" or (b) has been discharged or dispersed therefrom:

(2)   The "nuclear material" is contained in "spent fuel" or "waste" a t any time possessed, handled, u s e d, processed, stored, transported or disposed of by or on behalf of an "insured;" or

(3)   The "bodily injury" or "property damage" arises out of the furnishing b y an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located w i t h i n the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damge" to such "nuclear facility" a n d any property threat.

2.    As used in this endorsement:

"H a z a r d o u s  properties" include radioactive, t o x i c o r explosive properties;

"Nuclear material" m e a n s "source material," "special nuclear material" or by-product material;"

"Source material," "special n u c l e a r material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in a n y law amendatory thereof;

Copyright, Insurance Services Office, Inc. 1983, 1984          Page 1 of 2

IL 00 21 11 85

xxxxxxxxxxxxxxxx

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means a n y waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) A n y equipment or device designed o r used for (1) separating the isotopes of uranium or plutonium, (2) processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating o r alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where s u c h equipment o r device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing i s located, a l l operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means a n y apparatus designed or u s e d to sustain nuclear fission in a self-supporting c h a i n reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc. 1983, 1984                Page 2 of 2

IL 00 21 11 85

xxxxxxxxxxxxxxxxxx



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PENNSYLVANIA 17402

COMMERCIAL AUTO

Attached to and forming part of Policy Number  PAP 1857700495     EFFECTIVE 04/18/1995 TO 04/18/1996

ISSUED TO:   JHM ENTERPRISES, INC.
             1200 VALLAMONT DRIVE, N.W.
             WILLIAMSPORT        PA 17701


LOSS PAYEE:  JERSEY SHORE STATE BANK
             300 MARKET STREET
             WILLIAMSPORT        PA 17701



              THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


                              LOSS PAYABLE CLAUSE


This endorsement modifies insurance provided under this policy.

     BUSINESS AUTO COVERAGE FORM
     GARAGE COVERAGE FORM
     MOTOR CARRIER COVERAGE FORM
     TRUCKERS COVERAGE FORM
     BUSINESS AUTO PHYSICAL DAMAGE COVERAGE


With respect to coverage provided by this endorsement,  the provisions of the  Coverage  Form  apply
unless modified by the endorsement.

A.  We will  p a y, as interst may appear, you
    and the loss payee named in the policy for
    "loss" to covered "auto."

B.  The insurance covers the interest  of  the
    loss payee unless the "loss"  results from
    conversion, secretion  or  embazzlement on
    your part.

C.  We may cancel the policy as allowed by the

CANCELLATION Common Policy Conditions.

Cancellation ends this agreement as to the
loss payee's interest.    If we cancel the
policy we will mail you and the loss payee
the same advance notices.

D.  If we make any payments to the loss payee,
    we will obtain his  or  her rights against
    any other party.

---

THIS CLAUSE IS APPLICABLE TO THE FOLLOWING COVERED "AUTO(S)":

| | | | | | | -------- DEDUCTIBLES -------- | | |
|---|---|---|---|---|---|---|---|---|
| UNIT# | YEAR | TRADE NAME | BODY TYPE | SERIAL # | INSURED VALUE* | OTHERTHAN COLLISION | COLLISION | DUMPING LOSS ** |
| 1 | 1985 | WHITE | TRACTOR | 1HUYDCFE4FN071239 | 16,000 | 1,000 | 1,000 | |
| 2 | 1969 | FRUEHAUF | TRAILER | UNJ325403 | 4,000 | 1,000 | 1,000 | |
| 3 | 1969 | FRUEHAUF | TRAILER | UNJ325404 | 4,000 | 1,000 | 1,000 | |
| 4 | 1974 | TRLMOBILE | TRAILER | K41315 | 5,000 | 1,000 | 1,000 | |
| 6 | 1969 | FRUEHAUF | TRAILER | UNJ325401 | 4,000 | 1,000 | | |
| 7 | 1969 | FRUEHAUF | TRAILER | UNJ325402 | 4,000 | 1,000 | 1,000 | |
| 8 | 1974 | TRLMOBILE | TRAILER | K41316 | 5,000 | 1,000 | | |
| 9 | 1974 | TRLMOBILE | TRAILER | K41317 | 5,000 | 1,000 | | |

   *  If value is shown, coverage is limited to lesser of Insured Value or ACV.

   ** If the "BODY TYPE" indicated above is a "dump" unit, a special  deductible  is  applicable
      to each and every loss which occurs while loading and/or unloading in the  course  of  any
      dumping operation.

Copyright, Insurance Services Offices, Inc. 1993

CA 99 44 12 93 A                          CONTINUED                        HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PENNSYLVANIA 17402

COMMERCIAL AUTO

Attached to and forming part of Policy Number  PAP 1857700495    EFFECTIVE 04/18/1995 TO 04/18/1996

ISSUED TO:    JHM ENTERPRISES, INC.
              1200 VALLAMONT DRIVE, N.W.
              WILLIAMSPORT       PA 17701


LOSS PAYEE:   JERSEY SHORE STATE BANK
              300 MARKET STREET
              WILLIAMSPORT       PA 17701



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


LOSS PAYABLE CLAUSE


This endorsement modifies insurance provided under this policy.

        BUSINESS AUTO COVERAGE FORM
        GARAGE COVERAGE FORM
        MOTOR CARRIER COVERAGE FORM
        TRUCKERS COVERAGE FORM
        BUSINESS AUTO PHYSICAL DAMAGE COVERAGE

With respect to coverage provided by this endorsement,  the provisions of the   Coverage  Form  apply
unless modified by the endorsement.


A.   We will  p a y, as interst may appear, you
     and the loss payee named in the policy for
     "loss" to covered "auto."

B.   The insurance covers the interest  of  the
     loss payee unless the "loss"  results from
     conversion, secretion  or  embazzlement on
     your part.

C.   We may cancel the policy as allowed by the

CANCELLATION Common Policy Conditions.

     Cancellation ends this agreement as to the
     loss payee's interest.    If we cancel the
     policy we will mail you and the loss payee
     the same advance notices.

D.   If we make any payments to the loss payee,
     we will obtain his  or  her rights against
     any other party.


---

THIS CLAUSE IS APPLICABLE TO THE FOLLOWING COVERED "AUTO(S)":

| UNIT# | YEAR | TRADE NAME | BODY TYPE | SERIAL # | INSURED VALUE* | OTHERTHAN COLLISION | COLLISION | DUMPING LOSS ** |
|---|---|---|---|---|---|---|---|---|
| 10 | 1974 | TRLMOBILE | TRAILER | K41318 | 5,000 | 1,000 | | |
| 11 | 1993 | J & L | TANK TRLR | 1J9P4AT21P2001084 | 36,312 | 1,000 | 1,000 | |
| 15 | 1981 | BUTLER | TRAILER | 1TB114028BM452714 | 10,000 | 1,000 | 1,000 | |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | 7,500 | 1,000 | 1,000 | |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | 24,000 | 1,000 | 1,000 | |

*Column group heading: DEDUCTIBLES spans OTHERTHAN COLLISION, COLLISION, DUMPING LOSS**

    * If value is shown, coverage is limited to lesser of Insured Value or ACV.

    ** If the "BODY TYPE" indicated above is a "dump" unit, a special  deductible  is  applicable
       to each and every loss which occurs while loading and/or unloading in the  course  of  any
       dumping operation.

Copyright, Insurance Services Offices, Inc. 1993

CA 99 44 12 93 A                                                    HOME OFFICE COPY



COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**CHANGES – OTHER INSURANCE
HIRED AUTO PHYSICAL DAMAGE COVERAGE**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

**A.** Paragraph **5. b.** of the OTHER INSURANCE Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms is replaced by the following:

**5.** OTHER INSURANCE

**b.** F o r Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own.

**B.** Paragraph **5. d.** of the OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS Condition in the Truckers Coverage Form and Truckers Endorsement is replaced by the following:

**5.** OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS

**d.** F o r Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own.

Includes copyrighted material of Insurance Services Office, Inc.
with its permission.  Copyright, Insurance Services Office, Inc., 1991

L 1087 06 92

xxxxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming part of Policy Number ............ EFFECTIVE ........... TO ..........
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.  CANCELLATION**

1.  The first Named Insured shown i n the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering t o the first Named Insured written notice of cancellation at least:

a.  10 days before the effective date o f cancellation if we cancel for nonpayment of premium; or

b.  30 days before the effective date o f cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state t h e effective date of cancellation. The policy will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.  CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only b y endorsement issued by us and made a part of this policy.

**C.  EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.  INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

A n y inspections, surveys, reports or recommendations r e l a t e only t o insurability a n d the premiums to be charged. We do n o t m a k e safety inspections. We do n o t undertake to p e r f o r m the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or s i m i l a r organization which makes insurance inspections, surveys, reports or recommendations.

**E.  PREMIUMS**

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

**F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1982, 1983

IL 00 17 11 85

xxxxxxxxxxxxxxxxxxx

COMMERCIAL AUTO

Attached to and forming part of Policy Number ●          EFFECTIVE ●          TO
ISSUED TO:
(If no entry appears above, refer to the Policy Declarations for the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PENNSYLVANIA CHANGES —
## CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTO COVERAGE PARTS
    COMMERCIAL CRIME COVERAGE PART*
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. The CANCELLATION Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS.**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk.  Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit.  Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability

has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time cancellation, shall be certified to the Insurance Commissioner as directly affecting inforce policies.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

e. Material failure to comply with policy terms, conditions or contractual duties.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  Notice of cancellation will state the specific reasons for cancellation.

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 1989

IL 02 46 06 89

xxxxxxxxxxxxxxxx

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **NONRENEWAL**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **INCREASE IN PREMIUM**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured:

   a. Written notice of our intent to increase the premium at least 60 days before t h e effective date of the premium increase; and

   b. An estimate of the increase at least 30 days before the effective date of premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, if will be by registered or or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO commercial Risk Services, Inc., 1986, 1989

IL 02 46 06 89

xxxxxxxxxxxxxxx

                      COMMERCIAL AUTO

Attached to and forming a part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY

### PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

>    BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
>    BUSINESS AUTO COVERAGE FORM
>    GARAGE COVERAGE FORM
>    TRUCKERS COVERAGE FORM

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, the Coverage Form is changed as follows:

A.   CHANGES IN CONDITIONS

The following is added to the GENERAL CONDITIONS section:

CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

Copyright, Insurance Services Office, Inc. 1990

CA 01 80 07 90                                              xxxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming part of Policy Number       EFFECTIVE       TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULY.

### PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss.  These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.   Surveys;

2.   Consultation or advice; or

3.   Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf is not liable for damages from injury, death or loss occurring as a result of any act of omission by any person in the in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.   If the injury, death or loss occurred during the actual performance of the services and was caused b y the negligence o f the Insurance Company, its agents, employees o r services contractors;

2.   To consultation services required to be performed under a writtenn service contract not related to a policy of insurance; or

3.   If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

Copyright, Insurance Services Office, Inc. 1981



INLAND MARINE

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:

## MOTOR TRUCK CARGO INSURANCE
## TRANSIT AND LOCATION COVERAGE
### (Broad Form)

**PROPERTY COVERED**
This policy covers all lawful goods and merchandise,  except as excluded or restricted by this or any other policy,  while loaded for shipment and in transit in or on a "described vehicle."

**COVERED RADIUS OF OPERATION**
The radius of operation is the radius  s h o w n  in this policy  or  any  other policy to which this insurance applies.

**TERRITORY WHERE COVERAGE APPLIES**
Coverage applies  o n l y  while the property is in the United States, Canada and Puerto Rico.   This includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

**COVERAGE AMOUNT**
The most "we" will pay for all  covered property is  $2,000.00  (two thousand dollars) on  a n y  one item, any one loss, catastrophe  or disaster, either in case of partial loss  or total loss,  salvage charges or expenses or all combined.  This amount is  excess  over  a n y  other collectible insurance. If there is other collectible insurance that applies to a covered loss,  or would have applied in the absence of this  Inland Marine coverage,  "we" will pay for the loss only  after the full amount from the other insurance has been paid.

**DEDUCTIBLE**
$1,000.00 (one thousand dollars) deductible applies to each loss after  a l l  other adjustments have been made.

**EXTENSION OF COVERAGE**
This extension of coverage does not increase the coverage amount stated above.

Substitute Vehicles - If a "described vehicle" is disabled,  "you" may use  a  replacement vehicle to complete the transit of the covered cargo. This coverage applies only until the covered cargo reaches its original destination.   "You" do not have to report the use of these replacement vehicles.

**PROPERTY EXCLUDED**
"We" do not cover:
 1. cargo on a vehicle after it has remained at any location for more than 72 hours.    This includes locations that "you" own or use.
 2. cargo  in a detached truck body,  trailer  or semi-trailer  if not a  "described vehicle" on the policy.
 3. money.    This means currency, coins, bank notes, money orders, traveler's checks, bullion and similar items.
 4. securities.    These are any negotiable  or  nonnegotiable agreements  in writing that have value. They include revenue stamps, other stamps in current use, tokens and tickets.
 5. accounts, manuscripts, mechanical drawings and other records and documents.
 6. fine arts.  "We" do cover these losses if they  are c a u s e d  by fire; lightning; windstorm; earthquake; flood; smoke;  explosion;  aircraft;  spacecraft;  self-propelled missiles and objects that fall from these items;  vehicles,  collision;  upset  or overturn of  a "described vehicle;" collapse of a bridge or culvert; vandalism; theft; attempted theft; or collapse of buildings.
 7. livestock or poultry.  "We" do cover losses for total death or injury rendering death immediately necessary in consequence of a covered peril.
 8. breakage of eggs.  "We" do cover losses  if two (2) conditions are met.  First, the breakage must be caused  by a covered peril,  secondly,  fifty percent (50%) or more  of the eggs  within each damaged shipping package or crate must be broken.  The most "we" will pay for any one (1) package or crate is $ 200.00.
 9. damage to a "described vehicle"
10. tarpaulins, or wrapping materials
11. cargo for which "you" are legally liable while it is  in the custody of another carrier.  "We" do cover this property  if "you" have not  waived "your" right  to recover  for a loss  against that carrier.
12. freight charges.  "We" do cover freight charges earned  prior to a shipment if "you"  are legally liable for this charge.

IM 1073 05 91

**PERILS COVERED**
"We" cover direct physical loss to covered cargo unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

**PERILS EXCLUDED**
"We" do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded peril.

"We" do not pay for a loss that results from:

1. a dishonest or illegal act, alone or in collusion with another, by:
  a. "you;"
  b. others who have an interest in the property;
  c. others to whom "you" entrust the property; or
  d. the employees or agents of a., b. or c., whether or not they are at work.
    "We" do cover loss caused by dishonest acts by carriers or other bailees or hire.

2. mysterious disappearance.

3. theft of a part of the contents of any shipping package.

4. misdelivery.

5. corrosion or rust.

6. the following:
  a. breakage;
  b. marring or scratching;
  c. leakage, evaporation or shrinkage;
  d. mold or rot.
  e. property becoming soured, scented, discolored or changed in flavor.
  f. contact with oil; and
  g. the contact of one commodity with another.
    "We" do cover these losses if they are caused by fire; lightning; windstorm, earthquake; flood smoke; explosion; aircraft, spacecraft; self-propelled missiles and objects that fall from these items; vehicles; collision; upset or overturn of a described vehicle; collapse of a bridge or culvert; vandalism; theft; attempted theft; or collapse of buildings.

7. mechanical or electrical breakdown or failure. If a fire or explosion results, "we" do cover the loss caused by the fire or explosion.
8. breakdown or failure of a refrigerating unit.
9. breakdown or failure of heating equipment installed in a cargo compartment.
10. loading cargo onto or unloading it from a "described vehicle."
    "We" do provide coverage for these perils if "you" carry primary insurance for these type hazards.
11. rough handling or poor packing.
12. strike, riot or civil commotion.

There are other perils that are not covered.    These are listed in the Inland Marine General Terms.

**VALUATION**
This replaces the "Valuation" provision in the Inland Marine General Terms. The value of the property will be based on the following amounts

1. If there is an invoice, the property will be valued at the cost shown on the invoice.
2. If there is no invoice:
  a. property that is sold but not delivered will be valued at its net selling price after all discounts and allowances have been taken.
  b. all other property will be valued at its actual cash value.
3. The property of others will be valued at the amount that "you" are liable for to the owner. This includes the cost of labor and materials that "you" have invested in the property. However, the value of this property will never be more than its actual cash value.
4. exhibitions and displays will be valued at "your" cost if they belong to "you."
5. negatives and film prints will be valued at the cost to replace these items with an equal amount of raw stock.
6. if exclusion #5 under "PROPERTY EXCLUDED" has been deleted than accounts, manuscripts, mechanical drawings and other records and documents will be valued at the cost to replace them with an equal amount of raw stock, plus the cost to duplicate them from original materials if they can be duplicated.
7. all other property will be valued at its actual cash value.

IM 1073 05 91

**BRANDS AND LABELS**
If covered property  that has a brand or label is damages  by a covered peril  and "we" agree to take all or part of the property at an agreed or appraised value, "you" must:
1.    stamp "salvage" on the property or its container; or
2.    remove the label.
Stamping "Salvage" or removing the label must not cause  further  physical damage to property.    The expense of "stamping" or removal will be charged to salvaging expense.

**AMOUNT WE PAY**
This replaces the "Amount We Pay" provision in the Inland Marine General Terms.   The smallest of the amounts shown below is the most that "we" will pay "you" for a loss.
1.    the amount of "your" interest in the property.
2.    the value shown in the tariff document, bill of lading or shipping receipt.
3.    the amount determined by the valuation clause.
4.    the cost to repair, rebuild or replace the property with material of like kind and quality.
5.    the coverage amount shown.

In all cases,  the amount "we" pay  will be excess over  any collectible insurance "you" carry.  "We" will pay for the loss only after the full amount from the other insurance has been paid.

**PREMISES PROTECTION**
"You"  m u s t  maintain in proper working order the protective devices that were in operation on the effective date of this coverage. "Your" failure to do so will void coverage at the premises where the the device is located.  Coverage will not be void if the operation of the device is suspended because of:
1.    a maintenance, repair, adjustment or service operation; or
2.    an event that is beyond "your" control.

**DEFINITIONS**
In addition to the definitions in the Inland Marine General Terms,  the following definitions apply :

"described vehicle" - a unit described  under SECTION I - COVERED AUTOS of the  Commercial Automobile division of this package policy.    For the purpose  of this coverage  a  described vehicle  of  the Commercial Tractor type shall include any underscribed attached trailer(s) or semi-trailer(s).

commercial tractor - is a unit  not designed to carry  or transport any property,goods or merchandise in and of its self except by the use of a trailer or semitrailer

**DEDUCTIBLE WAIVER**
The deductible for this coverage shall be waived if at the time of loss  "we" provided cargo coverage for "you" under a separate Inland Marine Floater Policy.

IM 1073 05 91

xxxxxxxxxxxx



INLAND MARINE

Attached to and forming part of Policy Number                    EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y  Declarations  f o r  the information.)

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the Inland Marine coverage described in this policy during the policy period subject to the:

1.  Inland Marine General "Terms."
2.  Inland Marine coverage "terms."
3.  Policy "terms" that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

## INLAND MARINE GENERAL TERMS

### DEFINITIONS

1.  The words "you" and "your" mean the person, persons or organization named on t h e Declarations.

2.  The words "we," "us" and "our" mean the company providing this insurance.

3.  "Insured" means "you." With respect to covered property that is not used for business, the insured also means:

a.  "your" spouse;

b.  "your" relatives if residents of "y o u r" household;

c.  persons under the age of 21 in "your" care or the care of "your" resident relatives; or

d.  "your" legal representative if "you" die while insured by this policy.(This person is an "insured" only for the covered property.)

4.  "Business" means a trade, profession or occupation whether full or part time. This includes:

a.  the rental of property to others; and

b.  farming.

5.  "Described premises" means that part of the building and grounds which "you" occupy at the location shown.

6.  "Terms" means the conditions, definitions, exclusions, limitations and provisions used in this policy.

### PERILS EXCLUDED

"We" do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. "We" do not pay for a loss that results from:

1.  wear and tear to covered property.

2.  gradual deterioration of covered property.

3.  a fault or weakness that is intrinsic to the property which causes it to break, spoil, become defective or destroy itself.

4.  insects o r vermin damage t o covered property.

5.  delay, loss of market, loss of use, or "business" interruption.

6.  obsolescence or depreciation of covered property.

7.  war. This means:

a.  declared war, undeclared war, civil war, insurrection, rebellion o r revolution;

b.  a warlike act by a military force or by military personnel;

c.  the destruction, seizure o r use of the property for a military purpose; or

d.  the discharge of a nuclear weapon even if it is accidental.

8.  civil authority. This means:

a.  seizure of destruction under quarantine or customs regulations;

b.  confiscation or destruction by order of a government or public authority; or

c.  risks o f contraband o r i l l e g a l transportation or trade.

9.  nuclear hazard. This m e a n s nuclear reaction, nuclear radiation or radioactive contamination:

a.  whether controlled or uncontrolled; or

b.  caused by, contributed to or aggravated by a peril covered by this policy. A loss caused by nuclear hazard will not be

considered to be a loss caused by fire, explosion or smoke. If fire is covered by this policy, "we" do cover the loss caused by a fire that results from the nuclear hazard.

10. other perils that are not covered. These are listed for each coverage.

"We" do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1. the act or decision of a person, group, organization or governmental body. This includes the failure to act or decide.

2. a fault, defect or error, negligent or not, in:

a. planning, z o n i n g, surveying, siting, g r a d i n g, compacting, land use, o r development of property.

b. t h e design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property. This includes the materials needed to construct, remodel or repair the property.

c. maintenance of property.

These apply whether or not the property is covered by this policy.

3. a condition of the weather.

4. the collapse of a building or structure.

**WHAT MUST BE DONE IN CASE OF LOSS**

1. **Protect the Property.** The "insured" must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2. **Notice.** The "insured" must promptly notify "us" or "our" agent, in writing if requested.

3. **Notice to Police.** The "insured" must promptly notify the police if the loss results from a violation of the law.

4. **Proof of Loss.** The "insured" must send "us" a statement of loss, under oath if requested within 90 days after the loss occurs. The following information must be be included:

a. the date, time, place and details of the loss.

b. other insurance that may cover the loss.

c. "your" interest and the interest of all others in the property involved in the loss. This includes a l l mortgages and liens.

d. changes i n the title t o the covered property during the policy period.

e. detailed estimates f o r the repair or replacement of the covered property.

f. an inventory of lost, damaged and all remaining covered property. T h i s must

show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss. Copies of all bills, receipts and related documents that substantiate the inventory m u s t b e attached.

5. **Additional Duties.** As often as "we" may reasonably request, an "insured" must:

a. submit to an examination under oath.

b. assist "us" in obtaining the attendance of employees for examination under oath.

c. exhibit damaged and undamaged property.

d. produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6. **Cooperation.** The "insured" must cooperate with "us" in performing all acts that are required by this Inland Marine coverage.

7. **Volunteer Payments.** The "insured" may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the "insured's" own expense.

8. **Abandonment.** The "insured" may not abandon the property to "us" without "our" written consent.

**HOW MUCH WE PAY**

1. **Actual Cash Value.** Actual cash value includes a deduction for depreciation, however caused.

2. **Valuation.** Valuation is based on the actual cash value of the property at the time of loss.

3. **The Amount We Pay.** The smallest of the amounts shown below is the most that "we" will pay for a loss:

a. the amount determined under "Valuation."

b. the cost to repair, replace or rebuild the property with material of like kind and quality.

c. the amount of "your" interest in the property.

d. the coverage amount shown.

This amount will be adjusted b y the deductible amount, coinsurance penalty or other limitation which may apply.

4. **Loss to Pairs or Sets.** If there is a loss to an item that is part of a pair or set, at "your" option "we" will pay the full actual cash value up to the coverage amount shown for the pair or set. "You" will give "us" the remainder of the pair or set. If "you" do not choose this option, "we" will pay only for a reasonable part of the actual cash value of the pair or set.

5. **Loss to Parts.** If there is a loss to an

item that consists of several parts, "we" will pay only for the loss to that part. A loss to a part is not considered to be a loss to the whole item.

6. **Insurance Under More Than One Policy.** If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this Inland Marine coverage, "we" will pay for the loss only after the full amount from the other insurance has been paid.

7. **Insurance Under More Than One Coverage.** If more than one coverage applies to the same loss, "we" will pay no more than the actual amount of the loss.

8. **Losses Paid By Others.** "We" will not pay for that part of a loss that has been paid by someone else.

9. **Restoring the Coverage Amount.** The payment of a claim will not reduce the coverage amount. If "we" pay a loss for items that are separately listed and the coverage amount that applies to these items is reduced at "your" request, "we" will return the unearned premium for these items to "you."

## LOSS PAYMENT

1. **Our Options.** "We" may:

a. pay the loss in money; or

b. repair, replace or rebuild the property. "We" must give the "insured" notice of "our" intent to do so within 30 days after "we" received a satisfactory proof of loss.

   "We" may take all or a part of the damaged property at the agreed or appraised value. Property that "we" have paid for o r replaced will become "our" property.

2. **Your Property.** "We" will adjust all losses with "you." Payment will be made to "you" unless a loss payee is named with respect to this Inland Marine coverage.

3. **Property of Others.** Loss to property of others may be adjusted with "you." "We" reserve the right to adjust the loss with the owner. "Our" payment to the owner will satisfy "our" obligation to "you" for loss to this property. At "our" option, without cost to "you," "we" may choose to defend "you" from suits which result from a covered loss to the property of others.

4. **When We Pay.** "We" will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1. **Subrogation.** If "we" pay for a loss, "we" may require the "insured" to assign to "us" the right of recovery against others. "We" will not pay for a loss if the "insured" impairs t h i s right to recover. The "insured's" right to recover from others may be waived in writing before a loss occurs.

2. **Loan Receipts.** When we believe that a loss can be recovered from others;

a. "we" may make an advance payment to "you" in the form of a loan.

b. at "our" expense, "we" will be allowed to bring suit in the "insured's" name against those who are responsible for the loss.

c. the loan will be repaid from the amount recovered.

3. **Recoveries.** The "insured" must notify "us" or "we" must notify the "insured" promptly if either receives a recovery for a loss which "we" have paid. The costs that are incurred by either party in making the recovery are to be reimbursed first. "We" are entitled to the surplus up to the amount that "we" have paid for the loss. The "insured" may then keep any excess.

## DISAGREEMENTS

1. **Appraisal.** If "you" and "we" do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal. If either party makes a written demand for appraisal, each w i l l select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court in the state where the appraisal is pending to select an umpire.

   The appraisers will determine:

a. the amount of the loss;

b. the actual cash value of the property; and

c. the cost to repair or replace the property.

   Each amount will be stated separately.

   If the appraisers submit a written report of an agreement to "us,"the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

   Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by "you" and "us."

2. **Suit Against Us.** No suit to recover for a loss may be brought against us unless:

a. all the "terms" of this Inland Marine coverage have been complied with; and

b. the suit is commenced within one year after the loss.

COPYRIGHT 1984 AAIS

IM-100

xxxxxxxxx

## OTHER POLICY CONDITIONS 

1. **Conformity With Statutes.** The "terms" of this Inland Marine coverage in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2. **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), "we" may substitute or "we" may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3. **Liberalization.** If a revision of a form endorsement which would broaden coverage without an additional premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4. **Mispresentation, Concealment or Fraud.** This Inland Marine Coverage is void if before or after a loss:

a. the "insured" has concealed or misrepresented

(1) a material fact or circumstance that relates to this insurance or the subject thereof; or

(2) an "insured's" interest herein.

b. there has been fraud or false swearing by an "insured" with regard to a matter that relates to this insurance or the subject thereof.

5. **No Benefit to Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6. **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting "terms." If it is cancelled, "you" must report the required amounts as of the cancellation date.



INLAND MARINE

Attached to and forming part of Policy Number         EFFECTIVE        TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

## COMMON POLICY CONDITIONS

1. **Assignment** - This policy is void if it is assigned without "our" written consent.

2. **Cancellation** - "You" may cancel this policy by returning it to "us" or by giving "us" a written notice and statement at what future time coverage is to cease.

   "We" may cancel this policy, or one or more of its parts, by giving "you" a written notice a t least 10 days before t h e cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to "your" mailing address last known to "us."

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms** - A change or waiver of terms of this policy must be issued by "us" in writing to be valid.

4. **Inspections** - "We" have the right, but are not obligated, to inspect "your" property and operations. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** - "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

COPYRIGHT 1984 AAIS

xxxxxxxx

Attached to and forming part of Policy Number                    EFFECTIVE                    TO
ISSUED TO:
(If  no  entry  appears  above,  refer  to  the  P o l i c y  Declarations  f o r  the  information.)


### NOTICE


We advise  t h a t  an investigation  m a y  be made  regarding information as to character,  general

reputation,  personal characteristics and mode of living.      Information on the nature and scope of

the report is available upon written request.

L 7020 02 92

xxxxxxxxxxxxxxxxxxx



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=================================================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

UNIT #    1  CHANGED ***************************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19( | ITE | TRACTOR | 1WUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    1

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    2  CHANGED ***************************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1969 | FRUEHAUF | TRAILER | UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    2

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    3  CHANGED ***************************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1969 | FRUEHAUF | TRAILER | UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    3

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    4  CHANGED ***************************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1974 | TRLMOBILE | TRAILER | K41315 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMPAN.
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    2

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

======================================================================================================

```
Insured:
         JHM ENTERPRISES, INC.
         1200 VALLAMONT DRIVE, N.W.

         WILLIAMSPORT        PA 17701-0000
```

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

THIS LOSS PAYEE IS ADDED TO UNIT #    4

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    5  CHANGED  ****************************************************************************

| | Bus Use | GVW GCW | --- Codes --- Dis Class  Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|
| ear Trade Name Body Type  Serial Number | | | | | |
| .967 FRUEHAUF    TRAILER    UNEF290102 | C | 50000 | IN 67521 380 PA   81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    5

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    6  CHANGED  ****************************************************************************

| | Bus Use | GVW GCW | --- Codes --- Dis Class  Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|
| ear Trade Name Body Type  Serial Number | | | | | |
| .969 .JEHAUF    TRAILER    UNJ325401 | C | 50000 | IN 67521 380 PA   81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    6

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    7  CHANGED  ****************************************************************************

| | Bus Use | GVW GCW | --- Codes --- Dis Class  Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|
| ear Trade Name Body Type  Serial Number | | | | | |
| .969 FRUEHAUF    TRAILER    UNJ325402 | C | 50000 | IN 67521 380 PA   81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    7

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

*** CONTINUED ***

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPAN.
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=============================================================================================

```
| Insured:                                          |
|         JHM ENTERPRISES, INC.                     |
|         1200 VALLAMONT DRIVE, N.W.                |
|                                                   |
|         WILLIAMSPORT        PA 17701-0000         |
```

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

NIT #    8  CHANGED  ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 974 TRLMOBILE  TRAILER | K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

TH1. _OSS PAYEE IS ADDED TO UNIT #    8

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    9  CHANGED  ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 974 TRLMOBILE  TRAILER | K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT # 9

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #   10  CHANGED  ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 974 TRLMOBILE  TRAILER | K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #   10

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #   11  CHANGED  ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 993 J & J    TANK TRLR | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | 10 | WILLIAMSPORT | |

*** CONTINUED ***

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPAN
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    4

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

======================================================================================================

```
+--------------------------------------------+
| Insured:                                   |
|          JHM ENTERPRISES, INC.             |
|          1200 VALLAMONT DRIVE, N.W.         |
|                                            |
|          WILLIAMSPORT      PA 17701-0000    |
+--------------------------------------------+
```

Policy Prefix.........:       PAP
Policy Number.........: 1857700495
Policy Period.........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

THIS LOSS PAYEE IS ADDED TO UNIT #   11

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT       PA     17701-0000

UNIT #    14   CHANGED **********************************************************************

| Year Trade Name Body Type  Serial Number | Bus Use | GVW GCW | ----------- Codes ----------- Dis Class  Pc St Cnty City Terr Garaging City | Pro-Rated Premium |
|------------------------------------------|---------|---------|---------------------------------------------------------------------------|-------------------|
| 1986 FREIGHTLIN TRACTOR    1FUPYDYB9GP287269 | C    | 50000  | IN 50521 380 PA   81        10 WILLIAMSPORT |  |

THIS LOSS PAYEE IS ADDED TO UNIT #   14

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT       PA     17701-0000

UNIT #    15   CHANGED **********************************************************************

| Year Trade Name Body Type  Serial Number | Bus Use | GVW GCW | ----------- Codes ----------- Dis Class  Pc St Cnty City Terr Garaging City | Pro-Rated Premium |
|------------------------------------------|---------|---------|---------------------------------------------------------------------------|-------------------|
| 1981 _UTLER    TRAILER    1TB114028BM452714 | C    | 50000  | IN 67521 380 PA   81        10 WILLIAMSPORT |  |

THIS LOSS PAYEE IS ADDED TO UNIT #   15

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT       PA     17701-0000

UNIT #    16   CHANGED **********************************************************************

| Year Trade Name Body Type  Serial Number | Bus Use | GVW GCW | ----------- Codes ----------- Dis Class  Pc St Cnty City Terr Garaging City | Pro-Rated Premium |
|------------------------------------------|---------|---------|---------------------------------------------------------------------------|-------------------|
| 1979 F-LINER   TRACTOR    CA213HM160222 | C    | 80000  | IN 50521 380 PA   81        10 WILLIAMSPORT |  |

THIS LOSS PAYEE IS ADDED TO UNIT #   16

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT       PA     17701-0000

*** CONTINUED ***



**LINCOLN GENERAL INSURANCE COMPANY**
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    5

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein

==================================================================================================

```
 _____              Policy Prefix........:        PAP
| Insured:                      |             Policy Number.......: 1857700495
|        JHM ENTERPRISES, INC.  |             Policy Period.......: 04/18/1995 to 04/18/1996
|        1200 VALLAMONT DRIVE, N.W. |
|                               |             Endorsement Number...:    1
|        WILLIAMSPORT    PA 17701-0000 |      Endorsement Effective: 05/15/1995
 _____
```

UNIT #    17  CHANGED  ******************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|-----------|-----------|---------------|---------|---------|-----|-------|----|----|------|------|------|---------------|------------------|
| 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    17

```
                    JERSEY SHORE STATE BANK
                    300 MARKET STREET

                    WILLIAMSPORT       PA    17701-0000
```

ENDORSEMENT SCHEDULE CHANGES

|  | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|--|--------|-------------------------------|
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| ADD | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

| ENDORSEMENT TOTAL | 0 |
|-------------------|---|

```
 _____
| Agent:                  5520/0000    |
|      SUSQUEHANNA INS. ASSOC., INC.    |
|      6 E. 18TH STREET                 |
|                                       |
|      SELINSGROVE      PA 17870        |
 _____
```

Authorized Representative

Endorsement Issued: 5/26/95

SYOUNG

Insureds Name: JHM ENTERPRISES, I

**SCHEDULE OF COVERED AUTO CHANGES**
(Per Endorsement No:     1 )                                    Page:     1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

----------------------------------------------------------------------------------------------------

| NIT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|------|------|------------|-----------|---------------|---------|---------|-----|-------|----|----|------|------|------|---------------|
| 1 | 1985 | WHITE | TRACTOR | 1MUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 2 | 1969 | FRUEHAUF | TRAILER -S | UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 3 | 1969 | FRUEHAUF | TRAILER -S | UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 4 | 1974 | TRLMOBILE | TRAILER -S | K41315 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 5 | 1967 | FRUEHAUF | TRAILER -S | UNEF290102 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 6 | 1969 | FRUEHAUF | TRAILER -S | UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 7 | 1969 | FRUEHAUF | TRAILER -S | UNJ325402 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER -S | K41316 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER -S | K41317 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER -S | K41318 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 11 | 1993 | J & J | TANK TRLR -S | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | 81 | | 10 | WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 15 | 1981 | BUTLER | TRAILER -S | 1TB114028BM452714 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | C | 80000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |

===== Continued on next page =====

HOME OFFICE COPY

Policy # PAP 185770 0495  Insureds Name ●●M ENTERPRISES, INC.                    Page:    2

#### ---- COVERAGE and PREMIUM BREAKDOWN ----
#### (Per Endorsement No:    1 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 1 | | 2 | | 3 | | 4 | | 5 | |
| Insureds Unit Number | 1 | | 4 | | 5 | | 6 | | 7 | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | 750,000 | | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | |
| Personl Injury Protection | 5,000 | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | 5,000 | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | 35,000 | | | | | | | | | |
| UNDERinsured Motorist | 35,000 | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| L     LITY TOTAL -----> | | | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 30,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 16,000 | | 4,000 | | 4,000 | | 5,000 | | 4,000 | |
| Depreciated Value | 10,678 | | 6,371 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value (prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| Premium to Value % | 8.43 | | 5.18 | | 5.18 | | 5.16 | | 5.18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT        -> | | | | | | | | | | |

L-1063 07-93                         ----- Continued on next page -----                    HOME OFFICE COPY

Policy # PAP 185770 0495  Insureds Nam ⬤ ENTERPRISES, INC. ⬤                     Page:    3

---- COVERAGE and PREMIUM BREAKDOWN ----
(Per Endorsement No:     1 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 6 | | 7 | | 8 | | 9 | | 10 | |
| Insureds Unit Number | 8 | | 9 | | 10 | | 11 | | 12 | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| LIABILITY TOTAL -----> | | | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 20,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 4,000 | | 4,000 | | 5,000 | | 5,000 | | 5,000 | |
| Depreciated Value | 5,096 | | 5,096 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (prem. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| Premium to Value % | 5.55 | | 5.55 | | 5.16 | | 5.16 | | 5.16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City   Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Nam ENTERPRISES, INC.                     Page:    4

#### ---- COVERAGE and PREMIUM BREAKDOWN ----
(Per Endorsement No:    1 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 11 | | 14 | | 15 | | 16 | | 17 | |
| Insureds Unit Number | | | | | | | | | | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | 750,000 | | UNHOOKED | | 750,000 | | 750,000 | |
| Personl Injury Protection | COVERAGE | | 5,000 | | COVERAGE | | 5,000 | | 5,000 | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | 5,000 | | | | 5,000 | | 5,000 | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | 35,000 | | | | 35,000 | | 35,000 | |
| UNDERinsured Motorist | | | 35,000 | | | | 35,000 | | 35,000 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 65 | | 63 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zo  Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| LIABILITY TOTAL -----> | | | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 36,312 | | 55,000 | | 32,000 | | 20,000 | | 60,000 | |
| Estimated Value | 36,312 | | 19,000 | | 10,000 | | 7,500 | | 24,000 | |
| Depreciated Value | 28,119 | | 21,275 | | 8,155 | | 5,096 | | 27,422 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 65 | | 63 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (Prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 2.60 | | 6.16 | | 5.24 | | 11.96 | | 4.78 | |
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.  Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT        -> | | | | | | | | | | |

1063 03 93

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==========================================================================================================

| Insured: | |
|---|---|
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| WILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period.......: 04/18/1995 to 04/18/1996

Endorsement Number...:    2
Endorsement Effective: 04/18/1995

UNIT #   11  CHANGED  ***************************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 92 | L | TANK TRLR | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | 10 | WILLIAMSPORT | |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| REPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

ENDORSEMENT TOTAL       0

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  6/12/95

Insureds Name: JIM ENTERPRISES, IN 

**SCHEDULE OF COVERED AUTO CHANGES**
(Per Endorsement No:      2 )

Page:     1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

--------------------------------------------------------------------------------

| UIT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | ----------- Codes ----------- Dis Class  Pc St Cnty City Terr | Garaging City |
|------|------|-----------|-----------|---------------|---------|---------|---------------------------------------------------------------|---------------|
| 11 | 1993 | J & L | TANK TRLR -S | 1J9P4AT21P2001084 | C | 50000 | IN 67521 220 PA   81        10 | WILLIAMSPORT |

olicy # PAP 185770 0495  Insureds Nam ⬤ ENTERPRISES, INC.    ⬤    Page:    2

---- **COVERAGE and PREMIUM BREAKDOWN** ----
(Per Endorsement No:    2 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ompany Unit Number | 11 | | | | | | | | | |
| nsureds Unit Number | | | | | | | | | | |
| | CHANGE | | | | | | | | | |
| **IABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | | | | | | | | |
| Personl Injury Protection | COVERAGE | | | | | | | | | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zor Group/Trailer Discnt | 1  N | | | | | | | | | |
| L) .ITY TOTAL -----> | | | | | | | | | | |

| **HYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New - | 36,312 | | | | | | | | | |
| Estimated Value | 36,312 | | | | | | | | | |
| Depreciated Value | 28,120 | | | | | | | | | |
| Dumping Code | N | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (n m. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 2.60 | | | | | | | | | |
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.  Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT  -> | | | | | | | | | | |

1063 03 93

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

********************************** DRIVER(S) CHANGED ***********************************

HE NAME OF A CURRENTLY INCLUDED DRIVER ON FORM L1025 HAS BEEN CHANGED TO READ AS FOLLOWS:

R     CHANGED - SEQ # 0003

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| WILLIAM T BROWN | 12/29/60 | 19052931 | PA | 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 | Y |

********************************** DRIVER(S) DELETED ***********************************

ORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

RIVER DELETED - SEQ # 0011

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RUSTY FRY | 11/26/58 | 18329847 | PA | | R |

********************************** DRIVER(S) DELETED ***********************************

ORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

R:     DELETED - SEQ # 0015

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| CHRIS HABERSTROH | 12/25/54 | 17789257 | PA | | R |

********************************** DRIVER(S) ADDED ***********************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED   - SEQ # 0032

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| ROBERT BROWN | 12/20/32 | RD309311 | OH | | N |



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    2

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

===================================================================================================

| Insured: | | | |
|---|---|---|---|
| | JHM ENTERPRISES, INC. | Policy Prefix........: | PAP |
| | 1200 VALLAMONT DRIVE, N.W. | Policy Number........: | 1857700495 |
| | | Policy Period........: | 04/18/1995 to 04/18/1996 |
| | WILLIAMSPORT      PA 17701-0000 | Endorsement Number...: | 3 |
| | | Endorsement Effective: | 06/01/1995 |

***********************************************  DRIVER(S) ADDED  ***********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0033

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| CHARLES COCHRAN | 7/01/67 | 21284745 | PA | | Y |

***********************************************  DRIVER(S) ADDED  ***********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0034

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RICHARD E FREDERICK | 12/16/53 | 16331001 | PA | | Y |

***********************************************  DRIVER(S) ADDED  ***********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0035

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| MICHAEL FREEZER | 1/15/55 | 16547100 | PA | | Y |

***********************************************  DRIVER(S) ADDED  ***********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0036

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| THOMAS HEATH | 6/09/51 | 15282772 | PA | | Y |



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

================================================================================

```
Insured:
        JHM ENTERPRISES, INC.
        1200 VALLAMONT DRIVE, N.W.

        WILLIAMSPORT        PA 17701-0000
```

Policy Prefix.........:        PAP
Policy Number.........: 1857700495
Policy Period.........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

*********************************************  DRIVER(S) ADDED  *********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0037

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| D.../D L HERB, SR | 4/19/53 | 16842177 | PA | | Y |

*********************************************  DRIVER(S) ADDED  *********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0038

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RALPH JONES | 5/24/64 | 20452332 | PA | | Y |

*********************************************  DRIVER(S) ADDED  *********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0039

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| JO... S KIRESKI | 1/15/49 | 15535045 | PA | | Y |

*********************************************  DRIVER(S) ADDED  *********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

DRIVER ADDED   - SEQ # 0040

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RICHARD NICHOLS | 1/16/54 | 16394860 | PA | | Y |



LINCOLN GENERAL INSURANCE COMP'
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    4

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

============================================================================================

| Insured:
| JHM ENTERPRISES, INC.
| 1200 VALLAMONT DRIVE, N.W.
|
| WILLIAMSPORT        PA 17701-0000

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

*******************************************  DRIVER(S) ADDED  *******************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0041

|  ER NAME                                        BIRTH DATE OPERATOR NUMBER      STATE  SOC.SEC.NO. MVR
L .0 REED                                        10/08/60  19107192             PA                 Y

*******************************************  DRIVER(S) ADDED  *******************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0042

DRIVER NAME                                      BIRTH DATE OPERATOR NUMBER      STATE  SOC.SEC.NO. MVR
KEITH SUMMER                                     11/22/55  16983979             PA                 Y

IT #    5  DELETED  ***********************************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | ---- Codes ---- Dis Class  Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |

57 FRUEHAUF    TRAILER    UNEF290102        C    50000  IN 67521 380 PA  81         10 WILLIAMSPORT

      . - Liability Coverage    DELETED  from UNIT #    5                    ANNUAL $    122   . . . .       107-
   .ysical Damage Coverage    DELETED  from UNIT #    5                    ANNUAL $    207   . . . .       182-
HE FOLLOWING LOSS PAYEE    REMOVED FROM UNIT #    5

                    JERSEY SHORE STATE BANK
                    300 MARKET STREET

                    WILLIAMSPORT        PA    17701-0000

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    5

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=======================================================================================================

| Insured: | |
| --- | --- |
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
| --- | --- | --- |
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |
| REPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

ENDORSEMENT TOTAL      289-

| Agent: | | 5520/0000 |
| --- | --- | --- |
| | SUSQUEHANNA INS. ASSOC., INC. | |
| | 6 E. 18TH STREET | |
| | SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  8/01/95

LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

8/01/95

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT         PA      17701

Re: Policy Number: PAP 1857700495
Insured......:  JHM ENTERPRISES, INC.

Gentlemen:

Please be advised that the unit described below has been DELETED
from the subject policy effective 06/01/1995:

| Unit# | Mdl Yr | ---Make--- | ---Type--- | ------Serial Number----- |
|-------|--------|------------|------------|--------------------------|
| 5     | 1967   | FRUEHAUF   | TRAILER    | UNEF290102               |

Therefore, your interest is NULL and VOID effective 06/01/1995.

Sincerely

LINCOLN GENERAL INSURANCE COMPANY

UNDERWRITING DEPARTMENT

cc:   SUSQUEHANNA INS. ASSOC., INC.

Insureds Name: JIM ENTERPRISES, INC.  

**SCHEDULE OF COVERED AUTO CHANGE.**                                              Page:      1
(Per Endorsement No:        3 )

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.          /

----------------------------------------------------------------------------------------------------

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCN | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|-----|------|------------|-----------|---------------|---------|---------|-----|-------|-----|-----|------|------|------|---------------|
| 5 | 1967 | FRUEHAUF | TRAILER | -S UNEF290102 | C | 50000 | TN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT |

Policy # PAP 185770 0495  Insureds Name: ⬤ ENTERPRISES, INC.  ⬤                              Page:   2

---- **COVERAGE and PREMIUM BREAKDOWN**
(Per Endorsement No:    3 )

| | | | UNITS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 5 | | | | | | | | | | |
| Insureds Unit Number | 7 | | | | | | | | | | |
| | DELETED | | | | | | | | | | |
| **LIABILITY** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** | **Rating** | **Premium** |
| Liability | UNHOOKED | 107- | | | | | | | | |
| Personl Injury Protection | COVERAGE | | | | | | | | | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1  N | | | | | | | | | |
| LIABILITY TOTAL -----> | | 107- | | | | | | | | |

| **PHYSICAL DAMAGE** | **Rating** | | **Rating** | | **Rating** | | **Rating** | | **Rating** | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 25,000 | | | | | | | | | |
| Estimated Value | 4,000 | | | | | | | | | |
| Depreciated Value | 6,371 | | | | | | | | | |
| Dumping Code | N | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| | **Amount** | | **Amount** | | **Amount** | | **Amount** | | **Amount** | |
| Loss of Use | | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (prem. included in comp) | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** | **Deductible** | **Premium** |
| Comprehensive | 1,000 | 65- | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 117- | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 182- | | | | | | | | |

| Premium to Value % | 5.18 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 289- | | | | | | | | |

| State Surchg/Tax - Code | | | | | | |
|---|---|---|---|---|---|---|
| Co.  Surchg/Tax - Code | | | | | | |
| City  Surchg/Tax - Code | | | | | | |
| TOTAL per UNIT    -> | | | | | | |



LINCOLN GENERAL INSURANCE COMPA'
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==========================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | |
| | WILLIAMSPORT          PA 17701-0000 |

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    4
Endorsement Effective: 07/10/1995

NIT #    6   CHANGED  ******************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ?6? | 'EHAUF | TRAILER | UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

PAL - Liability Coverage   DELETED   from UNIT #    6                         ANNUAL $    122  . . . .          94-
Physical Damage Coverage   CHANGED   on   UNIT #    6                         ANNUAL $     73  . . . .         115-

NIT #    8   CHANGED  ******************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ?974 | TRLMOBILE | TRAILER | K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

PAL - Liability Coverage   DELETED   from UNIT #    8                         ANNUAL $    122  . . . .          94-
Physical Damage Coverage   CHANGED   on   UNIT #    8                         ANNUAL $     93  . . . .         128-

NIT #    9   CHANGED  ******************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ?974 | TRLMOBILE | TRAILER | K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

PAL - Liability Coverage   DELETED   from UNIT #    9                         ANNUAL $    122  . . . .          94-
Physical Damage Coverage   CHANGED   on   UNIT #    9                         ANNUAL $     93  . . . .         128-

NIT #   10   CHANGED  ******************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ?974 | TRLMOBILE | TRAILER | K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

PAL - Liability Coverage   DELETED   from UNIT #   10                         ANNUAL $    122  . . . .          94-
Physical Damage Coverage   CHANGED   on   UNIT #   10                         ANNUAL $     93  . . . .         128-

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMP''
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:   2

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent he
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein

====================================================================================

```
+---------------------------------+     Policy Prefix........:        PAP
| Insured:                        |     Policy Number........: 1857700495
|        JHM ENTERPRISES, INC.    |     Policy Period........: 04/18/1995 to 04/18/1996
|        1200 VALLAMONT DRIVE, N.W.|
|                                 |     Endorsement Number...:    4
|        WILLIAMSPORT    PA 17701-0000|  Endorsement Effective: 07/10/1995
+---------------------------------+
```

UNIT #   14  DELETED  ***************************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|---------------------|---------------|---------|---------|-----------|-------|------|------|------|---------------|------------------|
| 1986 | FREIGHTLIN TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN 50521 380 | PA | 81 | | 10 | WILLIAMSPORT | |

    L - Liability Coverage    DELETED   from UNIT #    14                    ANNUAL $    3915   . . . .         3026
    .ysical Damage Coverage   DELETED   from UNIT #    14                    ANNUAL $    1171   . . . .          905
THE FOLLOWING LOSS PAYEE   REMOVED FROM UNIT #   14

                    JERSEY SHORE STATE BANK
                    300 MARKET STREET

                    WILLIAMSPORT        PA    17701-0000


UNIT #   18  ADDED    ***************************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|---------------------|---------------|---------|---------|-----------|-------|------|------|------|---------------|------------------|
| 1980 | FRUEHAUF   TRAILER | OMT004309 | C | 50000 | IN 67521 380 | PA | 81 | | 10 | WILLIAMSPORT | |

    PAL - Liability Coverage   ADDED    to   UNIT #    18                    ANNUAL $     122   . . . .           94
    Physical Damage Coverage   ADDED    to   UNIT #    18                    ANNUAL $    1039   . . . .          803

UNIT #   19  ADDED    ***************************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|---------------------|---------------|---------|---------|-----------|-------|------|------|------|---------------|------------------|
| 1980 | GREAT DANE TRAILER | B17876 | C | 50000 | IN 67521 380 | PA | 81 | | 10 | WILLIAMSPORT | |

    PAL - Liability Coverage   ADDED    to   UNIT #    19                    ANNUAL $     122   . . . .           94
    Physical Damage Coverage   ADDED    to   UNIT #    19                    ANNUAL $     712   . . . .          550

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMPA~
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

======================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    4
Endorsement Effective: 07/10/1995

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| REPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

ENDORSEMENT TOTAL    3,265-

| Agent: | | 5520/0000 |
|---|---|---|
| | SUSQUEHANNA INS. ASSOC., INC. | |
| | 6 E. 18TH STREET | |
| | SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  8/01/95

SYOUNG



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

8/01/95

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT          PA      17701

Re: Policy Number: PAP 1857700495
Insured......:  JHM ENTERPRISES, INC.

Gentlemen:

Please be advised that the unit described below has been DELETED
from the subject policy effective 07/10/1995:

| Unit# | Mdl Yr | ---Make--- | ---Type--- | ------Serial Number----- |
|-------|--------|------------|------------|--------------------------|
| 14    | 1986   | FREIGHTLIN | TRACTOR    | 1FUPYDYB9GP287269         |

Therefore, your interest is NULL and VOID effective 07/10/1995.

Sincerely

LINCOLN GENERAL INSURANCE COMPANY

UNDERWRITING DEPARTMENT

cc:   SUSQUEHANNA INS. ASSOC., INC.

Insureds Name: JIM ENTERPRISES, INC. 

**SCHEDULE OF COVERED AUTO CHANGE**
(Per Endorsement No:    4 )

Page:    1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

---

| UNIT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 1969 | FRUEHAUF | TRAILER | -S UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER | -S K41316 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER | -S K41317 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER | -S K41318 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 18 | 1980 | FRUEHAUF | TRAILER | -S OMT004309 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |
| 19 | 1980 | GREAT DANE | TRAILER | -S B17876 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT |

Policy # PAP 185770 0495  Insureds Name: M ENTERPRISES, INC.                    Page:    2

#### ---- COVERAGE and PREMIUM BREAKDOWN
(Per Endorsement No:     4 )

| | UNITS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 6 | | 8 | | 9 | | 10 | | 14 |
| Insureds Unit Number | 8 | | 10 | | 11 | | 12 | | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | DELETED |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 94- | UNHOOKED | 94- | UNHOOKED | 94- | UNHOOKED | 94- | 750,000 | 2968- |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | 5,000 | 44- |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | 5,000 | 7- |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | 35,000 | 5- |
| UNDERinsured Motorist | | | | | | | | | 35,000 | 2- |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| L    LITY TOTAL -----> | | 94- | | 94- | | 94- | | 94- | | 3,026- |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 25,000 | | 25,000 | | 25,000 | | 55,000 | |
| Estimated Value | 4,000 | | 5,000 | | 5,000 | | 5,000 | | 19,000 | |
| Depreciated Value | 5,099 | | 6,374 | | 6,374 | | 6,374 | | 21,275 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (room. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | 310- |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | | 115- | | 128- | | 128- | | 128- | 1,000 | 595- |
| PHYSICAL DAMAGE TOTAL -> | | 115- | | 128- | | 128- | | 128- | | 905- |

| Premium to Value % | 1.83 | | 1.86 | | 1.86 | | 1.86 | | 6.16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 209- | | 222- | | 222- | | 222- | | 3931- |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.    Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Name: ███M ENTERPRISES, INC.  ●                                    Page:    3

---- **COVERAGE and PREMIUM BREAKDOWN**
(Per Endorsement No:     4 )

| | 18 | | 19 | | CHANGE | | CHANGE | | DELETED | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | | | | | | | | | | |
| Insureds Unit Number | | | | | | | | | | |
| | ADD | | ADD | | CHANGE | | CHANGE | | DELETED | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 94 | UNHOOKED | 94 | | | | | | |
| Personal Injury Protection | COVERAGE | | COVERAGE | | | | | | | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | 1    N | | | | | | | |
| L     LITY TOTAL -----> | | 94 | | 94 | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 16,000 | | 11,000 | | | | | | | |
| Estimated Value | 15,000 | | 9,000 | | | | | | | |
| Depreciated Value | 4,079 | | 2,805 | | | | | | | |
| Dumping Code | N | | N | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
|   (reem. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 264 | 1,000 | 163 | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 539 | 1,000 | 387 | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 803 | | 550 | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 6.93 | | 7.91 | | | | | | | |
| PREMIUM TOTAL per UNIT -> | | 897 | | 644 | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT     -> | | | | | | | | | | |

L 1063 03 93



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

================================================================================

| Insured: |
| JHM ENTERPRISES, INC. |
| 1200 VALLAMONT DRIVE, N.W. |
| MILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    5
Endorsement Effective: 08/10/1995

**************************************************  DRIVER(S) DELETED  **************************************************

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0032

L  /ER NAME                                    BIRTH DATE OPERATOR NUMBER    STATE  SOC.SEC.NO. MVR
ROBERT BROWN                                   12/20/32 RD309311              OH                N

---

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

ENDORSEMENT TOTAL        0

| Agent: | 5520/0000 |
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  8/22/95

SYOUNG



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.



```
Insured:                                          Policy Prefix........:        PAP
        JHM ENTERPRISES, INC.                     Policy Number........: 1857700495
        1200 VALLAMONT DRIVE, N.W.                Policy Period........: 04/18/1995 to 04/18/1996

        WILLIAMSPORT      PA 17701-0000            Endorsement Number...:    6
                                                   Endorsement Effective: 09/19/1995
```

**************************************************** DRIVER(S) DELETED *****************************************************

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0009

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|-------------|------------|-----------------|-------|-------------|-----|
| RICHARD A FREDERICKS | 3/22/31 | 06835773 | PA | | R |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|--------|-------------------------------|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

| ENDORSEMENT TOTAL | 0 |
|-------------------|---|

```
Agent:                                    5520/0000
        SUSQUEHANNA INS. ASSOC., INC.                    Authorized Representative
        6 E. 18TH STREET
                                                         Endorsement Issued:  9/27/95
        SELINSGROVE       PA 17870
                                                                  SYOUNG
```



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT      PA 17701-0000 |

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    7
Endorsement Effective: 09/19/1995

************************************************* DRIVER(S) DELETED *************************************************

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0034

DRIVER NAME                                    BIRTH DATE OPERATOR NUMBER    STATE  SOC.SEC.NO. MVR
RICHARD E FREDERICK                            12/16/53  16331001            PA                 R

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

ENDORSEMENT TOTAL      0

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE      PA 17870 | |

Authorized Representative

Endorsement Issued: 10/02/95

SYOUNG

 

LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent herewith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    8
Endorsement Effective: 09/19/1995

*********************************************** DRIVER(S) ADDED ***********************************************

FORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

OPERATOR ADDED   - SEQ # 0043

| DRIVER NAME | | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|---|
| RICHARD A FREDERICKS | | 3/22/31 | 06835773 | PA | | N |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

| ENDORSEMENT TOTAL | 0 |
|---|---|

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued: 10/12/95

DHUMMERT

Attached to and forming part of Policy Number  PAP 1857700495    EFF  04/18/1995 TO  04/18/1996
ISSUED TO:  JHM ENTERPRISES, I.C.

## ENDORSEMENT SCHEDULE

| NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|
| PAP 0002 08 93 | DECLARATION PAGE |
| L     1063 03 93 | SCHEDULE OF COVERED AUTOS |
| L     1025 02 92 | DRIVER SCHEDULE |
| CA 99 28 06 92 | STATED AMOUNT INSURANCE |
| CA00121293A | TRUCKERS COVERAGE FORM |
| L     1091 05 93 | LOSS OF USE COVERAGE |
| OMB 3120 00 86 | ENDMT FOR MOTOR CARRIER ... UNDER SECTION 10927, TITLE 49 ... |
| IRB 3538A 0492 | FORM F - UNIFORM MOTOR CARRIER ... INSURANCE ENDORSEMENT |
| OMB 2125 00 74 | ENDMT FOR MOTOR CARRIER ... UNDER SECTION 29 AND 30 ... ACT OF 1980 |
| CA 22 37 12 92 | PENNSYLVANIA BASIC FIRST PARTY BENEFIT |
| CA 22 38 07 90 | PENNSYLVANIA ADDED AND COMBINED FIRST PARTY BENEFITS ENDORSEMENT |
| CA 21 92 07 90 | PENNSYLVANIA UNINSURED   MOTORIST COVERAGE - NOT STACKED |
| CA 21 93 07 90 | PENNSYLVANIA UNDERINSURED MOTORIST COVERAGE - NOT STACKED |
| L     1003 06 92 | PUNITIVE, EXEMPLARY AND EXTRACONTRACTUAL DAMAGE EXCLUSION |
| CA 23 05 01 87 | WRONG DELIVERY OF LIQUID PRODUCTS |
| IL 00 21 11 85 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| L     1087 06 92 | CHANGES - OTHER INSURANCE HIRED AUTO PHYSICAL DAMAGE COVERAGE |
| IL 00 17 11 85 | COMMON POLICY CONDITIONS |
| IL 02 46 06 89 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| CA 01 80 07 90 | PENNSYLVANIA CHANGES |
| IL 09 10 01 81 | PENNSYLVANIA NOTICE |
| IM 10 73 05 91 | MOTOR TRUCK CARGO INSURANCE/TRANSIT AND LOCATION COVERAGE (BROAD FORM) |
| IM 100     84 | AGREEMENT - INLAND MARINE GENERAL TERMS |
| CL 100     84 | COMMON POLICY CONDITIONS |
| L     7020 02 92 | NOTICE OF RIGHT TO INSPECTION |
| L     1064 07 91 | ENDORSEMENT SCHEDULE |

Exh B

# Northland Insurance Companies

> TRUCKERS COVERAGE PART
> DECLARATIONS

☐ Check here if PART 2 is attached

Coverage is provided in Company checked
● NORTHLAND INSURANCE COMPANY
● NORTHLAND CASUALTY COMPANY
● NORTHFIELD INSURANCE COMPANY

9-25-95

St. Paul, MN 55120
STOCK COMPANIES

## ITEM ONE — NAMED INSURED AND ADDRESS

Woolever Brothers Transportation, Inc.

B03-4

P.O. Box 156
Montoursville, PA 17754

37/053

Garaging address if different

260 Jordon Ave., Montoursville, PA    Acct TF209207   M/001

| | |
|---|---|
| Policy Period | |
| From 9/01/95 | |
| To 9/01/96 | |
| 12:01 A.M. Standard Time at Named "Insured's" Garaging address | |
| Business of Named "Insured": Truckmen | |
| Commodities hauled: Building Materials, Steel, Railroad Ties | |

Individual
Partnership  (17)
X Corporation
Joint Venture
Other

POLICY NO.
T F209197
PREVIOUS POLICY NO.
New
AGENCY NO.
308499  308000

F2 06
F3 04
F4 12

BRANCH   SOURCE

## ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as Covered "Autos." "Autos" are shown as Covered "Autos" for a particular coverage by the entry of one or more of the Symbols listed in Section 1A of the Truckers Coverage Form next to the name of the coverage.

| | Covered "Autos" | COVERAGES | LIMITS OF LIABILITY | | PREMIUM |
|---|---|---|---|---|---|
| LIABILITY | 43 | (1) BODILY INJURY-BI | $        each person $        each "accident" | | $ |
| | | (2) PROPERTY DAMAGE-PD | $        each "accident" | | $ |
| | | COMBINED (1) AND (2)-CSL | $ 2,000,000 each "accident" | | $ |
| | 43 | PERSONAL INJURY PROTECTION-PIP (or equivalent No-Fault coverage) | Separately Stated in each PIP endorsement | | |
| | | ADDED PIP (or equivalent No-Fault coverage) | Separately Stated in each added PIP endorsement | | |
| | | PROPERTY PROTECTION-PPI (Michigan Only) | Separately Stated in PPI endorsement | | |
| ADDITIONAL COVERAGES BY ENDORSEMENT | | "AUTO" MEDICAL PAYMENTS | $ | | $ |
| | 43 | UNINSURED MOTORISTS-UM | BI $ 35,000   each person $ 35,000   each "accident" | | $ |
| | | | PD $        each "accident" | | $ |
| | | | CSL $ | | $ |
| | 43 | UNDERINSURED MOTORISTS-UIM | BI $ 35,000   each person $ 35,000   each "accident" | | $ |
| | | | PD $        each "accident" | | $ |
| | | | CSL $ | | $ |
| | | CARGO | $        each covered "auto", less the deductible | | $ |
| PHYSICAL DAMAGE | | COMPREHENSIVE | Stated Amount, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible. | | $ |
| | | SPECIFIED PERILS | | | $ |
| | | COLLISION | | | $ |

ADDITIONAL PREMIUM PER ENDORSEMENTS: | | $

FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION:
...01,T001,T217,T237,CA0012,CA2237,CA0180,CA2192,CA2193

N2292 N2350; N2037 N2054

ESTIMATED TOTAL PREMIUM
(Refer to Section 5B of the Truckers Coverage Form for explanation) | $ SEE ITEM TEN

## ITEM THREE — HIRED AUTO LIABILITY INSURANCE   ESTIMATED COST OF HIRE $

| | Rate per $100 Cost of Hire | | | Minimum Premium | | Advance Premium (incl. in ITEM TWO LIABILITY) | | | Cost of hire means the total cost you incur for the hire of "autos" you don't own. (See covered "auto" symbol 47.) |
|---|---|---|---|---|---|---|---|---|---|
| BI | $ | BI | | $ | BI | $ | BI | | |
| PD | $ | PD | | $ | PD | $ | PD | | |
| CSL | $ | CSL | | $ | CSL | $ | CSL | | |

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| | Year, Model, Trade Name, Body Type | Identification Number | Loss Payee |
|---|---|---|---|
| 1 | See Attached Schedule - Form #T-001 | | |
| 2 | | | |

| | LIABILITY PREMIUMS | | | | | | STATED AMOUNT | PHYSICAL DAMAGE PREMIUMS | | | | | CARGO | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BI/CSL | PD | PIP | PPI | UM | OTHER | | Comp S.P. | DED. | COLL. | DED. | | RATE | PREM. |
| 1 | See #T-001 | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | |

## ITEM FIVE — NAMED LESSEE(S) AND ADDRESS

Countersigned _____ rmy  rmy 9/13/9 _____ 19 5 _____ By _____

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORMS(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1990

MEMORANDUM OF INSURANCE

TD-01 (7/91)

TYPIST: SET TYPEWRITER TABS AS SHOWN


## Northland Insurance Companies

**SUPPLEMENTARY TRUCKERS COVERAGE**
**PART DECLARATIONS**
PART 2

POLICY NO
T

**ITEM SIX – ADDITIONAL SYMBOLS (Refer to Truckers Coverage Form – Section 1A for symbols 41 – 50.)**

*(handwritten)*
Liab 64762  .9830
PIP    955  .0145
OM     126  .0019
UIM     42  .0000
       65885

**ITEM SEVEN – SCHEDULE FOR NON-OWNERSHIP LIABILITY**     Rating B

| Estimated Number of Employees | ADVANCE PREMIUM (This item is included in ITEM TWO LIABILITY) | BODILY INJU PROPERTY D COMBINED S |
|---|---|---|

**ITEM EIGHT – SCHEDULE OF HIRED COVERED AUTO COVERAGE**

PHYSICAL DAMAGE INSURANCE

| COVERAGES | LIMIT OF LIABILITY | RATE | | |
|---|---|---|---|---|
| COMPREHENSIVE | $_____, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible | $ | $ | $ |
| SPECIFIED PERILS | | | $ | $ |
| COLLISION | | $ | $ | $ |

PHYSICAL DAMAGE INSURANCE for covered "autos" you hire or borrow is excess unless indicated below by an "X".
☐ If this box is checked, PHYSICAL DAMAGE COVERAGE applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any covered "auto" you hire or borrow is deemed to be a covered "auto" you own.

TOTAL: $

*(handwritten)*
Liab 64762
PIP 955
009  126
109   42

**ITEM NINE – TRAILER INTERCHANGE INSURANCE**

| COVERAGES | LIMIT OF LIABILITY | RATE | MINIMUM PREMIU |
|---|---|---|---|
| COMPREHENSIVE | $_____, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible | $ | $ |
| SPECIFIED PERILS | | $ | $ |
| COLLISION | | $ | $ |

TOTAL: $

**ITEM TEN – MONTHLY REPORTING POLICIES**

| COVERAGES | Rating Basis | ESTIMATED ANNUAL PREMIUMS | | | DEPOSIT PREMIUM 9344.00 |
|---|---|---|---|---|---|
| | ☐ Gross Receipts ☒ Mileage ☐ Value of equipment ☐ Rate per owner-operator | Estimated Annual | Minimum Annual | Minimum Monthly | $ 8000.00 letter of credit 17344. |
| Liability, Basic PIP, Basic UM/UIM | 3.66 per 100 miles per month | $ 65885 | 59297 | 4914 | MINIMUM PREMIUM |
| | | $ | | | $ _____ |
| Cargo | .194 per 100 miles per month | $ 3492 | 3143 | 262 | ☒ Monthly ☒ Annually |
| | | $ | | | |

estimated annual gross receipts    $ _____
mileage    $ 1,800,000
value of equipment    $ _____
number of owner-operators    _____

$ 69,377.    TOTAL ESTIMATED ANNUAL PREMIUM

For physical damage coverage the deductibles are:

$ _____  Comprehensive
$ _____  Specified Perils
$ _____  Collision

See separate endorsements for reporting conditions and definitions.





Policy No.:

Issued to:

## SCHEDULE OF AUTOMOBILES
### (forming part of DECLARATIONS)

## ITEM FOUR SUPPLEMENT

| NO. | YEAR MODEL, TRADE NAME, BODY TYPE | ID NUMBER | LOSS PAYEE – LP | ADDITIONAL INSURED – AI |
|-----|-----------------------------------|-----------|-----------------|--------------------------|
| 1 | 1983 Mack Tractor | 084695 | | |
| 2 | 1978 International Tractor | SH9464PA | | |
| 3 | 1985 Freightliner Tractor | P270395 | | |
| 4 | 1989 Freightliner Tractor | 370461 | | |
| 5 | 1990 Freightliner Tractor | 389238 | | |
| 6 | 1991 White Tractor | 637664 | | |
| 7 | 1984 Peterbilt Tractor | 171623 | | |
| 8 | 1982 Freightliner Tractor | 206459 | | |
| 9 | 1987 Freightliner Tractor | 303672 | | |
| 10 | 1973 White Tractor | 073921 | | |
| 11 | 1978 Mack Tractor | T18760 | | |
| 12 | 1986 Freightliner Tractor | 291318 | | |
| 13 | 1988 White Tractor | 601032 | | |
| 14 | 1985 Freightliner Tractor | 256601 | | |
| 15 | 1988 International Tractor | 014548 | | |
| 16 | 1977 Mack Tractor | T13891 | | |
| 17 | 1985 International Tractor | CA12452 | | |
| 18 | 1972 Mack Tractor | T29173 | | |

| NO. | LIABILITY PREMIUMS | | | | | | | STATED AMOUNT | PHYSICAL DAMAGE PREMIUMS | | | | | CARGO | | |
|-----|-----|-----|-----|-----|------------|-----|-------|--------------|------------------|------|------|-------|------|------|------|------|
| | CSL | BI | PD | PIP | MED PAY | UM | OTHER | | ☐ COMP ☐ S.P. | DED. | COLL | DED. | DED. | RATE | PREM. |
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |

T-001 (9/94)

COMMERCIAL AUTO
CA 00 12 12 93

# TRUCKERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI - DEFINITIONS.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

| SYMBOL | DESCRIPTION |
|--------|-------------|

**41** = ANY "AUTOS".

**42** = OWNED "AUTOS" ONLY. Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins.

**43** = OWNED COMMERCIAL "AUTOS" ONLY. Only those trucks, tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins.

**44** = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the No-Fault law in the state where they are licensed or principally garaged.

**45** = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**46** = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

**47** = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type auto" you lease, hire, rent or borrow from any member of your household, any of your employees, partners or agents or members of their households.

**48** = "TRAILERS" IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT. Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession.

**49** = YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN TRAILER INTERCHANGE AGREEMENT. Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol "49" is entered next to a Physical Damage Coverage in ITEM TWO of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage.

**50** = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

Copyright, Insurance Services Office, Inc., 1993

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1. If symbols 41, 42, 43, 44 or 45 are entered next to a coverage in **ITEM TWO** of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 46 is entered next to a coverage in **ITEM TWO** of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II - LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

   (2) Your employee or agent if the covered "auto" is a "private passenger type auto" and is owned by that employee or agent or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

   (5) A partner of yours for a covered "private passenger type auto" owned by him or her or a member of his or her household.

Copyright, Insurance Services Office, Inc., 1993, 1994

CA 00 12 12 93    □

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit; or, if not connected:

   (1) Is being used exclusively in your business as a "trucker"; and

   (2) Is being used pursuant to operating rights granted to you by a public authority.

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

   (1) Is being used exclusively in your business as a "trucker"; and

   (2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

a. Any "trucker" or his or her agents or employees, other than you and your employees:

   (1) If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

   (2) If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and employees while the "autos" are being used exclusively in the "truckers" business and pursuant to operating rights granted to the "trucker" by a public authority.

b. Any rail, water or air carrier or its employees or agents, other than you and your employees, for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

   (1) Is being transported by the carrier; or

   (2) Is being loaded on or unloaded from any unit of transportation by the carrier.

## 2. COVERAGE EXTENSIONS

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

   (1) All expenses we incur.

   (2) Up to $250 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

   (3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

   (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

   (5) All costs taxed against the "insured" in any "suit" we defend.

   (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out-of-State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

   (1) Increase the Limit of Insurance for Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

   (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

Copyright, Insurance Services Office, Inc., 1993

## 3. EXCLUSIONS

This insurance does not apply to any of the following:

### 1. EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. CONTRACTUAL

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

### 3. WORKERS' COMPENSATION

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

### 5. FELLOW EMPLOYEE

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

### 6. CARE, CUSTODY OR CONTROL

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. HANDLING OF PROPERTY

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. OPERATIONS

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

### 10. COMPLETED OPERATIONS

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

Copyright, Insurance Services Office, Inc., 1993    CA 00 12 12 93    □

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

## 11. POLLUTION

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## 13. RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - TRAILER INTERCHANGE COVERAGE

### COVERAGE

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   a. **Comprehensive Coverage.** From any cause except:

      (1) The "trailer's" collision with another object; or

      (2) The "trailer's" overturn.

   b. **Specified Causes of Loss Coverage.** Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   c. **Collision Coverage.** Caused by:

      (1) The "trailer's" collision with another object; or

      (2) The "trailer's" overturn.

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **COVERAGE EXTENSIONS**

   Supplementary Payments. In addition to the Limit of Insurance, we will pay for you:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

   c. All reasonable expenses incurred at our request, including actual loss of earnings up to $100 a day because of time off from work.

   d. All costs taxed against the "insured" in any "suit" we defend.

   e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

### B. EXCLUSIONS

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard.**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War or Military Action.**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions.**

   We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

### C. LIMIT OF INSURANCE AND DEDUCTIBLE

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Declarations:

1. The actual cash value of the damaged or stolen property at the time of the "loss".

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

3. The Limit of Insurance shown in the Declarations.

    Copyright, Insurance Services Office, Inc., 1993    CA 00 12 12 93    □

## SECTION IV - PHYSICAL DAMAGE COVERAGE

### A. COVERAGE

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage.** From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage.** Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage.** Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing - Private Passenger Autos.**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles.**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay under the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extension.** We will also pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

### B. EXCLUSIONS

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard.**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War or Military Action.**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

   a. Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

   b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for any such contest or activity.

Copyright, Insurance Services Office, Inc., 1993

c. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Equipment designed or used for the detection or location of radar.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

f. Any accessories used with the electronic equipment described in paragraph e. above.

Exclusions 2.e. and 2.f. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

3. Other Exclusions

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

## D. DEDUCTIBLE

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property, will be reduced by, the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V - TRUCKERS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. LOSS CONDITIONS

### 1. APPRAISAL FOR PHYSICAL DAMAGE LOSS

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

### 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is a "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examination under oath at our request and give us a signed statement of your answers.

### 3. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

### 4. LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

### 5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. GENERAL CONDITIONS

### 1. BANKRUPTCY

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

### 2. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

### 3. LIBERALIZATION

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. NO BENEFIT TO BAILEE - PHYSICAL DAMAGE COVERAGES**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. OTHER INSURANCE - PRIMARY AND EXCESS INSURANCE PROVISIONS**

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

d. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

e. Regardless of the provisions of paragraphs a., b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. PREMIUM AUDIT**

a. The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

   Copyright, Insurance Services Office, Inc., 1993   CA 00 12 12 93

## SECTION VI - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

F. "Insured Contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the "tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

    That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

    b. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

    c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

"_____ss" means direct and accidental loss or damage.

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. Power cranes, shovels, loaders, diggers or drills; or

    b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. Equipment designed primarily for:

        (1) Snow removal;

        (2) Road maintenance, but not construction or resurfacing; or

        (3) Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J. "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

K. "Property damage" means damage to or loss of use of tangible property.

Copyright, Insurance Services Office, Inc., 1993
CA 00 12 12 93   □

"Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

M. "Trailer" includes semitrailer or a dollie used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

N. "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

Copyright, Insurance Services Office, Inc., 1993

IV-17 18:11     WOOLEVER BROTHERS TRANSPORTATION          717P368R   7          P.01

*Exh C*

LEASE NUMBER 9801

# AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this **1ST** day of **MARCH** 19**90**, by and between **JHM ENTERPRISES  1200 VALLAMONT DR.  WILLIAMSPORT, PA. 17701**

(Name)                                    (Address)

Owner and/or Lessor and **WOOLEVER BROS TRANS. INC.**, Lessee.

Motor Vehicle Equipment **260 JORDAN AVE. MONTOURSVILLE, PA.**

Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|------|------|------|-----------|---------------------|
| GHTLINER #/2 | 79 | CABOVER | CA213HM160222 | ~~AA95090~~  AA95089  PA. |

**a.** The term of this lease shall begin at **10 A.M.** o'clock on **4 / 1 /90** ... **10 A.M.** o'clock on **3 / 1 /90**, and terminate at the end of thirty (30) days, or periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation.

or

**b.** The term of this lease shall begin at _____ M. o'clock on _____ /1 for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve.

or

**c.** The term of this lease shall begin at _____ M. o'clock on _____ /1 for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 2o3 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the it commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

**d.** The term of this lease shall begin at _____ M. o'clock on _____ /1 for the purpose of transportation intrastate and/interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period October 1 to April 30, inclusive, of each year.

**See Rental** For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following:  (CHECK ONE)

- **80** % of Gross transportation charges for use of said equipment and services of driver or drivers.

- As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this Agreement of Lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

JHM ENTERPRISES                              Lessor

By: _[signature]_ Pres

WOOLEVER BROS TRANS. INC.                    Lessee

By: _[signature]_

## REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) **3/1/90** carefully inspected the equipment described herein and that true and correct report of the result of such inspection, and that Lessee's identification placards was displayed on each side of the power unit.

_[signature]_

Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Description of Defect Trailer |
|------|------------------------|------------------------|-------------------|-------------------|-------------------------------|-------------------------------|
| dy |  |  |  |  |  |  |
| kes |  |  |  |  |  |  |
| ling System |  |  |  |  |  |  |
| ive Line |  |  |  |  |  |  |
| ergency Equipment |  |  |  |  |  |  |
| gine |  |  |  |  |  |  |
| haust |  |  |  |  |  |  |
| l System |  |  |  |  |  |  |
| es |  |  |  |  |  |  |
| rn |  |  |  |  |  |  |
| ble |  |  |  |  |  |  |
| hts (state which) |  |  |  |  |  |  |
| flectors |  |  |  |  |  |  |
| edometer |  |  |  |  |  |  |
| ings |  |  |  |  |  |  |
| ering |  |  |  |  |  |  |
| es |  |  |  |  |  |  |
| scale |  |  |  |  |  |  |
| ndshield Wiper |  |  |  |  |  |  |
| er Items |  |  |  |  |  |  |
| uiring attention |  |  |  |  |  |  |

I hereby certify that on the date stated above, the person who made inspection was competent and qualified to make such inspection, and was duly authorized to make such inspection as a representative

**WOOLEVER BROS. TRANS. INC.**

Name of authorized carrier

## EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(P) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity _____

PLAINTIFF'S EXHIBIT  Sinclair 1  @1-4-97  JP

or co-partner of officer of authorize    service

TE: _____ 3/1/90 _____

Time and Data of De•

Signed _____
Owner or Agent

RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN

EE acknowledges receipt of the above described equipment on

MARCH, L. ____ 19 90

MONTOURSVILLE, PA.

Signed by _Zz_t_Wat__
LESSEE

LESSOR acknowledges return of the above described equipment on

_____ 19 ...

at _____

Signed by _____
LESSOR

---

**Post-it" Fax Note    7671**

| | |
|---|---|
| Date 11/17/95 | # of pages ▶ 2 |
| To Gail | From Hazel Sinclair |
| Co./Dept. Northland Ins | Co. Woolever Bus |
| Phone # 800-328-5972 | Phone # 717-368-8011 |
| Fax # 612-688-4170 | Fax # 717-368-8547 |

---

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax, wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuels, lubricants, and tires and tubes.

d. Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessee agrees that Lessee may deduct 2½ of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver as operative in operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessee shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessee is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessor is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said motor vehicle leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the

maya previous to area employment of driving under this lease.

**Mechanical Failure**

In the ███nt ██ mechanical failure of the equipment herein leased, r ██████ ██ deemed sufficient by Lessee, L ██ sh██ ████ve authority to transfer cargo and effect deliver ██ ████ ██ selected by Lessee. In such event, ████ll exp██████e incured with respect to such transfer and deliver██ of cargo shall be reimbursed by Lessor to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $750.00 for loss or damage to cargo or equipment.

DEC-04 17:25    WOOLEVER BROTH   TRANSPORTATION    ☎ 717   8847    Exh D
P. 01

533

LEASE NUMBER ___W-12___

## AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this ___16th___ day of ___November___, 195__, by and between ___JHM Enterprises 1200 Vallamont Dr___
(Name)                                                                                  (Address)
___Williamsport Pa 17701___, Owner and/or Lessor, and ___Woolever Bros Trans Inc___, Lessee
Motor Vehicle Equipment ___260 Jordan Ave Montoursville Pa 17754___
Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|------|------|------|------------|---------------------|
| Freightliner | 1979 | C-O | CA213 Hm 160222 | AA 95089 Pa |
| Budd | 1977 | Van | 141235E | XC 27304 Pa |

Term
a. The term of this lease shall begin at ___4:00 P___ M. o'clock on ___11/16 95___, and terminate at the end of thirty (30) days, or at ___same___ M. o'clock ___11/17 95___, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation;

or

b. The term of this lease shall begin at _____ M. o'clock on ' /1 for the purpose of transportation intrastate in the direction of a point which Lessor is authorised to serve;

or

c. The term of this lease shall begin at _____ M. o'clock on ' /1 for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 203 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorised representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on ' /1 for the purpose of transportation intrastate and/interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

Lease Rental
For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following:  (CHECK ONE)
A. ___90___ % of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

___JHM Enterprises___ Lessor
By: ___John Arnold Pres.___

___Woolever Bros Trans Inc___ Lessee
By: ___Harold E Sinclair Sec Tres___

### REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) ___11/16/95___ I carefully inspected the equipment described herein and that his is a true and correct report of the result of such inspection, and that Lessee's identification placard was displayed on each side of the power unit.

___Harold Sinclair___
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Trailer | Defective Tractor | Trailer | Description of Defect Tractor | Trailer |
|------|------|------|------|------|------|------|
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | | | | | | |
| Glass | | | | | | |
| Horn | OK | OK | | | | |
| Leaks | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other Items | | | | | | |
| requiring attention | | | | | | |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorised to make such inspection as a representative of

___Woolever Bros Trans Inc___

### EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(f) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity

_Hazel Sinclair au Sinter_
Signature of authorized agent
or co-partner of officer of an accredited carrier

Time and Date of Pickup _____

Time and Del. Delivery _____

DATE: _11/16/93_

Signed _____
Owner or Agent

**RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN**

LESSEE acknowledges receipt of the above described equipment on _11/16_ _93_

LESSOR acknowledges return of the above described equipment on _11/17_ 19_93_

at _____

at _Ephrata, Pa._

Signed by _Hazel Sinclair_
LESSEE

Signed by _____
LESSOR

Post-it® Fax Note    7671    Date _12/4_    # of pages ▶ _2_

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for.

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax; wage taxes; health, welfare and pension contributions; and any other payments so required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advance by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuel, lubricants, and tires and tubes

d. Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessor agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessor Is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereto is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the seven (7) consecutive days previous to first employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, or other causes deemed sufficient by Lessee, Lessee shall have authority to transfer cargo and effect delivery by vehicles selected by Lessee. In such events all expenses incured with respect to such transfer and delivery of cargo shall be reimbursed by Lessee to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $750.00 for loss or damage to cargo or equipment.

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 2nd day of August, 2001, a true and correct copy of the foregoing document was served by first-class, United States mail, postage prepaid, upon the following:

David Ira Rosenbaum, Esq.
Ruthrauff & Armbrust, P.C.
1601 Market Street, 16th Floor
Philadelphia, PA 19103

J.H.M. Enterprises, Inc.
1200 Walmont Drive, N.W.
Williamsport, PA 17701

Vernice Lee Statts
489 East Academy Street
Hughesville, PA 17737-1805

Jonathan H. Rudd