*[handwritten note:]* Summons Issued as to Woolover Bros. Trans. w h/c cot . h/c to mesg.

*[handwritten:]* (4 8/3/01

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY      :
    Plaintiff      :
                          :
                           :
    v.      :   No. 1:01-CV-763
                           :
LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., VERNICE  :
L. STATTS, ROBERT E. KRAPF and     :
ʿUTE L. HETLAND CLARK, as          :
Administrators of the Estate of    :
Karin Clifford and ROBERT E. KRAPF :
and PATRICIA R. CLIFFORD, as       :
Administrators of the Estate of    :
Robert R. Clifford, SHERRILL J.    :
MULLIGAN, DENIS A MULLIGAN         :
    Defendants      :
                           :
LINCOLN GENERAL INSURANCE COMPANY, :
    Third Party Plaintiff      :
                           :
    v.      :
                           :
WOOLEVER BROTHERS TRANSPORTATION   :
INC.                               :
    Third Party Defendant      :   (JUDGE KANE)

FILED
HARRISBURG

AUG 2 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

**DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S THIRD PARTY COMPLAINT AGAINST WOOLEVER BROTHERS TRANSPORTATION, INC.**

AND NOW COMES, Defendant/Third Party Plaintiff Lincoln General Insurance Company, by and through its attorneys, McNees, Wallace & Nurick, and makes the following Third Party Complaint against Woolever Brothers Transportation, Inc.

**PARTIES**

1.    Defendant/Third Party Plaintiff Lincoln General Insurance Company (hereinafter "Lincoln General") is an insurance company licensed to do business in Pennsylvania with a principal place of business at 3350 Whiteford Road, P.O. Box 3709, York, York County, Pennsylvania 17402-0136.

2.    Third Party Defendant Woolever Brothers Transportation, Inc. ("Woolever") is a Pennsylvania corporation with its offices located at 260 Jordan Avenue, Montoursville, Lycoming County, Pennsylvania.

**JURISDICTION AND VENUE**

3.    This Court has supplemental jurisdiction over Lincoln General's Third Party Complaint in accordance with 28 U.S.C. §1367(a) in that the Third Party Complaint is related to the Plaintiff's claim.

4.    Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the Third Party Complaint occurred in this District.

**FACTUAL BACKGROUND**

5.    Lincoln General issued a Primary Auto Package insurance policy to J.H.M. Enterprises, Inc. ("JHM"), Policy Number PAP 185770 0495 covering the period April 18, 1995 through April 18, 1996 (hereinafter "Lincoln General Policy").  A true and correct copy of the Lincoln General Policy is attached hereto as Exhibit A.

6.   One of the vehicles scheduled under the Policy is a 1979 Freightliner, Serial Number CA213HM160222 (hereinafter "Tractor").

7.   The Lincoln General Policy provides $750,000 in liability coverage for each accident or loss.

8.   On March 1, 1990, JHM and Woolever entered into an "Agreement Of Lease Of Motor Vehicle Equipment" (hereinafter "Permanent Lease") whereby JHM leased the Tractor to Woolever.  A copy of the Permanent Lease is attached hereto as Exhibit B.

9.   The Permanent Lease provides that: "The term of this lease shall begin at 10 A.M. o'clock on 3/1/90, and terminate at the end of thirty (30) days, or at 10 A.M. o'clock 4/1/90, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation."

10.  The Permanent Lease provides that: "During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof."

11.  The Permanent Lease provides that: "During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment issued hereunder only when such is operated in the services of Lessee."

12.  Prior to June 7, 1995, JHM and Vernice L. Statts ("Statts") entered into an agreement whereby JHM agreed to sell the Tractor to Statts.

3

13.   It is believed that Statts made payments or provided other consideration to JHM for the purchase of the Tractor.

14.   Statts became the equitable owner of the Tractor after he agreed to purchase it from JHM and began making payments or providing other consideration to JHM, even though JHM continued to hold title to the Tractor

15.   On or about November 16 - 17, 1995, Statts was the owner-operator of the Tractor.

16.   On or about November 16, 1995, Statts drove the Tractor, which was pulling a van trailer, to Watkins Glen, New York to pick up a load of salt for Woolever.  After the trailer was loaded, Statts returned to his home in Pennsylvania for the night.

17.   In the morning of November 17, 1995, Statts drove the tractor and loaded trailer to Ephrata, Pennsylvania in order to deliver the load of salt for Woolever.

18.   After delivering the load of salt for Woolever, Statts allegedly began driving toward Berwick, Pennsylvania, where he intended to drop off the van trailer used to haul the load of salt for Woolever, and then pick up another load.

19.   As Statts traveled toward Berwick to drop off the van trailer used to haul the load of salt for Woolever, he was involved in an accident on State Route 309 in Rush Township, Schuylkill County, Pennsylvania (hereinafter "Accident").

20.   Statts drove into the rear of a vehicle being driven by Robert R. Clifford, and in which Karin Clifford was a passenger. As a result of the collision, both Robert and Karin Clifford were killed.

21. The Clifford vehicle struck a vehicle driven by Sherrill Mulligan. As a result of the collision between the Clifford vehicle and the Mulligan vehicle, Sherrill Mulligan allegedly suffered personal injuries.

22. There were placards affixed to the Tractor at the time of the Accident which identified Woolever and set forth Woolever's federal and state operating authority number.

23. As a result of the Accident, the Estates of Robert and Karin Clifford filed a suit against Statts, JHM, and Woolever in the Court of Common Pleas of Schuylkill County at Docket No. S-650-1996 (hereinafter "Clifford Action").

24. As a result of the Accident, the Mulligans filed a suit against Statts, JHM, and Woolever in the Court of Common Pleas of Schuylkill County at Docket No. S-1689-1997 (hereinafter "Mulligan Action").

25. Lincoln General defended Statts and JHM in the Clifford Action and Mulligan Action.

26. Northland Insurance Company ("Northland") issued a Truckers insurance policy to Woolever covering the period from September 1, 1995 through September 1, 1996 (hereinafter "Northland Policy"). A copy of the portion of the Northland Policy provided by Northland to Lincoln General is attached hereto as Exhibit C.

27. The Northland Policy provides $2,000,000 in liability coverage for each accident.

28. Northland defended Woolever in the Clifford Action and Mulligan Action under the Northland Policy.

29.  Lincoln General and Northland eventually agreed to each advance $675,000 (a total of $1,350,000) to settle the Clifford and Mulligan Actions, while reserving all rights to seek reimbursement from the other pending a determination of the coverage issues involved in this case.

## COUNT I

30.  Lincoln General incorporates herein by reference paragraphs 1 - 29 above.

31.  The Lincoln General Policy expressly states that:

> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:
>
> a.  This Coverage Form;
>
> b.  The covered "auto";
>
> c.  Your interest in the covered "auto"; or
>
> d.  A claim under this Coverage Form.

32.  JHM, Statts and Woolever all qualify as insureds under the Lincoln General policy.  JHM is the named insured.  Statts is an "insured" under the Lincoln General Policy since he was using the Tractor with JHM's permission.  Woolever is an insured since the Lincoln General Policy defines an "insured" to include anyone who is liable for the conduct of an "insured" described in the Lincoln General Policy; and, since Woolever admitted in the underlying actions that it was liable for Statts' conduct, it qualifies as an insured under the Lincoln General Policy.

33.  After the Accident, JHM and Woolever represented to Lincoln General that the load of salt hauled for Woolever from

Watkins Glen, New York to Ephrata, Pennsylvania was the subject of a trip lease between JHM and Woolever.

34.   JHM and Woolever provided Lincoln General with an "Agreement of Lease Of Motor Vehicle Equipment" dated November 16, 1995, for the Tractor (hereinafter "Trip Lease").  A copy of the Trip Lease is attached as Exhibit "D".

35.   The Trip Lease provides that: "The term of this lease shall begin at 4:00 P.M. o'clock on 11/16/95 and terminate at the end of thirty (30) days, or at 8:00 A.M. o'clock 11/17/95, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation."

36.   The Trip Lease is signed by Jay McCormick, President of JHM, and Hazel Sinclair, Secretary/Treasurer of Woolever.

37.   JHM and Woolever represented on the face of the Trip Lease that it was signed on November 16, 1995.

38.   The Trip Lease further provides a certification by Harold Sinclair, a part-owner of Woolever, that on 11/16/95, he "carefully inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and the Lessee's identification placard was displayed on each side of the power unit."

39.   In accordance with the Trip Lease, it appeared as if Woolever's lease of the Tractor and van trailer ended prior to the Accident.

40.   JHM and Woolever represented to Lincoln General that the Trip Lease was in effect at the time the Accident occurred.

41. JHM and Woolever failed to disclose the existence of the Permanent Lease for the Tractor to Lincoln General until almost two years after the Accident.

42. Jay McCormick, the owner of JHM, and Hazel Sinclair, a part owner of Woolever, were deposed for purposes of the Clifford and Mulligan Actions on November 4, 1997. Jay McCormick testified first. Jay McCormick testified that the load of salt which was hauled by Statts immediately before the Accident was covered by a trip lease. He further testified that the only arrangement he had with Woolever prior to the Accident was through trip leases. Jay McCormick never mentioned the Permanent Lease on the Tractor, or that JHM had entered into permanent leases with Woolever for other vehicles.

43. Hazel Sinclair was deposed immediately after Jay McCormick. She disclosed for the first time that the Trip Lease was not in existence on November 16 - 17, 1995, and that there was a Permanent Lease for the Tractor that had been executed in 1990. The Permanent Lease was produced for the first time at Hazel Sinclair's deposition.

44. At her deposition, Hazel Sinclair testified that she made up the Trip Lease on November 18, 1995, after the Accident had occurred.

45. JHM and Woolever were well aware of the Permanent Lease at the time of the Accident. On November 17, 1995, the day of the Accident and before the Trip Lease was even prepared, Hazel Sinclair of Woolever faxed to Northland a copy of the Permanent Lease. (See fax notation on Exhibit C).

8

46. The statements made by JHM and Woolever in the Trip Lease that it was executed on 11/16/95 are false.

47. The statement made by Woolever in the Trip Lease that Harold Sinclair carefully inspected the equipment on 11/16/95 is false.

48. JHM and Woolever knew that the statements made in the Trip Lease as to the date it was executed and the alleged careful inspection of the equipment by Harold Sinclair on 11/16/95 were false.

49. JHM and Woolever attempted to deceive Lincoln General into believing that there was a Trip Lease which had expired a few hours before the Accident, when it knew that there was a Permanent Lease in effect at the time of the Accident which required Woolever to provide liability coverage for the Tractor.

50. JHM's and Woolever's calculated plan to deceive Lincoln General about the nature of the lease of the Tractor was an attempt to impose on Lincoln General primary liability coverage for the Accident when it appropriately belonged with Northland.

51. JHM and Woolever committed a fraud upon Lincoln General, and intentionally concealed and/or misrepresented material facts concerning their interest in the Tractor and the claim for the Accident.

52. The identity of the Permanent Lease was a material fact involving Woolever's, JHM's and Statts' claim for coverage under the Lincoln General Policy, and whether Lincoln General or Northland was required to provide primary coverage.

53. JHM and Woolever intentionally concealed the existence of the Permanent Lease in an attempt to impose on Lincoln General

9

primary liability coverage for the Accident when it appropriately belonged with Northland.

54. Woolever was contractually obligated in accordance with the terms of the Permanent Lease to furnish and pay the costs of all public liability, property damage and cargo insurance upon the Tractor.

55. Lincoln General believes that JHM and Woolever were concerned that Woolever's insurance rates would go up if its insurance carrier was required to provide primary coverage, and developed a calculated plan to shift responsibility for the Accident to JHM's insurance carrier.

56. Lincoln General believes that JHM did not care if its insurance rates went up as a result of its insurance carrier providing primary coverage for the Accident, since JHM did not intend to continue its own trucking insurance after the Policy expired on April 18, 1996, but rather planned to begin hauling exclusively for Woolever as an owner-operator, and use Woolever's insurance to cover JHM's operations.

57. JHM's and Woolever's deception and fraud involving their failure to disclose the existence of the Permanent Lease and misrepresentations as to the Trip Lease executed after the Accident were all part of its plan to manipulate insurance coverage and impose on JHM's liability insurance carrier responsibility for incidents that should have been covered by Woolever's liability insurance carrier.

58. The liability coverage afforded under the Lincoln General Policy is void as to JHM, Woolever and/or Statts for the claims arising out of the Accident as a result of the fraud,

intentional concealment, and misrepresentations of material facts
committed by JHM and Woolever.

WHEREFORE, Lincoln General Insurance Company respectfully
requests that the Court declare that the liability coverage
provided under the Lincoln General Policy is void as to Woolever
as a result of the fraud, intentional concealment, and
misrepresentations of material fact committed by JHM and
Woolever, and declare that Lincoln General had no obligation to
provide a defense or indemnity to Woolever for the claims arising
out of the Accident.

## COUNT II

59. Lincoln General incorporates herein by reference
paragraphs 1 - 58 above.

60. The Lincoln General Policy provides that JHM
transferred to Lincoln General all rights it has against
Woolever.

61. In accordance with the Permanent Lease, Woolever was to
furnish and pay the costs of all public liability, property
damage and cargo insurance upon the Tractor when it was being
operated in the services of Woolever.

62. Northland claimed that Woolever failed to obtain any
insurance on the Tractor while it was under lease to Woolever,
and as such, it has no obligation to provide coverage for JHM
and/or Statts under the terms of the policy it issued to
Woolever.

63. Although Lincoln General denies Northland's claim, to
the extent Northland is successful in its claim that it does not
provide any coverage to JHM and/or Statts under the terms of its

11

policy issued to Woolever, and if Lincoln General is unsuccessful in recovering from Northland the full amount it paid in defending and settling the claims against JHM, Statts, and Woolever, or if Lincoln General is required to pay Northland any amount as a result of the claims asserted in the Complaint, then Lincoln General avers the following against Woolever.

64.   If Woolever had provided insurance coverage for the Tractor as required by the Permanent Lease, Northland would have been required to provide coverage to JHM and Statts in accordance with the terms of Northland's Policy for the claims arising out of the Accident.

65.   If Woolever had provided insurance coverage for the Tractor as required by the Permanent Lease, Northland's coverage for JHM, Statts, and Woolever would have been primary.

66.   If Woolever had provided insurance coverage for the Tractor as required by the Permanent Lease and Northland's coverage was primary, then Northland would have been required to pay the costs of defending against and settling the Clifford and Mulligan Actions without any contribution from Lincoln General.

67.   As a result of Woolever's breach of the Permanent Lease, Lincoln General paid $91,511.35 in defending against and settling the Clifford and Mulligan Actions.

68.   As a result of Woolever's breach of the Permanent Lease, Northland is seeking to recover $126,769.94 from Lincoln General for amounts that Northland paid to defend against and settle the Clifford and Mulligan Actions.

69.   Lincoln General, as the transferee of all of JHM's rights against Woolever, is entitled to recover from Woolever

12

$766,511.35 as a result of its failure to provide insurance coverage for the Tractor as required by the Permanent Lease, and to recover any additional amount that it might be required to pay Northland as a result of the claims asserted in the Complaint.

WHEREFORE, Lincoln General demands judgment in its favor and against Woolever for $766,511.35, as well as any additional amount that Lincoln General might be required to pay Northland as a result of the claims asserted in the Complaint, together with interest and costs.

Respectfully submitted,

McNEES, WALLACE & NURICK

By _____
Jonathan H. Rudd, Esq.
Attorney I.D. No. 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5405

Attorneys for Lincoln General
Insurance Company

Dated: 8|2|01

No. PAP 185770 0495

*Exh A*

al of Number   1857700494



## LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD, YORK, PENNSYLVANIA 17402

### PRIMARY AUTO PACKAGE DECLARATIONS

**ITEM ONE:**
ISSUED TO:

CORPORATION

JHM ENTERPRISES, INC.
1200 VALLAMONT DRIVE, N.W.
WILLIAMSPORT     PA 17701

POLICY PERIOD:

FROM: 04/18/95   TO: 04/18/96

AGENT OR BROKER:
5520

SUSQUEHANNA INS. ASSOC., INC.
6 E. 18TH STREET
SELINSGROVE     PA 17870

*MCS-90*

KIND OF BUSINESS:  TRUCKMAN
LOCATION OF BUSINESS: SAME AS ABOVE

### THIS POLICY <u>DOES NOT</u> PROVIDE COLLISION DAMAGE TO RENTAL VEHICLES

*8095?*

**ITEM TWO**
SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below.   Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the   Truckers Coverage Form   next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more symbols from the COVERED AUTOS Section of Truckers Coverage Form show which autos are covered autos.) | - - - -  L I M I T  - - - - THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| <u>LIABILITY INSURANCE</u> | 46,47 | $     750,000 | 21,681 |
| PERSONAL INJURY PROTECTION (or equivalent) | 46 | Separately stated in each PIP e n d o r s e m e n t - minus $              deductible | 285 |
| ADDED PERSONAL INJURY PROTECTION (or equivalent) | 46 | Separately stated   in each a d d e d   P I P   endorsement | 45 |
| AUTO MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 46 | $     35,000 | 35 |
| UNDERINSURED MOTORISTS (when not incl. in UM Cov) | 46 | $     35,000 | 10 |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 46 | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto but no ded applies  to loss caused by fire  or lightning.    See ITEM FOUR For hired or borrowed autos. | 2,758 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto.  See ITEM FOUR for hired or borrowed autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 46 | Actual cash value or cost of repair, whichever is less, minus $(See Schl) ded for each covered auto.  See ITEM FOUR for hired or borrowed autos. | 5,368 |
| PHYSICAL DAMAGE TOWING & LABOR (N/A in CA) | | $           for each disablement of a private passenger auto. | |

| | | |
|---|---|---|
| GENERAL LIABILITY COVERAGE | | |
| PREMIUM FOR ENDORSEMENTS | | 1 |
| MISCELLANEOUS CHARGES * | | |
| ESTIMATED PREMIUM | | 30,183 |

FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY
AT ITS INCEPTION:    SEE ENDORSEMENT SCHEDULE

* None at time of issue.

Page 1 of 2

PAP 0002 08 93

ISSUE DATE: 04/27/95
UNDERWRITER: ERIC HIMES
TECHNICIAN: DMUMMERT

HOME OFFICE COPY

DECLARATIONS -- PRIMARY AUTO PACKAGE POLICY



**ITEM THREE**
SCHEDULE OF COVERED AUTOS YOU OWN - SEE SEPARATE SCHEDULE OF COVERED "AUTOS"

**ITEM FOUR**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR | PREMIUM |
|-------|---------------------------------------|--------------------------------|--------|---------|
| PA    | 8,400                                 | 13.558                         |        | 1,139   |

PHYSICAL DAMAGE - SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUM

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY - DEDUCTIBLE | | RATE | MAX. NO. OF AUTOMOBILES IN POSSESSION | COVERAGE DAYS | ESTIMATED PREMIUM |
|-----------|---|---|------|------|------|------|
| COMPREHENSIVE | Actual Cash Value, Cost of Repair | $ whichever is less minus $ ded. for each covered automobile but no deductible applies to loss caused by fire or lightning. | | | | |
| SPECIFIED CAUSES OF LOSS | | $ whichever is less minus $ ded. for each covered automobile. | | | | |
| COLLISION | or | $ whichever is less minus $ ded. for each covered automobile. | | | | |
| | | | | TOTAL PREMIUM | | |

**ITEM FIVE**

SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|--------------------------|--------------|--------|---------|
| Other than a | Number of Employees | | $ |
| Social Service Agency | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | | $ |

**ITEM SIX**

GENERAL LIABILITY

| COVERAGES | LIMIT | TOTAL GENERAL LIABILITY PROVISIONAL ANNUAL POLICY PREMIUM |
|-----------|-------|------|
| GENERAL AGGREGATE LIMIT (other than products & completed operations) | $ | |
| PRODUCT & COMPLETED OPERATIONS AGGREGATE LIMIT | $ | |
| PERSONAL & ADVERTISING INJURY LIABILITY LIMIT | $ | |
| EACH OCCURENCE LIMIT | $ | |
| FIRE DAMAGE LIMIT (any one fire) | $ | |
| MEDICAL EXPENSE LIMIT (any one person) | $ | |
| | | $ |

The estimated policy premium is based on the exposures you told us you would have when this policy began. We will compute your final premium due when we determine your actual exposures. The estimated policy premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due you will get a refund. To determine your final premium due we may examine your records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year the premium shall be computed annually based on our rates or premiums in effect at the beginning of each year of the policy. Your Policy Period begins 12:01 A.M. standard time at the address shown above.

Countersigned _____    By: _____

(Date)                                          (Authorized Representative)

PAP 0002 08 93

HOME OFFICE COPY

Insureds Name: JHM ENTERPRISES, IN  

**SCHEDULE OF COVERED AUTOS**

Page:    1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCH | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1985 | WHITE | TRACTOR | 1HUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 2 | 1969 | FRUEHAUF | TRAILER -S | UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 3 | 1969 | FRUEHAUF | TRAILER -S | UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 4 | 1974 | TRLMOBILE | TRAILER -S | K41315 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 5 | 1967 | FRUEHAUF | TRAILER -S | UNEF290102 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 6 | 1969 | FRUEHAUF | TRAILER -S | UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 7 | 1969 | FRUEHAUF | TRAILER -S | UNJ325402 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER -S | K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER -S | K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER -S | K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 11 | 1993 | J & L | TANK TRLR -S | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | | 10 | WILLIAMSPORT |
| 12 | 1988 | WHITE | TRACTOR | 4V3YZBZZXJN601032 | C | 80000 | IN | 50521 | 220 | PA | | 81 | | 10 | WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYD90P287269 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 15 | 1981 | BUTLER | TRAILER -S | 1TB1140208M4527144 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | C | 80000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |

*(Handwritten annotations present across the table: "D#3", "c#", "3c#", "Chg #2", "#4", "D#1", "204" and others)*

18° Fruehauf Trailer # C04309  }
1980 Great Dane Trailer # B17876  } A #4

Policy # PAP 185770 0495  Insureds Nam ●ENTERPRISES, INC.                    ● Page:    2

---- COVERAGE and PREMIUM BREAKDOWN ---

| | | | UNITS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | | 1 | | 2 | | 3 | | 4 | | 5 |
| Insureds Unit Number | | 1 | | 4 | | 5 | | 6 | | 7 |
| | | | | | | | | | | |
| **LIABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | 750,000 | 3840 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 |
| Personl Injury Protection | 5,000 | 57 | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | 5,000 | 9 | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | 35,000 | 7 | | | | | | | | |
| UNDERinsured Motorist | 35,000 | 2 | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| % Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| ...ITY TOTAL -----> | | 3,915 | | 122 | | 122 | | 122 | | 122 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
| Cost New | 30,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 16,000 | | 4,000 | | 4,000 | | 5,000 | | 4,000 | |
| Depreciated Value | 10,678 | | 6,371 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (...m. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 416 | 1,000 | 74 | 1,000 | 74 | 1,000 | 93 | 1,000 | 74 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 932 | 1,000 | 133 | 1,000 | 133 | 1,000 | 165 | 1,000 | 133 |
| PHYSICAL DAMAGE TOTAL -> | | 1348 | | 207 | | 207 | | 258 | | 207 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 8.43 | | 5.18 | | 5.18 | | 5.16 | | 5.18 | |
| PREMIUM TOTAL per UNIT -> | | 5263 | | 329 | | 329 | | 380 | | 329 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.  Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT      -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Name  ENTERPRISES, INC.                         Page:    3

---- COVERAGE and PREMIUM BREAKDOWN ---

| | UNITS | | | | |
|---|---|---|---|---|---|
| Company Unit Number | 6 | 7 | 8 | 9 | 10 |
| Insureds Unit Number | 8 | 9 | 10 | 11 | 12 |

| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
|---|---|---|---|---|---|---|---|---|---|---|
| Liability | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 | UNHOOKED | 122 |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| L1    LITY TOTAL -----> | | 122 | | 122 | | 122 | | 122 | | 122 |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 20,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 4,000 | | 4,000 | | 5,000 | | 5,000 | | 5,000 | |
| Depreciated Value | 5,096 | | 5,096 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (term. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 73 | 1,000 | 73 | 1,000 | 93 | 1,000 | 93 | 1,000 | 93 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 149 | 1,000 | 149 | 1,000 | 165 | 1,000 | 165 | 1,000 | 165 |
| PHYSICAL DAMAGE TOTAL -> | | 222 | | 222 | | 258 | | 258 | | 258 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 5.55 | | 5.55 | | 5.16 | | 5.16 | | 5.16 | |
| PREMIUM TOTAL per UNIT -> | | 344 | | 344 | | 380 | | 380 | | 380 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.    Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

olicy # PAP 185770 0495  Insureds Nam ●  ENTERPRISES, INC.  ●                    Page:    4

#### ---- COVERAGE and PREMIUM BREAKDOWN ---

| | Unit 11 Rating | Unit 11 Premium | Unit 12 Rating | Unit 12 Premium | Unit 14 Rating | Unit 14 Premium | Unit 15 Rating | Unit 15 Premium | Unit 16 Rating | Unit 16 Premium |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 11 | | 12 | | 14 | | 15 | | 16 | |
| Insureds Unit Number | | | | | | | | | | |
| **LIABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 122 | 750,000 | 3840 | 750,000 | 3840 | UNHOOKED | 122 | 750,000 | 3840 |
| Personl Injury Protection | COVERAGE | | 5,000 | 57 | 5,000 | 57 | COVERAGE | | 5,000 | 57 |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | 5,000 | 9 | 5,000 | 9 | | | 5,000 | 9 |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | 35,000 | 7 | 35,000 | 7 | | | 35,000 | 7 |
| UNDERinsured Motorist | | | 35,000 | 2 | 35,000 | 2 | | | 35,000 | 2 |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 63 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| L  \`ITY TOTAL -----> | | 122 | | 3,915 | | 3,915 | | 122 | | 3,915 |

| | Unit 11 | | Unit 12 | | Unit 14 | | Unit 15 | | Unit 16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
| Cost New | 36,312 | | | | 55,000 | | 32,000 | | 20,000 | |
| Estimated Value | 36,312 | | | | 19,000 | | 10,000 | | 7,500 | |
| Depreciated Value | 28,119 | | | | 21,275 | | 8,155 | | 5,096 | |
| Dumping Code | N | | | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | 63 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | | | .Y   00-00 | | Y   00-00 | | Y   00-00 | |
| Owned/Hired | OWNED | | | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (prem. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Co..,ehensive | 1,000 | 379 | | | 1,000 | 401 | 1,000 | 210 | 1,000 | 220 |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 564 | | | 1,000 | 770 | 1,000 | 314 | 1,000 | 677 |
| PHYSICAL DAMAGE TOTAL -> | | 943 | | | | 1171 | | 524 | | 897 |

| | Unit 11 | | Unit 12 | | Unit 14 | | Unit 15 | | Unit 16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 2.60 | | | | 6.16 | | 5.24 | | 11.96 | |
| PREMIUM TOTAL per UNIT -> | | 1065 | | 3915 | | 5086 | | 646 | | 4812 |

| | Unit 11 | Unit 12 | Unit 14 | Unit 15 | Unit 16 |
|---|---|---|---|---|---|
| State Surcha/Tax - Code | | | | | |
| Co.   Surcha/Tax - Code | | | | | |
| City  Surcha/Tax - Code | | | | | |
| TOTAL per UNIT        -> | | | | | |

Policy # PAP 185770 0495  Insureds Nar ● d ENTERPRISES, INC.   ●   Page: 5

---- COVERAGE and PREMIUM BREAKDOWN --

| | | | UNITS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 17 | | | | | | | | | |
| Insureds Unit Number | | | | | | | | | | |

| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
|---|---|---|---|---|---|---|---|---|---|---|
| Liability | 750,000 | 3840 | | | | | | | | |
| Personl Injury Protection | 5,000 | 57 | | | | | | | | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | 5,000 | 9 | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | 35,000 | 7 | | | | | | | | |
| UNDERinsured Motorist | 35,000 | 2 | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 63 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1  N | | | | | | | | | |
| L? ITY TOTAL ----->  | | 3,915 | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 60,000 | | | | | | | | | |
| Estimated Value | 24,000 | | | | | | | | | |
| Depreciated Value | 27,422 | | | | | | | | | |
| Dumping Code | N | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 63 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
|  (prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Co.. ehensive | 1,000 | 392 | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 754 | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 1146 | | | | | | | | |

| Premium to Value % | 4.78 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 5061 | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.  Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

_ 1063 03 93

HOME OFFICE COPY

Attached to and forming part  Policy Number    PAP 1857700495    EF  TIVE    4/18/95 TO  4/18/96
ENDORSED   9/19/95
ISSUED TO:  JHM ENTERPRISES, INC.
            1200 VALLAMONT DRIVE, N.W.
            WILLIAMSPORT        PA 17701

### DRIVER SCHEDULE

The following individuals are  operators under this policy.
Any changes during the policy period should be endorsed.

| #  | Driver Name | Date of Birth | Operator Number | St Lic | SS No |
|----|-------------|---------------|-----------------|--------|-------|
| 1  | BARTLOW, DALE A | 7/13/58 | 18263871 | PA | |
| 2  | BROWN, BARRY L | 3/01/59 | 18424697 | PA | |
| 3  | BROWN, WILLIAM T | 12/29/60 | 19052931 | PA | 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 |
| 4  | CONNER, LEBERT | 1/18/35 | 08890771 | PA | |
| 5  | DANLEY, WILLIAM L. | 12/03/42 | 11833013 | PA | |
| 6  | DILTZ, DALE | 11/03/54 | 16615826 | PA | |
| 7  | EASTON, GEORGE C | 2/06/53 | 15903700 | PA | |
| 8  | EVANS, CRAIG EUGENE | 4/03/60 | 18989568 | PA | |
| 10 | FROME, EMERY | 1/20/51 | 14900911 | PA | |
| 12 | FUOSS, CLYDE | 6/22/57 | 17750412 | PA | |
| 13 | FUOSS, MILTON S | 6/19/32 | 07276695 | PA | |
| 14 | GARLICK, KENNETH RAYMOND | 7/19/54 | 15176214 | PA | |
| 16 | HILLIS, RICHARD F | 8/01/37 | 09529139 | PA | |
|    | LAMEY, DEAN EDWIN | 4/17/48 | 11188837 | PA | |
|    | RAAB, JEFFREY | 5/16/57 | 17744809 | PA | |
| 19 | REYNOLDS, MARTIN J. JR. | 12/19/42 | 13238010 | PA | |
| 20 | SINCLAIR, HAROLD | 7/12/55 | 16554533 | PA | |
| 21 | SMITH, JAMES S | 3/26/55 | 23564027 | PA | |
| 22 | SONES, MICHAEL | 12/24/67 | 21441365 | PA | |
| 23 | STATYS, VERNICE L | 10/18/34 | 08975318 | PA | |
| 24 | THOMAS, ARTHRU B. JR. | 7/24/34 | 08132269 | PA | |
| 25 | WALIZER, GREGORY | 3/26/56 | 15244865 | PA | |
| 26 | WISE, WILLIAM M. | 9/21/29 | 07942850 | PA | |
| 27 | WOOLEVER, ARTHUR R. | 1/25/53 | 15716955 | PA | |
| 28 | WOOLEVER, DONALD | 5/15/24 | 05109262 | PA | |
| 29 | WOOLEVER, E. COLEMAN | 3/31/26 | 05684093 | PA | |
| 30 | WOOLEVER, MARK ARTHUR | 8/17/51 | 15345696 | PA | |
| 31 | WOOLEVER, SCOTT C. | 12/16/54 | 16653787 | PA | |
| 33 | COCHRAN, CHARLES | 7/01/67 | 21284745 | PA | |
| 35 | FREEZER, MICHAEL | 1/15/55 | 16547100 | PA | |
| 36 | HEATH, THOMAS | 6/09/51 | 15282772 | PA | |
| 37 | HERB, DAVID L SR | 4/19/53 | 16842177 | PA | |
| 38 | JONES, RALPH | 5/24/64 | 20452332 | PA | |
| 39 | KIRESKI, JOHN S | 1/15/49 | 15535045 | PA | |
| 40 | NICHOLS, RICHARD | 1/16/54 | 16394860 | PA | |
|    | REED, DAVID | 10/08/60 | 19107192 | PA | |
|    | SUMMER, KEITH | 11/22/55 | 16983979 | PA | |
| 43 | FREDERICKS, RICHARD A | 3/22/31 | 06835773 | PA | |

HOME OFFICE COPY




COMMERCIAL AUTO

Attached to and forming part of Policy Number                    EFFECTIVE            TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**STATED AMOUNT INSURANCE**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
    GARAGE COVERAGE FORM
    TRUCKERS COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date
is indicated above.

SCHEDULE
Designation or Description of Covered "Autos"

| UNIT # | YEAR, MAKE AND MODEL | SERIAL NUMBER | COVERAGE | LIMIT OF INSURANCE | POLICY PREMIUM |
|--------|----------------------|---------------|----------|--------------------|----------------|
|        |                      | SEE POLICY SCHEDULE OF COVERED AUTOS | | | |

A. This endorsement provides  o n l y  those
   coverages  where a premium is shown  in the
   Schedule.    Each of these coverages  applies
   o n l y   to the vehicles  shown as covered
   "autos".

B. For a covered "auto"  described in the
   Schedule, the PHYSICAL DAMAGE COVERAGE Limit
   of Insurance is replaced by the following:

C. **LIMIT OF INSURANCE**

   The most we will pay for "loss"  in any one
   "accident" is the least of:

   1. The actual cash value  of the damaged or
      stolen property as of  the time  of the
      "loss";

   2. The cost  of repairing  or replacing the
      damaged or stolen property; or

   3. The amount shown in the Schedule.

Countersigned by: _____

Copyright, Insurance Services Office, Inc., 1991

CA 99 28 06 92

XXXXXXXXXXX



COMMERCIAL AUTO

Attached to and forming part of Policy Number      EFFECTIVE      TO

ISSUED TO:
(If no entry appears above, refer to the Policy Declarations for the information.)

## TRUCKERS COVERAGE FORM

Various provisions in this policy restrict coverage.   Read the entire policy carefully  to determine rights, duties and what is and is not covered.

Throughout this policy the words "you"  and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases  that appear in quotation marks have special meaning.   Refer to **SECTION VI – DEFINITIONS.**

## SECTION I – COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages.   The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

A.  **DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

SYMBOL              DESCRIPTION

41 = ANY "AUTO".

42 = OWNED "AUTOS" ONLY.  Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own).  This includes those "autos"  you acquire ownership of after the policy begins.

43 = OWNED COMMERCIAL "AUTOS" ONLY.   Only those trucks, tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own).  This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins.

44 = OWNED "AUTOS" SUBJECT TO NO-FAULT.  Only those "autos" you own  that are required to have  No-Fault benefits in the state where  they are licensed or principally garaged.  This includes those "autos" you acquire ownership of   after the policy begins  provided they are subject to the No-Fault law  in the state where they  are  licensed or  principally garaged.

45 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW.  Only those "autos" you own that, because of the law in the state  where they are licensed or principally garaged,  are required to have  and  cannot reject Uninsured Motorists Coverage.  This includes those "autos" you acquire ownership of  after the policy begins provided they are

subject to the same state uninsured motorists requirement.

46 = SPECIFICALLY DESCRIBED "AUTOS".  Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

47 = HIRED "AUTOS" ONLY.  Only those "autos" you lease, hire, rent or borrow.  This does not include any "private passenger type auto" you lease, hire, rent or borrow  from any member of your household, any of your employees, partners or agents or members of their households.

48 = "TRAILERS"  IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT.  Only those "trailers" you do not own  while in your possession under a written "trailer"  or equipment interchange agreement  in which  you assume liability for "loss" to the "trailers" while in your possession.

49 = YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN TRAILER INTERCHANGE AGREEMENT.  Only those "trailers"  you own or hire while in the possession of anyone else under a written "trailer" interchange agreement.  When Symbol "49" is entered next to a Physical Damage Coverage in ITEM TWO of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer"  in the possession of anyone else does not apply to that coverage.

50 = NONOWNED "AUTOS" ONLY.  Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "private passenger type autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1. If symbols 41, 42, 43, 44 or 45 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 46 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage.

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered auto.

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

   (2) Your employee or agent if the covered "auto" is a "private passenger type auto" and is owned by that employee or agent or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

   (5) A partner of yours for a covered "private passenger type auto" owned by him or her or a member of his or her household.

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

   (1) Is being used exclusively in your business as a "trucker"; and

   (2) Is being used pursuant to operating rights granted to you by a public authority.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

   (1) Is being used exclusively in your business as a "trucker"; and

   (2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

a. Any "trucker" or his or her agents or employees, other than you and your employees:

   (1) If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

   (2) If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and employees while the "autos" are being used exclusively in the "truckers" business and pursuant to operating rights granted to the "trucker" by a public authority.

b. Any rail, water or air carrier or its employees or agents, other than you and your employees, for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

   (1) Is being transported by the carrier; or

   (2) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. **COVERAGE EXTENSIONS**

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

   (1) All expenses we incur.

   (2) Up to $250 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

   (3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

   (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

   (5) All costs taxed against the "insured" in any "suit" we defend.

   (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out-of-State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

   (1) Increase the Limit of Insurance for Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

   (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **EXCLUSIONS**

This insurance does not apply to any of the following:

1. **EXPECTED OR INTENDED INJURY**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **CONTRACTUAL**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

Copyright, Insurance Services Office, Inc., 1993

xxxxxxxxxxxxxxx

3. **WORKERS' COMPENSATION** 

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. **EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

   (1) Whether the "insured" may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

5. **FELLOW EMPLOYEE**

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

6. **CARE, CUSTODY OR CONTROL**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **HANDLING OF PROPERTY**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **MOVEMENT OF PROPERTY BY MECHANICAL DEVICE**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck unless the device is attached to the covered "auto".

9. **OPERATIONS**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **COMPLETED OPERATIONS**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **POLLUTION**

"Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

   (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

   (2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or produced in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seep, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## 13. RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - TRAILER INTERCHANGE COVERAGE

## A. COVERAGE

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

a. Comprehensive Coverage. From any cause except:

(1) The "trailer's" collision with another object; or

(2) The "trailer's" overturn.

b. Specified Causes of Loss Coverage. Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

c. Collision Coverage Caused by:

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxx

(1) The "trailer's" collision with another object; or

(2) The "trailer's" overturn.

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **COVERAGE EXTENSIONS**

Supplementary Payments. In addition to the Limit of Insurance, we will pay for you:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

c. All reasonable expenses incurred at our request, including actual loss of earnings up to $100 a day because of time off from work.

d. All costs taxed against the "insured" in any "suit" we defend.

e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**B. EXCLUSIONS**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. Nuclear Hazard.

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War or Military Action.**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions.**

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

**C. LIMIT OF INSURANCE AND DEDUCTIBLE**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Declarations:

1. The actual cash value of the damaged or stolen property at the time of the "loss".

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

3. The Limit of Insurance shown in the Declarations.

**SECTION IV – PHYSICAL DAMAGE COVERAGE**

**A. COVERAGE**

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage. From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

b. Specified Causes of Loss Coverage. Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

c. Collision Coverage. Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. **Towing – Private Passenger Autos.**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting a Bird or Animal – Falling Objects or Missiles.**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension. We will also pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

B. **EXCLUSIONS**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard.**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War or Military Action.**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military

force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

   a. Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee, however if we pay the loss payee; you must reimburse us for our payment.

   b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for any such contest or activity.

   c. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   d. Equipment designed or used for the detection or location of radar.

   e. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

   f. Any accessories used with the electronic equipment described in paragraph e. above.

   Exclusions 2.e. and 2.f. do not apply to:

   a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

   b. Any other electronic equipment that is:

   (1) Necessary for the normal operation of the covered "auto"

or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

### 3. Other Exclusions

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

### C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

### D. DEDUCTIBLE

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V - TRUCKERS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. LOSS CONDITIONS

#### 1. APPRAISAL FOR PHYSICAL DAMAGE LOSS

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the the actual cash value and amount of "loss". If they fail to agree they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

#### 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examination under oath at our request and give us a statement of your answers.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxxx

**3. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trail. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. LOSS PAYMENT – PHYSICAL DAMAGE COVERAGES**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

**5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. GENERAL CONDITIONS**

**1. BANKRUPTCY**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

**2. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. LIBERALIZATION**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. NO BENEFIT TO BAILEE – PHYSICAL DAMAGE COVERAGES**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS**

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

d. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

e. Regardless of the provisions of paragraphs a., b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

xxxxxxxxxxxxxx



6. **PREMIUM AUDIT**

   a. The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **POLICY PERIOD, COVERAGE TERRITORY**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION VI — DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

   1. Any request, demand or order; or

   2. Any claim or "suit" by or on behalf of a governmental authority demanding.

   that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   "Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

      (2) Otherwise in the course of transit by or on behalf of the "insured";

      (3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

   b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

      (1) The "pollutants" escape, seep, migrate, or are dispersed, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

      (2) The "bodily injury", "property damage" or "covered pollution

cost or expense does not arise out of the operation of any equipment listed in paragra 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

F. "Insured Contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

G. "Loss" means direct and accidental loss or damage.

H. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

    (1) Snow removal;

    (2) Road maintenance, but not construction or resurfacing; or

    (3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J. "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

K. "Property damage" means damage to or loss of use of tangible property.

L. "Suit" means a civil proceeding in which:

    1. Damages because of "bodily injury" or "property damage"; or

    2. A "covered pollution cost or expense", to which this insurance applies, are alleged.

    "Suit" includes:

    a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

M. "Trailer" includes semitrailer or a dollie used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

N. "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93 A

xxxxxxxxxxxxxxxxxx

COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

LOSS OF USE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

**A.  COVERAGE/CONDITIONS**

1. This endorsement applies to covered "autos" for which collision coverage is provided.

2. This coverage begins 14 days after you notify us.

3. We will pay you for your loss of use in the event a covered "auto" is disabled and removed from service, for a period greater than 14 days, as a result of a collision "loss".

4. This coverage will terminate when the covered "auto" is returned to service. We shall determine when the covered "auto" is returned to service.

5. Payment will be made if, and only if, the "loss" exceeds the collision deductible.

6. Our payment to you, per covered "auto", will be calculated on a daily basis at a rate equal to 1/90 of the MAXIMUM LIMIT OF COVERAGE. The most we will pay you, per covered "auto", is the limit of coverage for the period of coverage indicated below:

MAXIMUM LIMIT OF COVERAGE
$3,000

MAXIMUM PERIOD OF COVERAGE
90 days

**B.  EXCLUSIONS**

1. This insurance does not apply to any of the following:

a. Any covered "auto" with a gross vehicle weight (GVW) under 20,001 pounds.

b. Any NONOWNED "AUTOS" (See coverage form)

c. ANY HIRED "AUTOS" (See coverage form)

d. Any "TRAILERS" IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT.

e. Any of YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN T R A I L E R INTERCHANGE AGREEMENT.

2. This insurance does not apply if you fail to exercise due diligence and dispatch to repair or replace the covered "auto".

3. This insurance does not apply if you receive any loss of income payment f r o m  u s  a s  a  r e s u l t  o f "bodily injury".

DESCRIPTION OF COVERED AUTOS

Refer to your SCHEDULE OF COVERED AUTOS.

L 1091 05 93                                                         xxxxxxxxxxxx

COMMERCIAL AUTO

 

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR
AUTOMOBILE BODILY INJURY AND PROPERTY DAMAGE LIABILITY UNDER
SECTION 10927, TITLE 49 OF THE UNITED STATES CODE**

The policy to which this endorsement is attached is an automobile bodily injury and property damage liability policy and is amended to assure compliance by the insured as a motor carrier of passengers or property, with Section 10927, Title 49 of the United States Code and the pertinent rules and regulations of the Interstate Commerce Commission.

In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay, within the limits of liability prescribed herein, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and property transported by the insured, designated as cargo), resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate or permit issued to the insured by the Interstate Commerce Commission, or otherwise in interstate or foreign commerce subject to Subchapter II, Chapter 105, Subtitle IV of Title 49 of the United States Code, regardless of whether or not such motor vehicles are specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized by the Interstate Commerce Commission to be served by the insured or elsewhere.

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is understood and agreed that, upon failure of the Company to pay any final judgment recovered against the insured as prescribed herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the Company to compel such payment.

The Company's liability for the amounts provided in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the Company for the payment of final judgments resulting from any other accident.

The liability of the Company on each motor vehicle shall be the limits prescribed in 49 CFR 1043.2(b)(1), governing minimum amounts of insurance.

This endorsement may not be canceled without notification to the Commission. Such cancellation may be effected by the Company or the insured giving thirty (30) days' notice in writing to the Interstate Commerce Commission at its office in Washington, D.C., said thirty (30) days' notice commencing from the date notice is received by the Commission.

Issued to_____ of _____

Dated at_____ this_____ day of_____ , 19 ____

Amending Policy No. _____ Effective Date_____

Name of Insurance Company_____

Countersigned by_____
Authorized Company Representative

COMMERCIAL AUTO

FORM F

UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commission(s) indicated below.

3. This endorsement may not be cancelled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

| X -- INDICATES STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED | | | | | | | |
|---|---|---|---|---|---|---|---|
| ALABAMA | _ | ILLINOIS | _ | MONTANA | | RHODE ISLAND | _ |
| ALASKA | _ | INDIANA | _ | NEBRASKA | _ | SOUTH CAROLINA | _ |
| ARIZONA | _ | IOWA | _ | NEVADA | _ | SOUTH DAKOTA | _ |
| ARKANSAS | _ | KANSAS | _ | NEW HAMPSHIRE | _ | TENNESSEE | _ |
| CALIFORNIA | _ | KENTUCKY | _ | NEW JERSEY | _ | TEXAS | _ |
| COLORADO | _ | LOUISIANA | _ | NEW MEXICO | _ | UTAH | _ |
| CONNECTICUT | _ | MAINE | _ | NEW YORK | _ | VERMONT | _ |
| DELAWARE | _ | MARYLAND | _ | NORTH CAROLINA | _ | VIRGINIA | _ |
| DISTRICT OF COLUMBIA | _ | MASSACHUSETTS | _ | NORTH DAKOTA | _ | WASHINGTON | _ |
| FLORIDA | _ | MICHIGAN | _ | OHIO | _ | WEST VIRGINIA | _ |
| GEORGIA | _ | MINNESOTA | _ | OKLAHOMA | _ | WISCONSIN | _ |
| HAWAII | _ | MISSISSIPPI | _ | OREGON | _ | WYOMING | _ |
| IDAHO | _ | MISSOURI | _ | PENNSYLVANIA | X | | |

Attached to and forming part of policy No. __PAP  1857700495__

issued by __LINCOLN GENERAL INSURANCE COMPANY__ , herein called

Company, of ____YORK, PA    17402__ .

to __JHM ENTERPRISES, INC.__ . of __WILLIAMSPORT, PA__ .

Dated at ____YORK, PA    17402__ . this __27__ day of ____APRIL__ , __1995__

Countersigned by _____
                              Authorized Representative

IRB 3538A

COMMERCIAL AUTO

ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to   JHM ENTERPRISES, INC.                        of   WILLIAMSPORT, PA

Dated at       YORK, PA   17402          this 27 day of       APRIL          , 1995

Amending Policy No.   PAP  1857700495                 Effective Date   04/18/95

Name of Insurance Company  LINCOLN GENERAL INSURANCE COMPANY

Telephone Number ( ____ )                       .  Countersigned by
                                                   Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated
by "X" for the limits shown:

(X) This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000
    for each accident.

(_) This insurance is excess and the company shall not be liable for amounts in excess of $ 0
    for each accident in excess of the underlying limit of $ 0 for each accident.


Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission
(ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its
endorsements. The company also agrees, upon telephone request by an authorized representative of
the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving (1)
thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the
date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the
insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said
30 days notice to commence from the date the notice is received by the ICC at its office in
Washington, D.C.).

---

### DEFINITIONS AS USED IN THIS ENDORSEMENT

ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

MOTOR VEHICLE means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

BODILY INJURY means injury to the body, sickness or disease to any person, including death resulting from any of these.

ENVIRONMENTAL RESTORATION means restitution for the loss, damage, or destruction of natural

resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

PROPERTY DAMAGE means damage to or loss of use of tangible property.

PROPERTY LIABILITY means liability for bodily injury, property damage, and environmental restoration.

===================================================================================

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein as a motor carrier of property, with

Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

OMB 2125 0074 (MCS-90)

HOME OFFICE COPY

In consideration of the prem ■ stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective o f the financial condition, insolvency or bankruptcy of the insured.

However, all terms ■ ditions, and limitations in the policy to ■ ich the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

===================================================================================================

The Motor Carrier Act of 1980 required limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility. The SCHEDULE OF LIMITS SHOWN BELOW DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

## SCHEDULE OF LIMITS
### Public Liability

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce). | Property (nonhazardous). | $ 750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce). | Hazardous substances as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper type vehicles with capacities in excess of 3,500 water gallons; or in bulk Class A or B explosives, poison gas (Poison A), liquefied compressed gas or compressed gas, or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (in interstate o r foreign commerce; in any quantity) or (in intrastate commerce in bulk only) | Oil listed in 49 CFR 172.101;hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (in interstate o r foreign commerce). | Any quantity of Class A or B explosives, any quantity of poison gas (Poison A), or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |

NOTE: The type of carriage listed under (1), (2) and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

OMB 2125 0074 (MCS-90)

xxxxxxxxxxxxxxxx




COMMERCIAL AUTO

Attached to and forming a part of Policy Number    EFFECTIVE    TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### PENNSYLVANIA BASIC FIRST PARTY BENEFIT

For a covered "auto" licensed or principally garaged in , or "garage operations" conducted in, Pennsylvania, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> TRUCKERS COVERAGE FORM

### SCHEDULE

| Benefits | Limit of Liability (per insured) |
|---|---|
| Medical Expense Benefits | Up to $ 5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.  COVERAGE**

We will pay the Basic First Party Benefit in accordance with the "Act" to or for an "insured" w h o sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto."

**BENEFITS**

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of Medical Expense Benefits. These benefits c o n s i s t of reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury." If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable w i t h reasonable medical probability that further expenses may be incurred as a result of the bodily injury, medical expenses will b e paid without limitation as to the time such further expenses are incurred.

**B.  WHO IS AN INSURED**

1. You.

2. If you are an individual, any "family member."

3. Any person while "occupying" a covered "auto."

4. Any person while not "occupying" an "auto" if injured as a result of an "accident" in Pennsylvania involving a covered "auto."

If a covered "auto" i s parked a n d unoccupied, it is not an "auto" involved in an "accident" unless it was parked in a manner as to create an unreasonable risk of injury.

**C.  EXCLUSIONS**

We will not pay First Party Benefits for "bodily injury:"

1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself or herself or any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person. However, this exclusion does not apply to:

a. You; or

b. any "family member."

5. Sustained by any person while at the time of the "accident."

a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act;" or

b. is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.

6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.

7. Sustained by a pedestrian if the "accident" occurs outside of Pennsylvania. This exclusion does not apply to:

a. You; or

b. Any "family member."

8. Sustained by any person while "occupying:"

a. A recreational vehicle designed for use off public roads; or

b. A motorcycle, moped or similar type vehicle.

9. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);

c. Civil war;

d. Insurrection; or

e. Rebellion or revolution.

10. From or as a consequence of the following whether controlled or uncontrolled or however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

**D. LIMIT OF INSURANCE**

1. Regardless of the number of covered "autos,"premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or in the Declarations.

2. Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

**E. CHANGES IN CONDITIONS**

The CONDITIONS are changed for FIRST PARTY BENEFITS as follows:

1. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US does not apply.

2. The following CONDITIONS are added:

**NON-DUPLICATION OF BENEFITS**

No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

**PRIORITIES OF POLICIES**

We will pay First Party Benefits in accordance with the order of priority set forth by the "Act." We will not pay if there is another insurer at a higher level of priority. The "First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

First — The insurer providing benefits to the "insured" as a named insured.

Second — The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act."

Third — The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident."

Fourth — The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is:

a. Not "occupying" an "auto;" and

b. not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible;

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or Declarations;

3. The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

Copyright, Insurance Services Office, Inc. 1992

CA 22 37 12 92

xxxxxxxxxxx

4. The maximum recovery u█████ all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

**F. ADDITIONAL DEFINITIONS**

1. The definition of "auto" in the DEFINITIONS Section is replaced by the following:

 a. By muscular power; or

 b. On rails or tracks.

2. The following ██████ added to the DEFINITIONS Section:

 a. The "Act" means the Pennsylvania Motor Vehicle Financial Responsibility Law.

 b. "Family member" means a resident of your household who is:

 (1) Related to you by blood, marriage or adoption; or

 (2) A minor in your custody or in the custody of any other "family member."

 c. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Insurance Services Office, Inc. 1992

CA 22 37 12 92

xxxxxxxxxxxxxxxx

 

COMMERCIAL AUTO

Attached to and forming a part of Policy Number  PAP 185770 0495    EFFECTIVE 04/18/95    TO 04/18/96

ISSUED TO: JHM ENTERPRISES, INC.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### PENNSYLVANIA ADDED AND COMBINATION
### FIRST PARTY BENEFITS ENDORSEMENT

For a  covered "auto"  licensed or  principally garaged  in Pennsylvania,  this endorsement modifies insurance provided under the following:

    PENNSYLVANIA BASIC FIRST PARTY BENEFITS.

BASIC FIRST PARTY BENEFIT is changed as follows:

SCHEDULE

As indicated below,  Added First Party Benefits  or  Combination First Party Benefits  apply  instead of the  Basic First Party Benefit.   The limits  of liability shown  for the benefits  selected below replace the limits of liability shown in the Schedule for the Basic First Party Benefit.

| Benefits | Limit of Liability (per insured) |
|---|---|
| (X) Added First Party Benefits | |
| Medical Expense Benefits | Up to $ _____ |
| Work Loss Benefits | Up to $ ___5,000___ subject to a maximum of $ ___1,000___ per month |
| Funeral Expense Benefits | Up to $ _____ |
| Accidental Death Benefits | $ _____ |
| (_) Combination First Party Benefits | |
| Maximum Total Limit for All Benefits | Up to $ _____ |
| Subject to the following individual limits: | |
| Medical Expense Benefits | No specific dollar amount |
| Work Loss Benefits | No specific dollar amount |
| Funeral Expense Benefits | Up to $ 2,500 |
| Accidental Death Benefits | $ _____ |

(If no entry appears above,  information required to complete this endorsement  will be shown  in the Declarations as applicable to this endorsement.)

Copyright, Insurance Services  Office, Inc. 1990

Page 1 of 2

CA 22 38 07 90

HOME OFFICE COPY

A.   **COVERAGE** 

We will pay Added First Party Benefits or Combination First Party Benefits in accordance with the "Act" up to the limits stated in the Schedule or Declarations to or for an "insured" who sustains "bodily injury" caused by an "accident" and arising out of the maintenance or use of an "auto". We will only pay Combination First Party Benefits for expenses or loss incurred within 3 years from the date of the "accident."

In addition to the Medical Expense Benefits described in the Basic First Party Benefits endorsement, Added First Party Benefits and Combination First Party Benefits also consist of:

1.   Work Loss Benefits consisting of:

a.   loss of income.  Up to 80% of the gross income actually lost by an "insured."

b.   reasonable expenses actually incurred to reduce loss of income by hiring:

(1) special help,thereby enabling the "insured" to work; or

(2) a substitute to perform the work of a self-employed "insured" would have performed.

However, Work Loss Benefits do not include:

a.   loss of expected income for any period following the death of an "insured"; or

b.   expenses incurred for services performed following the death of an "insured"; or

c.   any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work after the "accident" because of the "bodily injury."

2.   Funeral Expense Benefits.  Actual expenses incurred for an "insured's" funeral or burial if "bodily injury" resulting from the "accident" causes his or her death within 24 months from the date of the "accident."

3.   Accidental Death Benefits. A death benefit paid if "bodily injury" resulting from an "accident" causes the death of you or any "family member" within 24 months from the date of the "accident."

B.   **EXCLUSIONS** 

In addition to the exclusions in the Basic First Party Benefit endorsement, the following exclusion also applies.

We will not pay:

Accidental Death Benefits on behalf of any person who intentionally caused or attempted to cause "bodily injury" to himself, herself or any other person.

C.   **LIMIT OF INSURANCE**

1.   Regardless of the number of covered "autos,"premiums paid, claims made,"autos" involved in the accident or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown in the Schedule or the Declarations. Combination First Party Benefits are subject to a maximum total single limit of liability with individual limits for specific benefits as shown in the Schedule or Declarations.

2.   If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the "Act" for Basic First Party Benefits. This provision will not change our total limit of liability.

D.   **CHANGES IN CONDITIONS**

In addition to the CONDITIONS applicable to the Basic First Party Benefit endorsement the following CONDITION also applies:

PAYMENT OF ACCIDENTAL DEATH BENEFITS

The Accidental Death Benefit under this policy will be paid to the executor or administrator of the deceased "insureds" estate.  If there is no executor or administrator, benefits shall be paid to:

1.   The deceased "insured's" surviving spouse or

2.   If there is no surviving spouse, the deceased "insured's" surviving children, or

3.   If there is no surviving spouse or surviving children, the deceased "insured's" estate.

Copyright, Insurance Services  Office, Inc. 1990

CA 22 38 07 90

xxxxxxxxxxxxx

 

COMMERCIAL AUTO

Attached to and forming a part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PENNSYLVANIA UNINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in Pennsylvania, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    TRUCKERS COVERAGE FORM

**A.  COVERAGE**

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured" motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle."

2. No judgment for damages arising out of a "suit" brought against t h e owner o r operator of an "uninsured motor vehicle" is binding on us unless we:

a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

b. Had a reasonable opportunity to protect our interests in the "suit."

**B.  WHO IS AN INSURED**

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because o f its breakdown, r e p a i r, servicing, "loss" or destruction.

4. Anyone for damages he or she is entitled to recover b e c a u s e of "bodily injury" sustained by another "insured."

**C.  EXCLUSIONS**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct o r indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D.  LIMIT OF INSURANCE**

1. Regardless o f the number o f covered "autos," "insureds," premiums paid, claims m a d e o r vehicles involved in t h e "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE s h o w n i n t h e Declarations.

However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

2. Any amount payable for damages under this coverage shall be reduced by all sums paid by or f o r anyone w h o i s legally responsible, including all sums paid for t h e same damages under this Coverage Form's LIABILITY COVERAGE.

3. Any amount paid under this coverage will reduce any amount an "insured" may be paid for the same damages under this Coverage Form's LIABILITY COVERAGE.

**E.  CHANGES IN CONDITIONS**

The CONDITIONS are c h a n g e d f o r PENNSYLVANIA UNINSURED MOTORISTS COVERAGE-NONSTACKED as follows:

1. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved, and

b. Promptly send us copies of the legal papers is a "suit" is brought.

2. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the followig:

If we make a n y payment due to a n "accident" involving an "uninsured motor vehicle" and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid to the extent such payment duplicates any amount we have paid under this coverage.

Copyright, Insurance Services Office, Inc. 1990          Page 1 of 3

CA 21 92 07 90

xxxxxxxxxxxxxx

3. OTHER INSURANCE is required by the following:

a. If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First - The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

Second - The Coverage Form or policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

c. Where there is applicable insurance available under the first priority:

(1) The LIMIT OF INSURANCE applicable to the vehicle the "insured" was "occupying" under the Coverage Form in the first priority, shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one Coverage Form or policy in the second priority exceeds the limit applicable under the Coverage Form or policy in the first priority.

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

(2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer on the same level of priority for the benefits paid and the costs of processing the claim; and

(3) If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Uninsured Motorists Coverage shown in the Declarations, after all contributing insurers agree as to:

(a) whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle"; and

(b) the amount of damages.

5. The following Condition is added:

ARBITRATION

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS Section:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

a. For which no liability bond or policy applies at the time of an "accident."

b. For which an insuring or bonding company:

(1) denies coverage;

(2) is or becomes insolvent; or

(3) is or becomes involved in insolvency proceedings.

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must:

(1) hit an "insured," a covered "auto" or a vehicle an "insured" is "occupying;" or

(2) cause an "accident" resulting in "bodily injury" to an "insured" without hitting an "insured," a covered "auto" or a vehicle an "insured" is "occupying."

If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, an "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under

Copyright, Insurance Services Office, Inc. 1990

CA 21 92 07 90

xxxxxxxxxxxxxxxx

any applicable motor vehi██ law, except a
self-insurer who is o█ who becomes
insolvent and cannot provide the amounts
required by that motor vehicle law.

b.  Owned by a g█████mental unit or agency; or

c.  Designed for use mainly off public roads
while not on public roads.

Copyright, Insurance Services Office, Inc. 1990

CA 21 92 07 90

xxxxxxxxxxxxxxxx




COMMERCIAL AUTO

Attached to and forming a part of Policy Number    EFFECTIVE    TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in Pennsylvania, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    TRUCKERS COVERAGE FORM

**A.  COVERAGE**

1.  We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by t h e "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle."

2.  We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle" only after all liability bonds or policies have been exhausted by judgments or payments

3.  No judgment for damages arising out of a "suit" brought against t h e owner or operator of an "underinsured motor vehicle" is binding on us unless we:

a.  Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

b.  Had a reasonable opportunity to protect our interests in the "suit."

**B.  WHO IS AN INSURED**

1.  You.

2.  If you are a n individual, any "family member."

3.  Anyone else "occupying" a covered "auto" or a temporary substitute f o r a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

4.  Anyone for damages he or she is entitled to recover because o f "bodily injury" sustained by another "insured."

**C.  EXCLUSIONS**

    This insurance does not apply to any of the following:

1.  Any claim settled without our consent.

2.  The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability or similar law.

3.  Anyone u s i n g a vehicle without a reasonable belief that t h e person is entitled to do so.

**D.  LIMIT OF INSURANCE**

1.  Regardless o f the number o f covered "autos," "insureds," premiums paid, claims made or vehicles i n v o l v e d in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNDERINSURED MOTORISTS COVERAGE s h o w n i n t h e Declarations.

    However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

2.  Any amount payable for damages under this coverage shall be reduced by all sums paid by or f o r anyone w h o i s legally responsible, including all sums paid for t h e same damages under this Coverage Form's LIABILITY COVERAGE.

3.  Any amount paid under this coverage will reduce any amount an "insured" may be paid for the same damages under this Coverage Form's LIABILITY COVERAGE.

**E.  CHANGES IN CONDITIONS**

    The CONDITIONS are c h a n g e d f o r PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE - NONSTACKED as follows:

1.  DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

    Promptly send us copies of the legal papers if a "suit" is brought.

2.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is changed by adding the following:

    If we make a n y payment due t o an "accident"involving an "underinsured motor vehicle" and the "insured" recovers from another party,the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid to the extent such payment duplicates any amount we have paid under this coverage.

3.  OTHER INSURANCE is replace by following:

a. If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

First – The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident."

Second – The Coverage Form or policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

c. Where there is applicable insurance available under the first priority:

(1) The LIMIT OF INSURANCE applicable to the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority, shall first be exhausted; and

(2) The maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the amount by which the highest limit for any one vehicle under any one Coverage Form or policy in the second priority exceeds the limit applicable under Coverage Form or policy in the first priority.

d. If two or more Coverage Forms or policies have equal priority:

(1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority.

(2) The insurer thereafter is entitled to recover pro rate contribution from any othe insurer for the benefits paid and the costs of processing the claim; and

(3) If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Underinsured Motorists Coverage shown in the Declaration after all contributing insurers agree as to:

(a) whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle;" and

(b) the amount of damages

5. The following condition is added:

**ARBITRATION**

If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

F. **ADDITIONAL DEFINITIONS**

The following are added to the DEFINITIONS Section:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Underinsured motor vehicle" means vehicle for which the sum of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle does not include any vehicle

a. Owned or operated by a self-insurer under any applicable motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

COMMERCIAL AUTO

Attached to and forming part of Policy Number ⬤          EFFECT⬤          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**PUNITIVE, EXEMPLARY
AND
EXTRACONTRACTUAL DAMAGE
EXCLUSION**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO NON-TRUCKING LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

The following exclusion is added:

PUNITIVE,   EXEMPLARY  AND  EXTRACONTRACTUAL
DAMAGE

This policy does not insure against or
provide indemnity for fines,  penalties,
exemplary or punitive damages or any other
type or kind of judgment or award which does
not compensate the party benefiting from the
award or judgment for any actual loss or
damage sustained.

This exclusion applies to all coverages
provided under this policy.

L 1003 06 92

XXXXXXXXXXXXXXXXXX

COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y  Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**WRONG DELIVERY OF LIQUID PRODUCTS**

This endorsement modifies insurance provided under the following:

   BUSINESS AUTO COVERAGE FORM
   TRUCKERS COVERAGE FORM

LIABILITY COVERAGE is changed by adding the
following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" resulting
from the delivery of any liquid into the wrong
receptacle or to the wrong address, or from the
delivery of one liquid for another, if the
"bodily injury" or "property damage" occurs
after delivery has been completed.

Delivery is considered completed even if further
service or maintenance work, or correction,
repair or replacement is required because of
wrong delivery.

Copyright, Insurance Services Office, Inc., 1985

CA 23 05 01 87

XXXXXXXXXXXX

COMMERCIAL AUTO



Attached to and forming part of Policy Number          EFFECTIVE          TO
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1.   The insurance does not apply:

A.   Under any Liability Coverage, to "bodily injury" or "property damage:"

(1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability I n s u r a n c e, Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1945, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreeemnt entered into by the United States of America, or any agency t h e r e o f, with any person or organization;

B.   Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from t h e "hazardous properties o f "nuclear material" a n d arising out of the operation of a "nuclear facility" by any person or organization.

C.   Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" o f "nuclear material," it:

(1)  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of an "insured" or (b) has been discharged or dispersed therefrom:

(2)  The "nuclear material" is contained in "spent fuel" or "waste" a t any time possessed, handled, u s e d, processed, stored, transported or disposed of by or on behalf of an "insured;" or

(3)  The "bodily injury" or "property damage" arises out of the furnishing b y an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located w i t h i n the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damge" to such "nuclear facility" a n d any property thereat.

2.   As used in this endorsement:

"H a z a r d o u s   properties" include radioactive, t o x i c   o r   explosive properties;

"Nuclear material" m e a n s "source material," "special nuclear material" or by-product material;"

"Source material," "special n u c l e a r material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in a n y law amendatory thereof;

Copyright, Insurance Services Office, Inc. 1983, 1984          Page 1 of 2

IL 00 21 11 85

xxxxxxxxxxxxxxxxxx

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means a n y waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) A n y equipment or device designed o r used for (1) separating the isotopes of uranium or plutonium, (2) processing or packaging "waste;"

(c) Any equipment o r device used for the processing, fabricating o r alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where s u c h equipment o r device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing i s located, a l l operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means a n y apparatus designed or u s e d to sustain nuclear fission in a self-supporting c h a i n reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc. 1983, 1984

IL 00 21 11 85

xxxxxxxxxxxxxxxxxxx



LINCOLN GENERAL INSURANCE COMPANY                    COMMERCIAL AUTO
3350 WHITEFORD ROAD
YORK, PENNSYLVANIA 17402

Attached to and forming part of Policy Number  PAP 1857700495    EFFECTIVE 04/18/1995 TO 04/18/1996

ISSUED TO:   JHM ENTERPRISES, INC.
             1200 VALLAMONT DRIVE, N.W.
             WILLIAMSPORT         PA 17701


LOSS PAYEE:  JERSEY SHORE STATE BANK
             300 MARKET STREET
             WILLIAMSPORT         PA 17701


THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


LOSS PAYABLE CLAUSE


This endorsement modifies insurance provided under this policy.

     BUSINESS AUTO COVERAGE FORM
     GARAGE COVERAGE FORM
     MOTOR CARRIER COVERAGE FORM
     TRUCKERS COVERAGE FORM
     BUSINESS AUTO PHYSICAL DAMAGE COVERAGE


With respect to coverage provided by this endorsement,  the provisions of the   Coverage  Form  apply
unless modified by the endorsement.

A.   We will  p a y, as interst may appear, you        CANCELLATION Common Policy Conditions.
     and the loss payee named in the policy for
     "loss" to covered "auto."                         Cancellation ends this agreement as to the
                                                        loss payee's interest.   If we cancel the
B.   The insurance covers the interest  of  the        policy we will mail you and the loss payee
     loss payee unless the "loss"  results from        the same advance notices.
     conversion, secretion  or  embazzlement on
     your part.                                    D.   If we make any payments to the loss payee,
                                                        we will obtain his  or  her rights against
C.   We may cancel the policy as allowed by the        any other party.


THIS CLAUSE IS APPLICABLE TO THE FOLLOWING COVERED "AUTO(S)":

|  | | | | | -------- DEDUCTIBLES -------- | | |
| UNIT# | YEAR | TRADE NAME | BODY TYPE | SERIAL # | INSURED VALUE* | OTHERTHAN COLLISION | COLLISION | DUMPING LOSS ** |
|---|---|---|---|---|---|---|---|---|
| 1 | 1985 | WHITE | TRACTOR | 1WUYDCFE4FN071239 | 16,000 | 1,000 | 1,000 | |
| 2 | 1969 | FRUEHAUF | TRAILER | UNJ325403 | 4,000 | 1,000 | 1,000 | |
| 3 | 1969 | FRUEHAUF | TRAILER | UNJ325404 | 4,000 | 1,000 | 1,000 | |
| 4 | 1974 | TRLMOBILE | TRAILER | K41315 | 5,000 | 1,000 | 1,000 | |
| 6 | 1969 | FRUEHAUF | TRAILER | UNJ325401 | 4,000 | 1,000 | | |
| 7 | 1969 | FRUEHAUF | TRAILER | UNJ325402 | 4,000 | 1,000 | 1,000 | |
| 8 | 1974 | TRLMOBILE | TRAILER | K41316 | 5,000 | 1,000 | | |
| 9 | 1974 | TRLMOBILE | TRAILER | K41317 | 5,000 | 1,000 | | |

   *  If value is shown, coverage is limited to lesser of Insured Value or ACV.

  ** If the "BODY TYPE" indicated above is a "dump" unit, a special  deductible  is  applicable
     to each and every loss which occurs while loading and/or unloading in the  course  of  any
     dumping operation.

Copyright, Insurance Services Offices, Inc. 1993

CA 99 44 12 93 A                        CONTINUED                    HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPANY                    COMMERCIAL AUTO
3350 WHITEFORD ROAD
YORK, PENNSYLVANIA 17402

Attached to and forming part of Policy Number  PAP 1857700495    EFFECTIVE 04/18/1995 TO 04/18/1996

ISSUED TO:    JHM ENTERPRISES, INC.
1200 VALLAMONT DRIVE, N.W.
WILLIAMSPORT        PA 17701

LOSS PAYEE:   JERSEY SHORE STATE BANK
300 MARKET STREET
WILLIAMSPORT        PA 17701

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under this policy.

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE

With respect to coverage provided by this endorsement,  the provisions of the   Coverage  Form  apply
unless modified by the endorsement.

A.   We will  p a y, as interst may appear, you
and the loss payee named in the policy for
"loss" to covered "auto."

B.   The insurance covers the interest  of  the
loss payee unless the "loss" results from
conversion, secretion  or  embazzlement on
your part.

C.   We may cancel the policy as allowed by the

CANCELLATION Common Policy Conditions.

Cancellation ends this agreement as to the
loss payee's interest.   If we cancel the
policy we will mail you and the loss payee
the same advance notices.

D.   If we make any payments to the loss payee,
we will obtain his  or  her rights against
any other party.

THIS CLAUSE IS APPLICABLE TO THE FOLLOWING COVERED "AUTO(S)":

|  |  |  |  |  |  | -------- DEDUCTIBLES -------- | | |
| UNIT# | YEAR | TRADE NAME | BODY TYPE | SERIAL # | INSURED VALUE* | OTHERTHAN COLLISION | COLLISION | DUMPING LOSS ** |
|---|---|---|---|---|---|---|---|---|
| 10 | 1974 | TRLMOBILE | TRAILER | K41318 | 5,000 | 1,000 |  |  |
| 11 | 1993 | J & L | TANK TRLR | 1J9P4AT21P2001084 | 36,312 | 1,000 | 1,000 |  |
| 15 | 1981 | BUTLER | TRAILER | 1TB114028BM452714 | 10,000 | 1,000 | 1,000 |  |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | 7,500 | 1,000 | 1,000 |  |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | 24,000 | 1,000 | 1,000 |  |

*  If value is shown, coverage is limited to lesser of Insured Value or ACV.

** If the "BODY TYPE" indicated above is a "dump" unit, a special  deductible  is  applicable
to each and every loss which occurs while loading and/or unloading in the  course  of  any
dumping operation.

Copyright, Insurance Services Offices, Inc. 1993

CA 99 44 12 93 A                                                         HOME OFFICE COPY



COMMERCIAL AUTO

Attached to and forming part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y  Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CHANGES – OTHER INSURANCE
HIRED AUTO PHYSICAL DAMAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
TRUCKERS COVERAGE FORM

A. Paragraph **5. b.** of the OTHER INSURANCE Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms is replaced by the following:

   **5.** OTHER INSURANCE

   **b.** F o r  Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own.

B. Paragraph **5. d.** of the OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS Condition in the Truckers Coverage Form and Truckers Endorsement is replaced by the following:

   **5.** OTHER INSURANCE – PRIMARY AND EXCESS INSURANCE PROVISIONS

   **d.** F o r  Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own.

Includes copyrighted material of Insurance Services Office, Inc.
with its permission.  Copyright, Insurance Services Office, Inc., 1991

L 1087 06 92

xxxxxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming part of Policy Number      EFFECTIVE       TO
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A.  CANCELLATION

1.  The first Named Insured shown i n the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering t o the first Named Insured written notice of cancellation at least:

 a.  10 days before the effective date o f cancellation if we cancel for nonpayment of premium; or

 b.  30 days before the effective date o f cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state t h e effective date of cancellation. The policy will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

B.  CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only b y endorsement issued by us and made a part of this policy.

C.  EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D.  INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

A n y inspections, surveys, reports or recommendations r e l a t e only t o insurability a n d the premiums to be charged. We do n o t m a k e safety inspections. We do n o t undertake to p e r f o r m the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or s i m i l a r organization which makes insurance inspections, surveys, reports or recommendations.

E.  PREMIUMS

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1982, 1983

IL 00 17 11 85

xxxxxxxxxxxxxxxxxx



COMMERCIAL AUTO

Attached to and forming part of Policy Number        EFFECTIVE        TO
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PENNSYLVANIA CHANGES –
CANCELLATION AND NONRENEWAL**

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTO COVERAGE PARTS
    COMMERCIAL CRIME COVERAGE PART*
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

\* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. The CANCELLATION Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or g i v i n g notice of cancellation.

2. **CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS.**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE.**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a m a t e r i a l misrepresentation which affects the insurability of the risk. Notice of cancellation w i l l be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, f a c t o r or loss experience material to insurability

   h a s changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time cancellation, shall be certified to t h e Insurance Commissioner as directly affecting inforce policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure t o comply with policy t e r m s, conditions or contractual d u t i e s. Notice of cancellation w i l l be mailed or delivered at least 60 days before the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation w i l l be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy w a s obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO Commercial Risk Services, Inc., 1986, 1989

IL 02 46 06 89

xxxxxxxxxxxxxxxx

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

   1. **NONRENEWAL**

      If we decide not to renew this policy,

we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

   2. **INCREASE IN PREMIUM**

      If we increase your renewal premium, we will mail or deliver to the first Named Insured:

      a. Written notice of our intent to increase the premium at least 60 days before t h e effective date of the premium increase; and

      b. An estimate of the increase at least 30 days before the effective date of premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, if will be by registered or or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1986, 1989
Copyright, ISO commercial Risk Services, Inc., 1986, 1989

IL 02 46 06 89

xxxxxxxxxxxxxxx




COMMERCIAL AUTO

Attached to and forming a part of Policy Number          EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations  f o r  the information.)

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY

### PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

>    BUSINESS AUTO NON-TRUCKING COVERAGE FORM.
>    BUSINESS AUTO COVERAGE FORM
>    GARAGE COVERAGE FORM
>    TRUCKERS COVERAGE FORM

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Pennsylvania, the Coverage Form is changed as follows:

A.    CHANGES IN CONDITIONS

The following is added to the GENERAL CONDITIONS section:

CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provisions of the Coverage Form, subject to the approval of the Insurance Commissioner.

Copyright, Insurance Services Office, Inc. 1990



COMMERCIAL AUTO

Attached to and forming part of Policy Number                EFFECTIVE             TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULY.

### PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide
services to reduce the likelihood of injury, death or loss.  These services may include any of the
following or related services incident to the application for, issuance, renewal or continuation of,
a policy of insurance:

1.   Surveys;

2.   Consultation or advice; or

3.   Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance
Company, its agents, employees or service contractors acting on its behalf is not liable for damages
from injury, death or loss occurring as a result of any act of omission by any person in the
in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.   If the injury, death or loss occurred during the actual performance of the services and was
     caused b y the negligence o f the Insurance Company, its agents, employees o r services
     contractors;

2.   To consultation services required to be performed under a writtenn service contract not related
     to a policy of insurance; or

3.   If any acts or omissions of the Insurance Company, its agents, employees or service contractors
     are judicially determined to constitute a crime, actual malice, or gross negligence.

Copyright, Insurance Services Office, Inc. 1981

IL 09 10/HO 291 (Ed. 01 81)

xxxxxxxxxxxxxxxxxx



**INLAND MARINE**

Attached to and forming part of Policy Number        EFFECTIVE            TO

ISSUED TO:

**MOTOR TRUCK CARGO INSURANCE
TRANSIT AND LOCATION COVERAGE
(Broad Form)**

**PROPERTY COVERED**
This policy covers all lawful goods and merchandise,  except as excluded or restricted by this or any
other policy,  while loaded for shipment and in transit in or on a "described vehicle."

**COVERED RADIUS OF OPERATION**
The radius of operation is the radius  s h o w n  in this policy  or  any  other policy to which this
insurance applies.

**TERRITORY WHERE COVERAGE APPLIES**
Coverage applies  o n l y  while the property is in the United States, Canada and Puerto Rico.    This
includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

**COVERAGE AMOUNT**
The most "we" will pay for all  covered property is  $2,000.00  (two thousand dollars) on  a n y  one
item, any one loss, catastrophe  or disaster, either  in case of partial loss  or total loss,  salvage
charges or expenses or all combined.  This amount is excess over  a n y  other collectible insurance.
If there is other collectible insurance that applies to a covered loss,  or would have applied in the
absence of this  Inland Marine coverage,  "we" will pay for the loss only  after the full amount from
the other insurance has been paid.

**DEDUCTIBLE**
$1,000.00 (one thousand dollars) deductible applies to each loss after  a l l  other adjustments have
been made.

**EXTENSION OF COVERAGE**
This extension of coverage does not increase the coverage amount stated above.

Substitute Vehicles - If a "described vehicle" is disabled,  "you" may use  a  replacement vehicle to
complete the transit of the covered cargo. This coverage applies only until the covered cargo reaches
its original destination.  "You" do not have to report the use of these replacement vehicles.

**PROPERTY EXCLUDED**
"We" do not cover:
1. cargo on a vehicle after it has remained at any location for more than 72 hours.    This includes
   locations that "you" own or use.
2. cargo  in a  detached truck body,  trailer  or semi-trailer  if not a  "described vehicle" on the
   policy.
3. money.      This means currency, coins, bank notes, money orders, traveler's checks, bullion and
   similar items.
4. securities.    These are any negotiable  or  nonnegotiable agreements  in writing that have value.
   They include revenue stamps, other stamps in current use, tokens and tickets.
5. accounts, manuscripts, mechanical drawings and other records and documents.
6. fine arts.  "We" do cover these losses if they  are  c a u s e d  by fire;  lightning; windstorm;
   earthquake; flood; smoke;  explosion;  aircraft, spacecraft;  self-propelled missiles and objects
   that fall from these items;  vehicles,  collision;  upset  or overturn of  a "described vehicle;"
   collapse of a bridge or culvert; vandalism; theft; attempted theft; or collapse of buildings.
7. livestock or poultry.  "We" do cover losses for total death or injury rendering death immediately
   necessary in consequence of a covered peril.
8. breakage of eggs.  "We" do cover losses  if two (2) conditions are met.  First, the breakage must
   be caused  by a covered peril,  secondly,  fifty percent (50%) or more  of the eggs  within  each
   damaged shipping package or crate must be broken.  The most "we" will pay for any one (1) package
   or crate is $ 200.00.
9. damage to a "described vehicle"
10. tarpaulins, or wrapping materials
11. cargo for which "you" are legally liable while it is  in the custody of another carrier.  "We" do
    cover this property  if "you" have not  waived "your" right  to recover  for a loss  against that
    carrier.
12. freight charges.  "We" do cover freight charges earned  prior to a shipment if "you"  are legally
    liable for this charge.

Page 1 of 3

IM 1073 05 91

xxxxxxxxxxxx

**PERILS COVERED**
"We" cover  direct  physical loss  to covered cargo  unless  the loss  is  caused  by a peril  that is
excluded.  The loss must be due to an external cause.

**PERILS EXCLUDED**
"We" do not pay  for a loss if  one  or more  of the  following excluded perils  apply to  the loss,
regardless of other causes or events that contribute to  or  aggravate the loss,  whether such causes
or  events act to produce  the  loss  before;  at the same time as,  or  after the excluded peril.

"We" do not pay for a loss that results from:

1.   a dishonest or illegal act, alone or in collusion with another, by:
 a.   "you;"
 b.   others who have an interest in the property;
 c.   others to whom "you" entrust the property; or
 d.   the employees or agents of a., b. or c., whether or not they are at work.
      "We" do cover loss caused by dishonest acts by carriers or other bailees or hire.

2.   mysterious disappearance.

3.   theft of a part of the contents of any shipping package.

4.   misdelivery.

5.   corrosion or rust.

6.   the following:
 a.   breakage;
 b.   marring or scratching;
 c.   leakage, evaporation or shrinkage;
 d.   mold or rot.
 e.   property becoming soured, scented, discolored or changed in flavor.
 f.   contact with oil; and
 g.   the contact of one commodity with another.
      "We" do cover these losses  if  they are caused by fire; lightning; windstorm, earthquake; flood
      smoke;  explosion;  aircraft;  spacecraft;  self-propelled missiles  and  objects that fall from
      these items; vehicles; collision; upset or overturn of a described vehicle; collapse of a bridge
      or culvert; vandalism; theft; attempted theft; or collapse of buildings.

7.   mechanical  or electrical breakdown  or failure.  If a fire  or explosion results, "we" do cover
     the loss caused by the fire or explosion.
8.   breakdown or failure of a refrigerating unit.
9.   breakdown or failure of heating equipment installed in a cargo compartment.
10.  loading cargo onto or unloading it from a "described vehicle."
      "We"  do provide coverage  for these perils if "you"  carry primary insurance  for these  type
      hazards.
11.  rough handling or poor packing.
12.  strike, riot or civil commotion.

There are other perils that are not covered.     These are listed in the Inland Marine General Terms.


**VALUATION**
This replaces the "Valuation" provision in the Inland Marine General Terms. The value of the property
will be based on the following amounts

1.   If there is an invoice, the property will be valued at the cost shown on the invoice.
2.   If there is no invoice:
 a.   property that is sold but not delivered  will be valued  at its  n e t  selling price  after all
      discounts and allowances have been taken.
 b.   all other property will be valued at its actual cash value.
3.   The property  of others  will be valued  at the amount  that "you" are liable for  to the owner.
     This  includes  the cost  of labor  and  materials  that "you"  have invested  in the  property.
     However, the value of this property will never be more than its actual cash value.
4.   exhibitions and displays will be valued at "your" cost if they belong to "you."
5.   negatives and film prints will be valued at the cost to replace these items with an equal amount
     of raw stock.
6.   if exclusion  #5 under  "PROPERTY EXCLUDED"  has  b e e n  deleted  than accounts, manuscripts,
     mechanical drawings and other records and documents will be valued at  the  c o s t  to replace
     them with an equal amount of raw stock, plus  the  cost to duplicate them from original materials
     if they can be duplicated.
7.   all other property will be valued at its actual cash value.

IM 1073 05 91

**BRANDS AND LABELS**
If covered property  that has a brand or label is damages  by a covered peril  and "we" agree to take
all or part of the property at an agreed or appraised value, "you" must:
1.   stamp "salvage" on the property or its container; or
2.   remove the label.
Stamping "Salvage" or removing the label must not cause  further  physical damage to property.   The
expense of "stamping" or removal will be charged to salvaging expense.

**AMOUNT WE PAY**
This replaces the "Amount We Pay" provision in the Inland Marine General Terms.   The smallest of the
amounts shown below is the most that "we" will pay "you" for a loss.
1.   the amount of "your" interest in the property.
2.   the value shown in the tariff document, bill of lading or shipping receipt.
3.   the amount determined by the valuation clause.
4.   the cost to repair, rebuild or replace the property with material of like kind and quality.
5.   the coverage amount shown.

In all cases,  the amount "we" pay  will be excess over  any collectible insurance "you" carry.  "We"
will pay for the loss only after the full amount from the other insurance has been paid.

**PREMISES PROTECTION**
"You"  m u s t  maintain in proper working order the protective devices that were in operation on the
effective date of this coverage. "Your" failure to do so will void coverage at the premises where the
device is located.  Coverage will not be void if the operation of the device is suspended because
of:
1.   a maintenance, repair, adjustment or service operation; or
2.   an event that is beyond "your" control.

**DEFINITIONS**
In addition to the definitions in the Inland Marine General Terms,  the following definitions apply :

"described vehicle" - a unit described  under SECTION I - COVERED AUTOS of the  Commercial Automobile
division of this package policy.    For the purpose  of this coverage  a  described vehicle of  the
Commercial Tractor type shall include any undescribed attached trailer(s) or semi-trailer(s).

commercial tractor - is a unit  not designed to carry  or transport any property,goods or merchandise
in and of its self except by the use of a trailer or semitrailer

**DEDUCTIBLE WAIVER**
The deductible for this coverage shall be waived if at the time of loss  "we" provided cargo coverage
for "you" under a separate Inland Marine Floater Policy.



INLAND MARINE

Attached to and forming part of Policy Number                EFFECTIVE        TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y  Declarations  f o r  the information.)

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the Inland Marine coverage described in this policy during the policy period subject to the:

1.  Inland Marine General "Terms."
2.  Inland Marine coverage "terms."
3.  Policy "terms" that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

## INLAND MARINE GENERAL TERMS

### DEFINITIONS

1.  The words "you" and "your" mean the person, persons or organization named on t h e Declarations.

2.  The words "we," "us" and "our" mean the company providing this insurance.

3.  "Insured" means "you." With respect to covered property that is not used for business, the insured also means:

a.  "your" spouse;

b.  "your" relatives if residents of "y o u r" household;

c.  persons under the age of 21 in "your" care or the care of "your" resident relatives; or

d.  "your" legal representative if "you" die while insured by this policy.(This person is an "insured" only for the covered property.)

4.  "Business" means a trade, profession or occupation whether full or part time. This includes:

a.  the rental of property to others; and

b.  farming.

5.  "Described premises" means that part of the building and grounds which "you" occupy at the location shown.

6.  "Terms" means the conditions, definitions, exclusions, limitations and provisions used in this policy.

### PERILS EXCLUDED

"We" do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. "We" do not pay for a loss that results from:

1.  wear and tear to covered property.

2.  gradual deterioration of covered property.

3.  a fault or weakness that is intrinsic to the property which causes it to break, spoil, become defective or destroy itself.

4.  insects o r vermin damage t o covered property.

5.  delay, loss of market, loss of use, or "business" interruption.

6.  obsolescence or depreciation of covered property.

7.  war. This means:

a.  declared war, undeclared war, civil war, insurrection, rebellion o r revolution;

b.  a warlike act by a military force or by military personnel;

c.  the destruction, seizure o r use of the property for a military purpose; or

d.  the discharge of a nuclear weapon even if it is accidental.

8.  civil authority. This means:

a.  seizure of destruction under quarantine or customs regulations;

b.  confiscation or destruction by order of a government or public authority; or

c.  risks o f contraband o r i l l e g a l transportation or trade.

9.  nuclear hazard. This m e a n s nuclear reaction, nuclear radiation or radioactive contamination:

a.  whether controlled or uncontrolled; or

b.  caused by, contributed to or aggravated by a peril covered by this policy. A loss caused by nuclear hazard will not be

COPYRIGHT 1984 AAIS

IM-100

xxxxxxxx

considered to be a loss caused by fire, explosion or smoke. If fire is covered by this policy, "we" do cover the loss caused by a fire that results from the nuclear hazard.

10. other perils that are not covered. These are listed for each coverage.

"We" do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1. the act or decision of a person, group, organization or governmental body. This includes the failure to act or decide.

2. a fault, defect or error, negligent or not, in:

a. planning, z o n i n g, surveying, siting, g r a d i n g, compacting, land use, o r development of property.

b. t h e design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property. This includes the materials needed to construct, remodel or repair the property.

c. maintenance of property.

These apply whether or not the property is covered by this policy.

3. a condition of the weather.

4. the collapse of a building or structure.

**WHAT MUST BE DONE IN CASE OF LOSS**

1. **Protect the Property.** The "insured" must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2. **Notice.** The "insured" must promptly notify "us" or "our" agent, in writing if requested.

3. **Notice to Police.** The "insured" must promptly notify the police if the loss results from a violation of the law.

4. **Proof of Loss.** The "insured" must send "us" a statement of loss, under oath if requested within 90 days after the loss occurs. The following information must be be included:

a. the date, time, place and details of the loss.

b. other insurance that may cover the loss.

c. "your" interest and the interest of all others in the property involved in the loss. This includes a l l mortgages and liens.

d. changes i n the title t o the covered property during the policy period.

e. detailed estimates f o r the repair or replacement of the covered property.

f. an inventory of lost, damaged and all remaining covered property. T h i s must

show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss. Copies of all bills, receipts and related documents that substantiate the inventory m u s t b e attached.

5. **Additional Duties.** As often as "we" may reasonably request, an "insured" must:

a. submit to an examination under oath.

b. assist "us" in obtaining the attendance of employees for examination under oath.

c. exhibit damaged and undamaged property.

d. produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6. **Cooperation.** The "insured" must cooperate with "us" in performing all acts that are required by this Inland Marine coverage.

7. **Volunteer Payments.** The "insured" may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the "insured's" own expense.

8. **Abandonment.** The "insured" may not abandon the property to "us" without "our" written consent.

**HOW MUCH WE PAY**

1. **Actual Cash Value.** Actual cash value includes a deduction for depreciation, however caused.

2. **Valuation.** Valuation is based on the actual cash value of the property at the time of loss.

3. **The Amount We Pay.** The smallest of the amounts shown below is the most that "we" will pay for a loss:

a. the amount determined under "Valuation."

b. the cost to repair, replace or rebuild the property with material of like kind and quality.

c. the amount of "your" interest in the property.

d. the coverage amount shown.

This amount will be adjusted b y the deductible amount, coinsurance penalty or other limitation which may apply.

4. **Loss to Pairs or Sets.** If there is a loss to an item that is part of a pair or set, at "your" option "we" will pay the full actual cash value up to the coverage amount shown for the pair or set. "You" will give "us" the remainder of the pair or set. If "you" do not choose this option, "we" will pay only for a reasonable part of the actual cash value of the pair or set.

5. **Loss to Parts.** If there is a loss to an

COPYRIGHT 1984 AAIS

IM-100

xxxxxxxxxx

item that consists of several parts, "we" will pay only for the loss to that part. A loss to a part is not considered to be a loss to the whole item.

6. **Insurance Under More Than One Policy**. If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this Inland Marine coverage, "we" will pay for the loss only after the full amount from the other insurance has been paid.

7. **Insurance Under More Than One Coverage**. If more than one coverage applies to the same loss, "we" will pay no more than the actual amount of the loss.

8. **Losses Paid By Others**. "We" will not pay for that part of a loss that has been paid by someone else.

9. **Restoring the Coverage Amount**. The payment of a claim will not reduce the coverage amount. If "we" pay a loss for items that are separately listed and the coverage amount that applies to these items is reduced at "your" request, "we" will return the unearned premium for these items to "you."

## LOSS PAYMENT

1. **Our Options**. "We" may:

a. pay the loss in money; or

b. repair, replace or rebuild the property. "We" must give the "insured" notice of "our" intent to do so within 30 days after "we" received a satisfactory proof of loss.

"We" may take all or a part of the damaged property at the agreed or appraised value. Property that "we" have paid for o r replaced will become "our" property.

2. **Your Property**. "We" will adjust all losses with "you." Payment will be made to "you" unless a loss payee is named with respect to this Inland Marine coverage.

3. **Property of Others**. Loss to property of others may be adjusted with "you." "We" reserve the right to adjust the loss with the owner. "Our" payment to the owner will satisfy "our" obligation to "you" for loss to this property. At "our" option, withous cost to "you," "we" may choose to defend "you" from suits which result from a covered loss to the property of others.

4. **When We Pay**. "We" will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1. **Subrogation**. If "we" pay for a loss, "we" may require the "insured" to assign to "us" the right of recovery against others. "We" will not pay for a loss if the "insured" impairs t h i s right to recover. The "insured's" right to recover from others may be waived in writing before a loss occurs.

2. **Loan Receipts**. When we believe that a loss can be recovered from others;

a. "we" may make an advance payment to "you" in the form of a loan.

b. at "our" expense, "we" will be allowed to bring suit in the "insured's" name against those who are responsible for the loss.

c. the loan will be repaid from the amount recovered.

3. **Recoveries**. The "insured" must notify "us" or "we" must notify the "insured" promptly if either receives a recovery for a loss which "we" have paid. The costs that are incurred by either party in making the recovery are to be reimbursed first. "We" are entitled to the surplus up to the amount that "we" have paid for the loss. The "insured" may then keep any excess.

## DISAGREEMENTS

1. **Appraisal**. If "you" and "we" do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal. If either party makes a written demand for appraisal, each w i l l select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court in the state where the appraisal is pending to select an umpire.

The appraisers will determine:

a. the amount of the loss;

b. the actual cash value of the property; and

c. the cost to repair or replace the property.

Each amount will be stated separately.

If the appraisers submit a written report of an agreement to "us,"the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by "you" and "us."

2. **Suit Against Us**. No suit to recover for a loss may be brought against us unless:

a. all the "terms" of this Inland Marine coverage have been complied with; and

b. the suit is commenced within one year after the loss.

COPYRIGHT 1984 AAIS

xxxxxxxxx

**OTHER POLICY CONDITIONS** 

1. **Conformity With Statutes.** The "terms" of this Inland Marine coverage are in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2. **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), "we" may substitute or "we" may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3. **Liberalization.** If a revision of a form endorsement which would broaden coverage without an additional premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4. **Mispresentation, Concealment or Fraud.** This Inland Marine Coverage is void if before or after a loss:

a. the "insured" has concealed or misrepresented

(1) a material fact or circumstance that relates to this insurance or the subject thereof; or

(2) an "insured's" interest herein.

b. there has been fraud or false swearing by an "insured" with regard to a matter that relates to this insurance or the subject thereof.

5. **No Benefit to Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6. **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting "terms." If it is cancelled, "you" must report the required amounts as of the cancellation date.

COPYRIGHT 1984 AAIS



**INLAND MARINE**

Attached to and forming part of Policy Number                    EFFECTIVE          TO

ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

### COMMON POLICY CONDITIONS

1. **Assignment** – This policy is void if it is assigned without "our" written consent.

2. **Cancellation** – "You" may cancel this policy by returning it to "us" or by giving "us" a written notice and statement at what future time coverage is to cease.

   "We" may cancel this policy, or one or more of its parts, by giving "you" a written notice a t least 10 days before t h e cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to "your" mailing address last known to "us."

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms** – A change or waiver of terms of this policy must be issued by "us" in writing to be valid.

4. **Inspections** – "We" have the right, but are not obligated, to inspect "your" property and operations. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for "our" benefit only.

5. **Examination of Books and Records** – "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

COPYRIGHT 1984 AAIS

CL-100

xxxxxxxx

Attached to and forming part of Policy Number                EFFECTIVE              TO
ISSUED TO:
(If no entry appears above, refer to the P o l i c y Declarations f o r the information.)

**NOTICE**

We advise   t h a t   an investigation   m a y   be made   regarding information as to character,   general

reputation,   personal characteristics and mode of living.     Information on the nature and scope of

the report is available upon written request.

L 7020 02 92

XXXXXXXXXXXXXXXXXXX



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

===============================================================================

| Insured: | |
|---|---|
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| WILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

UNIT #    1  CHANGED  ************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19? | ITE | TRACTOR | 1MUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    1

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    2  CHANGED  ************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1969 | FRUEHAUF | TRAILER | UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    2

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    3  CHANGED  ************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1969 | FRUEHAUF | TRAILER | UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    3

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

UNIT #    4  CHANGED  ************************************************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1974 | TRLMOBILE | TRAILER | K41315 | C | 50000 | IN | 67521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMPAN.
3350 WHITEFORD ROAD
YORK, PA  17402

GENERAL CHANGE ENDORSEMENT

PAGE:    2

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=================================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

HIS LOSS PAYEE IS ADDED TO UNIT #    4

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    5  CHANGED  *****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|
| 967 FRUEHAUF    TRAILER | UNEF290102 | C | 50000 | IN | 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    5

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    6  CHANGED  *****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|
| 969 .JEHAUF    TRAILER | UNJ325401 | C | 50000 | IN | 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    6

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    7  CHANGED  *****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|---|
| .969 FRUEHAUF    TRAILER | UNJ325402 | C | 50000 | IN | 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    7

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

*** CONTINUED ***

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPAN.
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=============================================================================================================

```
| Insured:                                    |
|        JHM ENTERPRISES, INC.                |
|        1200 VALLAMONT DRIVE, N.W.           |
|                                             |
|        WILLIAMSPORT        PA 17701-0000    |
```

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

---

IIT #    8  CHANGED  ************************************************************************

| | | Bus | GVW | ------------ Codes ------------ | | | | | | | | Pro-Rated |
| ear Trade Name Body Type | Serial Number | Use | GCW | Dis Class | Pc St Cnty City Terr Garaging City | Premium |

974 TRLMOBILE  TRAILER    K41316        C   50000   IN 67521  380 PA    81         10 WILLIAMSPORT

HI. LOSS PAYEE IS ADDED TO UNIT #    8

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

---

IIT #    9  CHANGED  ************************************************************************

| | | Bus | GVW | ------------ Codes ------------ | | | | | | | | Pro-Rated |
| ear Trade Name Body Type | Serial Number | Use | GCW | Dis Class | Pc St Cnty City Terr Garaging City | Premium |

974 TRLMOBILE  TRAILER    K41317        C   50000   IN 67521  380 PA    81         10 WILLIAMSPORT

THIS LOSS PAYEE IS ADDED TO UNIT #    9

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

---

IIT #    10  CHANGED  ************************************************************************

| | | Bus | GVW | ------------ Codes ------------ | | | | | | | | Pro-Rated |
| ear Trade Name Body Type | Serial Number | Use | GCW | Dis Class | Pc St Cnty City Terr Garaging City | Premium |

974 TRLMOBILE  TRAILER    K41318        C   50000   IN 67521  380 PA    81         10 WILLIAMSPORT

THIS LOSS PAYEE IS ADDED TO UNIT #    10

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

---

NIT #    11  CHANGED  ************************************************************************

| | | Bus | GVW | ------------ Codes ------------ | | | | | | | | Pro-Rated |
| ear Trade Name Body Type | Serial Number | Use | GCW | Dis Class | Pc St Cnty City Terr Garaging City | Premium |

993 J & J    TANK TRLR  1J9P4AT21P2001084   C   50000   IN 67521  220 PA    81         10 WILLIAMSPORT

*** CONTINUED ***

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPAN
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    4

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

===============================================================================

```
┌─────────────────────────────────────────┐
│ Insured:                                 │
│         JHM ENTERPRISES, INC.            │
│         1200 VALLAMONT DRIVE, N.W.        │
│                                          │
│    WILLIAMSPORT        PA 17701-0000      │
└─────────────────────────────────────────┘
```

Policy Prefix.........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:     1
Endorsement Effective: 05/15/1995

THIS LOSS PAYEE IS ADDED TO UNIT #    11

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    14    CHANGED    ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|
| 986 FREIGHTLIN TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN 50521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    14

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    15    CHANGED    ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|
| 981 ⌐FLER    TRAILER | 1TB114028BM452714 | C | 50000 | IN 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    15

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

NIT #    16    CHANGED    ****************************************************************************

| ear Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|---|
| 979 F-LINER    TRACTOR | CA213HM160222 | C | 80000 | IN 50521 | 380 PA    81 | 10 WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #    16

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

*** CONTINUED ***

HOME OFFICE COPY



**LINCOLN GENERAL INSURANCE COMPANY**
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    5

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent he
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein

================================================================================

| Insured: | |
|---|---|
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| WILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:        PAP
Policy Number.......: 1857700495
Policy Period.......: 04/18/1995 to 04/18/1996

Endorsement Number...:    1
Endorsement Effective: 05/15/1995

UNIT #    17   CHANGED  ***********************************************************

| Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | 81 | | 10 | WILLIAMSPORT | |

THIS LOSS PAYEE IS ADDED TO UNIT #   17

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| AD' | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

| ENDORSEMENT TOTAL | 0 |
|---|---|

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  5/26/'95

SYOUNG

Insureds Name: JHM ENTERPRISES, IN     

**SCHEDULE OF COVERED AUTO CHANGES**
(Per Endorsement No:    1 )                                                                    Page:    1

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1985 | WHITE | TRACTOR | 1HUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 2 | 1969 | FRUEHAUF | TRAILER -S | UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 3 | 1969 | FRUEHAUF | TRAILER -S | UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 4 | 1974 | TRLMOBILE | TRAILER -S | K41315 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 5 | 1967 | FRUEHAUF | TRAILER -S | UNEF290102 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 6 | 1969 | FRUEHAUF | TRAILER -S | UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 7 | 1969 | FRUEHAUF | TRAILER -S | UNJ325402 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER -S | K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER -S | K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER -S | K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 11 | 1993 | J & J | TANK TRLR -S | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | | 10 | WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 15 | 1981 | BUTLER | TRAILER -S | 1TB114028BM452714 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | C | 80000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |

----- Continued on next page -----

HOME OFFICE COPY

Policy # PAP 185770 0495  Insureds Name ⬤ ENTERPRISES, INC. ⬤                    Page:    2

---- COVERAGE and PREMIUM BREAKDOWN ----
(Per Endorsement No:    1 )

| | UNITS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 1 | | 2 | | 3 | | 4 | | 5 | |
| Insureds Unit Number | 1 | | 4 | | 5 | | 6 | | 7 | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | 750,000 | | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | |
| Personal Injury Protection | 5,000 | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | 5,000 | | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | 35,000 | | | | | | | | | |
| UNDERinsured Motorist | 35,000 | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | 1    N | | 1    N | | 1    N | | 1    N | |
| LIABILITY TOTAL -----> | | | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 30,000 | | 25,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 16,000 | | 4,000 | | 4,000 | | 5,000 | | 4,000 | |
| Depreciated Value | 10,678 | | 6,371 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 63 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | | Y   00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| Premium to Value % | 8.43 | | 5.18 | | 5.18 | | 5.16 | | 5.18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City   Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT      -> | | | | | | | | | | |

1063 03 93                         ----- Continued on next page -----                    HOME OFFICE COPY

olicy # PAP 185770 0495  Insureds Nam ● ENTERPRISES, INC.  ●                    Page:    3

```
                      ---- COVERAGE and PREMIUM BREAKDOWN ----
                         (Per Endorsement No:      1 )
```

| | 6 | | 7 | | 8 | | 9 | | 10 | |
|---|---|---|---|---|---|---|---|---|---|---|
| ompany Unit Number | | | | | | | | | | |
| nsureds Unit Number | 8 | | 9 | | 10 | | 11 | | 12 | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| IABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | | UNHOOKED | |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1  N | | 1  N | | 1  N | | 1  N | | 1  N | |
| L   ITY TOTAL -----> | | | | | | | | | | |

| HYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 20,000 | | 25,000 | | 25,000 | | 25,000 | |
| Estimated Value | 4,000 | | 4,000 | | 5,000 | | 5,000 | | 5,000 | |
| Depreciated Value | 5,096 | | 5,096 | | 6,371 | | 6,371 | | 6,371 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 65 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
|  (n om. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Com rehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| Premium to Value % | 5.55 | | 5.55 | | 5.16 | | 5.16 | | 5.16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT      -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Name ●ENTERPRISES, INC. ●                    Page:    4

---- COVERAGE and PREMIUM BREAKDOWN ----
(Per Endorsement No:    1 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 11 | | 14 | | 15 | | 16 | | 17 | |
| Insureds Unit Number | CHANGE | | CHANGE | | CHANGE | | CHANGE | | CHANGE | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | 750,000 | | UNHOOKED | | 750,000 | | 750,000 | |
| Personl Injury Protection | COVERAGE | | 5,000 | | COVERAGE | | 5,000 | | 5,000 | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | 5,000 | | | | 5,000 | | 5,000 | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | 35,000 | | | | 35,000 | | 35,000 | |
| UNDERinsured Motorist | | | 35,000 | | | | 35,000 | | 35,000 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 65 | | 63 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1  N | | 1  N | | 1  N | | 1  N | | 1  N | |
| LIABILITY TOTAL -----> | | | | | | | | | | |
| | | | | | | | | | | |
| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
| Cost New | 36,312 | | 55,000 | | 32,000 | | 20,000 | | 60,000 | |
| Estimated Value | 36,312 | | 19,000 | | 10,000 | | 7,500 | | 24,000 | |
| Depreciated Value | 28,119 | | 21,275 | | 8,155 | | 5,096 | | 27,422 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 63 | | 65 | | 63 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | 3,000 | | 3,000 | | 3,000 | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (Item. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |
| | | | | | | | | | | |
| Premium to Value % | 2.60 | | 6.16 | | 5.24 | | 11.96 | | 4.78 | |
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |
| | | | | | | | | | | |
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT      -> | | | | | | | | | | |

1063 03 93

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

========================================================================================

| Insured: | |
|---|---|
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| WILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    2
Endorsement Effective: 04/18/1995

IT #    11  CHANGED  ****************************************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | Dis | Class | Pc St Cnty City Terr Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|
| 9? · L    TANK TRLR 1J9P4AT21P2001084 | C | 50000 | IN 67521 | 220 | PA    81        10 WILLIAMSPORT | |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION | |
|---|---|---|---|
| DED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS | |
| EPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK | |

| ENDORSEMENT TOTAL | 0 |
|---|---|

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  6/12/95

THANNING

Insureds Name: JIM ENTERPRISES, IN  

**SCHEDULE OF COVERED AUTO CHANGES**  Page:    1
(Per Endorsement No:      2 )

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

---

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|-----|------|------------|-----------|---------------|---------|---------|-----|-------|----|----|------|------|------|---------------|
| 11 | 1993 | J & L | TANK TRLR -S | 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | | 10 WILLIAMSPORT |

Policy # PAP 185770 0495  Insureds Name ● ● ENTERPRISES, INC.    ●    Page:    2

---- COVERAGE and PREMIUM BREAKDOWN ----
(Per Endorsement No:    2 )

| | ---------------------------------- UNITS ---------------------------------- | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 11 | | | | | | | | | |
| Insureds Unit Number | | | | | | | | | | |
| | CHANGE | | | | | | | | | |
| LIABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | | | | | | | | | |
| Personl Injury Protection | COVERAGE | | | | | | | | | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| For Group/Trailer Discnt | 1    N | | | | | | | | | |
| LIABILITY TOTAL -----> | | | | | | | | | | |

| PHYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 36,312 | | | | | | | | | |
| Estimated Value | 36,312 | | | | | | | | | |
| Depreciated Value | 28,120 | | | | | | | | | |
| Dumping Code | N | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y    00-00 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (rplcm. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | | | | | | | | | |

| Premium to Value % | 2.60 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.  Surchg/Tax - Code | | | | | | | | | | |
| City Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

1063 03 93

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:   1

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
th, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==============================================================================================

Insured:
   JHM ENTERPRISES, INC.
   1200 VALLAMONT DRIVE, N.W.

   WILLIAMSPORT      PA 17701-0000

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

**************************************** DRIVER(S) CHANGED ****************************************

HE NAME OF A CURRENTLY INCLUDED DRIVER ON FORM L1025 HAS BEEN CHANGED TO READ AS FOLLOWS:

R     CHANGED - SEQ # 0003

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| WILLIAM T BROWN | 12/29/60 | 19052931 | PA | 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 | Y |

**************************************** DRIVER(S) DELETED ****************************************

ORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

RIVER DELETED - SEQ # 0011

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RUSTY FRY | 11/26/58 | 18329847 | PA | | R |

**************************************** DRIVER(S) DELETED ****************************************

ORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

R:    DELETED - SEQ # 0015

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| CHRIS HABERSTROH | 12/25/54 | 17789257 | PA | | R |

**************************************** DRIVER(S) ADDED ****************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED  - SEQ # 0032

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| ROBERT BROWN | 12/20/32 | RD309311 | OH | | N |



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    2

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

========================================================================================================

```
Insured:
         JHM ENTERPRISES, INC.
         1200 VALLAMONT DRIVE, N.W.

         WILLIAMSPORT      PA 17701-0000
```

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

**************************************** DRIVER(S) ADDED ***********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED   - SEQ # 0033

| ER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---------|-----------|-----------------|-------|-------------|-----|
| C. .RLES COCHRAN | 7/01/67 | 21284745 | PA | | Y |

**************************************** DRIVER(S) ADDED ***********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED   - SEQ # 0034

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|-------------|-----------|-----------------|-------|-------------|-----|
| RICHARD E FREDERICK | 12/16/53 | 16331001 | PA | | Y |

**************************************** DRIVER(S) ADDED ***********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

IVER ADDED   - SEQ # 0035

| R NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|--------|-----------|-----------------|-------|-------------|-----|
| M. .AEL FREEZER | 1/15/55 | 16547100 | PA | | Y |

**************************************** DRIVER(S) ADDED ***********************************************

IRM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

IVER ADDED   - SEQ # 0036

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|-------------|-----------|-----------------|-------|-------------|-----|
| THOMAS HEATH | 6/09/51 | 15282772 | PA | | Y |

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=============================================================================================================

```
+---------------------------------+        Policy Prefix.........:        PAP
| Insured:                        |        Policy Number........: 1857700495
|       JHM ENTERPRISES, INC.     |        Policy Period........: 04/18/1995 to 04/18/1996
|       1200 VALLAMONT DRIVE, N.W. |
|                                 |        Endorsement Number...:    3
|       WILLIAMSPORT    PA 17701-0000 |    Endorsement Effective: 06/01/1995
+---------------------------------+
```

*********************************************    DRIVER(S) ADDED    *********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0037

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| D...ID L HERB, SR | 4/19/53 | 16842177 | PA | | Y |

*********************************************    DRIVER(S) ADDED    *********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0038

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RALPH JONES | 5/24/64 | 20452332 | PA | | Y |

*********************************************    DRIVER(S) ADDED    *********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0039

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| JU..S KIRESKI | 1/15/49 | 15535045 | PA | | Y |

*********************************************    DRIVER(S) ADDED    *********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

RIVER ADDED    - SEQ # 0040

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RICHARD NICHOLS | 1/16/54 | 16394860 | PA | | Y |

*** CONTINUED ***

LINCOLN GENERAL INSURANCE COMP'
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    4

is endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
th, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=======================================================================================

```
Insured:
        JHM ENTERPRISES, INC.
        1200 VALLAMONT DRIVE, N.W.

        WILLIAMSPORT        PA 17701-0000
```

Policy Prefix........:      PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:     3
Endorsement Effective: 06/01/1995

*************************************** DRIVER(S) ADDED ***************************************

RM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

IVER ADDED   - SEQ # 0041

|  |  |  |  |  |
|---|---|---|---|---|
| ER NAME | BIRTH DATE OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
| D. .D REED | 10/08/60  19107192 | PA |  | Y |

*************************************** DRIVER(S) ADDED ***************************************

RM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

IVER ADDED   - SEQ # 0042

|  |  |  |  |  |
|---|---|---|---|---|
| DRIVER NAME | BIRTH DATE OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
| KEITH SUMMER | 11/22/55  16983979 | PA |  | Y |

:T #    5  DELETED ***************************************************************

| r Trade Name Body Type  Serial Number | Bus Use | GVN GCH | ----------- Codes ----------- Dis Class  Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|
| 7 FRUEHAUF    TRAILER    UNEF290102 | C | 50000 | IN 67521 380 PA   81 | 10 WILLIAMSPORT |  |
| - Liability Coverage    DELETED  from UNIT # | 5 |  |  | ANNUAL $    122  . . . . | 107- |
| ysical Damage Coverage    DELETED  from UNIT # | 5 |  |  | ANNUAL $    207  . . . . | 182- |
| IE FOLLOWING LOSS PAYEE    REMOVED FROM UNIT #    5 |  |  |  |  |  |

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT        PA    17701-0000



LINCOLN GENERAL INSURANCE COMP
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    5

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

====================================================================================================

```
Insured:
        JHM ENTERPRISES, INC.
        1200 VALLAMONT DRIVE, N.W.

        WILLIAMSPORT        PA 17701-0000
```

Policy Prefix........:      PAP
Policy Number.......: 1857700495
Policy Period.......: 04/18/1995 to 04/18/1996

Endorsement Number...:    3
Endorsement Effective: 06/01/1995

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION | |
|---|---|---|---|
| ADDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS | |
| ADDED | L 1025 02 92 | DRIVER SCHEDULE | |
| REPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK | |

ENDORSEMENT TOTAL    289-

```
Agent:                                    5520/0000
        SUSQUEHANNA INS. ASSOC., INC.
        6 E. 18TH STREET

        SELINSGROVE        PA 17870
```

Authorized Representative

Endorsement Issued:  8/01/95

LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

8/01/95

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT          PA      17701

Re: Policy Number: PAP 1857700495

Insured......:  JHM ENTERPRISES, INC.

Gentlemen:

Please be advised that the unit described below has been DELETED from the subject policy effective 06/01/1995:

| Unit# | Mdl Yr | ---Make--- | ---Type--- | ------Serial Number----- |
|-------|--------|-----------|-----------|--------------------------|
| 5     | 1967   | FRUEHAUF  | TRAILER   | UNEF290102               |

Therefore, your interest is NULL and VOID effective 06/01/1995.

Sincerely

LINCOLN GENERAL INSURANCE COMPANY

UNDERWRITING DEPARTMENT

cc:   SUSQUEHANNA INS. ASSOC., INC.

Insureds Name: JIM ENTERPRISES, INC.



**SCHEDULE OF COVERED AUTO CHANGE.**                                    Page:     1
(Per Endorsement No:      3 )

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

--------------------------------------------------------------------------------

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|-----|------|------------|-----------|---------------|---------|---------|-----|-------|-----|-----|------|------|------|---------------|
| 5 | 1967 | FRUEHAUF | TRAILER | -S UNEF290102 | C | 50000 | TN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT |

olicy # PAP 185770 0495  Insureds Name: ● ENTERPRISES, INC.                    ● Page:    2

---- COVERAGE and PREMIUM BREAKDOWN
(Per Endorsement No:     3 )

| | | UNITS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ompany Unit Number | 5 | | | | | | | | | |
| nsureds Unit Number | 7 | | | | | | | | | |
| | DELETED | | | | | | | | | |
| IABILITY | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 107- | | | | | | | | |
| Personl Injury Protection | COVERAGE | | | | | | | | | |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | | | | | | | | |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | | | | | | | | |
| L    LITY TOTAL -----> | | 107- | | | | | | | | |

| HYSICAL DAMAGE | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 25,000 | | | | | | | | | |
| Estimated Value | 4,000 | | | | | | | | | |
| Depreciated Value | 6,371 | | | | | | | | | |
| Dumping Code | N | | | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y    00-00 | | | | | | | | | |
| Owned/Hired | OWNED | | | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
|   (prem. included in comp) | | | | | | | | | | |
| | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 65- | | | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 117- | | | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 182- | | | | | | | | |

| Premium to Value % | 5.18 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 289- | | | | | | | | |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT     -> | | | | | | | | | | |

1063 03 93

HOME OFFICE COPY



LINCOLN GENERAL INSURANCE COMPA?
3350 WHITEFORD ROAD
YORK, PA   17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==========================================================================================

```
| Insured:                                          |
|         JHM ENTERPRISES, INC.                     |
|         1200 VALLAMONT DRIVE, N.W.                |
|                                                   |
|         WILLIAMSPORT        PA 17701-0000         |
```

Policy Prefix.........:      PAP
Policy Number.........: 1857700495
Policy Period.........: 04/18/1995 to 04/18/1996

Endorsement Number...:    4
Endorsement Effective: 07/10/1995

IT #    6  CHANGED  ***********************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|
| 6° 'EHAUF    TRAILER   UNJ325401 | C | 50000 | IN 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

    PAL - Liability Coverage    DELETED  from UNIT #    6                ANNUAL $     122  . . . .       94-
    Physical Damage Coverage    CHANGED  on   UNIT #    6                ANNUAL $      73  . . . .      115-

IT #    8  CHANGED  ***********************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|
| 74 TRLMOBILE  TRAILER   K41316 | C | 50000 | IN 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

    PAL - Liability Coverage    DELETED  from UNIT #    8                ANNUAL $     122  . . . .       94-
    Physical Damage Coverage    CHANGED  on   UNIT #    8                ANNUAL $      93  . . . .      128-

IT #    9  CHANGED  ***********************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|
| 74 TRLMOBILE  TRAILER   K41317 | C | 50000 | IN 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

    PAL - Liability Coverage    DELETED  from UNIT #    9                ANNUAL $     122  . . . .       94-
    Physical Damage Coverage    CHANGED  on   UNIT #    9                ANNUAL $      93  . . . .      128-

IT    10  CHANGED  ***********************************************************************

| ar Trade Name Body Type  Serial Number | Bus Use | GVW GCW | Dis Class | Pc St Cnty City Terr | Garaging City | Pro-Rated Premium |
|---|---|---|---|---|---|---|
| 74 TRLMOBILE  TRAILER   K41318 | C | 50000 | IN 67521 | 380 PA    81 | 10 WILLIAMSPORT | |

    PAL - Liability Coverage    DELETED  from UNIT #    10               ANNUAL $     122  . . . .       94-
    Physical Damage Coverage    CHANGED  on   UNIT #    10               ANNUAL $      93  . . . .      128-

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMP''
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    2

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent he
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein

===============================================================================

```
+-------------------------------------------+     Policy Prefix........:        PAP
| Insured:                                  |     Policy Number........: 1857700495
|          JHM ENTERPRISES, INC.            |     Policy Period........: 04/18/1995 to 04/18/1996
|          1200 VALLAMONT DRIVE, N.W.       |
|                                           |     Endorsement Number...:    4
|          WILLIAMSPORT       PA 17701-0000 |     Endorsement Effective: 07/10/1995
+-------------------------------------------+
```

UNIT #    14   DELETED   ***********************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|----------------------|---------------|---------|---------|-----|-------|-----|-----|------|------|------|---------------|------------------|
| 1986 | FREIGHTLIN TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN | 50521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

|   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|
| L - Liability Coverage | DELETED | from UNIT # | 14 | | ANNUAL $ | 3915 | . . . . | 3026 |
| .hysical Damage Coverage | DELETED | from UNIT # | 14 | | ANNUAL $ | 1171 | . . . . | 905 |

THE FOLLOWING LOSS PAYEE   REMOVED FROM UNIT #   14

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT       PA    17701-0000

UNIT #    18   ADDED   ***********************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|----------------------|---------------|---------|---------|-----|-------|-----|-----|------|------|------|---------------|------------------|
| 1980 | FRUEHAUF   TRAILER | OMT004309 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

|   |   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|---|
| PAL - Liability Coverage | ADDED | to | UNIT # | 18 | | ANNUAL $ | 122 | . . . . | 94 |
| Physical Damage Coverage | ADDED | to | UNIT # | 18 | | ANNUAL $ | 1039 | . . . . | 803 |

UNIT #    19   ADDED   ***********************************************************************

| Year | Trade Name Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City | Pro-Rate Premium |
|------|----------------------|---------------|---------|---------|-----|-------|-----|-----|------|------|------|---------------|------------------|
| 1980 | GREAT DANE TRAILER | B17876 | C | 50000 | IN | 67521 | 380 | PA | | 81 | 10 | WILLIAMSPORT | |

|   |   |   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|---|---|
| PAL - Liability Coverage | ADDED | to | UNIT # | 19 | | ANNUAL $ | 122 | . . . . | 94 |
| Physical Damage Coverage | ADDED | to | UNIT # | 19 | | ANNUAL $ | 712 | . . . . | 550 |

*** CONTINUED ***



LINCOLN GENERAL INSURANCE COMPA'
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    3

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

===============================================================================================================

| Insured: | |
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| HILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    4
Endorsement Effective: 07/10/1995

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| DDED | L 1063 03 93 | SCHEDULE OF COVERED AUTOS |
| EPLACE | CA9944 12 93A | LOSS PAYABLE CLAUSE FOR: JERSEY SHORE STATE BANK |

ENDORSEMENT TOTAL    3,265-

| Agent: | 5520/0000 |
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  8/01/95

LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

8/01/95

JERSEY SHORE STATE BANK
300 MARKET STREET

WILLIAMSPORT              PA        17701

Re: Policy Number: PAP 1857700495
Insured......:    JHM ENTERPRISES, INC.

Gentlemen:

Please be advised that the unit described below has been DELETED
from the subject policy effective 07/10/1995:

| Unit# | Mdl Yr | ---Make--- | ---Type--- | ------Serial Number----- |
|-------|--------|------------|------------|--------------------------|
| 14    | 1986   | FREIGHTLIN | TRACTOR    | 1FUPYDYB9GP287269         |

Therefore, your interest is NULL and VOID effective 07/10/1995.

Sincerely

LINCOLN GENERAL INSURANCE COMPANY

UNDERWRITING DEPARTMENT

cc:    SUSQUEHANNA INS. ASSOC., INC.

Insureds Name: JIM ENTERPRISES, INC. 

**SCHEDULE OF COVERED AUTO CHANGE**                                            Page:      1
(Per Endorsement No:      4 )

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO  A N Y  <u>ATTACHED</u>
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

---

| IT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|-----|------|-----------|-----------|---------------|---------|---------|-----|-------|----|----|------|------|------|---------------|
| 6 | 1969 | FRUEHAUF | TRAILER | -S UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER | -S K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER | -S K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER | -S K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYB9GP287269 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 18 | 1980 | FRUEHAUF | TRAILER | -S OMT004309 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |
| 19 | 1980 | GREAT DANE | TRAILER | -S B17876 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 WILLIAMSPORT |

Policy # PAP J85770 0495  Insureds Name ● M ENTERPRISES, INC.                                    Page:   2

---- **COVERAGE and PREMIUM BREAKDOWN**
(Per Endorsement No:    4 )

| | UNITS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number | 6 | | 8 | | 9 | | 10 | | 14 | |
| Insureds Unit Number | 8 | | 10 | | 11 | | 12 | | DELETED | |
| | CHANGE | | CHANGE | | CHANGE | | CHANGE | | | |
| **LIABILITY** | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| Liability | UNHOOKED | 94- | UNHOOKED | 94- | UNHOOKED | 94- | UNHOOKED | 94- | 750,000 | 2968- |
| Personl Injury Protection | COVERAGE | | COVERAGE | | COVERAGE | | COVERAGE | | 5,000 | 44- |
| Additional Benefits | | | | | | | | | | |
|   Medical Expense | | | | | | | | | | |
|   Work Loss | | | | | | | | | 5,000 | 7- |
|   Accidental Death | | | | | | | | | | |
|   Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | 35,000 | 5- |
| UNDERinsured Motorist | | | | | | | | | 35,000 | 2- |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Zor- Group/Trailer Discnt | 1   N | | 1   N | | 1   N | | 1   N | | 1   N | |
| L      LITY TOTAL -----> | | 94- | | 94- | | 94- | | 94- | | 3,026- |

| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 20,000 | | 25,000 | | 25,000 | | 25,000 | | 55,000 | |
| Estimated Value | 4,000 | | 5,000 | | 5,000 | | 5,000 | | 19,000 | |
| Depreciated Value | 5,099 | | 6,374 | | 6,374 | | 6,374 | | 21,275 | |
| Dumping Code | N | | N | | N | | N | | N | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | 65 | | 65 | | 63 | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | | Y  00-00 | |
| Owned/Hired | OWNED | | OWNED | | OWNED | | OWNED | | OWNED | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | | | | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
|   (comm. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | 310- |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | | 115- | | 128- | | 128- | | 128- | 1,000 | 595- |
| PHYSICAL DAMAGE TOTAL -> | | 115- | | 128- | | 128- | | 128- | | 905- |

| Premium to Value % | 1.83 | | 1.86 | | 1.86 | | 1.86 | | 6.16 | |
|---|---|---|---|---|---|---|---|---|---|---|
| PREMIUM TOTAL per UNIT -> | | 209- | | 222- | | 222- | | 222- | | 3931- |

| State Surchg/Tax - Code | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Co.   Surchg/Tax - Code | | | | | | | | | | |
| City  Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT       -> | | | | | | | | | | |

Policy # PAP 185770 0495  Insureds Name ● M ENTERPRISES, INC. ●                               Page:    3

---- **COVERAGE and PREMIUM BREAKDOWN**
(Per Endorsement No:    4 )

| | 18 ADD | | 19 ADD | | CHANGE | | CHANGE | | DELETED | |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Unit Number / Insureds Unit Number | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium | Rating | Premium |
| **LIABILITY** | | | | | | | | | | |
| Liability | UNHOOKED | 94 | UNHOOKED | 94 | | | | | | |
| Personl Injury Protection | COVERAGE | | COVERAGE | | | | | | | |
| Additional Benefits | | | | | | | | | | |
| Medical Expense | | | | | | | | | | |
| Work Loss | | | | | | | | | | |
| Accidental Death | | | | | | | | | | |
| Funeral Expense | | | | | | | | | | |
| Combined First Party | | | | | | | | | | |
| Catastrophic Medical | | | | | | | | | | |
| Medical Payments | | | | | | | | | | |
| Punitive Damage | | | | | | | | | | |
| UNinsured Motorist | | | | | | | | | | |
| UNDERinsured Motorist | | | | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | | | | | | |
| Property Dmg Deductible | | | | | | | | | | |
| PD Deductible Factor | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Zone Group/Trailer Discnt | 1    N | | 1    N | | | | | | | |
| L    LITY TOTAL -----> | | 94 | | 94 | | | | | | |

| **PHYSICAL DAMAGE** | Rating | | Rating | | Rating | | Rating | | Rating | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cost New | 16,000 | | 11,000 | | | | | | | |
| Estimated Value | 15,000 | | 9,000 | | | | | | | |
| Depreciated Value | 4,079 | | 2,805 | | | | | | | |
| Dumping Code | N | | N | | | | | | | |
| Dumping Deductible | | | | | | | | | | |
| Seating Capacity | | | | | | | | | | |
| Rating Code/Line Code | 65 | | 65 | | | | | | | |
| Rating Factor % | | | | | | | | | | |
| Stated Amount/Zones | Y   00-00 | | Y   00-00 | | | | | | | |
| Owned/Hired | OWNED | | OWNED | | | | | | | |
| | Amount | | Amount | | Amount | | Amount | | Amount | |
| Loss of Use | 3,000 | | 3,000 | | | | | | | |
| Rental Reimbursement | | | | | | | | | | |
| Tarps/Chains (cost new) | | | | | | | | | | |
| CB/Telephone Value | | | | | | | | | | |
| (recm. included in comp) | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium | Deductible | Premium |
| Comprehensive | 1,000 | 264 | 1,000 | 163 | | | | | | |
| Specified Causes of Loss | | | | | | | | | | |
| Collision | 1,000 | 539 | 1,000 | 387 | | | | | | |
| PHYSICAL DAMAGE TOTAL -> | | 803 | | 550 | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Premium to Value % | 6.93 | | 7.91 | | | | | | | |
| PREMIUM TOTAL per UNIT -> | | 897 | | 644 | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| State Surchg/Tax - Code | | | | | | | | | | |
| Co.    Surchg/Tax - Code | | | | | | | | | | |
| City   Surchg/Tax - Code | | | | | | | | | | |
| TOTAL per UNIT    -> | | | | | | | | | | |

L 1063 03 93



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

==================================================================================================

```
Insured:
         JIM ENTERPRISES, INC.
         1200 VALLAMONT DRIVE, N.W.

         WILLIAMSPORT        PA 17701-0000
```

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    5
Endorsement Effective: 08/10/1995


**************************************************** DRIVER(S) DELETED ****************************************************

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0032

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| ROBERT BROWN | 12/20/32 | RD309311 | OH | | N |


ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

| ENDORSEMENT TOTAL | 0 |
|---|---|

```
Agent:                          5520/0000
        SUSQUEHANNA INS. ASSOC., INC.
        6 E. 18TH STREET

        SELINSGROVE        PA 17870
```

Authorized Representative

Endorsement Issued:  8/22/95

SYOUNG



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

=============================================================================================================

| Insured: | |
|---|---|
| | JHM ENTERPRISES, INC. |
| | 1200 VALLAMONT DRIVE, N.W. |
| | |
| | WILLIAMSPORT        PA 17701-0000 |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    6
Endorsement Effective: 09/19/1995

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* DRIVER(S) DELETED \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0009

| DRIVER NAME | BIRTH DATE OPERATOR NUMBER | STATE SOC.SEC.NO. MVR |
|---|---|---|
| RICHARD A FREDERICKS | 3/22/31  06835773 | PA                  R |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION | |
|---|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE | |

| ENDORSEMENT TOTAL | 0 |
|---|---|

| Agent: | | 5520/0000 |
|---|---|---|
| | SUSQUEHANNA INS. ASSOC., INC. | |
| | 6 E. 18TH STREET | |
| | | |
| | SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued:  9/27/95

SYOUNG



LINCOLN GENERAL INSURANCE COMPANY
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

This endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent her
with, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

===============================================================================================================

| Insured: | |
|---|---|
| JHM ENTERPRISES, INC. | |
| 1200 VALLAMONT DRIVE, N.W. | |
| WILLIAMSPORT        PA 17701-0000 | |

Policy Prefix........:        PAP
Policy Number........: 1857700495
Policy Period........: 04/18/1995 to 04/18/1996

Endorsement Number...:    7
Endorsement Effective: 09/19/1995

*************************************************  DRIVER(S) DELETED  *************************************************

FORM L1025 IS REPLACED ON THE POLICY BECAUSE OF THE DELETION OF ACTIVE DRIVER:

DRIVER DELETED - SEQ # 0034

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RICHARD E FREDERICK | 12/16/53 | 16331001 | PA | | R |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

| ENDORSEMENT TOTAL | 0 |
|---|---|

| Agent: | 5520/0000 |
|---|---|
| SUSQUEHANNA INS. ASSOC., INC. | |
| 6 E. 18TH STREET | |
| SELINSGROVE        PA 17870 | |

Authorized Representative

Endorsement Issued: 10/02/95

SYOUNG

 

LINCOLN GENERAL INSURANCE COMPAN
3350 WHITEFORD ROAD
YORK, PA    17402

GENERAL CHANGE ENDORSEMENT

PAGE:    1

his endorsement is subject to the declarations, conditions, and other terms of the policy which are not inconsistent here
ith, and when countersigned by an authorized representative of the company, forms a part of the policy described herein.

================================================================================================

```
Insured:
        JHM ENTERPRISES, INC.
        1200 VALLAMONT DRIVE, N.W.

        WILLIAMSPORT        PA 17701-0000
```

Policy Prefix........:      PAP
Policy Number.......: 1857700495
Policy Period.......: 04/18/1995 to 04/18/1996

Endorsement Number...:    8
Endorsement Effective: 09/19/1995

*********************************************** DRIVER(S) ADDED ***********************************************

ORM L1025 IS ADDED OR REPLACED IN THE POLICY TO INCLUDE THE FOLLOWING DRIVERS:

P⁻⁻R ADDED   - SEQ # 0043

| DRIVER NAME | BIRTH DATE | OPERATOR NUMBER | STATE | SOC.SEC.NO. | MVR |
|---|---|---|---|---|---|
| RICHARD A FREDERICKS | 3/22/31 | 06835773 | PA | | N |

ENDORSEMENT SCHEDULE CHANGES

| | NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|---|
| ADDED | L 1025 02 92 | DRIVER SCHEDULE |

| ENDORSEMENT TOTAL | 0 |
|---|---|

```
Agent:                              5520/0000
        SUSQUEHANNA INS. ASSOC., INC.
        6 E. 18TH STREET

        SELINSGROVE        PA 17870
```

Authorized Representative

Endorsement Issued: 10/12/95

DHUMMERT

Attached to and forming part  icy Number  PAP 1857700495    EFF        04/18/1995  TO  04/18/1996
ISSUED TO:  JHM ENTERPRISES, I.C.

ENDORSEMENT SCHEDULE

| NUMBER | FORM / ENDORSEMENT DESCRIPTION |
|---|---|
| PAP 0002 08 93 | DECLARATION PAGE |
| L    1063 03 93 | SCHEDULE OF COVERED AUTOS |
| L    1025 02 92 | DRIVER SCHEDULE |
| CA 99 28 06 92 | STATED AMOUNT INSURANCE |
| CA00121293A | TRUCKERS COVERAGE FORM |
| L    1091 05 93 | LOSS OF USE COVERAGE |
| OMB 3120 00 86 | ENDMT FOR MOTOR CARRIER ... UNDER SECTION 10927, TITLE 49 ... |
| IRB 3538A 0492 | FORM F – UNIFORM MOTOR CARRIER ... INSURANCE ENDORSEMENT |
| OMB 2125 00 74 | ENDMT FOR MOTOR CARRIER ... UNDER SECTION 29 AND 30 ... ACT OF 1980 |
| CA 22 37 12 92 | PENNSYLVANIA BASIC FIRST PARTY BENEFIT |
| CA 22 38 07 90 | PENNSYLVANIA ADDED AND COMBINED FIRST PARTY BENEFITS ENDORSEMENT |
| CA 21 92 07 90 | PENNSYLVANIA UNINSURED   MOTORIST COVERAGE – NOT STACKED |
| CA 21 93 07 90 | PENNSYLVANIA UNDERINSURED MOTORIST COVERAGE – NOT STACKED |
| L    1003 06 92 | PUNITIVE, EXEMPLARY AND EXTRACONTRACTUAL DAMAGE EXCLUSION |
| CA 23 05 01 87 | WRONG DELIVERY OF LIQUID PRODUCTS |
| IL 00 21 11 85 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| L    1087 06 92 | CHANGES – OTHER INSURANCE HIRED AUTO PHYSICAL DAMAGE COVERAGE |
| IL 00 17 11 85 | COMMON POLICY CONDITIONS |
| IL 02 46 06 89 | PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL |
| CA 01 80 07 90 | PENNSYLVANIA CHANGES |
| IL 09 10 01 81 | PENNSYLVANIA NOTICE |
| IM 10 73 05 91 | MOTOR TRUCK CARGO INSURANCE/TRANSIT AND LOCATION COVERAGE (BROAD FORM) |
| IM 100        84 | AGREEMENT – INLAND MARINE GENERAL TERMS |
| CL 100        84 | COMMON POLICY CONDITIONS |
| L    7020 02 92 | NOTICE OF RIGHT TO INSPECTION |
| L    1064 07 91 | ENDORSEMENT SCHEDULE |

*Exh B*

# Northland Insurance Companies

**TRUCKERS COVERAGE PART DECLARATIONS**

☐ Check here if PART 2 is attached

Coverage is provided in Company checked

☐ NORTHLAND INSURANCE COMPANY
☐ NORTHLAND CASUALTY COMPANY
☐ NORTHFIELD INSURANCE COMPANY

*9-25-9*

St. Paul, MN 55120
STOCK COMPANIES

## ITEM ONE — NAMED INSURED AND ADDRESS

Woolever Brothers Transportation, Inc.

P.O. Box 156
Montoursville, PA 17754

*37/053*

Garaging address if different:
160 Jordon Ave., Montoursville, PA

*Acct TF209207   M/901*

*B03-4*

**Policy Period**
From 9/01/95
To 9/01/96
12:01 A.M. Standard Time at Named "Insured's" Garaging address

Business of Named "Insured": Truckmen

Commodities hauled: Building Materials, Steel, Railroad Ties

☐ Individual
☐ Partnership
X Corporation
☐ Joint Venture
☐ Other

*(17)*

POLICY NO.
T F209197

PREVIOUS POLICY NO.
New

AGENCY NO.
308499 *308000*

BRANCH | SOURCE

*F2 06*
*F3 09*
*F4 10*

## ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as Covered "Autos." "Autos" are shown as Covered "Autos" for a particular coverage by the entry of one or more of the Symbols listed in Section 1A of the Truckers Coverage Form next to the name of the coverage.

| | Covered "Autos" | COVERAGES | LIMITS OF LIABILITY | | | | PREMIUM |
|---|---|---|---|---|---|---|---|
| | 43 | (1) BODILY INJURY-BI | $ | each person | $ | each "accident" | $ |
| | | (2) PROPERTY DAMAGE-PD | $ | | each "accident" | | $ |
| | | COMBINED (1) AND (2)-CSL | $ 2,000,000 | | each "accident" | | $ |
| | 43 | PERSONAL INJURY PROTECTION-PIP (or equivalent No-Fault coverage) | Separately Stated in each PIP endorsement | | | | $ |
| | | ADDED PIP (or equivalent No-Fault coverage) | Separately Stated in each added PIP endorsement | | | | $ |
| | | PROPERTY PROTECTION-PPI (Michigan Only) | Separately Stated in PPI endorsement | | | | $ |
| | | "AUTO" MEDICAL PAYMENTS | $ | | | | $ |
| | 43 | UNINSURED MOTORISTS-UM | BI | $ 35,000 | each person | $ 35,000 | each "accident" | $ |
| | | | PD | $ | | each "accident" | | $ |
| | | | CSL | $ | | each "accident" | | $ |
| | 43 | UNDERINSURED MOTORISTS-UIM | BI | $ 35,000 | each person | $ 35,000 | each "accident" | $ |
| | | | PD | $ | | each "accident" | | $ |
| | | | CSL | $ | | each "accident" | | $ |
| | | CARGO | $ | | each covered "auto", less the deductible | | $ |
| | | COMPREHENSIVE | | | | | $ |
| | | SPECIFIED PERILS | Stated Amount, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible. | | | | $ |
| | | COLLISION | | | | | $ |

ADDITIONAL PREMIUM PER ENDORSEMENTS: | $

FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION:
T-001, T001, T217, T237, CA0012, CA2237, CA0180, CA2192, CA2193
*N2292   N2350, N2037   N2054*

**ESTIMATED TOTAL PREMIUM**
(Refer to Section 5B of the Truckers Coverage Form for explanation)
$ SEE ITEM TEN

## ITEM THREE — HIRED AUTO LIABILITY INSURANCE

ESTIMATED COST OF HIRE $

| | | | | | | | Cost of hire means the total cost you incur for the hire of "autos" you don't own. (See covered "auto" symbol 47.) |
|---|---|---|---|---|---|---|---|
| Rate per $100 Cost of Hire | $ | BI | Minimum Premium | $ | BI | Advance Premium (incl. in ITEM TWO LIABILITY) | $ | BI |
| | $ | PD | | $ | PD | | $ | PD |
| | $ | CSL | | $ | CSL | | $ | CSL |

## ITEM FOUR — SCHEDULE OF COVERED AUTOS YOU OWN

| | Year, Model, Trade Name, Body Type | Identification Number | Loss Payee |
|---|---|---|---|
| 1 | See Attached Schedule - Form #T-001 | | |
| 2 | | | |

| | LIABILITY PREMIUMS | | | | | | STATED AMOUNT | PHYSICAL DAMAGE PREMIUMS | | | | CARGO | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BI/CSL | PD | PIP | PPI | UM | OTHER | | Comp S.P. | DED. | COLL | DED. | RATE | PREM. |
| 1 | See #T-001 | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | |

## ITEM FIVE — NAMED LESSEE(S) AND ADDRESS

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORMS(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1990

**MEMORANDUM OF INSURANCE**

D-01 (7/91)

TYPIST: SET TYPEWRITER TABS AS SHOWN


**Northland**
Insurance Companies

SUPPLEMENTARY TRUCKERS COVERAGE
PART DECLARATIONS
PART 2

POLICY NO
T

## EM SIX – ADDITIONAL SYMBOLS (Refer to Truckers Coverage Form – Section 1A for symbols 41 – 50.)

Liab 64762 .9830
PIP     955 .0145
DM      126 .0019
UIM      42 .0006

65885

## EM SEVEN – SCHEDULE FOR NON-OWNERSHIP LIABILITY

| Estimated Number of Employees | ADVANCE PREMIUM (This item is included in ITEM TWO LIABILITY) | Rating B... |
|---|---|---|
| | | BODILY INJU... |
| | | PROPERTY [ |
| | | COMBINED |

## EM EIGHT – SCHEDULE OF HIRED COVERED AUTO COVERAGE

### PHYSICAL DAMAGE INSURANCE

| COVERAGES | LIMIT OF LIABILITY | RATE | | |
|---|---|---|---|---|
| O' REHENSIVE | $_____ . Actual Cash | $ | | |
| PECIFIED PERILS | Value or Cost of Repairs, whichever is less minus the deductible | $ | $ | $ |
| OLLISION | | $ | $ | $ |

YSICAL DAMAGE INSURANCE for covered "autos" you hire or borrow is excess unless
licated below by an "X".
If this box is checked, PHYSICAL DAMAGE COVERAGE applies on a direct primary
basis and for purposes of the condition entitled OTHER INSURANCE, any covered
"auto" you hire or borrow is deemed to be a covered "auto" you own.

TOTAL: $              $

Liab 64762
PIP 955
009 126
109 42

## EM NINE – TRAILER INTERCHANGE INSURANCE

| COVERAGES | LIMIT OF LIABILITY | RATE | MINIMUM PREMIU |
|---|---|---|---|
| OMPREHENSIVE | $_____ , Actual Cash | $ | $ |
| PECIFIED PERILS | Value or Cost of Repairs, whichever is less minus the deductible | $ | $ |
| OLLISION | | $ | $ |

TOTAL: $

## EM TEN – MONTHLY REPORTING POLICIES

| COVERAGES | Rating Basis | ESTIMATED ANNUAL PREMIUMS | | | |
|---|---|---|---|---|---|
| | ☐ Gross Receipts  ☒ Mileage | Estimated Annual | Minimum Annual | Minimum Monthly | |
| | ☐ Value of equipment | | | | |
| | ☐ Rate per owner-operator | | | | |
| ability, Basic PIP, Basic | 3.66 per 100 miles per | $ 65885 | 59297 | 4914 | |
| /UIM | month | $ | | | |
| | | $ | | | |
| rgo | .194 per 100 miles per | $ 3492 | 3143 | 262 | |
| | month | $ | | | |
| | | $ | | | |

DEPOSIT PREMIUM
9344.00
$ 8000.00 letter of credit
17344.

MINIMUM PREMIUM

$_____

☒ Monthly
☒ Annually

timated annual gross receipts $_____
mileage                       1,800,000
value of equipment $_____
number of owner-operators _____

$ 69,377.    TOTAL ESTIMATED ANNUAL PREMIUM

For physical damage coverage the
deductibles are:

$_____ Comprehensive
$_____ Specified Perils
$_____ Collision

e separate endorsements for reporting conditions and definitions.

 **Northland Insurance Companies**



Policy No.:

Issued to:

## SCHEDULE OF AUTOMOBILES
### (forming part of DECLARATIONS)

### ITEM FOUR SUPPLEMENT

| NO. | YEAR MODEL, TRADE NAME, BODY TYPE | ID NUMBER | LOSS PAYEE — LP | ADDITIONAL INSURED — AI |
|-----|-----------------------------------|-----------|-----------------|--------------------------|
| 1 | 1983 Mack Tractor | 084695 | | |
| 2 | 1978 International Tractor | SH9464PA | | |
| 3 | 1985 Freightliner Tractor | P270395 | | |
| 4 | 1989 Freightliner Tractor | 370461 | | |
| 5 | 1990 Freightliner Tractor | 389238 | | |
| 6 | 1991 White Tractor | 637664 | | |
| 7 | 1984 Peterbilt Tractor | 171623 | | |
| 8 | 1982 Freightliner Tractor | 206459 | | |
| 9 | 1987 Freightliner Tractor | 303672 | | |
| 10 | 1973 White Tractor | 073921 | | |
| 11 | 1978 Mack Tractor | T18760 | | |
| 12 | 1986 Freightliner Tractor | 291318 | | |
| 13 | 1988 White Tractor | 601032 | | |
| 14 | 1985 Freightliner Tractor | 256601 | | |
| 15 | 1988 International Tractor | 014548 | | |
| 16 | 1977 Mack Tractor | T13891 | | |
| 17 | 1985 International Tractor | CA12452 | | |
| 18 | 1972 Mack Tractor | T29173 | | |

| NO. | LIABILITY PREMIUMS | | | | | | | STATED AMOUNT | PHYSICAL DAMAGE PREMIUMS | | | | | CARGO | | |
|-----|-----|-----|-----|-----|-----|-----|-------|---------------|-----------------|------|-------|------|------|------|------|------|
| | CSL | BI | PD | PIP | MED PAY | UM | OTHER | | ☐ COMP ☐ S.P. | DED. | COLL | DED. | DED. | RATE | PREM. |
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |

COMMERCIAL AUTO
CA 00 12 12 93

# TRUCKERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI - DEFINITIONS.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

| SYMBOL | DESCRIPTION |
|---|---|

**41** = ANY "AUTOS".

**42** = OWNED "AUTOS" ONLY. Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins.

**43** = OWNED COMMERCIAL "AUTOS" ONLY. Only those trucks, tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins.

**44** = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the No-Fault law in the state where they are licensed or principally garaged.

**45** = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**46** = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

**47** = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type auto" you lease, hire, rent or borrow from any member of your household, any of your employees, partners or agents or members of their households.

**48** = "TRAILERS" IN YOUR POSSESSION UNDER A WRITTEN TRAILER OR EQUIPMENT INTERCHANGE AGREEMENT. Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession.

**49** = YOUR "TRAILERS" IN THE POSSESSION OF ANYONE ELSE UNDER A WRITTEN TRAILER INTERCHANGE AGREEMENT. Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol "49" is entered next to a Physical Damage Coverage in ITEM TWO of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage.

**50** = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger type autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

 Copyright, Insurance Services Office, Inc., 1993

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1. If symbols 41, 42, 43, 44 or 45 are entered next to a coverage in **ITEM TWO** of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 46 is entered next to a coverage in **ITEM TWO** of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II - LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type auto".

   (2) Your employee or agent if the covered "auto" is a "private passenger type auto" and is owned by that employee or agent or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

   (5) A partner of yours for a covered "private passenger type auto" owned by him or her or a member of his or her household.

Copyright, Insurance Services Office, Inc., 1993, 1994

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:

(1) Is being used exclusively in your business as a "trucker"; and

(2) Is being used pursuant to operating rights granted to you by a public authority.

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

(1) Is being used exclusively in your business as a "trucker"; and

(2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

a. Any "trucker" or his or her agents or employees, other than you and your employees:

(1) If the "trucker" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

(2) If the "trucker" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and employees while the "autos" are being used exclusively in the "truckers" business and pursuant to operating rights granted to the "trucker" by a public authority.

b. Any rail, water or air carrier or its employees or agents, other than you and your employees, for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

(1) Is being transported by the carrier; or

(2) Is being loaded on or unloaded from any unit of transportation by the carrier.

## 2. COVERAGE EXTENSIONS

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

(2) Up to $250 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out-of-State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **EXCLUSIONS**

This insurance does not apply to any of the following:

1. **EXPECTED OR INTENDED INJURY**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **CONTRACTUAL**

   Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

   a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

   b. That the "insured" would have in the absence of the contract or agreement.

3. **WORKERS' COMPENSATION**

   Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. **EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

   "Bodily injury" to:

   a. An employee of the "insured" arising out of and in the course of employment by the "insured"; or

   b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

   This exclusion applies:

   (1) Whether the "insured" may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

5. **FELLOW EMPLOYEE**

   "Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

6. **CARE, CUSTODY OR CONTROL**

   "Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **HANDLING OF PROPERTY**

   "Bodily injury" or "property damage" resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **MOVEMENT OF PROPERTY BY MECHANICAL DEVICE**

   "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **OPERATIONS**

   "Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **COMPLETED OPERATIONS**

    "Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

    In the exclusion, your work means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

    Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

    Your work will be deemed completed at the earliest of the following times:

    (1) When all of the work called for in your contract has been completed.

    Copyright, Insurance Services Office, Inc., 1993    CA 00 12 12 93  ☐

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

## 11. POLLUTION

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

## 12. WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## 13. RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

# SECTION III - TRAILER INTERCHANGE COVERAGE

## COVERAGE

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

   a. **Comprehensive Coverage.** From any cause except:

      (1) The "trailer's" collision with another object; or

      (2) The "trailer's" overturn.

   b. **Specified Causes of Loss Coverage.** Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   c. **Collision Coverage.** Caused by:

      (1) The "trailer's" collision with another object; or

      (2) The "trailer's" overturn.

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **COVERAGE EXTENSIONS**

   Supplementary Payments. In addition to the Limit of Insurance, we will pay for you:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

   c. All reasonable expenses incurred at our request, including actual loss of earnings up to $100 a day because of time off from work.

   d. All costs taxed against the "insured" in any "suit" we defend.

   e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

## B. EXCLUSIONS

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard.**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War or Military Action.**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use.

3. **Other Exclusions.**

   We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

## C. LIMIT OF INSURANCE AND DEDUCTIBLE

The most we will pay for "loss" to any one "trailer" is the least of the following amounts minus any applicable deductible shown in the Declarations:

1. The actual cash value of the damaged or stolen property at the time of the "loss".

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

3. The Limit of Insurance shown in the Declarations.

Copyright, Insurance Services Office, Inc., 1993
CA 00 12 12 93

## SECTION IV - PHYSICAL DAMAGE COVERAGE

### A. COVERAGE

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. Comprehensive Coverage. From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. Specified Causes of Loss Coverage. Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. Collision Coverage. Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing - Private Passenger Autos.**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles.**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension. We will also pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

### B. EXCLUSIONS

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard.**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War or Military Action.**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

   a. Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

   b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for any contest or activity.

c. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Equipment designed or used for the detection or location of radar.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

f. Any accessories used with the electronic equipment described in paragraph e. above.

Exclusions 2.e. and 2.f. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

3. Other Exclusions

We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of "loss"; or

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

## D. DEDUCTIBLE

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION V - TRUCKERS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. LOSS CONDITIONS

### 1. APPRAISAL FOR PHYSICAL DAMAGE LOSS

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

### 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

    Copyright, Insurance Services Office, Inc., 1993    CA 00 12 12 93    □

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examination under oath at our request and give us a signed statement of your answers.

## 3. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

## 4. LOSS PAYMENT - PHYSICAL DAMAGE COVERAGES

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

## 5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. GENERAL CONDITIONS

### 1. BANKRUPTCY

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

### 2. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

### 3. LIBERALIZATION

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

## 4. NO BENEFIT TO BAILEE - PHYSICAL DAMAGE COVERAGES

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

## 5. OTHER INSURANCE - PRIMARY AND EXCESS INSURANCE PROVISIONS

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

d. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

e. Regardless of the provisions of paragraphs a., b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

## 6. PREMIUM AUDIT

a. The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

## 7. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

## 8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Copyright, Insurance Services Office, Inc., 1993

## SECTION VI - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand or order; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**F.** "Insured Contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

H. "Loss" means direct and accidental loss or damage.

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J. "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

K. "Property damage" means damage to or loss of use of tangible property.

Copyright, Insurance Services Office, Inc., 1993

CA 00 12 12 93   □



"Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

M. "Trailer" includes semitrailer or a dollie used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

N. "Trucker" means any person or organization engaged in the business of transporting property by "auto" for hire.

JU-17 18:11    WOOLEVER BROTHERS TRANSPORTATION    ☎ 717P368 47    P.01

Exh C

# AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

LEASE NUMBER 9801

This Agreement of Lease is made this 1ST day of MARCH 1990, by and between JHM ENTERPRISES  1200 VALLAMONT DR.  WILLIAMSPORT, PA. 17701
(Name)                                    (Address)
Owner and/or Lessor, and WOOLEVER BROS TRANS. INC. Lessee.

Motor Vehicle Equipment 260 JORDAN AVE. MONTOURSVILLE, PA.
Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|------|------|------|------------|---------------------|
| IGHTLINER #/2 | 79 | CABOVER | CA213HM160222 | AA95090  PA.  AA95089 |

**Term**

a. The term of this lease shall begin at 10 AM o'clock on 3 / 1 /90, and terminate at the end of thirty (30) days, or at 10 A.M. o'clock 4/ 1 /90, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation.

or

b. The term of this lease shall begin at _____ M. o'clock on ____/____/____ for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve.

or

c. The term of this lease shall begin at _____ M. o'clock on ____/____/____ for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 203 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on ____/____/____ for the purpose of transportation intrastate and/or interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

**Lease Rental**

For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following:  (CHECK ONE)

a. 80 % of Gross transportation charges for use of said equipment and services of driver or drivers.

b. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

JHM ENTERPRISES                                    Lessor
By: _____ Pres

WOOLEVER BROS TRANS. INC.                          Lessee
By: _____

**REPORT OF VEHICLE INSPECTION**

I hereby certify that on (DATE) 3/1/90 I carefully inspected the equipment described herein and that above is a true and correct report of the result of such inspection, and that Lessee's identification placards are displayed on each side of the power unit.

_____
Signature of person making inspection

Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective | | Defective | | Description of Defect | |
|------|:---:|:---:|:---:|:---:|:---:|:---:|
| | Tractor | Trailer | Tractor | Trailer | Tractor | Trailer |
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | | | | | | |
| Horn | | | | | | |
| Horn | | | | | | |
| Brake | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other items | | | | | | |
| requiring attention | | | | | | |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

WOOLEVER BROS.  TRANS.  INC.
Name of authorized carrier

**EXEMPT CARRIER REPORT**
I certify that the equipment leased hereunder meets the qualifications included in section 203(7) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity _____

PLAINTIFF'S EXHIBIT
Sinclair 1
1-4-97    JP

or co-partner of officer of authorized     carrier

Time and Date of De_____

ATE: _____ 3/1/90

Signed _____
                                    Owner or Agent

RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN

3EE acknowledges receipt of the above described equipment on

LESSOR acknowledges return of the above described equipment on

_____ MARCH 1 _____ 19 90

MONTOURSVILLE, PA.

Signed by _____ LESSEE

at _____ 19___

Signed by _____
                        LESSOR

---

| Post-it™ Fax Note | 7671 | Date 11/17/95 | # of pages ▶ 2 |
|---|---|---|---|
| To Gail | | From Hazel Sinclair | |
| Co./Dept. Northland Ins | | Co. Whatever Bus | |
| Phone # 800-328-5972 | | Phone # 717-368-8011 | |
| Fax # 612-688-4170 | | Fax # 717-368-8547 | |

---

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a.  Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax, wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b.  Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c.  Providing all necessary fuel, lubricants, and tires and tubes.

d.  Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the service of Lessee.

e.  Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f.  Licenses of any nature

g.  Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessee agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h.  Fines and penalties arising out of the use of said equipment.

i.  Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver so operating is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j.  Lessee shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k.  Lessor is responsible for any quantity weight on count of shipment signed for by the driver or drivers hereunder.

**Lessee is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the

days previous to hree employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, r _____ be deemed sufficient by Lessee, L _____ shall have authority to transfer cargo and effect deliver, _____ vehicle selected by Lessee. In such event, all expenses incurred with respect to such transfer and deliver, of cargo shall be reimbursed by Lessor to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $750.00 for loss or damage to cargo or equipment.

DEC-04 17:25   WOOLEVER BROTH TRANSPORTATION   ☎ 717 ● P8847   *Exh D*   P.01

533

LEASE NUMBER W-12

# AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this **16th** day of **November**

19PS, by and between **JHM Enterprises 1200 Vallamont Dr** (Name)
**(Williamsport Pa 17701**, Owner and/or Lessor, and **Woolever Bros Trans Inc** (Address) Lessee

Motor Vehicle Equipment **260 Jordan Ave Montoursville Pa 17754**
Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|------|------|------|-----------|---------------------|
| Freight Liner | 1979 | C-O | CA 213 HM 160222 | AA 95089 Pa |
| Budd | 1977 | Van | 141235E | XC 27304 Pa |

**Term**

a. The term of this lease shall begin at **4:00 P** M. o'clock on **11 :16 95**, and terminate at the end of thirty (30) days, or at **M. o'clock on 11 /17 /95**, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation;

*or*

b. The term of this lease shall begin at _____ M. o'clock on _/_ /_ for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve;

*or*

c. The term of this lease shall begin at _____ M. o'clock on _/_ /_ for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 203 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

*or*

d. The term of this lease shall begin at _____ M. o'clock on _/_ /_ for the purpose of transportation intrastate and/or interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

**Lease Rental**

For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following: (CHECK ONE)

A. **90** % of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

**JHM Enterprises** Lessor
By: *John Enwright Pres.*

**Woolever Bros Trans Inc** Lessee
By: *Harold Sinclair Sec Tres*

## REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) **11/16/95** I carefully inspected the equipment described herein and that his is a true and correct report of the result of such inspection, and that Lessee's identification placard was displayed on each side of the power unit.

*Harold Sinclair*
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Trailer |
|------|------|------|------|------|------|------|
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | | | | | | |
| Glass | | | | | | |
| Horn | OK | OK | | | | |
| Leaks | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other Items | | | | | | |
| Requiring attention | | | | | | |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

*Woolever Bros Trans Inc*

### EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(f) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

_Hazel J. Sinclair Sites_
Signature of authorized officer
or co-partner of officer of At___ed carrier

DATE: _11/16/95_

Time and Date of Pickup _____

Time and Dat_ Delivery _____

Signed _____
Owner or Agent

RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN

LESSEE acknowledges receipt of the above described equipment on _11/16_ _95_

at _____

Signed by _Hazel J. Sinclair_
LESSEE

LESSOR acknowledges return of the above described equipment on _11/17_ 19_93_

at _Ephrata, Pa._

Signed by _____
LESSOR

| Post-it' Fax Note | 7671 | Date 12/4 | # of pages ▶ 2 |
|---|---|---|---|

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to lay meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax; wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuel, lubricants, and tires and tubes

d. Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessor agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessee Is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the seven (7) consecutive days previous to first employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, or other causes deemed sufficient by Lessee, Lessee shall have authority to transfer cargo and effect delivery by vehicles selected by Lessee. In such events all expenses incured with respect to such transfer and delivery of cargo shall be reimbursed by Lessor to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $750.00 for loss or damage to cargo or equipment.

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 2nd day of August, 2001, a true and correct copy of the foregoing document was served by first-class, United States mail, postage prepaid, upon the following:

David Ira Rosenbaum, Esq.
Ruthrauff & Armbrust, P.C.
1601 Market Street, 16th Floor
Philadelphia, PA 19103

J.H.M. Enterprises, Inc.
1200 Walmont Drive, N.W.
Williamsport, PA 17701

Vernice Lee Statts
489 East Academy Street
Hughesville, PA 17737-1805


Jonathan H. Rudd