Law Clerk's Copy

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------x
NORTHLAND INSURANCE COMPANY,

        Plaintiff,

v.                              Index No. 01-CV-763

LINCOLN GENERAL INSURANCE COMPANY,
J.H.M. ENTERPRISES, INC., VERNICE L.
STATTS, ROBERT E. KRAPF and UTE L.
HETLAND CLARK, as Administrators of the
Estate of Karin Clifford and ROBERT E. KRAPF
and PATRICIA R. CLIFFORD, as Administrators
of the Estate of Robert R. Clifford, SHERRILL J.
MULLIGAN, DENIS A. MULLIGAN,

        Defendants.
------------------------------x

FILED
HARRISBURG, PA

MAY 22 2002

MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

BRIEF IN SUPPORT OF PLAINTIFF NORTHLAND INSURANCE COMPANY'S MOTION
FOR SUMMARY JUDGMENT

KLETT ROONEY LIEBER & SCHORLING
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507

SCHINDEL, FARMAN & LIPSIUS LLP
225 West 34th Street
New York, New York 10122
(212) 563-1710

## A. PRELIMINARY STATEMENT

This matter arises out of a motor vehicle accident on November 17, 1995 involving a 1979 Freightliner Tractor and two private passenger automobiles. The tractor was owned by J.H.M. Enterprises, Inc. ("J.H.M.") and insured by Lincoln General Insurance Company ("Lincoln General"). Northland Insurance Company ("Northland") insured Woolever Brothers Transportation, Inc. ("Woolever"). As a result of the accident, two lawsuits were brought against J.H.M, the driver and Woolever (the "Underlying Actions"). Lincoln National defended the driver of the tractor and J.H.M. in the Underlying Actions. Northland defended Woolever in the Underlying Actions. The Underlying Actions were settled in the summer of 2000. Remaining open, however, was the insurance coverage declaratory judgment action brought by Northland against Lincoln General.

The sole issue before this court in the instant motion whether Northland and Lincoln General reached a settlement of this declaratory judgment action. Northland will indisputably establish below that an oral agreement was reached between Traci Slane of Northland and Michael McGovern of Lincoln General in April 11, 2001 in which they mutually agreed that the declaratory judgment action would be discontinued, mutual releases would be exchanged, and each insurer would close their respective files.

## B. FACTS

This declaratory judgment action arises from an accident which occurred on November 17, 1995 involving a truck-tractor and two passenger vehicles, one operated by Robert Clifford and the other operated by Sherill Mulligan. The truck-tractor was owned by owned by Jay McCormick of J.H.M. Enterprises, Inc. ("J.H.M."). Robert and Karin Clifford were killed in the accident and Sherrill Mulligan suffered personal injuries as the result of the accident.

2

The Estates of Robert and Karin Clifford filed a suit against the driver of the Tractor, J.H.M. and Woolever Brothers Transportation Inc. ("Woolever") in the Court of Common Pleas of Schuylkill County bearing Docket Number S-650-1996 ("Clifford Action") and Sherrill Mulligan filed suit against the driver of the Tractor, J.H.M. and Woolever in the Court of Common Pleas of Schuylkill County bearing Docket Number S-1689-1997 ("Mulligan Action"). It was alleged in both actions that Woolever leased the tractor.

Lincoln General Insurance Company ("Lincoln General") issued a Primary Auto Package Insurance Policy to J.H.M. bearing policy number PAP 153770 for the policy period of April 18, 1995 to April 18, 1996.

One of the vehicles insured under the Lincoln General policy issued to J.H.M. is a 1979 Freightliner bearing serial number CA213HM160222, which is the tractor involved in the accident.

Northland Insurance Company ("Northland") issued a Truckers Insurance Policy bearing policy number TF209197 for the policy period September 1, 1995 to September 1, 1996 to Woolever.

Lincoln General defended the driver of the Tractor and J.H.M. in the Clifford and Mulligan Actions and Northland defended Woolever.

Traci Slane was a Senior Claims Adjuster with Northland and responsible for handling the claims arising from the Accident.

When negotiations began to settle the underling actions Mike Pipa, defense counsel retained by Lincoln General to defend J.H.M., advised Ms. Slane that he would call Lincoln General and have the adjuster contact her directly and that she would have to deal directly with Lincoln General to discuss settlement of the claim.

3

On May 5, 2000, Ms. Slane spoke to Michael McGovern at Lincoln General. During that conversation, Michael McGovern told Ms. Slane that Lincoln General would consider agreeing to settle the underlying cases and litigate a declaratory judgment action.

From May 5, 2000 through April 2001 Ms. Slane and Mr. McGovern spoke on many occasions. In the summer of 2000 together Ms. Slane and Mr. McGovern settled both the Clifford and Mulligan actions on behalf of their respective employers. Those actions were settled by payment in the amount of $675,000 by Lincoln General and $675,000 by Northland.

Mike Pipa, who advised Ms. Slane of Mr. McGovern's involvement, referred to Michael McGovern as an adjuster for Lincoln General.

Mr. McGovern acted as the claims adjustor for Lincoln General.

Mr. McGovern is also an attorney. He, however, never advised Ms. Slane that he was an attorney, and in fact never communicated to Ms. Slane what his position was at Lincoln General.

Mr. McGovern was never the attorney of record in this Declaratory Judgement Action, nor in the Clifford or Mulligan actions. Mr. McGovern did not speak to Ms. Slane as counsel in the Declaratory Judgment Action. Mr. McGovern spoke to Ms. Slane as an employee or representative of Lincoln General, similar to her role as a claims supervisor.

Throughout her dealings with Mr. McGovern, Ms. Slane did not know that he was an attorney. Throughout this period Ms. Slane never saw Mr. McGovern's signature, nor his title or position.

Mr. McGovern testified that on February 15, 2001, he was directed by Timothy Kirk, Vice President of claims of Lincoln General, to contact Northland and see if Northland was interested in executing mutual releases and ending this litigation without any payment by either party. It appears that Mr. Kirk may contest that Mr. McGovern was so directed.

4

On February 15, 2001, Mr. McGovern called Ms. Slane to determine if Northland was prepared to resolve the declaratory judgment action by wanting "to just call it quits". Mr. McGovern did not reach Ms. Slane on that date.

On April 2, 2001, Mr. McGovern spoke to Ms. Slane and, according to his notes and recollection, it was agreed that Northland and Lincoln General would execute joint releases and discontinue this action.

According to Ms. Slane's recollection and notes, on April 11, 2001 it was agreed that the declaratory judgment action would be discontinued and each insurer would close its file.

Mr. McGovern generally understood that as of April 11, 2001, the only thing left to do was to exchange written mutual releases and discontinue the instant action.

Mr. McGovern specifically stated as follows:

Q. What did you expect to be contained in those documents?

A. ... I expected that it would be a mutual release, that everyone would assume liability for their own legal fees, for their Court costs, et cetera, et cetera. They would waive all rights they had against the other party, and that that would end the matter and they would file the appropriate documents with the Court to discontinue the action.

Q. So, mutual general releases with each side assuming its own costs and expenses; is that correct?

A. Generally, yes.

Mr. McGovern voluntarily left Lincoln General in June, 2001.

## C. SUMMARY OF ARGUMENT

The instant motion concerns the enforceability of an oral agreement to settle a matter. The relevant facts are not at issue. In Pennsylvania an oral agreement to settle is enforceable. It is beyond dispute that Michael McGovern, the claims adjustor, who is also an attorney, believed he

5

had authority to settle this action, contacted Northland and proposed a settlement and recieved Northland's confirmation of a settlement. The only item left open was the exchange of releases and the execution of a discontinuance of this action. Lincoln General has raised a number of defenses. It asserts that Mr. McGovern did not have authority to settle this action. It asserts that the settlement is not binding until releases are signed. It asserts that an attorney cannot settle without a client's express authority. It asserts that Mr. McGovern was unaware that this action had been transferred from the Eastern District of Pennsylvania and that knowledge would have impacted upon his decision to settle.

Even if Mr. McGovern did not have actual authority, he was cloaked with apparent authority from a year of dealings and negotiations which had already resulted in his commitment on behalf of Lincoln General to contribute $675,000 toward settlement of the underlying action, followed by payment. Pennsylvania law does not require that actual releases be executed to consummate a settlement. Mr. McGovern was not acting in the role of attorney for Lincoln General and therefore Lincoln General cannot assert the defense that an attorneys representation of settlement does not bind the client. Further, Pennsylvania law, as predicted by the Third Circuit, binds a principal to an attorneys acts if the attorney had apparent authority. Finally the transfer has no impact as, even if it would have changed Lincoln General's offer, something Mr. McGovern claims is not true, an oral contract cannot be changed by unilateral mistake.

### D. LEGAL ARGUMENT

### I. STANDARD FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

6

party is entitled to judgment as a matter of law. See, Fed.R.Civ.P. 56(c); *Ayers v. Maple Press Co.*, 168 F. Supp.2d 349 (M.D. Pa. 2001).

Summary judgment is an integral part of the federal rules which help to secure the just, speedy and inexpensive determinations of every action. *Celotex Corp. v. Cantrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). When a motion for summary judgment is made and supported as provided, in order to successfully oppose that motion, an adverse party must set forth specific facts that show genuine issues for trial. See, Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986); *Ridewood Bd. of Education v. Stokley*, 172 F. 3d 238 (3rd Cir. 1998). Moreover, to demonstrate a genuine issue of material fact, the opponent of a motion for summary judgment must provide sufficient evidence (not mere allegations) for a reasonable jury to find for the [opponent]. See, *Olson v. General Electric Aerospace*, 101 F. 3d 947, 951 (3rd Cir. 1996). Finally, in reviewing a motion for summary judgment, the court evaluates the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party s favor. See, *Pascotti v. Macys*, 193 F.3d 766 (3d Cir. 1999).

As will be indisputably established below, in April 2001 Lincoln General and Northland settled this action. There is no genuine issue as to any material fact regarding the settlement of the Declaratory Judgment action that was reached between Northland and Lincoln General and therefore Northland is therefore entitled to summary judgment as a matter of law. Whether or not Mr. Kirk authorized Mr. McGovern to settle the instant action is of no relevance to the instant motion.

## II. CHOICE OF LAW

The instant action is a diversity action and choice of law is determined Pennsylvania's

7

choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Pennsylvania law, the applicable law is that of the place with the most significant relationship to the parties and the transaction. *Myers v. Commercial Union Assurance Cos.*, 506 Pa. 492, 496, 485 A.2d 1113, 1116 (1984); *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). *Carrick v. Zurich-American Ins. Group*, 14 F.3d 907 (3rd Cir.1994)

Under this analysis, Pennsylvania law controls. This lawsuit involves an issue of policy coverage for an accident which occurred in Pennsylvania. Both policies of insurance insured companies based in Pennsylvania and were delivered in Pennsylvania. Pennsylvania is the forum state and the negotiations occurred between an employee of Lincoln General in Pennsylvania and an employee of Northland located outside the state.

There is no basis to apply the law of any other jurisdiction.

This court must then predict what the Pennsylvania Supreme Court would decide on the issues. *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Gruber v. Owens-Illinois, Inc.*, 899 F.2d 1366 (3d Cir.1990)

### III. THE ORAL SETTLEMENT OF THIS DECLARATORY JUDGMENT ACTION IS ENFORCEABLE

In the instant action Michael McGovern an employee of Lincoln General testified that he settled the instant action, in April 2001. Traci Slane of Northland testified that she accepted the settlement. Both Mr. McGovern and Ms. Slane agree that they settled the instant action in April 2001. Both Mr. McGovern and Ms. Slane agree that it was the intent of the parties that Northland would release Lincoln General, Lincoln General would release Northland and this action would be dismissed. The only act necessary was the execution of the document. Mr. McGovern further testified that he was authorized by Mr. Timothy Kirk of Lincoln General to

8

settle this action. Lincoln General does not deny that Mr. McGovern agreed to settle the matter in April, 2001. Lincoln General does not contest that in April 2001 Mr. McGovern was an employee of Lincoln General. Lincoln General denies that Mr. Kirk authorized Mr. McGovern to settle this action.

Whether or not Mr. McGovern had the actual authority to settle this action and whether Mr. Kirk or Mr. McGovern is lying is irrelevant as Lincoln General is bound by Mr. McGovern's agreement to settle this action.

Lincoln General further claims that in the absence of a signed agreement, a settlement was not consummated. Courts in Pennsylvania have uniformly held that whether the ultimate settlement agreement is executed or not the oral settlement is binding. *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa.Super. 40, 445 A.2d 1288 (1982);*Compu Forms Control, Inc. v. Altus Group, Inc.*, 393 Pa.Super. 294, 574 A.2d 618 (1990).

In *Compu Forms*, the parties had agreed to a settlement but were unable to agree on the written terms of the settlement. The court enforced the settlement. Quoting *Courier Times, supra* the court stated. "[i]f parties agree upon essential terms and intend them to be binding, 'a contract is formed even though they intend to adopt a formal document with additional terms at a later date.'" Compu Forms, 574 A.2d at 622 , quoting *Courier Times*, 445 A.2d at 1295.

In *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 739 A.2d 133 (1999) the Pennsylvania Supreme Court, reversing the lower court, addressed the issue and found that the absence of a signed agreement, or the failure or refusal of a party to sign an agreement, did not prevent enforcement of an oral contract.

In *Flight Systems, Inc. v. Electronic Data Systems Corp.*, 112 F.3d 124, 129 (3rd Cir.1997) the court held, "the fact that the parties intended subsequently to execute a signed writing does not preclude a finding that a contract was formed: if the minds of the parties met

9

and the essential provisions of the contract were agreed upon, the contract was created, and the later writing is simply evidence of the agreement."

In the instant matter both Ms. Slane and Mr. McGovern have testified that the only act left to perform was the exchange of mutual releases and discontinuance of the instant action. Mr. McGovern specifically testified as follows:

Q. What did you expect to be contained in those documents?

A. ... I expected that it would be a mutual release, that everyone would assume liability for their own legal fees, for their Court costs, et cetera, et cetera. They would waive all rights they had against the other party, and that that would end the matter and they would file the appropriate documents with the Court to discontinue the action.

Q. So, mutual general releases with each side assuming its own costs and expenses; is that correct?

A. Generally, yes.

Therefore the oral settlement agreement agreed to by Mr. McGovern on behalf of Lincoln General and Ms. Slane on behalf of Northland is enforceable as the only act necessary was execution of mutual releases and an order of dismissal.

### IV. LINCOLN GENERAL IS BOUND BY MICHAEL McGOVERN'S SETTLEMENT AGREEMENT AS MICHAEL McGOVERN HAD EITHER ACTUAL OR APPARENT AUTHORITY

Lincoln General has asserted that Mr. McGovern was not authorized to settle this action, Mr. McGovern claims he was given authority and in fact instructed to settle this action. Even if Mr. McGovern's action in settling this action went beyond his authority, Lincoln General is bound by Mr. McGovern's actions.

In *Zager v. Gubernick*, 205 P.A. Super. 168, 208 A. 2d 45 (Pa. Super. 1965), the court was called upon to determine whether an automobile liability insurance company was bound by a settlement negotiated with the plaintiff by an independent insurance agent retained by that company, Irving Gubernick. Mr. Gubernick had advised the plaintiffs' attorney that he was handling the claim on behalf of the insurer of the defendant driver of the other car. Accordingly, Mr. Gubernick arranged for a medical examination of the plaintiff, received an itemized

10

statement of the plaintiff's losses and negotiated a settlement of $4,200 with the plaintiff. In October, 1960, releases signed by the plaintiffs were sent to Mr. Gubernick, who, in turn, forwarded them to the insurance company so that settlement checks could be issued. On January 17, 1961, the insurance company's vice-president, Mr. Heimbach, notified the plaintiffs' attorney that the insurance company would not accept the settlement negotiated by Mr. Gubernick because Mr. Gubernick had exceeded his authority and the settlement amount was too high.

The court in *Zager* found that from the plaintiffs' perspective, the insurance company "had clothed Gubernick with all the appearances of authority to negotiate a settlement". *Id.* Indeed, from shortly after the automobile accident until the settlement, neither the plaintiffs nor their attorney heard from the insurance company except through Mr. Gubernick.

The court concluded that even if Mr. Gubernick did not have actual authority to settle the claim, Mr. Gubernick did have apparent authority to do so. Under such circumstances, the court further concluded that the plaintiffs had the same rights with reference to the insurance company "as if Gubernick had been authorized." *Id.* at 172.

The court in *Zager* next addressed whether Mr. Gubernick's limitation as to his settlement authority, of which he was aware, could unbind the insurance company from his negotiated settlement amount. The court found that Mr. Gubernick's settlement authority limitation, which was not communicated to the plaintiffs, did not affect the insurance company's liability. "Such 'secret instructions' have no effect upon dealings with a third person who has no notice of them." *Id.* (citing *Restatement (2d) Agency section 160*; *Coughlin v. Slocum*, 33 Luz. Leg. Reg. 393 (1939); *Anderson v. National Surety Co.*, 196 Pa. 288, 46 A. 306 (1900)).

In the instant action Mr. McGovern negotiated with Ms. Slane from May 2000. Mr. McGovern was an employee of Lincoln General and, with regard to the J.H.M. matter from 1998 onward served in place of a claims adjuster. He settled the underlying claims on behalf of Lincoln General during the summer of 2000 and Lincoln General made payments to the underlying plaintiffs, in fulfillment of Mr. McGovern's representations. At no time did Ms.

11

Slane have any reason to believe that if Mr. McGovern made commitments on behalf of his employer, he was not authorized to do so. Therefore when Mr. McGovern agreed on behalf of Lincoln General to settle the matter with mutual releases and discontinuance of this action, he did so with apparent, if not actual authority and Lincoln General is bound by that commitment.

### V. THE DECISION OF THE EASTERN DISTRICT TO TRANSFER THE ACTION IS IRRELEVANT

In *Kramer*, Lincoln General has intimated that the Lincoln General should not be bound by the agreement to discontinue this action as Lincoln General may have been unaware that the United States District Court for the Eastern District of Pennsylvania had transferred the action to the Middle District of Pennsylvania. The significance of the transfer on the settlement is difficult to understand as all of the litigation issues and risks remained whether the action was pending in the Eastern District or Middle District of Pennsylvania. However, even if the transfer would have had an effect on Lincoln General's decision to settle the matter, the agreed settlement cannot be upset. In *Kramer v. Schaeffer*, 2000 Pa. Super. 127, 751 A.2d 241 (2000). the court addressed whether a post-verdict settlement between automobile accident victims and the liability insurer, Allstate, should be enforced. In *Kramer*, a pre-trial settlement offer of $3,500 had been made by Allstate and rejected by the plaintiffs. Thereafter, the matter went to trial. While the jury found defendant Schaeffer liable for the plaintiffs' personal injuries, they awarded zero damages to the plaintiffs. After the trial, a new adjuster at Allstate took over the claim. The new adjuster was unaware that the matter had already been tried to a jury verdict. The new adjuster thus contacted the plaintiffs' attorney and offered to settle the matter for $3,500. The next day, the plaintiffs' attorney wrote to the new Allstate adjuster in which he confirmed the acceptance of the offer and requested that Allstate prepare releases. Once learning of the zero damages award, the new Allstate adjuster, wrote to the plaintiff's attorney advising that Allstate would not be making payment of $3,500 to his clients, but would stand by the jury verdict. In turn, the plaintiff's attorney wrote to Allstate and advised them they he considered the case settled for $3,500, pursuant to this telephone conversation with the new Allstate adjuster and expected a signed release from Allstate. When Allstate failed to honor the settlement, the

12

plaintiff filed a petition to enforce it.

In turning to the issue of whether the post-verdict settlement agreement was enforceable, the court observed that such a determination is made in accordance with the principles of contract law. 751 A.2d at 245 (citing *McDonnell v. Ford Motor Co.*, 434 Pa. Super. 439, 444-46, 643 A 2d. 1102, 1105 (1994)).

The *Kramer* Court held that in order to upset the settlement agreement, Allstate would have to prove that the attorney representing the claimant knew, or had good reason to know of the unilateral mistake of the adjuster (that the Allstate adjuster was unaware of the zero verdict) and, further, that the attorney knew that if the adjuster had known of the zero verdict, the adjuster would not have settled the case.

In the instant matter, there is no proof that there was a mistake. Further, Mr. McGovern, when asked "is it possible that Lincoln General might have changed its position because of the result in the court proceeding [transfer of the action to the Middle District]," replied "I can't say, anything is possible."

Therefore, not even Lincoln General claims that its decision might have changed if it knew of the transfer. Lincoln General does not have a scintilla of evidence to show that there was a unilateral mistake and even if there was, there is no evidence that Northland knew of the unilateral mistake or even if Northland knew of the unilateral mistake Northland had a belief that Lincoln General would not go ahead with the settlement if it knew of the transfer.

### VI. MR. McGOVERN WAS NOT ACTING AS LINCOLN GENERAL'S COUNSEL IN THE INSTANT MATTER

Lincoln General has asserted that as Mr. McGovern was not only an employee of Lincoln General, but an attorney as well, Lincoln General is not bound by his actions as an attorney acting as an independent counsel cannot bind a client. See *Bennett v. Juzelenos*, 791 A.2d 403 (Pa. Super 2002); *Farris v. JC Penny Co., Inc.*, 176 F.3d 706 (3rd Cir. 1999); also see, *Tierman v. Devoe*, 923 F.2d 1024 (3rd Cir. 1991) where court predicted that Pennsylvania courts would enforce attorney settlement if attorney had apparent authority.

The principle of law that an attorney cannot bind a client is inapplicable here. Mr.

13

McGovern was not acting in his role as an attorney, he was acting as a claim adjuster. Further, Northland never dealt with Mr. McGovern as Lincoln General's counsel, a role fulfilled by Mr. Rudd, because it was never informed that Mr. McGovern was an attorney.

Traci Slane, had worked with Mr. McGovern to settle the underlying claims. Mr. McGovern had represented Lincoln General in those negotiations and had fulfilled his promises. During her deposition, Ms. Slane testified that Mr. McGovern had been introduced to her as an adjuster by Mr. Mike Pipa, the defense attorney retained by Lincoln General on the J.H.M. Matter. On March 5, 2000, Mr. Pipa advised Ms. Slane that he would have Lincoln General's adjuster contact her directly because she would have to deal directly with Lincoln General to discuss settlement. Mr. McGovern had the apparent authority to settle the matter on behalf of Lincoln General and therefore Lincoln General is bound by the settlement.

In fact, throughout her dealings with Mr. McGovern, he never identified his position at Lincoln General to Ms. Slane. She never saw his signature or his title. Mr. McGovern admitted during his deposition that he did not speak to Traci Slane as counsel in the Declaratory Judgment action. He admitted that he spoke to Ms. Slane as an employee or representative of Lincoln General. He admitted that he never was the attorney of record in the Declaratory Judgment action. Mr. McGovern understood that he was not counsel of record in this action, he was not speaking to Ms. Slane as counsel in the underlying action or this declaratory action and, as Northland was represented in this action, if he was speaking to Northland in the role of Lincoln General's counsel it would not have been appropriate to speak directly to Ms. Slane. He believed he was speaking to Ms. Slane as an employee of Lincoln General, similar to Ms. Slane's role as a claims supervisor.

## CONCLUSION

For the foregoing reasons, Plaintiff Northland is entitled to summary judgment finding that the insurance coverage Declaratory Judgment action was settled on April 11, 2001, enforcing the settlement agreement between Northland and Lincoln General and dismissing the Declaratory Judgment action with prejudice.

KLETT ROONEY LIEBER & SCHORLING
Attorneys for Northland Insurance Company


By *[signature: David I. Rosenbaum]*
David Ira Rosenbaum (52859)
Klett Rooney Lieber & Schorling
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507 (Office)

OF COUNSEL:

Ira S. Lipsius, Esquire
SCHINDEL, FARMAN & LIPSIUS LLP
225 West 34th Street
New York, New York 10122
(212) 563-1710


Attorneys for Plaintiff Northland
Insurance Company

Dated: May 22, 2002