**ORIGINAL**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTHLAND INSURANCE COMPANY | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 1:01-CV-763 |
| | : | |
| LINCOLN GENERAL INSURANCE COMPANY, | : | |
| J.H.M. ENTERPRISES, INC., and | : | |
| VERNICE L. STATTS, | : | |
| Defendants | : | |
| | : | |
| LINCOLN GENERAL INSURANCE COMPANY, | : | |
| Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| WOOLEVER BROTHERS TRANSPORTATION | : | |
| INC. | : | |
| Third Party Defendant | : | (JUDGE KANE) |

FILED
HARRISBURG, PA
JUN 0 4 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS[1]

---

[1] Plaintiff titled its document as a "Statement of Undisputed Material Facts...". Contrary to Plaintiff's representation, many of these facts are disputed. Local Rule 56.1 requires the moving party to file a statement of material facts as to which the moving party contends there is no genuine issue to be tried. In contrast, Local Rule 16.3 requires the parties to meet prior to trial and agree upon a statement of undisputed facts. Unlike the statement required by Rule 16.3, the parties did not meet and agree upon all of the facts set forth in Plaintiff's statement in support of its motion for summary judgment.

1.   Admitted.

2.   Denied as stated. It is believed that Vernice Statts and JHM had entered into an agreement whereby JHM agreed to sell the truck to Statts. Attached as Exhibit A is a report of a claims specialist who met with Jay McCormick, the owner of JHM, on June 7, 1995 to review the trucking insurance purchased from Lincoln General. The report indicates that: "While Vernice is considered a leased driver, Jay still holds title to the unit that Vernice is buying." Since neither Vernice Statts nor Jay McCormick have yet to be deposed in this matter, it is uncertain whether Statts completed the purchase of the truck prior to the accident. Accordingly, Lincoln General cannot admit or deny at this time that JHM was the actual owner of the truck. However, the truck was still listed on Lincoln General's policy as being owned by JHM.

3.   Admitted.

4.   Admitted.

5.   Admitted that Woolever leased the truck from JHM pursuant to a permanent lease which was in effect at the time of the accident. It is denied that the truck was simply trip leased prior to the accident as initially represented by Northland, Woolever and JHM. Northland refers to ¶ 37 of the counterclaim, which simply provides the factual background of the fraud committed by Woolever, JHM and possibly Northland in misrepresenting that Woolever had simply trip leased the truck from JHM, and that the trip lease had expired prior to the accident. Both the permanent lease and the fabricated trip lease

2

are attached to Lincoln General's counterclaim, which is included in the appendix filed by Woolever, and are also attached as Exhibits to Lincoln's opposition for easier reference.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted that for a portion of the claim, Traci Slane ("Slane") was Northland's senior claims adjuster responsible for the handling of the claim. For more than three years, Jerry Parker from Northland handled the claim. A copy of Northland's computer claim file notes is attached as Exhibit B. At page 5, there is an indication that Slane first reviewed the file on November 1, 1999. Slane testified that she took over the file from Parker after he was promoted to a senior claims supervisor. Slane Dep.Tr. at p. 8.

11. Denied as stated. It is admitted that Slane testified to this effect. Attorney Pipa has not been deposed, and as such, has not confirmed this hearsay statement by Slane. Lincoln denies Slane's characterization of Attorney McGovern as an "adjustor."

12. Admitted.

13. Admitted that there were a number of communications between Slane and Attorney McGovern. However, as is indicated by both Slane's and McGovern's notes, many of these communications were by voice mail message. See Exhibit B attached hereto and Exhibit 2 to McGovern's Deposition Transcript.

3

14. Admitted in part; denied in part. It is admitted that the Clifford and Mulligan actions were settled in 2000. Lincoln General denies Plaintiff's characterization that Attorney McGovern settled the action on behalf of his employer. Timothy Kirk, the Vice President of Claims for Lincoln General, made the decision to settle the underlying Clifford and Mulligan claims. See McGovern's Dep. Tr. at pp. 20, 23, 42-45, and 50-51. See also Northland's Exhibit B at p. 24, entry for 8/10/00 ("He will talk to his people and let me know if they are willing to go 1/2.")

15. Admitted that Attorney McGovern conveyed to Slane what he had been authorized to offer by Kirk. Slane was aware that Attorney McGovern needed to obtain approval from someone else at Lincoln General. See Slane Dep. Tr. at p. 58

16. Admitted.

17. Denied as stated. Attorney Pipa has not been deposed in this action, and the only testimony as to what Attorney Pipa allegedly stated is Slane's hearsay statement as to what Pipa allegedly told her. Lincoln denies Slane's characterization of Attorney McGovern as an "adjustor."

18. Denied as stated. Attorney McGovern acted as in-house legal counsel for Lincoln General. Attorney McGovern's first written contact with Northland was a letter he sent to Jerry Parker of Northland on February 1, 1996. See Exhibit C. Attorney McGovern signed the letter as "Legal Counsel." Subsequent to Attorney McGovern's initial letter to Northland on February 1, 1996, Northland received a number of letters from

4

Attorney Pipa's office which were copied to Attorney McGovern which specifically identified Attorney McGovern as "Michael J. McGovern, Esquire." See letters attached as Exhibit D. Slane testified that when she first took the file, she would have reviewed the hard copy of documents, as well as the computer claim file notes. See Slane Dep.Tr. at pp. 8-9. Accordingly, Slane would have known Attorney McGovern was legal counsel for Lincoln General from the very inception of her involvement in the file. Attorney McGovern testified with respect to a specific issue involved in this motion that he viewed his relationship the same as outside counsel. See McGovern Dep.Tr. at p. 75. McGovern did testify that after the original claims adjuster left the employ of Lincoln General in 1998, there was no additional claims adjuster assigned to the file. See McGovern Dep. Tr. at p. 14. However, simply because there was no other claims adjuster working on the file, does not mean Attorney McGovern's role was reduced from legal counsel to a claims adjuster.

   19. Admitted.

   20. Denied. As set forth in Exhibit C, Attorney McGovern communicated to Northland in his first written communication that he was legal counsel to Lincoln General. Further, Attorney Pipa who had been retained by Lincoln General to defend JHM and Statts consistently referred to Attorney McGovern as "Michael J. McGovern, Esquire." See Exhibit D. Accordingly, Attorney McGovern did communicate to Northland his role as legal counsel to Lincoln General.

   21. Admitted.

5

22. Denied as stated. It is admitted that Attorney McGovern was an employee and representative of Lincoln General, and his communications with Slane were always of a business nature (as opposed to personal), and as such, were on behalf of Lincoln General in a representative capacity. It is denied that Attorney McGovern spoke to Slane as a claims supervisor. Attorney McGovern expressly testified that none of the claims adjusters reported to him. See McGovern Dep. Tr. at p. 12. Further, McGovern expressly testified with respect to the issue involved in Northland's motion that he viewed his role like any outside counsel. See McGovern Dep. Tr. at p. 75.

23. Denied. Slane testified that she reviewed both the hard copy and the computer diary of Northland's file in this matter. Attached at Exhibits C and D are letters which came from Northland's file. All of those letters identify Attorney McGovern as either legal counsel or "Esquire". Accordingly, if Slane did truly review the entire file, she would have known that Attorney McGovern was legal counsel for Lincoln General.

24. Admitted that Attorney McGovern testified as such. It is denied that Timothy Kirk ever directed Attorney McGovern to propose ending the litigation without any payment by Norhtland. See Affidavit of Timothy Kirk at ¶ 8.

25. Admitted that Timothy Kirk contests McGovern's testimony that he was instructed to see if Northland was willing to execute mutual releases without any payment to Lincoln General. See Affidavit of Timothy Kirk at ¶¶ 7-8 and 12.

6

26. Denied as stated. It is admitted that Attorney McGovern left a message for Slane on February 15, 2001. It is denied that Attorney McGovern left any substantive message about calling it quits. See Slane Dep. Tr. at pp. 66-67, McGovern's Dep. Tr. at p. 61.

27. Denied. It is admitted only that McGovern and Slane had a conversation on April 2, 2001. In that conversation, McGovern testified that he proposed settling the case. However, he specifically told Slane that he needed approval from someone in authority above him. See McGovern Dep. Tr. at p. 63. Slane's notes indicate that McGovern told her that he needed to talk to his "accounting people." See Exhibit B at p. 29. Slane admitted at her deposition that she knew McGovern had to go back and get approval after April 2, 2000 for what he had proposed. Slane Dep. Tr. at pp. 69, 77 and 83. McGovern testified that he expected Slane to send him a written proposal on what Northland was prepared to agree to, and that he would have reviewed it with Kirk and Kirk would have decided whether to go forward with any settlement. See McGovern Dep. Tr. at pp. 71 and 74. Further, Ms. Slane expressly denied ever agreeing to execute joint releases. The following discussion took place at Slane's deposition:

> Q. Did you expect that you would be sending or your attorney would be sending a document to Lincoln General or its counsel that would somehow memorialize any type of mutual releases?
>
> A. No.
>
> Q. Did you believe that Lincoln General was going to release Northland, or was it just

7

>     agreeing to the discontinuance of the
>     declaratory judgment action?
>
>     A. It was my understanding we were going to
>     dismiss the DJ, that neither one of us wanted
>     to pursue it anymore.
>
>     Q. Did you understand at that point in time
>     Lincoln General had still not filed a claim
>     against Northland in the declaratory judgment
>     action?
>
>     A. No, I did not know that.

Slane Dep. Tr. at pp. 75-76.

    28. Denied. Traci Slane's notes entered in the computer claims diary indicates that Attorney McGovern called her on April 11, 2001, and left a phone message that "they are in agreement to walk away from DJ and close files." Slane claims that she called Attorney McGovern back and left a message on his phone: "Asking him to have his counsel call Ira and agree to voluntary dismiss this." See Exhibit B at p. 29. In contrast, Attorney McGovern has no notes of any conversation from April 11, 2001. Rather, he only has a note stating he called Slane and left a message on April 10, 2001. See Exhibit 1 to McGovern's Dep. Tr. McGovern testified that the last contact he had with Slane was when she stated she would send McGovern some documents indicating Northland's proposal which he was going to review with Mr. Kirk. McGovern never received any type of document from Slane or anyone else at Northland or its attorneys confirming the alleged settlement. McGovern's Dep. Tr. at p. 70. McGovern testified he expected a letter or formal release or documents which he would review from a legal standpoint and Mr. Kirk would review to decide whether he wanted to go through with any settlement.

8

McGovern Dep. Tr. at p. 71. McGovern had expressly told Slane to "send me something to look at and maybe we can make it go away." McGovern Dep. Tr. at p. 74. McGovern testified that after April 2, 2001, he did not talk to anybody in accounting or Mr. Kirk, because he was waiting to receive the documents from Slane. McGovern Dep. Tr. at p. 78.

29. Denied as stated. It is admitted that if Mr. Kirk had agreed to settle the case without any additional payment from Northland, the only thing left to do would have been to exchange mutual releases and discontinue the declaratory judgment action. However, the most critical step in the entire settlement process was obtaining Mr. Kirk's approval to whatever Northland proposed. Attorney McGovern made it quite clear at his deposition that once the documents were received from Northland, Mr. Kirk would decide whether he wanted to go through with any settlement. See McGovern Dep. Tr. at pp. 64-65, and 70-71. McGovern viewed his relationship like any outside counsel who must go back to the client and get them to sign a document to make sure that the client has agreed with what the attorney might have communicated. See McGovern Dep. Tr. at p. 75. McGovern acknowledged that it was possible there was miscommunication between him and Mr. Kirk, and that he would not know whether Mr. Kirk was in agreement with what Attorney McGovern had communicated until Mr. Kirk actually signed the document accepting Northland's proposal. McGovern Dep. Tr. at p. 75. Further, as set forth above, Slane denied that there was ever any intention to exchange mutual releases. See Slane Dep. Tr. at p. 75-76.

30.  Admitted that Attorney McGovern stated as such at his deposition.  It is denied that the documents Attorney McGovern expected to receive from Northland were ever sent, and it is further denied that Mr. Kirk ever agreed to the proposal as apparently made by Attorney McGovern.  See Affidavit of Timothy Kirk at ¶¶ 7-8 and 12.

31.  Admitted.

Respectfully submitted,

By _____
Jonathan H. Rudd, Esquire
Charles T. Young, Jr., Esquire
McNees Wallace & Nurick LLC
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 237-5405

Attorneys for Defendant
Lincoln General Insurance Company

Date:  June 4, 2002

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 4th day of June, 2002, a true and correct copy of the foregoing document was served as follows:

<u>**VIA FEDERAL EXPRESS**</u>

Ira S. Lipsius, Esquire
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

<u>**VIA FIRST CLASS MAIL**</u>

Andrew R. Spiegel, Esquire
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127

_____
Jonathan H. Rudd