ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY :
    Plaintiff :
:
:
v. : No. 1:01-CV-763
:
LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., and :
VERNICE L. STATTS, :
    Defendants :
:
LINCOLN GENERAL INSURANCE COMPANY, :
    Third Party Plaintiff :
:
v. :
:
WOOLEVER BROTHERS TRANSPORTATION :
INC. :
    Third Party Defendant : (JUDGE KANE)

FILED
HARRISBURG, PA

JUN 4 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

### AFFIDAVIT OF TIMOTHY KIRK

    I, Timothy Kirk, hereby state and affirm in accordance with 28 U.S.C §1746, that the statements made in this affidavit are true and correct to the best of my knowledge, information and belief.

    1.    I am the Vice President of Claims for Lincoln General Insurance Company. I was the Vice President of Claims throughout all of 2001.

    2.    Prior to his departure from Lincoln General in June, 2001, Michael McGovern, Esquire, reported to me. I viewed Attorney McGovern as in-house legal counsel and relied on his

1

advice and representation as a lawyer. However, I ultimately had the final decision on whether to settle any claim or case involving Lincoln General. Attorney McGovern did not have authority to settle any case without my authorization, unless it was a small liability matter where Lincoln General's payment was under $10,000.

3. I provided Attorney McGovern with authority to settle the underlying tort actions involving the Clifford and Mulligan claims for a total contribution by Lincoln General of $675,000, with a full reservation of rights to arbitrate or litigate with Northland whether Lincoln General was excess or concurrent, and therefore entitled to recover all or a portion of its payment from Northland.

4. It was my understanding that Lincoln General had a good chance of prevailing on its claim that it was excess over Northland, and was entitled to full reimbursement from Northland of the $675,000 paid to settle the underlying claims. It was my understanding that the vehicle in question was permanently leased to Northland's insured at the time of the accident, and in accordance with the Other Insurance clause in Lincoln General's policy, this made Lincoln General excess over any other collectible insurance.

5. I understood that Northland was contending that Lincoln General was primary and Northland was excess, and that

2

Northland was demanding that Lincoln General pay the balance of its policy limits of $75,000. Based on the parties' respective positions, I believed that there was very little downside in proceeding with the claim against Northland, i.e., the payment of an additional $75,000, and the upside was great, i.e., the collection of $675,000.

6. I also understood that it was possible that the Court would conclude that Northland and Lincoln General were concurrent insurers, either co-primary or co-excess, and that the total settlement payments would be apportioned on a pro rata basis. Since Northland's policy provided $2,000,000 in coverage, and Lincoln General's policy provided only $750,000 in coverage, I was aware that any determination that the two insurers were concurrent would result in Lincoln General recovering from Northland approximately $300,000 of the amount paid to settle the underlying tort claims.

7. In order to avoid the expenditure of any additional legal fees, I authorized Attorney McGovern to approach Northland to see if it would be interested in settling the coverage dispute and walking away from the case by making a payment to Lincoln General. I told Attorney McGovern that he should try to get the best deal he could, but that ultimately, I would settle for a payment from Northland of $300,000 if it would avoid the payment of any additional legal fees.

3

8. At no time did I suggest or authorize Attorney McGovern to simply walk away from this claim without receiving any payment from Northland. Considering the potential recovery, such a decision would not have been a prudent business move and would not have been in the best interests of the shareholders and re-insurers.

9. At or around the same time I discussed the potential settlement of the Northland claim with Attorney McGovern, I did discuss with Attorney McGovern other claims where I felt that there was only a slight chance of recovering anything and the prudent course of action was for Lincoln General to simply discontinue pursuit of the claim and not spend anymore attorneys' fees. However, the Northland claim was not one of these situations.

10. At no time did Attorney McGovern inform me that he had agreed to settle the case with Northland. At no time prior to his departure in June, 2001, did Attorney McGovern report to me on Northland's response to any settlement discussions he was having.

11. After Attorney McGovern left the employ of Lincoln General, I re-assigned the handling of the Northland claim to Attorney Albert Miller. I instructed Attorney Miller to pursue recovery from Northland of all amounts Lincoln General had paid for defense and indemnity in the underlying tort actions.

4

12. If Northland had provided Lincoln General with a proposed Mutual Release which did not include a payment from Northland to Lincoln General of at least $300,000, I would have rejected such a proposal and not signed such a Mutual Release, but instead would have instructed Attorney McGovern to proceed with the claim against Northland for the entire $675,000.

                                                                     Timothy Kirk

Dated: May 31, 2000

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 4th day of June, 2002, a true and correct copy of the foregoing document was served as follows:

### VIA FEDERAL EXPRESS

Ira S. Lipsius, Esquire
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

### VIA FIRST CLASS MAIL

Andrew R. Spiegel, Esquire
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127

_____
Jonathan H. Rudd