ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY         :
      Plaintiff                   :
                                :
      v.                          :    No. 1:01-CV-763
                                :
LINCOLN GENERAL INSURANCE COMPANY,  :
JHM ENTERPRISES, INC., and          :
VERNICE L. STATTS,                  :
      Defendants                  :
                                :
LINCOLN GENERAL INSURANCE COMPANY,  :
      Third Party Plaintiff       :
                                :
      v.                          :
                                :
WOOLEVER BROTHERS TRANSPORTATION     :
INC.                                :
      Third Party Defendant       :    (JUDGE KANE)

FILED
HARRISBURG, PA

JUN 0 4 2002

MARY E. D'ANDREA, CLERK
Per _____
         Deputy Clerk

**EXHIBITS TO DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF NORTHLAND INSURANCE COMPANIES'
MOTION FOR SUMMARY JUDGMENT**

McNEES WALLACE & NURICK LLC
    Jonathan H. Rudd, Esq.
    Charles T. Young, Jr., Esq.
    100 Pine Street
    P.O. Box 1166
    Harrisburg, PA 17108-1166
    Phone: (717) 237-5405
    Fax: (717) 237-5300

Attorneys for
Defendant/Third Party Plaintiff
Lincoln General Insurance Company



# KING American Ltd.

### Transportation Claims Specialists

*3350 Whiteford Rd • York, PA 17402*
*Phone 717-751-0073 • 800-727-4480 • Fax 717-755-5536*

June 8, 1995

Lincoln General Insurance Company
3350 Whiteford Road
York, Pa 17402

ATTENTION:    Underwriting Department, Eric Himes

RE:        Policy Number:        PAP 185770-0495
           Insured:             JHM Enterprises, Inc
           Date Requested:      5-1-95
           Our File Number:     31444-06

Dear Eric:

A reinspection of the above captioned account was conducted
in Montoursville, Pa on June 7, 1995. The photographs that
were obtained during our visit will be submitted to you shortly.

During our visit we met with Jay McCormick. No significant
changes were noted in the overall operation. Several pieces
of scheduled equipment was available during our visit and
a walk around inspection of the equipment indicates that the
fleet is being maintained in good condition. Several of the
older bulk trailers are not being used on a day to day basis.

No evidence of any freight brokerage, team drivers or additional
hired auto exposure other than that mentioned in the remarks
section. You will note several changes noted on the attached
current driver list.

We hope that this information will assist you with your evaluation
of this account. If you have any questions or desire additional
information please do not hesitate to contact our office. We
thank you for the assignment.

Sincerely,

Jim Brandt
jb/JB

A




**KING AMERICAN LTD.**

**3350 WHITEFORD ROAD**

**YORK, PA 17402**

**717-751-0073**

**RE-SURVEY OF RISK REPORT**

INSURED  _J.H.M Enterprises, Inc_

POLICY NUMBER  _PAP 185770-0495_            FILE NUMBER  _31444-06_

ADDRESS  _1200 Vallamont Drive_

_Williamsport, Pa 17701_

TELEPHONE NUMBER (S)  _(717) 368-8011_

DATE REQUESTED  _5-1-95_          DATE/TIME CONDUCTED  _6-7-95_

SURVEY LOCATION (S)  _260 Jordan Avenue_

_Montoursville, Pa 17754_

BRANCH LOCATION (S)  _None identified_

PERSONNEL INTERVIEWED/TITLE  _Jay McCormick, Owner_

ATTACHMENTS:  _Pending_ PHOTOGRAPHS       _X_       OTHERS

_____ TERMINAL FORM

**A.**

**MANAGEMENT:**

1. Type of business/operation  _Common & Contract, leased to Woolever Bros._
2. ICC # _____ PUC _____
3. Freight Brokering ____Yes _X_ No  If done under a separate authority give # _____
   Percent: _____   Bond # _____   Revenue: _____
4. Endorsements/Restrictions to policy  _Non Identified_
5. Commodities hauled  _Potato Starch, Salt, Lime, Flour_   Contaminated soil? _No_
   Hazmat (percent of each)  _No_
6. Oversized/overweight loads  _No_
7. High value/target loads  _No_          US Government Mail  _No_
8. Evaluation  _No expansion since last visit_

**B.**

**DRIVERS/DRIVER FILES:**

1. Number of drivers:  _29_  Permanent _____ Temporary/Casual  _2_  Owner Operator
2. Driver teams (if yes give # of teams ____)          ____Yes   _X_ No
3. Is there a written passenger program                _X_ Yes   ____No
4. Do they allow passengers                            ____Yes   _X_ No
5. Are driver files Maintained for each driver         _X_ Yes   ____No

**C.**

**SAFETY/TRAINING:**

1. Does the insured have a training/safety program     _X_ Yes   ____No
2. Are there emergency notification procedures         _X_ Yes   ____No
3. Are driver meetings conducted                       _X_ Yes   ____No
4. Is a roster of the driver meetings maintained       ____Yes   _X_ No
5. Are safety bonuses, awards, incentives provided     _X_ Yes   ____No

D.

## EQUIPMENT:

| | Trucks/vans | Tractors | Trailers | Autos | Others |
|---|---|---|---|---|---|
| Owned: | | 3 | 11 | | |
| Leased: | | 2 | | | |

1. Do they use double trailers _____ Yes _X_ No    Triple trailers _____ Yes _X_ No
2. Radius of operation: ____ % 0-50 ____ %51-75 ____%576-200 _X_ % 201-500 ____ over 500
3. Fleet mileage for the year _82634 1st Quarter 1995_
4. Is trailer interchange used ____ Yes _X_ No    % of operation? _____
5. Is intermodal operations used ____ Yes _X_ No    commodities?_____
6. Does insured trip lease ____ Yes _X_ No    Cost/Year?_____

E.

## FINANCIALS:

1. Verify pay roll (current information _____
2. Gross Revenue _$600,000 Estimated_ Est. next year's _____
2. Bankruptcy filings _____ _Non noted_
3. Major changes _None since last visit_

## COMMENTS:

_Mileage recorded for the 2 leased vehicles is 41317, which is included in the above mileage figure. Scheduled units #1,14,17 are leased to Woolever Brothers. Cost of Hire for the 2 leased drivers is as follows; Clyde Fuoss $81403 and Vernice Statts $9800. While Vernice is considered a leased driver, Jay still holds title to the unit that Vernice is buying. Attached for your review and addition to the policy is a current driver list, we have highlighted those newly added drivers. From the old list dated 4-18-95 the following should be deleted; #11,15,23._

INSPECTOR_Jim Brandt_    DATE: _6-8-95_

LIABILITY COVERAGE AFFORDED TO A SCHEDULED POWER UNIT  A L S O  APPLIES TO ...  _____
TRAILER  O R  SEMI-TRAILER  S U B J E C T  TO ALL CONDITIONS AND OTHER TERMS OF THE POLICY.

---

| UNIT# | Year | Trade Name | Body Type | Serial Number | Bus Use | GVW GCW | Dis | Class | Pc | St | Cnty | City | Terr | Garaging City |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1985 | WHITE | TRACTOR | 1MUYDCFE4FN071239 | C | 73280 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 2 | 1969 | FRUEHAUF | TRAILER | -S UNJ325403 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 3 | 1969 | FRUEHAUF | TRAILER | -S UNJ325404 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 4 | 1974 | TRLMOBILE | TRAILER | -S K41315 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 5 | 1967 | FRUEHAUF | TRAILER | -S UNEF290102 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 6 | 1969 | FRUEHAUF | TRAILER | -S UNJ325401 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 7 | 1969 | FRUEHAUF | TRAILER | -S UNJ325402 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 8 | 1974 | TRLMOBILE | TRAILER | -S K41316 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 9 | 1974 | TRLMOBILE | TRAILER | -S K41317 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 10 | 1974 | TRLMOBILE | TRAILER | -S K41318 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 11 | 1993 | J & L | TANK TRLR | -S 1J9P4AT21P2001084 | C | 50000 | IN | 67521 | 220 | PA | | 81 | | 10 | WILLIAMSPORT, |
| 12 | 1988 | WHITE | TRACTOR | 4V3YZBZZXJN601032 | C | 80000 | IN | 50521 | 220 | PA | | 81 | | 10 | WILLIAMSPORT, |
| 14 | 1986 | FREIGHTLIN | TRACTOR | 1FUPYDYB90P287269 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 15 | 1981 | BUTLER | TRAILER | -S 1TB114028BM452714 | C | 50000 | IN | 67521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 16 | 1979 | F-LINER | TRACTOR | CA213HM160222 | C | 80000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |
| 17 | 1988 | F-LINER | TRACTOR | 1FUP2DYBXJH340788 | C | 50000 | IN | 50521 | 380 | PA | | 81 | | 10 | WILLIAMSPORT |

_Handwritten annotations:_ "Chg #1", "Chg #2", "Chg #1", "Chg #1"

_Handwritten lines:_
1980 Fruehauf Trailer # 004309  } A #4
1980 Great Dane Trailer # B17876 } A #4

---

```
Report No. DAR030              NORTHLAND INSURANCE COMPANIES        Page    1
(CXDM001/CXDM003)                     CLAIM FILE NOTES            Date 12/05/01
                                       Printed: TSLANE
Policy : 21 TF209197  000002                    Print all claim file notes entered
==================================================================================
==================================================================================
 ## Date:11/20/1995  Entered By: GCRECELI     Subject:GN                       #
 ---------------------------------------------------------------------------------
    I STARTED THIS LOSS LATE FRI THE 17TH.   FOR JERRY TOMORROW.   (OUT OF
  OFFICE).  I SPOKE WITH THE DRIVER.  GOOD IMPRESSION: UPSET AND
  CONCERNED.  CLEAR LIAB:  UNABLE TO GET STOPPED FOR A QUICK LIGHT AND
  REAR-ENDED OV1 INTO OV2.  OV2 SAID NOT HURT.   2 WOMEN IN OV1 HURT---
  BOTH FATALLY?  I ALSO DISCUSSED AT LENGTH WITH LESSOR AND N. INSD.
  LESSOR HAS HIS OWN INSURANCE AND THE LOAD DRIVER WAS AFTER NOT INSD
  LOAD.   THERE IS A PERMANENT LEASE, HOWEVER.   SEE NOTES.
==================================================================================
 ## Date:11/27/1995  Entered By: JPARKER     Subject:GN                        #
 ---------------------------------------------------------------------------------
  see file for full details. appears as our policy stands, we have no
  coverage. (symbol 43, and tractor and trailer not owned.) agent now
  saying he should have written on a symbol 47, but it was not written
  on that basis. the vehicle had just delivered a load for the insure
  d and was dispatched to get another load not in the insd business.
  owner has 750,000 plicy of his own.
==================================================================================
 ## Date:11/27/1995  Entered By: JPARKER     Subject:DI                        #
 ---------------------------------------------------------------------------------
   Set diary of 12/27/95 - initial report due
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RS                        #
 ---------------------------------------------------------------------------------
   Set initial reserve for $ 500.00  for claimant #005
   ... CLIFFORD, ROBERT  CVG: C.S.L. Liability (B.I. & P.D.)
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RS                        #
 ---------------------------------------------------------------------------------
   Set initial reserve for $ 500.00  for claimant #006
   ... MULLIGAN, CHERYL  CVG: C.S.L. Liability (B.I. & P.D.)
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RS                        #
 ---------------------------------------------------------------------------------
   Set initial reserve for $ 3000.00  for claimant #004
   ... MULLIGAN, CHERYL  CVG: C.S.L. Liability (B.I. & P.D.)
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RS                        #
 ---------------------------------------------------------------------------------
   Set initial reserve for $ 123000.00  for claimant #002
   ... CLIFFORD, ROBERT  CVG: C.S.L. Liability (B.I. & P.D.)
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RS                        #
 ---------------------------------------------------------------------------------
   Set initial reserve for $ 123000.00  for claimant #003
   ... CLIFFORD, KAREN  CVG: C.S.L. Liability (B.I. & P.D.)
==================================================================================
 ## Date:12/11/1995  Entered By: JPARKER     Subject:RC                        #
 ---------------------------------------------------------------------------------
  Completed...C/A Large Claim Report - Liab
                              Page    1
```



Report No. DAR030             NORTHLAND INSURANCE COMPANIES              Page    2
(CXDM001/CXDM003)                   CLAIM FILE NOTES                Date 12/05/01
                                    Printed: TSLANE

Policy.: 21 TF209197  000002                    Print all claim file notes entered
==================================================================================
==================================================================================
 ## Date:12/13/1995  Entered By: GCRECELI    Subject:GN                          #
----------------------------------------------------------------------------------
   BEGIN OVERRIDE:  OWNED AUTO POLICY.  TRUCK DRIVER JUST COMPLETED A
   LEASE TRIP FOR INSD.--GOING AFTER LOAD FOR LESSOR.  CORRECTED LEASE
   SENT.
==================================================================================
 ## Date:12/27/1995  Entered By: JPARKER    Subject:GN                           #
----------------------------------------------------------------------------------
   letter of rep recd from atty, i have explained our position and have
   had no response to date. still waiting on policy to copy, underwirt
   ing working on it . i have requested from maryanne k.
==================================================================================
 ## Date:12/27/1995  Entered By: JPARKER    Subject:DI                           #
----------------------------------------------------------------------------------
   Set diary of 01/26/96 - policy exchanged with lincoln general
==================================================================================
 ## Date: 1/29/1996  Entered By: JPARKER    Subject:GN                           #
----------------------------------------------------------------------------------
   i have advised atty we feel insured not involved in this. no respons
   e to date.
==================================================================================
 ## Date: 2/27/1996  Entered By: JPARKER    Subject:GN                           #
----------------------------------------------------------------------------------
   still no activity to speak of, lincoln general has advised that they
   disagree with our decision. i have had no response from the atty rep
   the deceased yet.
==================================================================================
 ## Date: 2/27/1996  Entered By: JPARKER    Subject:DI                           #
----------------------------------------------------------------------------------
   Set diary of 03/11/96 -
                          update reinsurers
==================================================================================
 ## Date: 3/19/1996  Entered By: JPARKER    Subject:DI                           #
----------------------------------------------------------------------------------
   Set diary of 04/18/96 -
                          update reinsurers 5-96
==================================================================================
 ## Date: 4/11/1996  Entered By: JPARKER    Subject:GN                           #
----------------------------------------------------------------------------------
   tto agent, suit recd today, he is going to fax it to me
==================================================================================
 ## Date: 4/11/1996  Entered By: JPARKER    Subject:DI                           #
----------------------------------------------------------------------------------
   Set diary of 04/12/96 -
                          update reinsurers 5-96
==================================================================================
 ## Date: 4/12/1996  Entered By: JPARKER    Subject:DI                           #
----------------------------------------------------------------------------------
   Set diary of 04/15/96 - suit recd?
                          update reinsurers 5-96
==================================================================================

000003

Policy.: 21 TF209197  000002                        Print all claim file notes entered
=====================================================================================
## Date: 4/15/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
Message to: JPARKER Message from: GCRECELI
LET'S JUST SEND A SIMPLE LETTER ACKNOWLEDGING RECEIPT OF SUIT, GIVIN
THEM LOU'S NAME, AND SAYING THAT ALL COVERAGE DEFENSES PREVIOUSLY
LISTED REMAIN, AND WE WILL ADVISE THEM FURTHER AFTER REVIEWING
COMPLAINT.
*
GAIL, I TTO LOU BRICKLIN. HE SAID IT IS POSSIBLE TO FILE A LAWSUIT
WITH JUST A SUMMONS. HOWEVER THEY CANNOT DEFAULT WITH OUT A COMPLAIN
HE WAS GOING TO GO AHEAD AND FORCE PLAINTIFF TO FILE A COMPLAINT AND
I WILL GIVE TO YOU WHEN RECD. SHOULD I HOLD OFF ON RES OF RIGHTS UNT
WE SEE THE ALLEGATIONS, OR SIMPLY REITERATE MY EARLIER ONE?
=====================================================================================
## Date: 5/29/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
waiting on plaintiff to file petition, once that recd, we can better
analyze coverage position.
=====================================================================================
## Date: 6/25/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
petition filed , see file for full review of same.
=====================================================================================
## Date: 7/23/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
see file for full details. counsel for jhm has joined 3 addl parties
on allegation that traffic light was bad. will diary 30 days and do
follow up review with m.d., g.c. and l.c. as there have been some
developments. waiting on ira's thoughts on d.j. and also for
everyone to return from vacation.
=====================================================================================
## Date: 8/30/1996  Entered By: JPARKER     Subject:DI                            #
-------------------------------------------------------------------------------------
Set diary of 09/30/96 - review with larry colburn
=====================================================================================
## Date:11/08/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
i tto lou bricklin, he has not tto ira yet, will do so and get me
his opinion soon. called insured and updated.
=====================================================================================
## Date:12/11/1996  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
=====================================================================================
## Date: 1/13/1997  Entered By: JPARKER     Subject:DI                            #
-------------------------------------------------------------------------------------
Set diary of 01/20/97 - FEEDBACK FROM IRA AND BRICKLIN
=====================================================================================
## Date: 2/05/1997  Entered By: JPARKER     Subject:GN                            #
-------------------------------------------------------------------------------------
REQUESTED EVAL FROM BRICKLIN AND IRA L.

Report No. DAR030                NORTHLAND INSURANCE COMPANIES            Page    4
(CXDM001/CXDM003)                      CLAIM FILE NOTES                Date 12/05/01
                                       Printed: TSLANE
Policy.: 21 TF209197  000002                    Print all claim file notes entered
===============================================================================
===============================================================================
 ## Date: 4/10/1997   Entered By: JPARKER      Subject:DI                     #
 ------------------------------------------------------------------------------
    Set diary of 06/09/97 -
                              DEPO SUMMARIES
===============================================================================
 ## Date: 5/12/1997   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    recd eval from counsel, they rec we take some depos and then
    move for summary judgment. i okayed that, but one delay is that statts
    the driver has ongoing criminal charges pending and cannot testify
    until that is resolved. they do expect it may be worked out shortly
===============================================================================
 ## Date:10/13/1997   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    statts has now worked out plea, so depos to go forward shortly, as
    soon as we rec. that, lou bricklin will give me his eval. i will
    update following that
===============================================================================
 ## Date:10/29/1997   Entered By: JPARKER      Subject:DI                     #
 ------------------------------------------------------------------------------
    Set diary of 11/05/97 -
                              DEPO SUMMARIES
===============================================================================
 ## Date:10/29/1997   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    DEF COUNSEL MET WITH INSD, THEY NOW ADMIT TO ALTERING THE LEASE
    AFTER THE ACCIDENT, OUR EXPOSURE GREATLY INCREASED HERE.
===============================================================================
 ## Date:11/12/1997   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    REVIEWED WITH MD AND GC, I WILL REVIEW DEPOS, AND LIKELY PROCEED
    WITH MSJ ON AGENCY. WILL REVIEW COUNSEL'S EVAL ON DAMAGES
===============================================================================
 ## Date:11/19/1997   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    discussed with bob dols, i updated him on this and indicated to him
    we will be looking at the reserve as soon as eval. recd from counsel
    i will let him know what we decide to do.
===============================================================================
 ## Date: 2/06/1998   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    RECD EVAL. FROM LOU BRICKLIN, HE PUTS VALUE AT 750-900 WITHOUT REGAR
    D TO ANY PUUNITIVE DAMAGES. NO DEMAND FROM PLAINTIFF YET.
===============================================================================
 ## Date: 2/17/1998   Entered By: JPARKER      Subject:DI                     #
 ------------------------------------------------------------------------------
    Set diary of 03/19/98 - COUNSEL REPORT, REVIEW RESERVE
===============================================================================
 ## Date: 7/02/1998   Entered By: JPARKER      Subject:GN                     #
 ------------------------------------------------------------------------------
    PLAINTIFF NOW IDNICATES HE WOULD LIKELY TAKE 2 MILLION TO SETTLE ALL
                              Page    4

                                                                  000005

olicy: 21 TF209197  000002                        Print all claim file notes entered
================================================================================
   CLAIMS. WE WILL HAVE TO WAIT FOR LINCOLN TO TENDER THEIR POLICY, AND
   THEN SEE IF WE CAN GET A SUITABLE POT TOGETHER WITH ALL DEF. AND
   GET THESE SETTLED
================================================================================
## Date: 2/09/1999  Entered By: JPARKER        Subject:GN                        #
--------------------------------------------------------------------------------
   lincoln wants us to split any offer on a pro-rata basis, and then
   arbitrate or litigate the coverage issue. i have refused, as we
   clearly have coverage excess to theirs. i have asked several times
   for them to justify their position, but they will not. in fact their
   counsel told lou bricklin, he agreed with our position, i have
   indicated we will wait until they have exhausted their 750,000.
================================================================================
## Date: 4/28/1999  Entered By: JPARKER        Subject:DI                        #
--------------------------------------------------------------------------------
   Set diary of 05/28/99 - ira's rec.
                        UPDATE INSD
================================================================================
## Date:11/01/1999  Entered By: TSLANE        Subject:GN                         #
--------------------------------------------------------------------------------
   reviewed file
   1030am called counsel, lou--lmtc
================================================================================
## Date:11/01/1999  Entered By: TSLANE        Subject:GN                         #
--------------------------------------------------------------------------------
   1110am ret counsel call, lou 215-665-3400 -- lmtc
================================================================================
## Date:11/01/1999  Entered By: TSLANE        Subject:GN                         #
--------------------------------------------------------------------------------
   240pm ret counsel call, lou-lmtc on pm
================================================================================
## Date:11/01/1999  Entered By: TSLANE        Subject:GN                         #
--------------------------------------------------------------------------------
   340pm counsel called, lou -
   he just sent ltr out over the weekend
   have been asking lincoln to tender their limits for quite some time
   law is clear that they should go first but lincoln has refused & wil
   l not tell us why
   pltf atny is moving to get the case set for trial-should get trial
   date in the next couple months
   we have sent them our legal reasoning -lincoln atny is telling us
   that he agrees w/us but cannot get lincoln to commit
   said he has just dictated on the damages issues
   he is going to round table w/3-4 of the senior atny to get # on this
   but he feels that case worth around 900-1.25 mil but wants to get
   some input
   has also asked lincoln counsel to give us their eval of damages
   he will get out to me the summary of the damages in couple days &
   let me know once they roundtable
   mulligan depo was taken yr ago & no one noticed us but there was 5
   defendants there -- said there is nothing in file -- he got the
   transcript of the depo & now has gotten demand of specials from
                              Page    5

Report No. DAR030                 NORTHLAND INSURANCE COMPANIES              Page    6
(CXDM001/CXDM003)                      CLAIM FILE NOTES                 Date 12/05/01
                                      Printed: TSLANE
Policy.: 21 TF209197  000002                    Print all claim file notes entered
==========================================================================
     mulligans atny -- from quick review he has done so far it appears
     that she might have had surg - needs to go through it more thoroughl
     y but thinks we might need an ime & do some more invest but will get
     that out w/ltr also
     said his last conversation w/jp was to discuss that we prob need to
     get case resolved & not let the issue btwn us & lincoln allow the
     case to be tried & to get arrangement worked out w/lincoln & get
     case settled
     said juries are all over the board on conscious pn & suff claims but
     usu bring big money
     pltf formal demand 4mil but thinks settle for 2-3
     not sure that his # would settle the case but he really does not see
     jury in that cty giving more than million for this case--both wd cas
     es together
==========================================================================
 ## Date:11/04/1999  Entered By: TSLANE       Subject:GN                   #
 --------------------------------------------------------------------------
     125pm called counsel, lou-
     lm on pm - told him wanted to clarify for now we want to put pressur
     e on lincoln to tender their limits since we think they is prim
     not interested in 50/50 at the present time but if trial set & getti
     ng close then we may need to consider it but for rt now still feel
     very strongly that lincoln primary & they have not prov any proof to
     the contrary
==========================================================================
 ## Date:11/08/1999  Entered By: TSLANE       Subject:GN                   #
 --------------------------------------------------------------------------
     called bob dols --
     updated him on coverage & damages - indicated we would be bumping
     reserves - not happy thought lincoln gen had accepted prim cov &
     explained even if they had value of cases w/conscious pn & suffering
     that the values would exceed their cov
     wants to know when we bump the reserves
==========================================================================
 ## Date:11/11/1999  Entered By: TSLANE       Subject:GN                   #
 --------------------------------------------------------------------------
     Message to: JPARKER Message from: TSLANE
==========================================================================
 ## Date:11/24/1999  Entered By: TSLANE       Subject:GN                   #
 --------------------------------------------------------------------------
     recd detail eval of case for settlement --see file for details
     counsel has asked pipa if we should subpeona the school recs of the
     6 kids to determine how long they actually lived w/the cliffords as
     that is not clear in the depos
==========================================================================
 ## Date:11/29/1999  Entered By: TSLANE       Subject:GN                   #
 --------------------------------------------------------------------------
     did reserve analysis - total increase of $600,000
     $400,000 on wrongful death claims & $200,000 on mulligan
     sent ltr to reins & ga notifying of reserve increase
     ...recd fax from counsel -
     case has been removed from trial calendar due to addtl discovery
                                      Page    6

Report No. DAR030                NORTHLAND INSURANCE COMPANIES                    Page    7
(CXDM001/CXDM003)                     CLAIM FILE NOTES                        Date 12/05/01
                                      Printed: TSLANE
Policy.: 21 TF209197  000002                   Print all claim file notes entered
================================================================================
     needed on mulligan case -- will not be recert for trial until case
     ready to be tried
================================================================================
 ## Date:11/29/1999  Entered By: TSLANE      Subject:GN                          #
--------------------------------------------------------------------------------
     140pm called counsel, lou-lmtc
================================================================================
 ## Date:11/29/1999  Entered By: TSLANE      Subject:RC                          #
--------------------------------------------------------------------------------
     Completed...C/A Large Claim Report - Liab
================================================================================
 ## Date:11/30/1999  Entered By: TSLANE      Subject:GN                          #
--------------------------------------------------------------------------------
     415PM RET COUNSEL CALL, MOIRA --
     EVERYONE ORIGINALLY FELT MULLIGAN CLAIM WAS SMALL & NO ONE UPDATED
     THEM & LET THEM KNOW THAT SHE HAD HAD SURG
     SHE HAS COMMITTEE W/2 OTHER ATNY IN OFFICE - HER CLAIM IS SUBJECTIVE
     THEY THINK IT IS SIG CLAIM -- HAVE TALKED AMONGST THEMSELVES BUT
     DO NOT HAVE PLTF EXP REPORT - THEY EXPECTED TO HAVE REPORT BY NOW
     HAS SENT FU LTR ASKING FOR IT
     UNCLEAR HOW THE VOC WILL EVAL HER CLAIM - PAST & FUTURE WL TO DATE
     COULD BE 200-250K
     MULLIGAN WAS VERY ACTIVE PRIOR TO THE AX - NOW SHE IS NOT
     HAS TT PLTF ATNY RE: DEMAND BUT IS NOT AUTH TO MAKE DEMAND UNTIL
     EXP REPORT IS IN BUT OFF THE RECORD SAID SOMETHING ABOUT 150K
     SHE HAS LOST LOT OF TIME OVER LAST YR FROM WORK & NOT EVEN SURE WHER
     E SHE IS WORKING AT THIS TIME
     IF WE CANNOT SETTLE THEN NEED TO GET IME & POSS VOC REHAB TO REBUT
     THE PLTF
     GOING TO BE HARD FOR PLTF TO ARGUE SHE CAN WORK 35 HR BUT NOT 45 HRS
     TOLD HER ONCE HAD EXP REPORT TO LET ME KNOW - WE HOPEFULLY WILL HAVE
     DEMAND THEN & CAN DECIDE WHERE TO GO FROM THERE
================================================================================
 ## Date:12/02/1999  Entered By: TSLANE      Subject:GN                          #
--------------------------------------------------------------------------------
     355pm called counsel, ira -- ext 202 -- lmtc on pm
================================================================================
 ## Date:12/03/1999  Entered By: TSLANE      Subject:GN                          #
--------------------------------------------------------------------------------
     830am  --

000008



## Date:12/14/1999  Entered By: TSLANE       Subject:GN                    #

recd fax from counsel - pltf atny for wd cases very anxious to settl
e -- pltf atny upset that trial has been postponed indef
he also mentioned delay damages-they are attainable 1 yr after suit
filed & if no offer made w/in 25% of jury verdict then pltf can get
delay damages & interest has been running at 8.25%
have new exp report on conscious pn & suffering - no new info

## Date:12/14/1999  Entered By: TSLANE       Subject:GN                    #

850am called counsel, lou --
he did not get sense from pipa either way if they are willing to go
first as pltf atny alluded to
he thinks that since lincoln general looking at these cases as 1.2-
1.5 mill cases that they prob figure their money is gone esp given
the mulligan case
told him i want commitment from lincoln as to what they are willing
to do & see if they will tender their money & then we can decide if
we want to add anything
told him i felt if we could get these cases settled for 1 mil or les
s we should & he said if that is poss then we should jump at it
said we have tried in past to get lincoln to put money on table but
will see what happens now - they may be motivated to settle now esp
given the fact their limits are gone
he will call pipa & let me know
said pltf atny still talking about the jury appeal & the brady bunch
factor -- demand from pltf now 2 mil but if can get settled soon thi
nks he can get his clients to take sub less

000009

Report No. DAR030                    NORTHLAND INSURANCE COMPANIES           Page    9
(CXDM001/CXDM003)                         CLAIM FILE NOTES                   Date 12/05/01
                                          Printed: TSLANE
Policy.: 21 TF209197  000002                        Print all claim file notes entered
============================================================================
 ## Date:12/21/1999  Entered By: TSLANE        Subject:GN                            #
----------------------------------------------------------------------------
     210pm called counsel, lou-
     has ltr coming out to me
     has lm for pipa w/respect to settlement issue -- he wants to know if
     northland will arb if the settlement does not exceed 1.5 mil
     pipa responded w/they would put their 750 first if we agreed to arb
     the primacy issue if the cases settle for less than 1.5 -- told him
     we would agree to that bc i think moot issue
     got voc exp report from atny kwak on mulligan -- is sending me copy
     they project well over 1 mill dollars - there are 3 components --
     wage loss for wage diff from 70 hrs to 40 hrs now -- over work life
     exp & 2) if someone mildly disabled the stat show the work life exp
     less -- she is going to work # of yrs less -- thinks it is 10 yrs
     which is a large component
     3) loss of value of household serv - does not maintain the house
     anymore
     comes up w/very large # -- will have to get our own econ to rebut
     bc there are many areas to poke holes w/him
     told him to go ahead & hire the econ on mulligan
     he will call pipa asap & then get an offer on the table to pltf atny
     to see if they can get this resolved
============================================================================
 ## Date:12/28/1999  Entered By: TSLANE        Subject:GN                            #
----------------------------------------------------------------------------
     845am ret lou call -
     he has traded messages w/pipa
     they will agree to tender their 750k if we agree in writing to arb
     if all claims settle under 1.5 mil & w/in 60 days of underlying
     claims being resolved - agreed that was fine & he will get ltr out
     getting calls every couple days from pltf atny so serious in settlin
     g -- discussed proper starting point to get where we want to settle
     the case at -- will think about it & once has generals 750k we will
     begin the neg
     he is thinking 800-850k opening offer
============================================================================
 ## Date: 1/04/2000  Entered By: TSLANE        Subject:GN                            #
----------------------------------------------------------------------------
     recd econ report on mulligan
     econ projects long term loss  of earning capacity btwn 665k & 978k
     depending on diff assumptions
     loss of household serv addtl valued at $143k
     there are many assumptions that we can take issue w/. ie that she
     would have worked 54hrs/wk until she retired, etc
     could also make argument that since she is around the house more the
     re is no household serv claim
============================================================================
 ## Date: 1/04/2000  Entered By: TSLANE        Subject:GN                            #
----------------------------------------------------------------------------
     840am ret def counsel call, moira -- lmtc
============================================================================

                                                              000010

Report No. DAR030                NORTHLAND INSURANCE COMPANIES                Page   10
CXDM001/CXDM003)                       CLAIM FILE NOTES                      Date 12/05/01
                                        Printed: TSLANE
Policy.: 21 TF209197  000002                       Print all claim file notes entered
=========================================================================================
 ## Date: 1/04/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   925am def counsel called, moira -
   THEY USU USE IRENE MENDOLSEN FOR THEIR ECON BUT IS GOINGTO CK W/LOU
   & THEN GET IT SET UP BC THEY HAD TALKED ABOUT GETTING ECON CLOSER TO
   VENUE BUT IRENE IS VERY QUALIFIED
   SHE WILL GET MOVING ON THAT & ALSO GET REQUESTS OUT TO UPDATE MEDS
   SINCE PLTF ATNY NOT COOPERATING OR GETTING US DEMAND
   TOLD HER I FELT WE HAD TO MOVE AHEAD AS THOUGH WE ARE GOING TO TRY
   IT BC PLTF ATNY IS NOT GOING TO GIVE REALISTIC DEMAND BASED ON THE
   ECON REPORT HE PROD
=========================================================================================
 ## Date: 1/05/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   counsel called, moira -- 1m on pm
   using jason walker as voc rehab exp & comes highly recom
   also getting ime set up - william tribola & has used him b4
   does not feel we can rely on pltf atny re: mulligan residuals
=========================================================================================
 ## Date: 1/05/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   1110am ret counsel call, moira -
   we have lincoln's 750k -- we have the auth to neg now so thought we
   should get offer out
   told her not comfortable making offer on mulligan yet - not enough
   info
   told her to go ahead & make offer 825k - both mulligan cases & they
   can make the apportionment -- told them at some time i might call
   the pltf atny directly but wanted them to make opening offer & see
   what happens
=========================================================================================
 ## Date: 1/13/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   recd cv on dr walker who is the voc exp for this case
=========================================================================================
 ## Date: 1/13/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   she had faxed ltr whether northland is willing to agree to arb wheth
   er its policy may be primary as opposed to concurrent or excess
   indicates they cannot commit to change until have auth from us
=========================================================================================
 ## Date: 1/13/2000   Entered By: TSLANE        Subject:GN                            #
-----------------------------------------------------------------------------------------
   1015am called counsel, moira -
   told her i did not have a prob arb if we were primary as opposed to
   concurrent or excess -- seemed like that was what we had agreed to
   she will get ball rolling on that
   got some new med bills from pltf on mulligan -- there is ltr from
   short term disability carrier indicating it was her last ck bc the
   dr had cert to rtw full time as rn
   she is subpeoning the meds on that bc that med report was not to
   pltf voc rehab exp
                                        Page    10

                                                                        000011

olicy.: 21 TF209197  000002                        Print all claim file notes entered
==================================================================================
     said after we get updated meds may want to consider redeposing pltf
     to update status
==================================================================================
 ## Date: 1/13/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     discussed w/jp --
     do not want to arb that we are prim & lincoln is excess bc we have
     2 mil dollar policy & if we get bad result then we would owe entire
     loss & we know that lincoln is prim
     will agree to arb whether we are concurrent or excess
     will not arb primacy issue unless lincoln agrees they are prim
     if they want to argue we are prim then file dec
     ok to agree to resolve underlying case & litigate the cov issue
     on prim but not arb
     will not agree to arb primacy issue if lincoln does not agree they
     are primary
==================================================================================
 ## Date: 1/13/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     1040am called counsel, moira -- lmtc asap
==================================================================================
 ## Date: 1/13/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     310pm ret counsel call, moira -
     told her we will not arb the issue of northland being primary unless
     lincoln agrees they are primary
     if lincoln does not agree then we will agree to litigate the cov
     issue once the underlying cases are resolved -- we want their 750k
     tendered & if not then we will consider filing dj
     lou is back from vacation & she will prob have him call me onthis
     tomorrow once she talks to him
==================================================================================
 ## Date: 1/18/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     750am ret counsel call, lou-lmtc on pm
==================================================================================
 ## Date: 1/24/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     1030am called counsel, lou-lmtc on pm
==================================================================================
 ## Date: 1/24/2000  Entered By: TSLANE          Subject:GN                          #
----------------------------------------------------------------------------------
     210pm ret counsel call, lou-
     conf call w/moira - has tt pipa - let him know what we wanted
     wanted him to agree that we would not arb the primacy issue
     said pipa said to call their people at lincoln general but lou said
     jerry had tried that months ago
     agreed that we wanted 750k tendered by lincoln general & if they
     want to pursue that northland policy is primary we will only agree
     to do that through litigation-dj but if they want to just discuss
     issue of concurrent or excess cov then we will agree to arb w/in
     60 days

                                                        000012

Policy.: 21 TF209197  000002                          Print all claim file notes entered
=================================================================================
    he will discuss w/pipa & be in touch
=================================================================================
  ## Date: 1/25/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    1125am called ira--lmtc on pm
=================================================================================
  ## Date: 1/31/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    took depo of dale clemons -- nothing in that depo chgs counsel
    conclusion that statts was working for jhm at time of ax & that
    jhm owes indem to insd
=================================================================================
  ## Date: 1/31/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    has gotten everything over to jasen walker to do voc assess on
    pltf mulligan
=================================================================================
  ## Date: 1/31/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    recd more docs in response to prod of docs
    some things missing & counsel has written asking for those
    appears pltf disability carrier would no longer pay short term dis
    benefits past 7/20/99 bc dr mendel cert her as capable of rtw full
    time as rn -- do not have that report
    counsel going to subpeona certain employ & med recs since getting
    little cooperation from pltf atny
=================================================================================
  ## Date: 1/31/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    pltf mulligan recd short term dis from 7/4/97-11/30/97 & then was
    released to rtw 12/1/97 so benefits suspended
    recd total of $7,741.54
    then recd short term disability from 3/18/99-7/19/99
    apparently her dr then rtw full time
    recd total of $6,219.71
=================================================================================
  ## Date: 1/31/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------
    Note: put Mulligan meds & other wl doc in sep expand file
=================================================================================
  ## Date: 2/04/2000   Entered By: TSLANE        Subject:GN                     #
---------------------------------------------------------------------------------

000013

Report No. DAR030                NORTHLAND INSURANCE COMPANIES              Page    13
(CXDM001/CXDM003)                      CLAIM FILE NOTES                  Date 12/05/01
                                       Printed: TSLANE
Policy: 21 TF209197   000002                        Print all claim file notes entered



=====================================================================================
## Date: 2/04/2000   Entered By: TSLANE        Subject:GN                          #
-------------------------------------------------------------------------------------
   12:40pm called counsel, lou-
   tt moira --
   pipa has never ret their calls - she is supposed to fu w/him today
   they had lm on pipa voice mail detailing our position
   he has met w.miller & almost positive he was deposed - said he does
   not dispute that the trip was solely for the benefit of jhm & that
   insd was not benefitting -- he agrees w/everything insd has said
   will let me know when he hears from pipa
=====================================================================================
## Date: 2/14/2000   Entered By: TSLANE        Subject:GN                          #
-------------------------------------------------------------------------------------
   recd copy of the diary mulligan kept
=====================================================================================
## Date: 2/14/2000   Entered By: TSLANE        Subject:GN                          #
-------------------------------------------------------------------------------------
   mulligan voc eval ime sched for 3/3 -- sent ck for advance retainer
=====================================================================================
## Date: 2/15/2000   Entered By: TSLANE        Subject:GN                          #
-------------------------------------------------------------------------------------
   pltf mulligan sched for ime 3/1 -- need pre pay of $650 - issued ck
=====================================================================================
## Date: 2/23/2000   Entered By: PKESTNER      Subject:GN                          #
-------------------------------------------------------------------------------------
   RECEIVED ATTY BILL, AUDITED BILL AND IN LINE, ISSUED DRAFT
   ///////
=====================================================================================
## Date: 2/25/2000   Entered By: PKESTNER      Subject:GN                          #
-------------------------------------------------------------------------------------
   spoke with counsel and the agreemenet with other carrier fell throug
   h. lookslike we will have to file a dj to settle coverage dispute. u
   pdated jerry and he will advise mike.
   ///////
=====================================================================================
## Date: 2/25/2000   Entered By: PKESTNER      Subject:DI                          #
-------------------------------------------------------------------------------------
   Set diary of 03/27/00 - await response
=====================================================================================
## Date: 2/25/2000   Entered By: JPARKER       Subject:GN                          #
-------------------------------------------------------------------------------------
   Reviewed with MD, ok to proceed with DJ/
                                    Page    13

000014

Report No. DAR030                    NORTHLAND INSURANCE COMPANIES                    Page    14
(CXDM001/CXDM003)                         CLAIM FILE NOTES                        Date 12/05/01
                                          Printed: TSLANE
Policy.: 21 TF209197   000002                    Print all claim file notes entered

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

=================================================================
## Date: 2/29/2000   Entered By: PKESTNER    Subject:GN                    #
-----------------------------------------------------------------
   spoke with counsel and requested any depos of jmh employees, she wil
   l send them. advisd her of dec action.
=================================================================
## Date: 3/02/2000   Entered By: PKESTNER    Subject:RS                    #
-----------------------------------------------------------------
   Set initial reserve for $ 10000.00   for claimant #007
   .. MULLIGAN, CHERYL  CVG: C.S.L. LIABILITY (B.I. & P.D.)
=================================================================
## Date: 3/02/2000   Entered By: PKESTNER    Subject:GN                    #
-----------------------------------------------------------------
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
   ////////
=================================================================
## Date: 4/18/2000   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------
   1130am ret counsel call, moira - lmtc
=================================================================
## Date: 4/18/2000   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------
   340pm counsel called, moira -
   have voc rehab report & coming to me on mulligan
   discovery closing next fri & thinks everything done
   pltf atny anxious to list this for trial
   there will be conf & pick trial date - could have trial date as
   early as june
   said it did not appear dj has been filed - said we need to get dj
   filed asap bc do not want to try the case
   said maybe by filing dj lincoln will do something
   told her i would fu w/cov counsel
   voc rehab report on its way - told her i would touch base once recd
   that
   report says pltf can do sedentary work which is readily avail
   told her would fu & let her know what we wanted to do
=================================================================
## Date: 4/18/2000   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------
   345pm called ira -- ext 202 -- lmtc on pm
=================================================================
## Date: 4/19/2000   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
=================================================================
## Date: 4/24/2000   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------

Page    14

000015

eport No. DAR030                    NORTHLAND INSURANCE COMPANIES                    Page   15
CXDM001/CXDM003)                         CLAIM FILE NOTES                    Date 12/05/01
                                          Printed: TSLANE
olicy : 21 TF209197   000002                        Print all claim file notes entered
============================================================================
    pltf has filed cert of readiness & case may go to trial in june
============================================================================
## Date: 4/28/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   1050am called counsel, lou-
   told him i was going to call pippa directly to try & get joint offer
   s out reserving the right to litigate cov issue after
   he really has not been doing much on case & will have moira call me
   to discuss value of mulligan case
============================================================================
## Date: 5/01/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   1025AM CALLED IRA-LMTC ON PM
============================================================================
## Date: 5/03/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   250pm ret counsel call, moira-
   they had done eval on this case when they eval death cases but did
   not have as much info on the wl & future wl claim
   considering they felt the future wl claim was 200-300k they felt
   the case was worth 600-800k
   now their appears to be no future wl claim according to our voc exp
   def thinks the claim is worth 200-400k
   thinks the claim that pltf saw the other pltfs die - the consciousne
   ss of karen clifford - she knew them & had trauma trng & could not
   help them - thinks that does increase the value of the claim
   said that pltf mulligan will be a sympathetic witness
   told her i was going to contact pipa & see if we could get something
   worked out so we could get some offers out & agree to litigate after
   the claims are resolved
   told her i was going to try & work something out & then contact the
   pltf attnys
============================================================================
## Date: 5/03/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   335pm called def atny, mike pipa --lmtc on pm
============================================================================
## Date: 5/05/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   255pm ret mike pipa call - lmtc on pm
============================================================================
## Date: 5/05/2000  Entered By: TSLANE       Subject:GN                    #
----------------------------------------------------------------------------
   320pm ret mike pipa call -
   told him we are interested in discussing settlement
   about ready to file dec action
   told him interested in getting rid of the pltfs cases & getting
   offers on table
   told him i was looking at 800-1mil on the death cases & 150-200k on
   mulligan case
   does not think that would get it settled but agrees that is good
   place to start

000016

Report No. DAR030                    NORTHLAND INSURANCE COMPANIES                    Page    16
(CXDM001/CXDM003)                          CLAIM FILE NOTES                     Date 12/05/01
                                            Printed: TSLANE
Policy : 21 TF209197  000002                          Print all claim file notes entered
================================================================================
    he will call lincoln general & prob have the adj call me direct
================================================================================
## Date: 5/05/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------
    345pm ret mike mcgovern @ lincoln general 800-876-3350 ext 256
    said he has cov counsel retained to file dec action
    they had proposed to settle the case & proceed to binding arb
    told him we would be willing to try & resolve the underlying cases &
    litigate the cov issue
    this is hard coal mining cty - 30% unemploy rate
    avg age of residents is 50s
    they would consider agreeing to settling the cases & litigating the
    dec action
    address: 3350 whiteford rd  york, pa 17402
    claim #39737
    fax #717-751-0165
    email: mike.mcgovern@lincolngeneral.com
    said to get ltr outlining what we are thinking & then he will review
    & get back to me
    his 1 condition is that we resolve this claim quickly
    told him we are in process of filing dec & plan on proceeding w/the
    dec as the tort claim progresses & get it all resolved asap
================================================================================
## Date: 5/10/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------
    325pm called ira -- lmtc on pm
================================================================================
## Date: 5/10/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------
    faxed proposal to lincoln general that we split it 50/50 & then
    proceed w/dj to settle the cov issue
================================================================================
## Date: 5/10/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------
    reviewed w/md & jp
    have auth to settle the 2 death claims 500-750k
    mulligan claim auth to settle 300-375k
================================================================================
## Date: 5/15/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------
    1230pm
================================================================================
## Date: 5/15/2000  Entered By: TSLANE        Subject:GN                              #
--------------------------------------------------------------------------------

000017

Report No. DAR030                    NORTHLAND INSURANCE COMPANIES           Page  17
(CXDM001/CXDM003)                       CLAIM FILE NOTES                 Date 12/05/01
                                        Printed: TSLANE
Policy.: 21 TF209197  000002                   Print all claim file notes entered

===========================================================================

## Date: 5/16/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   930am called mike @ licoln general -lmtc on pm (out of office 5/17)
   930am ret counsel call, moira -
   wanted status of where we were on neg & w/lincoln general
   told her we had proposal to split 50/50 w/linconln gen & waiting for
   their response
   have not called pltf atny until get response from lincoln general
   no trial date - case management conf not set yet & that is when we w
   ill get trial date & will be date certain & will let me know when
   that is sched
===========================================================================

## Date: 5/17/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   400pm ret mike call @ lincoln general -- lmtc on pm
===========================================================================

## Date: 5/18/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   950am called mike @ lincoln general --
   they are willing to do 50/50 split - not sure 1.5 mil is going to do
   it but good start
   asked him about openening offer & he wants to do conference call
   next wk w/his atny & ours -- all 4 of us
   said he will call pipa & i can call lou & we can talk later today
   about time next wk to conf this
===========================================================================

## Date: 5/18/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   955am called counsel, tt lou --
   said either am on mon or after 2 on tues
   asked him about local counsel for ira on the dj
   he will get couple people in mind & call ira w/suggestions of local
   counsel to use
   will call him when we get conf call set up
===========================================================================

## Date: 5/18/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   1020am ret mike call @ licoln gen
   pipa avail mon morn
   lmtc on pm w/time but mon morn works for me & my counsel too
   suggested 9am eastern time
===========================================================================

## Date: 5/18/2000  Entered By: TSLANE      Subject:GN                    #
------------------------------------------------------------------
   1255pm ret mike call @ lincoln gen -- lm on pm
   conf call set for 9am - asked him to go ahead & initiate it at 9am
   eastern time - asked him to call all parties
   1255pm called counsel, lou-
   told him conf call set for mon morn at 9am
   mike mcgovern will be initiating the call
                              Page    17

000018

```
Report No. DAR030              NORTHLAND INSURANCE COMPANIES          Page   18
(CXDM001/CXDM003)                    CLAIM FILE NOTES              Date 12/05/01
                                     Printed: TSLANE
Policy.: 21 TF209197  000002                    Print all claim file notes entered
=============================================================================
   he will be there & also calling ira now w/some suggestions for local
   counsel
=============================================================================
 ## Date: 5/22/2000   Entered By: TSLANE     Subject:GN                    #
-----------------------------------------------------------------------------
   800am conf call w/lou b, moira & mike mcgovern --
   discussed schukiyill county - very high unemployment there
   discussed values of the wd claims -- mcgovern thinks if we could
   bring them in for 800,000 we would be doing well but thinks might
   have to go more like 900-950k to get it settled - does not think
   million dollar case
   lou pointed out that nothing from pltf atny has indicated he will
   settle for less than 1 mil but he has never had any offers to respon
   d to
   lou said pltf atny has tried to get the case set for trial couple
   times but no luck
   told him we thought top end more like 750
   agreed starting offer $500,000
   delay damages - started 1 yr from when suit filed - april 96 cliffor
   d case filed
   delay damages start in april 97 (prime +1)
   97-8.25
   98-8.5
   99-7.75
   25% delay damages & by october 30%
   can stop the delay damages by making qualifying offer - if verdict
   does not exceed verdict by 125% then only liable up to day offer
   made
   mulligan case - he does not see jury buying the long term wl
   mcgovern was lower on her case at 250k - lou was 350k
   there is no demand on mulligan - thinks we should start lower at
   75-100k according to lou
   mcgovern said he is not afraid of tryin this case w.o the death case
   s bc pltf is not local & they take care of their own
   no longterm wl, no demand, cerv fusion - conservative county so lou
   thinks we should start at 75-100k
   lou will make the offers -- will start at 75-100 on mulligan &
   then will open 500 on death cases as lump & they decide how to
   distribute
   he will make some phone calls & let us know
=============================================================================
 ## Date: 5/22/2000   Entered By: TSLANE     Subject:GN                    #
-----------------------------------------------------------------------------
   sent reins update
=============================================================================
 ## Date: 5/31/2000   Entered By: TSLANE     Subject:GN                    #
-----------------------------------------------------------------------------
   940am called counsel, lou-lmtc on pm
=============================================================================
 ## Date: 5/31/2000   Entered By: TSLANE     Subject:GN                    #
-----------------------------------------------------------------------------
   240pm counsel called, lou-
```

000019

Report No. DAR030          NORTHLAND INSURANCE COMPANIES          Page    19
(CXDM001/CXDM003)                CLAIM FILE NOTES               Date 12/05/01
                                 Printed: TSLANE
Policy.: 21 TF209197  000002              Print all claim file notes entered
==================================================================================
      has tt pltf atny about 3 times - has offered 500k
      said he was not interested & said he would tt his clients then calle
      d back & asked what went into our eval but said he would tt his clie
      nts
      has tt all the adminstrators -- formal demand 2million - said he had
      some flexibility
      they want to wait until the pre trial to hear what # the judge puts
      on the case & they will respect that more but does not
      offered 75k on mulligan - pltf faxed back ltr that they would
      accept 175k -- he would recom 125k but did not think he could get
      the pltf to take it unless the judge would tell her that
      will see what happens w/that at the pretrial but it will clearly
      settle
      recd report by local path that indicates that there was no massive
      head inj - no reason to believe mr clifford that he was immed
      unconscious & would take 1-2 min to go unconcscious
      since he broke his back he would have been paralyzed & would have
      had time to appreciate the fact he was paralyzed
      we do not have this report although dated 4/99 was never disclosed
      although pltf atny said he disclosed this to us
      he will fax me the report
      have 1st report from pltf exp that said there was no conscious pn &
      suffering & if not settled then we will try & retain him as our exp
      wed june 7 1030am central time -- will prob not hear from them until
      1 hr later if not longer -- will need to be avail by phone
==================================================================================
## Date: 6/02/2000   Entered By: TSLANE       Subject:GN                       #
----------------------------------------------------------------------------------
      ...1120am called mike @ lincoln general --
      out of office until 6/12 -- lmtc on pm re: pretrial on 6/7
==================================================================================
## Date: 6/06/2000   Entered By: TSLANE       Subject:GN                       #
----------------------------------------------------------------------------------
      825am called counsel, moira - lmtc on pm
==================================================================================
## Date: 6/06/2000   Entered By: TSLANE       Subject:GN                       #
----------------------------------------------------------------------------------
      1005am ret counsel call, moira- tt helen
      she is not in the office today
      lm for lou tc
==================================================================================
## Date: 6/06/2000   Entered By: TSLANE       Subject:GN                       #
----------------------------------------------------------------------------------
      counsel called, lou
      confirmed pretrial is at 1130 eastern time/1030 our time
      said it will prob be closer to an hour b4 we hear from him
      said he will call me when it is over to let me know what happened
      told him mcgovern on vaca til next mon & not sure about auth from
      lincoln to settle cases
      he will ck w/pipa & get back to me
==================================================================================
                              Page    19

====================================================================
## Date: 6/06/2000   Entered By: TSLANE      Subject:GN                      #
--------------------------------------------------------------------
   counsel called, lou-lm on pm
   tt pipa sec - there is another adj that has auth & will be handling
   either the adj or pipa will be calling me
====================================================================
## Date: 6/06/2000   Entered By: TSLANE      Subject:GN                      #
--------------------------------------------------------------------
   145pm ret sandy ikama @ lincoln general - 800-876-3350 ext 244
   she said they are willing to put up their policy limits tomorrow
   then resolve the cov issues
   she will be around all day if need to discuss
   told her mulligan settle somewhere btwn 125-175k - well below
   what any of us eval at so just matter of the death cases
====================================================================
## Date: 6/07/2000   Entered By: TSLANE      Subject:GN                      #
--------------------------------------------------------------------
   1145am counsel called, lou -
   heard contentions about the case - does not think that the punitive
   damage case will fly but also does not like our defense on compensa-
   tory damages that this is not a very nice family
   said the conscious pn & suffering of karen clifford is going to
   bring a lot of money from jury - very impressed w/her conscious pn
   & suffering claim & thinks it will bring big money from jury
   said pltf atny is going to claim privilege & refuse to allow the
   original pathologist who test that clmt robert clifford had no
   conscious pn & suffering & if successful then we are going to find
   our own expert & file motion w/judge to allow late exp but clearly
   even if robert had any conscious pn & suffering it was very short-
   only couple minutes -- said he is going to look into the case that
   would allow pltf atny to claim privilege
   if does not settle then will rule on motions in limine w/regards to
   punitives, etc & then would be willing to do another settlement conf
   said judge is putting together ltr w/his recomendations on settlemet
   values & that will be sent out in wk or so & said he will let us
   know as soon as he receives
   said he thinks judge will come in in low hundreds on mulligan & we
   can settle that but said judge is going to be sig higher on the
   death cases than we had eval them -- said he thinks the karen cliffo
   rd claim is worth lot of money
   will let me know asap when gets the recom from judge
   trial date sometime in oct or dec so nothing in near future
   said the judge was very familiar w/case & obvious he had read
   everything provided to him in depth
====================================================================
## Date: 6/15/2000   Entered By: TSLANE      Subject:GN                      #
--------------------------------------------------------------------
   910am ret counsel call, lou-
   recd ltr from judge - will fax it to me
   700k on karen clifford & 300k for robert clifford & 125k on mulligan
   felt mulligan was straightforward - worked sig # of hours & decrease
   hours & ongoing pn

olicy.: 21 TF209197  000002              Print all claim file notes entered
=============================================================================
       clifford claim very substantial - thinks offer serious but not
       enough -does not believe that pltf would get to jury on punitive
       but 2 people dead & delay damages
       feels there would be large veh bc pltfs doing nothing more than
       sitting at red light & then were crushed by truck
       diff btwn is the pn & suffering claim - children of mrs clifford
       have much greater claim than mr cliffords children
       puts emphasis on the orphaned children & attakcing the parenting
       would prob backfire when talking of orphaned children
       would recom township & emr make only nominal offer
       he is going to wait couple days & then contact pltfs re: settlement
       told him to dump the mulligan case for whatever we can get it
       he will also fu w/pipa to make sure they are on board to get this
       resolved for judges figures
       told him did not have auth to settle the cliffords claim for that
       money but felt could get it if we can get it settled
       local counsel just indicated he got the stuff from ira & dj should
       be filed asap
=============================================================================
## Date: 6/15/2000  Entered By: TSLANE       Subject:GN                    #
-----------------------------------------------------------------------------
       discussed w.md - auth to settle for judges recom
       205pm called counsel, lou
       told him he had auth to settle for judges recom
=============================================================================
## Date: 6/19/2000  Entered By: TSLANE       Subject:GN                    #
-----------------------------------------------------------------------------
       trial date 10/9/00 w/jury selection on fri 10/6
       the issue of punitive damages will be heard on 10/6 also & clifford
       pltf atny pushing hard that the jury hear about punitives
=============================================================================
## Date: 6/26/2000  Entered By: TSLANE       Subject:GN                    #
-----------------------------------------------------------------------------
       counsel has made 125k offer on mulligan - pltf atny has said he will
       talk to his client but seems to have no control over her
=============================================================================
## Date: 6/27/2000  Entered By: TSLANE       Subject:GN                    #
-----------------------------------------------------------------------------
       745am called counsel, lou-
       spoke to clifford atny on fri - not optimistic that 1 mil is going
       to settle it - had tt rep of both estates - had thought judge would
       make lump sum & he had the reps under the assumption that it would
       be lump sum & split 50/50
       they have sense that they will not get reason until judge rules on
       punitive damage claim -- if denied then might get reason after that
       pltf atny first obstacle is getting over the money being split 50/50
       said he would be mtg w/his clients in next 2 wks - briefs are almost
       due at that time & will be working on those -- pltf atny said he wou
       ld be back in touch in next couple wks
       told him i have no prob paying settlement in lump sum & they split
       it up - he will let pltf know that
       pltf atny also said he would prob not recom the judges # but somethi
                                    Page   21

Report No. DAR030                 NORTHLAND INSURANCE COMPANIES          Page    22
(CXDM001/CXDM003)                      CLAIM FILE NOTES                  Date 12/05/01
                                       Printed: TSLANE

Policy.: 21 TF209197  000002                      Print all claim file notes entered
================================================================================
      ng more like 1.5 million -- counsel said he could recom that but we
      would not be willing to pay that based on judges recom
      waiting to hear back from both pltf atnys
================================================================================
  ## Date: 6/28/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      motions in limine due by 7/7 & briefing no later than 7/17
      there is briefing sched entered on punitive claims also - counsel
      will be filing brief on those issues
================================================================================
  ## Date: 7/05/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      1045am ret counsel call, lou--
      atny for cliffords really hung up on the punitive damages
      he said he would talk to his clients/recommend 1mil + delay damages
      he cannot say that his clients would take it
      delay damages are approx 275,000
      he has not put the 1 mil on the table yet & decided he should go bac
      k & tell pltf we are willing to pay the judges recom & see what he
      says - told him i need firm number but not willing to pay the 1 mil
      plus the delay damages
      he will tt atny on cliffords cases & let me know response
      mulligan atny has asked us to send the release for $125,000 - not
      sure if it is settled so they have asked him in cover ltr if case
      is actually settled or so
================================================================================
  ## Date: 7/11/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      recd counsel's motions in limine that have been filed
================================================================================
  ## Date: 7/14/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      840am mike @ lincoln general called -
      told him we had release out on mulligan claim - not sure but appeare
      d that one was going to settle
      tod him clifford atny said he would recom 1 mil plus delay damages o
      f $275,000 & at that time we told him we would pay what the judge
      recom
      will let him know once i hear more
================================================================================
  ## Date: 7/17/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      offer of 1 mil has been made to clifford atny - waiting for response
================================================================================
  ## Date: 7/19/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      1155am ret counsel call, moira - lmtc
================================================================================
  ## Date: 7/19/2000  Entered By: TSLANE       Subject:GN                      #
  -----------------------------------------------------------------------------
      230pm ret counsel call, moira --
      mulligan case settled - has release & needs to get settlement ck
                                    Page    22

Report No. DAR030                   NORTHLAND INSURANCE COMPANIES                Page    23
(CXDM001/CXDM003)                        CLAIM FILE NOTES                    Date 12/05/01
                                         Printed: TSLANE
Policy: 21 TF209197  000002                        Print all claim file notes entered
===========================================================================================
      suggested that we might want to call lincoln general to confirm
      & then send cks to her - there is required settlement notice that
      needs to go w/them
      settled for 125,000
      briefing the punitive issue & does not think will settle until the
      punitives are ruled on
      if ruled in our favor thinks they may take the million -- said that
      will prob not be ruled on until well into aug or poss sept
      the city settled mulligan's pd claim - judge had suggested & they
      handled
===========================================================================================
 ## Date: 7/19/2000   Entered By: TSLANE       Subject:GN                               #
-------------------------------------------------------------------------------------------
      called mike @ lincoln general - out of office until 7/24--lmtc on pm
===========================================================================================
 ## Date: 7/25/2000   Entered By: TSLANE       Subject:GN                               #
-------------------------------------------------------------------------------------------
      mike mcgovern called-lm on pm
      said he will send counsel ck for 1/2 but just needs ck lang & tax
      id #
      ...faxed info to lincoln general
      issued settlement ck & took remaining reserve & allocated to
      mulligan units
===========================================================================================
 ## Date: 7/25/2000   Entered By: TSLANE       Subject:RS                               #
-------------------------------------------------------------------------------------------
      Modified reserve to $ 337500.00  for claimant #003
      ... CLIFFORD, KAREN  CVG: C.S.L. LIABILITY (B.I. & P.D.)
===========================================================================================
 ## Date: 7/27/2000   Entered By: TSLANE       Subject:GN                               #
-------------------------------------------------------------------------------------------
      recd update - complaint has been filed for dj
      only 1 party not served to date
      venue probs -schuylkill cty has moved to middle dist from eastern
      dist & currently working on getting it moved to middle dist
      working on service & venue issues
===========================================================================================
 ## Date: 8/02/2000   Entered By: TSLANE       Subject:GN                               #
-------------------------------------------------------------------------------------------
      RECD FORMAL OFFER OF 1,287,500 TO SETTLE THE CLAIM
      ...220PM CALLED MIKE @ LINCOLN GENERAL -
      HIS PROB W/DELAY DAMAGES IS THAT MOST OF THE DELAY HAS BEEN ON THEIR
      PART
      SAID DEMAND NOT UNREASON
      HE WOULD CONSIDER SPLITTING THE DELAY DAMAGES W/THEM & TRYING TO GET
      THE CASE RESOLVED
      HE IS FINE W/SPLITTING THE DIFF
      ...DISCUSSED W/JP - OK TO SPLIT THE DIFF
      ...230PM CALLED LOU-IS
      TOLD HIM WE WANT TO SPLIT THE DIFF ON THE DELAY DAMAGES
      HE WILL LET THEM KNOW WE DID NOT WANT TO PAY ANYTHING MORE THAN JUDG
      RECOM BUT IN COMP WE WILL PAY 1/2
                                    Page    23

000024

Report No. DAR030                 NORTHLAND INSURANCE COMPANIES        Page   24
(CXDM001/CXDM003)                      CLAIM FILE NOTES                Date 12/05/01
                                       Printed: TSLANE
Policy.: 21 TF209197  000002                    Print all claim file notes entered
=================================================================================
     WILL CALL PLTF & LET ME KNOW
---------------------------------------------------------------------------------
 ## Date: 8/08/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     COUNSEL CALLED, LOU-LM ON PM
     PLTF BOTTOM LINE 1,250,000 - WILL NOT SPLIT THE DIFF W/US
=================================================================================
 ## Date: 8/08/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     CALLED MIKE @ LINCOLN GEN --
     OUT OF OFFICE UNTIL 8/10 -- LMTC ON PM
=================================================================================
 ## Date: 8/10/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     1250pm called mike @ lincoln general - lmtc on pm
=================================================================================
 ## Date: 8/10/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     tt mike @ lincoln general -
     he felt that the lost offer was take or leave it & since they left
     it we should proceed
     said we felt we need to settle the case & i had auth to settle it
     he will talk to his people & let me know if they are willing to go
     1/2
     told him they could give us the rest of their limits & then we would
     make up the diff to settle the cliffords case & then we would dimiss
     dj & would be done
     said they want their money back from us & not willing to do that
     he really thinks they will prevail on the dj & we will owe them
     back everything
     told him i did not agree but if not interested then lets settle
     clifford & litigate the coverage
     he will get back to me
=================================================================================
 ## Date: 8/10/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     205pm called counsel, lou - lm on pm working w/lincoln general to
     see what they wanted to do & would be back in touch when heard back
     from them
=================================================================================
 ## Date: 8/10/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     340pm mike @ lincoln general called -
     they will go 1/2 up to the 1.25 mill
     they want to proceed w/dj - are not interested in tendering the rest
     of their limits.
=================================================================================
 ## Date: 8/10/2000   Entered By: TSLANE         Subject:GN                      #
---------------------------------------------------------------------------------
     340pm called counsel, lou-
     told him ok to 1.25 but wanted to try & get it for less
     told him if it looked like we were losing settlement to just pay it

```
eport No. DAR030              NORTHLAND INSURANCE COMPANIES            Page   25
CXDM001/CXDM003)                  CLAIM FILE NOTES                  Date 12/05/01
                                   Printed: TSLANE
olicy : 21 TF209197  000002                  Print all claim file notes entered
==============================================================================
    but to try for something less
    he will call pltf & let me know
==============================================================================
 ## Date: 8/16/2000   Entered By: TSLANE        Subject:GN                    #
 ------------------------------------------------------------------------------
    105pm ▬▬▬▬▬▬▬ -
```



```
==============================================================================
 ## Date: 8/22/2000   Entered By: TSLANE        Subject:GN                    #
 ------------------------------------------------------------------------------
    counsel called, lou-
    settled for 1,225,000 - pltf atny sending confirming ltr & thinks
    will be equally split btwn the 2 claims
    will have to be ct approved due to death claims & 1 child is still
    minor
    will let me know when have hearing for approval & needs no cks until
    ct approved-thinks hearing date until september
==============================================================================
 ## Date: 8/22/2000   Entered By: TSLANE        Subject:GN                    #
 ------------------------------------------------------------------------------
    805am called mike mcgovern @ lincoln general -
    let him know case settled for 1,225,000 pending ct approval
    no cks needed until then
==============================================================================
 ## Date: 8/22/2000   Entered By: TSLANE        Subject:GN                    #
 ------------------------------------------------------------------------------
    recd update on dj - working on getting all summonses and complaints
    served -- addressing venue issues & dealing w/requests for dismissal
    s from pltf atny in underlying action
==============================================================================
 ## Date: 8/22/2000   Entered By: TSLANE        Subject:GN                    #
 ------------------------------------------------------------------------------
    1100am ▬▬▬▬▬▬ -
```



```
==============================================================================
                            Page    25
```

000026

Report No. DAR030                   NORTHLAND INSURANCE COMPANIES                  Page    26
(CXDM001/CXDM003)                        CLAIM FILE NOTES                    Date 12/05/01
                                          Printed: TSLANE
Policy.: 21 TF209197   000002                        Print all claim file notes entered
==============================================================================
 ## Date: 8/22/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    145pm ret counsel call, moira -
    paperwork in the process - pltf will have to petition the ct for
    approval
    has tt pltf atny & are using the judges recom on the settlement btwn
    the 2 estates
    857,500 for karen clifford
    367,500 for robert clifford
    will be sending releases out today
==============================================================================
 ## Date: 8/28/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    ████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████
==============================================================================
 ## Date: 8/31/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    ████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████████
    ██████████████████████████████████████████
==============================================================================
 ## Date: 9/11/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    recd order for discont on mulligan case
==============================================================================
 ## Date: 9/11/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    1125am ret cheryl lipsius call -- lmtc
==============================================================================
 ## Date: 9/11/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    ████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████
==============================================================================
 ## Date: 9/20/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    recd final invoice on mulligan
==============================================================================
 ## Date:10/04/2000   Entered By: TSLANE       Subject:GN                         #
-------------------------------------------------------------------------------
    220pm called counsel, lou -
    pltf atny has not yet filed the papers - has to get signature from
    all family members b4 he can file -- thinks still 30-60 days from
    finalizing settlement & issuing cks
==============================================================================

000027

Report No. DAR030                 NORTHLAND INSURANCE COMPANIES              Page    27
(CXDM001/CXDM003)                     CLAIM FILE NOTES                    Date 12/05/01
                                       Printed: TSLANE
Policy.: 21 TF209197  000002                    Print all claim file notes entered
=====================================================================================
 ## Date:10/09/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   recd final release signed by mulligan
=====================================================================================
 ## Date:10/18/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   recd signed releases on the cliffords claims-pltf has now filed 2
   petitions for compromise of minor robert cliffords action & approval
   by ct of settlement of the estate cases & distrib btwn the 2 estates
   judge will sched hearing & we will be required to attend
=====================================================================================
 ## Date:11/20/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   830am counsel called, moira --
   judge just ruled on the papers so they did not have to appear for
   hearing
   said lincoln general will be sending their cks direct to the pltf
   told her i need to know when that is recd so we can dismiss the dj
   she will let me know
   they will get the final dismissal - pltf had not signed the original
   so she sent it back
=====================================================================================
 ## Date:11/20/2000  Entered By: TSLANE       Subject:GN                      i    #
-------------------------------------------------------------------------------------
   835am counsel called, moira --
   has  tt pltf office - they tt pipa last wk & was somewhat upset that
   he had not recd the cks from carrier - would hold off on dimissing
   the dj for rt now since lincoln general has not issued their cks
=====================================================================================
 ## Date:11/28/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   320pm called counsel, moira - lmtc
=====================================================================================
 ## Date:11/28/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   320pm counsel called, moira --
   tt pltf atny yesterday & has not recd the cks
   lincoln general had asked for pltf atny tax id # last wk
   said the settlement cks should be recd soon - pltf will let her know
   when he receives the cks & then she will file the final dismissal
   order
=====================================================================================
 ## Date:11/29/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   RECD ORDER TO SETTLE DISCON & END THE MULLIGAN CASE
=====================================================================================
 ## Date:12/01/2000  Entered By: TSLANE       Subject:GN                           #
-------------------------------------------------------------------------------------
   counsel called, moira - lm on pm
   pltf has settlement cks from lincoln general - things should be
   finalized soon
=====================================================================================

000028

Report No. DAR030                    NORTHLAND INSURANCE COMPANIES                    Page    28
(CXDM001/CXDM003)                         CLAIM FILE NOTES                       Date 12/05/01
                                          Printed: TSLANE
Policy.: 21 TF209197   000002                          Print all claim file notes entered

## Date:12/01/2000   Entered By: TSLANE       Subject:GN                    #

## Date:12/08/2000   Entered By: TSLANE       Subject:GN                    #

   recd copy of prec to discont sent to ct

## Date:12/08/2000   Entered By: TSLANE       Subject:GN                    #

## Date: 1/16/2001   Entered By: TSLANE       Subject:GN                    #

   recd final billlings - pd -- waiting on final billing from ira

## Date: 1/19/2001   Entered By: TSLANE       Subject:GN                    #

   750am called counsel ira -- lmtc on pm

## Date: 1/26/2001   Entered By: TSLANE       Subject:GN                    #

   845am called ira -- lmtc on pm

## Date: 2/05/2001   Entered By: TSLANE       Subject:GN                    #

## Date: 2/06/2001   Entered By: TSLANE       Subject:GN                    #

   920am

## Date: 3/08/2001   Entered By: TSLANE       Subject:GN                    #

   900am

000029

Report No. DAR030              NORTHLAND INSURANCE COMPANIES        Page   29
(CXDM001/CXDM003)                  CLAIM FILE NOTES                Date 12/05/01
                                    Printed: TSLANE
Policy: 21 TF209197   000002              Print all claim file notes entered
=============================================================================
## Date: 3/26/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------

=============================================================================
## Date: 4/02/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------
  130pm mike mcgovern @ lincoln general called –
  asked if there was any interest in walking away – told him we were
  interested but needed their consent to dismiss the lawsuit
  he will let his counsel know that will prob happen & call me to conf
  irm once he talks to their acctng people
=============================================================================
## Date: 4/11/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------
  215pm mike mcgoven @ lincoln general called-lm on pm
  they are in agreement to walk away from dj & close files
  ...called mike @ lincoln – lm on pm asking him to have his counsel
  call ira & agree to volun dismiss this

=============================================================================
## Date: 4/24/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------
  945am called ira – lmtc on pm
=============================================================================
## Date: 5/24/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------

=============================================================================
## Date: 6/27/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------
  waiting on dismissal
=============================================================================
## Date: 7/11/2001   Entered By: TSLANE      Subject:GN                    #
-----------------------------------------------------------------------------
  300pm ira called on conf call w/in house counsel for lincoln general
  al – transfer has occurred but nothing else on litigation
  he knows nothing of mcgovern's agreement to dismiss – claiming they
  have never talked to mcgovern about this
  he will go back & tt his supervisor & let him know what has transpir
  ed & see about getting an agreement to dismissing the dj & walking
  away & closing files
  al will let ira know if they will agree to volun dismissal – mcgover
  n no longer there
  (al miller is the general counsel now handling)
  al is in house counsel for lincoln
=============================================================================

000030

eport No. DAR030              NORTHLAND INSURANCE COMPANIES            Page    30
CXDM001/CXDM003)                    CLAIM FILE NOTES              Date 12/05/01
                                   Printed: TSLANE
olicy : 21 TF209197  000002              Print all claim file notes entered
====================================================================================
## Date: 8/14/2001   Entered By: TSLANE      Subject:GN                      #
------------------------------------------------------------------------------------
  10:15am



====================================================================================
## Date: 8/15/2001   Entered By: TSLANE      Subject:GN                      #
------------------------------------------------------------------------------------
  counsel called, lou bricklin
  insd called him & very upset because they were just served w/3rd
  party complaint - insd wants him to defend them
  hazel sinclair is now deceased
  told him i have not seen the complaint & not sure we owe them defens
  on this but would ck into it & get back him



====================================================================================
## Date: 8/16/2001   Entered By: TSLANE      Subject:GN                      #
------------------------------------------------------------------------------------
  recd email copy of ira's response to lincoln general
====================================================================================
## Date: 8/16/2001   Entered By: TSLANE      Subject:GN                      #
------------------------------------------------------------------------------------



====================================================================================
## Date: 8/16/2001   Entered By: TSLANE      Subject:GN                      #
------------------------------------------------------------------------------------
                              Page    30

                                                              000031

eport No. DAR030                  NORTHLAND INSURANCE COMPANIES                    Page    31
CXDM001/CXDM003)                       CLAIM FILE NOTES                    Date 12/05/01
                                       Printed: TSLANE
olicy.: 21 TF209197   000002                        Print all claim file notes entered
=================================================================================

    920am called counsel, lou –
    he has portions of the 3rd party complaint
    told him we are going to defend woolever –his concern is any conflic
    t he might have
    hazel sinclair is now deceased & thinks he might be wit on this
    he will get ext on this & then we can work out what we are going to
    do
=================================================================================
 ## Date: 8/16/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
    discussed w/md – have decided that insd needs their own counsel
    cannot defend them in a lawsuit that we started
═══════════════════════════════════════════════════════════════════════════════
 ## Date: 8/16/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
    tt lou
    let him know not defending insd
    asked him to get 30 day extension for insd to find counsel & get
    ans filed
    told him sending insd ltr directly
    will let me know if not able to get the ext
=================================================================================
 ## Date: 8/16/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
    faxed ltr to isnd
=================================================================================
 ## Date: 9/19/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
    emailed ira asking for update
=================================================================================
 ## Date:10/17/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
    emailed ira for update
=================================================================================
 ## Date:10/17/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------
═══════════════════════════════════════════════════════════════════════════════
 ## Date:11/30/2001  Entered By: TSLANE      Subject:GN                        #
 --------------------------------------------------------------------------------

                                    Page    31



                                                                        000032

eport No. DAR030             NORTHLAND INSURANCE COMPANIES         Page   32
CXDM001/CXDM003)                   CLAIM FILE NOTES                Date 12/05/01
                                    Printed: TSLANE
olicy.: 21 TF209197  000002                    Print all claim file notes entered
==============================================================================
██████████████████████████████████████████████████████████████████████████
==============================================================================
## Date:12/03/2001   Entered By: TSLANE     Subject:GN                      #
------------------------------------------------------------------------------
██████████████████████████████████████████████████████████████████████████
==============================================================================
## Date:12/05/2001   Entered By: TSLANE     Subject:GN                      #
------------------------------------------------------------------------------
sent complete claim file & uw file to counsel

Page    32

000033





**Lincoln General Insurance Company**

Phone 717-757-0000                FAX # 717-751-0165

3350 Whiteford Rd.,P.O. Box 3709, York, PA  17402-0136

February 1, 1996

Mr. Jerry Parker
Northland Insurance Companies
1295 Northland Drive
St. Paul, MN 55120-1146

RE:  **Lincoln General Insured:**   **JHM Enterprises**
     **Lincoln General Claim #:**   **39737**
     **Date of Loss:**   **11/17/95**
     **Your Insured:**   **Woolever Brothers**
     **Your File #:**   **TF209197-2**

Dear Jerry:

Thank you for your correspondence of December 21, 1995.  Enclosed please find a copy of the policy of insurance issued by Lincoln General Insurance Company to JHM Enterprises, also find:  (1) a copy of the photographs I took a few days after the accident; (2) a copy of a newspaper article.

I must disagree with your assertion that you have no coverage.  The lease which was provided to us by our insured provides for the lease to end at a time certain I am not sure of the legalities of the lease and Lincoln General Insurance Company has certainly not admitted it is the primary insurer in the matter.

Very truly yours,

Michael J. McGovern
Legal Counsel

Enclosures:   POI
         Photographs
         Newspaper Article

MJM/dms
Parkeltr.024

FORM #50

001983

## METTE, EVANS & WOODSIDE

### A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

3401 NORTH FRONT STREET

P.O. BOX 5950

HARRISBURG, PA 17110-0950

HOWELL C. METTE
JAMES W. EVANS
ROBERT MOORE
CHARLES B. ZWALLY
PETER J. RESSLER
LLOYD R. PERSUN
CRAIG A. STONE
JAMES A. ULSH
DANIEL L. SULLIVAN
STEVEN D. SNYDER
CHRISTOPHER C. CONNER
ELYSE E. ROGERS
ANDREW H. DOWLING
MICHAEL D. REED
ROBERT P. HAYNES III

PAULA J. LEICHT
GARY J. HEIM
DAVID A. FITZSIMONS
GUY P. BENEVENTANO
MICHAEL D. PIPA
KAREN N. CONNELLY
ROBYN J. KATZMAN
JAYSON R. WOLFGANG
EMILY L. HOFFMAN
MATTHEW A. COSENZA
KATHLEEN D. YANINEK
DANIEL M. CAMPBELL
ANTHONY T. LUCIDO
TODD A. FULLER
ELIZABETH J. GOLDSTEIN

RETIRED
ROBERT E. WOODSIDE

TELEPHONE
(717) 232-5000

FAX
(717) 236-1816

IRS NO
23-1985005

July 1, 1996

Louis E. Bricklin, Esquire
Bennett, Bricklin & Saltzburg
1601 Market Street, 16th Floor
Philadelphia, PA 19103-2393

RE:    *Lincoln General/JHM Enterprises/Vernice Lee Statts*

Dear Mr. Bricklin:

As you know, we have filed preliminary objections to the complaint on behalf of Defendants J.H.M. Enterprises, Inc. and Vernice Lee Statts.

According to the allegations in the complaint, Mr. Statts was, at the time of the accident, "acting as the agent, servant and/or employee of the Defendants, J.H.M. Enterprises, Inc. and Woolever Brothers Transportation, Inc., and was acting in the furtherance of their business and within the scope of his employment and agency with the Defendants, J.H.M. Enterprises, Inc. and Woolever Brothers Transportation, Inc." Under the doctrine of "potential coverage," we believe that these allegations require your client's insurer, Northland Insurance Companies, to provide a defense to Mr. Statts. See *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987); *Gedeon v. State Farm Mut. Automobile Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963); and *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484 (1959). At a minimum, Northland should share in the cost of our representation and defense of Mr. Statts.

If it is your client's intention to establish that Mr. Statts was not an agent or employee of Woolever Brothers at the time of the accident, then, in our opinion, such a determination must be made in a separate declaratory judgment action. Unless

001188

Louis E. Bricklin, Esquire
July 1, 1996
Page 2

and until such a determination is made by a court, it is our position that Northland owes Mr. Statts a defense.

Please advise as to the intentions of your client regarding its relationship with Mr. Statts at the time of the accident, and also as to Northland's intentions regarding a judicial determination of that relationship.

Very truly yours,

Jayson R. Wolfgang

JRW/ec
cc:    Michael J. McGovern, Esquire  -Claim No. 39737
        J.H.M. Enterprises, Inc.
        Mr. Vernice L. Statts
        Craig A. Stone, Esquire

001189

 

8397

# METTE, EVANS & WOODSIDE

### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

HOWELL C. METTE
JAMES W. EVANS
ROBERT MOORE
CHARLES B. ZWALLY
PETER J. RESSLER
LLOYD R. PERSUN
CRAIG A. STONE
JAMES A. ULSH
DANIEL L. SULLIVAN

STEVEN D. SNYDER
CHRISTOPHER C. CONNER
ELYSE E. ROGERS
JEFFREY A. ERNICO
P. DANIEL ALTLAND
ANDREW H. DOWLING
MICHAEL D. REED
ROBERT P. HAYNES III
PAULA J. LEICHT

**3401 NORTH FRONT STREET**
P.O. BOX 5950
HARRISBURG, PA 17110-0950

TELEPHONE
(717) 232-5000

FAX
(717) 236-1816

http://www.mette.com

GARY J. HEIM
DAVID A. FITZSIMONS
MICHAEL D. PIPA
GUY P. BENEVENTANO
THOMAS F. SMIDA
ROBYN KATZMAN BOWMAN
JOHN F. YANINEK
STUART L. KNADE
KATHLEEN DOYLE YANINEK

DANIEL M. CAMPBELL
ANTHONY T. LUCIDO
ELIZABETH GOLDSTEIN DIXON
BRADLEY A. WALKER
JEFFREY T. RUSSELL
DANIEL R. KLEINMAN

RETIRED
ROBERT E. WOODSIDE

February 18, 1998

Louis E. Bricklin, Esquire
Bennett, Bricklin & Saltzburg
16th Floor, 1601 Market Street
Philadelphia, PA 19103-2393

      **RE:**   **Krapf, et al. v. Statts, et al. v. EMR Corporation, et al.**

Dear Mr. Bricklin:

      Enclosed please find the information forwarded to us by Dave Love of Pennsylvania Percs, Inc., regarding his qualifications as an expert in the area of traffic signal operations and fees for his services. Our accident reconstruction expert is providing us with his updated CV, which I expect to receive shortly. I will forward that and his fee schedule to you as soon as possible.

      Thank you.

                  Sincerely,

                  Kimberly A. McKinney,
                  Legal Assistant to
                  Michael D. Pipa, Esquire

KAM/tas
cc:    Michael J. McGovern, Esquire

001023

 

# METTE, EVANS & WOODSIDE

### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

83937

| | | | | |
|---|---|---|---|---|
| HOWELL C. METTE | STEVEN D. SNYDER | **3401 NORTH FRONT STREET** | GARY J. HEIM | DANIEL M. CAMPBELL |
| JAMES W. EVANS | CHRISTOPHER C. CONNER | **P.O. BOX 5950** | DAVID A. FITZSIMONS | ANTHONY T. LUCIDO |
| ROBERT MOORE | ELYSE E. ROGERS | **HARRISBURG, PA 17110-0950** | MICHAEL D. PIPA | ELIZABETH GOLDSTEIN DIXON |
| CHARLES B. ZWALLY | JEFFREY A. ERNICO | | GUY P. BENEVENTANO | BRADLEY A. WALKER |
| PETER J. RESSLER | P. DANIEL ALTLAND | **TELEPHONE** | THOMAS F. SMIDA | JEFFREY T. RUSSELL |
| LLOYD R. PERSUN | ANDREW H. DOWLING | **(717) 232-5000** | ROBYN KATZMAN BOWMAN | DANIEL R. KLEINMAN |
| CRAIG A. STONE | MICHAEL D. REED | | JOHN F. YANINEK | |
| JAMES A. ULSH | ROBERT P. HAYNES III | **FAX** | STUART L. KNADE | RETIRED |
| DANIEL L. SULLIVAN | PAULA J. LEICHT | **(717) 236-1816** | KATHLEEN DOYLE YANINEK | ROBERT E. WOODSIDE |
| | | http://www.mette.com | | |

February 19, 1998

Louis E. Bricklin, Esquire
Bennett, Bricklin & Saltzburg
16th Floor, 1601 Market Street
Philadelphia, PA  19103-2393

RE:    <u>Krapf, et al. v. Statts, et al. v. EMR Corporation, et al.</u>

Dear Mr. Bricklin:

As promised, enclosed please find a copy of the CV and fee schedule for our accident investigation and reconstruction expert, Steven Rickard.

Sincerely,

Kimberly A. McKinney,
Legal Assistant to
Michael D. Pipa, Esquire

KAM/tas
cc:    Michael J. McGovern, Esquire

001029

Signature of authorized carrier
or co-partner or officer of authorized carrier

Time and Date of De___

DATE: 3/1/90

Signed _____
Owner or Agent

RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN

LESSEE acknowledges receipt of the above described equipment on

LESSOR acknowledges return of the above described equipment on

MARCH, 1 ___ 19 90

at MONTOURSVILLE, PA.

at _____ 19 __

Signed by _Art Wolfe_
LESSEE

Signed by _____
LESSOR

**Post-it® Fax Note   7671**

| | |
|---|---|
| Date 11/17/95 | # of pages ▶ 2 |
| To Gail | From Hazel Sinclair |
| Co./Dept. Northland Ins | Co. Wolever Bus |
| Phone # 800-328-5972 | Phone # 717-368-8011 |
| Fax # 612-688-4170 | Fax # 717-368-8547 |

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease on to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax, wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuel, lubricants, and tires and tubes.

d. Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessee agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessor.

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessee is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has

0088000

NOV-17 18:11    WOOLEVER BROTHERS TRANSPORTATION    ☎ 717P368P8847    P.01

LEASE NUMBER 9801

## AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this __1ST__ day of __MARCH__ 1990, by and between __JHM ENTERPRISES  1200 VALLAMONT DR.  WILLIAMSPORT, PA. 17701__
(Name)                                    (Address)
Owner and/or Lessor, and __WOOLEVER BROS TRANS. INC.__ Lessee.

Motor Vehicle Equipment __260 JORDAN AVE. MONTOURSVILLE, PA.__
Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|---|---|---|---|---|
| REIGHTLINER #/2 | 79 | CABOVER | CA213HM160222 | AA95090  PA. |
|  |  |  |  | AA95089 |

**Term**

a. The term of this lease shall begin at __10.__ AM. o'clock on __3 / 1 /90__, and terminate at the end of thirty (30) days, or at __10.__ M. o'clock __4/ 1 /90__, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation.

or

b. The term of this lease shall begin at _____ M. o'clock on __ : /7__ for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve.

or

c. The term of this lease shall begin at _____ M. o'clock on __ : /7__ for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 3v3 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on __ : /7__ for the purpose of transportation intrastate and/or interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

**Lease Rental**

For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following: (CHECK ONE)

A. __80__% of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this Agreement of Lease is executed in triplicate: the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

JHM ENTERPRISES                                    Lessor
By: _[signature]_ Pres

WOOLEVER BROS TRANS. INC.                          Lessee
By: _[signature]_

### REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) __3/1/90__ I carefully inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and that Lessee's identification placard was displayed on each side of the power unit.

_[signature]_
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Trailer |
|---|---|---|---|---|---|---|
| Body | ✓ |  |  |  |  |  |
| Brakes | ✓ |  |  |  |  |  |
| Cooling System | ✓ |  |  |  |  |  |
| Drive Line | ✓ |  |  |  |  |  |
| Emergency Equipment | ✓ |  |  |  |  |  |
| Engine | ✓ |  |  |  |  |  |
| Exhaust | ✓ |  |  |  |  |  |
| Fuel System | ✓ |  |  |  |  |  |
| Glass | ✓ |  |  |  |  |  |
| Horn | ✓ |  |  |  |  |  |
| Leaks | ✓ |  |  |  |  |  |
| Lights (state which) | ✓ |  |  |  |  |  |
| Reflectors | ✓ |  |  |  |  |  |
| Speedometer | ✓ |  |  |  |  |  |
| Springs | ✓ |  |  |  |  |  |
| Steering | ✓ |  |  |  |  |  |
| Tires | ✓ |  |  |  |  |  |
| Wheels | ✓ |  |  |  |  |  |
| Windshield Wiper | ✓ |  |  |  |  |  |
| Other Items requiring attention |  |  |  |  |  |  |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

WOOLEVER BROS. TRANS. INC.

_[signature]_
Name of authorized carrier

### EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(F) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity _____

From _____    To _____

NOV-17-1995  16:37      PBI                                                   814 456 1367      P.02/02

# ACORD AUTOMOBILE LOSS NOTICE

DATE (MM/DD/YY)  11-17-95

*Jerry*

**PRODUCER**

PBI Agency, Inc.
P.O. Box 996
Erie, PA 16512-996

*Swett, Pa*

*new policy*

PRODUCER PHONE (A/C, no., ext.)  814   452-4427

COMPANY  Northland

MISCELLANEOUS INFORMATION (Site & Location Code)

CAT. #

POLICY NUMBER  JF209197

CODE                    SUB CODE

| POLICY EFF. DATE (MM/DD/YY) | POLICY EXP. DATE (MM/DD/YY) | DATE (MM/DD/YY) & TIME OF LOSS | PREVIOUSLY REPORTED |
|---|---|---|---|
| 09-01-95 | 09-01-96 | 11-17-95 2:00  A.M. x  P.M. x | YES   NO x |

**INSURED**

NAME & ADDRESS

Woolever Brother Transportation, Inc.
P.O. Box 156
Mountoursville, PA 17754

INSURED'S RESIDENCE PHONE (A/C, No.)

INSURED'S BUSINESS PHONE (A/C, no., ext.)  717  368-8011

PERSON TO CONTACT  Hazel Sinclair

WHERE TO CONTACT

WHEN

CONTACT'S RESIDENCE PHONE (A/C, no.)

CONTACT'S BUSINESS PHONE (A/C, no., ext.)

*cel cancel*

**LOSS**

LOCATION OF ACCIDENT (including city & state)

Mall Enterance  Rt 309 (NB)        *Home Town, Pa*

AUTHORITY CONTACTED & REPORT NO.  PA state

VIOLATIONS/CITATIONS  unknown

DESCRIPTION OF ACCIDENT (Use reverse side, if necessary)

/v rearended o/v that stopped to avoid hitting 3rd vehicle

**POLICY INFORMATION**

| BODILY INJURY | PROPERTY DAMAGE | SINGLE LIMIT | MED. PAY | OTC DED. | OTHER COVERAGE & DEDUCTIBLES (UM, no-fault towing, etc.) |
|---|---|---|---|---|---|
| | | 2,000,000.00 | | | *Deposit - mileage* |

LOSS PAYEE

COLLISION DED.

*UM 35  PIP  Cargo*

**INSURED VEHICLE**

VEH. NO.  YEAR, MAKE, MODEL

1979 Freightliner Tractor

V.I.N. (Vehicle Identification)  CA213AM160222

PLATE NO.  AA95089

OWNER'S NAME & ADDRESS (Check if same as owner)

J.H.M. Enterprises, Inc. P.O. Box 1082 Williamsport, PA  *leased to insd.*

PHONE (A/C, no., ext.)

DRIVER'S NAME & ADDRESS (Check if same as owner)

Vernica Statts   489 E. Academy St   Hughsville, Pa  17737

RESIDENCE PHONE (A/C, no.)  717-584-5796   BUSINESS PHONE (A/C, no., ext.)  717  368  8011

| RELATION TO INSURED (Employee, family, etc.) | DATE OF BIRTH | DRIVER'S LICENSE NUMBER | PURPOSE OF USE | USED WITH PERMISSION? |
|---|---|---|---|---|
| | 01-18-34  65 | 08975318  PA | | YES   NO |

DESCRIBE DAMAGE

ESTIMATE AMOUNT  $

WHERE CAN VEHICLE BE SEEN?

WHEN?

OTHER INSURANCE ON VEHICLE

**PROPERTY DAMAGED**

DESCRIBE PROPERTY (If auto, year, make, model, plate no.)  unknown

OTHER VEH FROM TEST OF OTHER CO AGENCY NAME & POLICY NO.

YES   NO

OWNER'S NAME & ADDRESS  unknown

BUSINESS PHONE (A/C, no., ext.)

RESIDENCE PHONE (A/C, no.)

OTHER DRIVER'S NAME & ADDRESS (Check if same as owner)  unknown

BUSINESS PHONE (A/C, no., ext.)

RESIDENCE PHONE (A/C, no.)

000993

DESCRIBE DAMAGE  Extensive

ESTIMATE AMOUNT

WHERE CAN DAMAGE BE SEEN?

**INJURED**

*men + wife?*   It is believed 2 ~~females~~ were killed

| NAME & ADDRESS | PHONE (A/C, No.) | PED. | INS. VEH. | OTHER VEH. | AGE | EXTENT OF INJURY |
|---|---|---|---|---|---|---|

**WITNESSES OR PASSENGERS**

| NAME & ADDRESS | PHONE (A/C, No.) | INS. VEH. | OTHER VEH. | OTHER (Specify) |
|---|---|---|---|---|
| unknown | | | | |

*Lessor has 750 CSL*

**REMARKS** (Include adjuster assigned)  Was not under insureds dispatch at time of loss but the owners.

REPORTED BY

REPORTED TO

SIGNATURE OF PRODUCER OR INSURED

ACORD 2 (1/91)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1991

TOTAL P.02

11-17-95.    Called insd. T. to Hazel.

JHM - Jay McCormick (shares office)

in 1989 Hazel, husband & Art + Scott Woolever bought business from Art + Scott's parents.

in 1990 they bought the Pa part of Smith Trklines. Jay McCormick bought the salt-tank portion of the business. (Jay had 2-3 trucks.)

Jay runs under their authority — leased to them — Woolever the lessee. Jay sets up the loads.

Lincoln General is Jay's insurer. They know of the loss. Unk if they are addt'l. insd. under Lincoln's policy.

Statts is Jay's employee. Unloaded salt from van trlr. Jay asked to go to get a load that he handles under his other part of his business. The load drives was after not connected to insd's business — they get no pay from JHM for these other loads. Going to Burwick, Pa. for the other load.

Loss occurred S. of Hazelton. Bad traffic light. Trigger on the cross-street to change light on 309 OV ahead of IV on 309. OD stopped quickly. IV hit rear and went over top of OV.

G

000992

11-17-95. Con't.

ID just saw 1 lady. Someone at scene said there were two. No other occupants.

Insd. within 1½ hrs. of accident scene

Refer any questions from Lincoln Gen'l to us

ID: Ephrata – unloaded (above Lancaster)
see address
employee of Jay M. 1½ yrs.

Jay dispatched him for another load in Berwick. 9:30. ½ hr. stop for B-fast. Accid. about 10:30 – 11:00. Left home @ 5:30 Am. Full night's sleep at home last night.

'79 Freightliner (C10) } JHM owns both T-
45' van trlr }

placard: JHM leased to Woolever Bros.
both numbers painted on truck

NB on 4-lane divided hwy. 55 zone. Light was green. Trkg. Co. on the left. said light trips very quickly. Mall on right side. Looked briefly at mall, looked back, cars (2) stopped at red. They Never saw a yellow light Hit black car into grey car. All 3 entered the intersection. 3 veh. accid. Other 2 NB ahead of him.

no officer name                                    Speed:
Ed Carroll    Rush Township chief    couldn't
State Police there                                  say. Spe
                                                              same as
no ticket                    took OL & logs     flow of
no blood test – will take                        traffic
truck impounded            000991

11-17-95    ID Con't.

Front car lady (nurse) shook up - taken to hosp. She told him she was fine.

Car he hit - lady life-flighted. Unk. injuries. Talking. Unk. about the other one.

Assistance there quickly.

He was not hurt

42 years experience. No other serious accidents. One single-veh. loss while working for Jay.

Mall → ~~Hotel~~ Hometown Mall

Concerned
upset
good attitude
cooperative

Natural Truck Leasing is business at the scene. Owner came out - didn't see accident but commented on the light - Duane Corridini
212-736-7240
212-564-9643
717-668-3440 (Pa)

11-17-95    T. to Jay McCorm.

Loss reported to his co. Woolever not mentioned. Michael McGovern is adj.
800-876-3350

Agent: SIA
Susquehana
Ind. Assoc.
800-326-9514

$750,000 limit
Has his own ICC#, doesn't really use it.
Doesn't know if Woolever is

066000

IN THE COURT OF COMMON PLEAS
SCHUYLKILL COUNTY, PENNSYLVANIA

***

ROBERT E. KRAPF and UTE L.          :
HETLAND CLARK, as Administrators
of the Estate of Karin Clifford     :
            and
ROBERT E. KRAPF and PATRICIA        :
R. CLIFFORD, as Administrators of
the Estate of Robert R. Clifford,   :
            Plaintiffs
                V.                   :   NO. S-650-1996
VERNICE L. STATTS; J.H.M.
ENTERPRISES, INC.; WOOLEVER         :
BROTHERS TRANSPORTATION, INC.; and
COMMONWEALTH OF PENNSYLVANIA,       :   IN TRESPASS
DEPARTMENT OF TRANSPORTATION;
TOWNSHIP OF RUSH; and E.M.R.        :   CIVIL ACTION - LAW
CORPORATION,
            Defendants              :   JURY TRIAL DEMANDED


**********************************

SHERRILL J. MULLIGAN and            :
DENIS A. MULLIGAN,
            Plaintiffs              :   NO. S-1689-1997
                V.
VERNICE L. STATTS, J.H.M.           :   CIVIL ACTION - LAW
ENTERPRISES, INC. and WOOLEVER
BROTHERS TRANSPORTATION, INC.,      :

            Defendants              :   JURY TRIAL DEMANDED


***


### DEPOSITION OF JAY McCORMICK and HAZEL
SINCLAIR, taken on Tuesday, November 4, 1997, 2:05 p.m., at
the Law Offices of Rubright, Domalakes, Troy & Miller, 14
West Frack Street, Frackville, Pennsylvania before Jennifer
P. Troutman, Registered Professional Reporter, Notary
Public



15

1          MR. MILLER:  That's it.

2          (Discussion off the record.)

3

4          (Attorney Schwaibold and Attorney Whitcomb left the
           deposition.)

5  BY MR. MILLER:

6          Q  All right.  Mr. McCormick, are you the sole

7  shareholder of J.H.M. Enterprises, Inc?

8          A  Yes.

9          Q  And when did you incorporate?

10         A  Nineteen eighty-nine.

11         Q  And was the incorporation -- was the incorporated

12  name J.H.M. Enterprises, Inc. at that time?

13         A  Yes.

14         Q  Do you have any other popular name or changes in

15  the names that you would use other than that?

16         A  No, sir.

17         Q  And it's a PA State Corporation?

18         A  Yes.

19         Q  And what's the location of your business, of

20  J.H.M. Enterprises in Williamsport?

21         A  The legal address is 1200 Vallamont,

22  V-a-l-l-a-m-o-n-t, Drive, Northwest Williamsport.

23         Q  Now, is that the location of your truck terminal,

24  or is that your home?

25         A  That's my home.

58

1   brother-in-law, of course.

2       Q  Other than speaking with his brother-in-law, did

3   you speak with anybody else about his driving abilities or

4   his background?

5       A  No, no.  Not that I'm -- not that I'm aware of,

6   no.

7       Q  Did your drivers stay in touch with you by either

8   a pager or satellite system or tracking system of any sort?

9       A  No.  Telephone.

10      Q  Strictly the telephone?

11      A  No, I don't do any -- I have no contact with

12  anybody other than by telephone.

13      MR. KWAK:  Okay.  Thank you.  I have nothing

14  further.

15      MR. PRICE:  I have no questions.

16  BY MR. BRICKLIN:

17      Q  Mr. McCormick, I just have a couple of questions

18  for you.  The load which Mr. Statts hauled that morning

19  from Cargill up in New York down to Ephrata was hauled

20  under whose rights, do you know?

21      A  Woolever's.

22      Q  With the vehicle and driver being trip leased by

23  your company to Woolever; is that correct?

24      A  Yes, uh-huh.

25      Q  And does that mean that Woolever would have

59

1  billed Cargill for that transport?

2      A  Yes.  I don't do it.

3      Q  You don't.  You just get paid for the trip lease

4  by Woolever; is that correct?

5      A  Yes, uh-huh.

6      Q  And then the trip lease ended at Ephrata; is that

7  correct?

8      A  Yes.

9      Q  And from that point on, Mr. Statts was working

10 for J.H.M. Enterprises when he headed off to Berwick --

11     A  Yes.

12     Q  -- to pick up the next trailer; is that correct?

13     A  Yes.

14     MR. MILLER:  Well, objection.  Objection to the form

15 of the question.  Leading, and I think it asks for a legal

16 conclusion also.

17     MR. BRICKLIN:  For whom was Mr. Statts working when

18 he left Ephrata and headed for Berwick?

19     THE WITNESS:  Me, J.H.M.

20     MR. BRICKLIN:  And did Woolever have anything to do

21 with that job in Berwick?

22     THE WITNESS:  No.

23     MR. BRICKLIN:  That's all I have.

24     MR. MILLER:  The placard was not taped, and the

25 placard was still on the truck for Woolever Brothers; is

60

1  that right?

2       THE WITNESS:  Yeah, that's what I see here.  Yes.

3       MR. MILLER:  Right.  And he had not yet gotten to

4  Berwick obviously to -- to detach the trailer?

5       THE WITNESS:  No.

6       MR. MILLER:  I have nothing further.

7       MR. BRICKLIN:  The trailer was whose, owned by whom?

8       THE WITNESS:  J.H.M.

9       MR. BRICKLIN:  That's all.

10       MR. MILLER:  Okay.  Thank you, sir.

11       (Discussion off the record.)

12       (Hazel Sinclair resumed as the witness.)

13  BY MR. MILLER:

14       Q  Mrs. Sinclair, you've already been sworn in.  But

15  would you give your address again, please?

16       A  It's 1560 Watson Street, Williamsport,

17  Pennsylvania 17701.

18       Q  And you reside there with your husband Harold

19  Sinclair?

20       A  Yes.

21       Q  And what is your employment relationship with --

22  and/or relationship with the corporation Woolever Brothers?

23       A  In 1989, Arthur Woolever and Scott Woolever, my

24  husband Harold and myself purchased Woolever Brothers from

25  Scott and Art's father and Uncle Coleman and Don Woolever

68

1  where her confusion is.

2       MR. MILLER:  Okay.  Were there trip leases prepared?

3       THE WITNESS:  Not for the -- you know, not at that

4  time for those trucks.

5       MR. MILLER:  Okay.  All right.  Were there ever trip

6  leases prepared for -- by J.H.M. Enterprises -- or for

7  J.H.M. Enterprises by Woolever Brothers between 1990 and

8  1995?

9       MR. BRICKLIN:  At any time during that period of

10  time, were there trip leases?  Is that the question?

11       MR. MILLER:  Yes.

12       MR. BRICKLIN:  Do you understand the question?  You

13  can answer.

14       THE WITNESS:  Well, I get -- the lease -- the lease

15  that Vern had in his truck -- the lease we had in the truck

16  was the old permanent lease that should have been -- see,

17  when the other driver was driving that truck, it worked

18  strictly for Woolever Brothers.

19       It didn't have anything -- it didn't do his other

20  stuff -- his stuff.

21       MR. BRICKLIN:  His stuff meaning who?

22       THE WITNESS:  Raisio.  It didn't do the Raisio.  It

23  hauled the salt, and the salt was ours.  So the guy would

24  have worked permanently for us so that it was just a

25  permanent lease.  And when this happened, in the afternoon

69

1    I think maybe the following day, I said to Jay, You know, I

2    think we really have a problem because we were not doing

3    this paperwork properly because one day he's working for

4    Woolever and the next day he's working for Jay.

5         And then the next day he could work for Jay, and he

6    could also work for Woolever. And that would have meant

7    doing a lease each time. And I know that that was not the

8    way it was done. We sat down and -- Jay and I. We did

9    make up trip leases after the fact because we knew we were

10   wrong to begin with.

11        Not that it's going to make it any better, but at

12   least it shows that we were trying to do it in the right

13   way.

14        MR. MILLER: Okay. So there was a lease in the

15   truck that was written as a permanent lease?

16        THE WITNESS: Yes, sir.

17        MR. MILLER: Okay. And that's the one that you

18   produced through your counsel for us, I believe?

19        MR. BRICKLIN: No.

20        MR. MILLER: You have not produced that one?

21        MR. BRICKLIN: No, that's not produced because it's

22   our position that's not the lease which controlled what was

23   actually going on. I'll be happy to provide you with a

24   copy of it, but that's not the lease that's been produced.

25        MR. MILLER: Okay. Yeah, I would want a copy of

70

1   that.

2          MR. BRICKLIN:  I'll give it to you now actually.

3          MR. MILLER:  Okay.

4          (The witness reviewed the document.)

5          MR. BRICKLIN:  Let the record indicate I'm giving

6   counsel a copy of an Agreement of Lease of Motor Vehicle

7   Equipment, Lease No. 9801 dated March 1, 1990 between

8   J.H.M. Enterprises and Woolever Brothers Transportation,

9   Inc.

10          MR. MILLER:  Is this your only copy at this point?

11          MR. BRICKLIN:  It's all I have with me right now,

12   but you're welcome to make copies of it.

13          MR. MILLER:  Yeah.  All right.

14          MR. BRICKLIN:  I believe that's actually a

15   photocopy.  I don't have the original.

16          MR. MILLER:  Yeah, it looks like a photocopy.  It

17   has your markings on here, though.

18          MR. BRICKLIN:  That's all right.

19          MR. MILLER:  Is that all right?

20          MR. BRICKLIN:  That's all right.

21          (Discussion off the record.)

22          MR. MILLER:  Just for purposes of the deposition

23   then, we'll have this marked -- well, for purposes of the

24   deposition, we'll have it marked as Mrs. Sinclair

25   Deposition No. 1.

71

1      (Plaintiff's Sinclair Exhibit No. 1 was produced and
       marked for identification.)

2

3      MR. MILLER:  I'm showing you what's been marked as

4  your Exhibit No. 1 in your deposition.  It's a photocopy of

5  -- well, take a look at it.  Is that what you've been

6  referring to?

7      THE WITNESS:  Uh-huh.

8      MR. BRICKLIN:  You have to answer yes for the

9  record.

10     THE WITNESS:  Yes.

11  BY MR. MILLER:

12     Q  Yes.  Okay.  And you're saying -- where is the

13  original of that document, do you know?

14     A  It's probably back in my office.

15     Q  Okay.  And you mentioned earlier that the

16  original was in the 1979 Freightliner that was operated --

17  being operated by Mr. Statts at the time of the accident?

18     A  Well, there's two copies, and you get one that

19  goes in the truck and one you keep in the office.

20     Q  Okay.  And it's your understanding that J.H.M.

21  Enterprises' copy of this lease was in the '79 Freightliner

22  at the time of the accident?

23     A  Yes, sir.

24     Q  Okay.  And how did you -- how do you know that?

25     A  Well, it was given to be put in the truck.

72

1  Whether it's there or not, I don't know.

2      Q  Okay.  And who would have given this particular

3  lease by your company to J.H.M. Enterprises to be put in

4  that '79 Freightliner?

5      A  I would have given it to Jay.

6      Q  By Jay, you mean Mr. McCormick?

7      A  Yes.

8      Q  And it's your understanding that this lease

9  should not have been in the truck at the time of the

10  accident.  Is that what you're --

11      A  Yes, that's what I'm saying.

12      Q  Okay.  And there's another lease that has been

13  produced by counsel, your counsel, that you believe is the

14  lease that should apply to these -- to this circumstance?

15      A  Yes, sir.

16      Q  Okay.  And when was that lease produced -- or

17  when was that lease prepared in relationship to November

18  17, 1995?

19      A  November the 18th, that Saturday morning.

20      Q  So it was prepared after the -- after the

21  incident?

22      A  Because I knew that these were incorrect, and we

23  were trying to right a wrong.

24      Q  Okay.  And how did that particular lease -- was

25  that particular lease then given to Mr. McCormick at J.H.M.

73

1  Enterprises on November 18th?

2       A  He has his copy, and I have my copy.

3       Q  Okay.  And -- so you would have prepared the

4  lease that was produced on Saturday morning, November 18,

5  after the accident?

6       A  Yes, sir.

7       Q  And did you call Mr. McCormick and tell him that

8  you were producing that lease?

9       A  No, he was -- he was in the office that day.  And

10  we talked about it because I said -- I showed to him this

11  is not what we've been doing and it should not have been

12  done the way we did it; it should have been this way.  So

13  he agreed that, yes, we should change it.

14       Q  And did -- who initiated the conversation with

15  regards to the status of the lease that Saturday morning,

16  was it you or Mr. McCormick?

17       A  It was me.

18       Q  Okay.  And when did you provide this lease, this

19  -- or a copy of this lease to counsel?

20       MR. BRICKLIN:  Objection.  Calls for attorney/client

21  privilege material.  I won't permit her to answer.

22       MR. MILLER:  You're right.  I'll withdraw that

23  question.  Now, the lease that you drew up on Saturday,

24  November 18th which has been produced by counsel in

25  discovery, had you ever prepared leases like that for

80

1   going to take her through a bunch of questions.  So how

2   about if I do that, and you guys may want to follow-up on

3   that.

4        MR. KWAK:  Sure.

5        MR. MILLER:  Fair enough.

6        MR. BRICKLIN:  So she doesn't get it from all

7   angles.  Ask the court reporter to mark that as the next

8   exhibit.

9

10        (Plaintiff's Sinclair Exhibit No. 2 was produced and
             marked for identification.)

11  BY MR. BRICKLIN:

12        Q  Hazel, let me show you, if I could, the document

13  which the court reporter has marked as Sinclair No. 2.  Can

14  you tell me what that is?

15        A  That's the trip lease that -- it would have been

16  for Vern that started on that Thursday and would have been

17  finished on Friday morning.

18        Q  Is that the trip lease that you've told us today

19  that you and Jay drew up the Saturday after the accident?

20        A  Yes, sir.

21        Q  Or more accurately, it's a photocopy of it?

22        A  Yes.

23        Q  Let me ask you a couple of questions, if I could.

24  As I understand it, Woolever Brothers hauled freight from

25  the Cargill plant in Watkins Glen, New York pursuant to an

717 368 8847

DEC-04 17:26   WOOLEVER BROTH    TRANSPORTATION    ☎ 717   368847    P.01

633

LEASE NUMBER ___W-12___

## AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this __16th__ day of __November__ 19__85__, by and between __JHM Enterprises__ __1200 Vallamont Dr__ (Name) (Address)
__(Williamsport Pa 17701__ Owner and/or Lessor, and __Woolever Bros Trans Inc__ Lessee.
Motor Vehicle Equipment __260 Jordan Ave    Montoursville Pa 17754__
Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|---|---|---|---|---|
| Freight Liner | 1979 | C-O | CA 213 Am 160222 | AA 95089 Pa |
| Budd | 1977 | Van | 141235E | XC 27304 Pa |

**Term** a. The term of this lease shall begin at __4:00 P__ M. o'clock on __11/16/85__, and terminate at the end of thirty (30) days, or at __5:02 A__ M. o'clock __11/17/85__, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation;

or

b. The term of this lease shall begin at _____ M. o'clock on ___/___/___ for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve;

or

c. The term of this lease shall begin at _____ M. o'clock on ___/___/___ for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act, in the general products therefrom or in equipment which has completed movement of commodities exempt under section 203 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirments and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on ___/___/___ for the purpose of transportation intrastate and/ interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

**Lease Rental**
For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following: (CHECK ONE)

A. __90__ % of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

__JHM Enterprises__ _____ Lessor

By: __John Arnold, Pres.__

__Woolever Bros Trans Inc__ Lessee

By: __Harold Sinclair Sec Tres__

### REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) __11/16/95__ I personally inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and that Lessee's identification placard was displayed on each side of the power unit.

__Harold Sinclair__
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Trailer |
|---|---|---|---|---|---|---|
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | OK | OK | | | | |
| Glass | | | | | | |
| Horn | | | | | | |
| Leaks | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other items requiring attention | | | | | | |

PLAINTIFF'S EXHIBIT
Sinclair d
11-4-97    JPT
PENGAD-Bayonne, N.J.

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

__Woolever Bros Trans Inc__
Name of authorized carrier

### EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(P) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity _____

From _____    To _____

*Hazel S Sinclair Seller*

Signature of authorized ~~~~~
or co-partner of owner of authorized carrier

Time and Date of Pickup _____

Time and Date of Delivery _____

Signed _____
Owner or Agent

DATE: 11/16/95

RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN

LESSEE acknowledges receipt of the above described equipment on

11/16    95

Signed by *Hazel S Sinclair*
LESSEE

LESSOR acknowledges return of the above described equipment on

11/17    19 95

at *Ephrata, Pa*

Signed by _____
LESSOR

Post-it® Fax Note    7671    Date 12/4    # of pages ▶ 2

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a.  Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax; wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b.  Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c.  Providing all necessary fuel, lubricants, and tires and tubes.

d.  Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e.  Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f.  Licenses of any nature.

g.  Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessor agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h.  Fines and penalties arising out of the use of said equipment.

i.  Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j.  Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k.  Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessor is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the seven (7) consecutive days previous to first employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, or other causes deemed sufficient by Lessee, Lessee shall have authority to transfer cargo and effect delivery by vehicles selected by Lessee. In such events all expenses incured with respect to such transfer and delivery of cargo shall be reimbursed by Lessee to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $250.00 for loss or damage to cargo or equipment.

TO THE WITHIN NAMED Plaintiff/ Defendant YOU ARE HEREBY NOTIFIED TO FILE A
WRITTEN RESPONSE TO THE ENCLOSED New Matter/New Matter Crossclaim WITHIN TWENTY
(20) DAYS FROM SERVICE HEREOF OR A JUDGMENT MAY BE ENTERED AGAINST YOU.
BENNETT, BRICKLIN & SALTZBURG
ATTORNEY FOR
Defendant

BENNETT, BRICKLIN & SALTZBURG
BY:   Louis E. Bricklin, Esquire
ID NO.  20281
1601 MARKET STREET, 16TH FLOOR
PHILADELPHIA, PA 19103
(215) 561-4300

ATTORNEY FOR DEFENDANT
Woolever Bros. Transportation, Inc.

| | |
|---|---|
| SHERRILL J. MULLIGAN and<br>DENIS A. MULLIGAN | COURT OF COMMON PLEAS<br>SCHUYLKILL COUNTY |
| vs. | |
| | CIVIL ACTION |
| VERNICE L. STATTS, WOOLEVER<br>BROS. TRANSPORTATION, INC. and<br>JHM ENTERPRISES, INC. | NO. S-1689 of 1997 |

## ANSWER AND NEW MATTER OF DEFENDANT WOOLEVER BROS. TRANSPORTATION, INC. TO PLAINTIFFS' COMPLAINT

1.-3 inclusive.  Denied. After reasonable investigation, answering defendant is without

knowledge or information sufficient to form a belief with respect to the truth of the averments of

these paragraphs of the complaint, denies same, and if relevant, demands strict proof thereof.

4.        Admitted.

5.        Admitted upon information and belief.

6.        Admitted upon information and belief.

7.        Denied. On the contrary, at all times relevant hereto, Vernice Statts was acting

solely as the agent, servant and/or employee of defendant, JHM Enterprises, Inc., and was not in

any fashion engaged in the furtherance of the business of nor within the scope of any employment

or agency for defendant, Woolever Bros. Transportation, Inc.



001351



8.    Denied. After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the averments of this paragraph of the complaint, denies same, and if relevant, demands strict proof thereof.

9.    Admitted in part; denied in part. Upon information and belief, it is admitted that on or about November 17, 1995, the defendant, Vernice L. Statts, was operating a motor vehicle which contacted the rear of another vehicle forcing that said other vehicle into a third vehicle. It is further admitted that two deaths resulted from the accident.  After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the remaining averments of this paragraph of the complaint, denies same, and if relevant, demands strict proof thereof.

### FIRST CAUSE OF ACTION  - COUNT I

10.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 9 inclusive of the plaintiffs' complaint as though same were here set forth length.

11.-20. inclusive.  Denied. After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the averments of these paragraphs of the complaint, denies same, and if relevant, demands strict proof thereof.

### FIRST CAUSE OF ACTION - COUNT II

21.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 20 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

2

 

22.    Denied. After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the averments of this paragraph of the complaint, denies same, and if relevant, demands strict proof thereof.

## SECOND CAUSE OF ACTION

23.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 22 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

24.    Admitted in part; denied in part. It is admitted that at the time of the accident described in plaintiffs' complaint, upon information and belief the defendant, Vernice L. Statts was operating the motor vehicle in question as the agent, employee and/or representative of the defendant, JHM Enterprises, Inc. With respect to the remaining averments of this paragraph, they are denied as conclusions of law to which no response is required by the Pennsylvania Rules of Civil Procedure.

25.-26. inclusive. Answering defendant incorporates herein by reference its responses to the averments of paragraphs 12-21 and 22 of the plaintiffs' complaint as though said responses were here set forth at length.

## THIRD CAUSE OF ACTION

27.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 26 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

28.    Denied. On the contrary, at all times relevant hereto the defendant, Vernice L. Statts, was acting solely as the agent, servant and/or employee of defendant JHM Enterprises, Inc.

3



and was not in any fashion engaged in the furtherance of the business of nor within the scope of any employment or agency for the defendant, Woolever Bros. Transportation, Inc.

29.-30. inclusive.  Denied for the reasons set forth in responses to the averments of paragraphs 12-21 and 22 of the plaintiffs' complaint, the averments of said responses being incorporated herein by reference as though here set forth at length.

WHEREFORE, defendant, Woolever Bros. Transportation, Inc., demands judgment in its favor together with the cost of defense of this action.

### FOURTH CAUSE OF ACTION

31.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 30 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

32.    Denied. After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the averments of this paragraph of the complaint, denies same, and if relevant, demands strict proof thereof.

33.-34. inclusive. Denied for the reasons set forth in response to the averments of paragraphs 12-21 and 22 of the plaintiffs' complaint, the averments of said responses being incorporated herein by reference as though here set forth at length.

### FIFTH CAUSE OF ACTION

35.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 34 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

36.    Denied. On the contrary, at all times relevant hereto the defendant Woolever Bros. Transportation, Inc., acted in a proper, careful and lawful fashion.

4

001354



37.    Denied for the reasons set forth in response to the averments of paragraphs 12-21 of the plaintiffs' complaint, the averments of said responses being incorporated herein by reference as though here set forth at length.

38.    Denied. After reasonable investigation, answering defendant is without knowledge or information sufficient to form a belief with respect to the truth of the averments of this paragraph of the complaint, denies same, and if relevant, demands strict proof thereof.

WHEREFORE, defendant, Woolever Bros. Transportation, Inc., demands judgment in its favor together with the cost of defense of this action.

### SIXTH CAUSE OF ACTION

39.    Answering defendant incorporates herein by reference its responses to the averments of paragraphs 1 - 38 inclusive of the plaintiffs' complaint as though said responses were here set forth at length.

40.    Denied. It is further denied that the allegations of this paragraph of the complaint, if proven, would warrant the imposition of punitive damages.

41.    Not directed to answering defendant.

42.    Denied. It is denied that liability can be vicariously imposed upon defendant, Woolever Bros. Transportation, Inc., for any punitive damages imposed upon Vernice L. Statts for his conduct. It is further denied that any act or omission on the part of Woolever Bros. Transportation, Inc. is sufficient to permit the imposition of punitive damages against said defendant.

WHEREFORE, defendant, Woolever Bros. Transportation, Inc., demands judgment in its favor together with the cost of defense of this action.

001355



## NEW MATTER

1.      At all times relevant hereto, defendant, Vernice Statts was operating the tractor trailer in question as agent, servant and employee of defendant, JHM Enterprises, Inc. and not on the business or behalf or as agent, servant or employee of defendant, Woolever Bros. Transportation, Inc.

2.      Defendant, Woolever Bros. Transportation, Inc. cannot be held liable for punitive damages on the basis of imputed liability.

3.      The allegations of the complaint pertaining to punitive damages are insufficient to permit the imposition of same.

4.      Upon information and belief, the conduct of defendant, Vernice L. Statts, was insufficient as a matter of law to permit the imposition of punitive damages.

5.      The plaintiffs' causes of action, if any, are barred and/or limited by the applicable provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law.

WHEREFORE, defendant, Woolever Bros. Transportation, Inc., demands judgment in its favor together with the cost of defense of this action.

## CROSSCLAIM PURSUANT TO RULE 2252(d) AGAINST CO-DEFENDANTS VERNICE STATTS AND JHM ENTERPRISES, INC.

1.      In the event that evidence at the time of trial indicates that the accident in question was caused by the acts of omissions of co-defendant Vernice Statts, then it is averred that all times relevant hereto, Statts was operating the tractor trailer solely in his capacity as agent, servant or employee of defendant, JHM Enterprises, Inc., and not on the business and behalf of defendant, Woolever Bros. Transportation, Inc.

001356



2.    Under such circumstances, if liability should be imposed upon defendants, Woolever Bros. Transportation, Inc., for any reason, then it is averred that said defendant is entitled to indemnification and/or contribution from Vernice Statts and JHM Enterprises, Inc.

3.    By way of further answer, defendant, Woolever Bros. Transportation, Inc. avers that on or about November 16, 1995, it entered into an "agreement of lease of motor vehicle equipment" with defendant JHM Enterprises, Inc.  A true and correct copy of the "agreement of lease of motor vehicle equipment" is attached hereto and marked Exhibit "A".

4.    The term of the aforesaid lease was from 4:00 p.m. on November 16, 1995, through 8:00 a.m. on November 17, 1995.

5.    The accident described in plaintiffs' complaint as averred by plaintiffs occurred after the termination of the aforesaid agreement and at a time when the tractor trailer in question had been returned to the sole custody and control of defendants JHM Enterprises and Vernice Statts.

6.    If, notwithstanding, the foregoing, liability should be imposed upon answering defendants, Woolever Bros. Transportation, Inc., for the acts or omissions of either JHM Enterprises, Inc. or Vernice Statts, then it is averred that pursuant to the terms and provisions of the agreement, answering defendant, Woolever Bros. Transportation, Inc., is entitled to indemnification from the co-defendants in that the agreement provides:

Lessor's responsibilities

Lessor is solely responsible for . . . .

(I)    Lessor shall indemnify and save lessee harmless of and from all losses, claims or damages arising while lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of lessee or while lessor is using the equipment for purposes of lessor or other than purposes of lessee.

7

001357




     (j)     Lessor shall indemnify and save lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by lessor or employees of lessors.

7.     At the time of the accident described in plaintiffs' complaint, the tractor trailer was not carrying freight for lessee, Woolever Bros. Transportation, Inc., and was being used solely for the purposes of lessor, JHM Enterprises, Inc.

WHEREFORE, defendant, Woolever Bros. Transportation, Inc., demands judgment in its favor for full indemnification and/or contribution from co-defendants JHM Enterprises, Inc. and Vernice Statts, with respect to any damages imposed upon Woolever Bros. Transportation, Inc. to the plaintiffs', all such liability to the plaintiffs, however, being strictly denied.

Respectfully submitted,

BENNETT, BRICKLIN & SALTZBURG,

Louis E. Bricklin, Esquire
Attorney for Defendant, Woolever Bros.
Transportation, Inc.

001358

## VERIFICATION

I, Hazel Sinclair, hereby verify that I am an authorized representative of answering defendant, Woolever Brothers Transportation, Inc., and that the facts set forth in the foregoing answer and new matter are true and correct to the best of my knowledge, information and belief. I understand that false statements herein made are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

_Woolever Bros Transp Inc_
_Hazel Sinclair_
HAZEL SINCLAIR

001360

717 368 8847

DEC-04 17:26    WOOLEVER BROTHERS TRANSPORTATION    ☎ 717 368 8847    P.01

633

LEASE NUMBER _W-12_

## AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this _16th_ day of _November_

19__, by and between _JHM Enterprises_ _1200 Vallamont Dr_
_(Name)_                    _(Address)_
_Williamsport Pa 17701_ , Owner and/or Lessor, and _Woolever Bros Trans Inc_ , Lessee.
_17754_

Motor Vehicle Equipment _260 Jordan Ave Montoursville Pa_ . Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|---|---|---|---|---|
| Freight Liner | 1979 | C-O | CA213 Am 160222 | AA 95089 Pa |
| Budd | 1977 | Van | 141235E | XC 27304 P |

Term. a. The term of this lease shall begin at _4:00_ o'clock on _11 16 95_ , and terminate at the end of thirty (30) days, or at _12:00_ M. o'clock _11 17 95_ , at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation;

or

b. The term of this lease shall begin at _____ M. o'clock on / / for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve:

or

c. The term of this lease shall begin at _____ M. o'clock on / / for the purpose of transportation intrastate, the movement of commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable equipment regularly used in transporting commodities exempt under section 203 (b) (6) of said Act, in the generation products therefrom or in equipment which has completed movement of commodities exempt under this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on / / for the purpose of transportation intrastate and/or interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

Lease Rental.
For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following: (CHECK ONE)

A. _90_ % of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

_JHM Enterprises_ _____ Lessor

By: _John Arnold Pres._

_Woolever Bros Trans Inc_ _____ Lessee

By: _Harold L Sinclair Sec Tres_

REPORT OF VEHICLE INSPECTION
I hereby certify that on *(DATE)* _11 16 95_ I carefully inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and that Lessee's identification placard was displayed on each side of the power unit.

_Harold Sinclair_
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Trailer |
|---|---|---|---|---|---|---|
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | OK | OK | | | | |
| Glass | | | | | | |
| Horn | | | | | | |
| Leaks | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other Items requiring attention | | | | | | |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

EXEMPT CARRIER REPORT
I certify that the equipment leased hereunder meets the qualifications enumerated in section 204(F) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described equipment, prior to the execution of this lease is as follows:

00136

_Hazel S. Sinclair Suter_

signature of authorized carrier
or co-partner of officer of authorized carrier

DATE: _11/16/85_

Time and Date of Pickup _____

Time and Date of Delivery _____

Signed _____
Owner or Agent

**RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN**

LESSEE acknowledges receipt of the above described equipment on

_11/16_ _85_

at _____

Signed by _Hazel S. Sinclair_
**LESSEE**

LESSOR acknowledges return of the above described equipment

_11/0_ 19 8

at _Ephrata, Pa._

Signed by _____
**LESSOR**

Post-it® Fax Note    7671    Date _12/4_    # of pages ▶ _2_

001362

 

**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accident**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax; wage taxes; health, welfare and pension contributions; and any other payments so required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuel, lubricants, and tires and tubes

d. Covering all said motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessor agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessor is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the seven (7) consecutive days previous to first employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, or other causes deemed sufficient by Lessee, Lessee shall have authority to transfer cargo and effect delivery by vehicles selected by Lessee. In such events all expenses incured with respect to such transfer and delivery of cargo shall be reimbursed by Lessee to Lessee, who may deduct the amount thereof from the rental sum herein provided.

Lessor agrees to be held responsible for any damages up to $250.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $250.00 for loss or damage to cargo or equipment.

 

# BENNETT, BRICKLIN & SALTZBURG

### ATTORNEYS AT LAW
### 16TH FLOOR
### 1601 MARKET STREET
### PHILADELPHIA, PENNSYLVANIA 19103-2393
(215) 561-4300

NORRISTOWN OFFICE
ONE MONTGOMERY PLAZA
SUITE 606
NORRISTOWN, PA 19401-4807
(610) 272-4900

NEW JERSEY OFFICE
204 WHITE HORSE PIKE
2ND FLOOR
HADDON HEIGHTS, NJ 08035-1739
(609) 547-5756

CENTRAL PENNSYLVANIA OFFICE
100 SOUTH QUEEN STREET
THIRD FLOOR
LANCASTER, PA 17603-5368
(717) 393-4400

PHILA. FAX: (215) 561-6661
NORR. FAX: (610) 272-5105
NJ FAX: (609) 547-5880
LANC. FAX: (717) 393-4322

June 7, 1996

WRITER'S DIRECT DIAL:
**(215) 665-3400**

REPLY TO:
Philadelphia

Northland Insurance Company
1295 Northland Drive
P.O. Box 64816
St. Paul, MN  55164

Attn:  Mr. Jerry Parker

> Re:  Robert E. Krapf and
>       Ute L. Hetland Clark et al.
> vs.   Vernice Lee Statts et al.
> Your Claim No. TF 209 197-2
> <u>Our File No. 83937</u>

Dear Jerry:

Confirming our recent telephone conversation, plaintiffs' counsel has served upon me a complaint in response to the rule which I recently filed.  I am enclosing a copy of the complaint for your file.  Please note that in addition to the anticipated counts for wrongful death and survival actions, there are counts <u>for punitive</u> damages on behalf of the estate of Karin Clifford and the estate of Robert R. Clifford.

I have prepared an answer, new matter, and crossclaim.  That has been forwarded to Woolever Brothers for its review and approval.  The crossclaim will be filed against JHM Enterprises and Vernice Statts seeking contribution and/or indemnity both at common law and pursuant to the terms and provisions of the lease agreement.  A copy of that draft answer is enclosed with this letter, also.  Please let me know if you have any questions or comments concerning it.

001190



**BENNETT, BRICKLIN & SALTZBURG**
ATTORNEYS AT LAW

Page 2
June 7, 1996

As we discussed, Woolever's defense will be based on the contention that this accident occurred after the lease between Woolever and JHM had expired. It does appear from the file that Woolever's identifying information still appeared on the side of the tractor at the time of the accident. Pursuant to your authorization, I am conducting some research to determine the implications of that placard and the current state of the law with respect to Woolever's liability, if any, after the lease expired. I will provide you with the results of that research as soon as it is completed.

With respect to the accident itself, liability appears clear. I spoke with plaintiff's counsel, who told me that it is his understanding that the drug and alcohol tests performed on Vernice Statts were reported as negative. He tells me, also, that the criminal proceedings filed against Statts have not yet been resolved. It appears from the police report that the charges included homicide by vehicle. Since Statts appears to admit that he never noticed that the Clifford vehicle was stopped at the light or that the light was red, liability on his part appears clear whatever may be the result of the criminal charges.

I have forwarded wrongful death interrogatories, expert witness interrogatories, and a request to produce to plaintiffs' counsel. That should provide us with at least some of the information necessary to evaluate these claims. One of the variables in the evaluation pertains to any conscious pain and suffering on the part of either decedent. We may have to depose some of the witnesses to determine whether there is any evidence of conscious pain and suffering. One of the wrongful death interrogatories addresses that issue as a preliminary matter.

With respect to whatever discovery would be appropriate, I would prefer to defer a decision on that issue until we have completed our research on the agency issue. If it is clear that Woolever is absolved from liability in the event that the lease had terminated before the accident occurred, then I would intend to concentrate on establishing those facts for the record, with the goal of filing a motion for summary judgment. On the other hand, if the law is not as clear in that regard, we will need to spend considerably more time in investigating the damages aspect of these claims.

I already have received interrogatories and a request for production from plaintiffs' counsel. The interrogatories inquire concerning Woolever's insurance. My draft answers to those interrogatories identifies your policy with combined single limits of $2 million. However, I have noted in the answers that Northland has issued a reservation of rights with respect to that policy. If for any reason that reservation of rights is inapplicable, please

**BENNETT, BRICKLIN & SALTZBURG**
ATTORNEYS AT LAW

Page 3
June 7, 1996

let me know so that I may delete reference to it before the answers are served. I have also taken the position in the draft answers that Woolever is entitled to coverage under the policy issued by Lincoln National to JHM Enterprises. I have also requested Woolever to let me know if it has any umbrella or excess coverage which might be applicable to this claim.

I will keep you advised of any developments. Should you have any questions, feel free to telephone me.

Very truly yours,

Louis E. Bricklin

LEB:amd
Enclosure

 

# BENNETT, BRICKLIN & SALTZBURG

ATTORNEYS AT LAW
16TH FLOOR
1601 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19103-2393
(215) 561-4300

NORRISTOWN OFFICE
ONE MONTGOMERY PLAZA
SUITE 606
NORRISTOWN, PA 19401-4807
(610) 272-4900

NEW JERSEY OFFICE
204 WHITE HORSE PIKE
2ND FLOOR
HADDON HEIGHTS, NJ 08035-1739
(609) 547-5756

CENTRAL PENNSYLVANIA OFFICE
100 SOUTH QUEEN STREET
THIRD FLOOR
LANCASTER, PA 17603-5368
(717) 393-4400

July 18, 1996

PHILA. FAX: (215) 561-6661
NORR. FAX: (610) 272-5105
NJ FAX: (609) 547-5880
LANC. FAX: (717) 393-4322

WRITER'S DIRECT DIAL:

(215) 665-3400

REPLY TO:

Philadelphia

Northland Insurance Company
1295 Northland Drive
P.O. Box 64816
St. Paul, MN  55164

Attn:  Mr. Jerry Parker

Re:  Robert E. Krapf and
　　　 Ute L. Hetland Clark et al.
vs.  Vernice Lee Statts et al.
Your Claim No. TF 209 197-2
Our File No. 83937

Dear Jerry:

Reporting in the above-captioned matter, I returned from my vacation to discover several developments with respect to this case.

First, counsel for JHM Enterprises has filed writs joining as additional defendants, the Commonwealth of Pennsylvania, Department of Transportation, Rush Township and EMR Corporation.  I am awaiting a return phone call from JHM's counsel to determine the basis for the joinders.  However, in a recent telephone conversation with Hazel Sinclair, she told me that Vernon Statts told her shortly after the accident that several bystanders at the accident scene complained that the intersection was a dangerous one and "an accident waiting to happen".  Apparently, there may be a contention that the yellow traffic signal does not remain yellow for a

001174




**BENNETT, BRICKLIN & SALTZBURG**
ATTORNEYS AT LAW

Mr. Jerry Parker
July 18, 1996
Page  2

long enough period of time, particularly given the fact that a driver's attention may be diverted by the adjoining shopping mall.

Hazel also tells me that the criminal proceeding against Vernon Statts is currently scheduled for trial later this month.  As you may be aware, Statts has been charged with vehicular homicide as a result of the accident.  Apparently, there was a preliminary hearing with respect to the criminal charges earlier this year.  I will attempt to obtain copies of the transcript of the preliminary hearing.

With respect to the issue of Wooliver's potential liability for Statts' conduct, we have done some initial research but, quite honestly, it is not sufficient to answer the question and, therefore, I am conducting some additional research before I reach any conclusions.  With respect to the facts, there have been several additional pieces of information provided by way of JHM's response to plaintiff's request for production.  JHM has produced what appears to be the bill of lading for the load of salt delivered by Statts to Ephrata, Pennsylvania, shortly before the accident occurred. I am enclosing a copy of the bill of lading.  Accompanying it, however, is a copy of a Woolever trip report, apparently completed by Statts and appearing to indicate that delivery was made on November 18, 1995, a day after the accident occurred.  I suspect that the trip report is in error, but I have faxed a copy of it to Hazel Sinclair to obtain her reaction.

Along the same lines, JHM also has produced a Commonwealth of Pennsylvania (Driver/vehicle) compliance report apparently completed by a state inspector shortly after the accident.  I am enclosing a copy of that report, also.  You should note that the ICC number and PUC number stated on the report are those of Woolever Brothers, rather than those of JHM.  At this point, I do not know why the inspector chose to use Woolever's numbers, rather than those of JHM.  Again, I have inquired of Hazel Sinclair.  It may simply be that both placards appeared on the truck and the inspector chose the first one that he saw.

Last, Hazel Sinclair recently sent to me a report of drug testing performed on Mr. Statts immediately following the accident. I am enclosing a copy of that report.  As you will see, it is beneficial in that it reflects that all testing was negative.  However, you will note that the report was given to Woolever Brothers and I asked Hazel why Woolever had requested the report if Mr. Statts was an employee of JHM.  She told me that because JHM and Woolever share office space and JHM regularly leases vehicles and drivers to Woolever, Woolever has agreed for "administrative convenience" to arrange for the drug testing of all Woolever and JHM drivers. Apparently, state or federal regulations require random drug testing of over the road truck drivers.

 

**BENNETT, BRICKLIN & SALTZBURG**
ATTORNEYS AT LAW

Mr. Jerry Parker
July 18, 1996
Page 3

Woolever has contracted with MRO, Inc. to perform that testing for both Woolever and JHM. According, when a drug test was needed following this accident, Woolever made the request. Unfortunately, I think that the evidence could be used to suggest that Woolever was exercising some control over Statts.

I also conducted a lengthy discussion with Hazel to attempt to assure myself that the trip lease upon which Woolever is relying was the one in the vehicle at the time of this accident. The file reflects that the state police seized the vehicle and its contents. Accordingly, I impressed upon her the fact that if she should produce a lease different than the one found by the police in the vehicle, that could be quite embarrassing to Woolever. She assured me that the "corrected lease" which is in our possession should have been the one in the vehicle at the time of the accident.

There is very little else of interest in the documents produced by JHM. JHM does concede that it gave Statts no formal training with respect to operation of the tractor-trailer because of his forty years of experience in the industry. The records produced by JHM do indicate that Statts had a citation for careless driving in 1994, but the details of the incident are not provided. Plaintiff's counsel recently scheduled the deposition of the Department of Transportation to obtain a complete copy of Statts' driving record. The deposition is scheduled for late this month. I will let you know what information is developed. By the way, JHM's discovery responses begin with a disclaimer indicating that JHM is limited in the information it can provide because of the criminal charges pending against Statts and his willingness to invoke his fifth amendment right against self-incrimination.

On behalf of Woolever, we have filed answers to interrogatories and responded to the plaintiff's document requests. One of the request is for a copy of Woolever's insurance policy with Northland. I would appreciate your sending me a copy of the policy in effect at the time of the accident at your earliest convenience. If it will take some time to put the policy together, could you fax me a copy of the declarations page, and, thereafter, send me the entire policy.

 

**BENNETT, BRICKLIN & SALTZBURG**
ATTORNEYS AT LAW

Mr. Jerry Parker
July 18, 1996
Page 4

I will keep you advised of any developments.  Should you have any questions, please feel free to telephone me.

Very truly yours,

Louis E. Bricklin

LEB\lpt
Enclosure

P.S.  I am not certain whether it is important to you, but Hazel Sinclair did clear up for me the ownership situation surrounding Woolever Brothers.  Hazel is married to Harold Sinclair.  Those two individuals together with Art Woolever and Scott Woolever, own the company.  Art and Scott are brothers, Hazel and Harold are not related to them.

P.P.S.  Subsequent to dictation of the above, I spoke again with the people at Woolever.  Attached is a copy of my file memorandum regarding some of the inquiries raised in this letter.
LEB

# BENNETT, BRICKLIN & SALTZBURG

ATTORNEYS AT LAW

16TH FLOOR

1601 MARKET STREET

PHILADELPHIA, PENNSYLVANIA 19103-2393

(215) 561-4300

NORRISTOWN OFFICE
ONE MONTGOMERY PLAZA
SUITE 606
NORRISTOWN, PA 19401-4807
(610) 272-4900

NEW JERSEY OFFICE
204 WHITE HORSE PIKE
2ND FLOOR
HADDON HEIGHTS, NJ 08035-1739
(609) 547-5756

CENTRAL PENNSYLVANIA OFFICE
100 SOUTH QUEEN STREET
THIRD FLOOR
LANCASTER, PA 17603-5368
(717) 393-4400

PHILA. FAX: (215) 561-6661
NORR. FAX: (610) 272-5105
NJ FAX: (609) 547-5880
LANC. FAX: (717) 393-4322

April 3, 1997

WRITER'S DIRECT DIAL: (215) 665-400

Attn: Mr. Jerry Parker
Northland Insurance Company
1295 Northland Drive
P.O. Box 64816
St. Paul, MN 55164

Re:  Robert E. Krapf and
Ute L. Hetland Clark et al.
vs. Vernice Lee Statts et al.
Your Claim No. TF 209 197-2
Our File No. 83937

Dear Jerry:

I am responding to your request for our evaluation of the potential liability of Woolever Brothers given the applicable ICC regulations and state law. Initially, I apologize for the delay in getting this information to you.

I wish I could tell you that under the cases the answer is clear-cut. Unfortunately, that is not the case. In this letter, I will attempt to provide you with the strengths and weaknesses of Woolever's position and then close with some thoughts as to how we should proceed from here.

I am enclosing a copy of a memorandum prepared for me by one of my associates, Andrew Riemenschneider. As you will see, Andy's memo sets forth the applicable case law. I particularly direct your attention to the most recent case on the issue, Jackson v. O'Shields, a decision late last year from the United States Court of Appeals for the Fifth Circuit. I am enclosing a copy of that opinion. As you will see, it reviews all of the case law in this area, including recent changes

001143

Mr. Jerry Parker
April 3, 1997
Page  2


resulting from 1986 amendments to the Interstate Commerce Commission's regulations concerning leases of equipment used in interstate commerce.

As reflected in the opinion and memorandum, under the older cases the presence of a carrier's ICC placard on leased equipment in effect created an irrebuttable presumption that a lease continued in effect.  As you know, in this case the Woolever placard still appeared on the tractor trailer at the time the accident occurred.  Accordingly, if those cases were applicable, liability on Woolever's part would be clear, although under the indemnification provisions of Woolever's lease, it would be entitled to indemnity from JHM Enterprises.  In a case of this magnitude, however, the practical result of that indemnification language would be that JHM's carrier should tender its $750,000 in liability coverage, and Northland's coverage would then be excess.

However, as pointed out in the memorandum and in <u>Jackson</u>, changes in the ICC regulations in 1986 have led to some changes in the case law.  In the 1986 amendments, the ICC dropped a previous requirement that the carrier (here, Woolever) was obligated to remove identifying placards from leased equipment and, instead, substituted a requirement that the carrier and lessor could negotiate which party was to have that responsibility and then set forth the results of that negotiation in the lease document.  According to the most recent cases, including <u>Jackson</u>, because of that change in the ICC regulations the court can now look beyond the presence of the placard on the truck to determine whether the lease actually continued in effect at the time of the accident.  As we currently understand the facts in this case, the Woolever-JHM lease had terminated by the time of this accident, although, as Andy points out in his memorandum, there is ambiguous language in the lease agreement which could be construed to lengthen the term of the lease by thirty days.  However, I do not think that a court will reach that conclusion because it does require a fairly tortured reading of the lease agreement.

Assuming that the court concludes that the lease had terminated by the time this accident occurred, it seems clear under <u>Jackson</u> that if JHM and Woolever had placed a provision in their lease agreement obligating JHM to remove the placard (or cover it) once the lease was terminated, the courts should not impose liability upon Woolever when the accident occurs after termination of the lease just because JHM failed to remove or cover the placard.  However, as you can see from the lease agreement attached to the memorandum, there is no provision in it obligating either party to remove the placard.  Because <u>Jackson</u> seems to rely heavily on the fact that the lessees in that case had made reasonable efforts to remove their placard from the vehicle but had been rebuffed by the lessor, I am not certain that a court would reach the same result if no such efforts were made and the lease, as here, does not deal with the question of placarding.  After I reviewed Andy's

Mr. Jerry Parker
April 3, 1997
Page 3

memorandum, I spoke with Hazel Sinclair at Woolever Brothers. She told me that at the time of the accident JHM hauled only about one out of every five of its loads under Woolever's rights. However, at no time did JHM cover the Woolever placard when it was hauling the other eighty percent of its loads. Parenthetically, it now does so as a result of this accident. Hazel tells me that Woolever was aware of the fact that its logo was not being covered but at the time did not consider that to be important. Since Jackson relies on the efforts of the lessee to reclaim its placard and on changes in the ICC regulations which Woolever never incorporated into its lease, it seems to me that plaintiffs could make a reasonable argument that the older "logo liability" rule still applies under the facts of this accident. As you can see, the issue is an extremely close one.

Despite the length of time since I last reported to you, there have been virtually no developments in this case. I cannot understand why plaintiffs' counsel is not pursuing it more vigorously. As you know, JHM joined several additional defendants involved in the installation and maintenance of the traffic signal at the intersection where the accident occurred. Each of those additional defendants filed preliminary objections, all of which were overruled by the trial court. At this stage, I see absolutely no liability on their part, but we will see what discovery reveals.

From our point of view, I would suggest that you authorize me to notice the deposition of Jay McCormick (the proprietor of JHM) and Vernice Statts to establish a record to serve as the basis for a motion for summary judgment. I am relatively certain that our notices will produce a cross-notice for one or more representatives of Woolever. If, as I expect, there are no discrepancies in the testimony offered by those witnesses with respect to the lease arrangement between Woolever and JHM, at that point we can move for summary judgment on Woolever's behalf based on the contention that the lease had terminated. If the court grants our motion for summary judgment, obviously there is nothing further to be done. If the court denies the motion, particularly if it does so on the basis that the logo liability rule applies, I would think at that point we would want to consider negotiating a settlement of the claim, assuming that JHM's carrier recognizes its primary obligation.

Mr. Jerry Parker
April 3, 1997
Page 4

After you have had an opportunity to review this letter and the enclosures, please feel free to telephone me with any questions or comments. I will await your instructions with respect to further handling.

Very truly yours,

Louis E. Bricklin

LEB:amd
Enclosure



# BENNETT, BRICKLIN & SALTZBURG
## INTRAOFFICE MEMO

**To:**    LEB
**From:**    ALR
**Subject:**  83937 - Liability/Update
**Date:**    April 1, 1997

---

As you will recall, this action arises out of a motor vehicle accident which occurred on November 17, 1995 when a tractor-trailer operated by defendant Vernice Statts, and owned by JHM Enterprises struck the rear of a motor vehicle occupied by Robert and Patricia Clifford. The Clifford vehicle was pushed into a third vehicle and both Robert and Karen Clifford died as a result of the collision. The accident occurred at 11:24 a.m. just north on Hometown, Rush Township, Schuylkill County.

As indicated above, both the tractor, a 1979 freight liner, and the trailer, a 45 foot van trailer, were owned by JHM Enterprises. JHM had liability insurance coverage with Lincoln General Insurance Company and the aforementioned tractor-trailer was specifically listed on that policy. Also, Vernice Statts was listed as a driver on that policy. The policy provided for a combined single limit of $750,000.00 in liability coverage. An umbrella policy does not exist.

On November 16, 1995, JHM Enterprises entered into a lease with the insured, Woolever Brothers. Attached hereto is a copy of lease agreement. As you can see, the term of the lease was from 4:00 p.m. on November 16, 1995 until 8:00 a.m. on November 17, 1995. By way of background, JHM and Woolever Brothers share space in Montoursville, PA. Usually, Jay McCormick (JHM) acts as the lessor in that he supplies Woolever Brothers the lessee with a driver and the tractor-trailer to deliver the freight. With respect to the instant action, Mr. Statts initially traveled from Montoursville to Watkins Glenn, NY where he picked up a load of salt at Cargill

001147

# BENNETT, BRICKLIN & SALTZBURG

April 1, 1997
Page 2

Salt Company. He then traveled to Ephrata, PA where he unloaded the salt. Importantly, after unloading the salt, Mr. Statts was dispatched by Jay McCormick at JHM for another load in Berwick, PA. The aforementioned load was in connection with another part of JHM's business, and was not in any way connected to the insured's business. In fact, when these "other trips" would occur, Woolever Brothers would not get paid from JHM. Also, according to Hazel Sinclair of Woolever Brothers, the mileage for the trips Statts made from Montoursville to Watkins Glenn, NY and from there to Ephrata where he unloaded the salt would have been recorded and reported. They would not, however, report the mileage from Ephrata to Berwick, as he was to pick up a load for JHM.

At the time of the accident, placards for both Woolever Brothers and JHM were located on the tractor. Attached hereto is a copy of a photograph depicting the placards as they appeared shortly after the accident and when the tractor-trailer was impounded. I would suspect that Mr. Statts will testify that the placards were rarely removed as it was simply easier to leave them in place given the frequency of his dealings with Woolever Brothers.

Generally, pursuant to the ICC leasing regulations and applicable statutes, the carrier-lessee is vicariously liable for injuries caused to the traveling public by virtue of the negligent operation of any vehicle leased to it as the lessee has both a legal right and duty to control vehicles operated for its benefit and, in fact, the employees for the vehicle-lessor are deemed statutory employees of the lessee-carrier. 49 U.S.C. §11107; Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.., 423 U.S. 28, 36-38, 96 S.Ct. 229, 233-234 (1975). See also Wilkerson v. Allied Van Lines, Inc., 521 A.2d 25 (Pa. Super. 1987). Accordingly, the primary issue in the



**BENNETT, BRICKLIN & SALTZBURG**

April 1, 1997
Page 3

---

instant case will be whether the accident occurred subsequent to the termination of the lease

agreement and, whether the failure to remove the carrier identification information will serve to

vitiate the termination.

As indicated above, the lease provided:

> The term of this lease shall begin at 4:00 p.m. on 11/16/95 and
> terminate at the end of thirty (30) days, or at 8:00 a.m. on
> 11/17/95, at which time the term, of this lease is automatically
> extended for additional like thirty (30) day periods, unless
> terminated by either party giving to the other party five (5) days
> written notice of cancellation.

Prior to 1983, a thirty day period was the minimum statutory lease period. Apparently, JHM and

Woolever continued to use the traditional thirty day lease even when entering into a shorter "trip

lease". Unfortunately, a general reading of the term of the lease outlined above could be

interpreted to suggest that on November 17, 1995 the term of the lease was extended for thirty

days. There is no information contained in the file to suggest that either party provided the other

party with written notice of cancellation prior to the accident. On the other hand, the language

"is automatically extended for an additional like thirty (30) day period" suggests that the original

term of the lease was for thirty days, which, of course, it was not. The language obviously

reflects the fact that a thirty day lease used to be the statutory minimum. As a practical matter,

it is my impression that the intention of the parties, combined with their customary practice will

establish that the lease was to terminate on November 17, 1995 at 8:00 a.m.

With respect to the contents of the lease, §1057.12(c) provides in pertinent part:

001149

**BENNETT, BRICKLIN & SALTZBURG**

April 1, 1997
Page 4

---

> The lease shall provide that the authorized carrier of the lessee shall
> have exclusive possession, control, and use of the equipment for the
> duration of the lease. The lease shall further provide that the
> authorized carrier lessee shall assume complete responsibility for the
> operation of the equipment for the duration of the lease.

This, of course, is consistent with the case law mentioned above. However, §1057.12 (e)

provides in pertinent part:

> The lease shall clearly specify which party is responsible for
> removing identification devices from the equipment upon
> termination of the lease and when and how these devices, other than
> those painted directly on the equipment, will be returned to the
> carrier.

Initially, it is not clear whether the information is painted directly on the tractor, or

whether it is simply a decal of some sort. The lease does not address this issue and perhaps this

is because the information is painted directly on the equipment, and, as such, there is no need to

specify the process for removing the identification. In any event, further investigation in this area

is necessary.

Prior to 1986, in order to terminate a lease, a carrier had to remove any identifying legends

on the truck and obtain a receipt specifically identifying returned equipment 49 C.F.R. 1057.4 (d)

(1985). These requirement were repealed in a series of ICC amendments in 1986. The notes to

these amendments emphasize that liability should not be assigned on the existence of placards

alone. Ex parte no MC-43 Sub. 16. However, the ICC left open the possibility that a lease could

be terminated, but a carrier was still liable under state contract, agency or tort theories.

Currently, the regulations no longer impose an affirmative duty on the carrier to remove vehicle

001150



# BENNETT, BRICKLIN & SALTZBURG

April 1, 1997
Page 5

---

identification materials when a lease is terminated.  Instead, the regulations provide that a lease

shall specify which party has an obligation to remove the identifying materials. For many years,

the general precedent has been that the display of a carrier's name and ICC number was sufficient

to establish liability.  See Whiteman vs. Sophie Lines, Inc., 289 F2d 473 (3d Cir. 1961).

However, the emerging trend requires an analysis of the facts relating to the relationship between

the lessor and the lessee.  In fact, it should be noted that the Whiteman case cited above addressed

the :"logo liability rule" but is distinguishable because the lease was still in effect at the time of

the accident.  Recently, the United States Court of Appeals for the Fifth Circuit held that a carrier-

lessee's termination of a lease-purchase agreement with the owner-lessor was not vitiated by the

continued presence of the carrier's ICC placard and emblem on the tractor and carrier's failure to

obtain a cancellation receipt from the owner, and thus these facts did not make the carrier-lessee

vicariously liable under ICC regulations.  Jackson v. O'Shields, 101 F.3d 1083 (5th Cir. 1996).

See also Atlantic Truck Lines, Inc. v. Kersey, 387 So. 2d 411, 416 (Fla. App. 1980).  It should

be noted that in Jackson, the owner-lessor was required to remove the placards pursuant to the

terms of the lease.  Moreover, the lessee, prior to the accident, repeatedly requested that the

placards be removed by the owner-lessor.

     In Tartaglione v. Shaw's Exp., Inc., 790 F. Supp. 438 (S.D.N.Y. 1992) the court held that

the lessee could not be held liable for negligent acts of the truck's owner and driver even if the

truck contained the lessee's placard at the time of the incident as the lessee had terminated its lease

approximately two months prior to the collision and as in Jackson, the terms of the lease made the

owner-lessor responsible for removing placards.  Similarly, the United States District Court in

001151



# BENNETT, BRICKLIN & SALTZBURG

April 1, 1997
Page 6

Massachusetts recently held that a trucking firm could not be held liable under the statutory employment doctrine for injuries resulting from subsequent accident in which the driver was involved, two days after notice of cancellation was sent to the driver, even though the driver did not receive notice and the firm did not recover vehicle identification materials from the driver. Graham v. Malone Freight Lines, Inc., 948 F. Supp. 1124 (D.Mass. 1996). It should be noted that the lease in Graham provided that the owner-lessor was obligated to return the vehicle identification materials to the lessee within fifteen days of the termination of the lease.

In light of the case law and the judicial trend, it is my impression that the mere presence of the Woolever Brothers placard will not give rise to liability on the part of Woolever in light of the termination provision of the lease, the dispatch made by JHM prior to the accident and the possibility that the vehicle identification information was permanently affixed to the tractor. A preliminary review of Pennsylvania's contract and agency law would tend to establish that Woolever Brothers would not be liable for the negligence of Statts. Mustang Trans. Co. V. Ryder Truck, 523 F.Supp. 1097 (DC. Pa. 1981).

Although there are some cases to suggest that even when the driver of a tractor-trailer is operating a truck without freight on board and in essence is on a "return trip" the truck was nevertheless being used "in the business of" the truck lessee, it is my impression that these cases are not applicable in light of the fact that Mr. Statts was not on a return trip since he was dispatched by JHM to pick up a different load when the accident occurred.



# BENNETT, BRICKLIN & SALTZBURG

April 1, 1997
Page 7

---

At this point, it seems that we should work towards filing a motion for summary judgment by deposing Statts and Jay McCormick.  We should also consider obtaining an affidavit from Hazel Sinclair relative to the parties' intentions and customary practices.

ALR/dp

Case 1:01-cv-00763-YK    Document 36    Filed 06/04/2002    Page 95 of 114

court's imposition of the full panoply of sanctions.

APPEAL DISMISSED; CAUTION ISSUED.



Sarah M. JACKSON and Leo
Smith, Plaintiffs,

v.

Timothy K. O'SHIELDS, J & T Enterprises, Inc., John T. Hanna, and
Larry Wallen, Defendants.

CANAL INSURANCE COMPANY, A
Corporation, Plaintiff-Appellee,

v.

Sarah M. JACKSON, Leo Smith,
Defendants-Appellants.

No. 96-60024.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1996.

Motor carrier liability insurer sought declaration of no coverage for underlying actions brought by persons injured in accident with tractor truck that had formerly been subject of lease-purchase agreement between insured carrier and tractor owner. The United States District Court for the Southern District of Mississippi, Dan M. Russell, Jr., J., rendered judgment for insurer, and underlying claimants appealed. The Court of Appeals, Benavides, Circuit Judge, held that: (1) termination of lease-purchase agreement was not vitiated by continued presence of carrier's Interstate Commerce Commission (ICC) placard and emblem on tractor and carrier's failure to obtain cancellation receipt from owner; (2) periodic posttermination joint hauls did not vitiate termi-

nation; and (3) no oral lease existed between carrier and owner when accident occurred.

Affirmed.

**1. Federal Courts ⬥660.35, 668**

Fact that district court did not certify interlocutory order for appeal until after notice of appeal was filed did not prevent Court of Appeals from retaining jurisdiction over appeal. Fed.Rules Civ.Proc.Rule 54(b), 28 U.S.C.A.

**2. Automobiles ⬥197(3)**

Carrier-lessee's termination of tractor truck lease-purchase agreement with owner-lessor of tractor was not vitiated by continued presence of carrier's Interstate Commerce Commission (ICC) placard and emblem on tractor and carrier's failure to obtain cancellation receipt from owner, and thus these facts did not make carrier vicariously liable under ICC regulations for injuries resulting from posttermination accident involving tractor, where termination complied with agreement's terms and carrier took reasonable steps to remove placard and obtain receipt. 49 U.S.C.(1994 Ed.) § 11107; 49 C.F.R. §§ 1057.11(c)(1), 1057.12(c)(1), (e), 1058.2 (1995).

**3. Automobiles ⬥197(3)**

Periodic joint hauls by carrier and tractor truck owner after carrier gave written notice of termination of parties' lease-purchase agreement concerning the tractor did not vitiate termination, and thus did not make carrier vicariously liable under Interstate Commerce Commission (ICC) regulations for injuries resulting from posttermination accident involving tractor, where terms of the joint hauls were substantially and materially different from terms of agreement, in that agreement involved 90–10% revenue split whereas split for joint hauls was 50–50%, and agreement did not apply to tractor-only hauls whereas joint hauls were all tractor-only hauls. 49 U.S.C.(1994 Ed.) § 11107; 49 C.F.R. §§ 1057.11(c)(1), 1057.12(c)(1), (e), 1058.2 (1995).

**4. Automobiles ⬥197(3)**

Oral lease between Interstate Commerce Commission (ICC)-authorized carrier

and vehicle owner can give rise to statutory employment relationship between carrier and driver, making carrier vicariously liable under ICC regulations for injuries caused by driver, even though ICC regulations require leases between ICC-authorized carriers and equipment owners to be in writing. 49 U.S.C.(1994 Ed.) § 11107; 49 C.F.R. §§ 1057.11(a), 1057.12(b), (c)(1) (1995).

**5. Automobiles ⊜197(3)**

No oral lease existed between Interstate Commerce Commission (ICC)-authorized carrier and tractor truck owner when accident involving tractor occurred during oyster haul, such as could make carrier vicariously liable under ICC regulations for injuries resulting from accident, where carrier, which formerly had lease-purchase agreement with owner involving tractor and had made periodic joint hauls with owner after agreement's termination, was in no way connected with the oyster haul, in that it was coordinated exclusively by owner, trailer also belonged to owner, haul did not benefit carrier in any way, carrier dealt only in produce, and carrier had no knowledge of haul until days later. 49 U.S.C.(1994 Ed.) § 11107; 49 C.F.R. §§ 1057.11(a), 1057.12(b), (c)(1) (1995).

---

Brian Atkins Montague, Montague, Pittman & Varnado, Hattiesburg, MS, for Canal Insurance Company, plaintiff-appellee.

David A. Hilleren, Hilleren & Hilleren, Mandeville, LA, for defendants-appellants.

Appeal from the United States District Court for the Southern District of Mississippi.

Before HIGGINBOTHAM, DUHÉ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The ultimate issue in this appeal is whether Canal Insurance Company ("Canal") has indemnity obligations under an MCS–90 Endorsement issued in connection with the insurance policy of an interstate carrier. To get to the bottom of Canal's indemnity obligations, we must resolve whether a lease

between a tractor owner and carrier that is licensed by the Interstate Commerce Commission ("ICC") can be effectively terminated when the carrier's ICC placard and emblem remain on the tractor and the carrier has not obtained a receipt from the owner-lessor confirming the termination of the lease. We conclude that the presence of a carrier's ICC placard on leased equipment and the carrier's failure to obtain a receipt upon return of the leased equipment do not alone preclude a determination that a lease has been terminated.

I.

On January 31, 1993, a 1976 Freightliner tractor-trailer rig hauling oysters collided with an automobile driven by Sarah Jackson and occupied by Leo Smith. Jackson and Smith allegedly suffered personal injuries as a result of the accident. The tractor-trailer rig was driven by Timothy O'Shields and owned by Larry Wallen. At the time of the accident, the tractor bore the painted ICC placard and the emblem of J & T Enterprises, an ICC-authorized carrier.[1] Canal was J & T Enterprises's insurance company. From there, the matter grew more complicated, as the "round robin of finger pointing by carriers, lessors, owners and drivers," . . . and insurers" began. *Rediehs Express, Inc. v. Maple,* 491 N.E.2d 1006, 1012 (Ind.App. 1986), *cert. denied,* 480 U.S. 982, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987).

Jackson and Smith brought suit for personal injuries against O'Shields, Wallen, J & T Enterprises, and John and Theresa Hanna (partners in J & T Enterprises). Canal brought a separate action, seeking a declaration that it had no defense or indemnity obligations to any of the parties in the suit brought by Jackson and Smith. The district court consolidated the underlying tort suit and Canal's declaratory judgment action and bifurcated the matters for trial purposes.

[1] Following a bench trial of Canal's declaratory judgment action, the district court held that there was no lease between J & T Enterprises and Wallen (the owner of the

---

1.  J & T Enterprises held an ICC permit authoriz-    ing it to transport goods in interstate commerce.



tractor), oral or otherwise, in effect for the trip involved in this case. The district court found that the Hannas (acting as partners of J & T Enterprises) had terminated the written lease and made reasonable efforts both to remove J & T Enterprises's ICC placard and insignia from the tractor and to obtain a cancellation receipt from Wallen. Consequently, the district court rendered a declaratory judgment that Canal, as J & T Enterprises's insurer, has no indemnity obligation to any of the parties to the underlying lawsuit. This appeal followed.[2]

## II.

J & T Enterprises's insurance policy with Canal contained an MSC-90 Endorsement ("Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980").[3] Under the Endorsement, Canal undertook to pay any final judgment rendered against J & T Enterprises arising out of the "operation, maintenance or use of motor vehicles subject... to financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980." This provision covered J & T Enterprises's liability arising out of equipment leased by J & T Enterprises and operated under its ICC authority. In this case, whether Canal has any indemnity obligation under the MCS-90 Endorsement turns upon whether there was a lease between J & T Enterprises and Wallen for the 1976 Freightliner at the time of the accident. If there was such a lease, J & T Enterprises would be liable for injuries negligently inflicted by the driver of the truck and, in turn, Canal would have indemnity obligations.

There is no question that from September 3, 1992 to October 30, 1992, J & T Enterprises and Wallen were parties to a Lease Purchase Agreement and a Contractor Operating Agreement with respect to the 1976

Freightliner involved in the accident. As its name suggests, the Lease-Purchase Agreement focused on the terms of J & T Enterprises's eventual purchase of the 1976 Freightliner and contained a warranty of title. The Contractor Operating Agreement, by contrast, provided the nitty-gritty terms of the leasing arrangement between J & T Enterprises and Wallen. Soon after entering into the agreements, however, the Hannas, partners in J & T Enterprises, discovered that expensive repairs and insurance costs made the arrangement infeasible.

The district court found that John Hanna promptly took formal steps to cancel the Lease Purchase Agreement and the Contractor Operating Agreement on behalf of J & T Enterprises. On October 30, 1992, Hanna personally delivered to Wallen a signed and notarized termination notice. At that time, Wallen had already retaken possession and control of the tractor. Wallen refused to sign the cancellation receipt at the bottom of the termination notice. Approximately a week later, Hanna repeated his request that Wallen sign a receipt. Again, Wallen refused to do so. John Hanna also repeatedly asked Wallen to remove J & T Enterprises's painted ICC placard and its emblem from the side of Wallen's 1976 Freightliner. Although Wallen agreed on several occasions to "take care of" removing the painted J & T Enterprises placard from the tractor, he never did so.

Smith and Jackson contend that the lease relationship nevertheless continued in effect through the date of the accident because J & T Enterprises's emblem and ICC placard were not removed from the door of Wallen's truck and because J & T Enterprises did not obtain a receipt from Wallen showing that the lease had been terminated. They also contend that trips undertaken jointly by J &

**2.** The district court certified the declaratory judgment portion of the consolidated cases for appeal under Federal Rule of Civil Procedure 54(b). Although the certification was given after the notice of appeal had already been filed, we nonetheless retain jurisdiction to review this case under the rationale expressed in *Metallurgical Indus., Inc. v. Fourtek, Inc.,* 771 F.2d 915, 916 (5th Cir.1985) (citing *Alcorn County, Miss. v. U.S. Interstate Supplies,* 731 F.2d 1160 (5th Cir.1984)

(citing *Jetco Elec. Indus., Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973))). Additionally, we find, and indeed there is no dispute, that the prerequisites for the certification of the interlocutory order have been satisfied. *See* Fed.R.Civ.P. 54(b).

**3.** The exact form of this endorsement is mandated by ICC regulation. *See* 49 C.F.R. § 387.15.



T Enterprises and Wallen after J & T Enterprises gave written notice of termination breathed new life into the otherwise-terminated Contractor Operating Agreement. Alternatively, they argue that joint hauls after the termination of the written lease evidenced an oral lease that was in effect when the accident happened.

### III.

[2] Under the authority of 49 U.S.C. § 11107, the Interstate Commerce Commission regulates leases of equipment used in interstate commerce. *See* 49 C.F.R. § 1057.1 *et seq.* One of the primary purposes of the ICC's leasing regulations is to ensure that carrier-lessees take control of and responsibility for leased equipment during the term of a lease.[4] In line with this purpose, we held in *Simmons v. King* that if there is an existing lease between an ICC-authorized carrier and an owner of leased equipment and the equipment bears the carrier's ICC placard, then the driver of the equipment will be deemed to be the carrier's statutory employee. 478 F.2d 857, 867 (5th Cir.1973). Consequently, the carrier will be held vicariously liable for injuries resulting from the use of the leased equipment. *Id.; Price v. Westmoreland,* 727 F.2d 494, 497 (5th Cir. 1984) (applying *Simmons*). Other jurisdictions have also employed a "statutory employee" analysis to impose liability on carrier-lessees. *See, e.g., Planet Ins. Co. v. Transport Indemnity Co.,* 823 F.2d 285, 288

(9th Cir.1987); *Rodriguez v. Ager,* 705 F.2d 1229, 1233–36 (10th Cir.1983); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.,* 722 F.2d 1400, 1404 (8th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2155, 80 L.Ed.2d 540 (1984); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 476–77 (3d Cir.1961); *Cosmopolitan Mut. Ins. Co. v. White,* 336 F.Supp. 92, 96 (D.Del. 1972).

This case is not squarely governed by *Simmons,* however, because in *Simmons* there was no doubt that there was a lease in effect between the equipment owner and the ICC-authorized carrier when the accident occurred. Here, the central issue is whether there was a lease between J & T Enterprises and Wallen for the tractor at the time the accident occurred.

Jackson and Smith rely on decisions from other circuits, in which courts have held that a lease can be effectively terminated only if the carrier-lessee (1) removes its identifying placard from the leased equipment, and (2) obtains a cancellation receipt from the equipment owner.[5] These courts relied on a then-existing ICC regulation that placed the burden on the carrier-lessee, upon the termination of a lease, to remove its ICC placard and any identifying emblem or insignia and required the carrier-lessee to obtain a receipt from the owner-lessor.[6]

In 1986, the ICC regulations were substantially modified, giving the leasing parties a much broader range of discretion as to the

4. The ICC regulations mandate that, under an ICC-regulated lease, the ICC carrier-lessee assume "exclusive possession, control, and use of the equipment for the duration of the lease" and "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c)(1).

5. Under these "logo liability" cases, the presence of a carrier's ICC placard on leased equipment in effect creates an irrebuttable presumption that a lease continues in effect. *See Rodriguez,* 705 F.2d at 1236 ("When [an ICC placard is] not removed upon cancellation of a lease, it subjects the public to the evils which Congress attempted to eliminate when the independent contractor system was rejected."); *Cosmopolitan Mut. Ins. Co.,* 336 F.Supp. at 96 ("Obtaining a receipt for the return of the vehicle and removing the ICC placard are prerequisites to termination of an ICC lease."); *see also Mellon,* 289 F.2d at 476

(explaining that the lessee "could have effectually eliminated its responsibility for the truck's use in only one way," by removing the ICC placard and obtaining a receipt); *Kreider Truck Serv., Inc. v. Augustine,* 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179, 1182 (1979) (holding that a carrier's "complete [r]esponsibility" for leased equipment continues until the carrier removes its ICC placard and obtains a receipt).

6. When the ICC regulations were renumbered and republished in 1967, the receipt and placard removal regulations were set out at 32 Fed.Reg. 20,056, 20057–58 (1967), in essentially the same form in which they existed up until the 1986 amendments discussed below. *See* Republication and Redesignation of Regulations, 32 Fed. Reg. 20,003 (1967) (redesignating the ICC leasing regulations, which were previously codified at 49 C.F.R. part 307, as 49 C.F.R. part 1057).

Case 1:01-cv-00763-YK    Document 36    Filed 06/04/2002    Page 99 of 114

terms of the lease.[7]  Significantly, the regulations no longer obligate the carrier to remove identifying placards or other insignia from the leased equipment.  Instead, the parties must specify in the lease whether the carrier-lessee or the owner-lessor has this responsibility.[8]  Likewise, the regulations now allow the leasing parties to agree whether a receipt will be required upon termination of the lease rather than requiring that the carrier obtain a receipt.[9]

The history of the amendments reflects that they were prompted by the Interstate Carrier Conference's concern (expressed in a petition to the Interstate Commerce Commission) that carriers could face tort liability even if "equipment owners . . . wrongfully continue to display the carrier's identification devices on equipment after a lease contract has terminated." 3 I.C.C.2d at 92; see also Williamson v. Steco Sales, Inc., 191 Wis.2d 608, 530 N.W.2d 412, 418–19 (App.1995) (discussing the amendment of the ICC placard removal regulation), review denied, 537 N.W.2d 571 (Wis.1995).  In enacting the amendments, the ICC made clear that ICC "leasing rules do not and are not intended either to assign liability based on the existence of placards or to interfere with otherwise applicable State law." 3 I.C.C.2d at 93.[10]

In the aftermath of the ICC amendments, the continued vitality of decisions in other circuits holding that a lease cannot be effectively terminated until a carrier removes its placard and obtains a receipt is at best questionable.  Even if those decisions could sur-

vive the amendments, we decline to hold that the lease between Wallen and J & T Enterprises continued in effect despite J & T Enterprise's conscientious efforts to terminate the lease.  Notably, none of the pre-amendment cases cited by Jackson and Smith involved a carrier who conscientiously attempted to remove its placard and to obtain a receipt.  Rodriguez, 705 F.2d at 1230–31; Mellon, 289 F.2d at 477; Cosmopolitan Mut. Ins. Co., 336 F.Supp. at 97 ("The record does not indicate a single effort on McCormick's part to comply with its ICC obligations.").  In fact, in both Rodriguez v. Ager and Mellon National Bank & Trust Co. v. Sophie Lines, Inc., the underlying leases between the carriers and the equipment owners were apparently still in effect at the time of the accidents. See Rodriguez, 705 F.2d at 1230 ("[T]he lease was on the verge of being terminated, but at the time of the accident . . . the lease had not been cancelled . . . ."); Mellon, 289 F.2d at 475 (noting that the "collision occurred October 4, 1955," within the period of the [30-day] lease").

When faced with a case in which a carrier had assiduously attempted to cancel a lease in accordance with the lease's provisions, a Florida court held in Atlantic Truck Lines, Inc. v. Kersey, that the presence of an ICC placard and lack of a receipt are not alone dispositive of the existence of a lease. 387 So.2d 411, 416 (Fla.App.1980), review denied, 397 So.2d 778 (Fla.1981).  As the Florida court explained, cases like Rodriguez and Mellon could produce unjust results if applied to a diligent carrier:

7.  The amended regulations were in effect when the accident happened and when J & T Enterprises entered into the lease for the 1976 Freightliner. The amendments became effective on November 21, 1986.  See Lease and Interchange of Vehicles (Identification Devices) (Ex Parte No. MC-43) (Sub-No. 16), 3 I.C.C.2d 92 (October 10, 1986).

8.  Section 1057.12(e) provides in pertinent part: . . . The lease shall clearly specify which party is responsible for removing identification devices from the equipment upon the termination of the lease and when and how these devices, other than those painted directly on the equipment, will be returned to the carrier . . . .
49 C.F.R. § 1057.12(e).  The regulations as amended still require the authorized carrier to identify leased equipment by displaying its name

and MC number on the equipment.  49 C.F.R. §§ 1057.11(c)(1), 1058.2.  The control-and-responsibility provisions were also left intact.  49 C.F.R. § 1057.12(c).

9.  The regulations provide in relevant part that:

The lease shall clearly specify the manner in which a receipt will be given to the authorized carrier by the equipment owner when the latter retakes possession of the equipment upon termination of the lease agreement, if a receipt is required at all by the lease . . . .
49 C.F.R. § 1057.12(e).

10.  In amending the receipt requirement, the Commission noted that the former rule placed "an unrealistic burden on most carriers and offer[ed] no flexibility to the lease parties." Id.



[A] lease could be terminated by a carrier because the owner breaches the agreement by never appearing to pick up a designated load, yet despite its best efforts to locate the truck or its owner, the carrier would still be liable as a matter of law if it failed to obtain the placard and receipt. Such a result would offend even the most cynical, and we do not think that it was intended by Congress.

*Id.*[11] Although the facts of the present case are not as stark as those presented in the *Kersey* court's hypothetical, we believe the basic point is sound and applicable in this case.

The district court's findings reflect that the Hannas, partners in J & T Enterprises, terminated the lease in compliance with its terms and took reasonable steps to remove their ICC placard and to obtain a receipt from Wallen. On October 30, 1992, John Hanna presented Wallen with a written and notarized termination notice. Wallen twice refused to sign the termination notice to acknowledge receipt of the equipment. We decline to hold that Wallen's unilateral refusal to sign a receipt extended the term of the Contractor Operating Agreement. Under the agreement's termination clause, either party could terminate the agreement by giving the other a written notice.[12] An acknowledgment of the termination notice is not a condition precedent to termination of the agreement. Nor do the ICC regulations create a presumption that failure to obtain a written receipt vitiates an unequivocal written termination. To the contrary, as we have previously discussed, the regulations now provide that whether a receipt is required *at all* is a matter of contract between the parties.

The presence of J & T Enterprises's ICC placard does not vitiate the otherwise valid termination notice. Under the agreement, Wallen, not the Hannas, bore the responsibility of removing J & T Enterprises's ICC placard and emblem upon the termination of the lease.[13] The district court found that, despite repeated requests by John Hanna, Wallen refused to remove J & T Enterprises's placard from the tractor. Wallen's failure to comply with his obligation under the Contractor Operating Agreement will not be held against J & T Enterprises.

We hold that the presence of J & T Enterprises's ICC placard on the 1976 Freightliner and the lack of a termination receipt did not alone keep the otherwise-terminated agreement alive.

IV.

[3] Jackson and Smith next contend that J & T Enterprises's and Wallen's periodic joint ventures after the termination of the written lease support imposing vicarious liability on J & T Enterprises for the injuries suffered by Jackson and Smith. During the months following the termination notice, Wallen's 1976 Freightliner was used to pull J & T Enterprises's trailers on various hauls. These joint hauls, Jackson and Smith allege, somehow vitiated J & T Enterprises's written notice terminating the Contractor Operating Agreement. They argue alternatively that the joint hauls created a new lease or leases between Wallen and J & T Enterprises that were in effect when the accident occurred.

The district court found that the hauls after October 30, 1992 were not a continuation of the Contractor Operating Agreement. We agree. As the district court explained, the terms of the later hauls were "substantially and materially different from the long since cancelled contractor operating agreement." For example, under the Contractor Operating Agreement, the parties agreed to a 90–10% revenue split, compared to an agreed 50–50% split for later loads. Further, although the Contractor Operating Agreement by its terms did not apply to tractor-only hauls (those involving a J & T

---

11. Even the *Rodriguez* and *Mellon* courts would apparently provide an exception to the logo liability rule if an accident occurred after leased equipment was stolen. *Mellon,* 289 F.2d at 477, *quoted in Rodriguez,* 705 F.2d at 1233.

12. Under the agreement, a termination notice is effective upon receipt unless the notice itself states another termination date.

13. This provision complied with the ICC regulations as amended. *See* 49 C.F.R. § 1057.12(e).




trailer rather than a Wallen trailer), all the joint hauls after October 30, 1992 were tractor-only hauls. On the whole, the facts as found by the district court do not support Jackson's and Smith's theory that the Contractor Operating Agreement continued after the written termination notice.

[4, 5] Jackson and Smith are no doubt correct that the fact that no written lease was in effect at the time of the accident does not foreclose the possibility that an oral lease existed between the parties. See Zamalloa v. Hart, 31 F.3d 911, 917 (9th Cir.1994) (holding that a statutory employment relationship between a driver and a carrier "can be formed via an oral lease between the carrier and vehicle owner even before the driver picks up the cargo"); Williamson, 530 N.W.2d at 416 ("Although ICC regulations require the carrier to have a written lease, the failure to have one does not absolve the carrier of liability if an oral lease exists.") (citation omitted). But the district court found that no oral lease between J & T Enterprises and Wallen governed the fateful oyster haul, and the record supports the district court's conclusion. J & T Enterprises was in no way connected to Wallen's haul of oysters on the night the accident occurred. The haul was coordinated exclusively by Wallen. Sam Styron, a broker who arranged the oyster haul at Wallen's request, testified that Wallen told him that he would be hauling the oysters on behalf of Larry's Express. Unlike the previous hauls undertaken jointly by J & T Enterprises and Wallen, which were "tractor only," both the tractor and the trailer involved in the accident belonged to Wallen. The oyster haul did not benefit the Hannas or J & T Enterprises in any way. The trailer carried oysters; the Hannas dealt only in produce. The district court's findings reflect that the Hannas had no knowledge of the haul until days later.[14] Although the

driver O'Shields had previously driven trucks on various hauls for J & T Enterprises and Wallen, the district court found that on the occasion in question O'Shields was acting on behalf of Wallen alone. Thus, we conclude that the district court did not err in determining that no oral lease was in effect for the haul in question.

Our holding in Price v. Westmoreland does not compel a contrary conclusion. In that case, we held that a carrier-lessee was vicariously liable for injuries to a passenger in a leased truck even though the driver of a truck leased by the carrier did not have permission to carry passengers and the carrier had no knowledge of the passenger's presence. 727 F.2d at 495. There was no question in Price, however, that a lease existed between the truck owner and the ICC-authorized carrier. Id. Under Price and Simmons, if the Wallen's truck had been the subject of a lease by J & T Enterprises at the time of the accident, J & T Enterprises would be liable for Jackson's and Smith's injuries regardless of whether the particular trip was on J & T Enterprises's behalf. As the district court found, however, there was no lease in place to connect J & T Enterprises to the truck.

As Jackson and Smith point out, the regulations require leases between an ICC-authorized carrier and an equipment owner to be in writing and require that the lease specify its duration.[15] 49 C.F.R. § 1057.11(a), § 1057.12(b). The leases governing joint hauls undertaken by J & T Enterprises and Wallen after the termination of the written Contractor Operating Agreement did not comply with either of these requirements. We recognize that failure to comply with ICC regulations does not and should not insulate a carrier-lessee from liability. But even if J & T Enterprises had complied fully with ICC

---

14. The district court explained that although the record reflects "some documentary evidence" that J & T Enterprises was the carrier for the load, that evidence stemmed from the presence of the placard and information mistakenly provided by the driver O'Shields. O'Shields testified at the time of trial that he was about the business of Larry Wallen on the day in question, not J & T Enterprises.

15. Jackson and Smith also argue that the regulations require that a lease between a carrier and an owner be for a minimum of 30 days. The regulations as amended, however, clearly allow leases of less than 30 days. 49 C.F.R § 1057.42; 49 Fed.Reg. 47,850 (Dec. 7, 1984); see Elimination of Thirty Day Leasing Requirement (49 C.F.R. § 1057) (Ex Parte No. MC–43 (Sub–No. 15)), 133 M.C. 392 (November 1984).



regulations, this particular trip would not have been within the scope of any lease between J & T Enterprises and Wallen. The district court found that the hauls after October 30, 1992 were "limited specific joint ventures," which did not include the haul in question. Under the district court's findings, which were supported by the evidence, whatever the duration of the lease or leases entered into after the termination of the written agreement, they did not encompass the trip in question. Although operating without a written agreement may violate the ICC's regulations and justify regulatory action against J & T Enterprises, it does not provide a basis upon which to impose vicarious liability on J & T Enterprises in this case.[16]

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.



**John R. TURCO, Plaintiff–Appellant,**

v.

**HOECHST CELANESE CORPORATION, Defendants,**

**Hoechst Celanese Chemical Group, Inc., Defendant–Appellee.**

No. 96–40038.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 13, 1997.

Former employee with diabetic condition brought Americans with Disabilities Act

(ADA) action against his former employer. The United States District Court for the Southern District of Texas, Hugh Gibson, J., 906 F.Supp. 1120, granted summary judgment to employer. Employee appealed. The Court of Appeals held that employee failed to show that he was qualified individual with disability under ADA.

Affirmed.

1. **Federal Courts** ⬗776

Court of Appeals reviews summary judgment motion de novo as if court were sitting as district court itself. Fed.Rules Civ. Proc.Rule 56(c), 28 U.S.C.A.

2. **Civil Rights** ⬗173.1

To prevail on ADA claim, plaintiff must prove that he has disability, he is qualified for job, and adverse employment decision was made solely because of disability. Americans with Disabilities Act of 1990, §§ 3(2), 101(8), 102(a), 42 U.S.C.A. §§ 12102(2), 12111(8), 12112(a).

3. **Federal Civil Procedure** ⬗2497.1

On motion for summary judgment, employer's brief sufficiently raised issue of whether employee was qualified employee under ADA such that employee was on notice of argument by stating that even assuming that employee was disabled under ADA there was no evidence that he was qualified individual with a disability within meaning of Act. Americans with Disabilities Act of 1990, §§ 3(2), 101(8), 102(a), 42 U.S.C.A. §§ 12102(2), 12111(8), 12112(a).

4. **Federal Civil Procedure** ⬗2535

District judge is not compelled to limit basis for summary judgment to those facts listed in motion for summary judgment; in essence, district court has ability to grant summary judgment on facts not briefed by movant as long as nonmovant has notice of issue. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

---

**16.** Since we have decided that the district court did not err in its determination that there was no lease between J & T Enterprises and Wallen covering the trip in question, we need not reach

Canal's additional argument that no liability would attach because the commodity being hauled on this particular occasion (oysters) was exempt from ICC regulation.





717 368 8847

DEC-04 57:26    WOOLEVER BROTHERS TRANSPORTATION    ☎ 717 3P8847    P.01

633

LEASE NUMBER _W-12_

## AGREEMENT OF LEASE OF MOTOR VEHICLE EQUIPMENT

This Agreement of Lease is made this _16th_ day of _November_ 19_95_, by and between _JHM Enterprises    1200 Valtamont St_ (Name) Owner and/or Lessor, and _Woolever Bros Trans Inc_ (Address) Lessee. _Williamsport Pa 17754_

Motor Vehicle Equipment _260 Jordan Ave    montoursoille Pa_ Lessor hereby leases to Lessee the following motor vehicle equipment which shall be operated by the owner thereof or by an employee or by employees of said owner:

| Make | Year | Type | Serial No. | License No. & State |
|------|------|------|-----------|---------------------|
| Freight Liner | 1979 | C-O | CA 213 Am 160222 | AA 95089 Pa |
| Budd | 1977 | Van | 141235E | XC 27304 Pa |

**Term**

a. The term of this lease shall begin at _4:0 P_ M. o'clock on _11/16 95_, and terminate at the end of thirty (30) days, or at _5:0 A_ M. o'clock _11/17 95_, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation;

or

b. The term of this lease shall begin at _____ M. o'clock on _/ /7_ for the purpose of transportation intrastate in the direction of a point which Lessor is authorized to serve:

or

c. The term of this lease shall begin at _____ M. o'clock on _/ /7_ for the purpose of transportation interstate, in equipment regularly used in transporting commodities exempt under section 203 (b) (6) of the Interstate Commerce Act or manufactured perishable products therefrom or in equipment which has completed movement of commodities exempt under section 203 (b) (6) of said Act, in the general direction of the general area in which such is based, provided that, prior to the execution of this lease, Lessee receives from Lessor, or Lessor's authorized representative, and retains, a signed statement certifying that the equipment so leased meets the above requirements and which specifies the exempt commodity, origin and destination, time and date of pickup, and time and date of delivery, of such last prior shipment.

or

d. The term of this lease shall begin at _____ M. o'clock on _/ /7_ for the purpose of transportation intrastate and/interstate in dump equipment for use in transporting salt and calcium chloride in bulk for ice and snow control purposes, during the period of October 1 to April 30, inclusive, of each year.

**Lease Rental**

For use of said motor vehicle equipment during the term of this lease, Lessee shall pay to Lessor the following: (CHECK ONE)

A. _90_ % of Gross transportation charges for use of said equipment and services of driver or drivers.

B. As per attached schedule for transporting salt and calcium chloride in bulk.

Lessor and Lessee agree that this agreement of lease is executed in triplicate; the original is retained by Lessee; one copy is retained by Lessor; and one copy shall be carried upon the leased equipment specified herein during the entire period of the agreement of lease.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the day and year first written.

_JHM Enterprises_ Lessor

By: _Jeffrey M Smith Pres._

_Woolever Bros Trans Inc_ Lessee

By: _Harold Sinclair for Trans_

### REPORT OF VEHICLE INSPECTION

I hereby certify that on (DATE) _11/16 95_ I carefully inspected the equipment described herein and that this is a true and correct report of the result of such inspection, and that Lessee's identification placards are displayed on each side of the power unit.

_Harold Sinclair_
Signature of person making inspection

(Indicate in the proper column the result of the inspection of each item listed.)

| Item | Not Defective Tractor | Not Defective Trailer | Defective Tractor | Defective Trailer | Description of Defect Tractor | Trailer |
|------|------|------|------|------|------|------|
| Body | | | | | | |
| Brakes | | | | | | |
| Cooling System | | | | | | |
| Drive Line | | | | | | |
| Emergency Equipment | | | | | | |
| Engine | | | | | | |
| Exhaust | | | | | | |
| Fuel System | | | | | | |
| Glass | | | | | | |
| Horn | OK | OK | | | | |
| Leaks | | | | | | |
| Lights (state which) | | | | | | |
| Reflectors | | | | | | |
| Speedometer | | | | | | |
| Springs | | | | | | |
| Steering | | | | | | |
| Tires | | | | | | |
| Wheels | | | | | | |
| Windshield Wiper | | | | | | |
| Other Items requiring attention | | | | | | |

I hereby certify that on the date stated above, the person who made the inspection was competent and qualified to make such inspection and was duly authorized to make such inspection as a representative of

_Woolever Bros Trans Inc_

00163

### EXEMPT CARRIER REPORT

I certify that the equipment leased hereunder meets the qualifications enumerated in section 203(P) (1) or (2) of the Interstate Commerce Act. The last shipment transported by the above described vehicles immediately prior to execution of this lease is as follows:

Exempt Commodity _____

_Hazel S. Fin Clau Suker_

_signature of authorized ... prior_
_or co-partner of officer of a... ...ised carrier_

Time and Date _____ Makeup _____

Time and Date _____ Delivery _____

DATE: _11/16/95_ _____

Signed _____
                          Owner or Agent

**RETENTION HEREOF IS REQUIRED FOR 1 YEAR FROM LAST DATE SHOWN**

LESSEE acknowledges receipt of the above described equipment on

_____ _11/16_ _95_

at _____

Signed by _Hazel S. Finclau_
                          **LESSEE**

LESSOR acknowledges return of the above described equipment on

_____ _11/17_ 19_95_

at _Ephrata, Pa_

Signed by _____
                          **LESSOR**

Post-it® Fax Note   7671   Date _12/4_   # of pages ▶ _2_

001164





**Possession, Control and Responsibility**

During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee hereby assumes complete responsibility for operation thereof. Driver is authorized by Lessee to log meal and rest stops off duty during which time he is relieved of all work and responsibility for performing work. Stops limited to one hour for each 8 hours tour of duty.

**Subleasing**

During the term of this lease, Lessee is considered the owner thereof for the purpose of subleasing the same to other authorized carriers, who or which will assume the obligations otherwise owed by Lessee to Lessor.

**Insurance Coverage By Lessee**

During the term of this lease, Lessee shall furnish and pay the costs of all public liability, property damage and cargo insurance upon the motor vehicle equipment leased hereunder only when such is operated in the service of Lessee.

**Chargeable Accidents**

Notwithstanding any other provision hereof, Lessee reserves the right of immediate cancellation of this lease as to any equipment hereunder when the driver thereof is involved in an accident chargeable to him as determined by Lessee's insurance carrier.

**Lessor's Responsibilities**

Lessor is solely responsible for:

a. Payment of wages of the driver or drivers including applicable deductions for social security tax; withholding tax; unemployment compensation tax; wage taxes; health, welfare and pension contributions; and any other payments as required by law.

b. Maintenance and repair of said motor vehicle equipment and emergency replacements thereof, and the sum of any advances by Lessee for such expenses shall be reimbursed to Lessee, who may deduct such amounts from the rental sum herein, provided.

c. Providing all necessary fuel, lubricants, and tires and tubes

d. Covering all motor vehicle equipment with bobtail and deadhead insurance, and all public liability and property damage insurance when said motor vehicle equipment is not being operated in the services of Lessee.

e. Comprehensive insurance for collision, fire, theft or other occurrences for which Lessee shall not be responsible.

f. Licenses of any nature

g. Tax payments on the motor vehicle equipment or use thereof, including the preparation and filing of all reports connected therewith, or Lessor agrees that Lessee may deduct 2% of Gross transportation charges for any fuel, road, or mileage tax that Lessee may be required to pay for Lessor equipment while equipment is under lease to Lessee.

h. Fines and penalties arising out of the use of said equipment.

i. Lessor shall indemnify and save Lessee harmless of and from all losses, claims or damages arising while Lessor, owner or any driver or operator is operating said motor vehicle equipment when not exclusively carrying freight of Lessee or while Lessor is using the equipment for purposes of Lessor or other than purposes of Lessee.

j. Lessor shall indemnify and save Lessee harmless of and from any loss, claim or damage arising or resulting from any careless or negligent act of omission or commission by Lessor or employees of Lessor.

k. Lessor is responsible for any quantity weight or count of shipment signed for by the driver or drivers hereunder.

**Lessee is Independent Contractor**

The parties hereto expressly understand and agree that Lessor's relationship to Lessee shall be at all times that of an independent contractor and not a relationship of employer-employee.

Lessor certifies that the driver of said equipment leased hereby is, or the drivers of said leased equipment are, qualified for driving said equipment under all applicable laws and regulations, and that Lessee has been notified in writing by Lessor of the hours on duty of said driver or drivers for the seven (7) consecutive days previous to first employment of driving under this lease.

**Mechanical Failure**

In the event of mechanical failure of the equipment herein leased, or other causes deemed sufficient by Lessee, Lessee shall have authority to transfer cargo and effect delivery by vehicles selected by Lessee. In such events all expenses incured with respect to such transfer and delivery of cargo shall be reimbursed by Lessor to Lessee, who may deduct the amount thereof from the rental sum herein provided. Lessee agrees to be held responsible for any damages up to $350.00 to Lessee's trailer and to assume any loss or damage to cargo or equipment, but not exceeding the deductible limitations on company insurance policies, but in no event to exceed $250.00 for loss or damage to cargo or equipment.

001165



November 3, 1997


George Tomaszewski
General Reinsurance Corporation
233 South Wacker Drive, Suite 4100
Chicago, IL 60606-6303

Mr. David Porter
E.W. Blanch Company
3500 West 80th Street
Minneapolis, MN 55431

Re:        Our Insured:          Woolever Brothers
           File Number:          TF209197-02
           Date of Loss:         November 17, 1995
           GRC Claim Number:     2050290
           Claimant:             Estate of Cliffords

Dear Gentlemen:

This letter will serve as an update regarding the above.  We have now received lawsuits on behalf of all the parties involved in this accident, including the property damage and bodily injury claims of the Mulligans.  Unfortunately, our insured has now admitted to altering the lease agreement which indicated the lease ended subsequent to the accident.  They admit doing this in conjunction with the co-defendant, Jay McCormick.

This obviously greatly increases our exposure and I will be reviewing this matter and advising you of our position in the near future.  I will probably wait until I get counsel's evaluation at which I will share with you.  Our reserve remains at $250,000, however, I anticipate that may be increased in the near future.

Very truly yours,



Jerry Parker
Casualty Claims Specialist

JP/sb/0366

 

# BENNETT, BRICKLIN & SALTZBURG

ATTORNEYS AT LAW
16TH FLOOR
1601 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19103-2393
(215) 561-4300

NORRISTOWN OFFICE
ONE MONTGOMERY PLAZA
SUITE 606
NORRISTOWN, PA 19401-4807
(610) 272-4900

NEW JERSEY OFFICE
204 WHITE HORSE PIKE
2ND FLOOR
HADDON HEIGHTS, NJ 08035-1739
(609) 547-5756

CENTRAL PENNSYLVANIA OFFICE
100 SOUTH QUEEN STREET
THIRD FLOOR
LANCASTER, PA 17603-5368
(717) 393-4400

PHILA. FAX: (215) 561-6661
NORR. FAX: (610) 272-5105
NJ FAX: (609) 547-5880
LANC. FAX: (717) 393-4322

February 2, 1998

WRITER'S DIRECT DIAL: (215) 665-400

Attn: Mr. Jerry Parker
Northland Insurance Company
1295 Northland Drive
P.O. Box 64816
St. Paul, MN  55164

> Re:  Robert E. Krapf and
>        Ute L. Hetland Clark et al.
> vs.  Vernice Lee Statts et al.
> Your Claim No. TF 209 197-2
> <u>Our File No. 83937</u>

Dear Jerry:

Pursuant to your request and confirming our recent telephone discussions, I write to bring you up to date concerning this file.  As we have discussed, the developments have not been favorable from our point of view.

In November, plaintiffs' counsel took the pretrial depositions of Vernon Statts, Jay McCormick, and Hazel Sinclair.  With respect to the happening of the accident, the depositions produced no surprises.  Mr. Statts continues to abide by his previously stated contention that he took his eyes off the road for just "one second" and turned back to find that the green traffic light had turned to red.  He was unable to stop his vehicle and the accident ensued.

Inquiry was made as to what evidence might exist which supports Statts' contentions.  As you know, he ultimately pled guilty to the criminal charges against him, so that any such evidence would be more useful in permitting us to obtain some contribution from the co-defendants than it would in attempting to extricate Statts.  In any event, Statts testified that immediately after the



001087

Mr. Jerry Parker
February 2, 1998
Page  2

accident he went into a truck stop on the corner where the accident occurred.  The proprietor of the truck stop, someone by the name of Duane, allegedly told Statts that "the light never worked right" because it changed too fast.  Statts also testified that several weeks after the accident when he returned to pick up his belongings from the truck (which had been impounded by the police), he happened upon a local Tamaqua area school bus driver who also told him that the light had changed too quickly from the day it was erected.  Jay McCormick also testified that a day or two after the accident when he was driving past the intersection, he saw workmen working on the traffic signal, although he has no idea who they worked for or what they were repairing.

Statts also testified that in conjunction with the preparation of his defense in the criminal action, his lawyers retained an accident reconstruction expert by the name of Steven Rickerts.  It is Statts' understanding that Rickerts prepared a report concerning the accident which attributed the occurrence of the accident to the fact that the traffic signal remained on amber only for two seconds.  All counsel have requested Statts' attorney to produce a copy of the report.  To date, he has refused to do so, stating that he has not yet decided whether he will be using the expert in this lawsuit.  In any event, given the fact that Statts ultimately pled guilty, my suspicion is that he and his attorneys concluded that the contents of the report were not likely to save the day.

With respect to Woolever's liability, I now believe that there is no chance that we will be able to avoid it.  As we discussed by telephone, when I met with Hazel and Harold to prepare their deposition testimony, Hazel "came clean" with me and confirmed what we both had suspected: that the trip lease which she forwarded to us was not the lease in the truck at the time of the accident.  Instead, Hazel and Jay McCormick fabricated the trip lease on the day after the accident.

According to Hazel, back in 1990 Woolever first started doing business with JHM Enterprises, and JHM's tractors were leased to Woolever on a permanent basis.  It is that permanent lease, which you have also seen, which was in the tractor at the time of this accident.  As a matter of fact, however, over the years the companies' business changed, so that during the great majority of the time JHM's tractor was being used on its own business and only occasionally was it being used for Woolever's business.  In fact, Hazel brought with her to our meeting and to the deposition records showing that in the six months before this accident the tractor had been used just 14 days when it was operating under Woolever's rights, an additional 10 days when it was used in jobs for both companies, and 168 days when it was used solely for the business of JHM.

Unfortunately, Jay and Hazel never got around to revising the paperwork.  It is essentially undisputed, and both Jay McCormick and Hazel testified, that at the time this accident occurred

Mr. Jerry Parker
February 2, 1998
Page 3

Statts had completed his trip for Woolever and was on his way to pick up a load for JHM.  At the point that he made the switch, he should have covered the Woolever placard on the tractor and - prior to the time of the accident, not after - a trip lease should have been prepared documenting that the lease ended when delivery was made in Ephrata.  (Indeed, both Statts and McCormick testified that this was the only day when the Woolever placard was not covered, that being the case because Statts "ran out of tape" on that morning.  Based on my discussions with Hazel and Harold, I think it fair to say that McCormick and Statts perjured themselves.  The Woolever placard never was covered.)

In any event, as you know from my prior opinion letter concerning the so-called "placard rule," it is extremely difficult to avoid liability under the applicable ICC regulations unless the company in Woolever's position has taken every reasonable step to attempt to have its placard removed from the vehicle before the accident occurs.  Clearly, that is not the case in the instant situation.  Although there is little question that at the time of the accident Statts was no longer operating the vehicle on Woolever's behalf, there is also no question in my mind but that Woolever will be held liable under the placard rule.  However, because Statts was not actually working for Woolever at the time of the accident and because the leases both provide that JHM is to indemnify Woolever if the vehicle is involved in an accident when not being used exclusively for Woolever's purposes, I think the net result here is that Woolever has an indemnity claim against JHM which has the practical effect of making JHM's liability coverage the primary coverage and Woolever's coverage the excess coverage.  That leads us to your inquiry concerning the value of these claims.

I am enclosing with this letter copies of answers to wrongful death and expert witness interrogatories filed on behalf of both estates.  I am also enclosing copies of expert reports provided by plaintiffs' counsel from the following experts:

(1)    James R. Minnich (accident reconstruction expert who concludes that Statts' vehicle was traveling between 69 and 75 miles per hour immediately prior the accident):

(2)    Isidore Mihalakis (forensic pathologist who concludes that Mr. Clifford was rendered immediately unconscious as a result of the accident but that Mrs. Clifford suffered substantial pain and suffering together with knowledge of her impending death for a "few minutes" following the impact);

(3)    Andrew Verzilli, Ph.D. (economist who concludes that the recoverable economic value of the services provided by Mrs. Clifford to her family is an amount ranging between $9,000



Mr. Jerry Parker
February 2, 1998
Page 4

and $21,000 while the economic value of the recoverable services provided by Mr. Clifford to his family is in an amount ranging between $26,000 and $60,000).

For the sake of completeness, I am also enclosing copies of the autopsy reports pertaining to each decedent, as plaintiffs' counsel lists those physicians as potential experts. I offer the following comments.

With respect to Mr. Clifford, the information provided indicates that he was 50 years of age at the time of his death. Mr. Clifford dropped out of high school in the tenth grade, received no additional formal education, and apparently had been totally unemployed for a lengthy period of time before this accident. The records reflect that he was a recovering alcoholic utilizing Anabuse as a result of which it is contended that he had not consumed alcoholic beverages for about seven or eight years before the accident. He was living on social security disability benefits and, as a result, it appears that no claim is being made for loss of earning capacity. Plaintiffs' counsel did provide medical records from Mr. Clifford's personal physician, although I am not enclosing copies at this time. They reflect that Mr. Clifford had a variety of maladies, including COPD, alcohol-related liver deficiencies, and other more minor problems. None of them appear to have been in any respect life threatening.

With respect to Mr. Clifford, the answers to interrogatories reflect that she, too, was living on public assistance, having worked occasionally in the past as a waitress and in other odd jobs but apparently not having done so recently. It appears that no claim is being made for loss of an earning capacity on her part. The economic damages sought, as is the case in her husband's claim, are for the value of the services which she provided to her children. However, unlike her husband's estate's claim, the answers to interrogatories and expert reports suggest that there will be testimony from eye witnesses that Mrs. Clifford was conscious and screaming in her automobile for several minutes after the accident occurred. Such testimony would give the jury a basis for awarding damages for conscious pain and suffering.[1]

---

[1] As we discussed by telephone, apparently even rural Pennsylvania has its own paparazzi. The answers to interrogatories reflect that someone by the name of Larry Neff happened upon the accident scene and videotaped it. I have been provided with a copy of the videotape and have viewed it. No sounds can be heard emanating from the decedents' vehicle, but it is impossible to determine from the videotape how long after the accident it was taken. Significantly, at one point during the video the camera does focus on what appears to be Mrs. Clifford's head while she is trapped in the vehicle. The head does appear to move ever so

(continued...)

001090

Mr. Jerry Parker
February 2, 1998
Page 5

Last, the response to request for production of documents identifies approximately $6,500 in recoverable funeral and related expenses for Mrs. Clifford and approximately $9,500 in similar expenses for Mr. Clifford.

When I spoke with plaintiffs' counsel following the depositions, he told me that his settlement demand had not yet been formulated but would be in "seven figures." Based on the information currently available, unless counsel was intent on pursuing a claim for punitive damages, I do not see how the two claims combined can approach that amount. Even allowing for the fact that a jury may well be generous in these circumstances in awarding compensatory damages given the circumstances of the accident and the death of both parents, with no conscious pain and suffering, no claim for lost earning capacity, and only rather insubstantial economic loss to go "on the blackboard," at the present time I cannot value the compensatory damages portion of Mr. Clifford's claim in excess of $250,000-$300,000.[2]

With respect to Mrs. Clifford's claim, a jury will be permitted to award pain and suffering on her behalf. In addition, her children were younger, so that the economic value of her claim is somewhat higher. For these reasons, I would approximate the value of her claim, again without regard to punitive damages, in the $500,000 to $600,000 range.[3]

With respect to future handling, we recently received a letter from plaintiffs' counsel advising that it is his goal to get this case onto the trial list by the end of 1998. Counsel are in the process of attempting to set aside one week for additional depositions, probably at some point in late March or early April. Counsel for JHM and Statts has agreed to take the leading oar with respect to issuing subpoenas for witnesses who may have information concerning any problems with the

---

[1](...continued)
slightly at that point, although whether she was conscious is impossible to determine.

[2] I emphasize that I am providing an estimate only as to the evaluation of the compensatory damages claim. If a judge permits the matter to go to a jury on a punitive damages issue, that award could be substantially higher. The same comments holds true with respect to Mrs. Clifford's claim. I am doing some research to see if I can locate any cases where excessive speed, alone, formed the basis of a punitive damage award. I see no other evidence at the present time which would support the imposition of punitive damages.

[3] We also have the <u>Mulligan</u> personal injury claim to confront. In that case, plaintiff's counsel has not answered our interrogatories and, therefore, I have nothing with which to evaluate the claim. I am writing to counsel reminding him that the answers are overdue.

Mr. Jerry Parker
February 2, 1998
Page 6

traffic light.  At the same time, I would intend to take the depositions of the witnesses identified as having information concerning Mrs. Clifford's pain and suffering and of the plaintiffs' administrators and at least some of the decedents' children.

Obviously, this is a case which we ought to try to settle.  However, as reflected by my evaluations above, it seems to me that JHM's carrier has to take the leading oar so far as that is concerned. I will speak with plaintiffs' counsel to see if I can get some idea from him as to the basis for his evaluation.  It may be that he is thinking about punitive damages.

In the meantime, should you have any questions concerning the file feel free to telephone me.

Very truly yours,

Louis E. Bricklin

LEB:amd
Enclosure

001092

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this _____ day of June, 2002, a true and correct copy of the foregoing document was served as follows:

### VIA FEDERAL EXPRESS

Ira S. Lipsius, Esquire
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

### VIA FIRST CLASS MAIL

Andrew R. Spiegel, Esquire
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127


_____
Jonathan H. Rudd