ORIGINAL

FILED
HARRISBURG, PA
JUN 1 1 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------x
NORTHLAND INSURANCE COMPANY,

    Plaintiff,

v.

LINCOLN GENERAL INSURANCE COMPANY,
J.H.M. ENTERPRISES, INC., VERNICE L.
STATTS, ROBERT E. KRAPF and UTE L.
HETLAND CLARK, as Administrators of the
Estate of Karin Clifford and ROBERT E. KRAPF
and PATRICIA R. CLIFFORD, as Administrators
of the Estate of Robert R. Clifford, SHERRILL J.
MULLIGAN, DENIS A. MULLIGAN,

    Defendants.
------------------------------------x

Index No. 01-CV-763
HON. Yvette Kane, USDJ

---

**REPLY BRIEF IN SUPPORT OF PLAINTIFF NORTHLAND
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

KLETT ROONEY LIEBER & SCHORLING
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507

SCHINDEL, FARMAN & LIPSIUS LLP
225 West 34th Street
New York, New York 10122
(212) 563-1710

## A. INTRODUCTION

Lincoln General does not deny that its employee agreed to settle the instant action. To avoid its obligation, it raised four defenses: (1) the settlement did not make economic sense; (2) Mr. McGovern entered into the oral agreement to settle without authority to do so; (3) it is not bound by Mr. McGovern's representation as Mr. McGovern was an attorney, acting as counsel for Lincoln General; and (4) the parties never agreed to the essential terms of the agreement.[1]

All of these arguments must fail. An even cursory review of the transcripts of the depositions, copies of which were included with plaintiff's motion, will show that (1) the terms of the settlement, mutual releases and discontinuance of this action had been agreed upon, (2) Mr. McGovern believed he had the authority to settle this action, (3) Northland was never informed that Lincoln General's employee did not have the authority, nor did Northland have any other reason to believe that McGovern did not have authority, and (4) Mr. McGovern in this transaction was not acting in his role as attorney, but rather, as Lincoln General's adjuster. Finally, the alleged absence of economic sense of the transaction raised by Mr. Kirk in his affidavit and contradicted by Mr. McGovern in his deposition, is irrelevant, as, at best it would indicate unilateral mistake, which is not grounds to reform an agreement.

## B. LEGAL ARGUMENT

### I. THE ESSENTIAL TERMS OF THE SETTLEMENT WERE AGREED UPON

Lincoln General asserts that the essential terms of the settlement were not agreed upon by McGovern and Slane. To support its position, it relies upon Kirk's affidavit that he would never have signed any agreement whereby the parties would, using Mr. McGovern's terms, "just call it

---

[1] Lincoln General begins its brief with a beautiful, but wholly irrelevant, discourse on accord and satisfaction.

2

quits." This statement is a non-sequitur. Mr. Kirk is merely stating he would not have agreed to the settlement, not that Mr. McGovern and Ms. Slane had not agreed upon the terms of the settlement.

In fact, Mr. McGovern was waiting for the settlement documents from Ms. Slane, and Ms. Slane expected the documents to be drafted by Lincoln General's outside counsel.

The terms of the settlement were not at issue; Mr. McGovern and Ms. Slane knew those terms.

Mr. McGovern testified:

> Q. Did Traci indicate to you at any time that it was acceptable for Northland to settle the case and pull the plug, so to speak?
>
> A. I believe she did, yes.
>
> Q. Did you take any further action regarding this?
>
> A. No. I was just waiting for her to send the releases.
>
> Q. So, the way you understood it was, the plug was going to be pulled, and releases had to be sent? Would this be policy releases? What do you mean by releases? I'm sorry.
>
> A. A joint release which spells out in great detail that each side -- what each side is doing, giving up, what they expect, et cetera, et cetera, and then discontinue the case.

Exhibit D, Transcript of Michael J. McGovern deposition ("McGovern Depo."), pp. 27-28.

Mr. McGovern further testified:

> Q. What did you expect to be contained in those documents?
>
> A. What did I expect to be contained in-- I expected that it would be a mutual release, that everyone would assume liability for their own legal fees, for their Court costs, et cetera, et cetera. They would waive all rights they had against the other party, and that that would end the matter and they would file the appropriate documents with the Court to discontinue the action.

3

> Q. So, mutual general releases with each side assuming its own costs and expenses; is that correct?
>
> A. Generally, yes.

Exhibit D, McGovern Depo., p. 83

The essential terms were agreed upon, mutual general releases, discontinuance of the instant action, and each side would assume its own costs and expenses.

## II.  THE FACT THAT LINCOLN GENERAL BELIEVES THE SETTLEMENT WAS INEQUITABLE IS IRRELEVANT

Lincoln General wants to avoid its agreement with Northland claiming that the settlement made no economic sense. The economic sense of the settlement is irrelevant as an agreement can only be voided based on mutual mistake, not unilateral mistake.[2]

As the court in *Gallizzi v. Scavo*, 406 Pa. 629, 179 A.2d 638 (1962) noted, "perhaps they [defendants] are not so confused as they would have the court believe because they must know that an agreement cannot be reformed by a mistake of one of the parties alone. *Easton v. Washington Co. Ins. Co.*, 391 Pa. 28, 137 A.2d 332." Lincoln General has failed to produce a scintilla of evidence supporting a claim of mutual mistake. Also see, *Kramer v. Schaeffer*, 2000 Pa. Super. 127, 751 A.2d 241 (2000)

Lincoln General's claim of unilateral mistake is refuted by Mr. McGovern's testimony analyzing the economic sense of the agreement to settle. Mr. McGovern, when questioned by Lincoln General's counsel as to justification for the settlement, responded as follows:

---

[2] As set forth more fully below, the settlement agreement was in fact economically beneficial to both Lincoln and Northland, and even Lincoln's "Monday-morning quarterbacking" cannot refute that fact.

4

Q. Do you recall why there would have been a change in your analysis or view of the case such that you personally would have changed your views on this case, where before you communicated to Ms. Slane that you had a very good case -- and I think you said that before in this deposition, that you thought you had a very good case -- to the point where now you would be proposing to simply walk away from the case?

A. Well, let me say that I always thought that Lincoln had a good chance of prevailing in this matter. My comments to Ms. Slane would have been obviously more strongly worded than that, because you don't show weakness at that point. Above and beyond that, to the best of my recollections, the considerations involved were the expense and time of this litigation and whether we were going to end up co-primary in any event, and I don't recall what else would have been.

Q. So, there were some economic considerations about the costs of this litigation. Would they be primarily Mr. Kirk's concern or would they be your concern as an attorney?

A. They would be my concern in the sense that I would have to convey to Mr. Kirk what I thought the economic costs of pursuing this would be to the company, and then he would make the decision.

Q. In terms of who instituted the thought of even walking away from this, do you know if that is something that you came up with on your own or was that something that you believe came to you from someone else?

A. I believe that's something I went and proposed to Mr. Kirk myself. I can't recall for sure, but that's my belief.

Q. So, you don't think it came from Mr. Kirk down to you in the first instance; it came from you up to Mr. Kirk?

A. I believe so.

Q. And the considerations you were looking at were not whether you would prevail on the merits, but how much it would cost to get to that point?

A. Yes. I wanted to make sure we weren't looking at a pirate victory here; that it would cost more than what we could recover, or it

5

would cost almost what we could recover, and that we would be
spending all this time, et cetera, at it.

Exhibit D, McGovern Depo., pp. 76-78.

Clearly Mr. McGovern believed the settlement made economic sense. In any event, whether or not the settlement made economic sense, Lincoln General is bound by the agreement of McGovern on its behalf.

### III. LINCOLN GENERAL IS BOUND BY MCGOVERN'S SETTLEMENT ON ITS BEHALF EVEN IF HE DID NOT HAVE ACTUAL AUTHORITY

Lincoln General premises its defense on the fact that Mr. McGovern, as an attorney, could not bind Lincoln General. Lincoln General claims that Ms. Slane must have known that Mr. McGovern was acting as an attorney for Lincoln General.

To refute Northland's position that Mr. McGovern was acting in the role of an adjuster, Lincoln General paraphrases, out of context, Mr. McGovern's testimony regarding his interaction with Mr. Kirk. Lincoln General purposely avoids Mr. McGovern's interaction with Northland.

In its brief Lincoln General states:

> McGovern testified that he viewed his relationship like any outside counsel who goes back to the client and gets him to sign a document to make sure that the client has agreed with what the attorney might have communicated.

When it came to his dealing with Ms. Slane, Mr. McGovern concedes that he was speaking to Northland as an employee or representative of Lincoln General similar to Ms. Slane's role as a claims supervisor. (Exhibit D, McGovern Depo., p. 82).

Mr. McGovern in fact acted like an adjuster who goes to his supervisor to sign a document. The fact that vis-a-vis his employer Mr. McGovern viewed himself as outside

6

counsel does not change the fact that he was not acting in that capacity for Lincoln General nor does it refute his belief that he was negotiating as an adjuster for Lincoln General.

A review of the transcripts indicate the following irrefutable facts:

> On May 5, 2000, Mike Pipa, defense counsel retained by Lincoln General to defend the J.H.M. Matter, spoke to Traci Slane. (See Exhibit D, McGovern Depo., p. 32:14-17 and Transcript of Traci Slane Deposition ("Slane Depo."), Exhibit C, p. 25:23-26:1).
>
> Mike Pipa told Traci Slane that he would call Lincoln General and have the adjuster contact her directly. (See Exhibit C, Slane Depo., p. 26:15-20)[3].
>
> Mike Pipa basically told Traci Slane that she would have to deal directly with Lincoln General to discuss settlement of the claim. (See Exhibit C, Slane Depo., p. 26:21-24).
>
> When Traci Slane spoke to Mike Pipa, he referred to Michael McGovern as an adjuster. (See Exhibit C, Slane Depo., p. 32: 9-10).
>
> On May 5, 2000, Traci Slane spoke to Michael McGovern at Lincoln General. During that conversation, Michael McGovern told Traci Slane that Lincoln General would consider agreeing to settle the underlying cases and litigate the declaratory judgment action. (See Exhibit C, Slane Depo., p. 26:15-27:21).
>
> Michael McGovern was never the attorney of record in this Declaratory Judgment action. (See Exhibit D, McGovern Depo., p. 80:22-24).
>
> Michael McGovern did not speak to Traci Slane as counsel in the Declaratory Judgment action, Lincoln General was represented in the action. (See Exhibit D, McGovern Depo., p. 81:3-7).

---

[3] Lincoln General challenges as hearsay the testimony of Ms. Slane regarding the statements of Mr. Pipa. Hearsay is not at all applicable as these statements are not being used to prove that Mr. McGovern was acting in the role of a claims adjuster (that is confirmed by Mr. McGovern at his own deposition); they are being offered to prove that Ms. Slane was told that Mr. McGovern was a claims adjuster. If Lincoln General believed Ms. Slane's testimony was false surely it would have presented an affidavit from Mr. Pipa, an attorney retained and paid by Lincoln General. Further, Mr. McGovern's action speaks far louder then Mr. Pipa's words.

7

>Michael McGovern spoke to Traci Slane as an employee or representative of Lincoln General, similar to her role as a claims supervisor. (See Exhibit D, McGovern Depo., p. 82:3-6).
>
>Throughout her dealings with Michael McGovern, Traci Slane did not know that he was an attorney. (See Exhibit C, Slane Depo., p. 31:21-22).
>
>Michael McGovern never communicated to Traci Slane what his position was at Lincoln General. (See Exhibit C, Slane Depo., p. 31:23-25).
>
>Traci Slane never saw Michael McGovern's signature, how he signed his name and what he identified himself as his title.[4] (See Exhibit C, Slane Depo., p. 32:4-6).
>
>Mr. McGovern understood that if he was acting as counsel for Lincoln General it would have been inappropriate for him to speak to Ms. Slane because Northland was represented by Counsel. (See Exhibit D, McGovern Depo., p. 81:18-23).

Courts throughout the land have long recognized that an attorney can play many roles. However, for legal purposes, he or she is an attorney only when acting in that role. For example, in the context of the attorney-client privilege, it is well accepted that an attorney's privilege is limited to when he is acting in the capacity as an attorney. If he is acting in another role, that privilege does not exist. *Okum v. Commonwealth of Pa.*, 77 Pa. Cmwlth. 386, 465 A.2d 1324 (1983) (denial of privilege for attorney acting as administrator); *Mass. School of Law v. American Bar Ass'n*, 895 F. Supp. 88 (M.D. Pa. 1995) (attorney acting as consultant not entitled to privilege); *Teltron v. Alexander*, 132 F.R.D. 394 (E.D. Pa. 1990); *St. Paul Reinsurance Co. Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("An insurer cannot

---

[4]Lincoln notes that in one letter sent to Jerry Parker at Northland in 1996, five years before the settlement negotiations and prior to Ms. Slane's involvement in the file, Mr. McGovern's signature is followed by the title "legal counsel." This correspondence is irrelevant in light of the fact that Ms. Slane was unaware of the letter and in March and April 2001, upon his own admission, he was not acting, and could not ethically act, as legal counsel.

8

shield its entire claims investigation behind the work product privilege simply by hiring an attorney to perform what is in the ordinary course of the insured's business").

In the instant matter, Lincoln is attempting to avoid agreements that it would have been obliged to fulfill if they had been made by an ordinary, non-attorney adjustor. In agreeing to the settlement with Northland, Mr. McGovern acted as an adjuster and was not, and could not, have acted as attorney. Therefore, Lincoln General is bound by the settlement agreement.

Even if Mr. McGovern is deemed to have been acting as an attorney, which is denied, his agreement would still bind Lincoln General under the doctrine of apparent authority. As more fully discussed in Northland's brief in support of its motion for summary judgment, pp. 11-14, Mr. McGovern settled the underlying claims on behalf of Lincoln General during the summer of 2000, Lincoln General made payment in confirmation of those settlement agreements by Mr. McGovern, Mr. McGovern had been introduced to Ms. Slane as Lincoln General's adjuster, and Mr. McGovern never identified himself as Lincoln General's attorney to Ms. Slane. Clearly, Mr. McGovern had at the very least apparent authority to enter into the settlement at issue.

### IV. THERE ARE NO FACTUAL QUESTIONS AS TO WHETHER MR. MCGOVERN AND MS. SLANE BELIEVED THEY SETTLED THIS ACTION

Despite the unrefuted testimony of Mr. McGovern and Ms. Slane that they had agreed on behalf of their respected clients to settle the matter with each side walking away, Lincoln General claims, based on the affidavit of Mr. Miller, that Traci Slane, in the absence of review of her notes, was unsure of whether the action was settled.

Even if Ms. Slane was unsure in the absence of the review of her notes, that is irrelevant as her notes together with her testimony and Mr. McGovern's testimony clearly prove that the action was settled.

9

Further it should be noted that Ms. Slane's testimony refutes Mr. Miller characterization. Ms. Slane testified when questioned by Lincoln General's attorney about the conversation with Mr. Miller stated "I knew it was settled and I knew I was waiting on a dismissal." Exhibit C, Slane Depo., p. 94:6-7.

Counsel utilized leading questions in an attempt to prove that Northland did not consider the matter settled. However, the testimony could not be clearer. As the Transcript provides:

> Q.  At that point you felt it was still an open issue and he needed to check with his supervisor whether they wanted to go forward with walking way?
>
> A:  No, I did not feel it was an open issue, and I felt that if he pressed that it was not settled, that I was going to have Ira moving forward to enforce the settlement that Mike McGovern and myself had reached. There was no doubt in my mind it was settled.
>
> Q.  You didn't tell that to Al Miller at the time?
>
> A.  I wasn't going to get into an argument with Al about whether or not it was settled. I had never spoken to the man before. He was going to talk to his people and see what they wanted to do, and if they didn't agree to dismiss, I was going to have Ira move forward with enforcing the settlement.

Exhibit C, Slane Depo., pp. 94:25-95, 17. Clearly, Ms. Slane believed in July 2001 that the case was settled, and she moved forward to enforce the settlement.

The testimony of Ms. Slane and Mr. McGovern, as well as the file notes of Ms. Slane and Mr. McGovern, clearly indicate that a settlement was reached.

## V. ACCORD AND SATISFACTION

Lincoln General also addressed the accord and satisfaction issue. Northland's claims throughout this motion that this matter was settled. In order for there to be accord and satisfaction there must be: (1) an offer, which was made by Mr. McGovern on behalf of Lincoln General; (2) acceptance, which was made by Traci Slane on behalf of Northland; and (3)

10

consideration, i.e. the mutual release and discontinuance of this action. *Fleming v. CNA Ins. Co.*, 52 F. Supp. 2d 499 (E.D. Pa. 1999). This motion is to enforce the third element of accord and satisfaction. The decisions cited by Lincoln General are inapposite.

### C. CONCLUSION

A valid and enforceable settlement was entered into between Northland and Lincoln General and that settlement should be enforced.

KLETT ROONEY LIEBER & SCHORLING
Attorneys for Northland Insurance Company

By _____
David Ira Rosenbaum (52859)
Klett Rooney Lieber & Schorling
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507 (Office)

OF COUNSEL:

Ira S. Lipsius, Esquire
SCHINDEL, FARMAN & LIPSIUS LLP
225 West 34th Street
New York, New York 10122
(212) 563-1710

Attorneys for Plaintiff Northland
Insurance Company

Dated: June 10, 2002

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

---

NORTHLAND INSURANCE COMPANY, :
:
Plaintiff, :
:
v. : No. 1:01-CV-763
: HON. Yvette Kane, USDJ
LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., VERNICE L. :
STATTS, ROBERT E. KRAPF and UTE L. :
HETLAND CLARK, as Administrators of the :
Estate of Karin Clifford and ROBERT E. KRAPF :
and PATRICIA R. CLIFFORD, as Administrators :
of the Estate of Robert R. Clifford, SHERRILL J. :
MULLIGAN, DENIS A. MULLIGAN, :
:
Defendants. :

---

**CERTIFICATE OF SERVICE**

I, David Ira Rosenbaum, certify that on June 11, 2002, a copy of the attached Reply Brief in Support of Plaintiff Northland Insurance Company's Motion for Summary Judgment was served Via First Class Mail upon:

Jonathan H. Rudd, Esquire
McNees, Wallace & Nurick
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108

Andrew R. Spiegel, Esquire
3901 - A Main Street
Second Floor
Philadelphia, PA 19127

*David Ira Rosenbaum* /jms/
DAVID IRA ROSENBAUM, ESQUIRE