IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTHLAND INSURANCE COMPANY,<br>Plaintiff, | : | CIVIL ACTION NO. 01:CV-763 |
| | : | |
| | : | Judge Kane |
| v. | : | |
| | : | |
| LINCOLN GENERAL INSURANCE<br>COMPANY, et. al., | : | |
| Defendants. | : | |

FILED
HARRISBURG, PA

JUL 17 2002

MARY E. D'ANDREA, CLERK
Per _____
  Deputy Clerk

## MEMORANDUM AND ORDER

This is a declaratory judgment action brought to determine the parties' obligations to provide insurance coverage for an automobile accident that occurred in 1995. Pending before the Court is a Motion for Summary Judgment by Plaintiff Northland Insurance Company. The motion, filed in response to the May 17, 2002 Order of the Court, concerns only the preliminary issue of whether a settlement agreement has been reached, and not the underlying issues of the suit. For the reasons discussed below, the motion will be denied.

### I. Jurisdiction and Venue

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Northland is a Minnesota corporation with its principal place of business in Minnesota. Lincoln General is incorporated in and has its principal place of business in Pennsylvania. The amount in controversy exceeds the statutory minimum. Venue is proper in the Middle District of Pennsylvania.

### II. Background

Plaintiff Northland Insurance Company ("Northland") issued an insurance policy to Woolever Brothers Transportation, Inc. ("Woolever Brothers"), a trucking company. Defendant Lincoln General Insurance Company ("Lincoln General") issued an insurance policy to J.H.M.

Enterprises, Inc., a company that leased a truck to Woolever Brothers. This truck was involved in an accident in Pennsylvania in 1995, wherein several people were injured or killed. Those persons injured and representatives of those deceased brought suit against the insured trucking companies. Northland and Lincoln General defended their insureds in those actions.

As both Northland and Lincoln General issued policies that potentially provide coverage for the truck involved in the accident, they worked together to settle those claims on behalf of the trucking companies, with each insurer agreeing to pay one-half of the cost of that settlement. However, they retained all rights against each other regarding the allocation of those costs between them. Because Northland and Lincoln General were unable to resolve the issue of their relative liability, Northland brought this present suit for declaratory judgment in June of 2000. After Northland filed suit, the insurers continued to negotiate. Northland now contends that the negotiations resulted in a binding settlement agreement. However, Lincoln General disagrees. In the present motion, styled as a motion for summary judgment, Northland asks this court to enforce the purported settlement agreement.

A series of phone calls and traded messages between a claims adjuster from Northland, Traci Slane ("Slane"), and Lincoln General's Michael McGovern ("McGovern"), a claims adjuster and licensed attorney,[1] mark the settlement negotiations. Through these communications, McGovern and Slane discussed the possibility that the insurers would end all litigation concerning this matter and close their files. On April 11, 2001, McGovern left a telephone message for Slane indicating that these terms were acceptable to Lincoln General.

---

[1] The parties dispute whether McGovern was acting as an employee or as an attorney, and the implications of that distinction on his ability to bind Lincoln General. These issues need not be addressed here.

2

### III. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). The court must view all facts and inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also Williams v. Perry, 907 F. Supp. 838, 842 (M.D. Pa. 1995). "Although the moving party has the initial burden of identifying the evidence that demonstrates the absence of a genuine issue of material fact, the [non-moving party] must establish the existence of each element on which it bears the burden of proof." J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990). Summary judgment will not be granted if "the evidence is such that a reasonable [fact finder] could return a [decision] for the nonmoving party." Anderson, 477 U.S. at 248. However, summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### IV. Discussion

The parties agree that Pennsylvania law applies to the present dispute. Because this is a suit in diversity and most of the significant contacts, such as the underlying accident and the issuance of the insurance policies, occurred in Pennsylvania, the Court will apply Pennsylvania law.

Northland argues that a binding settlement was entered into by Northland and Lincoln

General. "The enforceability of settlement agreements is governed by principles of contract law." Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999).

> To form a contract in Pennsylvania law, there must be: (1) an offer by one party that expresses a willingness to enter a contract; (2) an acceptance by which the second party agrees to be bound by the terms of the offer; and (3) a bargained-for exchange of consideration, i.e., a specific, definite promise by each party to perform some act.

Tuman v. Genesis Assocs., 935 F. Supp. 1375, 1389 (E.D. Pa. 1996).

Parties can be bound by oral settlement agreements. "If the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date." Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999)(internal quotation marks omitted). However, "[i]t is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract." Channel Home Centers, Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298 (3d Cir. 1986). Northland must demonstrate something more than preliminary negotiations. "Under Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." Id. at 298-99. See also ATACS Corp. v. Trans World Communications, 155 F.3d 659, 667-68 (3d Cir. 1998). Not only does the "burden of proving the existence of a contract lie[] with the party seeking to establish it," but because it was an oral agreement, Northland must establish its existence by "clear and precise" evidence. Middleton v. Realen Homes, 24 F. Supp. 2d 430, 435 (E.D. Pa. 1998)(citations and internal quotation marks omitted).

To establish the existence of a binding contract, Northland relies on the telephone

4

conversations and messages between Slane and McGovern. According to Northland, the settlement at issue was entered into when Slane received a telephone message from Lincoln General's McGovern on April 11, 2001. The terms of the oral contract are captured in a notation made by Slane about a phone message from McGovern, which reads "they are in agreement to walk away from [declaratory judgment action] and close files." McGovern Dep. Ex. 2 at 29.

Northland cites Shovel Transfer, Flight Systems, Inc. v. Electronic Data Systems Corp., 112 F.3d 124 (3d Cir. 1997), and Compu Forms Control, Inc. v. Altus Group, Inc., 574 A.2d 618 (Pa. Super. Ct. 1990) as examples of cases in which oral agreements have been enforced. These cases are easily distinguished from the present case. In Shovel Transfer and Flight Systems, substantial drafts of the proposed contract had been produced, and the parties had taken action in reliance on the oral agreements.[2] In Compu Forms, as well as Johnston v. Johnston, 499 A.2d 1074 (Pa. Super. Ct. 1985), a case relied on by the Compu Forms court, the parties had placed words of intent to settle on the record.[3] Details about the parties' intentions and the specifics of the agreement were available, and the courts enforced those agreements.

Even if Northland could show that intentions were placed on the record, that substantial drafts had been exchanged, or that the parties had acted in reliance on the purported contract, it would not necessitate the finding of a contract. In Mazzella v. Koken, 739 A.2d 531 (Pa. 1999),

---

[2] In Flight Systems, a 59-page draft had been produced, and Flight Systems had removed its rental property from the market. Flight Systems, 112 F.3d at 127. In Shovel Transfer, several sales agreements were exchanged, and Shovel Transfer purchased a building in reliance on a letter from the Pennsylvania Liquor Control Board. Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d at 135, 138.

[3] See Compu Forms, 574 A.2d at 621 (quoting the trial court record to show that parties had entered a broad outline of the settlement); Johnston, 499 A.2d at 1074 ("[T]he Court hereby accepts the agreement entered into, fully recognizing that it is presented to the Court in rough form but that the contents of the said agreement will be the basis upon which the trust agreement shall be formally prepared."(quoting trial court order)).

5

the Supreme Court of Pennsylvania reversed a lower court, which had found an enforceable settlement offer. The parties had informed the court that they negotiated a settlement, and then they exchanged drafts. The court reversed because substantial changes had been made to the agreement during the exchange of drafts. The court found that "there was no meeting of the minds with regard to a material term of the proposed agreement." Id. at 538.

Northland has presented none of these indicia of a binding agreement. The parties have not entered their intentions onto the court record, there is no substantial draft, and there has been no conduct consistent with or actions in reliance on the existence of a contract. Finally, the parties did not discuss the terms of the expected mutual releases. Since releases would be essentially the entire written contract in this case, they are undoubtedly material.[4] Without any discussion of the releases, there could have been no meeting of the minds regarding the terms of the expected releases.

"[B]efore preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain." Mazzella, 739 A.2d at 536-37. All the evidence presented here shows is that the parties were conducting the most preliminary of preliminary negotiations, and cannot be reasonably construed to show the existence of a binding settlement agreement. The Court finds that while the parties might have informally agreed to agree, they did not enter the realm of contractual obligations. Therefore, no binding settlement agreement was reached.

---

[4]In Bontigao v. Villanova University, 786 F. Supp. 513, 515 (E.D. Pa. 1992), the parties agreed upon monetary and confidentiality terms. The held that no settlement agreement was reached because the parties disagreed over the scope of the release. The court found that the release was material, and the releases are even more so in the instant case, where the undiscussed releases would comprise the heart of the agreement.

6

## V. Order

AND NOW, therefore, **IT IS ORDERED** that Plaintiff Northland Insurance Company's Motion for Summary Judgment (Doc. No. 24) is **DENIED**. A telephone conference will be held on __8/2/02__ at __9:30__ o'clock (am)/pm to discuss scheduling matters. Plaintiff's counsel shall initiate the call.

                                                              Yvette Kane
                                                              United States District Judge

Dated: July __17__, 2002.