JUDGE'S COPY



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY      :
    Plaintiff                    :
                                  :
                                  :
v.                                :   No. 1:01-CV-763
                                  :
LINCOLN GENERAL INSURANCE COMPANY,:
J.H.M. ENTERPRISES, INC., and     :
VERNICE L. STATTS,                :
    Defendants                   :
                                  :
LINCOLN GENERAL INSURANCE COMPANY,:
    Third Party Plaintiff        :
                                  :
v.                                :
                                  :
WOOLEVER BROTHERS TRANSPORTATION   :
INC.                              :
    Third Party Defendant        :   (JUDGE KANE)

**LINCOLN GENERAL INSURANCE COMPANY'S PRETRIAL MEMORANDUM**

A.   FEDERAL COURT JURISDICTION

This Court has jurisdiction over Northland Insurance Company's ("Northland") and Lincoln General Insurance Company's ("Lincoln General") claims against each other in accordance with 28 U.S.C. §1332 in that there is complete diversity of citizenship between Lincoln General and Northland. This Court has jurisdiction over Lincoln General's cross-claims against J.H.M. Enterprises, Inc. ("JHM") and Vernice L. Statts

("Statts"), and Lincoln General's Third Party claims against Woolever Brothers Transportation, Inc. ("Woolever"), in accordance with 28 U.S.C. §1367(a) in that these claims are related to the claims between Northland and Lincoln General.

B. SUMMARY STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY

Lincoln General provided trucking liability insurance to JHM, and Northland provided trucking liability insurance to Woolever. Statts was a driver for JHM. JHM leased a truck to Woolever. On the morning of November 17, 1995, Statts was involved in an accident while driving a truck leased to Woolever. Two people were killed in the accident, and one was seriously injured. Two wrongful death/personal injury lawsuits were filed against JHM, Woolever and Statts. Lincoln General and Northland disputed who was responsible to defend JHM, Woolever and Statts. Lincoln General defended JHM and Statts, and Northland defended Woolever. Lincoln General and Northland eventually agreed to each contribute $675,000 to a global settlement of all the claims arising out of the accident, and then litigate between themselves who was primarily responsible to provide coverage to the responsible parties.

It is Lincoln General's position that Northland provides primary coverage since the truck was under lease to Woolever at the time of the accident and the Lincoln General policy provides that if the truck is under lease to a trucker, the insurance company for the trucker is primary and Lincoln General is excess. Further, it is Lincoln General's position that it provides no coverage for the claims arising out of the accident since JHM and

2

Woolever committed a fraud upon Lincoln General by misrepresenting that the truck was subject to a trip lease which expired a couple of hours before the accident. Lincoln General did not learn until two years after the accident that Woolever and JHM had falsified a trip lease after the accident, which they had backdated to make it appear as if it had been entered into and ended before the accident. In truth, the truck was subject to a permanent lease at the time of the accident, which had not been terminated. Woolever's and JHM's misrepresentation was material since it has a significant impact on which insurance company is primary. If the truck were subject to an expired trip lease at the time of the accident, then the Lincoln General policy would arguably be primary, whereas if the truck was subject to a lease still in effect at the time of the accident, Northland is primary.

If Northland is primary and Lincoln General is excess, then Northland must reimburse Lincoln General approximately $766,000, exclusive of pre-judgment interest. At a minimum, Lincoln General and Northland bear responsibility on an equal basis, either co-primary or co-excess. In accordance with the "Other Insurance" clause in both policies, where the two companies bear responsibility on an equal basis, either primary or excess, the two companies must share in the loss on a pro rata basis determined by the ratio of the individual limits of coverage to the total available coverage. Lincoln General provided $750,000 and Northland provided $2,000,000 in coverage. Accordingly, Lincoln General would bear only 27.27% of the total defense and indemnity payments. Since Lincoln General paid in excess of 50%

3

of the total defense and indemnity payments, if the insurance companies are determined to bear responsibility on an equal basis, then Northland must reimburse Lincoln General approximately $355,000, exclusive of pre-judgment interest.

C.  COMPREHENSIVE STATEMENT OF UNDISPUTED FACTS

To be attached to Northland's Pretrial Memorandum in accordance with Local Rule 16.3.

D.  DESCRIPTION OF DAMAGES

Lincoln General and Northland each paid $675,000 to settle the underlying actions. Northland claims in the second paragraph 35 of the Complaint that it spent $51,769.94 in defending Woolever in the underlying actions, and claims in the Joint Case Management Plan that it spent $65,629.59 in defending Woolever in the underlying actions. Lincoln General spent $91,511.35 to defend JHM and Statts in the underlying actions. Accordingly, the total amount spent by Northland and Lincoln General to settle and defend Woolever, JHM and Statts in the underlying actions is $1,507,140.94.

It is Lincoln General's primary position that Northland is primary and Lincoln General is excess. If the Court would so find, then Northland would be required to reimburse Lincoln General for the total amount it paid out to settle and defend the underlying actions of $766,511.35, exclusive of pre-judgment interest. If the Court should find that Northland and Lincoln General share responsibility on a concurrent basis, whether primary or excess, then Northland's and Lincoln General's pro

4

rata liability for all costs to settle and defend the underlying actions would be $1,096,143.61 and $410,997.33, respectively. This is based on Northland's pro rata percentage of liability being 72.73 percent ($2,000,000/($2,000,000 + $750,000)) and Lincoln General's pro rata percentage of liability being 27.27 percent ($750,000/($2,000,000 + $750,000). Since Lincoln General paid $766,511.35, it paid more than its pro rata share of liability, and would be entitled to a reimbursement from Northland in the amount of $355,514.02 ($766,511.35 - $410,997.33), exclusive of pre-judgment interest.

E.   WITNESSES

Michael McGovern, Esquire
Formerly of Lincoln General

Louis Bricklin, Esquire
Attorney for Woolever in underlying action

Gail Crecilius
Jerry Parker
Northland Insurance Company

Harold Sinclair
Woolever Brothers

Hazel Sinclair
(deposition given in underlying actions since she was deceased before the attorneys in this case had an opportunity to depose her)
Woolever Brothers

Joyce Wilking
Woolever Brothers

Vernice Statts
Currently employed part-time by Woolever Brothers

Jay McCormick
JHM

Jim Brandt
Formerly of King American

5

Craig Stone, Esquire
Michael Pipa, Esquire
Attorneys for JHM and Statts in underlying action

Charles Miller, Esquire
Attorney for Cliffords Estate in underlying action

Diane Hughes
Formerly of Susquehanna Insurance Associates (JHM's insurance agent)

Dale Clemmons
Raisio (live or by deposition transcript)

F. EXPERTS

Lincoln General does not intend to call any experts, except to the extent that Northland does not stipulate to the attorneys' fees paid by Lincoln General to defend JHM and Statts in the underlying actions. In that event, Lincoln General will call Craig Stone, Esquire, to testify both factually and as an attorney who has been litigating for many years that the attorneys' fees his firm charged Lincoln General are reasonable and customary for the type of claims asserted in the underlying actions. To the extent Attorney Stone's testimony borders on expert testimony, Lincoln General will be offering him as an expert on what are reasonable and customary attorneys' fees in this area for the defense of cases such as the ones involved in the underlying matters.

G. SPECIAL COMMENT ON PLEADINGS

As a result of Northland's Stipulation that it provides $2,000,000 in coverage for the vehicle involved in the accident, Lincoln General agreed to withdraw Count II of its Third-Party Complaint against Woolever. Count I involves Lincoln General's

6

claim that Woolever committed a material misrepresentation that entitles Lincoln General to void coverage. Lincoln General does not seek any monetary relief from Woolever in Count I of the Third-Party Complaint. Woolever's counsel has not been actively participating in this action since the execution of the Stipulation regarding Northland's coverage. Woolever filed a counterclaim against Lincoln General for bad faith. Lincoln General has requested Woolever's counsel to withdraw such claim, but has received no response. To the extent Woolever's counsel does not file a pretrial memorandum indicating that Woolever intends to pursue its claim of bad faith, Lincoln General requests that the Court dismiss Woolever's counterclaim with prejudice.

H.   LEGAL ISSUES AND LEGAL AUTHORITIES

Lincoln General will be filing a Trial Brief before trial setting forth the legal authority supporting its position. The following is only a brief summary of Lincoln General's legal argument.

> LEGAL ISSUE: Whether Northland's insurance policy provides primary coverage where the truck was under lease to Woolever at the time of the accident?

LEGAL AUTHORITIES: Under the Lincoln General and Northland "Other Insurance" clauses, which are identical, the Northland Policy is "primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a 'trucker' and pursuant to operating rights granted to you by a public authority." The Lincoln General Policy is "excess over any other collectible insurance for any covered 'auto' while

7

hired or borrowed from you by another 'trucker'." It is undisputed that the Tractor was subject to the Permanent Lease at the time of the Accident, and as such, Lincoln General's Policy is excess. Lincoln General submits that Northland's Policy is primary since the Tractor was still being used in Woolever's business because it was hauling the van trailer used to deliver Woolever's load, which van trailer was not going to be used to haul the subsequent load at Raisio's facility. If it was not for Woolever's load, Statts would not have been at the location where the Accident occurred. Further, the Permanent Lease provides that Woolever has exclusive control of the Tractor during the term of the Lease, which is further evidence that its coverage is primary. See generally Maryland Cas. Co. v. City Delivery Service, Inc., 817 F.Supp. 525, 529 (M.D. Pa. 1993) (concluding that "[u]nder the terms of American's policy its coverage is primary because the accident occurred while the tractor was under lease to City Delivery and being used exclusively in City Delivery's business as a trucker.")

It is generally held that a truckmen's endorsement results in an insurance policy being considered excess when the tractor is being employed in someone else's business. Occidental Fire and Cas. Co. of North Carolina v. Brocious, 772 F.2d 47, 52 (3rd Cir. 1985); Preston Trucking Co., Inc. v. Carolina Cas. Ins. Co., 712 F.Supp. 1208, 1212-13 (W.D. Pa. 1989). Consequently, "a tractor owner's policy is often excess where the tractor is leased to a freight carrier." Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co., 155 F.Supp.2d 429, 434 (E.D. Pa. 2001).

8

LEGAL ISSUE: Whether the fraud, misrepresentations and/or concealment by Woolever, JHM and/or Statts voids the Lincoln General coverage for the Accident?

LEGAL AUTHORITIES: The Lincoln General policy provides that coverage is voided if "you or any other 'insured', at any time, intentionally conceal or misrepresent a material fact" concerning: a. The Coverage Form; b. The covered "auto"; c. Your interest in the covered "auto"; or d. A claim under the Coverage Form. (Lincoln General Policy, Sec. V.B.2.) This provision is in accord with Pennsylvania law. See <u>New York Life Ins. Co. v. Johnson</u>, 923 F.2d 279, 281 (3rd Cir. 1991) (stating that, "Under Pennsylvania law an insurance policy is void for misrepresentation when the insurer establishes three elements: (1) that the representation was false; (2) that the insured knew that the representation was false when made or made it in bad faith; and (3) that he representation was material to the risk being insured."); <u>Parasco v. Pacific Indem. Co.</u>, 920 F. Supp. 647, 653-55 (E.D. Pa. 1996) (finding that insured made material misrepresentations during insurer's investigation so as to support denial of coverage).

LEGAL ISSUE: In the event that the Northland and Lincoln General policies are deemed to be co-primary or co-excess, whether liability should be divided based on the policy limit rule set forth in their respective policies?

LEGAL AUTHORITIES: Assuming arguendo that the Northland and Lincoln General policies are deemed co-primary or co-excess, and Lincoln General is not entitled to void its coverage as to JHM, Woolever and Statts, then the policy limit

9

rule should apply to apportion liability. The Lincoln General and Northland Policies have both adopted the policy limit rule, under which the total loss is prorated on the basis of the maximum coverage limits of each policy. When policies provide for the same method of division of liability, the courts will apply that method. Occidental Fire and Cas. Co. of North Carolina, supra, 772 F.2d at 53; *see also* Continental Ins. Co. v. McKain, 821 F.Supp. 1084, 1087 (E.D.Pa. 1993), *aff'd without published opinion*, 19 F.3d 642 (3rd Cir. 1994) (stating that, "Where both relevant policies contained language favoring a particular principle of apportionment, the court applied it."); Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 166 (3rd Cir. 1988)("Pro rata provisions allocate financial responsibility between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies.")

The apportionment of defense costs follows the method of apportionment of indemnification costs. Continental Ins. Co., supra, 821 F.Supp. at 1092.

I.   STIPULATIONS DESIRED

Lincoln General seeks a stipulation that the attorneys fees it incurred in defending JHM and Statts in the underlying action of $91,511.35 are reasonable and that this amount will be used in the calculation of damages. Lincoln General is willing to stipulate that Northland's attorneys' fees of $65,629.59 are reasonable and that this amount should be used in the calculation

10

of damages to the extent Northland stipulates to Lincoln General's attorneys' fees expended in the underlying actions.

Lincoln General also seeks a stipulation as to the admissibility of its exhibits so that it does not need to call witnesses simply to identify exhibits which speak for themselves, where the witness is not being asked to add anything to what is stated in the document.

J.  ESTIMATED NUMBER OF TRIAL DAYS

Four.

K.  OTHER MATTERS

None.

L.  EXHIBIT LIST

Attached.

M.  SPECIAL VERDICT QUESTIONS

Not Applicable since this is a non-jury matter.

N.  SETTLEMENT AUTHORITY

Lincoln General's counsel has notified the person at Lincoln General with settlement authority about the requirements of Local Rule 16.2.

O.  DEPOSITION TRANSCRIPTS

Lincoln General intends to use portions of the deposition transcript of Hazel Sinclair taken in the underlying action, and portions of the deposition transcript of Dale Clemmons taken in

11

the underlying actions. Lincoln General reserves the right to use other deposition transcripts taken in the underlying actions and this action for those purposes permitted by the Rules of Civil Procedure and Evidence. Lincoln General's counsel has discussed the use of deposition transcripts with Northland's counsel, and they have agreed to comply with Local Rule 30.10 to the extent deposition transcripts are used at trial.

P.   REQUESTS FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

Filed separately.

Respectfully submitted,

McNEES, WALLACE & NURICK LLC

By _____
Jonathan H. Rudd, Esq.
Charles T. Young, Jr., Esq.
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone: (717) 237-5405
Fax:   (717) 237-5300

Attorneys for Lincoln General Insurance Company

Dated: December 13, 2002

12

# LIST OF EXHIBITS

**CASE CAPTION:** Northland Insurance Company v. Lincoln General Insurance Company, J.H.M. Enterprise, Inc., and Vernice L. Statts, Defendants, Lincoln General Insurance Company, Third Party Plaintiff v. Woolever Brothers Transportation, Inc., Third Party Defendant

**CASE NUMBER:** 1:01-CV-763

**MIDDLE DISTRICT OF PENNSYLVANIA**

**JUDGE:** YVETTE KANE

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
|  | D-1 | Northland Insurance Company's claim file notes (LG-1) |  |  |  |  |
|  | D-2 | Certification of road test, violation and review records for Vernice Statts (LG-2) |  |  |  |  |
|  | D-3 | Certificate of qualification, medical examiner's certificate, physical examination form, and application for employment of Vernice Statts (LG-3) |  |  |  |  |
|  | D-4 | Drivers' Daily Log for 11/10–16/95 (LG-4) |  |  |  |  |
|  | D-5 | Automobile Loss Notice (11/17/95) (LG-5) |  |  |  |  |
|  | D-6 | Three pages of handwritten notes (11/17/95) (LG-6) |  |  |  |  |
|  | D-7 | Lease dated March 1, 1990, faxed to Northland on 11/17/95 (LG-7) |  |  |  |  |
|  | D-8 | Memorandum from Dols to Rhein (11/20/95) (LG-8) |  |  |  |  |
|  | D-9 | One page handwritten note (11/20/95) (LG-9) |  |  |  |  |
|  | D-10 | One-page handwritten note (11/20/95 – |  |  |  |  |

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | | "Reviewed policy and lease") (LG-10) | | | | |
| | D-11 | One-page handwritten note (11/20/95 – references Rod Rhein) (LG-11) | | | | |
| | D-12 | One-page handwritten note (11/21/95 – telephone call with Bob Dols) (LG-12) | | | | |
| | D-13 | One-page handwritten note (11/28/95 – telephone call with Mike McGovern) (LG-13) | | | | |
| | D-14 | Lease dated November 16, 1995 faxed to Mike McGovern on November 29, 1995 (LG-14) | | | | |
| | D-15 | Letter from Parker to Woolever (11/29/95) (LG-15) | | | | |
| | D-16 | One-page handwritten note (12/4/95 – "Hazel at Woolever called") (LG-16) | | | | |
| | D-17 | One-page handwritten note (12/4/95 – "called insured") (LG-17) | | | | |
| | D-18 | Lease dated November 16, 1995 faxed on December 4, 1995 (LG-18) | | | | |
| | D-19 | Fax from Dols to Rhein (12/4/95) (LG-20) | | | | |
| | D-20 | One-page handwritten note (12/6/95 re telephone conversation with Mike McGovern )(LG-22) | | | | |
| | D-21 | One-page handwritten note (12/6/95 re telephone conversation with Lou Bricklin) (LG-23) | | | | |
| | D-22 | Reinsurance report (12/14/95) (LG-24) | | | | |
| | D-23 | Letter from Parker to Woolever (12/18/95) (LG-25) | | | | |
| | D-24 | Letter from Parker to McGovern (12/21/95) (LG-26) | | | | |
| | D-25 | Letter from McGovern to Parker (2/1/96) (LG-27) | | | | |

2

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | D-26 | One-page handwritten note (2/6/96 re received Lincoln General policy) (LG-28) | | | | |
| | D-27 | Letter from Parker to McGovern (2/9/96) (LG-29) | | | | |
| | D-28 | One-page handwritten note (4/11/96) (LG-32) | | | | |
| | D-29 | One-page handwritten note (4/15/96) (LG-33) | | | | |
| | D-30 | Letter from Parker to Bricklin (4/20/96) (First two pages of LG-34) | | | | |
| | D-31 | Letter from Parker to Woolever (4/20/96) (LG-35) | | | | |
| | D-32 | Complaint in Krapf v. Statts (No. S-650-1996) (LG-36) | | | | |
| | D-33 | Letter from Bricklin to Woolever (6/7/96) (LG-37) | | | | |
| | D-34 | Draft answer, new matter and crossclaim of Woolever in Krapf v. Statts, No. S-650-1996) (LG-38) | | | | |
| | D-35 | Letter from Bricklin to Parker (6/7/96) (LG-39) | | | | |
| | D-36 | Answer, new matter and crossclaim of Woolever filed in Krapf v. Statts, No. S-650-96 (LG-40) | | | | |
| | D-37 | Plaintiff's request for production of documents in Krapf v. Statts, No. S-650-96 (LG-41) | | | | |
| | D-38 | Interrogatories propounded by Plaintiff in Krapf v. Statts, No. S-650-96 (LG-42) | | | | |
| | D-39 | Woolever's response to request for production of documents in Krapf v. Statts, No. S-650-96 (LG-43) | | | | |
| | D-40 | Woolever's answers to interrogatories in | | | | |

3

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | | Krapf v. Statts, No. S-650-96 (LG-44) | | | | |
| | D-41 | Letter from Wolfgang to Bricklin (7/1/96) (LG-45) | | | | |
| | D-42 | Letter from Parker to Woolever (7/11/96) (LG-46) | | | | |
| | D-43 | Letter from Parker to Wolfgang (7/16/96) (LG-47) | | | | |
| | D-44 | Letter from Bricklin to Parker (7/18/96) (LG-48) | | | | |
| | D-45 | Letter from Bricklin to Parker, with attached memo from ALR to LEB (Letter dated 4/3/97) (LG-49) | | | | |
| | D-46 | Letter from Bricklin to Hazel Sinclair (7/4/97) (LG-50) | | | | |
| | D-47 | J.H.M. and Statts' answer with new matter and crossclaim in Krapf v. Statts, No. S-650-96 (LG-51) | | | | |
| | D-48 | Woolever's reply to crossclaim in Krapf v. Statts, No. S-650-96 (LG-52) | | | | |
| | D-49 | Woolever's answer and new matter and crossclaim in Mulligan v. Statts, No. S-1689-97 (LG-53) | | | | |
| | D-50 | Letter from Parker to Tomaszewski (11/3/97) (LG-54) | | | | |
| | D-51 | Letter from Bricklin to Parker (2/2/98) (LG-55) | | | | |
| | D-52 | Letter from Bricklin to Parker (5/12/98) (LG-56) | | | | |
| | D-53 | Letter from Bricklin to Parker (6/4/98) (LG-57) | | | | |
| | D-54 | Letter from Bricklin to Pipa (6/4/98) (LG-58) | | | | |
| | D-55 | Letter from Miller to Pipa and Bricklin | | | | |

4

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | | (8/28/98) (LG-59) | | | | |
| | D-56 | Letter from Pipa to Bricklin (9/21/98) (LG-60) | | | | |
| | D-57 | Letter from Bricklin to Pipa (9/28/98) (LG-61) | | | | |
| | D-58 | Letter from Parker to Pipa (10/14/98) (LG-62) | | | | |
| | D-59 | Proposed Stipulation (4/5/99) (LG-63) | | | | |
| | D-60 | Letter from Bricklin to Miller with proposed stipulation (4/16/99) (LG-64) | | | | |
| | D-61 | Letter from Bricklin to Miller (5/18/99) (LG-65 | | | | |
| | D-62 | Letter from Miller to Bricklin (5/20/99) (LG-66) | | | | |
| | D-63 | Letter from Bricklin to Miller (6/10/99) (LG-67) | | | | |
| | D-64 | Letter from Bricklin to Parker (8/30/99) (LG-68) | | | | |
| | D-65 | Letter from Bricklin to Miller (9/10/99) (LG-69) | | | | |
| | D-66 | Letter from Bricklin to Slane (1/18/00) (LG-70) | | | | |
| | D-67 | Lincoln General Insurance Policy (LG-74) | | | | |
| | D-68 | Deposition transcript of Vernice Statts, Sr. taken on 11/4/97 (LG-75) | | | | |
| | D-69 | Deposition transcripts of J. McCormick and Hazel Sinclair taken on 11/4/97 (LG-76) | | | | |
| | D-70 | Receipt of suit papers received on 4/15/96 (LG-77) | | | | |
| | D-71 | Receipt of suit papers received on 9/16/97 (LG-78) | | | | |
| | D-71 | Driver data sheet, driver's daily log, and | | | | |

5

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
|  |  | lease dated 10/2/95 (LG-82) |  |  |  |  |
|  | D-72 | Delivery ticket (11/17/95 and attached trip report) (LG-83) |  |  |  |  |
|  | D-73 | Lease agreement dated March 1, 1994 for 1985 White (LG-84) |  |  |  |  |
|  | D-74 | Lease agreement dated June 10, 1993 for 1986 Freightliner (LG-85) |  |  |  |  |
|  | D-75 | Lease agreement dated December 30, 1994 for 1988 Freightliner (LG-86) |  |  |  |  |
|  | D-76 | Letter from Brandt to Himes (LG-87) |  |  |  |  |
|  | D-77 | Letter from Hughes to Himes dated July 14, 1995, with attached hold harmless agreement (first page of LG-88 and LG-89) |  |  |  |  |
|  | D-78 | Letter from Lincoln General to Jersey Shore State Bank (8/1/95) (LG-90) |  |  |  |  |
|  | D-79 | Lease dated March 1, 1990 for 1979 Freightliner (NL-A) |  |  |  |  |
|  | D-80 | Lease dated 10/4/95 (NL-B) |  |  |  |  |
|  | D-81 | Driver data sheet and lease dated 10/6/95 (NL-C) |  |  |  |  |
|  | D-82 | Driver data sheet, driver daily logs and lease dated 10/25/95 (NL-D) |  |  |  |  |
|  | D-83 | Driver data sheet, driver daily logs and lease dated 10/27/95 (NL-E) |  |  |  |  |
|  | D-84 | Driver's daily logs, driver data sheet, and lease dated 10/31/95 (NL-F) |  |  |  |  |
|  | D-85 | Lease dated 11/2/95, driver data sheet, and driver's daily log (NL-G) |  |  |  |  |
|  | D-86 | Lease dated 11/7/95, driver data sheet, and driver's daily log (NL-H) |  |  |  |  |
|  | D-87 | Lease dated 11/10/95, driver data sheet, driver's daily logs (NL-I) |  |  |  |  |

6

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | D-88 | Lease dated 11/14/95, driver data sheet and driver daily log (NL-J) | | | | |
| | D-89 | Lease dated 11/16/95, driver data sheet, and driver's daily log (NL-K) | | | | |
| | D-90 | Driver's daily logs, lease dated 10/20/95, and driver data sheet (NL-M) | | | | |
| | D-91 | Letter from McGovern to Stone (1/29/96) | | | | |
| | D-92 | Letter from McGovern to McCormick (1/29/96) | | | | |
| | D-93 | Letter from Stone to McGovern (3/14/96) | | | | |
| | D-94 | Letter from Stone to McGovern (5/9/96) | | | | |
| | D-95 | Letter from Stone to McGovern (6/10/96) | | | | |
| | D-96 | Letter from Stone to McGovern (6/7/96) | | | | |
| | D-97 | Letter from Wolfgang to McGovern (7/26/96) | | | | |
| | D-98 | Letter from Wolfgang to McCormick (7/26/96) | | | | |
| | D-99 | Letter from Pipa to McCormick (4/22/97) | | | | |
| | D-100 | Memo from Pipa to File (10/30/97) | | | | |
| | D-101 | Bricklin's file memo (6/7/96) | | | | |
| | D-102 | Bricklin memo to Cusack (6/7/96) | | | | |
| | D-103 | Bricklin letter of 11/22/02 transmitting answer to Cliffords' document request | | | | |
| | D-104 | JHM insurance application (5/10/96) | | | | |
| | D-105 | Letter from McGovern to Miller (11/28/00) | | | | |
| | D-106 | Audit Request (8/16/96) | | | | |
| | D-107 | Audit Results (9/30/96) | | | | |
| | D-108 | Monthly Report (10/9/95) | | | | |
| | D-109 | Monthly Report (11/13/95) | | | | |
| | D-110 | Monthly Report (12/11/95) | | | | |
| | D-111 | Endorsement for Hired Auto Coverage effective 1/1/96 | | | | |
| | D-112 | Lincoln General's expenses | | | | |

7

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 13th day of December, 2002, a true and correct copy of the foregoing document was served by first-class, United States mail, postage prepaid, upon the following:

Ira S. Lipsius, Esquire
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

Andrew R. Spiegel, Esquire
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127

_____
Jonathan H. Rudd