

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY :
        Plaintiff
      v. : No. 1:01-CV-763

LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., and
VERNICE L. STATTS, :
        Defendants

      v. :

WOOLEVER BROTHERS TRANSPORTATION :
INC.
        Third Party Defendant : (JUDGE KANE)

**FILED**
HARRISBURG, PA

DEC 1 8 2002

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

<u>NORTHLAND INSURANCE COMPANY'S PRETRIAL MEMORANDUM</u>

Date Conference was Held by Counsel: 11/22/02

    A.    <u>Statement as to Federal Jurisdiction</u>

    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in

controversy exceed the sum of value of Seventy-Five Thousand Dollars ($75,000.00), exclusive

of interest and costs, and is between citizens of different states and pursuant to 28 U.S.C.

§2201.

    B.    <u>Summary/Statement of Facts and Contentions as to Liability</u>.

    This action is one to determine the extent of coverage provided by two insurers,

Northland Insurance Company ("Northland") and Lincoln General Insurance Company

("Lincoln General"), for a motor vehicle accident.  Northland and Lincoln General have settled

the claims arising from the accident. The two insurers had agreed to settle this action.  A formal

settlement agreement was never executed between the insurers.   On July 17, 2002 this Court ruled that the settlement agreement was not binding.

Lincoln General insured J.H.M. Enterprises Inc. ("JHM"), an I.C.C. regulated motor carrier, under a policy of insurance which specifically scheduled the vehicle involved in the accident, a 1979 Freightliner ("the Tractor").

Northland insured Woolever Brothers Trucking ("Woolever"), also an I.C.C. regulated motor carrier.  Northland only provides coverage under its policy for the tractor if the tractor was leased to Woolever at the time of the loss.

If the vehicle was leased to Woolever at the time of the accident then an issues arises as to whose authority was being used at the time of the accident.  That determination impacts upon the primacy of coverage.

It is Northland's contention that at the time of the accident the vehicle was not leased to Woolever and the vehicle was operating exclusively in the business of JHM.  Lincoln General disagrees with Northland on this issue.

Numerous depositions have been conducted both in the personal injury actions and in this action.  Northland contends that at the time of the accident the vehicle was unrefutably operating in the business of JHM.

On November 17, 1995 a JHM employee, Vernice Statts, ( "Statts") dropped off a load at approximately 8 A.M. in Ephrata, Pennsylvania.  This load was delivered to Ephrata on behalf of Woolever.  Statts was dispatched by JHM to pick up a load on behalf of JHM.  While under dispatch to JHM, Statts was involved in an accident.  At the time of the Accident, the Tractor and Trailer were owned by Jay McCormick of JHM and under the direction and control of Jay

2

McCormick and JHM. The Lincoln policy provided coverage for specified vehicles and hired autos. The Tractor and Trailer were specified vehicles under the Lincoln policy and are therefore covered autos.

In 1990 Woolever leased the tractor from JHM pursuant to a 30 day lease which was automatically extended for additional thirty day periods, unless cancelled by the either JHM or Woolever.

In 1990, when this lease was executed, Woolever was a licensed I.C.C. carrier, JHM was not. In 1992 J.H.M. obtained authority from the I.C.C. and concurrently obtained insurance from Lincoln General.

Beginning in 1992 Woolever ceased to use the tractor on a regular basis and the tractor was used in the business of JHM.. Neither party formally cancelled the lease.

From 1992 to 1995 the Tractor was used primarily in the business of JHM. It was, however, occasionally leased to Woolever on a per trip basis. During this period other tractors owned by JHM were leased to Woolever and, on at least one occasion, JHM removed the permanently leased vehicle from the policy issued by Lincoln General. The Tractor involved in the accident remained insured by Lincoln General

In the six months prior to the accident the Tractor was used in the business of Woolever approximately 11 days.

After the accident JHM and Woolever executed a series of trip leases to reflect what they believed was the actual arrangement. The fact that these leases were executed after the accident was not known to Northland until November 1997 and about the same time it became known to Lincoln General.

3

Lincoln General contends that the execution and furnishing of these leases was fraudulent and therefore voids the Lincoln General policy.

It is axiomatic that if the Lincoln General policy is voided, the Northland policy is voided as well.

Lincoln General first raised the issue of fraud in August 2001.

C.      Statement of Undisputed Facts as Agreed to by Counsel at the Conference.

Northland and Lincoln General issued policies utilizing ISO form CA 00 12 12 93. The Lincoln General policy provides coverage for specified vehicles and hired autos. The Tractor and Trailer involved in this matter were specified vehicles under the Lincoln policy. The Lincoln policy provides $750,000 in coverage.

Northland's policy provides coverage for "hired autos". The Northland policy provides $2,000,000 in coverage.

Lincoln General defended Jay McCormick, JHM and Statts in the underlying actions. Northland defended Woolever Brothers in the underlying actions.

Lincoln General contributed $650,000 towards the $1,300,000 settlement of the underlying actions. Northland contributed $650,000 towards the $1,300,000 settlement of the underlying actions.

On or about March 1, 1990 Woolever leased the Tractor from JHM pursuant to a thirty day lease which was automatically extended for additional thirty day terms unless cancelled by the either of the parties.

4

D.    Brief Description of Damages .

It is Northland's position that Lincoln General provides primary coverage for the losses in the underlying action and that Northland's coverage, if any, is excess.  As such, Northland is only required to contribute toward the underlying action after Lincoln General's policy has been exhausted.   Since Lincoln General paid only $675,000 of its $750,000 policy limits, Lincoln General is liable to Northland for the $75,000 remainder of its policy limits plus Northland's cost of defense in the underlying action, $65,629.59.

E.    Names and addresses of Witnesses.

Jay McCormick, JHM,;

Vernice Statts;

Dale Clemons, former Raisio (Live or by deposition transcript);

Harold Sinclair, Woolever Brothers;

Joyce Sinclair-deceased- (via deposition);

Jerry Parker, Northland Insurance Company;

Gail Crecelius, Northland Insurance Company;

Michael McGovern, or a corporate designee of Lincoln General;

Traci Slane, Northland Insurance Company.

F.    Summary of Testimony of Each Expert Witness.

Northland does not intend to call any experts.

G.    Special Comment about Pleadings and Discovery.

None.

H.    Summary of Legal Issues and Authorities.

Northland intends to file a Trial Brief setting forth a more detailed discussion of the law and the applicability to the facts.

ISSUE: The effect of the 1990 lease.

In order for the Northland policy to provide coverage there must be a lease in effect at the time of the accident whereby Woolever leased the Vehicle from JHM.  The only such lease is a 1990 lease which testimony will show superseded by the actions of the parties. Woolever on an occasional basis leased the tractor on a trip lease basis. Years before the Accident, the 1990 lease had been effectively cancelled by both JHM and Woolever, and the lease agreement had been replaced by oral trip lease agreements between the parties. The doctrine of novation substitutes a contract, oral or written, for an existing contract thereby barring revival of the existing duty under the old contract.  In the instant matter, testimony will show, the 1990 lease had been displaced, a series of new valid trip leases had been substituted in its place, there was consideration, and JHM and Woolever consented to the extinction of the old lease and replacement of the new trip leases.  *First Lehigh Bank v. Haviland Grille, Inc*, 704 A.2d 135 (Pa. Super. 1997); *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484 (1984);  *Paramount Aviation Corporation v. Agusta*, 178 F.3d 132 (3rd Cir. 1999).

ISSUE: If the 1990 lease was in effect,  which policy provides primary coverage.

Both Lincoln General and Northland use the ISO truckers form.  Lincoln General's policy was issued to JHM; it provides $750,000 of liability coverage for JHM and for several categories of omnibus insureds.  The Tractor  was scheduled as a covered auto.

Northland issued its policy to Woolever Brothers with limits of $ 2 million.  Coverage is provided for commercial vehicles owned by Woolever as well as for vehicles hired or borrowed by Woolever.

The two policies contain the identical "other insurance" clause.

5.      Other Insurance - Primary And Excess Insurance Provisions

a.      This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority  This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:

(1)     On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

(2)     Excess if the power unit is not a covered "auto".

b.      Any Trailer Interchange Coverage provided by this coverage Form is primary for any covered "auto".

c.      Except as provided in Paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

7

There has never been any doubt about the applicability of the Lincoln General policy in this case. Statts, the active tortfeasor was a permissive user of a vehicle scheduled on the Lincoln General policy. The matter was less clear with respect to the Northland policy - since the Tractor was not owned by Woolever, the vehicle could only have been a covered auto if it was under lease to Woolever. Since, had plaintiffs been able to convince a jury that the Tractor was still under lease to Woolever, the full $ 2 million of the Northland policy was at risk, and Woolever's own assets were at risk above that amount, Northland, acting in good faith, agreed to participate in the settlement. In fact, however, Northland, for the reasons set out above, believes that the Tractor was no longer under lease to Woolever. Alternatively, even if the lease was in effect, case law makes clear that pursuant to the terms of the policies, the key factor for determining which insurer pays first is which motor carrier's authority was being used at the time of he accident. Since JHM's authority was being used at the time of the accident, Lincoln General's coverage is primary. *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579 (E.D.Pa. 1999).

> ISSUE:    Allocation of limits if both the Lincoln General policy
>           and the Northland policy provide excess coverage.

The law in Pennsylvania is clear that if two policies provide coverage on the same level the limits are allocated on an equal shares basis, not a prorata basis. Therefore even if both Northland and Lincoln General provide coverage on the same basis, the $650,000 already paid by each party is the proper allocation between the insurers. *American Cas. Co. of Reading Pa. v. PHICO Ins. Co.*, 549 Pa. 682, 702 A.2d 1050, (1997); *Fireman's Fund Insurance Company*

8

*v. Empire Fire & Marine Insurance Company*, 2001 WL 1042740 (E.D.Pa.2001); *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995).

ISSUE: If the Lincoln General policy is void, likewise the Northland policy is void. If both policies are void, neither insurer can recover from the other.

Lincoln General has alleged that JHM and Woolever fraudulently misrepresented their leasing arrangement and as a result of that misrepresentation its policy is void. Northland has raised as an affirmative defense that if Lincoln General's assertion is true, Northland's policy is also void. If both policy are void neither insurer is entitled to recover from the other. Further, both insurer's exposure is limited to that created by the MCS-90 endorsement. The insurers are not entitled to recovery from each other if their only exposure is pursuant to the MCS-90. *Industrial Indem. Co. v. Truax Truck Line Inc.*, 45 F.3d 986 (5th Cir. 1995).

ISSUE: Voiding the Lincoln General Policy Ab Initio and its effect on Statts:

Lincoln General has alleged that Woolever and JHM have perpetrated a fraud on it in the creation of the trip leases. No evidence has been presented that Statts was at all involved in the fraud. A liability policy can only be voided ab-initio with regard to those committing the fraud. A liability policy cannot void coverage to someone who has not committed fraud. *Erie Ins. Exchange v. Lake*, 671 A.2d 681, 543 Pa. 363 (1996).

I.    Stipulations Desired.

Northland will stipulate to Lincoln General's attorney fees of $91,511.35 in the underlying action as Lincoln General is willing to stipulate to Northland's attorney fees of $65,629.59 in the underlying action.

9

J.    Estimated number of trial days.

If the parties can agree to use of transcripts instead of live testimony, it is anticipated that

actual trial should not exceed one day.  If the trial is conducted using live witness testimony,

three to four days

K.    Other Pertinent Matters.

By order dated July 17, 2002 this Court denied Northland's motion regarding the

agreement between Northland and Lincoln General to settle this matter.  Northland reserves its

right to appeal and raise relevant issues concerning the Court's decision on appeal.

L.    Schedule of Exhibits.
       Attached.

M.    Special Verdict Questions.
       Non -jury trial.

N.    Settlement Authority/Notification.

Counsel has informed the Northland individuals with settlement authority concerning the

requirements of Local rule 16.2

O.    Review of Deposition Transcripts.

Northland intends to use portions of the deposition transcripts of Vernice Statts, Hazel

Sinclair, Harold Sinclair, Joyce Wilking, Dale Clemons, Jerry Parker, Louis Bricklin, and Gail

Crecelius. All were deposed in the underlying action. The use of deposition transcripts from the underlying action has been discussed with counsel. The parties have agreed to comply with Local Rule 30.10 concerning the use of deposition transcripts at trial.

P.    REQUESTS FOR FINDING OF FACT AND LAW

1.    Northland is a Minnesota corporation with its principal place of business in Minnesota.

2.    Lincoln General is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3.    JHM is a Pennsylvania corporation with its principal place of business in Pennsylvania.

4.    Lincoln General issued to JHM, insurance Policy Number PAP 185770 0495 (the "Lincoln General Policy") which was in effect from April 18, 1995 to April 18, 1996.

5.    Lincoln General insured JHM from April 18, 1992 until April 18, 1996.

6.    A 1979 Freightliner, Serial Number CA213HM160222 (the "Tractor") was scheduled on the Lincoln General Policy.

7.    The limits of the Lincoln General Policy are $750,000, combined single limits.

8.    Lincoln General filed proof of insurance with the Interstate Commerce Commission (I.C.C.) evidencing insurance for the period April 18, 1992 to April 18, 1996.

11

9.    On March 1, 1990 JHM leased the Tractor to Woolever pursuant to a 30 day lease which automatically renewed for additional 30 day periods unless cancelled by either party.

10.    The relationship between JHM and McCormick goes back to 1990. At that point, JHM was not registered with the I.C.C. as a carrier.

11.    The only way for JHM to carry goods in interstate commerce was to lease its vehicles to regulated carriers such as Woolever.

12.    Effective February 6, 1992, JHM secured authority from the I.C.C. as a common and contract carrier.

13.    From that point forward, most of JHM's business was conducted as a regulated motor carrier.

14.    JHM's customers understood that JHM was the motor carrier and the shipment was carried under JHM's authority.

15.    A small percentage of JHM's business consisted of loads carried under trip lease to Woolever.

16.    This state of affairs continued until sometime after the accident when JHM surrendered its authority. Since that time it has returned to its original business model.

17.    During the two year period JHM leased its vehicles to Woolever for use in Woolever's business JHM assigned one of its drivers to operate the vehicle in Woolever's business.

18.    In November, 1995 JHM operated primarily as a motor carrier hauling under its own authority.

12

19.   At the time of the Accident, Statts has been dispatched by JHM to pick up a tanker truck from JHM's customer Raisio, Inc., in Berick, Pennsylvania.

20.   Raisio's production supervisor, Dale Clemons, testified at his deposition that he hired JHM to pick up a load on November 17, 1995.

21.   JHM's driver was to pick up the empty tanker at the Raisio facility and drive it to a local potato chip manufacturer where it would be filled with water in which potatoes had been washed.

22.   This water, known as slurry, contained large amounts of starch that Raisio was able to extract.

23.   Raisio's motor carrier of choice was JHM. Clemons noted that the phone was generally answered with the name "Woolever", although sometimes McCormick answered the phone. He was not certain who Woolever was. He would ask to speak with Jay McCormick and request that JHM dispatch one or two trucks as he required. If McCormick was not in the office, he would ask whoever answered the phone to pass a message on to him. There was never any doubt in Clemons' mind, however, that JHM was the motor carrier and that its authority was being used.

24.   The accident occurred on Route 309 in Rush Township as Statts  was proceeding to the Raisio location.

25.   Robert and Karin Clifford were killed in the accident.

26.   Sherill Mulligan, who was operating a third vehicle suffered injury.

27.   The resulting lawsuits were jointly settled by Northland and Lincoln General.

13

28.     Subsequent to JHM's obtaining authority in 1992, most of JHM's use of the Tractor was pursuant to JHM's authority.

29.     JHM and Woolever should have entered into trip leases for each individual trip that JHM made under the Woolever authority.  It was acknowledged that no such trip leases were actually prepared until after the Accident.

30.     Subsequent to the Accident JHM and Woolever executed trip leases memorializing the transactions that had been entered into between JHM and Woolever.

31.     A written trip lease memorializing the fact that the trip lease between Woolever and JHM terminated prior to the accident was executed by Woolever and JHM.

32.     In November 1997, two years after the loss and almost four years before Lincoln General first claimed fraud, Northland and Lincoln General were made aware that this lease was executed subsequent to the loss.

33.     The trip lease, executed after the loss, shows that Woolever took control of the trailer on November 16, 1995, when Statts left for the Cargill Salt Company to pick up the salt load, and returned control to JHM on November 17 once the load was delivered to Ephrata at approximately 8 A.M.

34.     Lincoln General paid $91,511.35 to defend Statts and JHM.

35.     Northland Paid $65,629.59 to defend Woolever.

36.     Lincoln General has alleged that JHM and Woolever fraudulently executed the trip lease.  Lincoln General has not alleged that Statts participated in the fraud.

37.     Prior to the accident in 1995 JHM was unaware of the existence of the 1990 lease.

14

38.    In June of 1995 Lincoln General audited the records of JHM.

39.    At that time, the Tractor was listed on the Lincoln General Policy.

40.    The audit indicated that three of the 17 vehicles scheduled on the Lincoln General policy were leased to Woolever.

41.    The Tractor was scheduled on the Lincoln General policy.

42.    The Tractor was not among the vehicles which the audit indicated were leased to Woolever.

43.    On July 14, 1995 one of the vehicles which was leased to Woolever was removed from the Lincoln General Policy because it was leased to Woolever and believed to be covered by the Woolever policy.

44.    Northland issued policy number TF209197 to Woolever (the "Northland Policy").

45.    The limits of the Northland Policy are $2,000,000, combined single limit.

46.    The Northland Policy provided coverage for vehicles hired by Woolever.

47.    At the time of the accident the Tractor was not under lease to Woolever.

48.    At the time of the Accident the Tractor was owned by JHM.

49.    At the time of the Accident the Tractor was being used exclusively in the business of JHM.

50.    The Northland policy did not provide coverage for the Tractor.

51.    The Lincoln General Policy provides primary coverage for the Tractor.

52.    Lincoln General must pay Northland $75,000, the remaining limits under the Lincoln General Policy, plus defense costs of $65,629.59.

## ALTERNATIVE FINDING OF FACTS

53.    The Tractor at the time of the Accident was still under lease to Woolever but was operating in the business of JHM

54.    The Tractor at the time of the Accident was still under lease to Woolever but was not operating exclusively in the business of Woolever.

55.    If it is found that JHM and Woolever committed fraud and as the result of that fraud the Lincoln General Policy is void, the Northland policy is void as well.

## REQUESTED FINDINGS OF LAW

56.    The 1990 lease was no longer in effect in November 1995 by virtue of the subsequent conduct of the parties and the oral and written trip leases entered into between Woolever and JHM and therefore Lincoln General provides primary coverage and must reimburse Northland.

57.    The Lincoln General Policy Provides Primary coverage and the Northland Policy provides excess coverage and therefore Lincoln General must reimburse Northland

58.    If the Northland Policy and the Lincoln General Policy provided concurrent coverage, the insurers each pay in equal shares until exhaustion of each insurer's policy limits. As Neither policy limit has been exhausted, Lincoln General is not entitled to recover from Northland.

59.    If it is found that JHM and Woolever committed fraud which voids the Lincoln General Policy, the Northland Policy is voided as well. If the Northland policy is voided then Lincoln General is not entitled to recover from Northland.

16

60.    Lincoln General cannot void its coverage to Statts.

Dated:  December 18, 2002
        New York, New York

                                        SCHINDEL, FARMAN & LIPSIUS LLP
                                        Attorneys for Plaintiff Northland Insurance
                                        Company


                                        By: _____
                                              Ira S. Lipsius (IL5704)
                                        225 West 34th Street
                                        New York, New York 10122
                                        (212) 563-1710
                                        File No. 2015.67

                                        RUTHRAUFF & ARMBRUST, P.C.
                                        1601 Market Street, 16th Floor
                                        Philadelphia,  PA  19103
                                        (215) 567-3700
                                        Attorneys for Plaintiff Northland Insurance Co.

TO:    Jonathan H. Rudd, Esq.
       Attorney for Lincoln General
       100 Pine Street
       P.O. Box 1166
       Harrisburg, PA 17108-11661
       (717) 237-5405

       Andrew R. Spiegel, Esquire
       3901-A Main Street
       Second Floor
       Philadelphia, PA 19127

Case: Northland Ins. Co. v. Lincoln General Ins. Co., J. H. M. Enterprises, et al.,
Case No.: 1:01-CV-763

## Northland Exhibit List

| PTF | DFT | Description | Identified | Evidence | Ruling | Witness |
|-----|-----|-------------|------------|----------|--------|---------|
| P-1 | | Lease dated 3/1/90[NL-A (1 pg)] | | | | |
| P-2 | | Lease dated 10/4/95 [NL-B(3 pgs)] | | | | |
| P-3 | | Statts driver data sheet [NL-C(2 pgs)] | | | | |
| P-4 | | Statts driver data sheet [NL-D(4 pgs)] | | | | |
| P-5 | | Statts driver daily log [NL-E (5 pgs)] | | | | |
| P-6 | | Statts driver daily log [NL-F(4 pgs)] | | | | |
| P-7 | | Lease dated 11/2/95 [NL-G (3 pgs)] | | | | |
| P-8 | | Lease dated 11/2/95 [NL-H (3 pgs)] | | | | |
| P-9 | | Lease dated 11/2/95 [NL-I (4 pgs)] | | | | |
| P-10 | | Lease dated 11/14/95 [NL-J (3 pgs)] | | | | |
| P-11 | | Lease dated 11/16/95 [NL-K (32 pgs)] | | | | |
| P-12 | | Lease dated 11/16/95 [NL-L (1 pg)] | | | | |
| P-13 | | Statts driver daily log [NL-M (4 pgs)] | | | | |
| P-14 | | One page handwritten notes [NL-O] | | | | |
| P-15 | | 6/8/95 Letter from Jim Brandt to Lincoln with attachments [LG-87 (4 pgs)] | | | | |

**Northland Exhibit List**

Case: Northland Ins. Co. v. Lincoln General Ins. Co., J. H. M. Enterprises, et al.,
Case No.: 1:01-CV-763

| PTF DFT | Description | Identified | Evidence | Ruling | Witness |
|---|---|---|---|---|---|
| P-1 | Lease dated 3/1/90[NL-A (1 pg)] | | | | |
| P-2 | Lease dated 10/4/95 [NL-B(3 pgs)] | | | | |
| P-3 | Statts driver data sheet [NL-C(2 pgs)] | | | | |
| P-4 | Statts driver data sheet [NL-D(4 pgs)] | | | | |
| P-5 | Statts driver daily log [NL-E (5 pgs)] | | | | |
| P-6 | Statts driver daily log [NL-F(4 pgs)] | | | | |
| P-7 | Lease dated 11/2/95 [NL-G (3 pgs)] | | | | |
| P-8 | Lease dated 11/2/95 [NL-H (3 pgs)] | | | | |
| P-9 | Lease dated 11/2/95 [NL-I (4 pgs)] | | | | |
| P-10 | Lease dated 11/14/95 [NL-J (3 pgs)] | | | | |
| P-11 | Lease dated 11/16/95 [NL-K (32 pgs)] | | | | |
| P-12 | Lease dated 11/16/95 [NL-L (1 pg)] | | | | |
| P-13 | Statts driver daily log [NL-M (4 pgs)] | | | | |
| P-14 | One page handwritten notes [NL-O] | | | | |
| P-15 | 6/8/95 Letter from Jim Brandt to Lincoln with attachments [LG-87 (4.pgs)] | | | | |

| PTF | DFT | Description | Identified | Evidence | Ruling | Witness |
|-----|-----|-------------|------------|----------|--------|---------|
| P-16 | | 6/14/95 letter from Diane Hughes to Eric Himes & 7/10/95 letter from Jay McCormick to Eric Himes [LG-89] | | | | |
| P-17 | | Hold Harmless agreement re 1986 Freightliner [LG-88] | | | | |
| P-18 | | Bill of Lading re salt delivered for Woolever on 11/17/95 [LG-83 (3 pgs)] | | | | |
| P-19 | | 12/21/95 letter from J. Parker to M. McGovern with attached Northland policy form [LG-26] | | | | |
| P-20 | | 8/6/98 letter from M. Pipa to M. McGovern [NL-O (2 pgs)] | | | | |
| P-21 | | 6/4/98 letter from L. Bricklin to M. Pipa [NL-P (4 pgs)] | | | | |
| P-22 | | 3/1/90 lease re 1979 freightliner [NL-Q (3 pgs)] | | | | |
| P-23 | | 11/16/95 lease re 1979 Freightliner and 1977 trailer (3 pgs)[NL-R] | | | | |
| P-24 | | 6/25/98 letter from M. Pipa to M. McGovern [NL-S (2 pgs)] | | | | |
| P-25 | | 12/45/2000 letter from M. McGovern to Guy Carpenter [NL-T (2 pgs)] | | | | |
| P-26 | | 7/29/96 letter from M. McGovern to B. Eckert [NL-U (2 pgs)] | | | | |

Page 2 of 3

| PTF | DFT | Description | Identified | Evidence | Ruling | Witness |
|---|---|---|---|---|---|---|
| P-27 | | 5/20/99 letter from C. Miller to L. Bricklin [NL-V (3 pgs)] | | | | |
| P-28 | | 2/28/96 letter from J. Maust to E. Himes re JHM (1 pg) | | | | |
| P-29 | | 1/31/96 verification of Sherrie Cronson with attached Lincoln General policy. | | | | |
| P-30 | | USDOT Insurance history for JHM (1 pg) | | | | |
| P-31 | | USDOT Authority History for JHM (1 pg) | | | | |
| | | | | | | |
| | | | | | | |

Page 3 of 3

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

I, Pauline Hylton, being duly sworn, states as follows:  I am over 18 years of age, not a party to the within action, and reside at 225 West 34th Street, New York, New York  10122.  On December 17, 2002, I served the within Northland Insurance Company's Pretrial Memorandum upon the person(s) or parties designated below by mailing a true and complete copy of same in a postage pre-paid envelope, and depositing same in a post office or official depository of the United States Postal Service within New York State, at the last known address of the addressee(s) as set forth herein.

TO:    Jonathan H. Rudd, Esq.
       Attorney for Lincoln General
       100 Pine Street
       P.O. Box 1166
       Harrisburg, PA 17108-11661


       Andrew R. Spiegel, Esquire
       3901-A Main Street
       Second Floor
       Philadelphia, PA 19127


_____
Pauline Hylton

Sworn to before me this
17th day of December, 2002

_____
Notary Public

LORIENTON N. A. PALMER
Notary Public, State of New York
No. 02PA4983745
Qualified in Nassau County
Commission Expires July 8, 2003