(53)
1-17-03
sc

ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY         :
      Plaintiff                     :
                                    :
                                    :
      v.                            :    No. 1:01-CV-763
                                    :
LINCOLN GENERAL INSURANCE COMPANY,  :
J.H.M. ENTERPRISES, INC., and       :
VERNICE L. STATTS,                  :
      Defendants                    :
                                    :
LINCOLN GENERAL INSURANCE COMPANY,  :
      Third Party Plaintiff         :
                                    :
      v.                            :
                                    :
WOOLEVER BROTHERS TRANSPORTATION     :
INC.                                :
      Third Party Defendant         :    (JUDGE KANE)

FILED
HARRISBURG, PA

JAN 1 6 2003

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

---

**LINCOLN GENERAL INSURANCE COMPANY'S TRIAL BRIEF**

---

Jonathan H. Rudd, Esq.
Charles T. Young, Jr., Esq.
McNEES, WALLACE & NURICK LLC
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166

Attorneys for Lincoln General
   Insurance Company

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................. ii

I.     NORTHLAND AND LINCOLN GENERAL MUST APPORTION
       LIABILITY ON A PRO RATA POLICY LIMIT BASIS IF THE
       COURT DETERMINES THAT NORTHLAND'S AND LINCOLN
       GENERAL'S POLICIES BOTH PROVIDE EXCESS COVERAGE ...... 1

II.    LINCOLN GENERAL IS ENTITLED TO VOID COVERAGE FOR
       THIS CLAIM AS TO JHM, WOOLEVER AND STATTS BASED ON
       THE CONCEALMENT, MISREPRESENTATION OR FRAUD OF JHM
       AND WOOLEVER EVEN IF IT IS DETERMINED THAT STATTS
       IN AN INNOCENT CO-INSURED .......................... 15

       A.   Voiding Or Denying Coverage As To An Innocent
            Coinsured .................................... 17

       B.   The Pennsylvania Supreme Court's Decision In
            Erie Ins. Exch. v. Lake Does Not Apply To The
            Present Case ................................. 20

III.   NORTHLAND HAS NO RIGHT TO VOID ITS COVERAGE AS TO
       JHM, WOOLEVER AND STATTS ........................... 23

IV.    NORTHLAND PROVIDES PRIMARY COVERAGE FOR THE
       ACCIDENT ........................................... 29

## TABLE OF CITATIONS

Cases:                                                                    Page

American Cas. Co. of Reading, PA. v. PHICO Ins. Co.,
    702 A.2d 1050 (Pa. 1997) ............................. 9,10,11

American Trucking Ass'ns, Inc. v. United States,
    344 U.S. 298, 73 S. Ct. 307 (1953) ....................... 30

Carolina Casualty Insurance Company v. Insurance Company
    of North America, 595 F.2d 128 (3d Cir. 1979) ........ 32,33

Chester Carriers, Inc. v. National Union Fire Insurance
    Company of Pittsburgh, 767 A.2d 535 (Pa. Super. 2001) .. 3,12

Connecticut Indemnity Company v. Harris Transport
    Company, 909 F. Supp. 1212 (W.D. Ark. 1995) ............. 36

Connecticut Indemnity Company v. Stringfellow,
    956 F. Supp. 553 (M.D. Pa. 1997 ........................ 36

Continental Ins. Co. v. McKain, 821 F. Supp. 1084
    (E.D. Pa. 1993), aff'd without published opinion,
    19 F.3d 642 (3d Cir. 1994) ............................... 6

Cosmopolitan Mutual Insurance Company v. White,
    336 F. Supp. 92 (D. Del. 1972) .......................... 37

Ehrgood v. Coregis Ins. Co., 59 F. Supp.2d 438
    (M.D. Pa. 1998) ......................................... 19

Erie Ins. Exch. v. Lake, 671 A.2d 681 (Pa. 1996) .. 17,20,21,22,23

Fireman's Fund Insurance Company v. Empire Fire & Marine
    Insurance Company, 152 F. Supp.2d 687 (E.D. Pa. 2001) .... 12

Fireman's Fund Insurance Company v. Empire Fire & Marine
    Insurance Company, 155 F. Supp.2d 429 (E.D. Pa.
    2001) ............................................. 12,13,14

General Accident Ins. Co. of America v. Allen, 708 A.2d 828
    (Pa. Super. 1998) ....................................... 18

Hoffmaster v. Harleysville Insurance Company,
    657 A.2d 1274 (Pa. Super. 1995) ............. 7,8,9,10,11,12

Industrial Indem. Co. v. Truax Truck Line, Inc.,
    45 F.3d 986 (5th Cir. 1995) ............................. 29

Kreider Truck Service, Inc. v. Augustine, 394 N.E.2d 1179
    (Ill. 1979) ............................................. 37

Kundahl v. Erie Ins. Group, 703 A.2d 542 (Pa. Super. 1997) .... 19

Cases:                                                                        Page

Maryland Cas. Co. v. City Delivery Service, Inc.,
    817 F. Supp. 525 (M.D. Pa. 1993 ......................34,35

McAllister v. Millville Mut. Ins. Co., 640 A.2d 1283
    (Pa. Super. 1994) ........................................19

Mellon National Bank & Trust Co. v. Sophie Lines, Inc.,
    289 F.2d 473 (3d Cir. 1961) .........................36,37

Metropolitan Property and Liability Insurance Co. v.
    Insurance Commissioner and Miller, 580 A.2d 300 (1990) ...21

Michael Carbone, Inc. v. General Accident Ins. Co.,
    937 F. Supp. 413 (E.D. Pa. 1996) ........................19

Nationwide Ins. Co. v. Horace Mann Ins. Co.,
    759 A.2d 9 (Pa. Super. 2000) .................8,11,12,13,14

Occidental Fire and Casualty Company of North Carolina v.
    Brocious, 772 F.2d 47 (3d Cir. 1985) ..............4,5,6,9,
                                                     10,12,14,35

Parasco v. Pacific Indem. Co., 920 F. Supp. 647
    (E.D. Pa. 1996) .........................................20

Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172
    (Pa. 2001) ..............................................26

Spezialetti v. Pacific Employers Ins. Co.,
    759 F.2d 1139 (3rd Cir. 1985) ....................18,19,20

Traders & Gen. Ins. Co. v. Freeman, 81 F. Supp.2d 1070
    (D. Or. 2000) ...........................................20

Transport Indemnity Co. v. Home Indemnity Co.,
    535 F.2d 232 (3d Cir. 1976) ...................2,3,4,10

Walter v. Dunlap, 368 F.2d 118 (3d Cir. 1966) ...............35


Statutes:

40 P.S. § 991.2001 ......................................21,22
         § 991.2002(a) .....................................21
         § 991.2002(b)(2) ..................................22


Rules:

49 C.F.R. §376.11(b) ........................................30
          §376.12(b)(2) .....................................30
          §376.12(j) ........................................34

I.   NORTHLAND AND LINCOLN GENERAL MUST APPORTION LIABILITY ON
     A PRO RATA POLICY LIMIT BASIS IF THE COURT DETERMINES THAT
     NORTHLAND'S AND LINCOLN GENERAL'S POLICIES BOTH PROVIDE
     EXCESS COVERAGE.

Northland and Lincoln General issued identical policies to

their named insureds.  It is undisputed that Woolever, JHM and

Statts qualify as insureds under both policies.  Both policies

contain the same "Other Insurance" provision, which provides in

relevant part that:

     a.   This Coverage Form's Liability Coverage is primary
          for any covered "auto" while hired or borrowed by
          you and used exclusively in your business as a
          "trucker" and pursuant to operating rights granted
          to you by a public authority.  This Coverage
          Form's Liability Coverage is excess over any other
          collectible insurance for any covered "auto" while
          hired or borrowed from you by another "trucker".

                         *  *  *

     f.   When this Coverage Form and any other Coverage
          Form or policy covers on the same basis, either
          excess or primary, we will pay only our share.
          Our share is the proportion that the Limit of
          Insurance of our Coverage Form bears to the total
          of the limits of all the Coverage Forms and
          policies covering on the same basis.

Lincoln General and Northland are both contending that their

policies are excess based on the above language.  Northland

contends that the Tractor was not being used exclusively in

Woolever's business at the time of the Accident, and as such, its

coverage is excess.  Lincoln General is claiming that the Tractor

was leased by another "trucker" (Woolever) at the time of the

Accident, and as such, its coverage is excess.  Although Lincoln

General submits that Northland's policy is primary for the

reasons set forth later in this brief, to the extent the Court

concludes that both policies provide excess coverage, than the

Court should follow the method of apportionment set forth in each policy.

Each policy expressly states that if it covers on the same basis as another policy, either excess or primary, than each insurer is responsible for its pro rata share based on the combined policy limits.  Northland is arguing that the Court should disregard the method of apportionment set forth in both policies, and apportion liability equally between the two insurers.

The starting point in resolving this issue is the Third Circuit's decision in Transport Indemnity Co. v. Home Indemnity Co., 535 F.2d 232 (3d Cir. 1976).  Northland suggests that Transport Indemnity and the Third Circuit cases following Transport Indemnity are no longer good law in the Third Circuit. For the reasons set forth in this section of the Trial Brief, Lincoln General submits that the Third Circuit cases are still good law and require that this issue be resolved in favor of Lincoln General.  In Transport Indemnity, Lansdale Transportation Company ("Lansdale") leased a truck from Lancaster Truck Leasing Company ("Lancaster").  During the terms of the lease, Lansdale was involved in an accident with the truck.  Both Lansdale and Lancaster were sued in a subsequent personal injury action. Lansdale had purchased both a primary and excess insurance policy from Transport.  Lancaster had purchased a policy from Home.  A dispute arose between Transport and Home as to who was responsible to defend and indemnify Lansdale and Lancaster, which lead to a coverage dispute being filed by Transport.

2

The District Court in <u>Transport Indemnity</u> held that based on an exclusion in the Home policy, it provided no coverage.  It also held that based on a clause in the lease requiring Lansdale to indemnify Lancaster for all claims arising out of the use of the Tractor, that Lansdale's insurance carrier (Transport) should be responsible to provide coverage for the parties.  In reversing the District Court, the Third Circuit initially rejected the argument that the indemnity clause required Lansdale's insurer to provide coverage to the exclusion of Lancaster's insurer.  In this regard, the Third Circuit stated:

> ... The contractual obligations assumed by Lansdale to Lancaster cannot extend the obligations assumed by Transport to its named insured, Lansdale, beyond the plain language of its contract.  Nor does the clause 5(m) [indemnity clause] of the lease change the result, since if Lansdale is found to be covered as an additional insured under Home's policy, Home owes insurance coverage directly to Lansdale.  If when liability is imposed on Lansdale it has a right to insurance coverage, the indemnity provision does not come into play.

<u>Id.</u> at 235.[1]

In <u>Transport Indemnity</u>, the Third Circuit ultimately concluded that there was coverage under Transport's primary policy, and the two excess policies.  In discussing the manner in

---

[1] The Third Circuit's holding in <u>Transport Indemnity</u> that the indemnity provision in a lease is not material to resolving an insurance coverage dispute between two insurers is potentially relevant to this case since Northland argued at length prior to the settlement of the underlying cases that Lincoln General should be held primary based solely on the indemnification clause in the lease between JHM and Wooleger.  As the Third Circuit made clear in <u>Transport Indemnity</u>, this position is without merit. <u>See also</u> <u>Chester Carriers, Inc. v. National Union Fire Insurance Company of Pittsburgh</u>, 767 A.2d 535, 563 (Pa. Super. 2001)(Court rejected argument that lessor's insurance carrier was primary simply because lessor had agreed to indemnify lessee).

which the loss would be apportioned between the two excess

policies, the Third Circuit stated:

> The primary coverage afforded by Transport's
> policy extends to the first $10,000. If ultimately
> liability is established beyond that amount, <u>it must be
> prorated between the two carriers of excess insurance
> according to the limits in the policies</u>. *Green v.
> Benson*, 271 F. Supp. 90 (E.D. Pa. 1967)[17].
>
> _____
>
> [17]   See also Annot., 69 A.L.R.2d 1122(1960); and "When
> two or more policies on the same risk <u>contain
> consistent excess clauses</u>, the courts generally require
> proration." 2 R.H. Long, The Law of Liability
> Insurance §22.06 (1975).

<u>Id.</u> at 239 (emphasis added).

The Third Circuit's holding in <u>Transport Indemnity</u> supports

Lincoln General's position that where there are <u>consistent excess

clauses</u> which require proration of the loss, the loss should be

prorated according to the limits in the policies. Most of the

cases relied upon by Northland all deal with allegedly

<u>inconsistent excess clauses</u>, where there is either no mechanism

for apportionment, or the mechanism for apportionment is

inconsistent. None of the cases relied upon by Northland discuss

the situation where both policies expressly state that if there

is a co-excess situation, both policies will pay their pro rata

portion of the combined policy limits.

The Third Circuit followed its decision in <u>Transport

Indemnity</u> in <u>Occidental Fire and Casualty Company of North

Carolina v. Brocious</u>, 772 F.2d 47 (3d Cir. 1985). In that case,

Brocious leased a tractor-trailer to Doan Mining Company.

Brocious caused a fatal accident while driving the tractor-

trailer leased to Doan. Occidental had issued a policy to

Brocious, and Buckeye Union Insurance Company had issued two

policies to Doan.  The District Court held the both Occidental and Buckeye provided excess coverage, and that each insurer's liability was "to be prorated according to the limits of its policy or policies."  Id. at 54, n. 11.  In affirming the District Court, the Third Circuit stated:

> The language of the Occidental policy and Buckeye's $1,000,000 policy regarding allocation of liability when two or more policies cover a particular loss clearly provides for proration of liability in proportion to the limits of liability of each policy.[9] See also Vrabel v. Scholler, 372 Pa. 578, 580-81, 94 A.2d 748, 749 (1953).  In Transport Indemnity, we held that when one policy provided primary coverage and two policies provided excess coverage, the excess liability "must be prorated between the two carriers of excess insurance according to the limits in the policies." 535 F.2d at 239.

---

[9]  The Buckeye policy provides:

> 2.  <u>When two or more policies cover on the same basis, either excess or primary</u>, we will pay only our share.  Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

The Occidental policy provides:

> <u>When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent</u>, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> * * * * * *
>
> (b)  Contribution by Limits.  If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Id. at 53.

As is apparent from the policy provisions quoted above, the policies in <u>Occidental</u> both provided for the possibility of a co-excess situation, and both provided for proration based on policy limits if there was a co-excess situation.  The Third Circuit enforced this policy language and held that the parties were to pay their pro rata portion of any loss based on the combined policy limits.  <u>See also</u>  <u>Continental Ins. Co. v. McKain</u>, 821 F. Supp. 1084, 1087 (E.D. Pa. 1993), <u>aff'd without published opinion</u>, 19 F.3d 642 (3d Cir. 1994)("The language of the policies as to apportionment of indemnity costs and as to duty to defend is often determinative in the cases.  Where both relevant policies contained language favoring a particular principle of apportionment, the court applied it.").[2]

The facts in <u>Occidental</u> regarding the "Other Insurance" clauses in the two policies before the Third Circuit are virtually identical to the facts in the present case where Northland's and Lincoln General's policies both envision a co-excess situation and provide for proration based on the combined policy limits in such a situation.  There is no reason this Court should not follow <u>Occidental</u> and apportion "liability in proportion to the limits of liability in each policy."  772 F.2d at 53.

Northland's argument that the Court should disregard the language contained in its own and Lincoln General's policies on apportionment of liability is based on a few cases which involved

---

[2] The <u>Continental</u> court also made clear that the apportionment of defense costs follows the method of apportionment of indemnification costs.  821 F. Supp. at 1092-93.

different policy language and in which the court believed that giving literal effect to both policies would result in neither policy covering the loss.  Northland relies on <u>Hoffmaster v. Harleysville Insurance Company</u>, 657 A.2d 1274 (Pa. Super. 1995). In that case, Hoffmaster was driving a car owned by Vilsack when she struck another car.  Hoffmaster was insured by  Keystone Insurance Company, and Vilsack was insured by Harleysville.  A lawsuit arose out of the accident, and Harleysville and Keystone settled the lawsuit by paying $25,000 and $5,000 respectively to the tort victim.  Keystone than filed suit seeking to recover its payments from Harleysville.  Both policies contained identical provisions providing that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."  <u>Id.</u> at 1275.  Neither policy contained any provision stating what would happen if both policies provided excess coverage.  The Superior Court ultimately concluded that the two clauses were irreconcilable because both stated they were excess and neither provided for any method of apportionment if there was a co-excess situation.  Of significance is that the Superior Court believed that there would be no coverage if it gave literal effect to both policies:

> We are of the opinion that the Supreme Court of Pennsylvania would subscribe to the rule shared by the vast majority of courts from other jurisdictions.  That rule provides that irreconcilable "other insurance" clauses in automobile liability insurance policies are to be disregarded as mutually repugnant thereby rendering each of the coverages to be treated as primary insurance.  *See Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 99 Md. App. 595, 602-04, 638 A.2d 1220, 1224 (1994).

> "[I]f literal effect were given to both 'excess insurance' clauses of the applicable policies, neither

> <u>policy would cover the loss and such a result would</u>
> <u>produce an unintended absurdity.</u>"  7A Am.Jur.2d
> Automobile Insurance § 434, pp. 87-88.  "[A]ny attempt
> to give effect to the 'other insurance' provision of
> one policy while rejecting it in another is like
> pursuing a will o' wisp." *Lamb-Weston, Inc. v. Oregon*
> *Automobile Ins. Co.*, 219 Or. 110, 122, 341 P.2d 110,
> 115-116 (1959).  "[W]here the clause in each policy ...
> attempts to make its own liability secondary to that of
> any other policy issued by a similar primary insurer:
> For then the primary and (attempted) secondary
> liability of each policy <u>chase the other through</u>
> <u>infinity, something like trying to answer the question:</u>
> <u>Which came first, the chicken or the egg?</u>"  *Carriers*
> *Ins. Co.*, 404 A.2d at 219, *quoting*, *State Farm Mutual*
> *Ins. Co. v. Travelers Ins. Co.*, 194 So.2d 750, 753054
> (La. App. 1966).  "[T]hey cannot be excess to each
> other, since they are identical.  It is sort of 'After
> you Alfonso; no you, Gaston' act which the courts
> refuse to countenance." *Western Cas. & Sur.*, 232 Kan.
> at 611, 657 P.2d at 580, quoting 8A Appleman, Insurance
> Law and Practice § 4909 (rev.1981).

<u>Id.</u> at 1277-78.

As is apparent from the above quoted language, the primary
consideration in evaluating two excess clauses is whether there
is anyway to reconcile apportionment of liability under the two
clauses, or whether they would truly "chase the other through
infinity." <u>Id.</u> at 1277.  In <u>Hoffmaster</u>, the Superior Court
apparently believed that the two excess clauses would chase each
other through infinity, and that there was no way to give effect
to each clause without creating the absurd result of neither
policy providing coverage.  (This conclusion was later questioned
by the Superior Court in <u>Nationwide Ins. Co. v. Horace Mann Ins.</u>
<u>Co.</u>, 759 A.2d 9, 13, n.2 (Pa. Super. 2000)).  It is for this
reason that the Superior Court held that the two excess clauses
were irreconcilable and mutually repugnant.  Unfortunately, some
subsequent decisions relying on <u>Hoffmaster</u> have ignored the basis
for the Superior Court's discussion of the two excess clauses,

and simply cited <u>Hoffmaster</u> for the blanket rule that whenever there is a co-excess situation, the "Other Insurance" clauses are mutually repugnant and should be disregarded.

In contrast to <u>Hoffmaster</u>, the "Other insurance" clauses in Northland's and Lincoln General's policy would not chase each other through infinity, or result in neither policy providing coverage.  Rather, in accordance with the express terms of the "Other Insurance" clauses, each insurer would pay a pro rata portion of the loss such that the entire loss up to the combined policy limits would be paid by the two carriers.  There is nothing irreconcilable or repugnant about two sophisticated insurance carriers deciding to apportion a loss in a co-excess situation based on a pro rata division of the combined policy limits.  Nothing in <u>Hoffmaster</u> leads to a contrary conclusion, and nothing in <u>Hoffmaster</u> is inconsistent with <u>Occidental</u> and the cases which deal with <u>consistent excess clauses</u>.

Northland also relies upon <u>American Cas. Co. of Reading, PA.</u> <u>v. PHICO Ins. Co.</u>, 702 A.2d 1050, 1053-54 (Pa. 1997)).  In that case, the Supreme Court was confronted with three medical malpractice insurance policies that each provided that they were excess to each other.  Similar to <u>Hoffmaster</u>, there was no provision in any of the policies which dealt with how to apportion the liability if there was a co-excess situation, and the policies would have chased each other through infinity trying to determine which one must respond first.  Ultimately, the Supreme Court concluded that where "Other Insurance" clauses are truly irreconcilable and mutually repugnant, the policies must share on an equal basis until the lower policy limit is

9

exhausted.   Of significance is that the Supreme Court expressly
limited the scope of its decision to those cases where there were
truly irreconcilable and mutually repugnant "Other Insurance"
clauses.   In this regard, the Supreme Court stated:

> The precedential effect of our decision is limited to
> those situations where the policies in question contain
> irreconcilable and mutually exclusive "other insurance"
> clauses.  Thus, it shall not apply to those cases
> where, for instance, there are two or more policies at
> issue and the policies do not contain irreconcilable
> and mutually exclusive "other insurance" provisions.

Id. at 1054 n.7 (emphasis added).

The present case falls squarely within the above quoted
limitation set forth by the Supreme Court in American Casualty.
The identical "Other Insurance" clauses in the Northland and
Lincoln General policies do not contain irreconcilable and
mutually exclusive "Other Insurance" provisions since each
provides a method of apportionment in a co-excess situation.   The
"Other Insurance" clauses involved in the instant case contain
"consistent excess clauses."  See Transport Indemnity, supra, 535
F.2d at 239, n. 17.  As such, American Casualty in no way erodes
the precedential effect of Occidental and its holding that where
there are consistent excess clauses which provide a consistent
method of apportionment in a co-excess situation, the loss should
be apportioned in accordance with the terms of the policies.

Northland essentially argues that every co-excess situation
creates an irreconcilable and mutually repugnant conflict between
"Other Insurance" clauses and should result in the Court
disregarding an identical apportionment provision set forth in
both policies.   This argument is not supported by a close reading
of Hoffmaster or American Casualty, and is in direct conflict

10

with the Superior Court's more recent decision in <u>Nationwide Ins.</u>
<u>Co. v. Horace Mann Ins. Co.</u>, 759 A.2d 9 (Pa. Super. 2000).  In

that case, Shaw was driving a vehicle owned by the Favas when he

was involved in an accident.  Shaw had his own insurance with

Horace Mann, and the Favas' vehicle was insured by Nationwide.

Nationwide paid to settle all of the claims arising out of the

accident, and then sued Horace Mann to recover one half of the

costs.  The trial court concluded that the "Other Insurance"

clauses in each policy were irreconcilable and mutually

repugnant, and as such, held each insurer liable for half the

loss.  In reversing the trial court, the Superior Court stated:

> The trial court's reliance in this case on
> *Hoffmaster* and *American Casualty* would be appropriate
> if there is a true repugnancy raised by the "other
> insurance" clauses; <u>that repugnancy would result if</u>
> <u>these clauses are truly irreconcilable, such that</u>
> <u>giving literal effect to both would result in neither</u>
> <u>policy covering the loss</u>.  *See American Casualty*, at
> 1053-54; *Hoffmaster*, at 1277.
>
> In *American Casualty* it had already been
> determined that the clauses in question were truly
> irreconcilable.  In *Hoffmaster*, the trial court found
> the clauses were mutually repugnant, and there was no
> effective appellate review of the clauses because the
> challenge to that interpretation had been waived.
> Here, we do not find the "other insurance" clauses to
> be irreconcilable and mutually repugnant; accordingly,
> *American Casualty* and *Hoffmaster* do not control our
> disposition.

<u>Id.</u> at 12-13 (emphasis added).

As the Superior Court made very clear in <u>Nationwide</u>, two

"Other Insurance" clauses are mutually repugnant only if "giving

literal effect to both would result in neither policy covering

the loss." <u>Id.</u> at 12.  Although, as in <u>Hoffmaster</u> and <u>American</u>

<u>Casualty</u>, there might be a situation where giving literal effect

11

to two excess clauses would result in neither policy covering the loss, that is not the case in every situation, especially where there are consistent excess clauses.   See Occidental, supra, 772 F.2d at 53.[3]   Providing literal effect to the two "Other Insurance" clauses involved in the present case would not result in neither policy covering the loss.   Rather, giving the two "Other Insurance" clauses involved in the present case their literal effect results in each insurer paying its pro rata share of the loss.   There is nothing repugnant about two insurers agreeing to pay a pro rata portion of the loss if there is a co-excess situation, and this Court should enforce the express terms of the two policies.

Northland also relies on the Eastern District's decisions in Fireman's Fund Insurance Company v. Empire Fire & Marine Insurance Company, 155 F. Supp.2d 429 (E.D. Pa. 2001) and Fireman's Fund Insurance Company v. Empire Fire & Marine Insurance Company, 152 F. Supp.2d 687 (E.D. Pa. 2001).   In that case, Donald Miller leased his truck to Buck Run Transport.   Buck

---

[3] It is clear that the Pennsylvania Superior Court's decisions in Hoffmaster and Nationwide were never intended to reject the Third Circuit's decision in Occidental that where there are reconcilable and consistent excess clauses, the Court should give effect to the provisions in the policy for apportionment of the loss.   In its more recent decision in Chester Carriers, Inc. v. National Union Fire Insurance Company of Pittsburgh, 767 A.2d 535 (Pa. Super. 2001), the Superior Court expressly stated that it found the reasoning of Occidental to be persuasive. Id. at 560 ("we do find the reasoning in these cases to be persuasive"); and, Id. at 560-61 ("The Third Circuit Court of Appeals determined that both Buckeye and Occidental provided excess insurance; that their policies contained competing excess clauses.   Id. at 53.   As a result of this finding, the policies were held to apply equally and the amount due was to be prorated between them.")

supplied the trailer.  Miller was involved in an accident while pulling one of Buck's trailers loaded with fuel.  Fireman's insured Buck and its trailers, and Empire insured Miller's tractor.  Empire's policy covering the tractor contained the standard language found in the Northland and Lincoln General policies that if the tractor was leased to another trucker, the Empire policy was excess.  155 F.Supp.2d at 432.  In contrast, the Fireman's policy provided that "For any covered auto you don't own, the insurance provided by this coverage form is excess over any collectible insurance."  Id.  Based on the express terms of each policy, the other would appear to be excess since Buck did not own the tractor and the coverage under the Fireman's policy for the tractor would be excess.

Fireman's Fund is a classic example of a case where the court quoted Nationwide, supra, 750 A.2d 434, but failed to perform the analysis required by Nationwide.  Specifically, the court in Fireman's Fund stated:

> "Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss."[10]  Nationwide Ins. Co., 759 A.2d 9, 11-12 (Pa. Super. 2000) (cautioning that the equal shares method should be applied only where the two clauses are truly irreconcilable, such that giving literal effect to both would result in neither policy covering the loss).

---

[10]  "Other insurance clauses are deemed mutually repugnant when they are irreconcilable and mutually exclusive; that is following the express terms of one policy would be in direct conflict with the express dictates of another policy."  Nationwide, 750 A.2d at 11-12.

155 F.Supp.2d at 434 (emphasis added).

Contrary to the express dictates of <u>Nationwide</u>, the court in <u>Fireman's Fund</u> did no analysis as to whether giving literal effect to both "Other Insurance" clauses would result in neither policy covering the loss, nor did it analyze whether the express terms of one policy would be in direct conflict with the express dictates of the other policy.  Lincoln General notes that the "Other Insurance" clauses involved in the <u>Fireman's Fund</u> case both contained provisions providing that if there was a co-excess situation, the insurers would pay a pro rata portion of the loss based on the combined policy limits.  155 F.Supp.2d at 432-33.  However, the court never even addressed these provisions.

Lincoln General submits that this Court should not follow the Eastern District's result in <u>Fireman's Fund</u>, but should follow the Third Circuit's decision in <u>Occidental</u>.  <u>Occidental</u> specifically discussed the policy provision requiring that in a co-excess situation the insurers pay their pro rata portion of the loss, and held that this language controlled the apportionment of the loss.  The Third Circuit in <u>Occidental</u> correctly recognized that where the two policies provide a consistent mechanism for apportioning the loss in a co-excess situation, the "Other Insurance" clauses are not irreconcilable or mutually repugnant since giving literal effect to both will result in full coverage for the loss.  The Third Circuit also recognized that following the express terms of the one policy would not be in direct conflict with the dictates of the other policy, since each policy said that it would be responsible for its pro rata share of the loss in a co-excess situation.

For all the foregoing reasons, Lincoln General submits that this Court should follow the method of apportionment contained in Northland's and Lincoln General's policies, and reject Northland's contention that every co-excess situation, regardless of the policy language, creates an irreconcilable and mutually repugnant situation.  When this issue is properly analyzed, it is clear that the two "Other Insurance" clauses are not irreconcilable and mutually repugnant since giving literal effect to both results in <u>full coverage</u>, not <u>no coverage</u>.

II.  LINCOLN GENERAL IS ENTITLED TO VOID COVERAGE FOR THIS CLAIM AS TO JHM, WOOLEVER AND STATTS BASED ON THE CONCEALMENT, MISREPRESENTATION OR FRAUD OF JHM AND WOOLEVER EVEN IF IT IS <u>DETERMINED THAT STATTS IN AN INNOCENT CO-INSURED.</u>

The Lincoln General Policy expressly states that:

**2.  CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form.  It is also void if you <u>or any other "insured",</u> at any time, intentionally conceal or misrepresent a material fact concerning:

a.  This Coverage Form;

b.  The covered "auto";

c.  Your interest in the covered "auto"; or

d.  A claim under this Coverage Form.

(emphasis added).  Under the above language, the Policy is voided by fraud, concealment or misrepresentation committed by you "<u>or any other 'insured.'</u>"

It is Lincoln General's position that JHM and Woolever committed a fraud, and/or concealed and misrepresented material facts concerning their lease arrangement.  At the time of the Accident, the Tractor was subject to a permanent lease agreement

between JHM and Woolever.  JHM and Woolever discussed this lease arrangement with a Northland claims representative the day of the Accident.  Woolever also faxed to Northland on the day of the Accident a copy of the permanent lease dated March 1, 1990.

On the day after the Accident, representatives of JHM and Woolever prepared a series of trip leases for loads that had been hauled by JHM for Woolever prior to the Accident, and dated the documents to make it appear as if the trip leases had been prepared contemporaneously with the actual trip.  As part of this series of fabricated trip leases, JHM and Woolever executed a trip lease for the load delivered immediately prior to the Accident which made it appear as if the trip lease had ended three hours before the Accident.

On September 4, 2002, Lincoln General's counsel inspected certain documents produced by Woolever for inspection at its offices.  It was at this inspection that Lincoln General learned for the first time that there were actually a series of trip leases prepared after the fact.  Lincoln General requested that these trip leases be copied and provided to it.  Woolever did not actually produce the requested copies of the trip leases until November 20, 2002, at the depositions of Joyce Wilking, Harold Sinclair and Jay McCormick.  In addition to the requested trip leases, Woolever also produced a number of Driver Data Sheets, which accompanied each of the trip leases, which were signed by Statts.  The Driver Data Sheets would be something required if there actually had been a trip lease, and Statts signed a number of these Driver Data Sheets to make it appear as if there had actually been trip leases.  At the deposition of Harold Sinclair,

16

a part-owner of Woolever, he acknowledged that he signed the series of fabricated trip leases the day after the Accident, and that Statts was also present that day signing documents. Accordingly, it is apparent that Statts knew he was signing backdated documents to make it appear as if there was a trip lease which ended prior to the Accident, when no such document existed at the time of the Accident.

Northland is claiming that Statts is an "innocent co-insured", and as such, Lincoln General is not entitled to void coverage as to Statts.  Lincoln General disagrees that Statts is an innocent co-insured, but even assuming arguendo that Statts is an "innocent coinsured", the Lincoln General Policy nonetheless precludes coverage for him if any insured commits fraud, or conceals or misrepresents a material fact.  The Pennsylvania Supreme Court's decision in <u>Erie Ins. Exch. v. Lake</u>, 671 A.2d 681 (Pa. 1996) does not change this conclusion.

> A.   Voiding Or Denying Coverage As To An Innocent
>      <u>Coinsured.</u>

With respect to denying coverage as to an "innocent coinsured," the law of Pennsylvania is as follows:

> Whether the intentional acts of a co-insured will defeat an "innocent" co-insured's ability to collect or be indemnified under a policy has, for the most part, turned upon the exclusionary language used in the policy.  Virtually all casualty and indemnity insurance policies issued exclude coverage for damages or liability for damages or injury which was intended by the insured or insureds.  However, not all policies contain language that unambiguously excludes coverage for all such damage or liability regardless of whether the insured seeking coverage is the same insured who intended the damage or injury.  The policies which contain such language have been enforced accordingly and <u>coverage has been excluded for the "innocent" co-insured despite the fact that that party did not intend the damage or injury that resulted.</u>

17

> Examples of exclusionary policy language producing
> this result include bodily injury which was expected or
> intended by "any insured" and "anyone we protect."
> Less clear is the usage of "an insured," although
> generally this phrase has been construed to equate to
> "any insured."

General Accident Ins. Co. of America v. Allen, 708 A.2d 828, 832

(Pa. Super. 1998) (emphasis added).

The Third Circuit addressed the issue of an innocent co-

insured in Spezialetti v. Pacific Employers Ins. Co., 759 F.2d

1139 (3rd Cir. 1985).  In that case, Mrs. Spezialetti "assert[ed]

that as an innocent spouse she [was] entitled to recover fire

insurance proceeds on jointly owned premises that were destroyed

by arson for which her husband was convicted."  Id. at 1140.  The

Pacific Employers insurance policy in question provided, in

relevant part, that, "[The] insurance shall not apply to loss or

damage . . . [resulting from] any dishonest act or omission by

any insured."  Id. (emphasis added; bracketed information in

original).  This Court (Judge Muir) rejected Mrs. Spezialetti's

claim that she was entitled to coverage as an innocent co-

insured:

> Rejecting Mrs. Spezialetti's argument that as an
> "innocent spouse" she was entitled to recover for her
> interest in the property, the court concluded, "The
> exclusion clause of the insurance policy relied upon by
> Pacific could not be any clearer."

Id.  On appeal, the Third Circuit upheld this Court's denial of

coverage to Mrs. Spezialetti.  It stated that:  "The district

court correctly focused on the language of the policy and found

that it denied coverage for a loss caused by a dishonest act of

'any insured.'  . . . "We have no difficulty in determining that in

18

this case 'any insured' means one covered by the policy issued on the bakery premises."  Id. at 1142 (emphasis added).

This Court followed Spezialetti in Ehrgood v. Coregis Ins. Co., 59 F. Supp.2d 438, 445 (M.D. Pa. 1998) (Judge Rambo).  One of the issues before this Court in Ehrgood was whether innocent co-insureds were entitled to coverage under a legal malpractice insurance policy which had a prior knowledge exclusion.  In rejecting the innocent co-insureds' arguments, this Court stated:

> Finally, the court finds unpersuasive the Ehrgood Plaintiffs' contention that the prior knowledge exclusion permits coverage for "innocent insureds."
> ... The prior knowledge exclusion precludes coverage if "any insured" knew or could have reasonably foreseen that a claim would be filed.  The court finds that the use of the phrase "any insured" coupled with the absence of the limiting language contained in exclusion A, clearly indicates an intent to preclude coverage if any insured has prior knowledge of a potential malpractice.

Id. at 445, citing Spezialetti v. Pacific Employers Ins. Co., 759 F.2d 1139, 1142 (3rd Cir. 1985).  See also Kundahl v. Erie Ins. Group, 703 A.2d 542, 544-45 (Pa. Super. 1997) (finding that an innocent coinsured was precluded from recovering under the policy by language that applied to "anyone we protect"); McAllister v. Millville Mut. Ins. Co., 640 A.2d 1283, 1288-89 (Pa. Super. 1994) (finding that an innocent coinsured was barred from recovering based on language that referred to "any insured."); Michael Carbone, Inc. v. General Accident Ins. Co., 937 F. Supp. 413, 422 (E.D. Pa. 1996) ("In short, the bulk of the courts which have addressed the issue have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds").

In <u>Traders & Gen. Ins. Co. v. Freeman</u>, 81 F. Supp.2d 1070 (D. Or. 2000), the Court addressed a case involving the same Insurance Services Office ("ISO") concealment, misrepresentation and fraud form, which is contained in the Lincoln General Policy. <u>Id.</u> at 1074. As in this case, the ISO form provided in relevant part that, "This coverage form is void in any case of fraud by you as it relates to this Coverage Form at any time. It is also void if you <u>or any other 'insured', at any time, intentionally conceal or misrepresent a material fact</u>." <u>Id.</u> (emphasis added). Citing (among other cases) the Third Circuit's decision in <u>Spezialetti</u>, 759 F.2d at 1141-42, the <u>Traders</u> Court stated that, "Courts considering the issue using a contract-based analysis have consistently held that the use of the term 'any insured' is clear and unambiguous and precludes an innocent coinsured from recovery." <u>Id.</u> at 1075. The Court then held that, "the policy as drafted denies recovery to Clow, even as an innocent coinsured." <u>Id.</u> at 1078. <u>See also</u> <u>Parasco v. Pacific Indem. Co.</u>, 920 F. Supp. 647, 653-55 (E.D. Pa. 1996)(insurer entitled to void coverage even as to innocent co-insured where material misrepresentations made during the claims process).

> B. The Pennsylvania Supreme Court's Decision In <u>Erie Ins. Exch. v. Lake Does Not Apply To The Present Case.</u>

Northland argues that the long line of cases in this Circuit rejecting coverage for an innocent co-insured where the policy provision applies to "any insured" have essentially been overruled by <u>Erie Ins. Exch. v. Lake</u>, 671 A.2d 681 (Pa. 1996). This contention is without merit.

20

Initially, <u>Lake</u> does <u>not</u> even address the innocent co-insured rule described above.  Rather, it interpreted Act 78,[4] which is not applicable to the facts of this case.  In its decision, the Court stated the following:

> Weighing all the factors, we are compelled to conclude that it is clearly the intent of the remedial legislation known as Act 78 to preclude rescission of an insurance policy, as to third parties, beyond the 60 day grace period within the Act itself.

<u>Id.</u> at 687.  The Court recognized that Act 78 was a limited abrogation of the common law right to rescind automobile insurance policies which fell within the provisions of Act 78. The Court made this point very clear when discussing its earlier decision in <u>Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner and Miller</u>, 580 A.2d 300 (1990).  The Court recognized that <u>Miller</u> was not an Act 78 case, and stated that:  "Thus, in the absence of specific language in the UIPA addressing termination of policies induced by fraud, the Court reasoned that the common law remedy of rescission would still be available to the insurer."  <u>Id.</u> at 685 (footnote omitted).

Neither Act 78, nor its re-codified successor, is at issue in this case and does not preclude enforcement of the explicit terms of the Lincoln General Policy.  Act 78 only applies to an insurance policy covering private passenger motor vehicles.  40 P.S. §§ 991.2001 & 2002(a).  Section 991.2002(a) provides that

---

[4] The <u>Lake</u> Court addressed 40 P.S. § 1008.4 of Act 78.  671 A.2d at 683-84.  Section 1008.4, along with the other provisions of Act 78, was repealed effective August 16, 1998.  The language of Section 1008.4 was then amended and re-codified at 40 P.S. § 991.2004.

the re-codified Act 78 only applies to a "policy."  Section
991.2001 defines the term "policy" as the following:

> "Policy of automobile insurance" or "policy."  A policy
> delivered or issued for delivery in this Commonwealth
> insuring a natural person as named insured or one or
> more related individuals resident of the same household
> and under which the insured vehicles therein designated
> are of the following types only:
>
> (i) a motor vehicle of the private passenger or station
> wagon type that is not used as a public or livery
> conveyance for passengers and is not rented to others;
> or
>
> (ii) any other four-wheel vehicle with a gross weight
> not exceeding nine thousand pounds which is not
> principally used in the occupation, profession or
> business of the insured other than farming.

40 P.S. § 991.2001 (underlining added).  The re-codified Act 78
is not applicable to this case because the Lincoln General Policy
is not a "policy" - as defined by the Act.  The Lincoln General
Policy was not issued to a natural person.  It was issued to JHM
Enterprises, Inc.  Further, the Lincoln General Policy did not
cover private passenger vehicles.  It covered tractor-trailers,
which were engaged in a commercial enterprise.  Further, even
assuming that the Lincoln General Policy could be deemed a
"policy" governed by Section 991.2004, which is denied, Act 78
and the Lake case would still not be controlling.  Under 40 P.S.
§ 991.2002(b), the re-codified Act specifically states that it
does not apply to "any policy insuring more than four
automobiles."  40 P.S. § 991.2002(b)(2).  The Lincoln General
Policy undisputedly covered in excess of four tractors and
trailer.

The Lake decision did not even deal with innocent co-
insureds.  Rather, it dealt with third parties who were the

22

innocent victims of a drunk driver.  Accordingly, there is no basis to suggest that the <u>Lake</u> case and/or the re-codified Act 78 limit Lincoln General's ability to void coverage for this claim. Rather, Lincoln General's ability to void coverage is controlled by the long line of cases in this Circuit upholding an insurer's right to decline coverage as to an innocent co-insured where the applicable policy provision applies to "any insured."[5]

III.  **NORTHLAND HAS NO RIGHT TO VOID ITS COVERAGE AS TO JHM, WOOLEVER AND STATTS.**

Northland claims in its Pre-Trial Memorandum that if Lincoln General may void coverage due to the fraud, concealment or misrepresentation of JHM and Woolever, then it is also entitled to void its policy.  There is no legal support for Northland's position.

First, Northland never sought to affirmatively void its coverage as to JHM, Woolever and Statts.  Northland denied Lincoln General's allegations that it was entitled to void coverage in this case.  <u>See</u> Northland's Answer to Cross-claim at

---

[5] At the Pre-Trial Conference held on December 18, 2002, Lincoln General suggested that it would simply file a motion for leave to amend its cross-claim against Statts and Pre-Trial Memorandum to assert that Statts was not an innocent co-insured.  However, after performing further research, it is so apparent to Lincoln General that it is not required to prove that Statts is not an innocent co-insured that it has decided not to waste this Court's time dealing with such a motion.  In addition to the above argument, it is also apparent that it would be Statts' burden to raise as an affirmative defense to Lincoln General's cross-claim against Statts that he was an innocent co-insured and Lincoln General is not entitled to void coverage as to him.  Although joined to this action and served with the cross-claim, neither Statts nor JHM filed any response.  Although Lincoln General never sought a default judgment against JHM and Statts since Woolever did appear and contested Lincoln General's claim that it could void coverage, Statts, nor any party, should be able to now

(cont'd footnote)

¶62.   The sole basis for Northland's contention that it somehow preserved the right to void coverage is an Affirmative Defense that it raised to Lincoln General's counterclaim.   In its Third Affirmative Defense, Northland claims that to the extent Lincoln General's allegations of fraud and/or material misrepresentation by Woolever and JHM are true, "then Lincoln General's claims against Northland are barred since Northland's policy provides no coverage in the case of fraud and/or material misrepresentation." At no point in this proceeding did Northland assert an affirmative cause of action against Woolever, JHM or Statts seeking to void coverage.   Neither Woolever, JHM nor Statts has been put on notice that Northland sought to void coverage such that they could even defend against such claim.   It would be inappropriate to grant Northland affirmative relief against Woolever, JHM and Statts where it never set forth an affirmative cause of action.   Lincoln General has found no case where the Court has granted affirmative relief against a third party in a situation similar to the present case where Northland never sought to void coverage, but just wanted to cover all possibilities in the event Lincoln General was able to void its coverage.

Second, Northland's claim makes no practical sense. Northland has never sought to void coverage.   Accordingly, if Lincoln General had not sought to void coverage, the issue would not even be before the Court.   If Lincoln General had not raised

---

(continued footnote)
raise as an affirmative defense that they are innocent co-insureds.

the issue, the only issue for the Court to resolve would have been how to apportion liability based on the "Other Insurance" clauses in each policy. As already discussed, Lincoln General believes at a minimum the Court should find that the insurers are co-excess and that based on the policy language, Northland is responsible for its pro rata share of the loss. Such a conclusion would clearly favor Lincoln General since Northland's pro rata share is 72.73%. However, according to Northland, Lincoln General could successfully void the coverage but end up losing the case because Northland would also be entitled to void its coverage and the insurers would allegedly have to share equally in the loss. Obviously, rather than allowing this to happen, Lincoln General would simply drop its claim for fraud and let the Court resolve the case based solely on its interpretation of the "Other Insurance" clauses in the two policies. Northland should not be entitled to get the benefit of Lincoln General's efforts to void the coverage where it failed to state an affirmative cause of action to void its coverage.

Most importantly, Northland does not have the right to void any coverage since none of the misrepresentations were material to its liability in this matter and Woolever and JHM never attempted to deceive Northland into providing coverage. To the contrary, Woolever and JHM tried to convince Northland that it had no coverage obligation to either of them. The misrepresentations benefited Northland and if the misrepresentations had been true, Northland would have had a better argument that Lincoln General was solely primary. The effect of the misrepresentations were to try and prevent Lincoln

25

General from arguing that the Tractor was under lease to a trucker at the time of the Accident. If Woolever and JHM had been able to effectively prove that the Tractor was not under lease at the time of the Accident, then the first paragraph of the "Other Insurance" clause making Northland primary and Lincoln General excess for a leased vehicle would not have been applicable. If this first paragraph had not been applicable, then Lincoln General's coverage would have been primary because the Tractor was owned by JHM. Such a determination would clearly have benefited Northland.

The Pennsylvania Supreme Court recently discussed the elements of insurance fraud in <u>Rohm and Haas Co. v. Continental Cas. Co.</u>, 781 A.2d 1172, 1179 (Pa. 2001), wherein it stated:

> In an insurance fraud case, the insurer must prove that the fraudulent misrepresentations were material to the risk assumed by the insurer.... Furthermore, "fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture." That is, there must be a deliberate intent to deceive. Finally, "the concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement."

<u>Id.</u> at 1179 (citations omitted).

In this case, the fabricated trip lease was material to the risk borne by Lincoln General in that it obviously increased the potential liability of Lincoln General. Moreover, JHM and Woolever intended to deceive Lincoln General into believing that the Tractor was no longer under lease to Woolever at the time of the Accident, which would increase Lincoln General's and decrease Northland's potential liability.

In contrast, the trip lease was not material to Northland because it did not increase, but rather decreased, its potential liability. Northland's position was not compromised in the least. Further, there was never an intent to deceive Northland into providing coverage or taking a coverage position advantageous to Woolever or JHM. Rather, the intent was for Northland to deny any responsibility for the Accident and leave Lincoln General as the only responsible insurer. As a result, the fraud committed upon Lincoln General does not justify Northland voiding its policy.

Lincoln General also submits that Northland had no basis for believing that the trip lease replaced the permanent lease. Northland was provided with the permanent lease the day of the Accident. Northland knew that the permanent lease could only be canceled by written notice. Northland also knew that there was no receipt provided by JHM accepting the return of the Tractor, which is an additional requirement to termination of the permanent lease. Northland had suspicions all along that the trip lease was created after the Accident, and did no further investigation to resolve its suspicions other than to ask Woolever whether the trip lease was in the truck at the time of the Accident. Obviously, if an insurer suspects the insured of lying, it is required to do more than simply going back to the insured and asking the same question. Northland prevented Lincoln General from doing any investigation into this issue because Northland withheld from Lincoln General its knowledge of the permanent lease. Northland's retained counsel in the underlying cases recognized the importance of the permanent

27

lease, and prepared a memorandum to his associate discussing whether to produce the permanent lease. Ultimately, Northland's retained counsel withheld the permanent lease despite its clear relevance to both the liability and coverage issue. Northland's strategy in the underlying case was to prove that the lease had expired prior to the Accident, and seek summary judgment on that basis. The other parties' knowledge of the permanent lease would have impaired this strategy, so Northland simply withheld the document. Even after Hazel Sinclair broke down and confessed to Northland's retained counsel what had occurred with the fabricated trip lease, Northland still withheld this information from the other parties. Northland's retained counsel allowed McCormick to be deposed and examined as to the fabricated trip lease, without disclosing that it knew his testimony was false and that the trip lease had been fabricated after the fact and there was a permanent lease in the Tractor at the time of the Accident. Northland's retained counsel did not disclose what had happened until Hazel Sinclair broke down in her deposition because of what had been done. Although Northland and its retained counsel might not have initially made the misrepresentations to Lincoln General, they clearly withheld information from Lincoln General which it could have used to discover the misrepresentations. Northland willingly participated in the deception because it served its interests. Northland has unclean hands in this entire matter of the permanent versus trip lease and has no basis for voiding its coverage.

Northland's reference to <u>Industrial Indem. Co. v. Truax</u>
<u>Truck Line, Inc.</u>, 45 F.3d 986 (5th Cir. 1995) has no relevance to
this case.  The <u>Industrial Indemnity</u> case held that one insurer
could not recover from another insurer for unjust enrichment when
the other insurer would only have been liable as a result of the
BMC-90 endorsement mandated by federal law.  45 F.3d at 991-92.
This holding has nothing to do with Lincoln General's claim
against Northland.  Lincoln General is arguing that if its
coverage is void, then Northland would be the only insurer
providing coverage under a policy of insurance and would be
primary for the first $2,000,000.  Since the underlying cases
settled for $1,350,000, Northland is responsible for the entire
settlement amount and must reimburse Lincoln General for all of
its payments.

IV.  <u>NORTHLAND PROVIDES PRIMARY COVERAGE FOR THE ACCIDENT</u>

If the Court voids Lincoln General's coverage, then
Northland necessarily must provide primary coverage.  If the
Court does not void Lincoln General's coverage, then it must
determine if Northland provides primary coverage based on the
"Other Insurance" clauses in the policies.

Lincoln General has already discussed the "Other Insurance"
clauses at length in the first part of this brief.  As previously
set forth, there can be no question that Lincoln General's
coverage is excess since the Tractor was clearly under lease to
Woolever at the time of the Accident.  As the facts eventually
came out, there was a permanent lease for the Tractor which was
never canceled in accordance with its terms, and no receipt was

29

ever given by JHM accepting the return of the Tractor.  See 49
C.F.R. §376.11(b)(2)("When possession of the equipment by the
authorized carrier ends, a receipt shall be given in accordance
with the terms of the lease agreement if the lease agreement
requires a receipt.")  See also 49 C.F.R. §376.12(b)("*Duration to
be specific*.  The lease shall specify the time and date or the
circumstances on which the lease begins and ends.  These times or
circumstances shall coincide with the times for the giving of
receipts required by §376.11(b).")  The permanent lease contained
a provision requiring a receipt by JHM, which was never
completed.[6]

The primary issue is whether the Tractor was being used
exclusively in Northland's business as a trucker and pursuant to
its operating authority at the time of the Accident.  If so, then
its insurance coverage is primary.  See Other Insurance clause at
paragraph a ("This Coverage Form's Liability Coverage is primary
for any covered "auto" while hired or borrowed by you and used

---

[6] Northland half-heartedly argues that somehow the permanent
lease was displaced by a series of oral trip leases and a
novation occurred.  Northland refers to a number of cases in its
Pre-Trial memorandum citing the elements of a novation, although
notably, none of the cases actually found a novation.  One of the
elements of a novation is that a new, valid contract is
substituted in the place of a prior contract.  Northland's claim
that there was a novation fails on this element alone since there
is no such thing as a valid oral lease for a tractor.  The
federal regulations are quite specific that any lease must be in
writing.  See 49 C.F.R. §376.11(a)("*Lease*.  There shall be a
written lease granting the use of the equipment and meeting the
requirements contained in §376.12.")(emphasis added).  See also
American Trucking Ass'ns, Inc. v. United States, 344 U.S. 298, 73
S. Ct. 307 (1953)(upholding ICC rule that leases must be in
writing).  Northland's argument that there was an oral novation
which replaced a perfectly valid permanent written lease with a
series of illegal oral trip leases is without merit.

30

exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority.").

At the time of the Accident, Statts was returning from delivering a load of salt for Woolever.  Statts intended to drive to Berwick, where he would have unhooked the trailer which had been used to deliver the load of salt, and hooked up to another trailer owned by Raisio, to pick up a load of potato starch for Raisio.  At the time of the Accident, there was a placard on the truck indicating that the truck was leased to Woolever Brothers. It is Lincoln General's position that all loads hauled while the lease was in effect were for Woolever and done pursuant to its operating authority since it had exclusive possession of the Tractor for the duration of the lease.  (The lease provides that: "During the term of this lease, the motor vehicle equipment described herein shall be in the exclusive possession, control and use of Lessee and Lessee assumes complete responsibility for operation thereof.")  Simply because Woolever allowed JHM to bill Raisio does not eliminate the possibility of this Court concluding that all loads hauled by the Tractor while it was under lease were in the business of Woolever.  Woolever and JHM undoubtedly realized that this was the effect of their actions, and this is the reason they fabricated all of the trip leases to make it appear as if there were two separate business interests being served.  However, under the express terms of the lease, there was only one business interest being served throughout the

duration of the lease, and that was Woolever's business interest.[7]

Lincoln General is <u>not</u> relying exclusively upon the terms of the lease in arguing that Northland has primary coverage. Lincoln General is well aware of the Third Circuit's view as to the effect the federal trucking regulations have on a dispute between insurance companies.  However, Lincoln General believes that Northland is overstating the law in this Circuit when it claims that the Court must completely disregard the lease language.  One of the principle cases to discuss the effect of the federal regulations on insurance coverage disputes is <u>Carolina Casualty Insurance Company v. Insurance Company of North America</u>, 595 F.2d 128 (3d Cir. 1979).  In that case, the driver of a tractor which was subject to a trip lease was involved in an

---

[7] JHM's and Woolever's handling of other vehicles leased by JHM to Woolever supports the conclusion that the Raisio business should be viewed as Woolever's business regardless of how it was billed.  William Danley was the primary driver who hauled the finished product from Raisio's facility.  The vehicle driven by Danley was subject to a permanent lease between JHM and Woolever. Months before the Accident, JHM requested that the truck driven by Danley be removed from Lincoln General's policy because it was going to be covered by Woolever's policy.  From that moment forward, every trip made by Danley was unquestionably done exclusively for Woolever because it is the only one who had insurance on the truck.  Many, if not most, of Danley's trips involved Raisio loads which were billed by JHM, despite that they were done exclusively in Woolever's business as a result of JHM dropping insurance on the truck.  Further, less than two months after the Accident, JHM and Woolever entered into new permanent leases for all of JHM's vehicles and JHM subsequently dropped its operating authority and insurance.  From that moment on, all loads hauled by JHM were unquestionably for Woolever.  Despite that JHM was hauling all of its loads for Woolever, it continued to bill Raisio directly for the loads hauled for Raisio. Accordingly, it is immaterial who billed Raisio for the loads hauled by JHM and Woolever since all of these loads were done while the vehicles were under lease to Woolever and it had exclusive possession, control and use of the vehicles.

32

accident.  In a subsequent coverage dispute, the District Court
held that the lessee's insurer was primarily responsible for
defending and indemnifying the defendants in the tort action.
The District Court based its decision solely on the federal
regulations and without regard to the language in the insurance
policies.  On appeal, the Third Circuit affirmed the conclusion
that the lessee's insurer was liable, but remanded for a
determination as to whether the lessor's insurer might not also
be liable as an excess insurer.  In the course of its decision,
the Third Circuit made the often referred to statement that:

> In sum, since it is not sufficient <u>to look solely</u>
> to the federal motor carrier requirements or to the
> lease and insurance provisions pursuant thereto for a
> determination of the respective duties of insurer and a
> partially self-insured lessee, it is necessary to
> examine the allocation of legal obligations which state
> law imposes, and to examine the insurance contracts <u>to</u>
> <u>see whether they effectively provide a different</u>
> <u>allocation of financial responsibility</u>.

<u>Id.</u> at 139 (emphasis added).  In making this statement, the Third
Circuit did not say a court must completely disregard the federal
regulations and lease in determining issues of financial
responsibility, but simply stated that the court should not rely
solely on the federal regulations and lease without first looking
to the insurance contracts to see if they provide a different
method to allocate financial responsibility than provided under
the federal regulations and the lease.

In the instant case, the insurance contracts are modeled on
the federal regulations and standard lease language and do not
provide a different method of allocating financial
responsibility.  The "Other Insurance" clauses were drafted
consistently with the requirement of the federal regulations that

33

during the duration of the lease, the lessee is to maintain exclusive possession, control and use of the vehicle.  The "Other Insurance" clauses were also drafted consistently with the requirement that the lessee is required to provide liability insurance for the duration of the lease.  See 49 C.F.R. §376.12(j)("The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FHWA regulations under 49 U.S.C. 13906.")  Accordingly, the "Other Insurance" clauses support the conclusion that Northland is to provide primary insurance coverage at all times when the vehicle is under lease.

There are numerous cases dealing with disputes between insurance carriers for lessees and lessors which support Lincoln General's position that Northland's coverage is primary based on the language of the insurance contracts.  In Maryland Cas. Co. v. City Delivery Service, Inc., 817 F. Supp. 525 (M.D. Pa. 1993) (Judge McClure), an accident occurred while a vehicle was under lease and this Court was confronted with determining the respective obligations of the lessee's and lessor's insurers.  In ultimately concluding that the lessee's insurer provided primary coverage and the lessor's insurer provided excess coverage, this Court initially stated that the tractor was being used exclusively in the lessee's business as a trucker for the following reasons:  "The truck displayed a placard bearing [lessee's] name, and was operating under [lessee's] lease pursuant to its ICC authorization, and was, under the terms of the lease, under the exclusive possession and control of [lessee]."  Id. at 528-29.  This Court then went on to conclude

34

based on an "Other Insurance" clause in the lessee insurer's policy identical to the "Other Insurance" clauses in the Northland and Lincoln General policies that: "Under the terms of American's [lessee's insurer] policy its coverage is primary because the accident occurred while the tractor was under lease to [lessee] and being used exclusively in [lessee's] business as a trucker." Id. at 529. The lessor's insurance policy contained the standard "Other Insurance" provision stating that the lessor insurance policy is excess if the tractor is leased to another trucker. Id. at 531. Since the vehicle was under lease at the time of the accident, this Court held that the lessor's insurance policy was excess. This Court also commented that:

> Although the cases must be decided on an individual basis, in similar cases the courts of this Circuit have held that a truckman's endorsement in the tractor lessor's liability policy renders that policy's coverage excess for injuries sustained while the tractor was under lease to another trucker. *See Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232 (3d Cir. 1976)(truckmen's endorsement in tractor owner's liability policy interpreted to render coverage afforded by the lessor's policy only excess coverage) and *Preston Trucking Company., Inc. v. Carolina Casualty Insurance Co.*, 712 F. Supp. 1208 (W.D. Pa. 1989)(truckman's endorsement in tractor owner's liability policy interpreted to provide, at most, excess coverage, for claims arising out of an accident which occurred while the tractor was leased to another trucker whose insurer was found to provide primary coverage).

Id. at 522. See also Occidental Fire and Cas. Co. of North Carolina v. Brocious, 772 F.2d 47, 52 (3rd Cir. 1985)("truckmen's endorsement does not relieve the insurer but limits the insurer's liability to excess coverage"); Walter v. Dunlap, 368 F.2d 118 (3d Cir. 1966)(lessee's insurer held primarily liable where other

insurance provision in lessor's policy provided that its policy was excess if the vehicle was leased to another trucker)

It is of no consequence that Statts had completed delivering the load of salt for Woolever and was unloaded at the time of the Accident for purposes of determining whether Northland provides primary insurance coverage. In <u>Connecticut Indemnity Company v. Stringfellow</u>, 956 F. Supp. 553 (M.D. Pa. 1997) (Judge Caldwell), the owner/driver of a truck had leased it to an authorized motor carrier. After delivering a load, the driver was headed home when he deviated from his return trip to get his truck washed. It was during this deviation that he was involved in an accident. The lessee and its insurer argued that they were not responsible because the driver was not acting within the scope of his duties under the lease when the accident occurred. Judge Caldwell summarily rejected this argument and held that under federal law the lessee and its insurer were liable. <u>Id.</u> at 556.[8] <u>See also Connecticut Indemnity Company v. Harris Transport Company</u>, 909 F. Supp. 1212 (W.D. Ark. 1995)(lessee's insurer solely liable for fatal accident that occurred after load delivered and driver returning home empty).

In reaching his conclusion that the lessee and its insurer were responsible, Judge Caldwell relied on the Third Circuit's decision in <u>Mellon National Bank & Trust Co. v. Sophie Lines, Inc.</u>, 289 F.2d 473 (3d Cir. 1961). In <u>Mellon</u>, an owner of truck

---

[8] Judge Caldwell also held the owner's/lessor's insurer responsible. However, Judge Caldwell did not rule on apportionment of coverage because neither party had made any arguments as to how the loss should be apportioned under their "Other Insurance" clauses. 956 F. Supp. at 559.

leased it to an authorized motor carrier.  After the driver had
finished delivering a load for the lessee, the owner/lessor
instructed the driver to haul a load for the owner.  While
hauling a load for the owner which had nothing to do with the
lessee's business, the driver was involved in an accident.  The
District Court held that as a matter of law the lessee was liable
for the operation of the truck at the time of the accident
because possession of the truck had not been returned to the
owner and its placards were still on the truck.  In affirming the
District Court, the Third Circuit stated:  "[Lessee] could have
effectually eliminated its responsibility for the truck's use in
only one way, i.e. (1) removing [its placards]; and, (2)
obtaining the receipt called for by 207.4(7)."  Id. at 476.  See
also Kreider Truck Service, Inc. v. Augustine, 394 N.E.2d 1179
(Ill. 1979)(lessee held liable even though lessor using truck in
his own business at time of accident because lease never properly
terminated after last load hauled for lessee); Cosmopolitan
Mutual Insurance Company v. White, 336 F. Supp. 92 (D. Del.
1972)(lessee's insurer required to provide coverage to driver of
leased vehicle who had delivered load for lessee and was headed
to pick up a load for another carrier because lease never
terminated).

Lincoln General will not burden the Court with a long list
of cases from other Circuits or states which deal with whether
the lessee's insurer is primarily liable since many of the other
Circuits and states have different or unique rules of law which
are not controlling in this Circuit.  Lincoln General submits
that the cases cited above which were decided within this Circuit

37

support its position that Northland's coverage is primary.
Northland is not relieved of its obligation to provide primary
coverage simply because JHM claims to have been using the Tractor
for its own purposes throughout the course of the lease.
Woolever assumed complete and exclusive control of the Tractor
when it entered into the lease, and this Court should not relieve
Northland of primary responsibility simply because Woolever and
JHM failed to abide by the terms of the lease and allegedly
allowed JHM to use the Tractor for its own purposes.  If this
Court were to allow Northland to avoid primary responsibility, it
would be approving of Woolever's and JHM's complete disregard of
the federal trucking laws in the manner in which they allegedly
used the Tractor.  This it should not do.

Respectfully submitted,

McNEES, WALLACE & NURICK LLC

By _____
    Jonathan H. Rudd, Esq.
    Charles T. Young, Jr., Esq.
    100 Pine Street
    P.O. Box 1166
    Harrisburg, PA 17108-1166
    Phone:  (717) 237-5405
    Fax:  (717) 237-5300

Attorneys for Lincoln General
Insurance Company

Dated:   January 16, 2003

## CERTIFICATE OF SERVICE

I, Jonathan H. Rudd, Esquire, hereby certify that on this 16th day of January, 2003, a true and correct copy of the foregoing document was served by first-class, United States mail, postage prepaid, upon the following:

Ira S. Lipsius, Esquire
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

Andrew R. Spiegel, Esquire
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127

_____
Jonathan H. Rudd