

(54)
1-17-03
5C

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY : 
            Plaintiff : 

        v. :   No. 1:01-CV-763

LINCOLN GENERAL INSURANCE COMPANY, : 
J.H.M. ENTERPRISES, INC., and : 
VERNICE L. STATTS, : 

          Defendants : 

        v. : 

WOOLEVER BROTHERS TRANSPORTATION : 
INC. : 
         Third Party Defendant :   (JUDGE KANE)

**FILED**
HARRISBURG, PA

JAN 1 6 2003

MARY E. D'ANDREA, CLERK
Per _____
      Deputy Clerk

## TRIAL BRIEF OF NORTHLAND INSURANCE COMPANY
## PURSUANT TO LOCAL RULE 39.7

Dated:     January 14, 2003

SCHINDEL, FARMAN & LIPSIUS LLP
Attorneys for Plaintiff Northland Insurance
Company
Ira S. Lipsius (IL5704)
225 West 34th Street
New York, New York 10122
(212) 563-1710
File No. 2015.67

Attorneys for Plaintiff Northland Insurance Co.

David Ira Rosenbaum (52859)
Klett Rooney Lieber & Schorling
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507 (Office)

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................... ii

I.    PROCEDURAL HISTORY ................................................ 1

II.   STATEMENT OF FACTS .............................................. 2

III.  LEGAL ISSUES ...................................................... 5

     A.    Choice of Law .............................................. 5

     B.    The Lincoln Policy Provides Primary
          Coverage and the Northland Policy, If the Tractor Was
          Leased by Woolever, Provides Excess Coverage ................... 7

          1.    The Policies ......................................... 7

          2.    The 1990 Woolever Lease Was Not
              in Effect at the Time of the Loss ........................ 9

          3.    Even If the 1990 Woolever Lease Was Still in Effect
              at the Time of the Accident, Lincoln's
              Policy Provides Primary Coverage ...................... 11

          4.    In the Event That Both Parties Are Deemed
              to Be Excess, the Loss Is to Be Split
              50%/50% Between the Two Insurers ..................... 14

     C.    Burden of Proof on Fraud .................................. 17

     D.    The Policy Cannot Be Voided Post Accident for Fraud ............ 19

     E.    Lincoln's Declination for Fraud Is Not Valid .................... 22

IV.   CONCLUSION ...................................................... 23

i

<u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>FEDERAL CASES</u>

*Accord, Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.,*
155 F.Supp. 2d 429 (E.D.Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Allstate Ins. Co. v. Liberty Mut. Ins. Co.,* 368 F.2d 121 (3rd Cir. 1976) . . . . . . . . . . . . . . . . . . 6

*Ania v. Allstate Ins. Co,* 161 F.Supp.2d 424 (E.D.Pa., 2001) . . . . . . . . . . . . . . . . . . . . . . . 21

*Batka v. Liberty Mutual Fire Insurance Company,*
704 F.2d 684 (3rd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Carolina Cas. Ins. Co. v. INA,* 595 F.2d 128 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Carrick v. Zurich-American Ins. Group,* 14 F.3d 907 (3rd Cir.1994) . . . . . . . . . . . . . . . . . . . . 5

*Central National Ins. Co. of Omaha v. Liberty Mut. Ins. Co.,*
1685 F. Supp. 123 (D.S.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Diamond State Ins. Co. v. Ranger Ins. Co.,* 47 F.Supp.2d 579 (E.D.Pa.1999) . . . . . . . . 7, 13, 14

*Draft Systems, Inc., v. Alspach,* 756 F.2d 293 (3d Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.,*
152 F.Supp.2d 687,(E.D.Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fireman's Fund Ins. Co. v. empire Fire & Marine Ins. Co.,*
155 F.Supp.2d 429 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Franklin Stainless Steel Corporation v. Marlo Transport Corporation,*
748 F.2d 865 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graham v. Malone Freightliner,* 948 F. Supp. 1124 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Occidental Fire and Cas. Co. v. Brocious,* 772 F.2d 47 (3d Cir.1985 ) . . . . . . . . . . . . . . . . . . 7

ii

PAGE

*Parasco v. Pacific Indemnity Co.* 920 F. Supp. 647 (E.D. PA 1996) . . . . . . . . . . . . . . . . . . . . . 19

*Radman v. Jones Motor Co.*, 914 F. Supp. 1193, (W.D. Pa. 1996),
aff'd, 100 F.3d 948 (3d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reliance Ins. Co. v. Federal Ins. Co.*, 2000 WL 1664008 (E.D.Pa. Nov. 3, 2000) . . . . . . . . . . 16

*Tartaglone v. Shaw's Express,* 790 F. Supp. 438 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . 11

*Titan Indemnity Company v. Cameron,* 2002 WL 242346 (E.D.Pa.) . . . . . . . . . . . . . . . . . . . . 22

*Zamalloa v. Hart*, 31 F.3d 911 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


## STATE CASES

*American Cas. Co. of Reading, PA. v. PHICO Ins. Co.,*
549 Pa. 682, 702 A.2d 1050 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Erie Ins. Exchange v. Lake*, 671 A.2d 681, 543 Pa. 363 (1996) . . . . . . . . . . . . . . . . . . . . . . . 20

*Forest City Grant Liberty Assocs. v. Genro II, Inc.,*
438 Pa.Super. 553, 652 A.2d 948 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fuller v. Riedel,* 159 Wis.2d 323, 464 N.W.2d 97 (Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . 10

*Griffin v. Public Service Mut. Ins. Co.,*
327 N.J. super, 501, 744 A.2d 204 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hoffmaster v. Harleysville Ins. Co.,*
441 Pa. Super. 490, 657 A.2d 1274 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Hot Shot Express, Inc. v. Assicurazioni Generali, S.P.A.,*
252 Ga. App. 372, 556 S.E. 2d 475 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Landmark American Ins. Co. v. Country Mut. Ins. Co.,*
275 Ill. App. 3d 1021, 657 N.E.2d 35 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

PAGE

*Lewis v. Fidelity & Casualty Co.,* 304 Pa. 503, 156 A. 73 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Malley v. American Indemnity Co.,* 297 Pa. 216, 146 A. 571 (1928) . . . . . . . . . . . . . . . . . 22, 23

*Martinez v. Jefferson Ins.,* 212 Wis. 2d 242, 568 N.W.2d 785 (1997) . . . . . . . . . . . . . . . . . 14

*Moore v. Nayer,* 321 N.J. Super. 419, 434 729 A.2d 449 (1999) . . . . . . . . . . . . . . . . . . . . . 14

*Myers v. Commercial Union Assurance Cos.,* 506 Pa. 492, 485 A.2d 1113 (1984) . . . . . . . . . . 5

*Nationwide Ins. Co. v. Horace Mann,* 759 A. 1d 9 (Pa. Super. 2000) . . . . . . . . . . . . . . . . . . . . . 14

*Northland Ins. Co. v. Bennett,* 533 N.W.2d 867 (Ma. App. 1995) . . . . . . . . . . . . . . . . . . . . . . 10

*Perkoski v. Wilson,* 371 Pa. 553, 92 A.2d 189 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*TJS Brokerage & Co., Inc. v. Hartford Cas. Ins. Co.,*
2001 WL 1808039 (Pa.Com.Pl, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Universal Am-Cam Ltd. v. WCAB,* 563 Pa. 480, 762 A.2d 328 (2000) . . . . . . . . . . . . . . . . . 11


STATUTES

49 C.F.R. §§ 376.11, 376.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


OTHER

*National Insurance Association V. Peach: an Analysis of Extended Issues to Be Raised by
Insurers, Insureds and Injured Third Parties,*
Northern Kentucky Law Review Spring 1997. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Omnibus Clause as Extending Automobile Liability Coverage to Third
Person Using Car with Consent of Permittee of Named Insured,*
21 A.L.R.4th 1146 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rescission or Avoidance, for Fraud or Misrepresentation, of Compulsory, Financial
Responsibility, or Assigned Risk Automobile Insurance,*
83 A.L.R.2d 1104 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY　　　　　:
　　　　　　　　　　Plaintiff　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　　　　　:　No. 1:01-CV-763
　　　　　　　　　　　　　　　　　　　　　　　:
LINCOLN GENERAL INSURANCE COMPANY,　:
J.H.M. ENTERPRISES, INC., and　　　　　　　　:
VERNICE L. STATTS,　　　　　　　　　　　　:
　　　　　　　　　　Defendants　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
WOOLEVER BROTHERS TRANSPORTATION　:
INC.　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Third Party Defendant　　　　:　(JUDGE KANE)


TRIAL BRIEF OF NORTHLAND INSURANCE COMPANY
PURSUANT TO LOCAL RULE 39.7

## I.　　PROCEDURAL HISTORY

This action was initially commenced on June 22, 2000 in the United States District Court

for the Eastern District of Pennsylvania against Lincoln General Insurance Company ("Lincoln"),

J.H.M. Enterprises, Inc., Vernice L. Statts, Robert E. Krapf and Ute L. Hetland Clark, as

Administrators of the Estate of Karin Clifford and Robert E. Krapf And Patricia R. Clifford, as

Administrators Of the Estate of Robert R. Clifford, Sherrill J. Mulligan, Denis A. Mulligan. By

stipulation all of the defendants, other than Defendant Lincoln, were dismissed.  (Exhibit A).

Lincoln moved to dismiss the action based upon improper venue (the underlying accident

occurred in Schuylkill County in 1995 which, at that time, formed part of the Eastern District of

Pennsylvania.  Since 1998, of course, Schuylkill has been part of the Middle District.  (Public L.

105-277, 112 Stat. 2681-116; 144 Cong. Rec. H. 7262)). Northland replied that if the matter was improperly venued in the Eastern District of Pennsylvania, the interests of justice would be best served if the Court transferred the case to the Middle District of Pennsylvania.

In the winter of 2001 the case was transferred to the Middle District of Pennsylvania.

On August 2, 2001 Lincoln interposed an answer and a counterclaim against Northland. Lincoln also filed a third party complaint against JHM and Woolever. Woolever asserted a counterclaim against Lincoln. This counterclaim was dismissed as of January 9, 2003 by order of this Court dated December 19, 2002.

## II.    **STATEMENT OF FACTS**

On November 17, 1995 a 1979 Freightliner truck tractor, Serial Number CA213HM160222 (the "Tractor") driven by  Vernice L. Statts ("Statts") was involved in an accident which resulted in the death of Robert and Karin Clifford and resulted in injury to Sherill Mulligan.

Lawsuits were commenced against J.H.M. Woolever and Statts.

Lincoln insured J.H.M. Enterprises Inc.,  under a policy of insurance which specifically scheduled the Tractor.

Northland insured Woolever under a policy which provided coverage for vehicles hired by Woolever.[1]

---

[1]    The Northland policy as delivered to Woolever did not provide coverage for hired vehicle.  An endorsement provides coverage for hired vehicles which was issued subsequent to the accident.  This endorsement was not in effect at the time of the accident.  No party raised the issue of reformation in this action, however Northland, after review of the underwriting file, agreed to Stipulate that the Northland policy provides coverage for vehicles hired by Woolever.

At the time of the loss both Woolever and JHM were motor carriers licensed by the Interstate Commerce Commission. Woolever operated order ICC license number M.C. 185364 and J.H.M. operated under I.C.C. license M.C. 236954. The Northland policy did not schedule the Tractor and therefore only provided coverage under its policy for the tractor if the tractor was leased to Woolever at the time of the loss.

It is Northland's contention that at the time of the accident the vehicle was not leased to Woolever and the vehicle was operating exclusively in the business of JHM. Lincoln disagrees with Northland on this issue.

Numerous depositions have been conducted both in the personal injury actions and in this action. Northland contends that at the time of the accident the vehicle was unrefutably operating in the business of JHM. By and large the facts are not in issue. The issue is the characterization of the facts.

If the vehicle was leased to Woolever at the time of the accident then an issues arises as to whose authority was being used at the time of the accident and in whose business the tractor was operating. This determination effects upon the primacy of coverage.

On November 17, 1995 a JHM employee, Vernice Statts, ( "Statts") dropped off a load at approximately 8 A.M. in Ephrata, Pennsylvania. This load was delivered to Ephrata on behalf of Woolever. The prior evening, Statts was dispatched by JHM to pick up a load on behalf of JHM at the completion of the delivery on behalf of Woolever. Lincoln does not contest that Statts was dispatched to pick up the load, it however attempts to characterize the load as one carried by Woolever, or jointly by Woolever and JHM. En route to pick up the load dispatched by JHM., Statts was involved in the accident. The Tractor and Trailer were owned by Jay

3

McCormick/JHM.  Northland contends that the Tractor was under the direction and control of Jay McCormick/JHM.

In 1990, Woolever leased the tractor from JHM pursuant to a written 30 day lease which was  automatically extended for additional thirty day periods, unless cancelled by either JHM or Woolever.

In 1990, when this lease was executed, Woolever was a licensed I.C.C. carrier, JHM was not.  In 1992 J.H.M. obtained authority from the I.C.C. and concurrently obtained insurance from Lincoln.

Beginning in 1992 Woolever ceased to use the tractor on a regular basis and the tractor was used in the business of JHM.  Neither party formally cancelled the lease.

From 1992 to 1995 the Tractor was used primarily in the business of JHM. It was, however,  occasionally leased to Woolever on a per trip basis.  During this period other tractors owned by JHM were leased to Woolever and, on at least one occasion, JHM removed a permanently leased vehicle from the policy issued by Lincoln.  The Tractor involved in the accident remained insured by Lincoln.

In the six months prior to the accident the Tractor was used in the business of Woolever approximately 11 days.

After the accident JHM and Woolever executed a series of trip leases to reflect what they believed was the actual arrangement.  These post accident leases will likely be the focus of Lincoln's defense and counterclaim.  Lincoln claims that Northland knew, or should have known that the leases were executed post accident.  Northland denies such knowledge.  The "issue" of

4

when Northland became aware of the date of execution of these leases is irrelevant to the issues before this Court.

Lincoln contends that the execution and furnishing of these leases was fraudulent and therefore voids the Lincoln policy.

It is axiomatic that if the Lincoln policy is voided, the Northland policy is voided as well.

Lincoln, although aware from as early as 1997 that the leases were executed post accident, never denied coverage or reserved its right.  It first raised the issue of fraud in August 2001.

## III.    **LEGAL ISSUES**

A.    Choice of Law:

The instant action is a diversity action and choice of law is determined Pennsylvania's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under Pennsylvania law, the applicable law is that of the place with the most significant relationship to the parties and the transaction. *Myers v. Commercial Union Assurance Cos.*, 506 Pa. 492, 496, 485 A.2d 1113, 1116 (1984); *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). *Carrick v. Zurich-American Ins. Group*, 14 F.3d 907 (3rd Cir.1994). Under this analysis, Pennsylvania law controls.

This lawsuit involves an issue of policy coverage for an accident which occurred in Pennsylvania. Both policies of insurance insured companies based in Pennsylvania and were

5

delivered in Pennsylvania. Pennsylvania is the forum state. Therefore all issues of insurance coverage are governed by Pennsylvania law.

Both Woolever and JHM are located in Pennsylvania. The accident occurred in Pennsylvania, the vehicle was registered in Pennsylvania and the leases were executed in Pennsylvania. Therefore all issues between JHM and Woolever, as well as the leases are governed by Pennsylvania law.

Lincoln has suggested that as the result of the attachment of the M.C.S.-90, a federally mandated endorsement to the policies of insurance, primacy of coverage and the application of the leases is controlled by federal law. This suggestion is misplaced. The vast majority of federal circuits courts, including the Third Circuit Court of Appeals, have held that "as between insurance carriers, I.C.C. considerations are not determinative and a court should consider the express terms of the parties [insurers] contracts" and apply the law of the state. *Carolina Cas. Ins. Co. v. INA*, 595 F.2d 128, 138 (3d Cir. 1979) (quoting *Allstate Ins. Co. v. Liberty Mut. Ins. Co.*, 368 F.2d 121 (3rd Cir. 1976)). The Third Circuit in that same decision also stated that issues of lease applicability and apportionment of responsibility between a lessee and a lessor are governed by state law. The court stated:

> In sum, since it is not sufficient to look solely to the federal motor carrier requirements or to the lease and insurance provisions pursuant thereto for a determination of the respective duties of insurer and a partially self-insured lessee, it is necessary to examine the allocation of legal obligations which state law imposes, and to examine the insurance contracts to see whether they effectively provide a different allocation of Financial responsibility.

595 F.2d at 139.

6

In *Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.*, 152 F.Supp.2d

687,(E.D.Pa. 2001) the court applied state law to the determination of coverage holding the

federally mandated ICC endorsement and the display of federally mandated placards on a vehicle

do not affect disputes between insurance carriers. *Also see, Radman v. Jones Motor Co.*, 914 F.

Supp. 1193, (W.D. Pa. 1996), aff'd, 100 F.3d 948 (3d Cir.), *Diamond State Ins. Co. v. Ranger*

*Ins. Co.*, 47 F.Supp.2d 579, 583 (E.D.Pa.1999); *Occidental Fire and Cas. Co. v. Brocious*, 772

F.2d 47 (3d Cir.1985).

> **B.** The Lincoln Policy Provides Primary
> Coverage and the Northland Policy, If the Tractor Was
> Leased by Woolever, Provides Excess Coverage.

1. The Policies

Both Lincoln and Northland use the ISO truckers form.  Lincoln's policy was issued to

JHM; it provides $750,000 of liability coverage for JHM and for several categories of omnibus

insureds.  The Freightliner was scheduled as a covered auto.

Northland issued its policy to Woolever Brothers with limits of $2 million.  Coverage is

provided for commercial vehicles owned by Woolever as well as for vehicles hired or borrowed

by Woolever.

The two policies contain the identical "other insurance" clause.

> V.(b)5.     Other Insurance - Primary And Excess Insurance Provisions
>
> > a.     This Coverage Form's Liability Coverage is primary for any
> > covered "auto" while hired or borrowed by you and used
> > exclusively in your business as a "trucker" and pursuant to
> > operating rights granted to you by a public authority.  This
> > Coverage Form's Liability Coverage is excess over any other

7

collectible insurance for any covered "auto" while hired or
borrowed from you by another "trucker."  However, while a
covered "auto" which is a "trailer" is connected to a power unit,
this Coverage Form's Liability Coverage is:

    (1)    On the same basis, primary or excess, as for the power unit
                if the power unit
                is a covered "auto".

    (2)    Excess if the power unit is not a covered "auto".

b.    Any Trailer Interchange Coverage provided by this Coverage Form
is primary for any covered "auto".

c.    Except as provided in Paragraphs a. and b. above, this Coverage
Form provides primary insurance for any covered "auto" you own
and excess insurance for any covered "auto" you don't own.

There has never been any doubt about the applicability of the Lincoln policy in this case.

The vehicle was scheduled on the Lincoln policy.  The matter was less clear with respect to the

Northland policy. The rig was not owned by Woolever. at the time of the accident the rig was

enroute to pick up a load for JHM. Northland only has coverage if Woolever leased the rig..

Nonetheless, in order to protect its insured from a potential excess exposure, Northland

participated in the settlement of plaintiff's claims.  Having paid half of the settlement, Northland

believes that Lincoln, as the primary insurer, must pay Northland $75,000, the balance of

Lincoln's limits.  For the reasons set out below, the rig at the time of the accident was no longer

under long term lease, or any lease,  to Woolever.  Moreover, even if the lease was in effect at the

time of the accident, case law makes clear that the key factor for determining which insurer pays

first is which motor carrier's authority was being used at the time of the accident.  Since JHM's

authority was being used at the time of the accident Lincoln's coverage is primary, while

8

Northland's is excess. Alternatively, even if both policies provide primary coverage, the loss is

subject to the rule of equal shares, as discussed below.

>    2.    The 1990 Woolever Lease Was Not
>           in Effect at the Time of the Loss

It will be shown at trial that JHM leased its 1979 Freightliner to Woolever in 1990, at a

time when JHM was not authorized to haul goods in interstate commerce. Accordingly, in 1990,

the only way McCormick could utilize the company's trucks was by leasing them to authorized

carriers such as Woolever. By 1995 JHM had its own authority and no longer needed the

authority of Woolever in order to operate.

It can hardly be gainsaid that Woolever and JHM are not the most sophisticated of motor

carriers. The relationship between the companies was not precisely delineated. As Hazel

Sinclair herself realized after the accident, the 1990 lease should not have been in the vehicle in

1995, it was no longer the operating document.

Once JHM acquired its own authority in 1992, it no longer need to lease its vehicles to

others in order to operate them in interstate commerce. McCormick testified that the focus of his

business was different than that of Woolever's which specialized in what he called "dry freight,"

traditional shipments loaded onto flatbed tractor, and bulk items such as salt. The 1990 lease

agreement specifically refers to salt and calcium chloride as the cargo to be hauled. JHM, on the

other hand, specialized in hauling pneumatic tanks, tanker trailers loaded with liquid freight.

Dale Clemons, the production manager at Raisio, Inc., testified over and over - in response to

questioning by the various attorneys who took his deposition - that he hired JHM, not Woolever,

to haul loads of "slurry" from the potato chip factories to Raisio plant.

9

The acquisition of carrier authority by JHM in 1992 marked a fundamental change in the business relationship between Woolever and JHM. McCormick, like any rational businessman, was happy to lease his vehicle to Woolever when Woolever needed additional vehicles and whenever the vehicle was not being used for JHM's own customers. Accordingly, McCormick affixed two different placards on the vehicle. While it was being used in JHM's business (as it was ninety-percent of the time) the Woolever placard was supposed to be covered. Conversely, while the rig was being used in Woolever's business, the JHM placard was supposed to be covered. Both McCormick and Statts, testified that the only reason the Woolever placard was showing at the time of the loss was that Statts' supply of tape had run out. Neither he nor McCormick had found time to purchase new tape. Had the loss occurred while Statts was pulling the Woolever load, JHM would rightly claim that its placard was meant to be covered up. The absence of tape does not change the nature of the relationship between JHM and Woolever. Although the parties erred by leaving a copy of the 1990 lease in the cab of the tractor, there is no doubt that the relationship changed after JHM secured operating rights in 1992.

In short, the operative lease was the trip lease. As noted, *infra,* even though the trip lease form was actually completed following the delivery of the load, the writing accurately describes the relationship of the parties at the time of the loss. Moreover, even absent any writing at all, the law would construct a lease to reflect that relationship. *See* 49 C.F.R. §§ 376.11, 376.12; *Zamalloa v. Hart,* 31 F.3d 911, 913 (9th Cir. 1994); *Northland Ins. Co. v. Bennett,* 533 N.W.2d 867, 872 (Minn. Ct. App. 1995 ); *Fuller v. Riedel,* 159 Wis.2d 323, 464 N.W.2d 97, 101 (Ct. App. 1990). The trip lease ended when the Woolever load was delivered, even though the Woolever placard was visible. *Graham v. Malone Freightliner,* 948 F. Supp. 1124 (D. Mass.

10

1996); *Tartaglone v. Shaw's Express,* 790 F. Supp. 438 (S.D.N.Y. 1992); *Universal Am-Cam Ltd. v. WCAB,* 563 Pa. 480, 762 A.2d 328 (2000).

The tractor and trailer were owned by JHM and were no longer under lease to Woolever at the time of the accident. Therefore, coverage is not provided by the Northland policy and Lincoln must reimburse Northland up to the limits of the Lincoln policy, $75,000.

3.    Even If the 1990 Woolever Lease Was Still in Effect at the Time of the Accident, Lincoln's Policy Provides Primary Coverage.

Even if the original lease between Woolever and JHM remained in effect on the date of the loss, the coverage provided by Northland would be excess. Section V9(B)(5)(a) of the truckers form begins as follows:

> This Coverage Form's Liability Coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your [Woolever's] business as a trucker and pursuant to operating rights granted to you by a public authority.

Subsection (a) of the Northland policy does not apply here because the vehicle was not being used under Woolever's operating authority. Raisio's manager was deposed in the underlying action and, by agreement, the transcript of testimony will be entered into evidence in lieu of live testimony. He testified that he had hired JHM to haul the goods. JHM held itself out as the carrier. As such JHM, and not Woolever, was the carrier. *See, e.g., Franklin Stainless Steel Corporation v. Marlo Transport Corporation,* 748 F.2d 865, 868 (4th Cir. 1984).[2] A driver en route to pick up a load is in the business of the motor carrier that dispatched that driver.

---

[2]      In its pre-trial statement, Lincoln incorrectly intimates that the trailer attached to the JHM trailer was owned by Woolever, perhaps implying that the driver was still, somehow, furthering Woolever's business. Whatever the value of this theory, it is grounded in a false premise. At trial it will be shown that the trailer was owned by JHM.

*Central National Ins. Co. of Omaha v. Liberty Mut. Ins. Co.,* 1685 F. Supp. 123 (D.S.C. 1988);

*Hot Shot Express, Inc. v. Assicurazioni Generali, S.P.A.,* 252 Ga. App. 372, 556 S.E. 2d 475

(2001).

Since V(B)(5)(a) does not apply, and subsection (b) is irrelevant, subsection (c)controls.

That subsection provides that the Northland policy is excess with respect to vehicles not owned

by Woolever, the Northland named insured. The parallel subsection in the Lincoln policy

provides that with respect to vehicles owned by Lincoln's insured JHM, Lincoln's General's

policy is primary.

The same conclusion is reached under a different analysis. If the 1990 lease was still in

effect Woolever, under the terms of that lease, had exclusive control and use of the vehicle. In

addition, under the heading "Subleasing", the lease provides that for the purpose of the lease,

Woolever was to be considered the owner of the equipment for the subleasing the vehicle to

another authorized carrier, here, JHM. At the time of the loss, the vehicle was being used in

JHM's business. That would only be possible if JHM had leased the vehicle back from

Woolever. If that correctly describes the relationship at the time of the loss, then subsection (a)

of the respective "other insurance" provisions leads to the same conclusion: Lincoln's policy is

primary, while the Northland policy provides excess coverage. As set out, *supra,* if the named

insured hires the vehicle for use in its business, the insurer is primary. Thus, the Lincoln policy

is primary since its named insured JHM leased the vehicle back from Woolever and used it under

JHM's authority. Conversely, Northland's named insured leased the vehicle back to JHM and is

excess under subsection V(B)(5)(a), which provides:

12

> This coverage is excess over . . . for any covered "auto" which
> hired or borrowed from you [Woolever] by another "Trucker."

In short, regardless of whether the Court concludes that subsection (c) applies, or whether, based on the theory of a lease-back, subsection (a) applies, the Lincoln policy provides primary coverage while Northland's coverage is excess.

Judge Robreno, of the Eastern District, confronted a similar scenario in *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579 (1999). Diamond State insured Schuck Trucking, a regulated carrier which had leased a tractor-trailer rig from an owner/operator. The lease contained a clause similar to the one in the 1990 Woolever/JHM lease; in the event the rig was subleased, Schuck would be considered the owner. On the day prior to the accident the vehicle was subleased to Aetna Freight Lines. The loss occurred while the driver was hauling a load for Aetna. Aetna was insured by Ranger.

Ranger and Diamond State both utilized the standard truckers policies, the same policy issued by Northland and Lincoln in our case. The court in <u>Diamond State</u> analyzed the "other insurance" clause which is identical to the one at issue in this case, and concluded:

> The clear and unambiguous terms of the policy reveal that because
> Aetna hired a truck in accordance with the Trip Lease, and because
> that truck was used exclusively in Aetna's business as a trucker,
> Ranger's policy becomes primary.
>
> Applying those same provisions of §V(B)(5)(a) to Diamond,
> coverage provided by Diamond is excess because the truck was
> hired from Schuck by Aetna pursuant to the Trip Lease.
> Diamond's coverage is not primary because Schuck did not hire a
> truck that was used exclusively in Schuck's business as a trucker.
> Thus, Diamond's coverage is excess over Ranger's coverage
> because the truck was hired from Schuck by Aetna pursuant to the
> Trip Lease.

13

47 F. Supp.2d. at 591.

Here, too, since the rig was being used in JHM's business at the time of the loss, the

Northland policy provides only excess coverage. Lincoln's policy is primary either under

subsection (a) as in *Diamond v. Ranger, supra,* or under subsection (c)since JHM owned the rig.

Other cases that support this reading of the two policies include *Landmark American Ins. Co. v.*

*Country Mut. Ins. Co.,* 275 Ill. App. 3d 1021, 657 N.E.2d 35 (1995); *Moore v. Nayer,* 321 N.J.

Super. 419, 434 729 A.2d 449, 457 (1999); *Griffin v. Public Service Mut. Ins. Co.,* 327 N.J.

super, 501, 744 A.2d 204, 208-209 (2000); *Martinez v. Jefferson Ins.,* 212 Wis. 2d 242, 568

N.W.2d 785 (1997) (Table) (decision may be found at 1997 WL 291724). The bottom line is

that the Lincoln provides primary coverage and Northland excess coverage, even if the 1990

permanent lease is found to have remained in effect.

    4.     In the Event That Both Parties Are Deemed
            to Be Excess, the Loss Is to Be Split
            <u>50%/50% Between the Two Insurers</u>

Lincoln has argued that the two insurers are co-excess insurers and, accordingly, that the

two policies should be pro-rated. Since the Northland limits are higher than the Lincoln limits,

pro-rata apportionment would require Northland to pay 73% of the claim, rather than the 50% it

has paid to date. As noted, *supra,* the Lincoln policy is primary. However, even if the two

policies are deemed excess, Lincoln is wrong in suggesting that a pro-ration would result.

It is well established that when two policies "purport to be excess over [one] another,

such clauses are mutually repugnant; both must be disregarded and the insurers must share in the

loss." *Nationwide Ins. Co. v. Horace Mann,* 759 A. 1d 9, 11-12 (Pa. Super. 2000). *See, also,*

*Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.,* 155 F.Supp.2d 429, 434 (E.D. Pa.

2001). The sharing, though, is not accomplished through pro-ration, as is done in many other jurisdictions. Instead, under Pennsylvania, law, the loss is allocated between the insurers in the manner known as the "Equal Sharer" approval. *American Cas. Co. of Reading, PA. v. PHICO Ins. Co.,* 549 Pa. 682, 702 A.2d 1050 (1997). Under this method, the loss is shared by the two insurers on a 50/50 basis until the limits of the policies with the lower limits is reached. The remainder of the claim is paid by the insurer with the higher limits.

In *American Cas. v. PHICO,* supra, the court faced a dispute between two excess liability insurers as to how to interpret the respective "other insurance" clauses. American Casualty had policy limits of $1 million; PHICO's limits were $10 Million. The court concluded that where the respective "other insurance" clauses are irreconcilable and mutually exclusive, the terms of the policies are excluded from further consideration. The Supreme Court, in *American Cas.* fashioned a rule to the resolve precisely this type of dispute. In so doing, the court adopted "equal shares" method. This method applies when the limits of the policies at issue differ from one another.

The equal shares method eschews a pure proportional split which is applied in other states. Under the equal shares approval, the court first located the point at which the smaller of the two policies reaches its limit. In our case, that would be $750,000, the extent of the Lincoln limit. The court also marks that point in the other policy or policies. The insurers are assigned equal shares up to the combined coverage that is included up to the cut-off-point. Thus, in our case, Lincoln and Northland have equal shares for a total of $1.5 million. Any settlement up to $1.5 million, must be paid in equal shares. Obviously, only Northland is exposed beyond that point up to the exhaustion of its own limits. *See, also, Hoffmaster v. Harleysville Ins. Co.,* 441

15

Pa. Super. 490, 657 A.2d 1274 (1995) (setting out the reasoning later adopted by the Supreme Court in *American Cas.*)

In *Reliance Ins. Co. v. Federal Ins. Co.,* 2000 WL 1664008 (E.D.Pa. Nov. 3, 2000), Judge Kelly citing *Hoffmaster*, held that it was inappropriate for the court to delve into "semantic microscopy" with respect to conflicting other insurance clauses. The proper approach under Pennsylvania law is to have the two insurers pay in equal shares when they are found to be on the same level. Here, even if the two insurers are co-primary, the equal shares method applies and the expenditures must be shared on a 50%-50% basis. *Accord, Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.,* 155 F.Supp. 2d 429 (E.D.Pa. 2001).

The rule enunciated in *American Cas.* neutralizes the contents of subsection (V)(B)(5)(f) of the Lincoln policy which suggests that pro-ration should be applied in the event that the Lincoln policy covers on the same basis as any other policy. Under the equal shares method adopted by the Supreme Court of Pennsylvania, this language is cancelled out : Lincoln and Northland are each responsible for 50% of the settlement and costs. *See, Hoffmaster,* 657 A.2d at 1275 where both policies provided " [o]ur share is the proportion that our limit of liability bears to the total of all applicable limits" yet the court rejected pro-ration and applied the equal shares formula.

Accordingly, if the Court were to conclude that both the Lincoln and Northland policy provide excess coverage, Lincoln and Northland would each be responsible for 50% of the total of settlement payments and defense costs since the total of the settlement and costs were less than $1.5 million (the $750,000 limits of the Lincoln policy, plus the first $750,000 of the

Northland policy).  Accordingly, even if the two policies were excess in nature, Lincoln would

not be permitted to recover from Northland.

Northland anticipates that Lincoln will argue that the two insurers are co-excess insurers

and, accordingly, that the two policies should be pro-rated.  Since the Northland limits are higher

than the Lincoln limits, pro-ration would require Northland to pay 73% of the claim, rather than

the 50% it has paid to date.  As noted,, the Lincoln policy is primary.  However, even if the two

policies are deemed excess, Lincoln is wrong in suggesting that a pro-ration would result. The

pro-ration method has been rejected by courts applying Pennsylvania law. *American Cas. Co. of*

*Reading, PA. v. PHICO, Hoffmaster, Reliance Ins. Co. v. Federal Ins. Co., Fireman's Fund Ins.*

*Co. v. Empire Fire & Marine Ins. Co.*

C.    Burden of Proof on Fraud

Lincoln has alleged that false representations were made by its insured JHM and therefore

the policy is void.  The burden of proof rests upon Lincoln not only to prove the fraud but to

establish the defense of fraud by "clear, precise and indubitable evidence," and not mere

preponderance of the evidence.  *Batka v. Liberty Mutual Fire Insurance Company*, 704 F.2d 684,

687 (3rd Cir. 1983).

Lincoln's proposed findings of fact reveal that it cannot meet that burden. Nowhere in the

proposed findings does Lincoln assert a specific false representation made to Lincoln by JHM.

Nowhere does it assert that a false representation was ever  made to Lincoln by Statts or

Woolever.  The closest that Lincoln comes to a claim of a false representation is in paragraph 42

where it asserts that "McCormick represented to Lincoln that the trip lease was the document in

17

effect immediately prior to the accident." In fact, this representation will be proven to be true at trial.

Further, in paragraph 64, Lincoln asserts that McCormick (the principal of JHM) never disclosed to defense counsel chosen by Lincoln the existence of the 1990 lease. Leaving aside whether this failure rises to the point of fraud and whether JHM had any obligation to reveal the existence of a lease it had considered cancelled, this defense counsel represented JHM and Statts. Counsel did not, and could not represent Lincoln and therefore the communication by JHM to its own counsel could not be considered a fraudulent statement to its insurer Lincoln. *See* Rules of Professional Conduct: Rule 1.7. Conflict of Interest: General Rule.

(a)   A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

    (1)   the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

    (2)   each client consents after consultation.

(b)   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1)   the lawyer reasonably believes the representation will not be adversely affected; and

    (2)   the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

As counsel was appointed to represent JHM and Statts, what was learnt from that representation, could not be considered a false communication made by McCormick to Lincoln.

18

Further, Lincoln could not prove fraud since the leases in fact legitimately memorialized the agreements between the parties.

D.    The Policy Cannot Be Voided Post Accident for Fraud

Lincoln assert that it is entitled to void the policy ab Initio as the result of the alleged false and fraudulent statements of JHM which were allegedly made during the processing of the claim. Lincoln in its pretrial memorandum cites one decision in support of that proposition, *Parasco v. Pacific Indemnity Co.* 920 F. Supp. 647 (E.D. PA 1996).

The Parasco decision is clearly distinguishable, it concerns first party coverages, where an insured has filed a claim to collect money for itself from the insurer. In the instant matter we are concerned with a third party claim, the claim of someone alleging injury as the result of the insured's negligence.

In *Parasco* the court dealt with a false statement of the insured beneficiary. Here we are dealing with the false statement of the named insured effecting the omnibus insured[3] and third parties. The declination of a third party claim would result not only in coverage being forfeited by the insured which allegedly lied, but by third parties such as the driver Statts, and Woolever who was/is potentially liable for the acts of Statts.

---

[3] "Automobile liability insurance policies usually include a provision, commonly called the 'omnibus clause,' extending the protection of the policy to any person using the insured vehicle, or responsible for the use thereof, provided such use is with the consent or permission of the named Insured." *Omnibus Clause as Extending Automobile Liability Coverage to Third Person Using Car with Consent of Permittee of Named Insured*, 21 A.L.R.4th 1146 (1983), Footnote 3.

In *TJS Brokerage & Co., Inc. v. Hartford Cas. Ins. Co.*, 2001 WL 1808039 (Pa.Com.Pl,

2001) the court noted there are no Pennsylvania state decisions defining materiality where a false

statement is made to the insurer in the course of a claims investigation.  There are no

Pennsylvania decisions which address false statements made to an insurer during the claims

investigation of a third part claim.

The Pennsylvania Supreme Court has noted that with regard to third party automobile

claims coverage cannot be voided with regard to innocent third parties for false items contained

in the application.  *Erie Ins. Exchange v. Lake*, 671 A.2d 681, 543 Pa. 363 (1996). In *Erie* the

insurer would not have been issued if the insured had honestly completed the application, yet the

court refused to void coverage to the innocent third parties.  Here the insurer clearly covered the

loss, therefore innocent third parties, such as Statts should not loose the benefit of coverage.

The prohibition on voiding coverage post accident is followed in most jurisdictions.  *See*

Northern Kentucky Law Review Spring 1997, Note *National Insurance Association V. Peach: an*

*Analysis of Extended Issues to Be Raised by Insurers, Insureds and Injured Third Parties,*

("courts have almost unanimously held that 'an insurer cannot, on the ground of fraud or

misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a

compulsory or financial responsibility insurance law so as to escape liability to a third party'");

*Rescission or Avoidance, for Fraud or Misrepresentation, of Compulsory, Financial*

*Responsibility, or Assigned Risk Automobile Insurance*, 83 A.L.R.2d 1104 (1962), ("It has been

universally held or recognized that an insurer issuing an automobile liability policy pursuant to

any of the various statutory plans designed to protect the public against the inability to collect

damages in tort from financially irresponsible owners or operators of motor vehicles cannot

20

escape liability to a third party injured through the culpable operation of the vehicle insured, during and within the coverage afforded, because of any fraud or misrepresentations relating to the inception of the policy which might have afforded the insurer a cause for rescinding, reforming, canceling ab initio, or otherwise avoiding, an ordinary, voluntary liability policy, so as to escape such liability.")

The instant issue is most comparable to non-cooperation where, post accident, an insured refuses to cooperate. The insurer can only deny coverage, and void coverage, if the insurer is prejudiced. If there is no prejudice the insurer is barred from denying coverage where it has collected premium and covers the loss. The burden of proving that prejudice falls upon the insurer. *Forest City Grant Liberty Assocs. v. Genro II, Inc.,* 438 Pa.Super. 553, 652 A.2d 948, 951 (1995), *Ania v. Allstate Ins. Co.*, 161 F.Supp.2d 424, (E.D.Pa., 2001). In *Forest,* the court delineated what is non-cooperation, it included in the definition of breach of that duty an instance "where the insured neglects to disclose information needed by the insurer to prepare a defense." 652 A.2d at 951-952. In the instant matter Lincoln claims that JHM violated the policy by failing to provide a copy of the 1990 lease. That lease was not necessary to defend the action. In addition Lincoln cannot claim prejudice by the failure to provide that lease, it knew of the alleged failure in 1997, years before settlement of the underlying action.

Lincoln's "fraud defense" is not sustainable as no fraud has been alleged to have been committed against Lincoln by Statts and Woolever, there is no basis in law to void a third party liability policy post-accident for fraud in the claim processing procedure, and Lincoln was not prejudiced by the alleged failure to produce the 1990 lease.

21

E.    <u>Lincoln's Declination for Fraud Is Not Valid</u>

Lincoln asserts in it Pre-trial Memorandum that it first learned of the alleged fraud by

JHM and Woolever in 1997, two years after the loss.  Lincoln has not asserted, and cannot assert,

that it ever denied coverage based on fraud prior to the raising of the issue in the counterclaim in

this action served by Lincoln in August 2001.

It is well accepted in Pennsylvania, as in most jurisdictions, that when a liability insurer

"voluntarily manages the insured's defense to final judgment or settlement, the carrier cannot

later disclaim liability under the policy." *Draft Systems, Inc., v. Alspach,* 756 F.2d 293, 296 (3d

Cir.1985). This rule has long been followed in Pennsylvania, *Perkoski v. Wilson,* 371 Pa. 553, 92

A.2d 189 (1952);  *Lewis v. Fidelity & Casualty Co.,* 304 Pa. 503, 156 A. 73 (1931), and

continues to be applied by courts applying Pennsylvania Law.  *See, e.g., Titan Indemnity*

*Company v. Cameron,* 2002 WL 242346 (E.D.Pa.); *Malley v. American Indemnity Co.,* 297 Pa.

216, 219, 146 A. 571 (1928).

The holding of the court in *Malley* is quite instructive.  In *Malley,* the insurer defended

the insured without reservation.  After judgment had been obtained, the insurer denied coverage

claiming the insured falsely informed it as to the title of the insured automobile.  The insurer

claimed that it should be excused for failing to deny coverage on a prompt basis as it was not

aware of the false statement until after judgment had been rendered. The court rejected the

insurer's declination because the insurer could have discovered that the title was false if it had

checked the registration on the vehicle.  In the instant action Lincoln has admitted that in 1997 it

knew the statement regarding the lease of the vehicle were false. It continued to defend Statts and

JHM for an additional three years. It settled the case in the summer of 2000, yet never raised the

22

issue of the falsity of the leases.  In *Malley* the court rejected the insurer's right to deny coverage because the insurer <u>could have</u> discovered the falsity of the representations regarding the title. Here, Lincoln had actual knowledge of the alleged false leases for three years, took no action and even settled the claim, and, therefore is barred from denying coverage based on the claimed falsity of the statements.

Further, when Northland and Lincoln agreed to settle the underlying actions in 2000 Lincoln failed to raise any issues regarding fraud.  The issues between the companies were issues of primacy of coverage.  The only issue between Northland and Lincoln was whether Northland provided coverage and if it did, was that coverage primary or excess. The fraud issues was first crafted as a counterclaim in the instant action.

## IV.    <u>CONCLUSION</u>

For the reason stated herein it is respectfully submitted that upon application of the law to the facts judgment will be rendered to Northland against Lincoln.

Dated: January 14, 2003
      New York, New York

                              SCHINDEL, FARMAN & LIPSIUS LLP
                              Attorneys for Plaintiff Northland Insurance
                              Company

                              By:_____
                                   Ira S. Lipsius (IL5704)
                              225 West 34th Street
                              New York, New York 10122
                              (212) 563-1710
                              File No. 2015.67

                            -and-

David Ira Rosenbaum (52859)
Klett Rooney Lieber & Schorling
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA 19103
(215) 567-7507 (Office)

Attorneys for Plaintiff Northland Insurance Co.

TO:    Jonathan H. Rudd, Esq.
       Attorney for Lincoln General
       McNees Wallace & Nurick LLC
       100 Pine Street
       P.O. Box 1166
       Harrisburg, PA 17108-11661
       (717) 237-5405

       Andrew R. Spiegel, Esquire
       3901-A Main Street
       Second Floor
       Philadelphia, PA 19127

## CERTIFICATION

The word count of the <u>Trial Brief</u> as provided by Word Perfect 10 is 7704 inclusive of Table of Contents and Table of Authorities and 6869 exclusive of Table of Contents and Table of Authorities.

On December 19, 2002, at the pre-trial conference before Hon. Yvette Kane, U.S.D.J., the Court authorized a limit of 10,000 words in accordance with local rule 7.8(b)(2)(3).

_____
Ira S. Lipsius

## AFFIRMATION OF SERVICE

STATE OF NEW YORK                           )
                                            ) ss.:
COUNTY OF NEW YORK                          )

I, Ira S. Lipsius, being duly sworn, states as follows:  I am over 18 years of age, not a party to the

within action, with an address at 225 West 34th Street, New York, New York  10122.  On

January 15, 2003, I served the within Northland Insurance Company's Trial brief upon the

person(s) or parties designated below by mailing a true and complete copy of same in a postage

pre-paid envelope, and depositing same in a post office or official depository of the United States

Postal Service within New York State, at the last known address of the addressee(s) as set forth

herein.


TO:     Jonathan H. Rudd, Esq.
        Attorney for Lincoln General
        100 Pine Street
        P.O. Box 1166
        Harrisburg, PA 17108-11661

        Andrew R. Spiegel, Esquire
        3901-A Main Street
        Second Floor
        Philadelphia, PA 19127


                                            _____
                                            Ira S. Lipsius