A 450 (Rev. 5/85) Judgment in a Civil Case

UNITED STATES DISTRICT COURT
**MIDDLE DISTRICT OF PENNSYLVANIA**

## JUDGMENT IN A CIVIL CASE

NORTHLAND INSURANCE
COMPANY

    Plaintiff

CASE NUMBER: 1:CV-01-0763
JUDGE YVETTE KANE

LINCOLN GENERAL INSURANCE
COMPANY

    Defendant

9  **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

X  **Decision by Court.** This action came to trial or hearing before the court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that judgment be and is hereby entered for Plaintiff, Northland Insurance Company and against Defendant, Lincoln General Insurance Company, in the amount of $75,000.

Date: August 26, 2003        **Mary E. D'Andrea, Clerk of Court**

                                 s/ Virginia Gilmore

                         **(By) Virginia Gilmore, Deputy Clerk**

Case No: 1:01-cv-00763-YK    Document No: 64, User: vg, 1 Copy Printed: Aug, 26, 2003  02:25 PM

Ira S. Lipsius
Schindel, Farman & Lipsius LLP
225 West 34th Street
New York, NY 10122

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE          :
COMPANY,                     :          CIVIL ACTION NO. 1:CV-01-0763
            Plaintiff          :
                             :
         v.                :          (Judge Kane)
                             :
LINCOLN GENERAL INSURANCE    :
COMPANY,                     :
           Defendant          :

## MEMORANDUM AND DECISION

This declaratory judgment action was brought by the Northland Insurance Company to

clarify the scope of its coverage of a tractor-trailer involved in an accident on November 17,

1995. Northland provided coverage for this tractor-trailer on behalf of its insured, Woolever

Transportation Company while the Lincoln General Insurance Company covered the same

equipment on behalf of JHM Enterprises, Inc. As a result of the accident, both insurers have

made payments under their policies. Each party seeks reimbursement of funds paid under their

policies. The Court held a bench trial on January 27-30, 2002, and now issues this memorandum

and decision. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as

the parties are diverse and the amount in controversy exceeds $75,000.

## I. Findings of Fact

Plaintiff Northland Insurance Company ("Northland") is a Minnesota corporation licensed

to do business in Pennsylvania, with its principal place of business in Minnesota. Defendant

Lincoln General Insurance Company ("Lincoln General") is a Pennsylvania corporation with its

principal place of business in Pennsylvania. J.H.M. Enterprises, Inc. ("JHM") was a Pennsylvania

trucking corporation that is no longer transacting business. Woolever Brothers Transportation,

Inc. ("Woolever") is also a Pennsylvania trucking corporation. JHM and Woolever occupied the same business space in Montoursville, Pennsylvania. Moreover, even though JHM and Woolever were separately incorporated entities, the companies often used the same equipment and personnel. JHM and Woolever employees shared business responsibilities such as dispatching drivers and filing business related paperwork. Vernice Lee Statts is a truck driver who, on occasion, carried loads for both Woolever and JHM.

On November 17, 1995, Statts operated a 1979 Freightliner with the Serial Number CA213HM160222 (the "Tractor"). In Hometown, Pennsylvania, Statts caused a fatal accident resulting in claims against Woolever, JHM and Statts (the "underlying claims"). The Tractor driven by Statts was owned by JHM and scheduled on a Lincoln General Policy issued to JHM. This insurance policy, Number PAP 185770 0495 (the "Lincoln General Policy") was in effect from April 18, 1995 to April 18, 1996 and provided $750,000 in liability coverage for each accident or loss. Northland issued a Truckers insurance policy to Woolever, which was in effect from September 1, 1995 through September 1, 1996 ("the Northland Policy") and provided $2,000,000 in liability coverage for each accident involving vehicles Woolever leased, hired or borrowed.

At the time of the accident, the Tractor displayed two placards. One placard indicated that the tractor was "Leased to Woolever Bros." and set forth Woolever's federal and state operating authority number. Below the Woolever placard was a placard indicating that the vehicle was operating under the authority of JHM Enterprises, Inc. Statts testified that his usual practice was to use tape to cover the placard of whichever company was not responsible for any given load. However, on the day of the accident, Statts testified that neither placard was covered

2

because he had run out of tape.

The underlying claims resulting from the accident were settled for $1,350,000 in November, 2000. Northland and Lincoln General each contributed $675,000 towards the settlement of the underlying actions. In addition, Northland paid $65,629.59 for the defense of Woolever Brothers in the underlying actions and Lincoln General paid $91,511.35 for the defense of JHM, its owner Jay McCormick, and Statts.

The Northland and Lincoln General policies covering the Tractor contained identical terms, utilizing ISO form CA 00 12 12 93. Each policy contains an identical clause labeled "Other Insurance - Primary and Excess Insurance Provisions" ("other insurance clause"). These clauses state:

> a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a trucker and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectable insurance for any covered "auto" while hired or borrowed from you by another "trucker". However, while a covered "auto": which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:
>
> > (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".
> >
> > (2) Excess if the power unit is not a covered "auto".
>
> b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".
>
> c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.
>
> d. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

e. Regardless of the provisions of paragraphs a., b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

ISO form CA 00 12 12 93, V(b)5.

During the time period in question, Woolever frequently hauled for Cargill Salt ("Cargill"), located in Watkins Glen, New York. Cargill used Woolever's service to arrange for transportation of salt between Watkins Glen, New York and Ephrata, Pennsylvania. McCormick, owner of JHM, would dispatch tractors and drivers who worked for either Woolever or JHM to complete Cargill deliveries. Woolever would then bill Cargill for the work performed. Testimony at trial indicated that the majority of Woolever's clients required the shipping of "dry freight" such as salt which can be loaded onto a flatbed or van trailer. Woolever had limited authority to carry freight within the state of Pennsylvania

One of JHM's major clients was Raisio, Incorporated ("Raisio"), a company that processes potato starch used in the paper making industry. This potato starch is extracted from the slurry produced by various potato chip manufacturers when washing and peeling potatoes. Raisio has a facility located in Berwick, Pennsylvania and owned two tank wagons for the transportation of the slurry from the potato chip manufacturers. JHM provided tractors and drivers for the transportation of these tank wagons. When Rasio employees needed to schedule an appointment, they would call McCormick at a toll free number for Woolever's offices. McCormick would then dispatch tractors and drivers using employees and equipment of both

4

Woolever and JHM depending on availability and need.  JHM would then bill Rasio.  Trial

testimony also established that JHM's clients tended to require the delivery of "wet freight" such

as slurry and required the use of tank wagons as opposed to flatbed or van trailer.  On November

17, 1995, JHM had authority to carry the Raisio loads from Berwick Pennsylvania to Tyrone

Pennsylvania under PUC licence number # A00109158.

On November 16, 1995, the day before the accident, Statts drove the Tractor, which was

pulling a van trailer north into the State of New York New York to pick up a load of salt for

Woolever.  After the van trailer was loaded, Statts returned to his home near Williamsport

Pennsylvania for the night.  On the morning of November 17, 1995, Statts drove the Tractor and

loaded van trailer from his home near Williamsport southeasterly to Ephrata, Pennsylvania and

delivered the load of Cargill salt for Woolever.  Thereafter Statts left Ephrata and headed north to

Berwick, Pennsylvania in order to execute a Rasio delivery for JHM.  Statts's intention, had he

arrived in Berwick, was to unhook the van trailer used to deliver Woolever's load and leave it,

temporarily, at Raisio's facility.  He intended to make JHM's delivery with a Rasio tank wagon

and then, after returning the tank wagon to Rasio's facility, hook back onto the empty van trailer

used in Woolever's previous load and proceed to Woolever's facility in Montoursville.  However,

on the way to the Rasio plant, the fatal accident occurred.

At the time of the accident, Statts's logs, originally completed in November, 1995,

identified Woolever as the motor carrier for whom he was hauling.  The only lease document in

the Tractor at that time was a March 1, 1990 "Agreement Of Lease Of Motor Vehicle

Equipment" indicating that JHM leased the Tractor to Woolever.  Accordingly, the Police Report

produced at the accident indicates that Woolever Brothers was the motor carrier at the time of the

accident. Moreover, Woolever completed the required governmental certifications and paperwork for Statts which identified Woolever as the motor carrier for whom Statts was driving, and on May 12, 1995, McCormick, acting as the Dispatcher for Woolever, also executed a Certificate of Qualification for Statts. McCormick certified in the Certificate that Statts "is regularly driving a vehicle operated by the below named carrier," which was identified as "Woolever Bros. Transp."

On November 17, 1995, McCormick reported the accident to Lincoln General on behalf of JHM. Woolever reported the Accident to Northland that same day. Later that day, Gail Crecelius, a claims supervisor for Northland, interviewed Statts, McCormick and Hazel Sinclair, part owner of Woolever. In her interview Hazel Sinclair informed Crecelius that McCormick operated under Woolever's authority and that the Tractor was leased to Woolever. Hazel Sinclair informed Crecelius that McCormick arranges loads for Woolever. Sinclair then faxed Crecelius a copy of the March 1, 1990 "Agreement Of Lease Of Motor Vehicle Equipment" as evidence of the lease arrangement between Woolever and JHM.

On November 29, 1995, McCormick faxed to Lincoln General a document titled "Agreement of Lease Of Motor Vehicle Equipment" ("trip lease") dated November 16, 1995, for the Tractor involved in the Accident. Although this trip lease identified a trailer that was not involved in the Accident, it indicated that the Tractor was operating under the authority of JHM, not Woolever, at the time of the accident. This trip lease provided that:

> The term of this lease shall begin at 4:00 P.M. o'clock on 11/16/95 and terminate at the end of thirty (30) days, or at 8:00 A.M. o'clock 11/17/95, at which time the term of this lease is automatically extended for additional like thirty (30) day periods, unless terminated by either party giving to the other party five (5) days written notice of cancellation.

6

This Trip Lease was signed by McCormick, as President of JHM, and Sinclair, as

Secretary/Treasurer of Woolever. Although the face of the Trip Lease indicates that it was signed

on November 16, 1995, this lease, among others, were drawn up after the accident. Later, on

December 4, 1995, Sinclair called Crecelius at Northland and informed Crecelius that the wrong

lease was faxed on November 17, 1995. Sinclair indicated that the March 1, 1990 "Agreement Of

Lease Of Motor Vehicle Equipment" was an old lease used when the owner and   operator of the

Tractor worked exclusively for Woolever, and no longer applies. Sinclair told Crecelius that

Woolever used trip leases at the time of the accident. Sinclair then faxed Crecelius the trip leases

that were drawn up after the accident as evidence of the leasing arrangement between Woolever

and JHM.

Both the Northland and Lincoln General policies contain a clause labeled "Concealment,

Misrepresentation or Fraud" which states:

> This Coverage Form is void in any case of fraud by you at any time as it relates to
> this Coverage Form. It is also void if you or any other "insured", at any time,
> intentionally conceal or misrepresent a material fact concerning:
>
> > a. This Coverage Form;
> > b. The covered "auto";
> > c. Your interest in the covered "auto"; or
> > d. A claim under this Coverage Form.

ISO Form CA 00 12 12 93 at p. 9, Section V.B.2. Lincoln General asserts that its liability for

JHM, Woolever and Statts under its policy is void as a result of fraud.


## II. Discussion and Conclusions of Law

Preliminarily, the parties agree that Pennsylvania law governs this dispute as Pennsylvania

7

has the most significant relationship to the parties and transaction. <u>Myers v. Commercial Union Assurance Co.</u>, 485 A.2d 1113, 1116 (Pa. 1984). Under Pennsylvania law, the interpretation of an insurance policy is a question of law. <u>Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.</u>, 155 F. Supp. 2d 429, 431 (E.D. Pa. 2001) (citing <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law. . . ." <u>Fireman's Fund Ins. Co.</u>, 155 F. Supp. 2d at 431 (citing <u>Bowers v. Feathers</u>, 671 A.2d 695, 697 (Pa. 1995)).

Northland and Lincoln General each assert that the other is liable for the accident losses as the "primary insurer." Under the policy terms of both insurance carriers, if a tractor is "used exclusively in [a company's] business as a trucker," the insurance of that company provides primary coverage. Thus, this coverage dispute centers on whether the Tractor was, at the time of the accident in Hometown, Pennsylvania, exclusively in the business of Northland's insured or Lincoln General's. Neither policy defines the phrase.

Both the Tractor and the trailer were specifically scheduled on Lincoln General's policy and both were owned by JHM. Statts was an employee of JHM and when the accident occurred, he was <u>en route</u> to pick up a load of slurry from JHM's client, Rasio. Had the Rasio load been picked up, JHM would have received the profits from the delivery. Significantly, had Statts not been driving the Tractor in the business of JHM, he would not have traveled through Hometown, Pennsylvania before returning the Tractor and trailer previously used for Woolever's delivery to the Montoursville, Pennsylvania facility. Finally, it is clear that on November 17, 1995, JHM had authority to carry the Raisio loads from Berwick Pennsylvania to Tyrone Pennsylvania under PUC licence number A00109158 and Lincoln General has failed to show that Woolever had PUC

8

authority to carry shipments on behalf of Raisio from Berwick, Pennsylvania. Accordingly, this Court concludes that the Tractor was operating exclusively in JHM's business at the time of the accident.

Lincoln General urges the Court to find that the Tractor was exclusively in Woolever's business based primarily on the existence of the March 1, 1990 lease from JHM to Woolever. That lease was present in the Tractor at the time of the 1995 accident and there is no evidence that this open ended lease was ever formally terminated. However, the facts support a finding that the parties had reformed this contract and abandoned the 1990 lease. JHM leased the tractor to Woolever at a time when Woolever, but not JHM, had PUC authority. In 1992, JHM obtained its own authority and modified its arrangement with Woolever to reflect that. Thereafter, JHM continued to transact business transporting loads for Woolever's clients on a case by case basis. In 1995, JHM hauled for Woolever eleven days. In apparent violation of laws and regulations, the parties transacted business without supporting documents until the fatal accident occurred. Following the accident, they attempted to memorialize their arrangement with backdated trip leases. These leases reflect the true terms on which the parties conducted business.[1]

Under the facts of this case, this Court finds that Lincoln General provides primary coverage and Northland provides excess coverage for the underlying claims. Section V(B)(5)(a) of Northland's policy states, in relevant part, "[T]his Coverage Form's Liability Coverage is excess over any other collectable insurance for any covered 'auto' while hired or borrowed from

---

[1] Lincoln General argues that these trip leases represent a fraudulent misrepresentation of material fact which voids coverage under Section V.B.2 of the policy. As the Court finds that the trip leases accurately reflect the relationship between Woolever and JHM, Lincoln General's arguments that these leases represent a fraudulent misrepresentation of material fact fails.

[Woolever] by another 'trucker'." As Woolever subleased the Tractor to JHM, Woolever's

insurer, Northland, provides excess coverage for the underlying claims. Section V(B)(5)(a) of

Lincoln General's policy states, in relevant part "[T]his Coverage Form's Liability Coverage is

primary for any covered "auto" while hired or borrowed by [JHM] and used exclusively in

[JHM's] business as a trucker and pursuant to operating rights granted to [JHM] by a public

authority." As JHM was using the Tractor exclusively in its business under its PUC authority,

Lincoln General, its insurer, provides primary coverage for the underlying claims. Northland, as

excess insurer, is required to pay up to its policy limits only after the policy limits of Lincoln

General, as primary insurer, have been exhausted. Under the facts presented here, Lincoln

General must reimburse Northland the difference between what it has paid to date to settle the

underlying claims ($675,000) and its policy limit of $750,000. Accordingly, Lincoln General will

be ordered to pay Northland $75,000.

10

**III. Order**

     **AND NOW**, therefore, **IT IS ORDERED THAT** the Clerk of Court shall enter judgment for Plaintiff, Northland Insurance Company and against Defendant, Lincoln General Insurance Company, in the amount of $75,000.

                                                                                           \_ S/ Yvette Kane_____
                                                                                         Yvette Kane
                                                                                         United States District Judge

Dated: August 26, 2003.

11

2404

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY
               Plaintiff

         v.

LINCOLN GENERAL INSURANCE COMPANY,
J.H.M. ENTERPRISES, INC., and
VERNICE L. STATTS,
             Defendants

         v.

WOOLEVER BROTHERS TRANSPORTATION
INC.
          Third Party Defendant

:
:
:
:  No. 1:01-CV-763
:
:
:  **FILED**
:  HARRISBURG, PA
:  DEC 1 8 2002
:  MARY E. D'ANDREA, CLERK
:  Per _____ Deputy Clerk
:
:
:  (JUDGE KANE)

---

## NORTHLAND INSURANCE COMPANY'S PRETRIAL MEMORANDUM

Date Conference was Held by Counsel: 11/22/02

   A.    <u>Statement as to Federal Jurisdiction</u>

   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceed the sum of value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states and pursuant to 28 U.S.C. §2201.

   B.    <u>Summary/Statement of Facts and Contentions as to Liability</u>.

   This action is one to determine the extent of coverage provided by two insurers, Northland Insurance Company ("Northland") and Lincoln General Insurance Company ("Lincoln General"), for a motor vehicle accident.   Northland and Lincoln General have settled the claims arising from the accident. The two insurers had agreed to settle this action.  A formal

D.    Brief Description of Damages .

It is Northland's position that Lincoln General provides primary coverage for the losses in the underlying action and that Northland's coverage, if any, is excess. As such, Northland is only required to contribute toward the underlying action after Lincoln General's policy has been exhausted. Since Lincoln General paid only $675,000 of its $750,000 policy limits, Lincoln General is liable to Northland for the $75,000 remainder of its policy limits plus Northland's cost of defense in the underlying action, $65,629.59.

E.    Names and addresses of Witnesses.

Jay McCormick, JHM,;

Vernice Statts;

Dale Clemons, former Raisio (Live or by deposition transcript);

Harold Sinclair, Woolever Brothers;

Joyce Sinclair-deceased- (via deposition);

Jerry Parker, Northland Insurance Company;

Gail Crecelius, Northland Insurance Company;

Michael McGovern, or a corporate designee of Lincoln General;

Traci Slane, Northland Insurance Company.

F.    Summary of Testimony of Each Expert Witness.

Northland does not intend to call any experts.

G.    Special Comment about Pleadings and Discovery.

*v. Empire Fire & Marine Insurance Company*, 2001 WL 1042740 (E.D.Pa.2001); *Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995).

ISSUE: If the Lincoln General policy is void, likewise the Northland policy is void. If both policies are void, neither insurer can recover from the other.

Lincoln General has alleged that JHM and Woolever fraudulently misrepresented their leasing arrangement and as a result of that misrepresentation its policy is void. Northland has raised as an affirmative defense that if Lincoln General's assertion is true, Northland's policy is also void. If both policy are void neither insurer is entitled to recover from the other. Further, both insurer's exposure is limited to that created by the MCS-90 endorsement. The insurers are not entitled to recovery from each other if their only exposure is pursuant to the MCS-90. *Industrial Indem. Co. v. Truax Truck Line Inc.*, 45 F.3d 986 (5th Cir. 1995).

ISSUE: Voiding the Lincoln General Policy Ab Initio and its effect on Statts:

Lincoln General has alleged that Woolever and JHM have perpetrated a fraud on it in the creation of the trip leases. No evidence has been presented that Statts was at all involved in the fraud. A liability policy can only be voided ab-initio with regard to those committing the fraud. A liability policy cannot void coverage to someone who has not committed fraud. *Erie Ins. Exchange v. Lake*, 671 A.2d 681, 543 Pa. 363 (1996).

I.    Stipulations Desired.

Northland will stipulate to Lincoln General's attorney fees of $91,511.35 in the underlying action as Lincoln General is willing to stipulate to Northland's attorney fees of $65,629.59 in the underlying action.

9

38.    In June of 1995 Lincoln General audited the records of JHM.

39.    At that time, the Tractor was listed on the Lincoln General Policy.

40.    The audit indicated that three of the 17 vehicles scheduled on the Lincoln General policy were leased to Woolever.

41.    The Tractor was scheduled on the Lincoln General policy.

42.    The Tractor was not among the vehicles which the audit indicated were leased to Woolever.

43.    On July 14, 1995 one of the vehicles which was leased to Woolever was removed from the Lincoln General Policy because it was leased to Woolever and believed to be covered by the Woolever policy.

44.    Northland issued policy number TF209197 to Woolever (the "Northland Policy").

45.    The limits of the Northland Policy are $2,000,000, combined single limit.

46.    The Northland Policy provided coverage for vehicles hired by Woolever.

47.    At the time of the accident the Tractor was not under lease to Woolever.

48.    At the time of the Accident the Tractor was owned by JHM.

49.    At the time of the Accident the Tractor was being used exclusively in the business of JHM.

50.    The Northland policy did not provide coverage for the Tractor.

51.    The Lincoln General Policy provides primary coverage for the Tractor.

52.    Lincoln General must pay Northland $75,000, the remaining limits under the Lincoln General Policy, plus defense costs of $65,629.59.

15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY :
            Plaintiff :
                                       :
                                       :
                                       :
        v.                             :  No. 1:01-CV-763
                                       :
LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., and :
VERNICE L. STATTS,                     :
            Defendants                 :
                                       :
LINCOLN GENERAL INSURANCE COMPANY, :
        Third Party Plaintiff          :
                                       :
        v.                             :
                                       :
WOOLEVER BROTHERS TRANSPORTATION :
INC.                                   :
            Third Party Defendant      :  (JUDGE KANE)

**FILED**
HARRISBURG, PA

DEC 1 3 2002

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

## LINCOLN GENERAL INSURANCE COMPANY'S PRETRIAL MEMORANDUM

A.    FEDERAL COURT JURISDICTION

    This Court has jurisdiction over Northland Insurance

Company's ("Northland") and Lincoln General Insurance Company's

("Lincoln General") claims against each other in accordance with

28 U.S.C. §1332 in that there is complete diversity of

citizenship between Lincoln General and Northland.  This Court

has jurisdiction over Lincoln General's cross-claims against

J.H.M. Enterprises, Inc. ("JHM") and Vernice L. Statts

of the total defense and indemnity payments, if the insurance companies are determined to bear responsibility on an equal basis, then Northland must reimburse Lincoln General approximately $355,000, exclusive of pre-judgment interest.

C.    COMPREHENSIVE STATEMENT OF UNDISPUTED FACTS

To be attached to Northland's Pretrial Memorandum in accordance with Local Rule 16.3.


D.    DESCRIPTION OF DAMAGES

Lincoln General and Northland each paid $675,000 to settle the underlying actions.    Northland claims in the second paragraph 35 of the Complaint that it spent $51,769.94 in defending Woolever in the underlying actions, and claims in the Joint Case Management Plan that it spent $65,629.59 in defending Woolever in the underlying actions.    Lincoln General spent $91,511.35 to defend JHM and Statts in the underlying actions. Accordingly, the total amount spent by Northland and Lincoln General to settle and defend Woolever, JHM and Statts in the underlying actions is $1,507,140.94.

It is Lincoln General's primary position that Northland is primary and Lincoln General is excess.    If the Court would so find, then Northland would be required to reimburse Lincoln General for the total amount it paid out to settle and defend the underlying actions of $766,511.35, exclusive of pre-judgment interest.    If the Court should find that Northland and Lincoln General share responsibility on a concurrent basis, whether primary or excess, then Northland's and Lincoln General's pro

4

rata liability for all costs to settle and defend the underlying actions would be $1,096,143.61 and $410,997.33, respectively. This is based on Northland's pro rata percentage of liability being 72.73 percent ($2,000,000/($2,000,000 + $750,000)) and Lincoln General's pro rata percentage of liability being 27.27 percent ($750,000/($2,000,000 + $750,000). Since Lincoln General paid $766,511.35, it paid more than its pro rata share of liability, and would be entitled to a reimbursement from Northland in the amount of $355,514.02 ($766,511.35 - $410,997.33), exclusive of pre-judgment interest.


E.    WITNESSES

Michael McGovern, Esquire
Formerly of Lincoln General

Louis Bricklin, Esquire
Attorney for Woolever in underlying action

Gail Crecilius
Jerry Parker
Northland Insurance Company

Harold Sinclair
Woolever Brothers

Hazel Sinclair
(deposition given in underlying actions since she was deceased before the attorneys in this case had an opportunity to depose her)
Woolever Brothers

Joyce Wilking
Woolever Brothers

Vernice Statts
Currently employed part-time by Woolever Brothers

Jay McCormick
JHM

Jim Brandt
Formerly of King American

rule should apply to apportion liability. The Lincoln General and Northland Policies have both adopted the policy limit rule, under which the total loss is prorated on the basis of the maximum coverage limits of each policy. When policies provide for the same method of division of liability, the courts will apply that method. Occidental Fire and Cas. Co. of North Carolina, supra, 772 F.2d at 53; see also Continental Ins. Co. v. McKain, 821 F.Supp. 1084, 1087 (E.D.Pa. 1993), aff'd without published opinion, 19 F.3d 642 (3rd Cir. 1994) (stating that, "Where both relevant policies contained language favoring a particular principle of apportionment, the court applied it."); Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 166 (3rd Cir. 1988)("Pro rata provisions allocate financial responsibility between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies.")

The apportionment of defense costs follows the method of apportionment of indemnification costs. Continental Ins. Co., supra, 821 F.Supp. at 1092.


I.    STIPULATIONS DESIRED

Lincoln General seeks a stipulation that the attorneys fees it incurred in defending JHM and Statts in the underlying action of $91,511.35 are reasonable and that this amount will be used in the calculation of damages. Lincoln General is willing to stipulate that Northland's attorneys' fees of $65,629.59 are reasonable and that this amount should be used in the calculation

of damages to the extent Northland stipulates to Lincoln General's attorneys' fees expended in the underlying actions.

Lincoln General also seeks a stipulation as to the admissibility of its exhibits so that it does not need to call witnesses simply to identify exhibits which speak for themselves, where the witness is not being asked to add anything to what is stated in the document.

## J.   ESTIMATED NUMBER OF TRIAL DAYS

Four.

## K.   OTHER MATTERS

None.

## L.   EXHIBIT LIST

Attached.

## M.   SPECIAL VERDICT QUESTIONS

Not Applicable since this is a non-jury matter.

## N.   SETTLEMENT AUTHORITY

Lincoln General's counsel has notified the person at Lincoln General with settlement authority about the requirements of Local Rule 16.2.

## O.   DEPOSITION TRANSCRIPTS

Lincoln General intends to use portions of the deposition transcript of Hazel Sinclair taken in the underlying action, and portions of the deposition transcript of Dale Clemmons taken in

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY          :
          Plaintiff                  :
                                     :
                                     :
          v.                         :   No. 1:01-CV-763
                                     :
LINCOLN GENERAL INSURANCE COMPANY,   :
J.H.M. ENTERPRISES, INC., and        :
VERNICE L. STATTS,                   :
          Defendants                 :
                                     :
LINCOLN GENERAL INSURANCE COMPANY,   :
          Third Party Plaintiff      :
                                     :
          v.                         :
                                     :
WOOLEVER BROTHERS TRANSPORTATION     :
INC.                                 :
          Third Party Defendant      :   (JUDGE KANE)

FILED
HARRISBURG, PA

DEC 1 3 2002

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

**DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S PROPOSED FINDINGS
OF FACT AND CONCLUSIONS OF LAW**

FINDINGS OF FACT

     1.    Plaintiff Northland Insurance Company ("Northland") is

an insurance company licensed to do business in Pennsylvania with

its principal place of business at 1295 Northland Drive, St Paul,

Minnesota.

8.   At the time, the tractor trailer was carrying an "Agreement of Lease of Motor Vehicle Equipment" dated March 1, 1990, pursuant to which JHM Enterprises as lessor leased the tractor in question and a driver to Woolever Brothers Transportation, Inc.  At the time the lease was executed, the lease was intended to be a permanent lease because the JHM tractor was being utilized exclusively by Woolever Brothers for its business.

9.   Between 1990 and the time of the accident, the business relationship between JHM Enterprises and Woolever Brothers changed, so that there were numerous occasions upon which the tractor was utilized by JHM Enterprises for its own business.  However, JHM Enterprises and Woolever Brothers never changed the written lease agreement despite the fact that they were required to execute a new "trip lease" pursuant to applicable federal regulations each time the vehicle was leased back to Woolever Brothers.

94.   Cliffords' counsel refused to execute Bricklin's proposed Stipulation because he was not willing to stipulate to the intentions of Hazel Sinclair and McCormick because of their past conduct in fabricating the Trip Lease after the Accident and then concealing the Permanent Lease until Ms. Sinclair finally confessed to what she had done at her deposition on November 4, 1997.

95.   On June 10, 1999, Bricklin sent a letter to Cliffords' counsel wherein he stated in part that:  "I have told you that Woolever does not seek to escape liability for Statts' actions."

96.   Lincoln General and Northland eventually agreed to each advance $675,000 (a total of $1,350,000) to settle the Clifford and Mulligan Actions, while reserving all rights to seek reimbursement from the other pending a determination of the coverage issues involved in this case.

97.   The Mulligan Action settled in July, 2000.  The Clifford Action settled in October, 2000.  Lincoln General

advanced its portion of the Clifford settlement to the Cliffords'
attorney on November 28, 2000.

98. Statts qualifies as an "insured" under the Northland
Policy since he was using the Tractor with Woolever's permission.

99. The Northland Policy defines an "insured" to include
anyone who is liable for the conduct of an "insured" described in
the Northland Policy.

100. JHM qualifies as an "insured" under the Northland
Policy since the plaintiffs in the Clifford and Mulligan Actions
claimed that JHM was liable for Statts' conduct, and Statts is an
insured under the Northland Policy.

101. JHM, Statts and Woolever all qualify as insureds under
the Lincoln General policy.  JHM is the named insured.  Statts is
an "insured" under the Lincoln General Policy since he was using
the Tractor with JHM's permission.  Woolever is an insured since
the Lincoln General Policy defines an "insured" to include anyone
who is liable for the conduct of an "insured" described in the
Lincoln General Policy.  Since the Plaintiffs in the underlying
cases alleged and Woolever eventually acknowledged that it was
liable for Statts' conduct, it qualifies as an insured under the
Lincoln General Policy.

102. The Northland Policy expressly states:

> This Coverage Form's Liability Coverage is primary
> for any covered "auto" while hired or borrowed by you
> and used exclusively in your business as a "trucker"
> and pursuant to operating rights granted to you by a
> public authority.

103. The Lincoln General Policy expressly states:  "This
Coverage Form's Liability Coverage is excess over any other

114. Northland incurred $65,629.59 in defending Woolever in the underlying actions.

## CONCLUSIONS OF LAW

115. Northland has the primary obligation to defend and indemnify Woolever, Statts and JHM from all claims arising out of the Accident.

116. In accordance with the other insurance clauses in both the Northland Policy and the Lincoln General Policy, Northland's coverage for Woolever, Statts, and JHM is primary since the Tractor was hired by Woolever and used exclusively in its business as a "trucker" and pursuant to operating rights granted to Woolever at the time of the Accident.

117. JHM and Woolever committed fraud, misrepresented facts, and concealed information regarding their leasing arrangement by concealing the presence of the Permanent Lease in the Tractor at the time of the Accident, and misrepresenting that the Trip Lease dated November 16, 1995 was in the Tractor at the time of the Accident when it was not prepared until after the Accident.

118. The statements made by JHM and Woolever in the Trip Lease that it was executed on 11/16/95 are false.

119. The statement made by Woolever in the Trip Lease that Harold Sinclair carefully inspected the equipment on 11/16/95 is false.

120. JHM and Woolever knew that the statements made in the Trip Lease as to the date it was executed and the alleged careful inspection of the equipment by Harold Sinclair on 11/16/95 were false.

126. The liability coverage afforded under the Lincoln General Policy is void as to JHM, Woolever and/or Statts for the claims arising out of the Accident as a result of the fraud, intentional concealment, and misrepresentations of material facts committed by JHM, Woolever, and/or Statts.

127. Northland knew of the Permanent Lease, but concealed this information from Lincoln General and the other parties in the Clifford and Mulligan Actions.

128. Northland intentionally concealed the existence of the Permanent Lease despite its suspicions that the Trip Lease had been created after the fact in order to try and obtain summary judgment on the basis that the Trip Lease had expired prior to the Accident.

129. Northland intentionally concealed the existence of the Permanent Lease because it knew that if it disclosed that the Permanent Lease was in effect at the time of the Accident, this fact would automatically make Lincoln General's Policy excess since the Tractor would have been leased to another trucker.

130. Northland is obligated to reimburse Lincoln General for all expenses it has incurred to defend Statts and JHM, and all payments it has made to claimants arising from the Accident, in the total amount of $766,511.35, since Lincoln General's coverage is void for the Accident.

131. Northland must pay Lincoln General prejudgment interest from November 28, 2000, until the date of judgment.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY,
          Plaintiff,                :

      v.                         :        No. 1:01-CV-763

LINCOLN GENERAL INSURANCE COMPANY, :
J.H.M. ENTERPRISES, INC., and
VERNICE L. STATTS,               :        (JUDGE KANE)

       Defendants,          :

      v.                        :

WOOLEVER BROTHERS TRANSPORTATION :
INC.,
       Third-Party Defendant.    :

**FILED**
HARRISBURG, PA

FEB 0 7 2003

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

## PROPOSED FINDINGS OF FACTS AND LAW

### I.    PROPOSED FINDINGS OF FACT

1.    Northland Insurance Company ("Northland") is a Minnesota corporation with its principal place of business in Minnesota.

2.    Lincoln General Insurance Company ("Lincoln General) is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3.    J.H.M. Enterprises, Inc. ("JHM") is a Pennsylvania corporation with its principal place of business in Pennsylvania.

4.    Woolever Brothers Transportation, Inc. ("Woolever") is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5.    Lincoln General issued to JHM, insurance Policy Number PAP 185770 0495 (the

defense counsel appointed by Lincoln General, that the Cargill Lease was executed after the accident. (Bricklin).

70.    Mr. Pipa advised Mr. McGovern of these facts shortly thereafter. (McGovern).

71.    Beginning in January 1996, shortly after the accident, Lincoln General took the position that its policy provided excess coverage and that Northland's policy provided primary coverage. Northland took the opposite position. (McGovern, Crecelius, Parker).

72.    Neither Northland nor Lincoln General changed its position as to the primacy of coverage as the result of the revelation that the Cargill Lease was executed after the accident. (Crecelius, Parker, McGovern).

73.    At no time did Lincoln General deny coverage for the claim to JHM or Mr. Statts. (McGovern).

74.    The underlying actions were settled in November 2000. (Exhibit D-106).

75.    From November 1997 until November 2000, Lincoln General did not deny coverage to JHM. (McGovern).

76.    Lincoln General never advised JHM that it believed that JHM concealed or misrepresented any fact or made any false or fraudulent statement. (McGovern).

77.    Lincoln General did not name JHM or Mr. McCormick as a defendant in this action. (See pleadings - crossclaim and counterclaim).

78.    Mr. McGovern could not have believed that JHM or Mr. Statts committed fraud or intentionally concealed or misrepresented a material fact as he failed to raise the issue from November 1995 through June 2001 when he left his employ at Lincoln General.

79.    Lincoln General has never declined coverage to JHM or Mr. Statts.

10