```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF PENNSYLVANIA


NORTHLAND INSURANCE COMPANY         :   FILED ELECTRONICALLY
        Plaintiff                   :
                                    :
                                    :
        v.                          :   No. 1:01-CV-763
                                    :
LINCOLN GENERAL INSURANCE COMPANY,  :
J.H.M. ENTERPRISES, INC., and       :
VERNICE L. STATTS,                  :
        Defendants                  :
                                    :
LINCOLN GENERAL INSURANCE COMPANY,  :
        Third Party Plaintiff       :
                                    :
        v.                          :
                                    :
WOOLEVER BROTHERS TRANSPORTATION    :
INC.                                :
        Third Party Defendant       :   (JUDGE KANE)
```

**DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF NORTHLAND INSURANCE COMPANY'S MOTION TO AMEND THE COURT'S DECISION AND ORDER DATED AUGUST 26, 2003**

I.  COUNTERSTATEMENT OF PROCEDURAL AND FACTUAL BACKGROUND

On September 5, 2003, Plaintiff Northland Insurance Company ("Northland") filed a motion pursuant to Federal Rule Civil Procedure 59(e) to amend the Court's Decision and Order of August 26, 2003. Northland seeks to have the Court amend its Order to require that Defendant Lincoln General Insurance Company ("Lincoln General") pay Northland the attorneys' fees it incurred

in defending Woolever Brothers Transportation, Inc. ("Woolever") in the underlying actions, and pre-judgment interest on the principal amount of $140,629.59

Although Northland requests the Court to amend its Decision and Order of August 26, 2003, Rule 59(e) permits a party to file a motion to alter or amend a Judgment.  Accordingly, Lincoln General is treating Northland's motion as one to alter or amend the Judgment entered on August 26, 2003, rather than this Court's Decision and Order.  Although Lincoln General does not dispute Northland's contention that it incurred $65,629.59 in attorneys' fees to defend Woolever, Lincoln General does not agree that this Court committed a manifest error of law or fact in failing to award Northland these attorneys' fees or pre-judgment interest.

II.   COUNTERSTATEMENT OF QUESTIONS PRESENTED

    A.   WHETHER THIS COURT COMMITTED A MANIFEST ERROR OF LAW OR FACT IN FAILING TO AWARD NORTHLAND THE ATTORNEYS' FEES IT INCURRED IN DEFENDING WOOLEVER WHERE LINCOLN GENERAL ALREADY PAID IN EXCESS OF ITS PRO RATA SHARE OF THE ATTORNEYS' FEES INCURRED TO DEFEND JHM, STATTS AND WOOLEVER?

    B.   WHETHER THIS COURT COMMITTED A MANIFEST ERROR OF LAW OR FACT IN FAILING TO AWARD NORTHLAND PRE-JUDGMENT INTEREST WHERE NORTHLAND SUFFERED NO DAMAGES AS A RESULT OF LINCOLN GENERAL VOLUNTARILY AGREEING TO PAY $675,000 TOWARD A GLOBAL SETTLEMENT?

Suggested Answer to the Above:  No.

III.  ARGUMENT

    A.  Standard For Amending Judgment Under Rule 59(e)

Although Northland's brief contains a section titled: "STANDARD FOR AMENDING JUDGMENT", it completely ignores the applicable standard.  Rather, it simply makes the statement that a motion to alter or amend a judgment must be filed no later than ten days after entry of the judgment.  Fed.R.Civ.P. 59(e).  Northland than goes on to state that it "is entitled to an amendment of the Court's decision and order of August 26, 2003." (Northland's brief at p. 4)(emphasis added).  In making this statement, Northland completely ignores the standard for requesting the Court to amend the Judgment.

It is a general rule of law that:  "The purpose of a motion under Rule . . . 59(e) is to correct manifest errors of law or fact or present newly discovered evidence."  United States v. Municipal Auth. of Union Township, 181 F.R.D. 290, 293 (M.D.Pa. 1996).  A motion to alter or amend the judgment is the equivalent of a motion for reconsideration.  Marra v. Larkins, 111 F. Supp.2d 575, 581 (E.D.Pa. 2000), *affirmed without published opinion*, 2002 WL 1980413 (3rd Cir. May 21, 2002).  The standard governing a motion for reconsideration is as follows:

> "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir. 1985)(citation omitted).  Therefore, a court may properly grant a party's motion for reconsideration in any of the following circumstances:  "(1) the development of an intervening change in the law; (2) the emergence of new evidence not previously available, or (3) the need to

3

correct a clear error of law or prevent a manifest injustice." *Cohen v. Austin*, 869 F.Supp. 321, 321 (E.D.Pa. 1994)(citations omitted).

Rowles v. Automated Production Systems, Inc., 92 F.Supp.2d 424, 426 (M.D. Pa. 2000).  Moreover, contrary to Northland's claim of its "entitlement" to have the judgment amended, under Rule 59(e), "a motion to amend a judgment . . . [is] addressed to the sound discretion of the district court."  Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3rd Cir. 2001).

> B.  The Court Did Not Commit A Manifest Error of Law Or Fact In Failing To Award Northland The Attorneys' Fees It Incurred To Defend Woolever In The Underlying Actions.

As Northland points out in its motion, it expressly requested the Court prior to trial to award it all of the attorneys' fees it incurred to defend Woolever in the underlying actions.  The Court presumably rejected Northland's arguments in this regard and did not award Northland any of the attorneys' fees it incurred to defend Woolever.  By filing its present motion, Northland is in essence contending that the Court committed a manifest error of law or fact in failing to award it these attorneys' fees, and that the Court should amend the Judgment to correct these manifest errors.

JHM, Statts and Woolever qualified as insureds under both Lincoln General's and Northland's policies.  Pursuant to the identical Truckers Coverage Form used by Lincoln General and Northland, both insurers had a duty to defend all three defendants.  Lincoln General expended $91,511.35 to defend JHM and Statts, and Northland expended $65,629.59 to defend Woolever.  Although the parties stipulated as to the reasonableness of these

4

fees, neither party agreed that the other was automatically entitled to recover its attorneys' fees even if the other was found to be primary.

As a result of the Court's Order and Judgment, Lincoln General will be required to pay its policy limits of $750,000 to indemnify JHM, Statts and Woolever, and Northland will end up paying $600,000 out of its $2,000,000 policy limits. Despite its liability for $600,000 of the total settlements of $1,350,000, Northland suggests that it should not be required to pay $1 in attorneys' fees incurred to defend JHM, Statts and Woolever. Northland's attempt to shift 100% of all attorneys' fees incurred to defend JHM, Statts and Woolever to Lincoln General is inequitable, and the Court properly rejected Northland's claim in this regard.

Contrary to Northland's argument, the primary insurance carrier is not required to pay all attorneys' fees incurred in defense of the underlying action(s) where the excess carrier is required to pay all or a portion of its policy limits as a result of the exhaustion of the primary policy limits. This point was made clear by the court in <u>General Accident Insurance Company of America v. Safety National Casualty Corporation</u>, 825 F.Supp. 705 (E.D. Pa. 1993). In that case, General Accident, as the primary insurance carrier, paid approximately $5 million to defend an insured law firm against claims related to services it had provided in connection with a savings and loan association. Safety National provided excess coverage to the law firm. Eventually, General Accident and Safety National tendered their policy limits to the law firm in exchange for a complete release

5

of any further obligation to defend or indemnify the law firm. General Accident then filed a claim against Safety National to recover a pro rata share of the attorneys' fees incurred to defend the law firm.  In identifying the issue, the court stated:

> The issue presented is whether Safety National, as an excess insurer, is obligated to contribute toward the costs of defending its insured, Blank Rome.  The parties agree that the substantive law of Pennsylvania governs resolution of this issue and that the Pennsylvania appellate courts have not decided the question.

Id. at 707 (footnote omitted).  At the inception of its discussion, the court noted that:

> In this connection, there is no disagreement between the parties that a growing number, if not a majority, of jurisdictions recognize that "[t]he respective obligations as between several insurers who have covered the same risk do not arise out of contract, but are based upon equitable principles designed to accomplish ultimate justice in the bearing of a specific burden."

Id. (citations omitted).

In opposing General Accident's claim for equitable contribution, Safety National argued that it could not be liable for defense costs incurred before General Accident paid its coverage limits, since Safety National's liability as an excess carrier was not triggered until General Accident exhausted its primary limits.  Id. at 708.  In concluding that this argument was "misguided", the court stated:

> Safety National is entirely correct that liability under the "Limit of Liability" section does not "attach" until the underlying policy limits have been exceeded.  But this is merely a temporal statement about *when* liability attaches.  The dispute here is not over when Safety National's liability attached, for all agree that Safety National's liability attached only after the underlying limits were paid in settlement.  What is at issue in this case is *for what* Safety National was liable.

6

Id. at 709 (italics in original). In ultimately concluding that the excess carrier was responsible for a pro rata share of the defense costs based on the damages actually paid, the court concluded that: "Thus when the defense costs were incurred, either before or after the policy limits were exceeded, is irrelevant." Id. at 710.

The court's decision in General Accident makes perfect sense and is manifestly equitable. It recognizes that it would be inequitable to require the primary insurer to bear 100% of the defense costs where the excess carrier was also responsible for payment of a portion of the damages. Accordingly, the court apportioned the payment of defense costs based on the percentage each insurer paid of the total damages. As applied to the present case, the Court found Lincoln General to be responsible for 55.56% of the total damages ($750,000/$1,350,000), and Northland responsible for 44.44% of the total damages ($600,000/$1,350,000). The total attorneys' fees incurred to defend JHM, Statts and Woolever amount to $157,140.94. Of this amount, Lincoln General paid $91,511.35, or 58.24%. Accordingly, Lincoln General has already paid in excess of its pro rata share of the total defense costs and the Court appropriately refused to require Lincoln General to pay an even greater percentage of the total defense costs. If anything, the Court would have been justified in requiring Northland to reimburse Lincoln General for the attorneys' fees it paid in excess of its pro rata share.[1]

---

[1] The pro rata share of defense costs discussed by the court in General Accident is different from the pro rata share of indemnity payments previously discussed by the parties in this

(cont'd footnote)

7

Northland advocates a bright line rule that the primary insurer is required to pay all defense costs regardless of whether the excess insurer is ultimately found responsible to provide indemnity. Northland's bright line rule would prove unworkable and actually result in excess insurers paying more than their pro rata share of defense costs. In a case of clear liability such as was involved in the underlying actions, if a primary insurance carrier knows that it will end up paying all of the defense expenses, it would simply tender its policy limits at the inception of the case and shift all defense expenses to the excess carrier. As an example, if Lincoln General had immediately tendered its policy limits upon the filing of the Complaint in the underlying action, Northland would then have been required to pay the costs to defend JHM, Statts and Woolever. Lincoln General would have incurred essentially no attorneys' fees, and Northland would have incurred the $157,000 in attorneys' fees incurred to defend JHM, Statts and Woolever. As it turned out, Woolever benefited by Lincoln General's decision not to tender its complete policy limits, since Lincoln

---

(continued footnote)
case. In <u>General Accident</u>, the court based the pro rata share on the portion of the total damages paid by each insurer. In contrast, the parties' prior discussion of their respective "pro rata share" was based on the identical "Other Insurance" clauses contained in both policies which apportions indemnity payments based on the insurers' respective policy limits. Now that the Court has found Lincoln General to be primary it is not suggesting for purposes of the present brief that the defense costs should be apportioned based on the respective policy limits contained in the Lincoln General and Northland policies. Rather, it is suggesting that the Court adopt the equitable apportionment rule discussed in General Accident and apportion defense costs based on the percentage of the total damages paid by each insurer.

General ended up paying $91,000 in attorneys' fees that otherwise would have been incurred by Northland if Lincoln General had made an immediate tender of its policy limits. The General Accident decision recognizes the essential fairness of the excess carrier paying its pro rata share of the defense costs, since the alternative would only result in the excess carrier paying all or most of the defense costs if the primary carrier simply tendered its policy limits.

Northland cites to Diamond State Insurance Co. v. Ranger Insurance Co., 47 F.Supp.2d 579 (E.D.Pa. 1999). In that case, the court completely ignored its earlier decision in General Accident, and did not even consider principles of equity in concluding that the primary insurer was responsible for 100% of the defense costs despite that it was ultimately required to pay its policy limits and the excess carrier paid $100,000. The court relied on the alleged "traditional view", id. at 592, rather than the growing trend and majority view that favors apportionment based on "equitable principles." General Accident, supra, 825 F.Supp. at 707. Moreover, the court in Diamond State misapplied the Third Circuit's holding in Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163 (3rd Cir. 1987). Contrans involved a declaratory judgment action to determine which insurer had the duty to defend the insured. The Court ultimately held that the primary insurer was required to defend the action and the excess insurer "need not contribute coverage until [primary insurer's] policy limits are exhausted." Id. at 173. The decision in Contrans is completely in line with Guardian National, and does not stand for the proposition that the excess

9

carrier is never responsible to pay a portion of the defense costs incurred prior to the exhaustion of the policy limits. Rather, it simply provides <u>when</u> the excess carrier must begin contributing, not <u>for what</u> or <u>how much</u> the excess carrier must contribute. There is nothing in <u>Contrans</u> which is inconsistent with <u>Guardian National</u>, and it clearly does not stand for some bright line rule that the excess carrier is not responsible for any defense costs incurred prior to the primary carrier's payment of its policy limits, regardless of the amount ultimately paid by the excess carrier.

<u>Guardian National</u> and the position advocated by Lincoln General is consistent with the Court's decision in <u>Forum Ins. Co. v. Allied Security, Inc.</u>, 866 F.2d 80 (3rd Cir. 1989). In that case, the estate of an employee killed on the job by a co-employee brought a wrongful death action against the employer. Forum Insurance Company ("Forum") assumed the defense of the employer under a security guard liability policy. <u>Id.</u> at 80-81. Forum then brought a declaratory judgment action against Liberty Mutual Insurance Company ("Liberty"), which had issued a workers' compensation and employer liability policy to the employer. <u>Id.</u> at 81. The District Court concluded that there was no coverage under Forum's policy and that Liberty was responsible to provide a defense and any indemnity to the employer, and was also responsible to reimburse Forum for all defense costs incurred in defending the employer.

On appeal, the Third Circuit affirmed the District Court's conclusion that Forum's policy did not provide coverage, and that only Liberty was responsible to indemnify the employer. 866 F.2d

10

at 83-84.  However, the Third Circuit refused to order Liberty to pay the full cost of defending Allied.  866 F.2d at 84-85.  In addressing this issue, the Court stated:  "Although the district court's opinion does not discuss the issue, it appears that the district court believed that the costs of defense would follow the policy coverage, so that the insurer which must indemnify must also bear the costs of defense.  For the reasons that follow, we cannot accept this logic."  Id. at 84.  The Third Circuit went on to state:

> In *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 768 (3d Cir.1985), where more than one policy potentially covered the claims, we held that the district court properly allocated the defense costs among various insurers. Although the situation here is somewhat different, in that we have found that only Liberty's policy covers the claim, we nonetheless hold that because both Forum and Liberty had an obligation to defend, the costs of the defense Forum undertook should be apportioned between them.

Id. at 85.

Although the facts in Forum are distinguishable from the present case, the Court's above quoted statements apply equally to the present situation.  The Court made clear that the responsibility for defense costs does not automatically follow the policy that might be primary or solely responsible.  This point was made abundantly clear by the Court when it required Forum to contribute to the costs of defense despite that it held Forum's policy excluded coverage for the claim.  If an insurer who is found to have no obligation to provide coverage is not relieved of an obligation to share in the defense costs, surely an insurer who is required to provide coverage as an excess insurer should be required to pay a portion of the defense costs.

11

Northland received a clear benefit from the expenses Lincoln General and Northland incurred to defend the underlying claims. If anything, Lincoln General received no benefit from the defense of the underlying claims since the Court ultimately ruled that it must pay its policy limits. In contrast, Northland will end up paying only $600,000 of its policy limits of $2,000,0000. Accordingly, the amounts expended to defend the underlying claims directly benefited Northland by limiting its liability to an amount less than its policy limits. Considering this direct benefit to Northland, it is only fair that it pay its pro rata share of the defense costs. Since Lincoln General has already paid more than its pro rata share of the defense costs, the Court correctly refused to award Northland any of the attorneys' fees it incurred to defend Woolever.

    C.    The Court Did Not Commit a Manifest Error of Law Or Fact In Failing To Award Northland Pre-Judgment Interest.

Similar to the reasons it was appropriate for the Court to reject Northland's attempts to shift responsibility for 100% of the attorneys' fees onto Lincoln General, this Court correctly rejected Northland's attempts to recover interest on the additional $75,000 awarded by the Court.

Lincoln General voluntarily paid $675,000 to settle the underlying claims. If Lincoln General had not voluntarily paid this amount, Northland could have ended up paying its entire policy limits if the case had not settled and gone to trial. The party that benefited from the settlement of the underlying claims was Northland, not Lincoln General. Lincoln General is now required to pay its policy limits, which is the most it would

12

have been required to pay if it had let the case go to trial. In contrast, Northland potentially saved $1,400,000 as a result of Lincoln General's agreement to voluntarily pay $675,000 to settle the underlying cases.

Under the circumstances, there is no basis for Northland to seek pre-judgment interest. Lincoln General had no contractual obligation to voluntarily pay any amount to settle the underlying cases. If the case had proceed to trial and the plaintiffs recovered a judgment in excess of Lincoln General's policy limits, Lincoln General would have only been required to pay its policy limits of $750,000. It would not have been required to pay any pre-judgment interest or delay damages to the underlying plaintiffs. See Defendant's Trial Exhibit 67, Lincoln General Policy at Form CA 00 12 12 93A, Section II.A.2.a.(6), page 3 of 12, limiting Lincoln General's coverage to pay post-judgment interest. In contrast, Northland would have been required to pay the balance of the judgment and pre-judgment interest or delay damages up to its policy limits of $2,000,000. Accordingly, once again, it was only Northland that benefited from the voluntary settlement, not Lincoln General.[2]

---

[2] Lincoln General requested that it be awarded pre-judgment interest if it prevailed since the settlement clearly benefited Northland by limiting its potential liability to $1,350,000 of its policy limits of $2,000,000 even if Lincoln General prevailed on all of its claims against Northland. In contrast, to the extent Northland prevailed on its claims against Lincoln General, the settlement provided no benefit to Lincoln General since it would be required to pay its policy limits.

13

IV.   CONCLUSION

    For all the foregoing reasons, Lincoln General respectfully requests that the Court deny Northland's motion to amend the Judgment to include an award of the attorneys' fees it incurred to defend Woolever and pre-judgment interest.

    Respectfully submitted,

    McNEES WALLACE & NURICK LLC

    By /s/ Jonathan H. Rudd
       Jonathan H. Rudd
       PA. ID. No. 56880
       100 Pine Street
       P.O. Box 1166
       Harrisburg, PA 17108-1166
       (717) 237-5405

    Attorneys for Lincoln General Insurance Company

Dated:   September 23, 2003

**CERTIFICATE OF SERVICE**

I, Jonathan H. Rudd, Esquire, hereby certify that on this 23rd day of September, 2003, a true and correct copy of the foregoing document was served via the Electronic Filing System upon the following:

**Ira S. Lipsius, Esquire**
**Schindel, Farman & Lipsius LLP**
**225 West 34th Street**
**New York, NY 10122**

/s/ Jonathan H. Rudd
Jonathan H. Rudd
PA. ID. No. 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5405