UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTHLAND INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>LINCOLN GENERAL INSURANCE COMPANY,<br><br>Defendant. | FILED ELECTRONICALLY<br><br>Civil Action No.: 1:CV-01-0763<br><br>**(Hon. Yvette Kane, USDJ)** |

**REPLY BRIEF IN SUPPORT OF NORTHLAND INSURANCE COMPANY'S MOTION TO AMEND THE AUGUST 26, 2003 DECISION AND ORDER OF THE COURT**

KLETT ROONEY LIEBER & SCHORLING
Two Logan Square
18th And Arch Streets, 12th Floor
Philadelphia, PA   19103
(215) 567-7507

SCHINDEL, FARMAN & LIPSIUS LLP
225 West 34th Street
New York, New York 10122
(212) 563-1710

### A. PRELIMINARY STATEMENT

Plaintiff Northland Insurance Company ("Northland") submits this Brief in reply to Lincoln General Insurance Company's September 22, 2003 Brief In Opposition, and in further support of Northland's motion to amend the Court's August 26, 2003 Decision and Order.

Lincoln General's assertion that it is not responsible for the payment of the defense costs incurred by Northland in the underlying actions is disingenuous and totally inconsistent with the positions taken by both parties throughout this litigation. Lincoln General in its Pre-trial Memorandum at ¶¶ D, H & I (Court docket # 47), Proposed Findings of Fact and Law at ¶¶ 96, 101, 130-137 (Court docket #48), and Post-trial Proposed Findings of Fact and Conclusions of Law at ¶¶ 116, 136-137, 139-140, 160-168 (Court Docket # 61) has consistently maintained that whichever party provided primary coverage was responsible for **all** of the costs of defense. This has been Northland's position as well. *See, e. g.*, Trial Brief of Northland Insurance Company at ¶¶ B, pp. 7-17 (Court Docket # 54).

Lincoln General never raised a contrary position, prior to its Brief In Opposition, and should be estopped from asserting the inconsistent position at this time. In its submissions prior to its Brief In Opposition, Lincoln General recognized and argued that under the terms of the two policies, a *pro rata* apportionment of liability and defense costs would be appropriate only where the two policies "cover a claim on an equal basis, either primary or excess." *See* Lincoln General's Proposed Findings of Fact and Law at ¶¶ 132-137 (Court docket #48); Post-Trial Proposed Findings of Fact and Conclusions of Law at ¶¶ 163-168 (Court Docket # 61). The Court's August 26, 2003 Decision and Order determined that Lincoln General provided primary coverage while Northland provided excess coverage and precludes a *pro rata* apportionment of liability or defense costs.

Even if Lincoln General had taken a contrary position prior to its Brief In Opposition, that position is not supported by the law. Finally, we believe that Lincoln General's assertion in its Brief

in Opposition that this Court "presumably rejected Northland's arguments in this regard and did not award Northland any of the attorneys fees it incurred to defend Woolever" is incorrect (Brief In Opposition at p.4 ). Only Her Honor knows what was the intent of the Court.

Similarly, Lincoln General's arguments regarding interest are disingenuous and contradict its prior statements and submissions throughout this litigation. *See, e.g.*, Lincoln General's Post-trial Proposed Findings of Fact and Conclusions of Law at ¶¶ 162-168 (Court Docket 61).

### B. SUMMARY OF ARGUMENT

Northland's reply can be summarized as follows: (1) The Court's Decision and Order dated August 26, 2003 failed to address the parties' separate demands for attorney fees and, as such, this was an error of law that warrants amending the Court's Decision and Order; (2) Under the applicable law, Northland is entitled the attorney fees expended in defense of the underlying actions; (3) Northland is entitled to interest, at the applicable rate, on the amounts due and owing.

In opposition to Northland's request for attorney fees, Lincoln General argues that in the exercise of its equitable powers, the Court should deny Northland's request, even though Northland's request is no different from what Lincoln General itself demanded of this Court and is consistent with the position taken by both parties. Case precedent supports the defense costs and interest claims of Northland. Moreover, under principles of equity, Lincoln General should not be heard to object when Northland seeks the same remedy that Lincoln General demanded from the Court.

### C. LEGAL ARGUMENT

#### I. STANDARD FOR AMENDING JUDGMENT

The Federal Rules provide that a "motion to alter or amend a judgment" where there has

been an error in fact or in law. *See* Fed. R. Civ. P. 59.

As Lincoln concedes, Northland expressly requested $65,629.59 in attorney fees that it expended to defend Woolever in the underlying actions. (Brief In Opposition at p.4). Significantly, Lincoln also requested $91,511.35 in attorney fees that it expended in defense of the underlying actions. (Brief In Opposition at p.4). The Court's Decision and Order determined that Lincoln General provided primary coverage while Northland provided excess coverage. However, that decision does not address Northland's request for attorney fees.

In opposition to Northland's motion to amend the Court's August 26, 2003 Decision and Order, Lincoln General argues that because Northland expressly requested reimbursement of attorney fees, the Court implicitly rejected Northland's demand as inequitable. However, the Court's decision does not address either party's request for attorney fees. Accordingly, this motion to amend pursuant to Fed. R. Civ. P. 59 should be granted. *See, e.g., Contrans v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3rd Cir. 1987).

In *Contrans*, for example, where the excess insurer requested reimbursement of attorney fees but it was unclear whether the district court addressed that demand, the appellate court specifically addressed the issue and granted the motion. *Contrans*, 836 F.2d at 173. Here, as in *Contrans*, where the Court's August 26, 2003 Decision and Order declared that Northland's policy provided excess coverage but did not address Northland's request for attorney fees, the instant motion should be granted.

**II.   NORTHLAND IS ENTITLED TO RECOVER FROM LINCOLN GENERAL THE COST OF DEFENDING WOOLEVER IN THE UNDERLYING ACTIONS**

The damages sought in the Underlying Actions from Lincoln General's insureds, JHM, Statts and Woolever, were for bodily injury to plaintiffs's decedent caused by an accident, and

4

resulted from ownership, maintenance, or use of the Tractor. Lincoln General failed and/or refused to provide a defense to Woolever. Northland, the excess insurer, provided a defense to Woolever and it is entitled to recover its defense costs from Lincoln General, the primary insurer. *See Contrans v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3rd Cir. 1987); *Diamond State Insurance Co. v. Ranger Insurance Co.*, 47 F. Supp.2d 579, 592-593 (E.D.P.A. 1999). *See also, F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa. Super. 479, 541 A.2d 771 (Pa. Superior Court 1988); *First Pennsylvania Bank v. National Union Fire Insurance Company*, 397 Pa. Super. 612, 580 A.2d 799 (Pa. Superior 1990). Lincoln General has succinctly articulated the argument in paragraph 161 of it Post-Trial Proposed Findings of Fact and Conclusions of Law.

In *Contrans*, the third-circuit required the primary insurer to reimburse the excess insurer for "<u>any</u> costs already incurred in this defense." 836 F.2d at 173 (Emphasis added). In *Contrans*, Old Republic provided coverage for the tractor-trailer unit and St. Paul provided coverage for the trailer. The tractor-trailer combination was involved in an accident and personal injury lawsuits were filed. St. Paul brought an action to declare that its coverage was excess to that provided by Old Republic. 836 F.2d at 165. Old Republic responded that the policies were both primary and, accordingly, should contribute on a *pro rata* basis. *Id*. The district court granted summary judgment to St. Paul, finding that the Old Republic policy contained an "escape" clause and, therefore, under Pennsylvania Law "Old Republic's coverage was primary and St. Paul's coverage excess." *Id*. On appeal, the third circuit affirmed the district court's conclusion based on different reasoning. The third circuit compared the language of the two policies and determined that the Old Republic policy did not contain an "escape" clause. It concluded, nevertheless, that "the St. Paul policy provided only excess coverage, and that St. Paul need not provide any insurance until the Old Republic policy is exhausted." 836 F.2d at 171.

Significantly, the third circuit also granted St. Paul's request that it be reimbursed for the

amounts it expended to defend the underling actions, even though the district court did not explicitly address that question. The court stated:

> St. Paul moved for a declaration in the district court that Old Republic has primary responsibility for providing a defense of the pending civil suit. It is not clear whether the district court addressed this question. However, because the result is foreordained by our previous discussion, we will address it and grant this motion now. *Old Republic, as the primary insurer, has the primary responsibility, in accordance with its contractual obligation, to defend Contrans and Ryder in the pending Toney suit, and Old Republic must reimburse St. Paul for any costs already incurred in this defense.*

*See Contrans*, 836 F.2d at 172-173 (emphasis added).

Lincoln General's policy recognized that its obligation was ongoing and only ended "when the Liability Coverage Limit of Insurance has been exhausted by payment of judgment or settlements." *See* plaintiff's trial exhibit P-29, Section II A. The underlying actions were terminated by the settlement, all of the costs were incurred prior to the payment by Lincoln General and therefore all of theses costs were payable by Lincoln General under its policy.

Lincoln General argues that under principles of equity, it should not be required to reimburse Northland for the costs and expenses expended by Northland to defend the underlying actions. Lincoln General cites the cases *General Accident Insurance Company of America v. Safety National Casualty Corporation*, 825 F. Supp. 705 (E.D. PA 1993) and *Forum Insurance Company v. Allied Security, Inc.*, 866 F.2d 80 (3rd Cir. 1989)[1] for the proposition that the equitable thing to do in this case is to apportion defense costs and expenses on a *pro rata* basis and thereby

---

[1] Lincoln General's September 22, 2003 Brief in Opposition also refers to a case named "Guardian National." Counsel advises that this reference is incorrect and that all references in Lincoln General's brief to "Guardian National" should be to "General Accident."

6

reject Northland's request for attorney fees. However, Lincoln General's reliance on those cases is misplaced. Both cases are distinguishable on their facts.

In *General Accident*, the costs of defense were included within the limits of insurance and the policy specifically provided for pro-rata payment. Here, no such language is contained in either the Lincoln General or Northland policy and the policies provide for defense costs in excess of policy limits. In *General Accident* the excess insurer, Safety National Casualty Corporation ("Safety National"), was required to participate on a *pro rata* basis in the defense of the insured because the language of its policy so required. Safety National provided excess professional liability coverage to the law firm of Blank, Rome, Comisky & McCauley ("Blank Rome") while General Accident Insurance Company ("General Accident") provided primary coverage. The two insurers contributed their respective policy limits to settle the claims against Blank Rome. General Accident then brought an action seeking contribution from Safety National toward the defense costs incurred in defending Blank Rome. *General Accident*, 825 F. Supp. 706-707. Safety National's policy provided that it "shall follow all the terms and conditions of the" General Accident Policy. *General Accident*, 825 F. Supp. at 707. As such, based on that incorporated language, Safety National was required to participate on a *pro rata* basis in the defense of Blank Rome. The court stated:

> By incorporating into its policy the terms and conditions of General Accident's policy, Safety National incorporated General Accident's defense cost apportionment clause, which provides for a *pro rata* sharing of defense costs between insurers in the event the limits of General Accident's policy are exceeded. The plain meaning of the presence of this clause, incorporated into Safety National's policy, is that Safety National's defense obligations are contingent upon the exhaustion of General Accident's primary policy limits and limited to a *pro rata* share. As General Accident's policy limits were exceeded and the contingency satisfied, it follows that Safety National is obligated to contribute a *pro rata* share of the costs of defending Blank Rome.

7

*See General Accident*, 836 F. Supp. at 709.

Here, there is no suggestion that Northland agreed to contribute a *pro rata* share of the defense costs nor does the Lincoln General policy provide for *pro-rata* sharing of defense costs with an excess insurer. In fact, as Lincoln General concedes, Northland has insisted throughout this litigation that because its policy provided excess coverage, it is entitled to recover its attorney fees from Lincoln General. Lincoln General also insisted that because its policy provided excess coverage, or no coverage at all, it was entitled to recover its attorney fees from Northland. Lincoln General maintained that position until the Court determined that Lincoln General's policy provided primary coverage while Northland's policy provided excess coverage. Now, in opposition to Northland's request for attorney fees, Lincoln General changes its tune and argues that, in the exercise of its equitable powers, the Court should deny Northland's request, even though Northland's request is no different from what Lincoln General itself demanded of this Court.

Separately, Lincoln General quotes *General Accident* for the proposition that "as between several insurers who have covered the same risk" equity requires that they share the burden of defense on a *pro rata* basis. *See* Lincoln General's Brief In Opposition at p.6, quoting *General Accident*, 836 F. Supp. at 707. However, Lincoln General misses the obvious point that a primary insurer does not cover the same risk as an excess insurer. The primary insurer "has the primary responsibility, in accordance with its contractual obligation, to defend" the insured. *Contrans*, 836 F.2d at 173.

Lincoln General also cites the third circuit's decision in *Forum* to support its claim that it, as the primary carrier, is not required to reimburse Northland for the attorney fees incurred by Northland in defending the underlying actions. (Brief In Opposition at p.10). However, as with its citation to *General Accident*, Lincoln General's reliance on *Forum* is misplaced. *Forum* deals with two policies, each of which provided separate and distinct coverage on a primary basis. There was no issue of

primary/excess in *Forum*. The reason that the second insurer was required to pay a *pro rata* share of defense costs is that, based on the allegations in the complaint, either insurer could have provided coverage. Here, the only issue is a primary/excess and the primary insurer is obligated to pay the costs of defense. Significantly, Forum Insurance Company which sought attorney fees agreed that the costs of defense should be apportioned. 866 F.2d at 85. Here, Northland's policy provides excess coverage while Lincoln General's policy provides primary coverage.

The decisions in *Contrans* and *Diamond State* which deal with the obligations of an excess carrier, both make it clear that where the excess carrier is required to provide a defense that properly should have been undertaken by the primary insurer, the excess insurer is entitled to recover the costs of defense from the primary carrier. Here, where Lincoln General's policy provides coverage on a primary basis and Northland's policy provides coverage on an excess basis, Lincoln General had the duty to defend Woolever. As such, Northland is entitled to recover from Lincoln General, the primary insurer, the costs of defending Woolever in the underlying action. *Contrans v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3rd Cir. 1987); *Diamond State Insurance Co. v. Ranger Insurance Co.*, 47 F. Supp.2d 579, 592-593 (E.D.P.A. 1999). *See also, F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa. Super. 479, 541 A.2d 771 (Pa. Superior Court 1988); *First Pennsylvania Bank v. National Union Fire Insurance Company*, 397 Pa. Super. 612, 580 A.2d 799 (Pa. Superior 1990).

Moreover, the requirement that the primary insurer to reimburse the excess insurer where the excess insurer provides the defense that should have been undertaken by the primary insurer, prevents a primary insurer from trying to escape its obligations. An insurer, such as Lincoln General, who refuses to provide a defense to its insured is required to reimburse the excess insurer, Northland, who undertakes the primary insurer's obligation. *See, e.g., F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa. Super. 479, 541 A.2d 771 (Pa. Superior Court 1988); *First Pennsylvania Bank v. National Union Fire Insurance Company*, 397 Pa. Super. 612, 580 A.2d 799 (Pa. Superior 1990).

In *F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa. Super. 479, 541 A.2d 771 (Pa. Superior Court 1988), for example, where the excess insurer was forced to defend its insured because the primary insurer failed to provide a defense, the Pennsylvania appellate court required the primary insurer to reimburse the excess insurer for the costs of litigation. In that case, Washburnn Candy Company ("Washburn") contracted with Philip Packard ("Packard") to ship Washburn's goods. Zurich provided general liability insurance to Washburn and Fireman's Fund provided coverage to Packard. *F.B. Washburn*, 373 Pa. Super. at 481-82, 541 A.2d at 772. John Cepurneek, a Packard employee, while delivering Washburn's goods, was involved in an accident. Cepurneek, Washburn and Packard were named as defendants in an action arising from that accident.

Fireman's Fund refused to defend Washburn. Zurich provided a defense to Washburn. Washburn and Zurich then brought an action to declare their rights under the Fireman's Fund policy. *See, F.B. Washburn*, 373 Pa. Super. at 482, 541 A.2d at 773. The trial court determined that Fireman's Fund provided primary coverage while Zurich provided excess coverage. *Id*. However, the trial court also concluded that Fireman's Fund was not liable to Zurich for the legal fees incurred by Zurich to defend Washburn. Citing the doctrine of equitable subrogation, the Pennsylvania Superior court reversed that part of the trial court's decision and ordered Fireman's Fund to reimburse Zurich for the legal fees. In so doing, the court stated:

> We do not agree with the trial court's conclusion that Zurich should bear the costs of litigation by virtue of the fact that Zurich was only protecting its own interests as an excess carrier. Zurich was placed in the posture of defending Washburn only after Fireman's Fund wrongfully refused to render a defense. Thus, Zurich's duty to defend was activated under inappropriate circumstances. Moreover, under the doctrine of equitable subrogation, Fireman's liability as a primary insurer is not increased by Zurich's recovery of attorneys' fees. The duty owed to Zurich is identical to that which was owed to Washburn but was refused. *See generally Peter v. Travelers Insurance Co., supra,*

> at 375 F. Supp. at 1350. Accordingly, under the guidance of *Kelmo Enterprises v. Commercial Union Insurance Co., supra,* we find that Fireman's Fund is responsible for the counsel fees incurred by Zurich in the defense of the underlying action.

*See F.B. Washburn*, 373 Pa. Super at 485, 541 A.D.2d at 774; *see also First Pennsylvania Bank v. National Union Fire Insurance Company*, 397 Pa. Super. 612, 580 A.2d 799 (Pa. Superior 1990).

The decision in *F.B. Washburn* shows that under Pennsylvania law, the primary insurer is required to reimburse the attorney fees expended by the excess insurer who assumes the primary insurer's duty to defend its insured. Accordingly, as in *F.B. Washburn*, Lincoln General must reimburse Northland for the costs of defending Woolever in the underlying action.

Finally, Lincoln General's "parade of horribles" argument is based on the idea that as the primary carrier, it could have escaped its obligation to defend by tendering their defense to Northland, the excess insurer. (Brief In Opposition at pp. 7-9). This is a false premise. Under its policy, Lincoln General could have escaped it ongoing obligation to pay attorneys fees only by exhausting it limit "by payment of judgment or settlements." *See* plaintiff's Trial Exhibit P-29, Section II A. Lincoln General did not pay its limits and therefore had a continuing obligation to defend. As the court in *Contrans* made clear, the primary insurer "has the primary responsibility, in accordance with its contractual obligation, to defend" its insureds. *Contrans*, 836 F.2d at 173 (emphasis added).

### III. NORTHLAND IS ENTITLED TO RECOVER INTEREST ON THE AMOUNTS DUE AND OWING FROM LINCOLN GENERAL

Lincoln General argues that Northland is not entitled to prejudgement interest on the amounts due and owing, but cites no authority for that proposition. In fact, Lincoln General did not try to

distinguish the authorities cited by Northland. Implicitly, Lincoln General concedes that the Pennsylvania law provides for prejudgement interest at the applicable rate of 6%.

Instead, Lincoln General seems to argue that it did Northland a favor by settling the underlying claims and therefore Northland should not recover prejudgement interest on the amounts that Lincoln General owes to Northland. Lincoln General goes so far as to say that "[t]he party that benefitted from the settlement of the underlying claims was Northland, not Lincoln General" (Brief In Opposition at p. 12). Lincoln General seems to argue that if it had known that it would be required to reimburse Northland's defense fees and costs and also pay prejudgement interest to Northland, it could have refused to settle the underlying case and thereby force Northland to pay its entire policy limits plus prejudgement interest and/or delay damages ( Brief In Opposition at p. 13). Again, Lincoln General seems to forget its contractual obligations of good faith to its insureds. An obligation it shirked. *Contrans v. Ryder Truck Rental, Inc.*, 836 F.2d at 173. Moreover, as the court pointed out in *F.B. Washburn*, under the doctrine of equitable subrogation, the "duty owed [by Lincoln General to Northland] is identical to that which was owed to [Woolever] but was refused." *F.B. Washburn*, 373 Pa. Super at 485, 541 A.D.2d at 774. As such, Northland is entitled to recover its attorney fees from Lincoln General, with applicable prejudgement interest.

Under Pennsylvania law, Northland is entitled to prejudgement interest at the annual rate of six percent (6%). *See*, 41 P.S. § 201, 202; *see also, Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh,* 776 F.2d 1174, 1180 (3rd Cir. 1985); *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 632 (E.D.P.A. 1998). This Court has determined that Lincoln General is required to pay Northland the sum of $75,000, that sum being "the difference between what [Lincoln General] has paid to date to settle the underlying claims ($750,000) and its policy limit of $750,000." As discussed above, Northland is also entitled to recover the $65,629.59 in attorney fees that it spent defend

12

Woolever in the Underlying Actions. The two amounts total $140,629.59. The daily interest on $140,629.59 at the statutory interest rate of 6% is $23.12.

Accordingly, Lincoln General should be directed to reimburse Northland the principal sum of $140,629.59, plus prejudgement interest at the statutory interest rate of 6% on that amount from November 2000.

## CONCLUSION

For the foregoing reasons, Plaintiff Northland requests that the Court amend its August 26, 2003 decision and order to provide that, in addition to the $75,000 stated in that decision and order, Lincoln shall: (a) reimburse Northland for the $65,629.59 expended by Northland to defend Woolever in the Underlying Actions, and: (b) pay interest, at the applicable rate of 6%, on the total amount due to Northland ($140,629.59) from November 2000 to the date of judgment.

Dated: October 10, 2003
       New York, New York

                    SCHINDEL, FARMAN & LIPSIUS LLP
                    Attorneys for Plaintiff Northland Insurance Company

By:_____
   Ira S. Lipsius (IL5704)
225 West 34th Street
New York, New York 10122
(212) 563-1710
File No. 2015.67

        David Ira Rosenbaum
        KLETT, ROONEY, LIEBER & SCHORLING
        Two Logan Square, 12th Floor
        Philadelphia, PA 19103-2756
        (215) 567-7505
        Attorneys for Plaintiff Northland Insurance Co.

TO:    Jonathan H. Rudd, Esq.
        Attorney for Lincoln General
        100 Pine Street
        P.O. Box 1166
        Harrisburg, PA 17108-11661
        (717) 237-5405