IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NORTHLAND INSURANCE COMPANY,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:CV-01-0763 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **LINCOLN GENERAL INSURANCE COMPANY,** | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's motion to amend the August 26, 2003 Decision and Order of this Court. The motion has been fully briefed and is ripe for disposition. For the reasons discussed below, Plaintiff's motion to amend the judgment will be granted.

**I.   Background**

The above-captioned action commenced as a declaratory judgment action ("declaratory action") brought by the Plaintiff Northland Insurance Company to clarify the scope of its coverage of a 1979 Freightliner (Serial Number CA213HM160222) (the "tractor") involved in an accident on November 17, 1995. Plaintiff is a Minnesota corporation licensed to do business in Pennsylvania, with its principal place of business in Minnesota. Defendant Lincoln General Insurance Company is a Pennsylvania corporation with its principal place of business in Pennsylvania. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are diverse and the amount in controversy exceeds $75,000.

The complex facts of the case are summarized here. Plaintiff provided coverage for this tractor-trailer on behalf of its insured, Woolever Transportation Company ("Woolever"), while

Defendant covered the same equipment on behalf of JHM Enterprises, Inc. ("JHM").  Both Plaintiff's and Defendant's policies provided excess insurance coverage for instances when the other carrier provided primary coverage.[1]

On November 17, 1995, in Hometown, Pennsylvania, tractor-trailer driver Vernice Lee Statts ("Statts") caused a fatal accident resulting in claims against Woolever, JHM, and Statts (the "underlying claims").  The tractor was owned by JHM and scheduled on Defendant's policy issued to JHM.  This insurance policy, Number PAP 185770 0495, was in effect from April 18, 1995 to April 18, 1996 and provided $750,000 in liability coverage for each accident or loss.  Plaintiff issued a trucker's insurance policy to Woolever, which was in effect from September 1, 1995 through September 1, 1996 and provided $2,000,000 in liability coverage for each accident involving vehicles leased, hired or borrowed from Woolever.

On November 17, 1995, the date of the accident, Statts had just completed a delivery for Woolever and was headed north to Berwick, Pennsylvania to execute a delivery for JHM when the accident occurred.  At the time of the accident, the tractor displayed two placards.  One placard indicated that the tractor was "Leased to Woolever Bros." and set forth Woolever's federal and state operating authority number.  Below the Woolever placard was a placard indicating that the vehicle was

---

[1] Section V(B)(5)(a) of Northland's policy states, in relevant part, "[T]his Coverage Form's Liability Coverage is excess over any other collectable insurance for any covered 'auto' while hired or borrowed from [Woolever] by another 'trucker.'"  As Woolever subleased the Tractor to JHM, Woolever's insurer, Northland, provides excess coverage for the underlying claims.

Section V(B)(5)(a) of Lincoln General's policy states, in relevant part, "[T]his Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by [JHM] and used exclusively in [JHM's] business as a trucker and pursuant to operating rights granted to [JHM] by a public authority."  As JHM was using the Tractor exclusively in its business under its PUC authority, Lincoln General, its insurer, provides primary coverage for the underlying claims.

operating under the authority of JHM Enterprises, Inc.  Statts testified that his usual practice was to use tape to cover the placard of whichever company was not responsible for any given load.  However, on the day of the accident, Statts testified that neither placard was covered because he had run out of tape. The underlying claims were settled in the summer of 2000; however, the declaratory action filed by Plaintiff remained pending.  (Doc. No. 68 at ¶ 2).  In the declaratory action, each party maintained that the other was liable for the accident losses as the primary insurer and each party sought reimbursement of funds it contributed to the settlement that was paid under its respective policy.

The Court held a bench trial on January 27-30, 2002.  Because the tractor-trailer was en route to pick up a load for JHM, and JHM would have profited had the delivery been completed, this Court found that the tractor was operating exclusively in JHM's business at the time of the accident and that it was leased from Woolever to JHM.  (Doc. No. 64 at ¶ 9-10).  Moreover, JHM had the authority under PUC license number A00109158 to carry the load from Berwick, Pennsylvania to the subsequent delivery destination.  Accordingly, this Court ruled that Defendant provided primary coverage and Plaintiff provided excess coverage for the underlying claims.  The Court ordered Defendant to reimburse Plaintiff $75,000, the difference between what Defendant had paid to settle the underlying claims and its policy limit of $750,000.  Id. at ¶ 9-10.

Plaintiff timely filed this motion to amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which is now before this Court.  Plaintiff requests that this Court amend its Decision and Order of August 26, 2003 to "require [Defendant] to:  (a) reimburse [Plaintiff] for attorneys' fees expended by [Plaintiff] to defend Woolever in the Underlying Actions, and:  (b) pay interest, at the applicable rate, on the total amounts due to [Plaintiff]."  (Doc. No. 68 at ¶ 2).

**II. Discussion**

    **A.**    **Rule 59(e)**

Plaintiff brings this motion to amend the judgment to include an award of attorneys' feed and prejudgment interest pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

        **1.**    **Attorneys' Fees**

Regarding motions to amend the judgment to include attorneys' fees, "the federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits." Buchanan v. Stanships, Inc., 485 U.S. 265, 267 (1988). Plaintiff asserts that although it "expressly requested $65,629.59 in attorney fees that it expended to defend Woolever in the underlying actions," the Court did not address this request in its declaratory action decision. Therefore, Plaintiff claims that it should be allowed to amend the judgment to include such costs. (Doc. No. 74 at ¶ 4).

Defendant asserts that a Rule 59(e) motion is inapplicable here because the Court implicitly ruled that Plaintiff is not entitled to receive such fees. Id. at ¶ 4, 12. Therefore, according to Defendant, Plaintiff's motion to amend the judgment should not be granted. Id.

Plaintiff timely filed its motion to amend the judgment within ten days after the entry of the judgment. Fed. R. Civ. P. 59(e). Defendant correctly asserts that Rule 59(e) has been invoked to correct manifest errors of law and to present new evidence and that this Court has ultimate discretion whether to consider a Rule 59(e) motion. Cureton, 252 F.3d at 272. However, Defendant fails to address the available case law regarding Rule 59(e) as it pertains to attorneys' fees, an issue that has been addressed by the Supreme Court on several occasions.

The Supreme Court has ruled that courts may invoke Rule 59(e) if assessment of the attorneys' fees involves reconsideration of "any aspect of the decision on the merits." Buchanan, 485 U.S. 265 at 268. A postjudgment motion for costs is an appropriate Rule 59(e) motion if it seeks a change in the judgment, not merely to recover costs because of the judgment. Id. The court will not consider requests for costs that "raises issues wholly collateral to the judgment in the main cause of action, issues to which Rule 59(e) was not intended to apply." Id. at 268-9. In the declaratory action, this Court was required to decide which insurer is the primary insurer. That issue necessarily encompasses the issue of which insurer has the duty to defend. Plaintiff seeks to amend the judgment to include attorneys' fees, an expense that was an aspect of the declaratory action given the relief that was sought. Defendant acknowledges in its brief in opposition that Plaintiff expressly requested attorneys' fees prior to the Court's decision in the declaratory action. (Doc. No. 69 at ¶ 4). Therefore, Plaintiff's postjudgment motion for reimbursement of attorneys' fees is not a new and collateral issue brought about because it prevailed in the declaratory action. Rather, Plaintiff seeks to change the judgment to include an aspect of the declaratory action. Accordingly, this Court may properly consider Plaintiff's motion to amend the judgment to include attorneys' fees in this context.

    2.    **Prejudgment Interest**

Regarding the request for prejudgment interest, the Supreme Court held in Osterneck v. Ernst & Whitney, 489 U.S. 169 (1989), that a "post-judgment motion for discretionary pre-judgment interest constitutes a rule 59(e) motion to alter or amend the judgment, which must be served within 10 days." Id. at 175; Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 746 (3d Cir. 1990). Furthermore, a postjudgment motion for prejudgment interest that is adjudicated as a Rule 59(e) motion also "helps

5

further the important goal of avoiding piecemeal appellate review of judgments." Osterneck, 489 U.S. at 177. Accordingly, this Court may properly consider Plaintiff's motion to amend the judgment to include prejudgment interest.

      **B.**    **Reimbursement of Defense Costs**

It has been established through case law that the primary insurer has the primary duty to defend its insured under its contractual obligations. Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 173 (3d Cir. 1987); Diamond State Ins. Co. v. Ranger Ins. Co., 47 F.Supp.2d 579, 592 (E.D. Pa. 1999). If an excess insurer contributed to defense costs that were the responsibility of the primary insurer, it may seek reimbursement from the primary insurer for such costs. Contrans, 836 F.2d at 173; Diamond State Ins., 47 F.Supp.2d at 595. "The primary insurer . . . owes a duty to defend if the allegations of the underlying complaint potentially fall with the scope of the coverage." Diamond State Ins., 47 F. Supp.2d at 591 (citing Pac. Indem. Co. v. Linn, 766 F.2d. 754, 760 (3d Cir. 1985)). Moreover, "'[t]he traditional view is that an excess insurer is not required to contribute to the defense of the insured so long as the primary insurer is required to defend.'" Diamond State Ins., 47 F. Supp.2d at 592 (quoting Aetna Cas. & Sur. Co. Pers. Fin. Sec. Div. v. Hertz, Corp., No. 91-5238, 1993 WL 276835, at *5 (E.D. Pa. 1993).

Plaintiff argues that under the traditional view, it is entitled to reimbursement for the amount it expended to defend Woolever in the underlying claims. Defendant asserts, however, that Contrans does not establish a bright line rule that the excess carrier is not responsible for any defense costs incurred prior to the primary carrier's payment of its policy limits. Rather, Defendant contends Contrans simply provides when the excess carrier must begin contributing [defense costs]." (Doc. No.

69 at ¶ 10). This interpretation of Contrans is mistaken. The court in Contrans concluded that Old Republic Insurance Company ("Old Republic") was the primary insurer and St. Paul Fire and Marine Insurance Company ("St. Paul") was the excess insurer. Contrans, 836 F.2d at 172. It held that "Old Republic has primary responsibility for coverage and for the defense of the underlying actions, and that St. Paul, as excess insurer, need not contribute coverage until Old Republic's policy limits are exhausted." Id. at 173 (emphasis added). Contrans establishes when an excess insurer must contribute to coverage under its policy for damages resulting from the underlying claims, not when an excess insurer must contribute to the cost of defense for an insured. Accordingly, the court in Contrans ruled that the primary insurer has the primary responsibility, in accordance with its contractual obligation, to defend the other parties in the pending litigation, and the primary insurer must reimburse the excess insurer for any defense costs it incurred in representing those parties. Id. Thus, the Court will require Defendant to reimburse Plaintiff's attorneys' fees.

     Defendant's arguments on this point are unpersuasive. Defendant argues that "the primary insurance carrier is not required to pay all attorneys' fees incurred in defense of the underlying action(s) where the excess carrier is required to pay all or a portion of its policy limits as a result of the exhaustion of the primary policy limits." (Doc. No. 69 at ¶ 5). Defendant relies heavily on General Accident Insurance Co. of America v. Safety National Casualty Corp., 825 F.Supp. 705 (E.D. Pa. 1993) to support this argument. (Doc. No. 69 at ¶ 5). However, the facts of General Accident are clearly distinguishable from this case because the insurance policies involved in General Accident contained a pro rata clause. In that case, the court ruled that General Accident Insurance Company of America ("General Accident") was the primary insurer and Safety National Casualty Corporation

("Safety National") was the excess insurer.  Safety National's policy was silent regarding the defense of its insured; however, "[b]y incorporating into its policy the terms and conditions of General Accident's policy, Safety National incorporated General Accident's defense apportionment clause, which provides for a pro rata sharing of defense costs between insurers in the event the limits of General Accident's policy are exceeded."  Gen. Accident, 825 F.Supp. at 709.  Additionally, the court in General Accident found that the policies "contain language demonstrating Safety National's clear intent to participate on a pro rata basis in the defense . . . in the event General Accident's policy limits were exhausted . . . ."  Id. at 711.  Here, the policies did not contain such language and was there no intent on Plaintiff's part to share in the cost of defense.

Defendant also relies on Forum Insurance Co. v. Allied Security, Inc., 866 F.2d 80 (3d Cir. 1989) to support its position.  Again, Defendant fails to acknowledge a key distinguishable fact.  In Forum, there was no classification of primary or excess insurers.  Although one insurer was required to indemnify another insurer, the court held that both insurance companies had an obligation to defend.  Here, the Court determined that Defendant is the primary insurer.  It follows that Defendant has the duty to defend its insured.  "A component of the duty to defend necessarily includes bearing the costs and expenses of the defense."  Id. at 85.

Finally, Defendant argues that the defense costs should be apportioned between Defendant and Plaintiff because "[Plaintiff's] attempt to shift 100% of all attorneys' fees incurred to defend JHM, Statts and Woolever to [Defendant] is inequitable."  (Doc. No. 69 at ¶ 5).  Equitable contribution is

> 'the right to recover . . . from a co-obligor who shares such liability
> with the party seeking contribution.  In the insurance context, the right
> to contribution arises when several insurers are obligated to indemnify

8

> or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others . . . Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers.'

Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 49 (1st Cir. 2003) (quoting Truck Ins. Exch. v. Unigard Ins. Co., 94 Cal. Rptr. 2d 516, 521 (2000)) (emphasis added). Equitable contribution does not apply in this case because Defendant and Plaintiff are not co-obligors. The parties do not share an equal obligation to defend because this Court has found Defendant to be the primary insurer and Plaintiff to be the excess insurer. (Doc. No. 64 at ¶ 9). Defendant has provided insufficient legal support to persuade this Court to adopt the doctrine of equitable contribution. Furthermore, Defendant has not established that Pennsylvania adopts equitable doctrine in the insurance context. See Lexington, 338 F.3d at 50 ("neither Pennsylvania or Massachusetts has definitively adopted this [equitable] doctrine in the insurance context").

    **C.**    **Prejudgment Interest**

Finally, Plaintiff moves to amend judgment to include prejudgment interest. "Under Pennsylvania law, common-law damages for delay, whether true prejudgment interest or not, are awarded at the statutory rate from the date the cause of action arose." Am. Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1057 (3d Cir. 1982). Recent Pennsylvania cases and the Restatement of Contracts establish that, "the award of interest in contract disputes is not based on punitive considerations but on compensation for the loss of use of the money." Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1179 (3d Cir. 1985). The court in Benefit Trust noted that, "even though requiring the payment of interest for a period when the

litigants had no control over the case might seem unreasonable, depriving the plaintiff of the use of the money seemed equally unreasonable." Id. Furthermore, if a delay cannot be attributed to either party, then the party that is deprived of the use of its money should be awarded interest. See id. at 1178-9.

Both parties have agreed that this matter is governed by Pennsylvania law. (Doc. No. 68 at ¶ 5). Plaintiff argues that, pursuant to Pennsylvania law, it is entitled to prejudgment interest at the annual rate of six percent.[2] Id. Without providing any legal support, Defendant argues that it should not be required to pay prejudgment interest on the $75,000 that it is required to reimburse Plaintiff or on the cost of $65,629.59 to defend Woolever because only Plaintiff benefitted from Defendant's voluntary settlement. (Doc. No. 69 at ¶ 5). Defendant, however, fails to recognize that it, too, received a benefit from the settlement of the underlying claims: the chance to avoid tendering its policy limits. The Court's subsequent ruling in Plaintiff's favor, requiring Defendant to pay its policy limits, does not negate the fact that Defendant derived a potential benefit from the declaratory action. Because Defendant made the tactical decision to pursue this litigation,[3] it must also accept all of the possible outcomes, including the payment of attorneys' fees and relevant interest costs.

---

[2] 41 P.S. § 202 provides that, "[r]eference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.
  Plaintiff also makes reference to 41 P.S. § 201 (Doc. No. 68 at ¶ 5); however, § 201 is inapplicable in this case because it involves the interest rate for the "loan or the use of money in the amount of fifty thousand dollars ($50,000) or less." 41 P.S. § 201.

[3] Defendant had the opportunity to negotiate the settlement of the declaratory action.

Plaintiff is allowed prejudgment interest under the law.  Am. Enka, 686 F.2d at 1057; Benefit Trust, 776 F.2d at 1179.  Accordingly, the Court will order Defendant to pay Plaintiff $23,790.48 (interest from November 1, 2000 to August 26, 2003 at a rate of six percent on the $75,000 that Plaintiff contributed to settle the underlying claims involving JHM, Woolever, and Statts and the $65,629.59 Plaintiff expended to defend Woolever in the underlying claims).

**III.     Conclusion**

After careful consideration, the Court will grant Plaintiff's motion to amend the judgment and order Defendant to reimburse Plaintiff's attorney's fees and pay prejudgment interest.

IV. **Order**

**AND NOW**, therefore, **IT IS ORDERED THAT** the Clerk of Court shall amend the judgment (Doc. No. 65) and enter judgment for Plaintiff Northland Insurance Company and against Defendant Lincoln General Insurance Company in the amount of $164,420.07.

    S/ Yvette Kane
Yvette Kane
United States District Judge

Dated: July 30, 2004