UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORTHLAND INSURANCE COMPANY,

Plaintiff,

vs.

LINCOLN GENERAL INSURANCE COMPANY,

Defendant.

Civil Action No.: 1:CV-01-0763

**(Hon. Yvette Kane, USDJ)**

NORTHLAND INSURANCE COMPANY'S BRIEF IN OPPOSITION TO LINCOLN GENERAL INSURANCE COMPANY'S MOTION TO VACATE THE ORDER AND JUDGMENT ENTERED ON AUGUST 6, 2004 AND TO REINSTATE THE AMENDED JUDGMENT ENTERED ON AUGUST 3, 2004

**A.  PRELIMINARY STATEMENT**

On August 3, 2004, this Court entered a judgment awarding Northland Insurance Company defense costs and prejudgment interest pursuant to Pennsylvania law. On August 6, 2004, this Court amended its August 3, 2004 judgment to award Northland prejudgment interest from the date of the loss, November 1, 2000, to the date of the entry of final judgment, August 6, 2004.

Under Pennsylvania law, Northland is entitled to prejudgment interest until August 6, 2004 and, under Federal law, postjudgment interest from August 6, 2004 until the judgment is paid in full.

Lincoln now moves this Court to vacate the judgment of August 6, 2004. Lincoln claims that Northland should be entitled to prejudgment interest until August 26, 2003 and postjudgment interest from August 26, 2003 and until the judgment is paid in full.

For all the reasons stated herein, Northland respectfully requests that this Court deny

Lincoln's motion in its entirety and for such other relief as this Court may deem just and

proper.

## B. FACTS

Plaintiff, Northland Insurance Company ("Northland"), commenced this

declaratory judgment action against Defendant, Lincoln General Insurance Company

("Lincoln"), to have this Court adjudicate the parties' scope of coverage as it relates to a

1979 Freightliner involved in an accident on November 17, 1995.

This Court maintained jurisdiction over this action pursuant to 28 U.S.C. §

1332(a)(1) because the parties are diverse and the amount in controversy exceeds

$75,000.

The underlying actions settled for $1,350,000 with each insurer contributing

$675,000 towards the settlement. Northland argued that its policy only provided coverage

in excess to Lincoln's policy and only triggers upon the exhaustion of Lincoln's policy

limit. Lincoln's policy limit was $750,000. Northland, therefore, argued that it is entitled

to the difference between what Lincoln paid and what it ought to have paid, which

amounted to $75,000. Northland further argued that as primary insurer, Lincoln was

responsible for the defense of the underlying action and that Northland is entitled to the

$65,629.59 it expended in defense costs in the underlying actions and to 6% prejudgment

interest from November 2000 to the date of judgment.

In contrast, Lincoln argued that Northland's policy provided primary coverage

and that Lincoln is entitled to $75,000, defense costs and prejudgment interest.

After a bench trial held in January of 2002, this Court held that Lincoln provided

primary coverage for the loss while Northland provided excess coverage. On August 26, 2003, judgment was entered in favor of Northland in the amount of $75,000.

On September 4, 2003, Northland moved pursuant to Rule 59 of the Federal Rules of Civil Procedure to amend the August 26, 2003 judgment to award Northland the $65,629.59 it paid to defend the underlying action and for 6% prejudgment interest.

On July 30, 2004, this Court Ordered that Northland is entitled to the $65,629.59 in defense costs and for prejudgment interest from November 1, 2000 to August 26, 2003 in the amount of $23,790.48. A judgment was entered to that effect on August 3, 2004.

On August 6, 2004, this Court amended the July 30, 2004 order and the judgment of August 3, 2004 to award Northland prejudgment interest from November 2000 to August 6, 2004. Lincoln now argues that Northland is not entitled to prejudgment interest from August 26, 2003 until August 6, 2004. For the reasons stated herein, Northland opposes Lincoln's present motion and respectfully requests that Lincoln's motion be denied in its entirety.

## C.  SUMMARY OF ARGUMENT

Under Pennsylvania law, prejudgment interest is awarded from the date the cause of action arose until the date final judgment is entered. The purpose of prejudgment interest in contracts cases is to restore the non-breaching party to the position it would have been in had the breach not occurred. If a delay cannot be attributed to either party, then the party that is deprived of the use of its money should be awarded interest.

In the instant matter, Lincoln made the tactical decision to pursue this litigation and must accept all of its outcomes, including the payment of prejudgment interest. Lincoln refused to pay this court's original 2003 judgment and chose to oppose

Northland's Rule 59 motion.  Lincoln's opposition to the Rule 59 motion was truly

disingenuous in light of Lincoln's post trial briefs stating that if judgment was rendered in

its favor it was entitled to defense costs and prejudgment interest.   Lincoln had the

opportunity in August 2003 of paying Northland, or allowing the judgment to be entered

in Northland's favor for interest and attorneys fees.  Instead, Lincoln opposed the motion

and held onto Northland's funds.

Under Pennsylvania law, the law that applies to the issue of prejudgment interest,

Northland is entitled to prejudgment interest until a final judgment is issued.

Under Federal law, postjudgment interest begins to accrue when the damages are

"ascertained" in a meaningful way and not from any earlier "legally insufficient

judgment." The United States Court of Appeals for the Third Circuit has held that

damages are not ascertained in a meaningful way until a judgment is entered that awards

the prevailing party a fixed amount.

The case cited by Lincoln in its motion is inapplicable to the matter at hand.


### D.  LEGAL ARGUMENT

1.  <u>UNDER PENNSYLVANIA LAW, PREJUDGMENT INTEREST CONTINUES TO ACCRUE UNTIL A FINAL JUDGMENT IS ENTERED, WHICH IN THIS CASE OCCURRED ON AUGUST 6, 2004.</u>

Lincoln claims that Northland is not entitled to prejudgment interest from August

26, 2003 until final judgment was entered on August 6, 2004. Such a finding is wholly

without basis and contravenes the purpose of Pennsylvania's awarding of prejudgment

interest.

As this Court cited, "the award of interest in contract disputes is not based on

punitive considerations but on compensation for the loss of use of the money." <u>Benefit</u>

Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1179 (3d Cir.

1985). It follows, therefore, that prejudgment interest continues to accrue until a final

judgment is entered, thereby entitling the party that has been deprived of the use of its

money, the use of its money.

This reasoning was espoused in Penneys v. Pennsylvania Railroad Co., 408 Pa.

276, 183 A.2d 544 (1962). The Supreme Court of Pennsylvania held that the prevailing

party was entitled to prejudgment interest from the date of the loss until entry of

judgment, even though nearly seven years were consumed by the trial judge in making its

adjudication. The Court reasoned that "although it may appear unreasonable to require

appellant to pay interest for a long period when it had no control over the litigation, it

appears equally unreasonable to deprive appellees (the prevailing party) of the use of

their money during a period when they also had no control over the course of the

litigation." The Court held that "since appellant had use of the money represented by

appellees' loss throughout the course of the litigation," the reasoning behind

Pennsylvania's awarding of prejudgment interest directs the Court to have the

prejudgment interest continue to accrue until the later date.

Here, Lincoln's decision to litigate the issues that led to the delay between August

26, 2003 and August 6, 2004, namely the underlying defense costs and prejudgment

interest, was more than just a poor business decision; it was a willful vexatious delay

tactic. When Northland moved to amend the August 26, 2003 judgment to include

defense costs, Lincoln opposed and contrived an argument that despite the finding that

the Lincoln policy was primary, Northland must contribute in defending the underlying

action. This argument was in direct contradiction to Lincoln's position before and after

trial that Northland's policy was primary and that Lincoln should not be responsible at all

for defense costs. Moreover, Lincoln opposed Northland's motion to amend the August

26, 2003 judgment to include prejudgment interest without citing any authority

whatsoever that Northland is not entitled to such interest.

Lincoln could have paid the full amount it owed, including defense costs and

prejudgment interest, in August of 2003. Instead, Lincoln chose to litigate the matter,

thereby depriving Northland the use of its money. Northland was not entitled to the use of

the money it was deprived of until August 6, 2004, when this Court entered a judgment in

Northland's favor. Therefore, under Pennsylvania law, prejudgment interest must

continue to accrue until August 6, 2004, the date that Northland became entitled to final

judgment.

Moreover, Pennsylvania case law supports the fact that prejudgment interest

continues to accrue until a final judgment is entered. In Arthur v. Kuchar, 546 Pa. 12, 682

A.2d 1250 (1996), the issue was whether prejudgment interest stops accruing at the end

of the first entry of judgment or if the interest continues to accrue until the revised, final

entry of judgment. The Supreme Court of Pennsylvania ruled that since the previous

judgment was set aside, prejudgment interest continues to accrue until the date of the next

valid award or decision. The Court, citing McFadden v. Hanft, 166 Pa.Super. 261, 70

A.2d 450 (1950), held that "the outcome of the case remains 'reasonably in doubt' until

the trial court enters a final judgment." The court further held that "[d]elay damages do

not penalize a defendant that chooses to go to court; they simply do not permit a

defendant to profit from holding money that belongs to the plaintiff." Therefore,

prejudgment interest continues to accrue until the prevailing party no longer remains

reasonably in doubt as to the final judgment and until the prevailing party is entitled to the use of its money. See, also, Westinghouse Electric Corp., 72 Pa.Cmwlth. 199, 456 A.2d 694; Printed Terry Finishing v. City of Lebanon, 264 Pa. Superior Ct. 192, 399 A.2d 732 (1979) (an unsuccessful appeal does not suspend the accrual of prejudgment interest).

Here, a final judgment in Northland's favor was entered on August 6, 2004. Lincoln profited from holding money that belonged to Northland, thereby depriving Northland of use of its money. Therefore, pursuant to Pennsylvania law, prejudgment interest continued to accrue until August 6, 2004.

2.  UNDER FEDERAL LAW, POSTJUDGMENT INTEREST DOES NOT BEGIN TO ACCRUE UNTIL A FINAL JUDGMENT IS ENTERED, WHICH IN THIS CASE OCCURRED ON AUGUST 6, 2004.

In Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 1200 S.Ct. 1570 (1990), the Supreme Court was called upon to determine "the date from which postjudgment interest should be calculated" pursuant to 28 U.S.C. § 1961. Before the Court were three possible dates, August 22, 1979, December 2, 1981 and December 4, 1981. On August 22, 1979, a jury found in Bonjorno's favor in the amount of $5,445,000. Kaiser moved for a new trial as to damages and on December 2, 1981, a jury returned a verdict in Bonjorno's favor, this time in the amount of $9,567,939. Final judgment was entered on December 4, 1981.

In rejecting August 22, 1979 as the date from which postjudgment interest is calculated, the Court held that the August 22, 1979 judgment was "legally insufficient," Kaiser, 494 U.S. at 834, and that it would be "counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment."

Kaiser, 494 U.S. at 836. The Court went on to hold that the latest date, December 4, 1981, is the date from which interest properly runs.

After the August 26, 2003, judgment, Northland moved pursuant to Rule 59 of the Federal Rules of Civil Procedure to amend the judgment to include defense costs and prejudgment interest.

If a party makes a timely Rule 59(e) motion, the judgment loses its finality. Browder v. Director, Department of Corrections, 434 U.S. 257, 267, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978).  The timely filing of a postjudgment motion pursuant to Fed. R. Civ. P. 59 automatically "affect[s] the finality of the judgment," Fed.R.Civ.P. 59 Advisory Committee Notes (1995) because such a motion seeks to alter the judgment or reverse decisions embodied in it. In this matter, since the August 26, 2003 order lacks the finality of the judgment, postjudgment interest should not begin to run until the August 6, 2004 judgment.

In Eaves v. County of Cape May, 239 F.3d 527 (3d Cir. 2001), the court addressed the issue of the date that postjudgment interest accrues when there was a later amended judgment. On May 1, 1998 a jury found in Eaves' favor. On May 11, 1998, Eaves filed post trial motions seeking attorneys' fees and prejudgment interest. On August 11, 1998, the court entered an amended judgment in favor of Eaves for such fees without quantifying the attorneys' fees. On motion to quantify the fees, the Court amended its August 11, 1998 judgment on January 27, 2000.

In determining whether, according to 28 U.S.C. § 1961, postjudgment interest accrues from August 11, 1998 or January 27, 2000, the Court held that 28 U.S.C. § 1961 requires that the judgment at issue award a fixed amount to the prevailing party in order

to trigger the post-judgment interest period. The Court, therefore, found that the

postjudgment interest does not begin to run until January 27, 2000.

Here, Lincoln claims that Northland is entitled to postjudgment interest from

August 26, 2003 and not August 6, 2004. The judgment on August 26, 2003 did not

award Northland defense costs or prejudgment interest and damages were in no way final

or ascertainable. The final ascertainable judgment that awards a fixed amount was

entered on August 6, 2004. Postjudgment interest, therefore, began to accrue to August 6,

2004. As discussed earlier, pursuant to Pennsylvania law, and to compensate Northland

for not having the use of its money, prejudgment interest applies to the award from

August 26, 2003 through August 6, 2004.

3.  THE CASE LAW CITED BY LINCOLN IS NOT APPLICABLE

In support of its present motion, Lincoln cites but one case for its authority.

Lincoln cites Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88 (3d Cir. 1993),

which stands for the proposition that postjudgment interest begins to accrue once liability

and damages becomes meaningfully ascertained. Lincoln then incredibly argues that

liability and damages in this case, including defense costs and prejudgment interest, were

entirely ascertained after the judgment of August 26, 2003. Lincoln argues this much

despite bitterly litigating these very issues after the August 26, 2003 judgment was

entered. Instead of allowing Northland to modify the August 26, 2003 judgment to reflect

defense costs and prejudgment interest, Lincoln opposed the modification and argued that

Northland is not entitled to such damages. Now comes Lincoln and argues that

Northland's entitlement to defense costs and prejudgment interest was clear and

established after the August 26, 2003 judgment.

By virtue of Lincoln's opposition to Northland motion to amend the August 26, 2003 judgment, thereby causing the unnecessary delay in final adjudication, liability and damages did not become ascertainable until August 6, 2004. In any event, the law in this Circuit is that damages are not ascertainable until there is a judgment that awards a fixed amount to the prevailing party, which in our case, occurred on August 6, 2004. Eaves v. County of Cape May, 239 F.3d 527 (3d Cir. 2001)

More importantly, the facts in Loughman differ from the facts in our case. In Loughman, the Court held that postjudgment interest begins to accrue from the date of the original judgment and not from the date when judgment was entered on a retrial on damages. The Court, citing Kaiser, stated that the purpose of 28 U.S.C. § 1961 "is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." The Court then found that the damages were indeed ascertainable after the original judgment. To compensate the prevailing parties for the lack of the use of their money, the Loughman Court awarded postjudgment interest from the original judgment. In Loughman had the Court not awarded the prevailing parties postjudgment interest from the date of the original judgment, prevailing plaintiffs would have been left with no compensation at all. Therefore, in order not to contravene the purpose of 28 U.S.C. § 1961, the Loughman Court found that postjudgment interest begins to accrue from the date of the original judgment.

Here, awarding Northland postjudgment interest from August 6, 2004 does not contravene the purpose of 28 U.S.C. § 1961 because under Pennsylvania law, Northland is entitled to prejudgment interest until that date and will be compensated for the loss of

use of its money.

## E.  CONCLUSION

Under Pennsylvania law, Northland is entitled to prejudgment interest until August 6, 2004. Under Federal law, Northland is entitled to postjudgment interest from August 6, 2004. For all the foregoing reasons, Northland opposes Lincoln's motion to vacate the judgment of August 6, 2004 and reinstate the judgment of August 3, 2004. Northland respectfully requests that this court deny Lincoln's motion in its entirety and for such other relief this court deems just and proper.


Dated:  August 31, 2004
        New York, New York


                              SCHINDEL, FARMAN & LIPSIUS LLP
                              Attorneys for Plaintiff Northland Insurance
                              Company




                              By:_____
                              Ira S. Lipsius (IL5704)
                              SCHINDEL, FARMAN & LIPSIUS, LLP
                              225 West 34th Street
                              New York, New York 10122
                              (212) 563-1710
                              File No. 2015.67


                              David Ira Rosenbaum
                              RAWLE & HENDERSON, LLP
                              One South Penn Square, 16th Floor
                              Philadelphia, PA  19107

(215) 575-4378
Attorneys for Plaintiff Northland Ins. Co.

TO:   Jonathan H. Rudd, Esq.
Attorney for Lincoln General
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-11661
(717) 237-5405