IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTHLAND INSURANCE COMPANY, | : | FILED ELECTRONICALLY |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | No. 1:01:CV-763 |
| LINCOLN GENERAL INSURANCE COMPANY, | : | |
| | : | |
| Defendant | : | (JUDGE KANE) |

**DEFENDANT LINCOLN GENERAL INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR REINSTATEMENT OF THE AMENDED JUDGMENT ENTERED ON AUGUST 3, 2004 AND VACATING OF THE ORDER AND JUDGMENT ENTERED ON AUGUST 6, 2004**

I.   ARGUMENT

A.   Federal Law Governs The Point In Time When Prejudgment Interest Ends and Post-Judgment Interest Begins.

Northland erroneously argues that Pennsylvania law governs the point in time when prejudgment interest ends and post-judgment interest begins. The point in time at which post-judgment interest begins is governed by 28 U.S.C. § 1961(a). Since prejudgment and post-judgment interest cannot overlap, it is apparent that prejudgment interest must stop at the point post-judgment interest begins under 28 U.S.C. § 1961. Accordingly, this Court's analysis of the present issue must be based on federal law, and not state law. Pennsylvania state law simply governs the rate of prejudgment interest, the standard for

awarding prejudgment interest, and the date prejudgment interest begins. It does not govern when post-judgment interest begins and prejudgment interest ends.[1]

>   B.   The District Court's Judgment Of August 26, 2003 Was A Final Judgment, And In Any Event, A Final Judgment Is Not Necessary For The Commencement Of Post-Judgment Interest.

Northland argues that a final judgment is required for post-judgment interest to commence. Northland also argues that the Court's August 26, 2003 judgment lost its finality when Northland filed its Rule 59 motion. Northland is incorrect on both arguments.

First, the Third Circuit has held that a judgment does not need to be a final judgment in order for post-judgment interest to commence. See In Re Lower Lake Erie Iron Ore Antitrust Litigation, 998 F.2d 1144, 1177-1178 (3rd Cir. 1993). The Third Circuit reiterated this rule of law in a case relied upon by Northland. See Eaves v. County of Cape May, 239 F.3d 527, 530 n.6 (3rd Cir. 2001) ("In Re Lower Lake Erie Iron Ore Antitrust Litigation, 998 F.2d 1144, 1177-78 (3rd Cir. 1993) (stating that § 1961 does not mandate that judgment from which interest is calculated be final judgment)"). Accordingly, it is clear that a

---

[1] Northland argues that the purpose of prejudgment interest is to compensate a plaintiff who has been deprived of the use of its money. The same is true of post-judgment interest. Accordingly, simply because Lincoln General did not pay the Judgment entered on 8/26/03 does not mean Northland will be deprived of interest. It will simply receive post-judgment rather than prejudgment interest.

judgment does not need to be a final judgment in order for post-judgment interest to commence.

Second, it is clear that this Court's Judgment of August 26, 2003 constitutes a final judgment. Northland suggests that a judgment loses its finality if a Rule 59 motion is filed. In support of this argument, Northland relies upon <u>Browder v. Director, Department of Corrections</u>, 434 U.S. 257, 267, 98 Sup.Ct. 556, 54 L.Ed. 2d 521 (1978). In <u>Browder</u>, the Supreme Court addressed the issue as to whether the Court of Appeals had jurisdiction to hear an appeal from the District Court's ruling on a *habeas corpus* petition related to an underlying state court conviction for rape. One of the issues was whether the petitioner had filed a timely appeal. In concluding that the petitioner had not filed its appeal in a timely manner, the Court pointed out that no Rule 59 motion was filed in a timely manner which would have tolled the period for filing the appeal. Specifically, the Court stated:

> The rationale behind the tolling principle of the Rule is the same as in traditional practice. 'A timely petition for a re-hearing tolls the running of the [appeal] period because it operates to <u>suspend the finality of the...court's judgment</u>, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties.' Department of Banking v. Pink, 317 U.S. 264, 266 (1942).

<u>Id</u>. at 267 (emphasis added). As the Supreme Court made clear, a Rule 59 motion does not destroy the finality of a judgment, it simply "suspends" the finality of the judgment for purposes of filing an appeal.

3

Northland's argument that a Rule 59 motion destroys the finality of a judgment, and therefore precludes the award of post-judgment interest, would result in a significant inequity in many instances where the plaintiff was not entitled to pre-judgment interest.  In such a case, the plaintiff, despite having obtained a judgment which was not modified or altered after the court resolved the Rule 59 motion would be precluded from obtaining post-judgment interest for the period of time in which it took the court to resolve the Rule 59 motion.  There would be no basis for delaying the award of post-judgment interest simply because the losing party files an unsuccessful Rule 59 motion.  If that was the rule, then any losing party would simply file a Rule 59 motion simply to delay the commencement of post-judgment interest.  Undoubtedly, if this Court had not awarded pre-judgment interest, Northland would be arguing vigorously that post-judgment interest commenced on August 26, 2003.

C. **This Court's August 26, 2003 Judgment Was Legally Sufficient.**

Northland seems to imply that this Court's August 26, 2003 Judgment was "legally insufficient" and therefore, post-judgment interest did not begin to run from the August 26, 2003 Judgment. In support of this argument, Northland relies on Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 1200 S.Ct. 1570 (1990).  Although the Supreme Court in that case did conclude that post-judgment interest did not run until the latter of two judgments, the Court specifically held that the first judgment

4

was "legally insufficient". It is significant that the losing party is the one who moved for a new trial in the Kaiser case.

In contrast, there was no finding by this Court that the Judgment of August 26, 2003 was legally insufficient. Rather, in its subsequent Memorandum and Decision of July 30, 2004, this Court simply applied the findings and conclusions it reached in its August 26, 2003 Memorandum and Decision to Northland's request for the attorneys' fees it incurred in defending the underlying actions and pre-judgment interest. This Court did not need to make any additional findings in order to award Northland the attorneys' fees incurred in defending the underlying action and prejudgment interest.

> D. The Court's Award Of Attorneys' Fees And Pre-Judgment Interest Was Based On The Findings And Conclusions Set Forth In Its Memorandum And Decision Of August 26, 2003

Northland claims that Lincoln General's liability and damages did not become ascertainable until August 6, 2004. Accordingly, Northland argues that this Court should not follow the Third Circuit's decision in Loughman v. Consol-Pennsylvania Coal Company, 6 F.3d 88, 98 (3rd Cir. 1993). Initially, Northland misreads the Court's decision in Loughman. The Third Circuit stated "The extent to which liability and damages, as finally determined, are ascertained or established in the first judgment…" Id. Northland essentially ignores the Third Circuit statement "as finally determined." It is undisputed that the damages "as finally determined" by this Court were established and ascertained from its Memorandum and Decision of August 26, 2003. There was no change in this Court's award of $75,000, and

5

the August 3 and 6, 2004 Judgments also included the $75,000 awarded in the August 26, 2003 Judgment.  Further, the amount of attorneys' fees was stipulated to by the parties.  In both Lincoln General's and Northland's pretrial memoranda, they stipulated to the amount of each other's attorneys' fees incurred in defending the underlying actions.  The amount of pre-judgment interest is based on a statutory rate, and there was no additional findings this Court needed in order to calculate the amount of pre-judgment interest.

It is irrelevant that Lincoln General opposed Northland's request for attorneys' fees and prejudgment interest since this Court rejected Lincoln General's arguments.  As the Third Circuit made clear, it is the district court's decision which is the focal point of the analysis as to when post-judgment interest commences.  In this case, the Court's decision to award attorneys' fees and pre-judgment interest was based on its previous finding that Lincoln General's policy was primary, and not on some additional factual finding made after August 26, 2003.

It is also significant that Northland requested in its proposed findings of fact and conclusions of law filed both before and after trial that Lincoln General pay Northland both the $75,000 in remaining policy limits, as well as Northland's defense costs of $65,629.59.  Northland also requested pre-judgment interest.  Accordingly, if Northland's request had been granted as initially made, this Court's judgment of August 26, 2003 would have been for $164,420.07, and post-judgment interest

6

would have run on the $164,420.07 from August 26, 2003 until the date the judgment was paid in full.

The present case is distinguishable from the situation involved in Eaves, supra, 239 F.3d 527 (3rd Cir. 2001). In that case, the District Court found in favor of the plaintiff in an employment discrimination case and awarded plaintiff her attorneys' fees incurred in the action pending before the District Court. Accordingly, plaintiff made a motion under Rule 54(d) for her attorneys' fees, and the Third Circuit ultimately concluded that post-judgment interest on the award of attorneys' fees did not commence until the final judgment which included the attorneys' fees. In contrast to Eaves, Northland sought the attorneys' fees it incurred in defending the two underlying state court actions, and its claim for attorneys' fees was a substantive element of the damages it proved at trial. See Rule 54(d)(2). There is a significant distinction between seeking to recover attorneys' fees incurred in a separate action which is an element of the case to be proven at trial and a post-judgment request pursuant to Rule 54(d) for the attorneys' fees incurred in the pending action. Northland's attorneys' fees incurred in defending the underlying actions could have been ascertained at the time of this Court's Memorandum and Decision of August 26, 2003. In contrast, the attorneys' fees incurred by the plaintiff in Eaves could not have been ascertained until after the Court entered judgment in favor of Eaves, especially considering that the attorneys' fees would continue to increase up through the time of the Court's final judgment awarding such fees.

7

## II. CONCLUSION

This Court's decision on the pending motion should be based on an analysis of 28 U.S.C. § 1961 and the federal law governing the commencement of post-judgment interest. Although Northland would like this Court to establish a rule of law which would delay the commencement of post-judgment interest simply because the pre-judgment interest rate happens to be higher than the post-judgment interest rate, such a rule of law could have significant consequences to future litigants. It would effectively eliminate the ability for future plaintiffs who are not awarded prejudgment interest to obtain any form of interest pending the Court's determination of a Rule 59 motion. Further, simply because the post-judgment interest rate is less than the prejudgment interest rate at the current point in time, does not mean this will continue to be the case. It is possible, if not probable, that at some point in the future the post-judgment interest rate will once again be greater than the prejudgment interest rate. This Court's decision should not be based on whether the post-judgment interest rate is greater or less than the prejudgment interest rate, but on a rule of law that can be applied in all situations regardless of whether prejudgment interest is awarded, or if the prejudgment interest rate is less than the post-judgment interest rate. Northland's result-oriented arguments should be rejected, and this Court should reinstate its August 3, 2004 Amended Judgment, which correctly determined that prejudgment interest should stop at August 26,

2003, and post-judgment interest should run from that point forward until the judgment is paid in full.

                              Respectfully submitted,

                              By /s/ Jonathan H. Rudd
                                 Jonathan H. Rudd, Esquire
                                 PA. I.D. No. 56880
                                 McNees Wallace & Nurick LLC
                                 100 Pine Street
                                 P.O. Box 1166
                                 Harrisburg, PA  17108-1166
                                 (717) 237-5405

                                 Attorneys for Defendant
                                 Lincoln General Insurance
                                 Company

Date:  September 3, 2004

**CERTIFICATE OF SERVICE**

I, Jonathan H. Rudd, Esquire, hereby certify that on this 3rd day of September, 2004, a true and correct copy of the foregoing document was served via the Electronic Filing System upon the following:

**Ira S. Lipsius, Esquire**
**Schindel, Farman & Lipsius LLP**
**225 West 34th Street**
**New York, NY 10122**


　　　　　　　　　　　　　　__/s/ Jonathan H. Rudd___
　　　　　　　　　　　　　　Jonathan H. Rudd