**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3472

NORTHLAND INSURANCE COMPANY

v.

LINCOLN GENERAL INSURANCE COMPANY;
J.H.M. ENTERPRISES, INC.; VERNICE L. STATTS;
SHERILL J. MULLIGAN; DENIS A. MULLIGAN;
ROBERT E. KRAPF; UTE L. HETLAND CLARK, as Administrators
of the Estate of Karin Clifford;
PATRICIA R. CLIFFORD, Administrator of the
Estate of Robert R. Clifford

WOOLEVER BROTHERS TRANSPORTATION, INC.,

*3rd Party Defendant*

Lincoln General Insurance Company,

*Appellant*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 01-cv-0763)
District Judge: Honorable Yvette Kane

Argued October 20, 2005

Before: SCIRICA, Chief Judge, VAN ANTWERPEN and ALDISERT, Circuit Judges.

(Filed October 27, 2005 )

Jonathan H. Rudd, Esq. (Argued)
McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17108
    *Counsel for Appellant Lincoln General Insurance Company*

Ira S. Lipsius (Argued)
Schindel, Farman & Lipsius, LLP
14 Penn Plaza, Suite 500
New York, New York 10122
    *Counsel for Appellee Northland Insurance Company*

Andrew R. Spiegel
Law Office of Andrew R. Spiegel
3901 A. Main Street
Philadelphia, PA 19127
    *Counsel for 3rd Party Defendant Woolever Brothers Transportation, Inc.*

OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Appellant Lincoln General Insurance Company ("Lincoln") appeals from an order and judgment of the District Court dated August 26, 2003, as amended August 3, 2004 and August 6, 2004, in favor of Appellee Northland Insurance Company ("Northland"). The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.[1]

---

[1] We pause to confirm our jurisdiction. Although unclear from the parties' jurisdictional statements in their briefs, oral argument confirmed that the "in excess" requirement of 28 U.S.C. § 1332 is satisfied because Northland's complaint sought, *inter alia*, attorney's fees in the underlying litigation arising from the accident. In addition, the in excess requirement is satisfied because Lincoln, in answering the complaint, asserted a $675,000 compulsory counterclaim. Such counterclaims may be considered for purposes of calculating the amount in controversy. *See, e.g., Spectacor Mgmt. Group v. Brown*, 131 F.3d 120, 121 (3d Cir. 1997) (holding where defendant "elects not to file a motion to dismiss for lack of jurisdiction, but answers a complaint by asserting a compulsory counterclaim, the amount of that counterclaim may be considered by the court in determining if the amount in controversy exceeds the statutory requirement for diversity jurisdiction"). Our jurisdiction is thus proper.

I.

On November 17, 1995, a tractor trailer truck operated by Lincoln's insured, J.H.M. Enterprises, Inc. ("JHM") was involved in a motor vehicle accident in Hometown, Pennsylvania, resulting in two fatalities. At the time of the accident, Lincoln provided coverage for the vehicle on behalf of JHM, while Northland provided coverage for the same vehicle on behalf of its insured, Woolever Brothers Transportation Company ("Woolever"). Specifically, the vehicle involved in the accident was insured by both Northland and Lincoln for an overlapping period of time that included the date of the accident: Lincoln's coverage of the vehicle for insured JHM ran from April 18, 1995 to April 18, 1996 in the amount of $750,000 in liability coverage for each accident or loss, and Northland's coverage of the vehicle for insured Woolever was in effect from September 1, 1995 to September 1, 1996 in the amount of $2,000,000 in liability coverage for each accident or loss.

In addition to providing coverage for the same vehicle at the same time, Lincoln and Northland had elected to use identical policies possessing identical language. In pertinent part, the language in both JHM's policy (underwritten by Lincoln) and Woolever's policy (underwritten by Northland) stated:

> a. This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a trucker and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectable insurance for any covered 'auto' while hired or borrowed from you by another 'trucker'.
>
> However, while a covered 'auto' which is a 'trailer' is connected to a power unit, this Coverage Form's Liability coverage is:
> (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered 'auto'.
> (2) Excess if the power unit is not a covered 'auto'.
>
> b. Any Trailer Interchange Coverage provided by this Coverage

>Form is primarily for any covered 'auto'.
>
>c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered 'auto' you own and excess insurance for any covered 'auto' you don't own.

On the basis of this language, both Northland and Lincoln took the position after the accident that the other was liable as the primary insurer. Ultimately, on June 22, 2000, Northland filed a complaint against Lincoln in the United States District Court for the Eastern District of Pennsylvania seeking a declaratory judgment against Lincoln on grounds that it had the primary obligation to provide coverage for the vehicle at the time of the accident. After a bench trial, the District Court concluded, on the basis of the parties' policies and the underlying facts, that Lincoln was obligated to provide primary coverage and that Northland was obligated to provided excess coverage. It thereupon ordered Lincoln to pay Northland $75,000, the difference between Lincoln's policy limit of $750,000 and the $675,000 that Lincoln had already paid to date by settling the underlying claims.

Subsequently, the District Court granted Northland's motion pursuant to Fed.R.Civ.P. 59(e) to amend the judgment, amending its August 26, 2003 judgment and ordering Lincoln to pay prejudgment interest through that date and to reimburse Northland's attorney's fees. Shortly thereafter, the District Court amended its judgment again, requiring Lincoln to pay Northland prejudgment interest through August 6, 2004. After Lincoln's timely notice on August 25, 2004, this appeal followed.

II.

Lincoln challenges only the District Court's legal conclusions.[2] As to the correct construction and legal operation of an insurance policy, we exercise plenary review. *See, e.g., Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002); *New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992). Because our jurisdiction is premised upon diversity of the parties, we must apply the substantive law of the state in which the action arises. *See, e.g., Colantuno v. Aetna Ins. Co.*, 908 F.2d 908, 909 (3d Cir. 1992) (citing *Erie R. R. v. Tompkins*, 304 U.S. 64 (1938)). In construing a policy, if the words of the policy are clear and unambiguous, we must give them their plain and ordinary meaning. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760-61 (3d Cir. 1985). If a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Id*. at 761.

III.

Lincoln first contends that a 1990 lease found inside the vehicle on the date of the accident proves that Woolever was the lessor of the vehicle, and argues from this that JHM did not use the vehicle exclusively on the date of the accident. This argument is unpersuasive for the reason stated by the District Court, which is supported by our review of the record: the parties reformed their contract and abandoned the 1990 lease prior to 1995, such that the 1990 lease does not accurately reflect the actual course of lease dealings between JHM and Woolever as of the date and time of the

---

[2] In the first argument of its reply brief, and again at oral argument, Lincoln expressly abandoned any challenge it had to the District Court's factual findings. Even were this not so, our review of the record confirms that none of the District Court's findings were clearly erroneous. *See, e.g., Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 259 (3d Cir. 2004) (reiterating that we review a district court's factual findings for clear error).

accident. As the District Court correctly found, in addition to the fact that the 1990 lease was no longer in effect when the accident occurred, the applicable trip lease had ended, by its own terms, the morning of the date of the accident. Because our review of the record confirms that these findings of the District Court are not clearly erroneous, the parties' following policy language controls:

> c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered 'auto' you own and excess insurance for any covered 'auto' you don't own.

Drawing upon an alternative suggestion made by the District Court, Lincoln argues next that a sub-lease was created prior to the accident, whereby JHM's use of the vehicle at the time of the accident was not exclusive. Yet even assuming *arguendo* that the 1990 lease were still in effect and that the vehicle had been returned to JHM's possession at the time of the accident pursuant to a sub-lease, we agree with Northland that the outcome would be the same, as this time the parties' following policy language would control:

> a. This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a trucker and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectable insurance for any covered 'auto' while hired or borrowed from you by another trucker.

As a result, we conclude that the District Court's factual finding that JHM was in exclusive possession of the vehicle at the time of the accident necessarily controls our analysis under section (a.) or, alternatively, section (c.) of the parties' relevant policy provisions.

To the extent Lincoln argues that the parties' policy language is ambiguous, the District Court correctly found that the Northland and Lincoln policies contain identical terms, because both utilized the same standard contract form. We have discussed the critical language of these identical

policies above, and find no ambiguity.[3]

Because the parties' policy language is both identical and unambiguous, the District Court correctly determined that this dispute turns on the factual question of which entity owned (or, alternatively, hired or borrowed) the vehicle, and whether such possession was exclusive. Our review of the record as to the relevant findings of the District Court reveals no error, and certainly not clear error. We thus conclude that Lincoln's contentions with respect to the significance of the 1990 lease—and the alleged errors with respect to the District Court's alternative sub-lease analysis—are without merit.

Lincoln next contends that JHM and Woolever memorialized purported modifications to the 1990 lease *after* the 1995 accident, resulting in fraudulent misrepresentations that void Lincoln's coverage obligations. We find this argument unpersuasive for two reasons. First, as discussed above, Lincoln may not now be heard to complain that the District Court erred in its factual findings about alleged misrepresentations in the trip leases and logs that JHM and Woolever memorialized after the accident. Second, review of the record confirms that the District Court's findings here are not clearly erroneous. *See, e.g., United States v. Roman*, 121 F.3d 136, 140 (3d Cir. 1997) (factual findings are clearly erroneous only if they are unsupported by substantial evidence, lack adequate

---

[3] As the District Court correctly observed, the policies do not define the words "borrow" and "exclusive." Because these words are clear and unambiguous, as is the paragraph in which they appear, we are obligated to give them their plain and ordinary meaning. *See Pac. Indem. Co.,* 766 F.2d at 760-61. Webster's defines "borrow" to mean "to take from another by request and consent, with a view to return the thing taken and return it or its equivalent"; and "exclusively" to mean "to the exclusion of all others." It is based, of course, on the root "exclusive," which means, not surprisingly, "excluding all others" and, more precisely, "not shared or divided; sole; single." Webster's New Universal Unabridged Dictionary 211, 638 (2d ed. 1983).

evidentiary support, are against the clear weight of the evidence, or if a district court has misapprehended the weight of the evidence). None of these circumstances exists here as to Lincoln's claim of false statements. We therefore need not reach the question of whether such a statement was material and made knowingly and in bad faith. *See, e.g., Tudor Ins. Co. v. Township of Stowe*, 697 A.2d 1010, 1017 (Pa.Super.Ct. 1997) (summarizing requirements under Pennsylvania law for fraudulent representation).

In sum, we find no error with the District Court's conclusion that Lincoln's coverage obligation is primary, and that Northland's coverage obligation is excess to Lincoln's.

Lincoln's final argument is that the District Court erred in awarding prejudgment interest through August 6, 2004, the date of its second amended judgment. Contending that the basis for the award was established by the District Court's verdict almost a year earlier, on August 26, 2003, Lincoln argues prejudgment interest should have only been calculated through that date.

Where, as here, subject matter jurisdiction is premised on the parties' diversity of citizenship, the question of whether a party is entitled to prejudgment interest is one of state law. *See Jarvis v. Johnson*, 668 F.2d 740, 741 (3d Cir. 1982). Here, the law of Pennsylvania controls. We have previously observed that "[p]re-judgment interest in Pennsylvania contract cases is a matter of right and is calculated from the time the money becomes due or payable." *Am. Enka Co. v. Wicaco Mach. Corp.*, 686 F.2d 1050, 1056 (1982) (citing *Penneys v. Pa. R. R. Co.*, 183 A.2d 544 (Pa. 1962)). Certainly, then, the District Court did not err in concluding that Northland was entitled to prejudgment interest as a matter of law. *Id.* at 1056-57; *see also Barris v. Bob's Drag Chutes & Safety Equip.*, 717 F.2d 52 (3d Cir. 1983). Nor, we conclude, did it err in determining that Pennsylvania law allows such interest to be calculated through the date of the second amendment

to the judgment, dated August 6, 2004.

First, we are unaware of any requirement under Pennsylvania law necessitating the tolling of prejudgment interest in this circumstance. Certainly we have been cited to no such authority by Lincoln. Of the two potential grounds for such an outcome—tolling of prejudgment interest during the pendency of an appeal, *see, e.g., Arthur v. Kuchar*, 682 A.2d 1250, 1255 (Pa. 1996), and tolling of prejudgment interest where a defendant has secured a "favorable final judgment from the trial court," *Barris*, 717 F.2d at 57—plainly neither applies here. Second, as to any remaining question of when the District Court's judgment became final, we observe that the District Court amended its August 26, 2003 judgment on August 3, 2004 and again on August 6, 2004 in response to a motion timely filed by Northland pursuant to Fed.R.Civ.P. 59(e). We have previously stated that "[a] Rule 59(e) motion . . . , in effect, 'suspends' the finality of the initial judgment" until the District Court either grants or denies the motion. *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986). For these reasons, we conclude that Lincoln's prejudgment interest argument is without merit and the District Court did not err in awarding prejudgment interest through August 6, 2004.

Accordingly, the order of the District Court dated August 26, 2003, as amended August 3, 2004 and August 6, 2004, is affirmed.